## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re* | **Chapter 11** |
| **STANADYNE LLC, *et al.*,[1]** | **Case No. 23-10207 (JTD)** |
| **Debtors.** | **(Joint Administration Requested)** |

## DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS PURSUANT TO 11 U.S.C. §§ 105(a) AND 366 (I) PROHIBITING UTILITIES FROM ALTERING, REFUSING, OR DISCONTINUING SERVICES ON ACCOUNT OF PREPETITION INVOICES, (II) DEEMING UTILITIES ADEQUATELY ASSURED OF FUTURE PERFORMANCE, AND (III) ESTABLISHING PROCEDURES FOR DETERMINING <u>ADEQUATE ASSURANCE OF PAYMENT</u>

The debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), hereby move (the "Motion") for entry of an interim order substantially in the form annexed hereto as **Exhibit B** (the "Interim Order") and a final order substantially in the form annexed hereto as **Exhibit C** (the "Final Order"), pursuant to sections 105(a) and 366 of title 11 of the United States Code (the "Bankruptcy Code"), (i) determining that the Utility Providers (as defined below) have been provided with adequate assurance of payment within the meaning of section 366 of the Bankruptcy Code; (ii) approving the Debtors' proposed offer of adequate assurance and procedures whereby the Utility Providers may request additional or different adequate assurance; (iii) prohibiting the Utility Providers from altering, refusing or discontinuing services on account of prepetition amounts outstanding or on account of any perceived inadequacy of the Debtors' proposed adequate assurance; (iv) determining that the

---

1.  The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number are:  Stanadyne LLC (0378); Pure Power Technologies, Inc. (5202); Stanadyne PPT Holdings, Inc.

Debtors are not required to provide any additional adequate assurance beyond what is proposed by this Motion; and (v) setting a final hearing (the "Final Hearing") on the Debtors' proposed adequate assurance and consideration of entry of the Final Order.  In support of the Motion, the Debtors submit the *Declaration of John Pinson, Chief Executive Officer of Stanadyne LLC, in Support of First Day Relief* (the "Pinson Declaration") filed contemporaneously herewith, and respectfully submit as follows:

## JURISDICTION AND VENUE

1.      The Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference of the United States District Court for the District of Delaware dated as February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors confirm their consent pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory and rule bases for the relief requested herein are sections 105(a) and 366 of the Bankruptcy Code.

## BACKGROUND

3.      On February 16, 2023 (the "Petition Date"), the Debtors commenced their bankruptcy cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code

---

(2594); and Stanadyne PPT Group Holdings, Inc. (1734).  The Debtors' headquarters are located at 405 White Street, Jacksonville, North Carolina 28546.

(the "Chapter 11 Cases").  No trustee, examiner or creditors' committee has been appointed in these cases.  The Debtors are operating their respective businesses as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4.      The events leading up to the Petition Date and the facts and circumstances supporting the relief requested herein are set forth in the Pinson Declaration.

5.      In the ordinary course of business, the Debtors regularly incur utility expenses for electric, gas, oil, water, telephone, cellular, internet access, and other services.  All other utilities are provided through the Debtors' leases.  The Debtors' aggregate average monthly cost for utility services is approximately $309,241.19.  The utility services are provided by approximately twenty-two utility companies (the "Utility Providers").  A list of these Utility Providers is attached as **Exhibit A** hereto (the "Utility Provider List").[2]

6.      As of the Petition Date and as qualified below, the Debtors are generally current on payments to the Utility Providers for utility services.  Overall, the Debtors have a long and established payment history with most of the Utility Providers indicating consistent payment for utility services with few to no material defaults or arrearages with respect to undisputed Utility Services invoices.  As of the Petition Date, however, the Debtors may have had (a) prepetition accounts payable to certain Utility Providers not yet due, (b) outstanding checks issued to certain Utility Providers in payment for prepetition charges for utility services that had not cleared the Debtors' bank account prior to the Petition Date or (c) liabilities for prepetition utility services for which the Debtors had not yet been billed.

---

2.    The Debtors reserve the right to assert that any of the entities now or hereafter listed in Exhibit A are not "utilities" within the meaning of section 366(a) of the Bankruptcy Code, and to assert that any such entity is compelled by contractual obligation, state or local law, or otherwise, to continue to furnish services to the Debtors notwithstanding the filing of these Chapter 11 Cases.

7.      Access to utility services is critical to the Debtors' ongoing operations while they are prosecuting these Chapter 11 Cases.  Should any Utility Provider refuse or discontinue a utility service even for a brief period of time, the Debtors' operations and administrative functions would be severely disrupted, and the Debtors' ability to continue business operations would be adversely affected.  Certain Utility Providers provide the Debtors with services necessary to run their day-to-day office operations.  Further, the Debtors are dependent upon internet, telephone, and cellular service to maintain their ability to send and receive electronic communications and records.  In this regard, it is in the best interest of the Debtors, their estates and their creditors to maintain continuous and uninterrupted utility services during these Chapter 11 Cases.  Accordingly, the Debtors are seeking the relief requested herein.

## RELIEF REQUESTED

8.      Section 366(a) of the Bankruptcy Code prevents utility companies from discontinuing, altering or refusing service to a debtor during the first twenty days of a bankruptcy case.  However, a utility company has the option of terminating its services thirty days from the petition date pursuant to section 366(c)(2) of the Bankruptcy Code if a debtor has not furnished adequate assurance of payment.

9.      By this Motion, the Debtors respectfully request the entry of the Interim Order and the Final Order, pursuant to sections 105(a) and 366 of the Bankruptcy Code:  (a) determining that the Utility Providers have been provided with adequate assurance of payment within the meaning of section 366 of the Bankruptcy Code; (b) approving the Debtors' proposed offer of adequate assurance and procedures whereby the Utility Providers may request additional or different adequate assurance; (c) prohibiting the Utility Providers from altering, refusing or discontinuing services on account of prepetition amounts outstanding or on account of any perceived inadequacy of the Debtors' proposed adequate assurance; (d) determining that the

Debtors are not required to provide any additional adequate assurance beyond what is proposed by this Motion; and (e) setting the Final Hearing on the Debtors' proposed adequate assurance and consideration of entry of the Final Order.[3]

## I.      The Proposed Adequate Assurance

10.    The Debtors fully intend to pay all postpetition obligations owed to the Utility Providers in a timely manner and expect that they will have funds sufficient to pay all postpetition utility obligations.

11.    As adequate assurance of future payment to the Utility Providers, the Debtors propose to deposit cash in an amount equal to the approximate aggregate cost of 50% of the average monthly total for utility service from the Utility Providers calculated from an historical average for the three months prior to the Petition Date, or approximately $154,620.60 (the "Adequate Assurance Deposits"), into an interest-bearing, newly-created, segregated account (the "Utility Account") within ten business days after the date of entry of the Interim Order approving this Motion; provided, however, that the Debtors, in their sole discretion and without further application to or order of the Court, may reduce the Utility Account upon termination of utility services from a particular Utility Provider in an amount equal to the approximate cost of 50% of the average monthly total for utility service from such Utility Provider.[4]  Upon the effective date of any plan of reorganization or liquidation of the Debtors,

---

3.   Nothing herein is intended or should be construed as (a) an admission as to the validity or priority of any claim against the Debtors, (b) a waiver of the Debtors' rights to dispute any claim, including the validity or priority thereof, or (c) an approval or assumption of any agreement, contract or lease whether under section 365(a) of the Bankruptcy Code or otherwise.  Likewise, if the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any claim or a waiver of the Debtors' rights to subsequently dispute such claim.

4.   In the event that the Debtors have multiple utility services accounts with a particular Utility Provider, the Debtors' reduction of the Utility Deposit upon termination of utility services from a particular Utility Provider will be based on those utility services accounts actually terminated.

unless otherwise provided in such plan of reorganization or liquidation or other order of the Court, the Debtors, in their sole discretion and without further application to or order of the Court, may close the Utility Account and return all remaining funds to their operational and deposit accounts maintained in the ordinary course of business.

12.     The Debtors submit that the Adequate Assurance Deposits, in conjunction with the Debtors' ability to pay for future utility services in the ordinary course of business (collectively, the "Proposed Adequate Assurance"), constitutes sufficient adequate assurance to the Utility Providers.  If any Utility Provider believes additional assurance is required, they may request such assurance pursuant to the below described procedures.

## II.     The Proposed Adequate Assurance Procedures

13.     In light of the severe consequences to the Debtors of any interruption in services by the Utility Providers, but recognizing the right of the Utility Providers to evaluate the Proposed Adequate Assurance on a case-by-case basis, the Debtors propose the following procedures (the "Adequate Assurance Procedures") for approval and adoption:

(a)     Absent compliance with the Adequate Assurance Procedures, the Utility Providers may not alter, refuse or discontinue service to or otherwise discriminate against the Debtors on account of the commencement of these Chapter 11 Cases or any unpaid prepetition charges or request payment of a deposit or receipt of other security in connection with any unpaid prepetition charges.

(b)     The Debtors will serve copies of the Interim Order and the Final Order, as applicable, via first-class mail, within three business days after the date that the Interim Order and the Final Order, as applicable, is entered by the Court on all Utility Providers identified on the Utility Provider List.  For the avoidance of doubt, the Motion will be served with the Interim Order.  In the event that any Utility Provider has been omitted from the Utility Provider List, the Debtors shall supplement this list and shall promptly serve copies of the Motion, the Interim Order, and the Final Order, as applicable, on such Utility Provider upon learning of such omission.

(c)     Any Utility Provider that believes it requires additional adequate assurance must serve a request (an "Adequate Assurance Request") upon Young Conaway Stargatt & Taylor, LLP, 1000 North King Street, Rodney Square, Wilmington, Delaware 19801 (Attn: Michael R. Nestor, Esq., Andrew L. Magaziner, Esq., and Ashley E. Jacobs, Esq.), and Hughes Hubbard & Reed LLP, One Battery Park Plaza, New York, New York 10004 (Attn: Kathryn A. Coleman, Esq. and Christopher Gartman, Esq.).

(d)     Any Adequate Assurance Request must: (i) be made in writing; (ii) set forth the location for which utility services are provided; (iii) include a summary of the Debtors' payment history relevant to the affected account(s), including any security deposits or other prepayments or assurances previously provided by the Debtors; (iv) set forth the basis for the Utility Provider's belief that the Proposed Adequate Assurance is not sufficient adequate assurance of future payment; and (v) include a proposal for what would constitute adequate assurance of future payment from the Debtors, along with an explanation of why such proposal is reasonable. Any Adequate Assurance Request that fails to meet these requirements shall be deemed an invalid request for adequate assurance.

(e)     Upon the Debtors' receipt of any Adequate Assurance Request at the address set forth above, the Debtors shall have until twenty-one days from the receipt of such Adequate Assurance Request or such other date as the parties mutually agree (the "Resolution Period") to negotiate with a Utility Provider and advise the Utility Provider that the Adequate Assurance Request is acceptable.

(f)     The Debtors may, in their discretion, resolve any Adequate Assurance Request by mutual agreement with the Utility Provider and without further order of the Court, and may, in connection with any such agreement, in their discretion, provide a Utility Provider with additional adequate assurance of future payment, including, but not limited to, cash deposits, prepayments and/or other forms of security, without further order of this Court if the Debtors believe such additional assurance is reasonable and to the extent authorized pursuant to any orders authorizing postpetition financing and the use of cash collateral and the applicable budget thereunder.

(g)     If the Debtors determine that the Adequate Assurance Request is not reasonable and are not able to reach an alternative resolution with the Utility Provider during the Resolution Period, the Debtors,

during or immediately after the Resolution Period, will request a hearing before the Court to determine the adequacy of assurances of payment with respect to a particular Utility Provider (the "<u>Determination Hearing</u>") pursuant to section 366(c)(3) of the Bankruptcy Code.

(h)     Pending resolution of an Adequate Assurance Request at any such Determination Hearing and entry of a final, non-appealable order thereon finding that the Utility Provider is not adequately assured of future payment, such Utility Provider shall be (i) prohibited from discontinuing, altering or refusing service to the Debtors on account of unpaid charges for prepetition services or on account of any objections to the Proposed Adequate Assurance and (ii) deemed to have adequate assurance of payment.

(i)     Unless and until a Utility Provider serves an Adequate Assurance Request pursuant to the Adequate Assurance Procedures, such Utility Provider shall be deemed to have received adequate assurance of payment that is satisfactory to such Utility Provider within the meaning of section 366(c)(2) of the Bankruptcy Code.

14.     The Debtors also request that any security deposits that were in place prior to the Petition Date shall remain in place and shall continue to be held by those Utility Providers holding the same, except upon either (a) written agreement(s) between the Debtors and a Utility Provider without further order of the Court or (b) further order(s) of the Court.

15.     The Debtors also request authorization to adjust periodically the amount in the Adequate Assurance Account to reflect the following factors:  (a) the termination of Utility Services by the Debtors; (b) the entry into any agreements between the Debtors and the applicable Utility Providers; and (c) the removal of any amount spent on Utility Services from Utility Providers that hold postpetition deposits or other security from the Debtors for such services.

## III.     <u>The Final Hearing</u>

16.     In order to (a) address any outstanding objections to the Motion and/or (b) resolve any Adequate Assurance Request within thirty days following the Petition Date, the

Debtors request that the Court schedule the Final Hearing at its convenience on a date in advance of the expiration of such thirty day period.

**IV.    <u>Subsequent Modifications To The Utility Provider List</u>**

17.    The Debtors have made an extensive and good faith effort to identify the Utility Providers and include them on the Utility Provider List.  Nonetheless, it is possible that certain Utility Providers have not yet been identified or included.  To the extent that the Debtors identify additional Utility Providers, the Debtors will promptly (a) file a supplement to the Utility Provider List adding the name of the newly-identified Utility Providers and (b) serve copies of the Motion, the Interim Order, and the Final Order on such Utility Providers.

18.    Any Utility Provider subsequently added to the Utility Provider List that believes it requires additional adequate assurance must (a) serve an Adequate Assurance Request so that it is received on or prior to the date that is thirty days after the date of service of the Motion, the Interim Order, and the Final Order by proposed counsel for the Debtors, and (b) otherwise comply with the Adequate Assurance Procedures.

19.    The Debtors request that the Interim Order and Final Order (when entered) be binding on all Utility Providers, regardless of when such Utility Provider was added to the Utility Provider List.

**<u>BASIS FOR RELIEF</u>**

20.    This Court has the authority to grant the relief requested herein pursuant to section 105(a) of the Bankruptcy Code.  Section 105(a) of the Bankruptcy Code provides that a court "may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).

21.    Section 366(a) of the Bankruptcy Code protects a debtor against the immediate termination of utility services after it files for bankruptcy.  Pursuant to this section, as

amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (the "BAPCPA"), a utility provider may not, during the first twenty days of the case, alter, refuse or discontinue services to a debtor in a chapter 11 case solely because of unpaid prepetition amounts if a debtor furnishes "adequate assurance" of payment.  However, the utility provider may do so thereafter unless the debtor furnishes "adequate assurance" of payment for postpetition services in a form "satisfactory" to the utility provider within thirty days of the petition date.

22.     Section 366(c) of the Bankruptcy Code, as amended by the BAPCPA, (a) defines the forms of adequate assurance of payment that a debtor may employ in providing adequate assurance of payment to include cash deposits, letters of credit, certificates of deposit, surety bonds, prepayments of utility consumption or another form of security that is mutually agreed on between the utility provider and the debtor; (b) excludes from the definition of adequate assurance the availability of an administrative expense claim; and (c) provides that a court may not consider certain facts in determining the amount of assurance that is adequate.  11 U.S.C. §§ 366(c)(1)(A)–(B) and (c)(3)(B).

23.     Although section 366 of the Bankruptcy Code does clarify what forms adequate assurance of payment may take and what factors the court should consider when determining whether such assurance is adequate, the statute still requires courts to determine what amount, if any, is necessary to provide adequate assurance of payment.  Under section 366(c) of the Bankruptcy Code, there is nothing to prevent a court from deciding that, on the facts of the case before it, the amount required of a debtor to adequately assure payment to utility providers is zero or nominal.

24.     Prior to the BAPCPA, courts had the discretion to make such a
determination. *Virginia Elec. & Power Co. v. Caldor, Inc.*, 117 F.3d 646, 650 (2d Cir. 1997)
("Even assuming that 'other security' should be interpreted narrowly, we agree with the
appellees that a bankruptcy court's authority to 'modify' the level of the 'deposit or other
security,' provided for under § 366(b), includes the power to require no 'deposit or other
security' where none is necessary to provide a utility supplier with 'adequate assurance of
payment.'"). In this regard, the Court is not bound by state or local regulations governing what
constitutes adequate assurance of payment for postpetition utility services. *Id.* at 199; *In re
Begley*, 41 B.R. 402, 405-06 (Bankr. E.D. Pa. 1984), *aff'd*, 760 F.2d 46 (3d Cir. 1987). Whether
utilities are subject to an unreasonable risk of nonpayment for postpetition services must be
determined from the facts of each case. *See In re Keydata Corp.*, 12 B.R. 156 (Bankr. D. Mass.
1981). Since section 366(c)(3) of the Bankruptcy Code still permits courts to order the
modification of the amount of an assurance of payment, courts remain free to require no deposit
or security where none is necessary to ensure adequate assurance of payment in any particular
case.

25.     In revising section 366 of the Bankruptcy Code under the BAPCPA,
Congress had the opportunity to establish a minimum adequate assurance amount that would be
required in each case. Congress did not set a minimum adequate assurance amount, but rather
vested discretion in the courts to determine the appropriate level of adequate assurance required
in each case. Accordingly, section 366 of the Bankruptcy Code does not give utility companies a
blank check or the right to extract from debtors an unlimited amount of adequate assurance.

26.     This Court has granted similar relief in other recent chapter 11 cases. *See,
e.g.*, *In re Kabbage, Inc. d/b/a KServicing*, No. 22-10951 (Bankr. D. Del. Oct. 21, 2022), ECF

No. 134 (approving adequate assurance deposit equal to one half of debtor's average monthly utility expenses on a final basis); *In re CarbonLite Holdings LLC*, No. 21-10527 (Bankr. D. Del. Apr. 8, 2021), ECF No. 257 (same); *In re Pace Industries, LLC*, No. 20-10927 (Bankr. D. Del. May 11, 2020), ECF No. 171 (same); *In re Patriot National, Inc.*, No. 18-10189 (Bankr. D. Del. Feb. 28, 2018), ECF No. 248 (approving adequate assurance calculation based on average of three prior months); *In re CST Industries Holdings Inc.*, No. 17-11292 (Bankr. D. Del. July 13, 2017), ECF No. 207 (same).

27.     The Debtors submit that on the facts of these Chapter 11 Cases, the Proposed Adequate Assurance is sufficient to provide adequate assurance to the Utility Providers of the Debtors' future performance.  Additionally, the Debtors propose to further protect the Utility Providers by requesting that this Court adopt the Adequate Assurance Procedures outlined above.  The Debtors also submit that granting the requested relief will not prejudice the rights of the Utility Providers to seek additional adequate assurance of payment under section 366 of the Bankruptcy Code should the Proposed Adequate Assurance fail to provide the Utility Providers with adequate assurance of payment.

28.     As stated above, the Debtors cannot continue their operations without the continued services of the Utility Providers.  If any of the Utility Providers alter, refuse, or discontinue service, even for a brief period, the Debtors' business operations would be severely disrupted and the value of their estates would be negatively impacted.  In contrast, if the Court grants the relief requested herein, the Utility Providers will not be prejudiced by the continuation of their services.

**NOTICE**

29.     Notice of the hearing of this Motion shall be provided to: (i) the U.S. Trustee for the District of Delaware; (ii) the holders of the twenty largest unsecured claims

30128814.1

against the Debtors on a consolidated basis; (iii) counsel for the prepetition secured lenders; (iv) the Utility Providers; and (v) all parties that have filed a notice of appearance and request for service of papers pursuant to Bankruptcy Rule 2002.  Notice of this Motion and any order entered hereon will be served in accordance with Local Rule 9013-1(m).  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## NO PRIOR REQUEST

30.    No prior request for the relief sought in the Motion has been made to this Court or any other Court.

WHEREFORE, the Debtors respectfully request that the Court (i) enter the Interim Order and the Final Order (a) determining that the Utility Providers have been provided with adequate assurance of payment within the meaning of section 366 of the Bankruptcy Code; (b) approving the Debtors' proposed offer of adequate assurance and procedures whereby the Utility Providers may request additional or different adequate assurance; (c) prohibiting the Utility Providers from altering, refusing or discontinuing services on account of prepetition amounts outstanding or on account of any perceived inadequacy of the Debtors' proposed adequate assurance; (d) determining that the Debtors are not required to provide any additional adequate assurance beyond what is proposed by this Motion; and (e) setting a Final Hearing on the Debtors' proposed adequate assurance and consideration of entry of the Final Order; and (ii) grant such other and further relief as may be just and proper.

Dated:  February 16, 2023
      Wilmington, Delaware

YOUNG CONAWAY STARGATT &
TAYLOR, LLP

*/s/ Andrew L. Magaziner*
Michael R. Nestor (DE Bar No. 3526)
Andrew L. Magaziner (DE Bar No. 5426)
Ashley E. Jacobs (DE Bar No. 5635)
1000 North King Street
Rodney Square
Wilmington, Delaware 19801-6108
Telephone:  (302) 571-6600
Facsimile:   (302) 571-1253
Email:  mnestor@ycst.com
        amagaziner@ycst.com
        ajacobs@ycst.com

   -and-

Kathryn A. Coleman
Christopher Gartman
HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, NY 10004-1482
Telephone: (212) 837-6000
Facsimile:  (212) 422-4726
Email:  katie.coleman@hugheshubbard.com
        chris.gartman@hugheshubbard.com

*Proposed Counsel for the Debtors*

**EXHIBIT A**

**Utility Providers**

| Name | Type | Location(s) | Average Monthly Payment Over Past 3 Months |
|---|---|---|---|
| Airgas, Inc. | Gas | Jacksonville, NC | $4,349.33 |
| AT&T | Phone | Blythewood & Columbia, SC | $1,175.16 |
| CDS Electric & Industrial Service | Electric | Jacksonville, NC | $20,627.00 |
| Centurylink | Phone | Jacksonville, NC | $12.67 |
| Charter Communications Holdings | Internet | Blythewood, SC | $5,064.00 |
| City of Columbia, SC | Water | Blythewood & Columbia, SC | $14,063.54 |
| City of Jacksonville, NC | Water | Jacksonville, NC | $1,148.33 |
| Clear River Fuel | Oil | Windsor, CT | $13,309.67 |
| Comcast | Phone & Internet | Windsor, CT | $6,867.23 |
| Constellation New Energy, Inc. | Electric | Windsor, CT | $40,753.67 |
| Dominion Energy South Carolina | Electric & Gas | Blythewood & Columbia, SC | $123,872.20 |
| Duke Energy Progress | Electric | Jacksonville, NC | $40,757.67 |
| Eversource | Electric & Gas | Windsor, CT | $16,288.67 |
| Frontier | Phone & Internet | Windsor, CT | $131.09 |
| Granite | Phone | Blythewood, SC | $1,000.00 |
| Onslow Water & Sewer Authority | Water | Jacksonville, NC | $1,214.69 |
| Piedmont Natural Gas Co., Inc. | Gas | Jacksonville, NC | $2,461.66 |
| Spectrum | Phone & Internet | Blythewood, SC | $1,000.00 |
| The Metropolitan District | Water | Windsor, CT | $2,516.87 |
| USA Hauling & Recycling, Inc. | Trash Removal | Windsor, CT, Blythewood, SC & Columbia, SC | $349.00 |
| Verizon Wireless | Cellular | Multiple | $5,598.69 |
| Waste Management | Trash Removal | Windsor, CT | $6,680.05 |
| **Total** | | | **$309,241.19** |

**EXHIBIT B**

**Proposed Interim Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re* | Chapter 11 |
| **STANADYNE LLC, *et al.*,**[1] | Case No. 23-10207 (JTD) |
| **Debtors.** | (Jointly Administered) |

**INTERIM ORDER PURSUANT TO 11 U.S.C. §§ 105(a) AND 366 (I) PROHIBITING UTILITIES FROM ALTERING, REFUSING, OR DISCONTINUING SERVICES ON ACCOUNT OF PREPETITION INVOICES, (II) DEEMING UTILITIES ADEQUATELY ASSURED OF FUTURE PERFORMANCE, AND (III) ESTABLISHING PROCEDURES FOR DETERMINING ADEQUATE ASSURANCE OF PAYMENT**

Upon the motion (the "Motion")[2] of the debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), for entry of the Interim Order and the Final Order, pursuant to sections 105(a) and 366 of the Bankruptcy Code, (i) determining that the Utility Providers have been provided with adequate assurance of payment within the meaning of section 366 of the Bankruptcy Code; (ii) approving the Proposed Adequate Assurance and the Adequate Assurance Procedures; (iii) prohibiting the Utility Providers from altering, refusing or discontinuing services on account of prepetition amounts outstanding or on account of any perceived inadequacy of the Proposed Adequate Assurance; (iv) determining that the Debtors are not required to provide any additional adequate assurance beyond the Proposed Adequate Assurance; and (v) setting the Final Hearing; and upon the *Declaration of John Pinson, Chief*

---

[1].   The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number are:  Stanadyne LLC (0378); Pure Power Technologies, Inc. (5202); Stanadyne PPT Holdings, Inc. (2594); and Stanadyne PPT Group Holdings, Inc. (1734).  The Debtors' headquarters are located at 405 White Street, Jacksonville, North Carolina 28546.

[2].   Capitalized terms used, but not defined, herein shall have those meanings ascribed to them in the Motion.

*Executive Officer of Stanadyne LLC, in Support of First Day Relief*; and it appearing that this Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012; and it appearing that venue of these Chapter 11 Cases and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that this matter is a core proceeding pursuant to 28 U.S.C. § 157(b); and this Court having found that it may enter a final order consistent with Article III of the United States Constitution; and due and sufficient notice of the Motion having been given; and it appearing that no other or further notice need be provided; and upon the record herein; and it appearing that the relief requested by the Motion is in the best interest of the Debtors, their estates, their creditors and other parties in interest; and after due deliberation and sufficient cause appearing therefor;

IT IS HEREBY ORDERED THAT:

1.      The Motion is GRANTED on an interim basis as set forth herein.

2.      <u>Payment of Post-Petition Date Utility Charges</u>.    The Debtors are authorized to and shall pay, in accordance with their pre-Petition Date practices, all post-Petition Date utility charges for all utility services rendered by the Utility Providers to the Debtors.

3.      <u>Adequate Assurance of Future Payment</u>.    The Proposed Adequate Assurance is hereby approved on an interim basis and until such time as the Final Order is entered by the Court, the Debtors are deemed to have furnished the Utility Providers with adequate assurance of payment under section 366 of the Bankruptcy Code for post-Petition Date utility services by depositing cash in an amount equal to the approximate aggregate cost of 50% of the average monthly total for utility service from the Utility Providers calculated from a historical average for the three months prior to the Petition Date, or $154,620.60 into the Utility

Account within ten business days after the date of entry of this Interim Order; <u>provided</u>, <u>however</u>, that, the Debtors shall be authorized to reduce the Utility Deposit to reflect terminated utility service upon either (a) obtaining the affected Utility Company's consent to reduce the Utility Deposit; or (b) filing notice with the Court and serving upon the affected Utility Company a notice of the Debtors' intent to reduce the Utility Deposit within fourteen (14) days thereof and receiving no response thereto.[3]   Upon the effective date of any plan of reorganization or liquidation of the Debtors, unless otherwise provided in such plan of reorganization or liquidation or other order of the Court, the Debtors, in their sole discretion and without further application to or order of the Court, may close the Utility Account and return all remaining funds to their operational and deposit accounts maintained in the ordinary course of business.

4.     <u>Prohibition</u>.   Subject to the Adequate Assurance Procedures, until such time as the Final Order is entered by the Court, all Utility Providers are prohibited from (a) discontinuing, altering or refusing service to the Debtors on account of any prepetition amounts outstanding, (b) discriminating against the Debtors or (c) requiring payment of a deposit or receipt of any other security for continued service as a result of the Debtors' bankruptcy filings or any outstanding prepetition invoices, other than as provided in the Motion.

5.     <u>Adequate Assurance Procedures</u>.   The Adequate Assurance Procedures for determining requests for additional adequate assurance are approved as follows:

(a)     Absent compliance with the Adequate Assurance Procedures, the Utility Providers may not alter, refuse or discontinue service to or otherwise discriminate against the Debtors on account of the commencement of these Chapter 11 Cases or any unpaid prepetition charges or request payment of a deposit or receipt of other security in connection with any unpaid prepetition charges.

---

3.   In the event that the Debtors have multiple utility services accounts with a particular Utility Provider, the Debtors' reduction of the Utility Deposit upon termination of utility services from a particular Utility Provider will be based on those utility services accounts actually terminated.

(b)     The Debtors will serve copies of the Interim Order and the Final Order, as applicable, via first-class mail, within two business days after the date that the Interim Order and the Final Order, as applicable, is entered by the Court on all Utility Providers identified on the Utility Provider List.  For the avoidance of doubt, the Motion will be served with the Interim Order.  In the event that any Utility Provider has been omitted from the Utility Provider List, the Debtors shall supplement this list and shall promptly serve copies of the Motion, the Interim Order, and the Final Order, as applicable, on such Utility Provider upon learning of such omission.

(c)     Any Utility Provider that believes it requires additional adequate assurance must serve a request (an "Adequate Assurance Request") upon Young Conaway Stargatt & Taylor, LLP, 1000 North King Street, Rodney Square, Wilmington, Delaware 19801 (Attn: Michael R. Nestor, Esq., Andrew L. Magaziner, Esq., and Ashley E. Jacobs, Esq.), and Hughes Hubbard & Reed LLP, One Battery Park Plaza, New York, New York 10004 (Attn: Kathryn A. Coleman, Esq. and Christopher Gartman, Esq.).

(d)     Any Adequate Assurance Request must: (i) be made in writing; (ii) set forth the location for which utility services are provided; (iii) include a summary of the Debtors' payment history relevant to the affected account(s), including any security deposits or other prepayments or assurances previously provided by the Debtors; (iv) set forth the basis for the Utility Provider's belief that the Proposed Adequate Assurance is not sufficient adequate assurance of future payment; and (v) include a proposal for what would constitute adequate assurance of future payment from the Debtors, along with an explanation of why such proposal is reasonable. Any Adequate Assurance Request that fails to meet these requirements shall be deemed an invalid request for adequate assurance.

(e)     Upon the Debtors' receipt of any Adequate Assurance Request at the address set forth above, the Debtors shall have until twenty-one days from the receipt of such Adequate Assurance Request or such other date as the parties mutually agree (the "Resolution Period") to negotiate with a Utility Provider and advise the Utility Provider that the Adequate Assurance Request is acceptable.

(f)     The Debtors may, in their discretion, resolve any Adequate Assurance Request by mutual agreement with the Utility Provider and without further order of the Court, and may, in connection

with any such agreement, in their discretion, provide a Utility Provider with additional adequate assurance of future payment, including, but not limited to, cash deposits, prepayments and/or other forms of security, without further order of this Court if the Debtors believe such additional assurance is reasonable and to the extent authorized pursuant to any orders authorizing postpetition financing and the use of cash collateral and the applicable budget thereunder.

(g)     If the Debtors determine that the Adequate Assurance Request is not reasonable and are not able to reach an alternative resolution with the Utility Provider during the Resolution Period, the Debtors, during or immediately after the Resolution Period, will request a hearing before the Court to determine the adequacy of assurances of payment with respect to a particular Utility Provider (the "Determination Hearing") pursuant to section 366(c)(3) of the Bankruptcy Code.

(h)     Pending resolution of an Adequate Assurance Request at any such Determination Hearing and entry of a final, non-appealable order thereon finding that the Utility Provider is not adequately assured of future payment, such Utility Provider shall be (i) prohibited from discontinuing, altering or refusing service to the Debtors on account of unpaid charges for prepetition services or on account of any objections to the Proposed Adequate Assurance and (ii) deemed to have adequate assurance of payment.

(i)     Unless and until a Utility Provider serves an Adequate Assurance Request pursuant to the Adequate Assurance Procedures, such Utility Provider shall be deemed to have received adequate assurance of payment that is satisfactory to such Utility Provider within the meaning of section 366(c)(2) of the Bankruptcy Code.

6.     Modifications to the Utility Provider List.  To the extent that the Debtors identify additional Utility Providers not included on the Utility Provider List, the Debtors will promptly (a) file a supplement to the Utility Provider List adding the name of the newly-identified Utility Providers and (b) serve copies of the Motion, the Interim Order and the Final Order, as applicable, on such Utility Providers.  This Order shall be binding on all Utility Providers, regardless of when such Utility Provider was added to the Utility Provider List, subject to any further order(s) of the Court.

7.      Any Utility Provider subsequently added to the Utility Provider List shall be subject to the terms of this Interim Order and the Final Order, including the Assurance Procedures.

8.      <u>Failure to Submit Adequate Assurance Request</u>.  Any Utility Provider that fails to submit an Adequate Assurance Request pursuant to the Adequate Assurance Procedures shall be deemed to have received adequate assurance of future payment during the pendency of these Chapter 11 Cases, and shall further be deemed to have waived any right to seek additional adequate assurance during the course of the Chapter 11 Cases, except as provided in section 366(c) of the Bankruptcy Code.

9.      <u>Service of Order</u>.  The Debtors will serve copies of the Interim Order via first-class mail, within two business days after the date that this Interim Order is entered by the Court on all Utility Providers identified on the Utility Provider List.

10.     <u>No Admission or Waiver</u>.  Nothing in the Motion or in this Interim Order is intended or should be construed as (a) an admission as to the validity or priority of any claim against the Debtors, (b) a waiver of the Debtors' rights to dispute any claim, including the validity or priority thereof, or (c) an approval or assumption of any agreement, contract or lease whether under section 365(a) of the Bankruptcy Code or otherwise.  Likewise, any payment made pursuant to this Order is not intended and should not be construed as an admission as to the validity of any claim or a waiver of the Debtors' rights to subsequently dispute such claim.

11.     <u>Objection Deadline and Final Hearing</u>.  The deadline by which Utility Providers must file and serve objections, if any, to the Motion is ____, 2023 at 4:00 p.m. (Prevailing Eastern Time).  If no objections to the Motion are filed, the Court may enter the Final

Order without further notice or hearing.  The Final Hearing, if required, will be held on ___, 2023 at _:00 _.m. (Prevailing Eastern Time).

12.    The Debtors are authorized and empowered to take such actions as may be necessary and appropriate to implement the terms of this Interim Order.

13.    This Court shall retain jurisdiction with respect to all matters relating to the interpretation or implementation of this Order.

# EXHIBIT C

## Proposed Final Order

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| *In re* | Chapter 11 |
| **STANADYNE LLC, *et al.*,**[1] | Case No. 23-10207 (JTD) |
| **Debtors.** | (Jointly Administered) |

**FINAL ORDER PURSUANT TO 11 U.S.C. §§ 105(a) AND 366 (I) PROHIBITING
UTILITIES FROM ALTERING, REFUSING, OR DISCONTINUING SERVICES ON
ACCOUNT OF PREPETITION INVOICES, (II) DEEMING UTILITIES
ADEQUATELY ASSURED OF FUTURE PERFORMANCE, AND (III)
ESTABLISHING PROCEDURES FOR DETERMINING
ADEQUATE ASSURANCE OF PAYMENT**

Upon the motion (the "Motion")[2] of the debtors and debtors-in-possession in the

above-captioned cases (collectively, the "Debtors"), for entry of the Interim Order and the Final

Order, pursuant to sections 105(a) and 366 of the Bankruptcy Code, (i) determining that the

Utility Providers have been provided with adequate assurance of payment within the meaning of

section 366 of the Bankruptcy Code; (ii) approving the Proposed Adequate Assurance and the

Adequate Assurance Procedures; (iii) prohibiting the Utility Providers from altering, refusing or

discontinuing services on account of prepetition amounts outstanding or on account of any

perceived inadequacy of the Proposed Adequate Assurance; (iv) determining that the Debtors are

not required to provide any additional adequate assurance, beyond the Proposed Adequate

Assurance; and (v) setting the Final Hearing; and upon the *Declaration of John Pinson, Chief*

---

1.   The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number are:  Stanadyne LLC (0378); Pure Power Technologies, Inc. (5202); Stanadyne PPT Holdings, Inc. (2594); and Stanadyne PPT Group Holdings, Inc. (1734).  The Debtors' headquarters are located at 405 White Street, Jacksonville, North Carolina 28546.

2.   Capitalized terms used, but not defined, herein shall have those meanings ascribed to them in the Motion.

*Executive Officer of Stanadyne LLC, in Support of First Day Relief*; and it appearing that this Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012; and it appearing that venue of these Chapter 11 Cases and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that this matter is a core proceeding pursuant to 28 U.S.C. § 157(b); and this Court having found that it may enter a final order consistent with Article III of the United States Constitution; and due and sufficient notice of the Motion having been given; and it appearing that no other or further notice need be provided; and upon the record herein; and it appearing that the relief requested by the Motion is in the best interest of the Debtors, their estates, their creditors and other parties in interest; and after due deliberation and sufficient cause appearing therefor;

IT IS HEREBY ORDERED THAT:

1.      The Motion is GRANTED on a final basis as set forth herein.

2.      <u>Payment of Post-Petition Date Utility Charges</u>.    The Debtors are authorized to and shall pay, in accordance with their pre-Petition Date practices, all post-Petition Date utility charges for all utility services rendered by the Utility Providers to the Debtors.

3.      <u>Pre-Petition Date Security Deposits</u>.    Any security deposits that were in place prior to the Petition Date shall remain in place and shall continue to be held by those Utility Providers holding the same, except upon either (a) written agreement(s) between the applicable Debtor and a Utility Provider without further order of the Court or (b) further order(s) of the Court.

4.      <u>Adequate Assurance of Future Payment</u>.    The Proposed Adequate Assurance is hereby approved and the Debtors are deemed to have furnished the Utility

Providers with adequate assurance of payment under section 366 of the Bankruptcy Code for post-Petition Date utility services by having deposited cash in an amount equal to the approximate aggregate cost of 50% of the average monthly total for utility service from the Utility Providers calculated as a historical average for the three months prior to the Petition Date, or $154,620.60 into the Utility Account within ten business days after the date of entry of the Interim Order; provided, however, that, the Debtors, in their sole discretion and without further application to or order of the Court, may reduce the Utility Account upon termination of utility services from a particular Utility Provider in an amount equal to the approximate cost of 50% of the average monthly total for utility service from such Utility Providers calculated from an historical average for the three months prior to the Petition Date.[3]  Upon the effective date of any plan of reorganization or liquidation of the Debtors, unless otherwise provided in such plan of reorganization or liquidation or other order of the Court, the Debtors, in their sole discretion and without further application to or order of the Court, may close the Utility Account and return all remaining funds to their operational and deposit accounts maintained in the ordinary course of business.

5.    Prohibition.  Absent further order of the Court, all Utility Providers are prohibited from (a) discontinuing, altering or refusing service to the Debtors on account of any prepetition amounts outstanding, (b) discriminating against the Debtors or (c) requiring payment of a deposit or receipt of any other security for continued service as a result of the Debtors' bankruptcy filings or any outstanding prepetition invoices, other than as provided in the Motion and this Final Order.

---

3.    In the event that the Debtors have multiple utility services accounts with a particular Utility Provider, the Debtors' reduction of the Utility Deposit upon termination of utility services from a particular Utility Provider will be based on those utility services accounts actually terminated.

6.    <u>Adequate Assurance Procedures</u>.  The Adequate Assurance Procedures for determining requests for additional adequate assurance are approved on a final basis as follows:

(a)    Absent compliance with the Adequate Assurance Procedures, the Utility Providers may not alter, refuse or discontinue service to or otherwise discriminate against the Debtors on account of the commencement of these Chapter 11 Cases or any unpaid prepetition charges or request payment of a deposit or receipt of other security in connection with any unpaid prepetition charges.

(b)    The Debtors will serve copies of the Interim Order and the Final Order, as applicable, via first-class mail, within three business days after the date that the Interim Order and the Final Order, as applicable, is entered by the Court on all Utility Providers identified on the Utility Provider List.  For the avoidance of doubt, the Motion will be served with the Interim Order.  In the event that any Utility Provider has been omitted from the Utility Provider List, the Debtors shall supplement this list and shall promptly serve copies of the Motion, the Interim Order, and the Final Order, as applicable, on such Utility Provider upon learning of such omission.

(c)    Any Utility Provider that believes it requires additional adequate assurance must serve a request (an "<u>Adequate Assurance Request</u>") upon Young Conaway Stargatt & Taylor, LLP, 1000 North King Street, Rodney Square, Wilmington, Delaware 19801 (Attn: Michael R. Nestor, Esq., Andrew L. Magaziner, Esq., and Ashley E. Jacobs, Esq.), and Hughes Hubbard & Reed LLP, One Battery Park Plaza, New York, New York 10004 (Attn: Kathryn A. Coleman, Esq. and Christopher Gartman, Esq.).

(d)    Any Adequate Assurance Request must: (i) be made in writing; (ii) set forth the location for which utility services are provided; (iii) include a summary of the Debtors' payment history relevant to the affected account(s), including any security deposits or other prepayments or assurances previously provided by the Debtors; (iv) set forth the basis for the Utility Provider's belief that the Proposed Adequate Assurance is not sufficient adequate assurance of future payment; and (v) include a proposal for what would constitute adequate assurance of future payment from the Debtors, along with an explanation of why such proposal is reasonable. Any Adequate Assurance Request that fails to meet these requirements shall be deemed an invalid request for adequate assurance.

30128814.1

4

(e)     Upon the Debtors' receipt of any Adequate Assurance Request at the address set forth above, the Debtors shall have until twenty-one days from the receipt of such Adequate Assurance Request or such other date as the parties mutually agree (the "Resolution Period") to negotiate with a Utility Provider and advise the Utility Provider that the Adequate Assurance Request is acceptable.

(f)     The Debtors may, in their discretion, resolve any Adequate Assurance Request by mutual agreement with the Utility Provider and without further order of the Court, and may, in connection with any such agreement, in their discretion, provide a Utility Provider with additional adequate assurance of future payment, including, but not limited to, cash deposits, prepayments and/or other forms of security, without further order of this Court if the Debtors believe such additional assurance is reasonable and to the extent authorized pursuant to any orders authorizing postpetition financing and the use of cash collateral and the applicable budget thereunder.

(g)     If the Debtors determine that the Adequate Assurance Request is not reasonable and are not able to reach an alternative resolution with the Utility Provider during the Resolution Period, the Debtors, during or immediately after the Resolution Period, will request a hearing before the Court to determine the adequacy of assurances of payment with respect to a particular Utility Provider (the "Determination Hearing") pursuant to section 366(c)(3) of the Bankruptcy Code.

(h)     Pending resolution of an Adequate Assurance Request at any such Determination Hearing and entry of a final, non-appealable order thereon finding that the Utility Provider is not adequately assured of future payment, such Utility Provider shall be (i) prohibited from discontinuing, altering or refusing service to the Debtors on account of unpaid charges for prepetition services or on account of any objections to the Proposed Adequate Assurance and (ii) deemed to have adequate assurance of payment.

(i)     Unless and until a Utility Provider serves an Adequate Assurance Request pursuant to the Adequate Assurance Procedures, such Utility Provider shall be deemed to have received adequate assurance of payment that is satisfactory to such Utility Provider within the meaning of section 366(c)(2) of the Bankruptcy Code.

7.     Modifications to the Utility Provider List.  To the extent that the Debtors identify additional Utility Providers not included on the Utility Provider List, the Debtors will

promptly (a) file a supplement to the Utility Provider List adding the name of the newly-identified Utility Providers and (b) serve copies of the Motion, the Interim Order and the Final Order on such Utility Providers.  This Final Order shall be binding on all Utility Providers, regardless of when such Utility Provider was added to the Utility Provider List, subject to any further order(s) of the Court.

8.     Any Utility Provider subsequently added to the Utility Provider List that believes it requires additional adequate assurance must (a) serve an Adequate Assurance Request so that it is received on or prior to the date that is thirty days after the date of service of the Motion, the Interim Order and this Final Order as proposed by counsel for the Debtors and (b) otherwise comply with the Adequate Assurance Procedures.

9.     <u>Failure to Submit Adequate Assurance Request</u>.  Any Utility Provider that fails to submit an Adequate Assurance Request pursuant to the Adequate Assurance Procedures shall be deemed to have received adequate assurance of future payment during the pendency of these Chapter 11 Cases, and shall further be deemed to have waived any right to seek additional adequate assurance during the course of the Chapter 11 Cases, except as provided in section 366(c) of the Bankruptcy Code.

10.     <u>Service of Order</u>.  The Debtors will serve copies of the Final Order via first-class mail, within three business days after the date that this Final Order is entered by the Court on all Utility Providers identified on the Utility Provider List.

11.     <u>No Admission or Waiver</u>.  Nothing in the Motion or in this Final Order is intended or should be construed as (a) an admission as to the validity or priority of any claim against the Debtors, (b) a waiver of the Debtors' rights to dispute any claim, including the validity or priority thereof, (c) a promise or requirement to pay any claim; (d) an implication or

admission that any particular claim is of a type specified or defined hereunder; (e) a request or authorization to assume any agreement, contract or lease pursuant to section 365 of the Bankruptcy Code or (f) a waiver of the Debtors' rights under the Bankruptcy Code or any other applicable law.  Likewise, any payment made pursuant to the Interim Order or this Final Order is not intended and should not be construed as an admission as to the validity of any claim or a waiver of the Debtors' rights to subsequently dispute such claim.

12.     The Debtors are authorized to take all actions necessary to implement this Final Order.

13.     This Court shall retain jurisdiction with respect to all matters arising from or relating to the interpretation or implementation of this Final Order.

14.     Notwithstanding anything to the contrary contained herein, any discretion afforded to the Debtors, payment made or to be made, and authorization granted pursuant to this Order shall be subject to the requirements imposed on the Debtors under any approved debtor-in-possession financing facility, any order regarding the Debtors' postpetition financing or use of cash collateral, and any budget in connection therewith.