## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| *In re* | Chapter 11 |
| **STANADYNE LLC**, *et al.*,[1] | Case No. 23-10207 (JTD) |
| **Debtors.** | (Joint Administration Requested) |

### DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING THE DEBTORS TO (A) CONTINUE TO MAINTAIN THEIR EXISTING CASH MANAGEMENT SYSTEM, BANK ACCOUNTS, AND BUSINESS FORMS, (B) HONOR CERTAIN PREPETITION OBLIGATIONS RELATED THERETO, AND (C) CONTINUE TO PERFORM ORDINARY COURSE INTERCOMPANY TRANSACTIONS; (II) GRANTING ADMINISTRATIVE EXPENSE STATUS TO ORDINARY COURSE POSTPETITION INTERCOMPANY CLAIMS; AND (III) GRANTING RELATED RELIEF

The debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), hereby move (the "Motion"), for entry of interim and final orders, pursuant to sections 105(a), 345, 363(c)(1), and 503(b) of title 11 of the United States Code (the "Bankruptcy Code"), Rules 6003 and 6004(h) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2015-2 and 9013-1(m) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), (i) authorizing, but not directing, the Debtors to (a) continue to operate their existing cash management systems, as further described below (the "Cash Management Systems"), including maintenance of the Debtors' existing bank accounts, checks, business forms, and corporate credit card programs, (b) honor certain prepetition obligations related

---

1.  The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number are:  Stanadyne LLC (0378); Pure Power Technologies, Inc. (5202); Stanadyne PPT Holdings, Inc. (2594); and Stanadyne PPT Group Holdings, Inc. (1734).  The Debtors' headquarters are located at 405 White Street, Jacksonville, North Carolina 28546.

thereto, and (c) continue to perform intercompany transactions in the ordinary course consistent with historical practice; (ii) granting administrative expense priority status to postpetition intercompany claims; and (iii) granting related relief.  A proposed form of order granting the relief requested on an interim basis is attached hereto as **Exhibit A** (the "<u>Proposed Interim Order</u>") and a proposed form of order granting the relief requested on a final basis is attached hereton as **Exhibit B** (the "<u>Proposed Final Order</u>").  In support of the Motion, the Debtors submit the *Declaration of John Pinson, Chief Executive Officer of Stanadyne LLC, in Support of First Day Relief* (the "<u>Pinson Declaration</u>"), filed contemporaneously herewith, and respectfully state as follows:

<u>**JURISDICTION AND VENUE**</u>

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors confirm their consent pursuant to Local Rule 9013-1(f) to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution. Venue for this matter is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory and rule bases for the relief requested herein are sections 105, 345, 363, and 503 of the Bankruptcy Code, Bankruptcy Rules 6003 and 6004, and Local Rules 2015-2 and 9013-1(m).

<u>**BACKGROUND**</u>

3.      On November February 16, 2023 (the "<u>Petition Date</u>"), the Debtors commenced their bankruptcy cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy

Code (the "Chapter 11 Cases").  No trustee, examiner, or creditors' committee has been appointed in these cases.  The Debtors are operating their businesses as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4.     The events leading up to the Petition Date and the facts and circumstances supporting the relief requested herein are set forth in the Pinson Declaration, incorporated herein by reference.

## THE DEBTORS' CASH MANAGEMENT SYSTEM

5.     Before the commencement of the Chapter 11 Cases, and in the ordinary course of business, the Debtors historically implemented and maintained a cash management system (the "Cash Management System") to facilitate the efficient operation of their business and operations. The Debtors use the Cash Management System in the ordinary course of business to collect, transfer, and disburse funds generated from their operations and to effectuate cash monitoring, forecasting, and reporting.

6.     The Cash Management System is administered by Debtors Stanadyne LLC ("Stanadyne") and Pure Power Technologies, Inc. ("PPT"), the Debtors' main operating entities. Although their operations are interdependent, Stanadyne and PPT each generates its own income, accrues its own expenses, and maintains its own employees.

**I.     The Bank Accounts**

7.     The Cash Management System is comprised of seven bank accounts (together with any accounts opened after the Petition Date, the "Bank Accounts" and each, a "Bank Account"), which Bank Accounts can be found in **Exhibit 1** to the Proposed Interim Order attached hereto. All funds generated from each entity are deposited into Bank Accounts corresponding to operating entity from which the funds were generated.  For example, the monies generated by Stanadyne are deposited, as received from customers, in a collections account maintained by Wells Fargo Bank,

30128691.1

N.A. ("Wells Fargo").  The monies generated by PPT are deposited, as received from customers, in a general operating account maintained by Bank of America, N.A. ("BofA," and together with Wells Fargo, the "Banks").  Payments are generally received from customers by check, wire, or Automated Clearing House ("ACH") transfer.

8.     Cash may also sometimes flow between the Banks when there are Intercompany Transactions (as defined below) between the two operating Debtor entities.   Intercompany Transactions are invoiced and paid through Accounts Payable.

9.     The Wells Fargo and BofA Bank Accounts are both located at institutions designated as authorized depositories by the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") pursuant to the U.S. Trustee Chapter 11 Guidelines for the District Court of Delaware (the "Guidelines").

### A.     Wells Fargo Accounts – Stanadyne

10.     The primary Bank Accounts at Wells Fargo fall under three separate categories: a main operating account, ending in 1238 (the "Stanadyne Operating Account"); a disbursement account, ending in 2614 (the "Stanadyne Disbursement Account"); and a collection account, ending in 1220 (the "Stanadyne Collections Account").  All monies received from Stanadyne customers are deposited into the Stanadyne Collections Account.  The funds are swept daily from the Stanadyne Collections Account to the Stanadyne Operating Account, the main cash concentration account for Stanadyne.

11.     The Stanadyne Disbursement Account is a zero balance account, and all activity is limited to the processing of payments.  To fund Stanadyne's accounts payable and other costs of operation, money is swept out of the Stanadyne Operating Account and into the Stanadyne Disbursement Account.  Stanadyne utilizes the Stanadyne Disbursement Account to, among other things, pay vendors, suppliers, service providers, taxes, and other necessary expenses.  This zero

balance account receives funds from the Stanadyne Operating Account on an as-needed basis, and the amount of money swept up from the Stanadyne Operating Account is limited to the amount required to satisfy payables.

12.     Certain other Stanadyne expenses, such as payroll and other employee obligations, are funded directly from the Stanadyne Operating Acoount.  Further details regarding the Debtors' payroll and other employee-related processes are described more fully in the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing Debtors To Pay (A) All Prepetition Employee Obligations, (B) Prepetition Withholding Obligations, and (C) Postpetition Employee Obligations in the Ordinary Course, and (II) Authorizing Banks to Honor Related Transfers* (the "Employee Wage Motion"), filed concurrently herewith.

**B.     BofA Accounts – PPT**

13.     The BofA Bank Accounts used by PPT are structured similarly to the Wells Fargo Bank Accounts, but on more streamlined basis.  There is a primary operating account, ending in 5956 (the "PPT Operating Account"), and a disbursement account, ending in 2600 (the "PPT Disbursement Account").  All monies received from PPT customers are deposited into the PPT Operating Account, PPT's main cash concentration account.  The PPT Disbursement Account is similarly a zero balance account, and all monies are swept out of the PPT Operating Account and into the PPT Disbursement Account on an as-needed basis.

**C.     Other Miscellaneous Bank Accounts**

14.     The Debtors maintain two additional accounts at Wells Fargo.  Debtor Stanadyne PPT Holdings, Inc. maintains an account ending in 1246 (the "Parent Holdings Account").  This Debtor does not conduct any business operations; it is merely a holding company.  The sole purpose of this account is to pay federal income taxes incurred as a result of the existence of this entity and to receive dividends from its subsidiaries.  The Parent Holdings Account generally holds

a zero balance.  Funds are manually transferred between the Parent Holdings Account and the Stanadyne Operating Account on an as-needed basis.

15.     The Debtors also maintain a restricted cash collateral account at Wells Fargo, ending in 3406 (the "Collateral Account").  The Debtors are required to post cash collateral in connection certain of their existing prepetition programs, namely the Stanadyne Employee P-Card program (as defined below) and certain letters of credit related to a Stanadyne travel card and the Debtors' prior workers' compensation program through Sentry Insurance, respectively.[2]  Wells Fargo requires that the Debtors provide cash collateral in an amount equal to 110% of the weekly credit limit under the Stanadyne Employee P-Card program and in an amount equal to 105% of the outstanding letters of credit.  The funds cannot be transferred out of this account, except where there has been a corresponding reduction in potential exposure.

## II.    Existing Business Forms and Checks

16.     In the ordinary course of business, the Debtors occasionally use pre-printed check stock with the relevant Debtor's name printed thereon.  In addition, the Debtors maintain pre-printed correspondence and business forms, including but not limited to letterhead, envelopes, promotional materials and other business forms (collectively, along with the Debtors' checks, the "Business Forms").  To minimize administrative expense and delay, the Debtors request authority to continue to use their Business Forms substantially in the forms existing immediately prior to the Petition Date, without reference to the Debtors' "Debtor-in-Possession" status until the existing

---

2.   In addition to the cash collateral maintained in the Collateral Account, Stanadyne previously deposited $300,000 with Avalon Risk Management as security for a $600,000 Continuous U.S. Customs surety bond, which was issued by Avalon Risk Management.  This deposit is currently maintained by Avalon Risk Management.

stock has been exhausted, provided that the Debtors shall add the "Debtor-in-Possession" designation to any new checks ordered after the depletion of the existing stock.

17.    Parties doing business with the Debtors undoubtedly will be aware, as a result of the notice that will be sent of the filing of the Debtors' Chapter 11 Cases and the publicity of the filing, of the Debtors' status as a chapter 11 debtors-in-possession.  For this reason, the Debtors request that they be authorized to use existing checks and deposit slips without placing the label "Debtor-in-Possession" on each such form until such a time as their existing stocks are depleted.  In addition, the Debtors request a reasonable amount of time to provide for the insertion of "Debtor-in-Possession" on postpetition purchase orders and invoices.

### III.    Company Cards

#### A.    Employee P-Cards

18.    The Debtors provide corporate purchase cards to certain employees to charge reimbursable expenses, such as fuel for company vehicles, certain maintenance and repair items, and other business expenses.  Seven (7) Employee P-Cards have been issued by Wells Fargo to Stanadyne employees (the "Stanadyne Employee P-Cards") and six (6) Employee P-Cards have been issued by BofA to PPT employees (the "PPT Employee P-Cards," and together with the Stanadyne Employee P-Cards, the "Employee P-Cards").

19.    The Stanadyne Employee P-Cards have an aggregate weekly credit limit of $40,000.  The balance of all Stanadyne Employee P-Cards is direct debited from the Stanadyne Operating Account weekly by Wells Fargo.  As described above, the Stanadyne Employee P-Cards are secured by cash collateral maintained in the Collateral Account.

20.    The PPT Employee P-Cards have an aggregate daily credit limit of $72,500.  The balance of all PPT Employee P-Cards is debted from the PPT Operating Account monthly by BofA.  The PPT Employee P-Cards are not secured by any cash collateral or other security.

21.      The Debtors seek authority, but not direction, to continue using the Employee P-Cards in the ordinary course of business from and after the Petition Date, and to provide any additional security that may be required to maintain the Employee P-Cards, as they deem appropriate in their business judgment.

**B.      Travel Card**

22.      The Debtors have a single electronic credit card (the "<u>Travel Card</u>") issued by US Bank, which is used by the Debtors' travel agency to arrange air travel for employees.  The Debtors pay US Bank directly for the statement balance on the Travel Card on a monthly basis.  The Travel Card is secured by a letter of credit (cash collateral for which is maintained in the Collateral Account).

23.      The Debtors seek authority, but not direction, to continue using the Travel Card in the ordinary course of business from and after the Petition Date, and to limit the Travel Card credit usage as they deem appropriate in their business judgment.

**IV.      Bank Fees**

24.      In the ordinary course of business, the Debtors incur and pay, honor, or allow to be deducted from the appropriate Bank Accounts periodic service charges and other ordinary course fees in connection with maintaining the Cash Management System (collectively, the "<u>Bank Fees</u>").  The Debtors incur approximately $9,000 in Bank Fees each month under the Cash Management System.

25.      As of the Petition Date, the Debtors do not believe that they have any outstanding or unpaid Bank Fees.  Out of an abundance of caution, and to ensure continued access to the Bank Accounts and related banking services, the Debtors seek authority to pay any prepetition Bank Fees that may have been incurred and to continue to pay the Bank Fees in accordance with past practices.

30128691.1

V.      **Intercompany Transactions**

26.     In the ordinary course of business, the Debtors use their Cash Management System to engage in various essential intercompany transactions (the "Intercompany Transactions") with non-debtor affiliates:  Stanadyne, S.p.A. ("Stanadyne Italy"), Standadyne Changshu Corporation ("Stanadyne China"), Stanadyne India Private Ltd. ("Stanadyne India"), and Stanadyne Mideast FZE ("Stanadyne UAE") (collectively, the "Non-Debtor Affiliates").

27.     Stanadyne Italy and Stanadyne China are separate legal entities that are owned 100% by Stanadyne.  Stanadyne India is also a separate legal entity that is owned 99% by Stanadyne and 1% by Debtor Stanadyne PPT Holdings, Inc.  Stanadyne UAE is a separate legal entity that is 100% owned by Stanadyne India.  The Non-Debtor Affiliates each manufacture and sell products, such such as diesel injectors and nozzles.

28.     Certain of the Debtors routinely engage in transactions with other Debtors and the Non-Debtor Affiliates (the "Intercompany Transactions").  The Intercompany Transactions reduce administrative costs and ensure the orderly and efficient operation of the Debtors' enterprise.  The Debtors are able to easily track and ascertain all Intercompany Transactions.

29.     These Intercompany Transactions generally fall into six principal categories: (a) product sales, (b) royalty transactions; (c) service transactions; (d) employee reimbursement; (e) debt service allocation; and (f) *de minimis* transactions.  Each category is described in greater detail below.

30.     Product Sales.  The Non-Debtor Affiliates supply their products to both Stanadyne and PPT, as well as third-party purchasers.[3]  The products are often customized to the Debtors' specifications such that they are not available to the Debtors locally.  The Debtors also realize

---

3.   Stanadyne also supplies products to the Non-Debtor Affiliates to market in their respective regions.

significant cost savings by purchasing product from the Non-Debtor Affiliates because the Debtors receive the goods from the Non-Debtor Affiliates at cost plus a 15-20% markup pursuant to transfer pricing policies in place.  This pricing is significantly lower than pricing from a third-party trade supplier.  Preserving access to these products at the reduced pricing rate is vital to the Debtors' business in maintaining the lower standard cost for the Debtors' own products.

31.     Royalty Transactions.  Stanadyne has entered into intercompany license and royalty agreements with Stanadyne China and Stanadyne India that cover the trademarks, patents and related improvements for certain products integral to the business and which are owned or controlled by Stanadyne.  Stanadyne China and Stanadyne India are charged certain royalty fees under such agreements equal to a percentage of such business unit's net revenues for the licensed product(s).

32.     Service Transactions.  Pursuant to various intercompany corporate services agreement, Stanadyne provides to PPT and the Non-Debtor Affiliates various corporate services related to corporate planning and market development, human resource development, marketing business development and strategy, operations review, engineering design and oversight, and shared information technology support.  In exchange for these services, Stanadyne allocates the costs of providing these services among the companies on a monthly basis.

33.     Employee Reimbursement.  Because of the international reach of the Debtors' business, employees on the payroll of one business unit are often called upon to provide services for the Debtors' global business.  Similar to the service transactions described above, the business unit employing that particular employee will invoice the other business units for a portion of that employee's salary, in accordance with established allocation methodologies.  For instance, Stanadyne invoices PPT and the Non-Debtor Affiliates for a portion of management's salary;

Stanadyne Italy, in turn, bills Stanadyne, PPT, and the other Non-Debtor Affiliates for a portion its managing director's salary.  The salary for certain PPT personnel are allocated between Stanadyne and PPT.

34.  _Debt Service Allocation_.  Debtor PPT transfers funds to Stanadyne in payment of its portion of the outstanding prepetition secured debt.

35.  _De Minimis_ Transactions.  Certain of the Debtors engage in a variety of _de minimis_ transactions with the Non-Debtor Affiliates on an as-needed basis to fund cash activities.

36.  The above-described Intercompany Transactions result in receivables and payables between certain of the Debtors and the Non-Debtor Affiliates (the "Intercompany Claims"). Accordingly, at any given time, there may be Intercompany Claims owing either from one Debtor to another or from a Debtor to a Non-Debtor Affiliate.

37.  The Debtors maintains records of all intercompany transfers, which generally are reconciled on a monthly basis, and therefore, is able to ascertain, trace, and account for all intercompany transactions.  The Debtors will continue to do so during these Chapter 11 Cases.

38.  Each of the Intercompany Transactions were, and are, being conducted to facilitate the continued operations of the Debtors' and Non-Debtor Affiliates' businesses and are designed to maximize and appropriately allocate value for the services the Debtors and their affiliates provide.  Accordingly, the Debtors intend to continue these transactions in the ordinary course of business.  To the extent the Debtors seek to cease or materially modify any of these Intercompany Transactions during the course of these Chapter 11 Cases, the Debtors will provide notice to the U.S. Trustee and any Non-Debtor Affiliate that will be adversely affected prior to the implementation of such changes.

39.     If the Intercompany Transactions were to be discontinued, the Cash Management System and the Debtors' operations would be disrupted unnecessarily to the detriment of the Debtors, their creditors, and other stakeholders.  Because the Debtors engaged in the Intercompany Transactions on a regular basis prepetition and such transactions are common for enterprises like the Debtors, the Debtors believe that they may continue the Intercompany Transactions in the ordinary course under Bankruptcy Code section 363(c)(1), without court approval.  Nonetheless, out of an abundance of caution, the Debtors seek express authority, but not direction, to continue engaging in the Intercompany Transactions.  Consistent with their prepetition practice, the Debtors will maintain records of all transfers and can ascertain, trace, and account for all of the Intercompany Transactions.  In addition, the Debtors request that the postpetition Intercompany Transactions be granted administrative expense priority status, which will help to ensure the orderly and efficient operation of the Debtors' enterprise.

## RELIEF REQUESTED

40.     By this Motion, the Debtors seek entry of the Proposed Order, pursuant to sections 105(a), 345, 363(c)(1), and 503(b) of the Bankruptcy Code, Bankruptcy Rules 6003 and 6004(h) and Local Rule 2015-2 (i) authorizing, but not directing, the Debtors to (a) continue to operate their Cash Management System, including maintaining their Bank Accounts, Business Forms, Employee P-Cards, and Travel Card, (b) honor certain prepetition obligations related thereto, and (c) continue to engage in Intercompany Transactions; (ii) granting administrative expense priority status to postpetition Intercompany Claims; and (iii) granting related relief.  Without the requested relief, the Debtors submit that they would be unable to conduct their financial operations effectively and efficiently, which would cause significant harm to the Debtors and their estates.

41.     In addition to the foregoing, the Debtors request that the Court authorize and direct all of the Banks to continue to maintain, service, and administer the Bank Accounts and to debit

the Bank Accounts in the ordinary course of business on account of:  (a) all checks, wires, or ACH

transfers otherwise authorized by order of this Court irrespective of whether such payments relate

to prepetition goods or services; (b) all checks drawn on the Bank Accounts that are cashed at the

Banks or exchanged for cashier's checks by the payees thereof prior to the Petition Date; (c) all

checks or other items deposited in one of the Bank Accounts prior to the Petition Date that have

been dishonored or returned unpaid for any reason, together with any fees and costs in connection

therewith, to the same extent that the Debtors were responsible for such items prior to the Petition

Date; and (d) all undisputed prepetition amounts outstanding as of the date hereof, if any, owed to

the Banks as service charges for the maintenance of the Cash Management System.

### BASIS FOR RELIEF

**I.      Maintaining the Existing Cash Management System Is in the Best Interests of the Debtors, Their Creditors, and All Parties-in-Interest**

42.      The Guidelines require debtors-in-possession to, among other things:  (a) establish

one "Debtor-in-Possession" bank account for all estate monies required for the payment of taxes,

including payroll taxes; (b) close all existing bank accounts and open new "Debtor-in-Possession"

accounts; and (c) maintain a separate "Debtor-in-Possession" account for cash collateral.  *See*

*Region 3, District of Delaware Operating Guidelines for Chapter 11 Cases* (rev. 2020).  These

requirements are designed to provide a clear line of demarcation between prepetition and

postpetition claims and payments and help protect against the inadvertent payment of prepetition

claims by preventing banks from honoring checks drawn before the Petition Date.  The Debtors

submit, however, that a waiver of certain requirements is warranted.

43.      Specifically, the Bank Accounts are with the Banks, which are financially stable

banking institutions with FDIC insurance that are authorized depositories in the District of

Delaware and each is a party to a Uniform Depository Agreement with the U.S. Trustee.  To protect

against the unauthorized payment of prepetition obligations, the Debtors represent that, if they are authorized to continue to use the Bank Accounts, they will not pay, and the Banks will be directed not to pay, any debts incurred before the Petition Date, other than as authorized by this Court.

44.      Moreover, any new account that the Debtors open will be (a) with a bank that (i) is organized under the laws of the United States of America or any state therein, (ii) is insured by the FDIC, and (iii) has executed, or is willing to immediately execute, a Uniform Depository Agreement with the U.S. Trustee; (b) designated a "Debtor-in-Possession" account by the relevant bank; (c) in compliance with applicable provisions of any order governing the use of cash collateral entered in these Chapter 11 Cases.  Additionally, the Debtors will provide the U.S. Trustee with notice of the opening of any new accounts.

45.      Enforcement of the U.S. Trustee's requirements here would significantly disrupt the Debtors' business.  Indeed, as explained in more detail above, the Bank Accounts comprise an established cash management system that the Debtors must maintain to ensure collections and disbursements occur.  The Debtors' Cash Management System allows them to centrally manage all of their cash flow needs and includes the necessary accounting controls to enable the Debtors to trace funds through the system and ensure that all transactions are adequately documented and readily ascertainable.  While the Debtors' cases are pending, the Debtors will continue to maintain detailed records reflecting all transfers of funds.

46.      Accordingly, to avoid delays in payments to administrative creditors, to ensure as smooth a transition into chapter 11 as possible, and to maximize the value of their estates, the Debtors submit that (a) they must be permitted to continue to maintain their existing Bank Accounts and open new and close existing accounts as needed; and (b) the requested relief must

extend to any new accounts by providing that the new accounts are deemed to be Bank Accounts and are similarly subject to the rights, obligations, and relief granted by this Court.

47.     The key components of the Cash Management System have been used by the Debtors for many years as a customary and essential business practice.  The widespread use of such systems demonstrates the numerous benefits they provide, including the ability to control and monitor corporate funds, ensure cash availability, and reduce administrative expenses by facilitating the movement of funds.  In light of the size and complexity of the Debtors' operations, the value of the Debtors' estates cannot be maximized if the Cash Management System is substantially disrupted.  In addition, maintenance of the Cash Management system is essential to preserving a "business as usual" atmosphere and avoiding unnecessary distractions.

48.     Parties in interest will not be harmed by the Debtors' maintenance of the Cash Management System, including the Bank Accounts, because the Debtors have implemented appropriate mechanisms to ensure that unauthorized payments will not be made on account of obligations incurred prior to the Petition Date, except for those obligations which the Debtors have been authorized to pay in connection with the First Day Motions.  Specifically, with the assistance of their professionals and consistent with prior practice, the Debtors will continue to maintain detailed records of all transfers of cash and record all transactions on applicable accounts.

49.     Continuation of the Cash Management System is permitted pursuant to section 363(c)(1) of the Bankruptcy Code, which authorizes debtors-in-possession to "use property of the estate in the ordinary course of business without notice or a hearing."  11 U.S.C. § 363(c)(1).  The purpose of section 363(c)(1) is to provide a debtor-in-possession with the flexibility to engage in the ordinary transactions required to operate its business without unnecessary oversight by its creditors or the court.  *See, e.g.*, *In re Roth Am., Inc.*, 975 F.2d 949, 952 (3d Cir. 1992).  Included

within the purview of section 363(c) is a debtor's ability to continue the "routine transactions" integral to a debtor's cash management system. *See Amdura Nat'l Distrib. Co. v. Amdura Corp. (In re Amdura Corp.)*, 75 F.3d 1447, 1453 (10th Cir. 1996) (indicating that a debtor is "generally authorized to continue operating its business," including performing "routine transactions necessitated by the [existing] cash management system"); *see also Charter Co. v. Prudential Ins. Co. of Am. (In re Charter Co.)*, 778 F.2d 617, 621 (11th Cir. 1985) (indicating that an order authorizing the debtor to employ its "usual and customary" cash management system was "entirely consistent" with section 363(c)(1).

50.     Courts in this district have observed that use of an integrated cash management system "allows efficient utilization of cash resources and recognizes the impracticalities of maintaining separate cash accounts for the many different purposes that require cash." *In re Columbia Gas Sys., Inc.*, 136 B.R. 930, 934 (Bankr. D. Del. 1992), *aff'd in part and rev'd in part*, 997 F.2d 1039 (3d Cir. 1993). The Third Circuit has agreed, emphasizing the "huge administrative burden" and economic inefficiency of requiring affiliated debtors to maintain all accounts separately. *Columbia Gas Sys.*, 997 F.2d at 1061; *see also In re Southmark Corp.*, 49 F.3d 1111, 1114 (5th Cir. 1995) (maintaining an existing cash management system allows a debtor "to administer more effectively and efficiently its financial operations and assets").

51.     To the extent that use of the existing Cash Management System falls outside the ordinary course of business, such use is permitted by Bankruptcy Code sections 363(b)(1) and 105(a). Bankruptcy Code section 363(b)(1) provides, in relevant part, that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Bankruptcy Code section 105(a) further provides that this

Court may "issue any order . . . that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code. *Id*. § 105(a).

52.     Numerous courts, including in this district, in other chapter 11 cases have authorized debtors to continue to use their existing cash management systems. *See, e.g.*, *In re Knotel, Inc.*, Case No. 21-10146 (MFW) (Bankr. D. Del. Feb. 3, 2021 and Feb. 25, 2021) (granting interim and final relief); *In re Pennsylvania Real Estate Investment Trust*, Case No. 20-12737 (KBO) (Bankr. D. Del. Nov. 3, 2020 and Nov. 23, 2020) (granting interim and final relief); *In re Mallinckrodt plc*, Case No. 20-12522 (JTD) (Bankr. D. Del. Oct. 14, 2020 and Nov. 19, 2020) (granting interim and final relief); *In re Town Sports International, LLC*, Case No. 20-12168 (CSS) (Bankr. D. Del. Sep. 16, 2020 and Oct. 13, 2020) (granting interim and final relief); *In re SHL Liquidation Industries Inc.*, Case No. 20-12024 (LSS) (Bankr. D. Del. Sep. 1, 2020 and Sep. 24, 2020) (granting interim and final relief).

## II.     Maintenance of the Debtors' Existing Bank Accounts Is Warranted

53.     To comply with the Guidelines, the Debtors would need, among other things, to create a new system for manually issuing checks and paying postpetition obligations.[4]  The delays that would result from opening these accounts, revising cash management procedures and instructing customers to redirect payments would disrupt the Debtors' business.  If the Debtors are required to close their existing Bank Accounts and create a new cash management system, the Debtors will suffer significant harm from the resultant operational paralysis and incur costs from closing their existing Bank Accounts, opening new accounts, and printing new checks.

---

4.  Notwithstanding anything herein to the contrary, the Debtors reserve their right to close their prepetition Bank Accounts and open new accounts as may be necessary in the Debtors' business judgment.  The Debtors will give notice, however, to the parties listed in the Notice section below, and any Committee that may be appointed in these Chapter 11 Cases prior to opening or closing a Bank Account.

54.     To avoid substantial disruption to the normal operation of their business and to preserve a "business as usual" atmosphere, the Debtors request that they be permitted to continue to use the existing Bank Accounts without establishing separate accounts for cash collateral or tax payments.  Allowing the Debtors to maintain the Bank Accounts will assist them in accomplishing a smooth transition to operations under chapter 11.  Moreover, the Debtors can distinguish between prepetition and postpetition obligations and payments without closing the Bank Accounts and opening new ones.  Additionally, the Banks have been or are in the process of being advised not to honor checks, drafts, or other requests for payment issued prior to the Petition Date, except as otherwise expressly permitted by an order of the Court and directed by the Debtors.  Therefore, the goals of the Guidelines can be satisfied, and the Debtors' creditors can be protected, without closing the Bank Accounts.

55.     Altering the Bank Account structure would interrupt the Debtors' systems, thereby significantly disrupting the Debtors' business operations and jeopardizing the Debtors' prompt and timely payment of their obligations.  The Debtors' system provides the protections required by the Guidelines—ensuring payment of taxes—without requiring the creation of new accounts and payment procedures.

56.     Thus, the Debtors respectfully request that the Court authorize the Banks to continue to maintain, service, and administer the Bank Accounts as accounts of the Debtors as debtors-in-possession, without interruption and in the ordinary course of business.  In this regard, the Banks should be authorized to receive, process, honor, and pay any and all checks, wires, ACH transfers and other instructions, and drafts payable through, drawn, or directed on such Bank Accounts after the Petition Date by holders, makers, or other parties entitled to issue instructions with respect thereto, whether such checks, drafts, wires, or ACH transfers are dated prior to or

subsequent to the Petition Date consistent with any order of the Court and governing law; *provided*, *however*, that any check, draft, or other notification that the Debtors advised the Banks to have been drawn, issued, or otherwise presented prior to the Petition Date may be honored by the Banks only to the extent authorized by order of the Court.

57.     The Debtors also request that, to the extent the Banks honor a prepetition check or other item drawn on any account that is the subject of this Motion (a) at the direction of the Debtors, (b) in a good-faith belief that the Court has authorized such prepetition check or item to be honored, or (c) as the result of an innocent mistake despite the above-described protective measures, such Bank will not be deemed to be liable to the Debtors, their estates, or any other party on account of such prepetition check or other item honored postpetition.  Both as part of this Motion and in other motions that have been filed concurrently, the Debtors are requesting authority, but not direction, to pay certain prepetition obligations.  With respect to some of these obligations, the Debtors issued checks prior to the Petition Date that have yet to clear the banking system.  In other instances, the Debtors will issue the relevant check once the Court enters an order permitting the Debtors to do so.  The Debtors intend to inform the Banks which checks should be honored.  Therefore, the Debtors request that the Banks be authorized to rely on the representations of the Debtors with respect to whether any check or other payment order drawn or issued by the Debtors prior to the Petition Date should be honored.  The Debtors respectfully submit that such relief is reasonable and appropriate because the Banks are not in a position to independently verify or audit whether a particular item may be paid in accordance with a court order or otherwise.

58.     Although the Debtors are requesting the suspension of the requirement that they close all Bank Accounts and open new "Debtor-in-Possession" bank accounts, the Debtors may determine, in their business judgment, that opening new bank accounts and/or closing existing

Bank Accounts is in the best interests of their estates.  Nothing contained herein should prevent the Debtors from opening any additional bank accounts, or closing any existing Bank Accounts, as they may deem necessary and appropriate in their sole discretion; *provided* that any new domestic account is established at a bank that is insured with the FDIC and organized under the laws of the United States or any State therein, or, in the case of accounts that may carry a balance exceeding the insurance limitations set thereby, is an Authorized Depository.

59.    In connection with the Cash Management System, the Debtors request authorization to continue to pay, honor, or deduct from the appropriate account certain Bank Fees. As with the Cash Management System, payment of the Bank Claims will minimize disruption to the Debtors' operations and is therefore in the best interests of their estates.  Absent payment of the Bank Fees, the Banks might assert setoff rights against the funds in the Bank Accounts, freeze the Bank Accounts, and/or refuse to provide banking services to the Debtors.  Accordingly, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, the Debtors seek authority, in their sole discretion, to pay and/or reimburse the Banks in the ordinary course of business for any Bank Fees arising prior to or after the Petition Date.

60.    Within fifteen days of the date of entry of the Proposed Interim Order, the Debtors will (a) contact the Banks, (b) provide the Banks with the Debtors' employer identification numbers, and (c) identify each of the Bank Accounts as held by a "Debtor-in-Possession" in a bankruptcy case.

### III.    The Debtors Should Be Authorized To Use Existing Check Stock and Related Business Forms

61.    Local Rule 2015-2(a) provides:

> Where the debtor uses pre-printed checks, upon motion of the debtor, the Court may, without notice and hearing, permit the debtor to use its existing checks without the designation "Debtor-in-Possession" and use its existing bank accounts.  However, once the

> debtor's existing checks have been used, the debtor shall, when reordering checks, require the designation "Debtor-in-Possession" and the corresponding bankruptcy number on all such checks.

Del. Bankr. L.R. 2015-2(a).

62.     To minimize expenses to their estates, the Debtors also seek authorization to continue using the Business Forms existing immediately prior to the Petition Date, without reference to the Debtors' status as debtors-in-possession.  Modifying existing Business Forms would be burdensome and expensive and would confer no corresponding benefit upon those dealing with the Debtors, most of whom, as noted above, will be aware of the commencement of these Chapter 11 Cases.  The Debtors therefore request authorization to use their existing Business Forms without adding a "Debtor-in-Possession" or similar legend.  The Debtors will obtain new check stock bearing the designation "Debtor-in-Possession" after depleting their current check stock.  To the extent that Business Forms and checks are prepared electronically, the Debtors will add a "Debtor-in-Possession" designation to such Business Forms and checks within ten (10) days of the Petition Date.

## IV.   Cause Exists to Permit Continued Use of Intercompany Transactions and Postpetition Intercompany Claims Should Be Given Administrative Expense Status

63.     The Debtors' funds move through the Cash Management System as described above.  At any given time, there may be Intercompany Claims owing from one Debtor to another Debtor or from one Debtor to a Non-Debtor Affiliate.  The Debtors track all fund transfers in their accounting system and can ascertain, trace, and account for all such Intercompany Transactions previously described.  The Debtors, moreover, will continue to maintain records of such Intercompany Transactions.  If the Intercompany Transactions were to be discontinued, the Cash Management System and related administrative controls could be disrupted to the Debtors' and their estates' detriment.

64.    These Intercompany Transactions are made between the Debtors and Non-Debtor Affiliates in the ordinary course as part of the Cash Management System.  Because the Debtors engage in Intercompany Transactions on a regular basis and such transactions are common among enterprises like that of the Debtors, the Debtors submit that the Intercompany Transactions are ordinary course transactions within the meaning of section 363(c)(1) of the Bankruptcy Code and, thus, do not require this Court's approval.  Nonetheless, out of an abundance of caution, the Debtors respectfully request express authority to continue conducting the Intercompany Transactions in the ordinary course of business on a postpetition basis without the need for further Court order.

65.    Ordinary-course Intercompany Transactions are essential to ensuring the Debtors are able to operate their business as debtors-in-possession and to preserving and increasing the estate assets.  These Intercompany Transactions are beneficial to Debtors because the Non-Debtor Affiliates serve as key suppliers to the Debtors who save the Debtors substantial money by offering favorable pricing.  Permitting these Intercompany Transactions to continue where necessary is, therefore, vital to preserving and increasing the value of the Debtors' estates.

66.    In addition, the Non-Debtor Affiliates rely on the Debtors to fund or maintain certain of their critical systems through Intercompany Transactions because they are small business ventures that do not have sufficient infrastructure in place to do so independently. Without such Intercompany Transactions, the Non-Debtor Affiliates could not afford to fund their payroll, or to sustain their operations.  As a result, the employees of the Non-Debtor Affiliates would suffer needlessly, and the Non-Debtor Affiliates may be forced to shut down, which would force the Debtors to seek the products supplied to them by the Non-Debtor Affiliates from third-party suppliers who would likely charge significantly more for the same products and would

needlessly interrupt the Debtors' supply chain because many of the products supplied by the Non-Debtor Affiliates are customized products made specifically for the Debtors.  Moreover, any harm to the Non-Debtor Affiliates could harm the Debtors' brand, thereby diminishing value for the benefit of all stakeholders.  Finally, maintaining the Intercompany Transactions between the Debtors and the Non-Debtor Affiliates would not cause the Debtors any disruption because the Debtors and the Non-Debtor Affiliates have systems in place to ensure that reimbursement is promptly effectuated.

67.     If the Intercompany Transactions were to be discontinued, the Debtors' business would be irreparably harmed.  Ceasing the Intercompany Transactions could dramatically disrupt the Debtors' operations, which rely on the revenues received from the sale of goods supplied and services performed by the Non-Debtor Affiliates.  Failure to permit the Debtors and Non-Debtor Affiliates to continue their ordinary-course Intercompany Transactions likely would decrease the value of the Debtors' estates and dilute the recoveries of the Debtors' creditors.  Preserving the "business as usual" operating model and avoiding any substantial disruption to the Intercompany Transactions will also facilitate the Debtors' efforts to conduct an orderly sale process.  Accordingly, the Debtors respectfully submit that the continued performance of the Intercompany Transactions is in the best interest of the Debtors' estates and their creditors.  Accordingly, the Debtors should be permitted to continue such performance.

**V.      The Debtors' Existing Bank Accounts Meet the Requirements of Section 345(b) of the Bankruptcy Code**

68.     Section 345(a) of the Bankruptcy Code authorizes a debtor-in-possession to make deposits or investments of estate money in a manner "as will yield the maximum reasonable net return on such money, taking into account the safety of such deposit or investment."  11 U.S.C. § 345(a).  If a deposit or investment is not "insured or guaranteed by the United States or by a

department, agency, or instrumentality of the United States or backed by the full faith and credit of the United States," section 345(b) of the Bankruptcy Code provides that a debtor must require that the entity with which the deposit or investment is made obtain a bond in favor of the United States that is secured by the undertaking of an adequate corporate surety or deposit securities of the kind specified in 31 U.S.C. § 9303, unless the court for cause orders otherwise. *See* 11 U.S.C. § 345(b); *see also* 140 Cong. Rec. H10,767 (daily ed. Oct. 4, 1994), 1994 WL 54773 (stating that while the requirement under section 345(b) for debtor funds to be FDIC insured, collateralized, or bonded may be "wise in the case of a smaller debtor with limited funds that cannot afford a risky investment to be lost, it can work to needlessly handcuff larger, more sophisticated debtors").

69.     All of the Bank Accounts are compliant with the requirements of section 345 of the Bankruptcy Code as the Banks are deemed Authorized Depositories as set forth in the U.S. Trustee Guidelines.  Additionally, all Bank Accounts, to the best of the Debtors' knowledge, are insured by the Federal Deposit Insurance Corporation.  Out of an abundance of caution, however, to the extent that any of the Bank Accounts do not strictly comply with section 345 of the Bankruptcy Code, the Debtors submit that cause exists to waive any such noncompliance as set forth herein given that all funds are deposited safely and prudently at a financially stable banking institution.

70.     Pursuant to Local Rule 2015-2(b), and subject to certain exceptions not relevant here, a waiver of the requirements set forth in section 345(b) of the Bankruptcy Code may not be granted without notice and a hearing.  However, Local Rule 2015-2(b) provides that "if a motion for such a waiver is filed on the first day of a chapter 11 case in which there are more than 200 creditors, or otherwise with cause shown, the Court may grant an interim waiver until a hearing on the debtor's motion can be held."  Del. Bankr. L.R. 2015-2(b).

71.     Here, the Debtors satisfy both the procedural and substantive requirements necessary to obtain an interim waiver of section 345(b) of the Bankruptcy Code.  The Debtors have filed this Motion on the first day of the Chapter 11 Cases, and the Debtors, collectively, have substantially more than 200 creditors.  Accordingly, the Debtors' present request for an interim waiver is appropriate.

## REQUESTS FOR IMMEDIATE RELIEF AND WAIVER OF STAY

72.     Pursuant to Bankruptcy Rules 6003(b) and 6004(h), the Debtors seek (a) immediate entry of an order granting the relief sought herein and (b) a waiver of any stay of the effectiveness of such an order.  Bankruptcy Rule 6003(b) provides, in relevant part, that "[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the petition, issue an order granting the following . . . a motion to pay all or part of a claim that arose before the filing of the petition."  Bankruptcy Rule 6004(h) provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."  From this, courts have ruled that, where the failure to grant any such requested relief would result in immediate and irreparable harm to a debtor's estate, a court may allow a debtor to pay all or part of a claim that arose prepetition immediately.

73.     As set forth above, the continued use of the Cash Management System, Bank Accounts, Business Forms, Employee P-Cards, and Travel Card, the payment of Bank Fees, and the ability to continue to enter into Intercompany Transactions, are necessary to prevent immediate and irreparable damage to the Debtors' operations.  Accordingly, to the extent the implementation of the relief sought herein requires the payment of a prepetition claim, the Debtors submit that ample cause exists to justify (a) the immediate entry of an order granting the relief sought herein

and (b) a waiver of the 14-day stay imposed by Bankruptcy Rule 6004(h), to the extent that it applies.

## **RESERVATION OF RIGHTS**

74.     Nothing contained in this Motion or any actions taken pursuant to any order granting the relief requested by this Motion is intended or shall be construed as: (a) an admission as to the validity of any claim against a Debtor entity; (b) a waiver of the Debtors' rights to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Motion or any order granting the relief requested by this Motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to this Motion are valid, and the Debtors expressly reserve their rights to contest the extent, validity, or perfection or seek avoidance of any or all such liens.

## **NOTICE**

75.     Notice of the hearing of this Motion shall be provided to:  (i) the U.S. Trustee for the District of Delaware; (ii) the Office of the United States Attorney General for the District of Delaware; (iii) the Internal Revenue Service; (iv) the holders of the twenty (20) largest unsecured claims against the Debtors on a consolidated basis; (v) counsel for the prepetition secured lenders; (vi) the Banks; and (vii) all parties that have filed a notice of appearance and request for service of papers pursuant to Bankruptcy Rule 2002 (collectively, the "Notice Parties").  Notice of this Motion and any order entered hereon will be served in accordance with Local Rule 9013-1(m).  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

30128691.1

## <u>NO PRIOR REQUEST</u>

76.     No prior request for the relief sought herein has been made by the Debtors to this

or any other court.

*[Remainder of Page Intentionally Left Blank]*

WHEREFORE, the Debtors respectfully request that the Court enter the Proposed Interim Order and the Proposed Final Order and grant such other and further relief as may be appropriate.

Dated:  February 16, 2023
        Wilmington, Delaware

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Andrew L. Magaziner*
Michael R. Nestor (DE Bar No. 3526)
Andrew L. Magaziner (DE Bar No. 5426)
Ashley E. Jacobs (DE Bar No. 5635)
1000 North King Street
Rodney Square
Wilmington, Delaware 19801-6108
Telephone:  (302) 571-6600
Facsimile:   (302) 571-1253
Email:  mnestor@ycst.com
       amagaziner@ycst.com
       ajacobs@ycst.com

  -and-

Kathryn A. Coleman
Christopher Gartman
Elizabeth A. Beitler
HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, NY 10004-1482
Telephone: (212) 837-6000
Facsimile:  (212) 422-4726
Email:  katie.coleman@hugheshubbard.com
     chris.gartman@hugheshubbard.com
     elizabeth.beitler@hugheshubbard.com

*Proposed Counsel for the Debtors*

## **EXHIBIT A**

**Proposed Interim Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re* | Chapter 11 |
| **STANADYNE LLC, *et al.*,**[1] | Case No. 23-10207 (JTD) |
| **Debtors.** | (Jointly Administered) |
| | Re: D.I. _____ |

**INTERIM ORDER (I) AUTHORIZING DEBTORS TO (A) CONTINUE TO MAINTAIN THEIR EXISTING CASH MANAGEMENT SYSTEM, BANK ACCOUNTS, AND BUSINESS FORMS, (B) HONOR CERTAIN PREPETITION OBLIGATIONS RELATED THERETO, AND (C) CONTINUE TO PERFORM ORDINARY COURSE INTERCOMPANY TRANSACTIONS; (II) GRANTING ADMINISTRATIVE EXPENSE STATUS TO ORDINARY COURSE POSTPETITION INTERCOMPANY CLAIMS; AND (III) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors") for entry of interim and final orders pursuant to sections 105(a), 345, 363(c)(1), 364(a), and 503(b) of title 11 of the United States Code (the "Bankruptcy Code"), Rules 6003 and 6004(h) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2015-2 and 9013-1(m) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") (i) authorizing, but not directing, the Debtors to (a) continue to operate their existing cash management systems, including maintenance of the Debtors' existing bank accounts, checks, and business forms, (b) honor certain prepetition obligations related thereto, and (c) continue to perform intercompany transactions in the ordinary course consistent with

---

1.  The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number are: Stanadyne LLC (0378); Pure Power Technologies, Inc. (5202); Stanadyne PPT Holdings, Inc. (2594); and Stanadyne PPT Group Holdings, Inc. (1734).  The Debtors' headquarters are located at 405 White Street, Jacksonville, North Carolina 28546.

2.  Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Motion.

historical practice; (ii) granting administrative expense priority status to postpetition

intercompany claims; and (iii) granting related relief, as more fully set forth in the Motion; and

upon consideration of the *Declaration of John Pinson, Chief Executive Officer of Stanadyne*

*LLC, in Support of First Day Relief*; and consideration of the Motion and the relief requested

therein being a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and venue being proper

before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having jurisdiction to

consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and

1334; and due and proper notice of the hearing to consider the relief requested herein (the

"Hearing") having been provided to the Notice Parties; and it appearing that no other or further

notice need be provided; and the legal and factual bases set forth in the Motion establishing just

and sufficient cause to grant the relief requested therein; and the relief granted herein being in the

best interests of the Debtors, their estates, creditors, and all parties-in-interest; and the Court

having held the Hearing with the appearances of interested parties noted in the record of the

Hearing; and no objection to the Motion having been filed or made at the Hearing on the Motion;

and upon all of the proceedings before the Court and after due deliberation and sufficient cause

appearing therefor;

> IT IS HEREBY ORDERED THAT:

> 1.    The Motion is GRANTED as set forth herein on an interim basis.

> 2.    The Debtors are authorized, but not directed, to: (a) continue operating the Cash

Management System used prior to the commencement of these Chapter 11 Cases; (b) honor their

prepetition obligations related thereto; and (c) continue to perform Intercompany Transactions

consistent with historical practice.

3.     The Debtors are further authorized, but not directed, to: (a) continue to use, with the same account numbers, the Bank Accounts in existence as of the Petition Date, including those accounts identified on **Exhibit 1** attached hereto, and need not comply with guidelines relating to bank accounts set forth in the U.S. Trustee Guidelines; (b) use, in their present form, any pre-printed correspondence and Business Forms (including checks and letterhead) without reference to the Debtors' status as debtors-in-possession; (c) treat the Bank Accounts for all purposes as accounts of the Debtors as debtors-in-possession; (d) deposit funds in and withdraw funds from the Bank Accounts by all usual means, including checks, ACH transfers, wire transfers, and other debits; and (e) pay any ordinary course Bank Claims incurred in connection with the Bank Accounts, and to otherwise perform their obligations under the documents governing the Bank Accounts; *provided* that once the Debtors' pre-printed correspondence, Business Forms (including letterhead) and existing checks have been used, the Debtors shall, when reordering, require the designation "Debtor-in-Possession" and the corresponding bankruptcy case number on all such documents; *provided, further*, that with respect to checks which the Debtors or their agents print themselves, the Debtors shall begin printing the "Debtor-in-Possession" legend and the bankruptcy case number on such items within ten (10) days of the date of entry of this Order.

4.     Within fifteen (15) days of the date of entry of this Order, the Debtors shall (a) contact the Banks, (b) provide the Banks with the Debtors' employer identification numbers, and (c) identify each of the Bank Accounts as held by a "Debtor-in-Possession" in a bankruptcy case.

5.     The Banks are authorized and directed to continue to service and administer the Bank Accounts as debtor-in-possession accounts without interruption, and to accept and honor all representations from the Debtors as to which checks, drafts, wires or ACH transfers shall be

honored or dishonored consistent with any order(s) of this Court and governing law, whether such checks, drafts, wires or ACH transfers are dated prior to or subsequent to the Petition Date.

6.      The Banks shall implement reasonable handling procedures designed to effectuate the terms of this Order, and if it implements such handling procedures and then honors a prepetition check or other item drawn on any Bank Account that is the subject of this Order either (i) at the direction of the Debtors to honor such prepetition check or item; (ii) in good faith believe that the Court has authorized, or intends to authorize, such prepetition check or item to be honored; or (iii) as a result of an innocent mistake made despite implementation of such handling procedures, the Banks shall not be deemed in violation of this Order or have liability for a prepetition or other item drawn on either Bank Account that is subject to this Order.

7.      The Banks are authorized to charge back against the Bank Accounts (i) any returned items drawn or presented against the Bank Accounts, regardless of whether such returned items originated prepetition or postpetition, and (ii) any overadvances, credit balances or other customary fees or expenses on the Bank Accounts that arise in the ordinary course of business, either prepetition or postpetition, in connection with the use and management of such Bank Accounts; *provided*, *however*, that the Banks shall not be required to make transfers from or honor any draws against any of the Bank Accounts except to the extent of collected funds available in such respective Bank Accounts.

8.      The Banks are authorized to (i) continue to charge the Debtors for certain services and other fees, costs, charges and expenses (collectively, the "Bank Fees") and (ii) charge back returned items, whether such items are dated prior to, on or subsequent to the Petition Date, to the Bank Accounts in the ordinary course, and the Debtors are authorized to pay such fees.

9.      Nothing contained herein shall prevent the Debtors from closing any Bank Account(s) or opening any additional bank accounts, as they may deem necessary and appropriate, and any relevant bank is authorized to honor the Debtors' requests to close or open such Bank Accounts or additional bank accounts, as the case may be, *provided, however*, that any new account shall be with a bank that is insured with the Federal Deposit Insurance Corporation and that is organized under the laws of the United States or any State therein, and *provided further, however*, that notice of the opening or closure of any account shall be given to the U.S. Trustee and any Committee.

10.     The Debtors are authorized, from and after the Petition Date, to continue to engage in Intercompany Transactions in the ordinary course of business, including transactions with Non-Debtor Affiliates.  All Intercompany Claims arising from postpetition Intercompany Transactions shall be entitled to administrative expense priority status pursuant to section 503(b)(1) of the Bankruptcy Code; *provided, however*, that the Debtors shall maintain detailed records reflecting all transfers of funds, so that all such Intercompany Transactions, including prepetition and postpetition Intercompany Transactions, may be readily ascertained, traced, and recorded properly on applicable accounts.  The Debtors shall continue to maintain detailed records in the ordinary course of business reflecting transfers of cash, if any, including Intercompany Transactions, so as to permit all such transactions to be readily ascertained.

11.     The requirement in the Guidelines that the Debtors establish a specific new bank account for tax payments is waived.  The Debtors' time to comply with section 345(b) of the Bankruptcy Code is hereby extended for a period of sixty (60) days from the date of this Order (the "Extension Period"), *provided, however*, that such extension is without prejudice to the

Debtors' right to request a further extension of the Extension Period or the waiver of the requirements of section 345(b) in these Chapter 11 Cases.

12.     This Order shall apply to any and all Bank Accounts actually in, or linked to, the Cash Management System, even if such Bank Accounts do not appear on the list attached as **Exhibit 1** to this Order.  Any and all accounts opened by the Debtors on or after the Petition Date at any Bank shall be deemed a Bank Account (as if it had been opened prior to the Petition Date and listed on **Exhibit 1**) and any and all Banks at which such accounts are opened shall similarly be subject to the rights and obligations of this Order.

13.     The Debtors are authorized, but not directed, to continue using their Employee P-Cards and Travel Card in the ordinary course of business and to continue providing any existing security for the Employee P-Cards and Travel Card.  The Employee P-Card and Travel Card issuing banks are authorized to honor all such charges made on said cards *nunc pro tunc* to the Petition Date, whether they are made prior to, on, or subsequent to the Petition Date.  The said issuing banks have no duty to inquire as to whether any such charges are authorized by an order of this Court.

14.     Notwithstanding the relief granted in this Order and any actions taken pursuant to such relief, nothing in this Order shall be deemed: (a) an admission as to the validity of any claim against a Debtor entity; (b) a waiver of the Debtors' rights to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Order or the Motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise)

satisfied pursuant to the Motion are valid, and the Debtors expressly reserve their rights to contest the extent, validity, or perfection or seek avoidance of any or all such liens.

15. Notwithstanding anything in this Order to the contrary, the relief granted herein shall be subject to the orders authorizing postpetition financing and the use of cash collateral and any applicable budget thereunder.

16. Bankruptcy Rule 6003 and Local Rule 9013-1(m) have been satisfied because the relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors.

17. Notwithstanding any applicability of Bankruptcy Rule 6004(h), the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

18. The Debtors are authorized and empowered to take such actions as may be necessary and appropriate to implement the terms of this Order.

19. This Court shall retain jurisdiction with respect to all matters relating to the interpretation or implementation of this Order.

20. A final hearing to consider the relief requested in the Motion shall be held on _____, _____ at _____ **(Prevailing Eastern Time)** and any objections or responses to the Motion shall be in writing, filed with the Court, and served as to be actually received on or prior to _____, _____ at **4:00 p.m. (Prevailing Eastern Time)**.

## EXHIBIT 1

### LIST OF DEBTOR STANADYNE LLC BANK ACCOUNTS

| Bank | Bank Account No. (last four digits) | Balance as of Petition Date | Description |
|---|---|---|---|
| Wells Fargo Bank, N.A. | 1238 | $1,180,773.84 | Main Operating Account |
| Wells Fargo Bank, N.A. | 1220 | $0 | Controlled Disbursement Account |
| Wells Fargo Bank, N.A. | 2614 | $0 | Collections Account |
| Wells Fargo Bank, N.A. | 3406 | $306,500 | Collateral / Pledge Account |

### LIST OF DEBTOR PURE POWER TECHNOLOGIES, INC. BANK ACCOUNTS

| Bank | Bank Account No. (last four digits) | Balance as of Petition Date | Description |
|---|---|---|---|
| Bank of America, N.A. | 5956 | $2,355,200.17 | Main Operating Account |
| Bank of America, N.A. | 2600 | $0 | Disbursement Account |

### LIST OF STANADYNE PPT HOLDINGS, INC. BANK ACCOUNTS

| Bank | Bank Account No. (last four digits) | Balance as of Petition Date | Description |
|---|---|---|---|
| Wells Fargo Bank, N.A. | 1246 | $0 | Main Account |

**<u>EXHIBIT B</u>**

**Proposed Final Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| *In re* | Chapter 11 |
| **STANADYNE LLC, *et al.*,**[7] | Case No. 23-10207 (JTD) |
| **Debtors.** | (Jointly Administered) |
|  | Re: D.I. _____ |

**FINAL ORDER (I) AUTHORIZING DEBTORS TO (A) CONTINUE TO MAINTAIN
THEIR EXISTING CASH MANAGEMENT SYSTEM, BANK ACCOUNTS, AND
BUSINESS FORMS, (B) HONOR CERTAIN PREPETITION OBLIGATIONS
RELATED THERETO, AND (C) CONTINUE TO PERFORM ORDINARY COURSE
INTERCOMPANY TRANSACTIONS; (II) GRANTING ADMINISTRATIVE EXPENSE
STATUS TO ORDINARY COURSE POSTPETITION INTERCOMPANY CLAIMS;
AND (III) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors") for entry of an interim and final orders pursuant to sections 105(a), 345, 363(c)(1), 364(a), and 503(b)  of title 11 of the United States Code (the "Bankruptcy Code"), Rules 6003 and 6004(h) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2015-2 and 9013-1(m) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") (i) authorizing, but not directing, the Debtors to (a) continue to operate their existing cash management systems, including maintenance of the Debtors' existing bank accounts, checks, and business forms, (b) honor certain prepetition obligations related thereto, and (c) continue to perform intercompany transactions in the ordinary course consistent with

---

7.   The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number are: Stanadyne LLC (0378); Pure Power Technologies, Inc. (5202); Stanadyne PPT Holdings, Inc. (2594); and Stanadyne PPT Group Holdings, Inc. (1734).  The Debtors' headquarters are located at 405 White Street, Jacksonville, North Carolina 28546.

2.   Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Motion.

historical practice; (ii) granting administrative expense priority status to postpetition intercompany claims; and (iii) granting related relief, as more fully set forth in the Motion; and upon consideration of the *Declaration of John Pinson, Chief Executive Officer of Stanadyne LLC, in Support of First Day Relief*; and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334; and due and proper notice of the hearing to consider the relief requested herein (the "Hearing") having been provided to the Notice Parties; and it appearing that no other or further notice need be provided; and the legal and factual bases set forth in the Motion establishing just and sufficient cause to grant the relief requested therein; and the relief granted herein being in the best interests of the Debtors, their estates, creditors, and all parties-in-interest; and the Court having held the Hearing with the appearances of interested parties noted in the record of the Hearing; and no objection to the Motion having been filed or made at the Hearing on the Motion; and upon all of the proceedings before the Court and after due deliberation and sufficient cause appearing therefor;

IT IS HEREBY ORDERED THAT:

1.      The Motion is GRANTED as set forth herein.

2.      The Debtors are authorized, but not directed, to: (a) continue operating the Cash Management System used prior to the commencement of these Chapter 11 Cases; (b) honor their prepetition obligations related thereto; and (c) continue to perform Intercompany Transactions consistent with historical practice.

3.      The Debtors are further authorized, but not directed, to: (a) continue to use, with the same account numbers, the Bank Accounts in existence as of the Petition Date, including those accounts identified on **Exhibit 1** attached hereto, and need not comply with guidelines relating to bank accounts set forth in the U.S. Trustee Guidelines; (b) use, in their present form, any pre-printed correspondence and Business Forms (including checks and letterhead) without reference to the Debtors' status as debtors-in-possession; (c) treat the Bank Accounts for all purposes as accounts of the Debtors as debtors-in-possession; (d) deposit funds in and withdraw funds from the Bank Accounts by all usual means, including checks, ACH transfers, wire transfers, and other debits; and (e) pay any ordinary course Bank Claims incurred in connection with the Bank Accounts, and to otherwise perform their obligations under the documents governing the Bank Accounts; *provided* that once the Debtors' pre-printed correspondence, Business Forms (including letterhead) and existing checks have been used, the Debtors shall, when reordering, require the designation "Debtor-in-Possession" and the corresponding bankruptcy case number on all such documents; *provided, further*, that with respect to checks which the Debtors or their agents print themselves, the Debtors shall begin printing the "Debtor-in-Possession" legend and the bankruptcy case number on such items within ten (10) days of the date of entry of this Order.

4.      The Banks are authorized and directed to continue to service and administer the Bank Accounts as debtor-in-possession accounts without interruption, and to accept and honor all representations from the Debtors as to which checks, drafts, wires or ACH transfers shall be honored or dishonored consistent with any order(s) of this Court and governing law, whether such checks, drafts, wires or ACH transfers are dated prior to or subsequent to the Petition Date.

5.      The Banks shall implement reasonable handling procedures designed to effectuate the terms of this Order, and if it implements such handling procedures and then honors a prepetition

check or other item drawn on any Bank Account that is the subject of this Order either (i) at the direction of the Debtors to honor such prepetition check or item; (ii) in good faith believe that the Court has authorized, or intends to authorize, such prepetition check or item to be honored; or (iii) as a result of an innocent mistake made despite implementation of such handling procedures, the Banks shall not be deemed in violation of this Order or have liability for a prepetition or other item drawn on either Bank Account that is subject to this Order.

6.      The Banks are authorized to charge back against the Bank Accounts (i) any returned items drawn or presented against the Bank Accounts, regardless of whether such returned items originated prepetition or postpetition, and (ii) any overadvances, credit balances or other customary fees or expenses on the Bank Accounts that arise in the ordinary course of business, either prepetition or postpetition, in connection with the use and management of such Bank Accounts; *provided*, *however*, that the Banks shall not be required to make transfers from or honor any draws against any of the Bank Accounts except to the extent of collected funds available in such respective Bank Accounts.

7.      The Banks are authorized to (i) continue to charge the Debtors for certain services and other fees, costs, charges and expenses (collectively, the "Bank Fees") and (ii) charge back returned items, whether such items are dated prior to, on or subsequent to the Petition Date, to the Bank Accounts in the ordinary course, and the Debtors are authorized to pay such fees.

8.      Nothing contained herein shall prevent the Debtors from closing any Bank Account(s) or opening any additional bank accounts, as they may deem necessary and appropriate, and any relevant bank is authorized to honor the Debtors' requests to close or open such Bank Accounts or additional bank accounts, as the case may be, *provided, however*, that any new account shall be with a bank that is insured with the Federal Deposit Insurance Corporation and that is

organized under the laws of the United States or any State therein, and *provided further, however*, that notice of the opening or closure of any account shall be given to the U.S. Trustee and any Committee.

9.      The Debtors are authorized, from and after the Petition Date, to continue to engage in Intercompany Transactions in the ordinary course of business, including transactions with Non-Debtor Affiliates, and all Intercompany Claims arising from postpetition Intercompany Transactions shall be entitled to administrative expense priority status pursuant to section 503(b)(1) of the Bankruptcy Code; *provided, however*, that the Debtors shall maintain detailed records reflecting all transfers of funds, so that all such transactions, including prepetition and postpetition transactions, may be readily ascertained, traced, and recorded properly on applicable accounts.  The Debtors shall continue to maintain detailed records in the ordinary course of business reflecting transfers of cash, if any, including Intercompany Transactions, so as to permit all such transactions to be readily ascertained.

10.     The requirement in the Guidelines that the Debtors establish a specific new bank account for tax payments is waived.  The Debtors' time to comply with section 345(b) of the Bankruptcy Code is hereby extended for a period of sixty (60) days from the date of this Order (the "Extension Period"), *provided, however*, that such extension is without prejudice to the Debtors' right to request a further extension of the Extension Period or the waiver of the requirements of section 345(b) in these Chapter 11 Cases.

11.     This Order shall apply to any and all Bank Accounts actually in, or linked to, the Cash Management System, even if such Bank Accounts do not appear on the list attached as **Exhibit 1** to this Order.  Any and all accounts opened by the Debtors on or after the Petition Date at any Bank shall be deemed a Bank Account (as if it had been opened prior to the Petition Date

and listed on **Exhibit 1**) and any and all Banks at which such accounts are opened shall similarly be subject to the rights and obligations of this Order.

12. The Debtors are authorized, but not directed, to continue using their Employee P-Cards and Travel Card in the ordinary course of business and to continue providing any existing security for the Employee P-Cards and Travel Card. The Employee P-Card and Travel Card issuing banks are authorized to honor all such charges made on said cards *nunc pro tunc* to the Petition Date, whether they are made prior to, on, or subsequent to the Petition Date. The said issuing banks have no duty to inquire as to whether any such charges are authorized by an order of this Court.

13. Notwithstanding the relief granted in this Order and any actions taken pursuant to such relief, nothing in this Order shall be deemed: (a) an admission as to the validity of any claim against a Debtor entity; (b) a waiver of the Debtors' rights to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Order or the Motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to the Motion are valid, and the Debtors expressly reserve their rights to contest the extent, validity, or perfection or seek avoidance of any or all such liens.

14. Notwithstanding anything in this Order to the contrary, the relief granted herein shall be subject to the orders authorizing postpetition financing and the use of cash collateral and any applicable budget thereunder.

15.     Bankruptcy Rule 6003 and Local Rule 9013-1(m) have been satisfied because the relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors.

16.     Notwithstanding any applicability of Bankruptcy Rule 6004(h), the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

17.     The Debtors are authorized and empowered to take such actions as may be necessary and appropriate to implement the terms of this Order.

18.     This Court shall retain jurisdiction with respect to all matters relating to the interpretation or implementation of this Order.

## EXHIBIT 1

### LIST OF DEBTOR STANADYNE LLC BANK ACCOUNTS

| Bank | Bank Account No. (last four digits) | Balance as of Petition Date | Description |
|---|---|---|---|
| Wells Fargo Bank, N.A. | 1238 | $1,180,773.84 | Main Operating Account |
| Wells Fargo Bank, N.A. | 1220 | $0 | Controlled Disbursement Account |
| Wells Fargo Bank, N.A. | 2614 | $0 | Collections Account |
| Wells Fargo Bank, N.A. | 3406 | $306,500 | Collateral / Pledge Account |

### LIST OF DEBTOR PURE POWER TECHNOLOGIES, INC. BANK ACCOUNTS

| Bank | Bank Account No. (last four digits) | Balance as of Petition Date | Description |
|---|---|---|---|
| Bank of America, N.A. | 5956 | $2,355,200.17 | Main Operating Account |
| Bank of America, N.A. | 2600 | $0 | Disbursement Account |

### LIST OF STANADYNE PPT HOLDINGS, INC. BANK ACCOUNTS

| Bank | Bank Account No. (last four digits) | Balance as of Petition Date | Description |
|---|---|---|---|
| Wells Fargo Bank, N.A. | 1246 | $0 | Main Account |