## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re* | Chapter 11 |
| **STANADYNE LLC, *et al.*,**[1] | Case No. 23-10207 (JTD) |
| **Debtors.** | (Joint Administration Requested) |

**DEBTORS' MOTION FOR AN ORDER (I) AUTHORIZING THE DEBTORS TO (A) CONTINUE THEIR WORKERS' COMPENSATION PROGRAMS AND THEIR LIABILITY, PROPERTY AND OTHER INSURANCE PROGRAMS AND (B) PAY CERTAIN OBLIGATIONS IN RESPECT THEREOF, AND (II) AUTHORIZING THE DEBTORS' FINANCIAL INSTITUTIONS TO HONOR AND PROCESS CHECKS AND TRANSFERS RELATED TO SUCH OBLIGATIONS**

The debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), hereby move (the "Motion"), pursuant to sections 105(a), 363(b) and 503(b) of title 11 of the United States Code (the "Bankruptcy Code") for an interim order substantially in the form annexed hereto as **Exhibit A** (the "Interim Order") and a final order substantially in the form annexed hereto as **Exhibit B** (the "Final Order") (i) authorizing the Debtors to continue their workers' compensation programs and their liability, property and other insurance programs, and pay certain obligations in respect thereof, and (ii) authorizing the Debtors' financial institutions to honor and process checks and transfers related to such obligations. In support of the Motion, the Debtors submit the *Declaration of John Pinson, Chief Executive Officer of Stanadyne LLC, in Support of First Day Relief*, filed contemporaneously herewith (the "Pinson Declaration"), and respectfully submit as follows:

---

1. The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number are: Stanadyne LLC (0378); Pure Power Technologies, Inc. (5202); Stanadyne PPT Holdings, Inc. (2594); and Stanadyne PPT Group Holdings, Inc. (1734). The Debtors' headquarters are located at 405 White Street, Jacksonville, North Carolina 28546.

## JURISDICTION AND VENUE

1.      The Court has jurisdiction over the Application pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference of the United States District Court for the District of Delaware* dated as February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors confirm their consent pursuant to Local Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory and rule bases for the relief requested herein are sections 105(a), 363(b) and 503(b) of the Bankruptcy Code.

## BACKGROUND

3.      On February 16, 2023 (the "Petition Date"), the Debtors commenced their bankruptcy cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases").  No trustee, examiner, or creditors' committee has been appointed in the Chapter 11 Cases.  The Debtors are operating their respective businesses as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4.      The events leading up to the Petition Date and the facts and circumstances supporting the relief requested herein are set forth in the Pinson Declaration.

## RELIEF REQUESTED

5.      The Debtors are the primary or additional policyholders under certain workers' compensation, business liability, and various liability, property and other insurance

policies and programs, which the Debtors pay directly (collectively, the "<u>Insurance Programs</u>").[2] The Debtors also pay a portion of their premiums through a premium financing agreement.

6.      By this Motion, the Debtors request entry of an order authorizing the Debtors, subject to and in accordance with any approved debtor-in-possession financing facility, any order regarding the Debtors' postpetition financing or use of cash collateral, and any budget in connection therewith (such budget, the "<u>Budget</u>") to (a) continue their Insurance Programs on an uninterrupted basis in accordance with the practices and procedures in effect prior to the Petition Date, and to renew their Insurance Programs or obtain replacement coverage as needed in the ordinary course of business without further Court approval, and (b) pay, in their sole discretion (but subject to and in accordance with any orders authorizing postpetition financing and the use of cash collateral and the applicable budget thereunder), all undisputed premiums, payments pursuant to the premium finance agreement, claims, deductibles, administrative fees, broker fees and other obligations relating to the Insurance Programs that were or are due and payable, whether relating to the period prior to or following the Petition Date (collectively, the "<u>Insurance Obligations</u>").[3] As of the Petition Date, aside from monthly Workers' Compensation premium payments totaling approximately $26,000 per month, the Debtors believe that they have paid all outstanding prepetition Insurance Obligations, but will owe approximately $286,000 in ordinary course payments postpetition under the Insurance Obligations, which is owed on account of Brokerage Fees ($17,500) and premium financing obligations ($268,000).  The Debtors also typically pay

---

2.   In addition to the Insurance Programs discussed herein, Debtors maintains several insurance policies with respect to, among other things, employee health, dental, disability and life insurance benefits.  These policies are addressed in a separate motion filed contemporaneously herewith pertaining to the Debtors' employee wage policies and benefits programs.

3.   For the avoidance of doubt, the Insurance Obligations include the Workers' Compensation Premiums (as defined below).

approximately $2,000 per month on account of prepetition runoff obligations relating to prior Workers' Compensation insurance policies.

7.    In furtherance of the foregoing, the Debtors request that the Court authorize banks and other financial institutions at which the Debtors maintain disbursement accounts to receive, honor, process and pay, to the extent of funds on deposit, any and all checks drawn or electronic fund transfers requested or to be requested by the Debtors relating to the Insurance Programs or the Insurance Obligations.

**THE DEBTORS' INSURANCE PROGRAMS AND RELATED OBLIGATIONS**

**I.    General Information as to the Insurance Programs**

8.    In connection with the operation of their businesses, the Debtors maintain the Insurance Programs through several different insurance carriers (the "Insurance Carriers"), including, but not limited to, the Insurance Programs and Insurance Carriers identified in **Exhibit C** to this Motion.  The Insurance Programs provide the Debtors with insurance coverage for liabilities relating to, among other things, general liability, workers' compensation, directors' and officers' liability (including excess liability), foreign general liability, fiduciary liability, commercial property liability, commercial auto liability and various other property-related liability and general liabilities.  The Insurance Programs also include any new or similar policies entered into by the Debtors due to expiration or otherwise.  Continuation of the Insurance Programs is essential to the operation of the Debtors' businesses and is necessary to protect the Debtors from catastrophic liability.

9.    The Debtors are required to pay premiums under the Insurance Programs based upon rates established by the applicable Insurance Carrier.  For the 2022/2023 policy period, the annual premiums for the Insurance Programs totaled approximately $1,700,000 in the aggregate.  The Debtors pay premiums in full, directly or through premium financing arrangements

discussed below, to the Insurance Carriers at the commencement of the respective policies or on a prorated basis.

10.     In addition to annual premiums, the Debtors may be required to pay various deductibles and retentions for claims asserted under certain Insurance Programs.  The amounts of the applicable deductibles and retentions are set forth in **Exhibit C** attached hereto.  As of the Petition Date, the Debtors believe that they have paid all monthly charges and retrospective premium adjustments that have been billed by the Insurance Carriers for all periods through the Petition Date.

11.     Some of the Insurance Programs will expire or mature following the Petition Date and the Debtors may be required to pay premiums in connection with the renewal of such Insurance Programs.  If the Debtors cease making payments on the Policies, the Insurance Carriers may not allow the Debtors to renew these Policies at the current rates in the future.  Though the Debtors do not believe that they need Court approval to amend, extend or renew the Insurance Programs in the ordinary course of business or pay any associated premiums in connection with such amendment, extension or renewal, they hereby seek the authority to do so out of an abundance of caution.

## II.     The Workers' Compensation Program

12.     The Debtors are required to maintain workers' compensation coverage in each state in which they have employees, in order to cover claims arising from or related to such employment (the "Workers' Compensation Program").   Under the Workers' Compensation Program, the Debtors are insured through the Hanover American Insurance Company for statutory liabilities with $1,000,000 per occurrence coverage in the following covered states:  Connecticut, North Carolina, South Carolina, Michigan, Florida, Illinois, Indiana, and New Jersey.  As of the

Petition Date, the Debtors believe that they have paid all Workers' Compensation Premiums for all periods through the Petition Date.

13.     The Debtors pay approximately $26,000 per month in premiums with respect to the Workers' Compensation Program for the policy period July 1, 2022 to July 1, 2023. The Debtors also typically pay approximately $2,000 per month on account of prepetition runoff obligations relating to prior Workers' Compensation insurance policies, which amount varies and could be larger or smaller in a given month based on the amount of claims.

14.     Although the Debtors do not believe that they need Court approval for any further amendment, extension or renewal of the Workers' Compensation Program in the ordinary course of business or to pay any associated premiums in connection with such amendment, extension or renewal, they hereby seek the authority to do so out of an abundance of caution.

## III.    **Insurance Brokers**

15.     In connection with the Insurance Programs, the Debtors employ the services of (i) Marsh and (ii) Risk Strategies (collectively, the "Insurance Brokers") to assist them with the procurement, placement and negotiation of their Insurance Programs.  The Insurance Brokers assist the Debtors in obtaining comprehensive insurance coverage for the Debtors' operations in the most cost-effective manner possible and enable the Debtors to obtain policies on advantageous terms and at competitive rates.

16.     The Insurance Brokers charge brokerage fees (the "Brokerage Fees"), which are typically paid by the applicable Insurance Carrier.  As of the Petition Date, the Debtors do not believe that they owe any prepetition Brokerage Fees to Marsh.  Risk Strategies charges its Brokerage Fees in quarterly installments, such that the Debtors will owe $17,500 in April 2023 for the prepetition Brokerage Fees associated with the current policy period.  Fees or commissions (or both) may also become due to the Insurance Brokers in connection with policy renewals.  Although

30128699.1

the Debtors do not believe that they need Court approval to pay Brokerage Fees that may become

due in the ordinary course, they hereby seek the authority to do so out of an abundance of caution.

## IV.    Premium Financing Agreement

17.    The Debtors have determined in their business judgment that it is

economically advantageous to finance the payment of premiums for certain Policies.  Accordingly,

in the ordinary course of the Debtors' business, the Debtors finance the premiums on certain

Policies pursuant to one commercial premium financing agreement (the "PFA") with Intrust Bank,

N.A. (the "Premium Financing Company").

18.    The Debtors presently finance a total of $970,420.90 of their insurance

premiums with the PFA.  Pursuant to the PFA, the Debtors paid a cash down payment totaling

$97,042.09.  The PFA requires monthly installment payments of $89,331.50 due on the 1st day of

each month beginning on August 1, 2022 and continuing for a period of ten months.  The annual

interest rate under the PFA is 4.95%. The terms of the PFA provide that the Debtors pay the

Premium Financing Company monthly installments in exchange for the Premium Financing

Company's agreement to pay the annual insurance premiums, after adjustment for any down

payment paid by the Debtors, to certain of the Insurance Carriers.

19.    Pursuant to the PFA, the Debtors' obligations to the Premium Financing

Company are collateralized by a security interest in the Policies financed through the PFA.

Additionally, pursuant to the PFA, upon an event of default, the Debtors appoint the Premium

Financing Company as the Debtors' Attorney-in-Fact and grant the Premium Financing Company

the authority to cancel the Policies covered by the PFA.

20.    If the Debtors are unable to make payments under the PFA, the Premium

Financing Company may impose a late fee totaling 5.0% of the installment due, and may attempt

to terminate the Policies to recoup losses.   The Debtors would then be required to obtain

30128699.1

replacement insurance on an expedited basis and at great cost to their estates.  Even if the Premium

Financing Company or the Insurance Carriers were not permitted to terminate the Policies, any

interruption of payments may negatively affect the Debtors' ability to extend the current Policies

or acquire new insurance coverage in the future.

## BASIS FOR RELIEF

**I.**     **Cause Exists to Authorize the Continuation of the Debtors' Insurance Programs
and the Payment of the Debtors' Insurance Obligations**

21.     Pursuant to section 503(b)(1) of the Bankruptcy Code, a debtor may incur,

and the court, after notice and a hearing, shall allow as administrative expenses, among other

things, "the actual, necessary costs and expenses of preserving the estate."  In addition, pursuant

to section 363(b) of the Bankruptcy Code, a debtor may, in the exercise of its sound business

judgment and after notice and a hearing, use property of the estate outside of the ordinary course

of business.  Section 105(a) of the Bankruptcy Code further provides:

> The court may issue any order, process, or judgment that is
> necessary or appropriate to carry out the provisions of this title.  No
> provision of this title providing for the raising of an issue by a party
> in interest shall be construed to preclude the court from, *sua sponte*,
> taking any action or making any determination necessary or
> appropriate to enforce or implement court orders or rules, or to
> prevent an abuse of process.

The Debtors submit that the use of estate funds for payment of the Insurance Obligations is

permitted by sections 503(b)(1), 363(b) and 105(a) as necessary costs of preserving the estate.

22.     Most of the Insurance Obligations under the Debtors' Insurance Programs

will constitute postpetition obligations of the Debtors' estates.  However, to the extent that the

Insurance Obligations are prepetition claims, such obligations are necessary and appropriate, and

the Debtors respectfully submit that payment of such obligations should be authorized under

sections 363(b) and 105(a) of the Bankruptcy Code pursuant to the "doctrine of necessity."

23.    The "doctrine of necessity" functions in a chapter 11 case as a mechanism by which the bankruptcy court can exercise its equitable power to allow payment of critical prepetition claims not explicitly authorized by the Bankruptcy Code.  *See, e.g.*, *In re Lehigh & New England Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (holding that a court may authorize payment of prepetition claims if such payment is essential to continued operation of the debtor); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 176 (Bankr. S.D.N.Y. 1989) (authorizing the payment of prepetition employee wages and benefits while recognizing the judicial power to authorize a debtor "to pay prepetition claims where such payment is essential to the continued operation of the debtor"); *see also In re Just for Feet, Inc.*, 242 B.R. 821, 824-25 (D. Del. 1999) (holding that section 105(a) "provides a statutory basis for the payment of prepetition claims" under the doctrine of necessity and noting that the Supreme Court, the United States Court of Appeals for the Third Circuit, and the United States District Court for the District of Delaware all accept the authority of the bankruptcy court "to authorize payment of prepetition claims when such payment is necessary for the debtor's survival during chapter 11"); *In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191-92 (Bankr. D. Del. 1994) (explaining that the doctrine of necessity is the standard in the Third Circuit for enabling a court to authorize the payment of prepetition claims prior to confirmation).  The rationale for the "doctrine of necessity" is consistent with the paramount goal of chapter 11 – "facilitating the continued operation and rehabilitation of the debtor."  *Ionosphere Clubs*, 98 B.R. at 176.  Accordingly, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, the Court is empowered to grant the relief requested herein.

24.    The nature of the Debtors' businesses and the extent of their operations make it essential for the Debtors to maintain their Insurance Programs on an ongoing and uninterrupted basis.  The nonpayment of any premiums, deductibles or related fees under the

Insurance Programs could result in one or more of the Insurance Carriers terminating the Debtors'
existing policies, declining to renew the Debtors' policies or refusing to enter into new insurance
agreements with the Debtors in the future.  If the Insurance Programs are allowed to lapse without
renewal, the Debtors could be exposed to substantial liability for damages resulting to persons and
property of the Debtors and others, which could have deleterious effects on the value of the
Debtors' assets and on the Debtors' efforts to maximize recoveries for their stakeholders.
Furthermore, the Debtors would then be required to obtain replacement policies on an expedited
basis at what would likely be a significantly higher cost.  Accordingly, the Debtors must meet all
Insurance Obligations with respect to the Insurance Programs.

25.     The Workers' Compensation Program is particularly vital to the Debtors'
continued operations.   Applicable state law mandates that the Debtors maintain workers'
compensation coverage for their employees.  Failure by the Debtors to pay the premiums
associated with their Workers' Compensation Program would jeopardize their coverage and
expose the Debtors to substantial liability, including fines by state authorities.

26.     It is critical that the Debtors be permitted to continue the Workers'
Compensation Program.  If the Workers' Compensation Program were not maintained, the Debtors
would be required to make alternative arrangements for workers' compensation coverage – at a
significantly higher cost – because, as noted above, such coverage is required under applicable
state workers' compensation laws, with severe penalties for noncompliance.  If the Workers'
Compensation Program is not maintained without interruption, (i) employees could bring lawsuits
for potentially unlimited damages, (ii) regulatory authorities could seek to enjoin the Debtors'
ongoing business operations and (iii) the Debtors' officers could be subject to criminal
prosecution.

27.     Furthermore, the Debtors believe that any delay or lapse in the maintenance of their Workers' Compensation Program would have a negative effect on employee morale – at a time when employee support is most critical.   In contrast, the maintenance of the Workers' Compensation Program will not harm the Debtors' estates because the payment of the costs associated with the Workers' Compensation Program is a *de minimis* expense and will help the Debtors to continue their operations without interruption.

28.     Finally, pursuant to the terms of many of their real property leases, financing agreements and customer contracts, as well as the guidelines established by the United States Trustee for the District of Delaware (the "U.S. Trustee"), the Debtors are obligated to remain current with respect to the Insurance Programs.   Therefore, the continuation of the Insurance Programs, on an uninterrupted basis, and the payment of all prepetition and postpetition Insurance Obligations arising under the Insurance Programs, are essential to preserving the Debtors' businesses and the value of the Debtors' estates for all creditors.

29.     This Court has granted similar relief in other recent chapter 11 cases.  *See, e.g.*, *In re Kabbage, Inc. d/b/a/ KServicing*, No. 22-10951 (Bankr. Del. Oct. 21, 2022), ECF No. 132; *In re First Guaranty Mortgage Corp.*, No. 22-10584 (Bankr. Del. July 26, 2022), ECF No. 206; *In re Carbonlite Holdings LLC*, No. 21-10527 (Bankr. Del. Apr. 7, 2021), ECF No. 222; *In re Nine Point Energy Holdings, Inc.*, No. 21-10570 (Bankr. Del. Apr. 6, 2021), ECF No. 192.

30.     Accordingly, by this Motion, the Debtors seek authority pursuant to sections 503(b)(1), 363(b) and 105(a) of the Bankruptcy Code to honor their Insurance Obligations and continue their Insurance Programs without interruption, as such programs were in effect as of the Petition Date.

## II.    Request for Authority for Banks to Honor and Pay Checks Issued and Electronic Funds Transfers Requested to Pay Insurance Obligations

31.    The Debtors further request that this Court authorize all applicable banks and other financial institutions to receive, process, honor and pay any and all checks drawn or electronic funds transfers requested in order to pay the Insurance Obligations, whether such checks were presented prior to or after the Petition Date; provided, however, that such checks or electronic funds transfers are identified by the Debtors as relating directly to the authorized payment of the Insurance Obligations.[4]  The Debtors also seek authority to issue new postpetition checks, or effect new electronic funds transfers, on account of such claims to replace any prepetition checks or electronic funds transfer requests that may be dishonored or rejected as a result of the commencement of the Chapter 11 Cases.  The Debtors submit that they have sufficient liquidity to pay such amounts as they become due in the ordinary course of the Debtors' businesses.

### THE MOTION SATISFIES BANKRUPTCY RULE 6003

32.    Bankruptcy Rule 6003 provides that to the extent relief is necessary to avoid immediate and irreparable harm, a bankruptcy court may grant certain forms of relief during the twenty-one (21) days immediately following the filing date.

33.    As described herein and in the Pinson Declaration, the Debtors' Insurance Programs are integral to their operations and to maintaining the value of the Debtors' businesses. Failure to satisfy the Debtors' obligations with respect to their Insurance Programs during these cases could expose the Debtors to substantial liability for damages resulting to persons and property of the Debtors and others, and could force Debtors to obtain replacement policies on an

---

4.   The Debtors have also requested that all checks be honored by banks and other financial institutions as a general matter in connection with the Debtors' contemporaneous motion to continue their cash management system and maintain existing bank accounts and business forms.

expedited basis at what would likely be a significantly higher cost. Accordingly, the Debtors submit that they have satisfied the requirements of Bankruptcy Rule 6003 to support immediate payment of certain prepetition obligations related to the Insurance Programs.

## WAIVER OF BANKRUPTCY RULE 6004(h)

34.     The Debtors further seek a waiver of any stay of the effectiveness of the order approving this Motion. Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). As set forth above, failure to pay the Insurance Obligations could expose the Debtors to substantial liability for damages resulting to persons and property of the Debtors and others. Accordingly, the Debtors submit that ample cause exists to justify a waiver of the fourteen day stay imposed by Bankruptcy Rule 6004(h), to the extent it applies.

## DEBTORS' RESERVATION OF RIGHTS

35.     Nothing contained herein is intended or should be construed as an admission of the validity of any claim against the Debtors, a waiver of the Debtors' rights to dispute any claim, or an approval or assumption of any agreement, contract or lease under section 365 of the Bankruptcy Code. The Debtors expressly reserve their rights to contest any invoice with respect to the Insurance Programs or the Insurance Obligations under applicable non-bankruptcy law. Likewise, if this Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission of the validity of any claim or a waiver of the Debtors' rights to dispute such claim subsequently.

## NOTICE

36.     Notice of the hearing of this Motion has been provided to: (i) the U.S. Trustee; (iii) counsel for the prepetition secured lenders; (iii) those parties listed on the list of

creditors holding the twenty largest unsecured claims against the Debtors (on a consolidated basis), as identified in their chapter 11 petitions, (iv) the Insurance Brokers; (v) the Insurance Carriers; (vi) the Premium Financing Company; and (vii) all the parties that have requested notice in this proceeding pursuant to Bankruptcy Rule 2002.  Notice of this Motion and any order entered hereon will be served in accordance with Local Rule 9013-1(m).  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

### NO PRIOR REQUEST

37.    No prior request for the relief sought in the Motion has been made by the Debtors to this or any other court.

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form attached as **Exhibit A** hereto (i) authorizing the Debtors, subject to and in accordance with the Budget, to (a) continue their workers' compensation programs and their liability, property and other insurance programs, and (b) pay certain obligations in respect thereof, (ii) authorizing the Debtors' financial institutions to honor and process checks and transfers related to such obligations and (iii) granting such other and further relief as is just and proper.

Dated:  February 16, 2023  
       Wilmington, Delaware

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Andrew L. Magaziner*  
Michael R. Nestor (DE Bar No. 3526)  
Andrew L. Magaziner (DE Bar No. 5426)  
Ashley E. Jacobs (DE Bar No. 5635)  
1000 North King Street  
Rodney Square  
Wilmington, Delaware 19801-6108  
Telephone:  (302) 571-6600  
Facsimile:   (302) 571-1253  
Email:  mnestor@ycst.com  
        amagaziner@ycst.com  
        ajacobs@ycst.com

  -and-

Kathryn A. Coleman  
Christopher Gartman  
HUGHES HUBBARD & REED LLP  
One Battery Park Plaza  
New York, NY 10004-1482  
Telephone: (212) 837-6000  
Facsimile:  (212) 422-4726  
Email:  katie.coleman@hugheshubbard.com  
        chris.gartman@hugheshubbard.com

*Proposed Counsel for the Debtors*

30128699.1

# EXHIBIT A

**Proposed Interim Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re* | Chapter 11 |
| **STANADYNE LLC, *et al.*,**[1] | Case No. 23-10207 (JTD) |
| **Debtors.** | (Jointly Administered) |

### INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO (A) CONTINUE THEIR WORKERS' COMPENSATION PROGRAMS AND THEIR LIABILITY, PROPERTY AND OTHER INSURANCE PROGRAMS AND (B) PAY CERTAIN OBLIGATIONS IN RESPECT THEREOF, AND (II) AUTHORIZING THE DEBTORS' FINANCIAL INSTITUTIONS TO HONOR AND PROCESS CHECKS AND <u>TRANSFERS RELATED TO SUCH OBLIGATIONS</u>

Upon the motion (the "<u>Motion</u>")[2] of the debtors and debtors-in-possession in the above-captioned Chapter 11 Cases (collectively, the "<u>Debtors</u>") for entry of an order (this "<u>Order</u>"), pursuant to sections 105(a), 363(b) and 503(b) of the Bankruptcy Code and Bankruptcy Rule 6004(h), (i) authorizing the Debtors, subject to and in accordance with the Budget, to (a) continue their workers' compensation programs and their liability, property and other insurance programs including, but not limited to those insurance programs listed on **Exhibit B** attached to the Motion (collectively, the "<u>Insurance Programs</u>") and (b) pay all obligations in respect thereof, on an uninterrupted basis, consistent with the Debtors' practices in effect prior to the commencement of the Chapter 11 Cases, including the payment of all premiums, premium finance payments, claims, deductibles and retentions, retrospective adjustments, administrative and

---

1. The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number are:  Stanadyne LLC (0378); Pure Power Technologies, Inc. (5202); Stanadyne PPT Holdings, Inc. (2594); and Stanadyne PPT Group Holdings, Inc. (1734).  The Debtors' headquarters are located at 405 White Street, Jacksonville, North Carolina 28546.

2. Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Motion.

broker's fees, whether relating to the period prior to or following the commencement of these Chapter 11 Cases, as more fully described in the Motion, and (ii) authorizing the Debtors' financial institutions to honor and process checks and transfers related to the aforementioned obligations; and upon consideration of the *Declaration of John Pinson, Chief Executive Officer of Stanadyne LLC, in Support of First Day Relief*; and it appearing that this Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012; and it appearing that venue of these Chapter 11 Cases and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that this matter is a core proceeding pursuant to 28 U.S.C. § 157(b); and this Court having found that it may enter a final order consistent with Article III of the United States Constitution; and due and proper notice of the Motion and the hearing to consider the relief requested therein (the "Hearing") appearing adequate and appropriate under the circumstances; and this Court having found that no other or further notice need be provided; and the legal and factual bases set forth in the Motion establishing just and sufficient cause to grant the relief requested therein; and the relief granted herein being in the best interests of the Debtors, their estates, creditors and all parties in interest; and the Court having held the Hearing with the appearances of interested parties noted in the record of the Hearing; and no objection to the Motion having been filed or made at the Hearing on the Motion; and upon all of the proceedings before the Court and after due deliberation and sufficient cause appearing therefor;

IT IS HEREBY ORDERED THAT:

1.    The Motion is GRANTED on an interim basis as set forth herein.

2.    The Debtors are hereby authorized, but not directed, to pay, in their sole discretion, all premiums, claims, deductibles and retentions, retrospective adjustments,

administrative and broker's fees and all other obligations arising under the Insurance Programs, as well as premium finance payments pursuant to the PFA in an aggregate amount not to exceed $1,500,000 absent further order of this Court (collectively, the "Insurance Obligations").

3.      The Debtors are hereby authorized, but not directed, to maintain their Insurance Programs and the PFA without interruption, on the same basis and in accordance with the same practices and procedures that were in effect prior to the Petition Date, in their business judgment and at their sole discretion, without further application to this Court.

4.      The Debtors are hereby authorized, but not directed, to renew their Insurance Programs and the PFA, and or obtain replacement coverage, as needed, in the ordinary course of business, at their sole discretion, without further application to this Court.

5.      Consistent with the foregoing, the Debtors are hereby authorized, but not directed, to maintain and administer their Workers' Compensation Programs in the ordinary course of business and consistent with past practice, and honor and pay all premiums, claims and other costs and expenses related thereto whether arising prior or subsequent to the Petition Date.

6.      All banks and other financial institutions are hereby authorized to receive, process, honor and pay any checks presented for payment and electronic transfer requests made by the Debtors related to the payment of the Insurance Obligations approved herein, and the costs and expenses incident thereto, whether such checks were presented or such electronic transfer requests were submitted before, or are presented or submitted after, the Petition Date, to the extent funds are available in the Debtors' accounts; provided, however, that such checks or electronic funds transfers are identified by the Debtors as relating directly to the payment of the Insurance Obligations, or the costs and expenses incident thereto, approved herein.

7.      All such banks and financial institutions are further authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved pursuant to this Order.  In no event shall any such bank or other financial institution that takes any such action either (i) at the direction of the Debtors, (ii) in the good faith belief that the Court has authorized such action consistent with the implementation of reasonable item handling procedures or (iii) as a result of an innocent mistake made despite the implementation of reasonable item handling procedures, be deemed in violation of this Order or have liability in connection therewith.

8.      The Debtors are authorized to reissue any check or electronic payment that originally was given in payment of any prepetition amount authorized to be paid under this Order and is not cleared by the applicable bank or other financial institution.

9.      Nothing in this Order or the Motion is intended or should be construed as (i) an admission as to the validity or priority of any claim against the Debtors, (ii) a waiver of the Debtors' rights to dispute any claim, including the validity or priority thereof, or (iii) an approval, assumption or reaffirmation of any agreement, contract or lease whether under section 365(a) of the Bankruptcy Code or otherwise.  Likewise, any payment made pursuant to this Order is not intended and should not be construed as an admission as to the validity or priority of any claim or a waiver of the Debtors' rights to subsequently dispute such claim.

10.     The relief granted herein is without prejudice to the Debtors' ability to request further relief related to the Insurance Programs and Insurance Obligations.

11.     Subject to entry of a final order, and notwithstanding anything to the contrary in the Premium Financing Agreement ("PFA"), in the event the Debtors default under the terms of the PFA, [financer] shall not cancel any insurance policy of the Debtors without first providing notice of such default in writing by overnight mail to the Debtors and their bankruptcy

counsel, and at least 5 business days to cure.  If the Debtors fail to cure the default within that time, then [financer] may, in accordance with the terms of the PFA, and without further order of this Court, exercise any and all of its rights under the PFA.

12.     Notwithstanding anything to the contrary in the PFA, the Debtors' filing of these bankruptcy cases shall not constitute a default under the PFA.

13.     Absent further order of this Court upon notice, during the course of these bankruptcy cases, the Debtors shall not renew or enter into any new premium financing agreement upon any terms less favorable than those in the exiting Premium Financing Agreements.

14.     Bankruptcy Rule 6003(b) has been satisfied because the relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors.

15.     Notwithstanding any applicability of Bankruptcy Rule 6004(h), the terms and conditions of this Order shall be immediately effective and enforceable upon entry of this Order.

16.     The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

17.     This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation of this Order.

18.     A final hearing to consider the relief requested in the Motion shall be held on _____, **2023 at _____ (Prevailing Eastern Time)** and any objections or responses to the Motion shall be in writing, filed with the Court, and served so as to be actually received on or prior to _____, **2023 at 4:00 p.m. (Prevailing Eastern Time)**.

**EXHIBIT B**

**Proposed Final Order**

**THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| *In re* | Chapter 11 |
| **STANADYNE LLC, *et al.*,**[1] | Case No. 23-10207 (JTD) |
| **Debtors.** | (Jointly Administered) |

**FINAL ORDER (I) AUTHORIZING THE DEBTORS TO (A) CONTINUE**
**THEIR WORKERS' COMPENSATION PROGRAMS AND THEIR**
**LIABILITY, PROPERTY AND OTHER INSURANCE PROGRAMS AND**
**(B) PAY CERTAIN OBLIGATIONS IN RESPECT THEREOF, AND**
**(II) AUTHORIZING THE DEBTORS' FINANCIAL INSTITUTIONS TO**
**HONOR AND PROCESS CHECKS AND**
**TRANSFERS RELATED TO SUCH OBLIGATIONS**

Upon the motion (the "Motion")[2] of the debtors and debtors-in-possession in the above-captioned Chapter 11 Cases (collectively, the "Debtors") for entry of an order (this "Order"), pursuant to sections 105(a), 363(b) and 503(b) of the Bankruptcy Code and Bankruptcy Rule 6004(h), (i) authorizing the Debtors, subject to and in accordance with the Budget, to (a) continue their workers' compensation programs and their liability, property and other insurance programs including, but not limited to those insurance programs listed on **Exhibit B** attached to the Motion (collectively, the "Insurance Programs") and (b) pay all obligations in respect thereof, on an uninterrupted basis, consistent with the Debtors' practices in effect prior to the commencement of the Chapter 11 Cases, including the payment of all premiums, premium finance payments, claims, deductibles and retentions, retrospective adjustments, administrative and

---

1. The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number are:  Stanadyne LLC (0378); Pure Power Technologies, Inc. (5202); Stanadyne PPT Holdings, Inc. (2594); and Stanadyne PPT Group Holdings, Inc. (1734).  The Debtors' headquarters are located at 405 White Street, Jacksonville, North Carolina 28546.

2. Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Motion.

broker's fees, whether relating to the period prior to or following the commencement of these Chapter 11 Cases, as more fully described in the Motion, and (ii) authorizing the Debtors' financial institutions to honor and process checks and transfers related to the aforementioned obligations; and upon consideration of the *Declaration of John Pinson, Chief Executive Officer of Stanadyne LLC, in Support of First Day Relief*; and it appearing that this Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012; and it appearing that venue of these Chapter 11 Cases and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that this matter is a core proceeding pursuant to 28 U.S.C. § 157(b); and this Court having found that it may enter a final order consistent with Article III of the United States Constitution; and due and proper notice of the Motion and the hearing to consider the relief requested therein (the "Hearing") appearing adequate and appropriate under the circumstances; and this Court having found that no other or further notice need be provided; and the legal and factual bases set forth in the Motion establishing just and sufficient cause to grant the relief requested therein; and the relief granted herein being in the best interests of the Debtors, their estates, creditors and all parties in interest; and the Court having held the Hearing, if any, with the appearances of interested parties noted in the record of the Hearing; and no objection to the Motion having been filed or made at the Hearing, if any, on the Motion; and upon all of the proceedings before the Court and after due deliberation and sufficient cause appearing therefor;

IT IS HEREBY ORDERED THAT:

1.      The Motion is GRANTED on a final basis as set forth herein.

2.      The Debtors are hereby authorized, but not directed, to pay, in their sole discretion, all premiums, claims, deductibles and retentions, retrospective adjustments, administrative and broker's fees and all other obligations arising under the Insurance Programs, as well as premium finance payments pursuant to the PFA in an aggregate amount not to exceed $1,500,000 absent further order of this Court (collectively, the "Insurance Obligations").

3.      The Debtors are hereby authorized, but not directed, to maintain their Insurance Programs and the PFA without interruption, on the same basis and in accordance with the same practices and procedures that were in effect prior to the Petition Date, in their business judgment and at their sole discretion, without further application to this Court.

4.      The Debtors are hereby authorized, but not directed, to renew their Insurance Programs and the PFA, and or obtain replacement coverage, as needed, in the ordinary course of business, at their sole discretion, without further application to this Court.

5.      Consistent with the foregoing, the Debtors are hereby authorized, but not directed, to maintain and administer their Workers' Compensation Programs in the ordinary course of business and consistent with past practice, and honor and pay all premiums, claims and other costs and expenses related thereto whether arising prior or subsequent to the Petition Date.

6.      All banks and other financial institutions are hereby authorized to receive, process, honor and pay any checks presented for payment and electronic transfer requests made by the Debtors related to the payment of the Insurance Obligations approved herein, and the costs and expenses incident thereto, whether such checks were presented or such electronic transfer requests were submitted before, or are presented or submitted after, the Petition Date, to the extent funds are available in the Debtors' accounts; provided, however, that such checks or electronic

funds transfers are identified by the Debtors as relating directly to the payment of the Insurance Obligations, or the costs and expenses incident thereto, approved herein.

7.      All such banks and financial institutions are further authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved pursuant to this Order.  In no event shall any such bank or other financial institution that takes any such action either (i) at the direction of the Debtors, (ii) in the good faith belief that the Court has authorized such action consistent with the implementation of reasonable item handling procedures or (iii) as a result of an innocent mistake made despite the implementation of reasonable item handling procedures, be deemed in violation of this Order or have liability in connection therewith.

8.      The Debtors are authorized to reissue any check or electronic payment that originally was given in payment of any prepetition amount authorized to be paid under this Order and is not cleared by the applicable bank or other financial institution.

9.      Nothing in this Order or the Motion is intended or should be construed as (i) an admission as to the validity or priority of any claim against the Debtors, (ii) a waiver of the Debtors' rights to dispute any claim, including the validity or priority thereof, or (iii) an approval, assumption or reaffirmation of any agreement, contract or lease whether under section 365(a) of the Bankruptcy Code or otherwise.  Likewise, any payment made pursuant to this Order is not intended and should not be construed as an admission as to the validity or priority of any claim or a waiver of the Debtors' rights to subsequently dispute such claim.

10.     The relief granted herein is without prejudice to the Debtors' ability to request further relief related to the Insurance Programs and Insurance Obligations.

11.     Subject to entry of this final order, and notwithstanding anything to the contrary in the Premium Financing Agreement ("PFA"), in the event the Debtors default under the

terms of the PFA, [financer] shall not cancel any insurance policy of the Debtors without first providing notice of such default in writing by overnight mail to the Debtors and their bankruptcy counsel, and at least 5 business days to cure.  If the Debtors fail to cure the default within that time, then [financer] may, in accordance with the terms of the PFA, and without further order of this Court, exercise any and all of its rights under the PFA.

12.     Notwithstanding anything to the contrary in the PFA, the Debtors' filing of these bankruptcy cases shall not constitute a default under the PFA.

13.     Absent further order of this Court upon notice, during the course of these bankruptcy cases, the Debtors shall not renew or enter into any new premium financing agreement upon any terms less favorable than those in the exiting Premium Financing Agreements.

14.     Notwithstanding any applicability of Bankruptcy Rule 6004(h), the terms and conditions of this Order shall be immediately effective and enforceable upon entry of this Order.

15.     The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

16.     This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation of this Order.

## EXHIBIT C

### Insurance Programs

| Type of Liability Coverage | Insurance Carrier(s) | Policy Number | Term | Premium |
|---|---|---|---|---|
| Automotive | The Hanover Insurance Group | AWN-D964483-03 | 7/1/22-7/1/23 | $26,495 |
| Workers' Compensation | The Hanover American Insurance Company | WHN H642048-01 | 7/1/22-7/1/23 | $264,467 |
| General Liability | Hanover Commercial Insurance Company | LHN D967009-03 | 7/1/22-7/1/23 | $116,697 |
| Lead Umbrella | Commerce & Industry Insurance Co. (AIG) | BE 060738232 | 7/1/22-7/1/23 | $117,690 |
| Excess Liability | Fireman's Fund (Allianz) | USL009251222 | 7/1/22-7/1/23 | $53,040 |
| Excess Liability | Navigators Insurance Company | USL009251222 | 7/1/22-7/1/23 | $74,437 |
| Property | Zurich | PPR8081190-03 | 7/1/22-7/1/23 | $405,875 |
| Cargo | Hanover | IHN-H022582 | 7/1/22-7/1/23 | $57,580 |
| Business Travel Accident | Federal Insurance Company | 6404-72-16 | 7/1/22-7/1/23 | $6,689 |
| Foreign Package | Hanover Insurance Group | RHN D963340-03 | 7/1/22-7/1/23 | $37,113 |
| Crime | Chubb – Federal Insurance Company | 8208-7889 | 7/1/22-7/1/23 | $28,746 |
| Fiduciary Liability | Chubb – Federal Insurance Company | 6803-3614 | 7/1/22-7/1/23 | $23,782 |
| Automotive Product Recall | Lloyd's | B0180PN2203093 | 6/30/22-6/30/23 | $220,000 (plus $11,800 Surplus Lines Tax) |
| Pollution Liability | Ironshore Specialty Insurance Company | ISPILLSCKB5B001 | 7/1/22-7/1/25 | $31,415 (plus $1,885 Surplus Lines Tax) |
| Special Crime | Chubb – Federal Insurance Company | 8121-2616 | 7/1/22-7/1/23 | $1,672 |
| Directors & Officers Liability and Employment Practices Liability | Chubb – Federal Insurance Company | 8261-8068 | 7/1/22-7/1/23 | $98,104 |

| Cyber (Primary) | Arch Insurance Company | NPL0068240-00 | 8/1/22-6/1/23 | $72,636 |
| Cyber (Excess) | Crum & Forster Specialty Insurance Company | CYB-104577 | 7/31/22-6/1/23 | $51,000 |

30128699.1