## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| *In re* | Chapter 11 |
| **STANADYNE LLC, *et al.*,**[1] | Case No. 23-10207 (JTD) |
| **Debtors.** | (Joint Administration Requested) |

### DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING THE DEBTORS TO PAY PREPETITION CLAIMS OF (A) DOMESTIC CRITICAL VENDORS, (B) SHIPPERS, WAREHOUSEMEN, AND OTHER LIENHOLDERS, AND (C) FOREIGN VENDORS; (II) AUTHORIZING BANKS TO HONOR AND PROCESS RELATED CHECKS AND ELECTRONIC TRANSFERS; AND (III) GRANTING RELATED RELIEF

The debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors") hereby move the Court (the "Motion") pursuant to sections 105, 363, 364, 503, 1107 and 1108 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"), and Rules 6003 and 6004(h) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for entry of an interim order substantially in the form annexed hereto as **Exhibit B** and a final order substantially in the form annexed hereto as **Exhibit C** (together, the "Proposed Orders"): (i) authorizing, but not directing, the Debtors, in their sole discretion, to pay, in the ordinary course of business, prepetition claims of: (a) certain domestic critical vendors and service providers (the "Domestic Critical Vendors," whose claims are the "Domestic Critical Vendor Claims"), (b) certain Shippers, Warehouseman and Statutory Lienholders (each as defined below) (collectively, the "Lienholders," whose claims are the "Lienholder Claims"), and

---

1. The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number are: Stanadyne LLC (0378); Pure Power Technologies, Inc. (5202); Stanadyne PPT Holdings, Inc. (2594); and Stanadyne PPT Group Holdings, Inc. (1734). The Debtors' headquarters are located at 405 White Street, Jacksonville, North Carolina 28546.

(c) certain foreign vendors and service providers located outside the United States (the "Foreign Vendors," whose claims are the "Foreign Vendor Claims") in an amount not to exceed the Critical Vendor Claims Cap (as defined below), (ii) authorizing financial institutions to honor and process related checks and transfers; and (iii) granting any additional relief as is necessary to effectuate the foregoing.  In support of this Motion, the Debtors submit the *Declaration of John Pinson, Chief Executive Officer of Stanadyne LLC, in Support of First Day Relief* (the "Pinson Declaration"), filed contemporaneously herewith, and respectfully submit as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors confirm their consent pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.      Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory predicates for the relief requested herein are sections 105, 363, 364, 503, 1107, and 1108 of the Bankruptcy Code, and Bankruptcy Rules 6003 and 6004(h).

## BACKGROUND

4.      On February 16, 2023, (the "Petition Date"), the Debtors commenced their bankruptcy cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code

(the "Chapter 11 Cases").  No trustee, examiner or creditors' committee has been appointed in these cases.  The Debtors are operating their respective businesses as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.    The events leading up to the Petition Date and the facts and circumstances supporting the relief requested herein are set forth in the Pinson Declaration.

## RELIEF REQUESTED

6.    By this Motion, the Debtors seek entry of interim and final orders (i) authorizing, but not directing, the Debtors, in their sole discretion (and subject to and in accordance with any orders authorizing postpetition financing and the use of cash collateral and the applicable budget thereunder), to pay certain prepetition claims of the Domestic Critical Vendors, the Lienholders , and the Foreign Vendors (collectively, the "Critical Vendors," whose claims, collectively, are the "Critical Vendor Claims"), which Critical Vendor Claims shall not exceed an aggregate amount of $3,400,000 on an interim basis (the "Interim Critical Vendor Claims Cap") and $6,800,000 on a final basis (the "Final Critical Vendor Claims Cap" and, together with the Interim Critical Vendor Claims Cap, the "Critical Vendor Claims Cap"); (ii) authorizing financial institutions to honor and process checks or electronic transfers used by the Debtors to pay the foregoing; and (iii) granting any additional relief as is necessary to effectuate the foregoing.  The breakdown of the Critical Vendor Claims Cap is as follows:

| Critical Vendor | Interim Critical Vendor Claims Cap | Final Critical Vendor Claims Cap |
| --- | --- | --- |
| Domestic Critical Vendors | $1,500,000 | $3,000,000 |
| Shippers/Lienholders | $400,000 | $800,000 |
| Foreign Vendors | $1,500,000 | $3,000,000 |
| TOTAL | $3,400,000 | $6,800,000 |

## THE CRITICAL VENDORS

**A.    Domestic Critical Vendor Claims**

7.    In an exercise of their business judgment, the Debtors have determined that continuing to maintain a business relationship with certain Domestic Critical Vendors is essential to the Debtors' ability to continue to operate their business as a going concern and to maximize value for all creditors.  These Domestic Critical Vendors include, without limitation, (i) suppliers of component parts who have been certified as acceptable vendors by the Debtors' customers, (ii) sole-source suppliers of parts for equipment used in the manufacturing process, and (iii) service providers who provide services that the Debtors do not themselves provide, but are nonetheless necessary to create finished products for the Debtors' customers.  If granted discretion to satisfy certain Domestic Critical Vendor Claims, as requested in this motion, the Debtors will assess, case by case and in real time, the benefits to their estates of paying each Domestic Critical Vendor Claim and will pay such claims only to the extent they determine that their estates will benefit from such payment.

8.    The Debtors' ability to retain the confidence and loyalty of such suppliers and service providers is essential.  The Debtors rely significantly on such vendors for their manufacturing and production processes.  Failing to pay the Domestic Critical Vendors for amounts owing prepetition may cause those vendors to stop supplying the Debtors to the detriment of the Debtors and their estates.  In many instances, replacing the Domestic Critical Vendors would be impossible during the pendency of these Chapter 11 Cases, and when possible, would result in substantial additional costs for the Debtors and their estates and risk delays that could materially harm the Debtors' going-concern value.  Such results would cause substantial disruption to the Debtors' supply chain and ability to meet their obligations to customers, which would cause immediate and irreparable harm to the Debtors' estates and stakeholders.

9.      By this motion, the Debtors merely seek to maintain the status quo by paying amounts owed to Domestic Critical Vendors in the ordinary course.

10.     To identify the Domestic Critical Vendors, the Debtors and their professionals reviewed their records with a focus on those third parties most essential to the Debtors' operations.  Interruption of these relationships would cause the Debtors irreparable harm and jeopardize the Debtors' ability to continue to operate their business in the ordinary course. Having the discretion to pay the Domestic Critical Vendors would enhance the Debtors' ability to maintain the value of their business and thereby maximize value for the benefit of creditors and stakeholders.  Therefore, the Debtors seek authorization, in their discretion, to pay certain Domestic Critical Vendor Claims up to $1,500,000 on an interim basis, and up to $3,000,000 on a final basis.  Of this amount, the Debtors believe that a significant portion of these amounts is entitled to priority under section 503(b)(9) of the Bankruptcy Code.

**B.      Lienholder Claims**

11.     <u>Shippers and Warehousemen</u>.  In the ordinary course of business, the Debtors necessarily depend on an extensive shipping, warehousing, and distribution network to move goods to their factories and finished product to their customers.  The Debtors accordingly utilize the services of and make payments to commercial common carriers, dedicated carriers, movers, shippers, freight-forwarders, consolidators, delivery services, and other third-party service providers (collectively, the "<u>Shippers</u>") to ship, transport, and otherwise facilitate the movement of goods.  The Debtors also support their distribution capabilities by contracting with certain third-party warehousemen, distributors, and logistics providers who store goods in transit on behalf of the Debtors (the "<u>Warehousemen</u>").

12.     If the Debtors fail to pay any of the foregoing entities for charges incurred in connection with the transportation and storage of the Debtors' property, various statutes, tariffs,

and agreements may permit the Shippers or Warehousemen, as applicable, to assert possessory liens against or otherwise exercise control over the Debtors' (or their customers') property in their possession.  In addition, shipments may be stopped in transit or not released if customs duties are not paid by the Debtors or their customs agents when due in the ordinary course.  The successful operation of the Debtors' business, and thus their ability to maximize the value of their assets, depends on their ability to process such goods.

13.    <u>Other Potential Lienholders</u>.  In addition to the claims of Shippers and Warehousemen, the Debtors also from to time transact business with a number of other third parties (the "<u>Statutory Lienholders</u>") who, under applicable non-bankruptcy law, may have the potential to assert liens against the Debtors and their property if the Debtors fail to pay for goods and services rendered prior to the Petition Date.  Such Statutory Lienholders may have provided equipment and/or performed various services for the Debtors, including (i) providing equipment and parts necessary for the operation of the Debtors' factors and (ii) rendering essential services related to the operation of the Debtors' facilities, such as machine repair and maintenance.  The services and materials provided by the Statutory Lienholders cannot be easily replaced.

14.    As of the Petition Date, certain Statutory Lienholders may not have been paid in full for certain prepetition goods, equipment and services, which may result in such Statutory Lienholders asserting, and perfecting, statutory liens against the Debtors' facilities or the Debtors' goods or equipment, notwithstanding the automatic stay under section 362 of the Bankruptcy Code.[2]  Indeed, pursuant to section 362(b)(3) of the Bankruptcy Code, the act of perfecting such statutory liens, to the extent consistent with section 546(b) of the Bankruptcy Code,

---

2.    The Debtors do not concede that any liens (contractual, common law, statutory or otherwise) described in this Motion are valid, and the Debtors expressly reserve the right to contest the extent, validity, and perfection of all such liens, and/or to seek avoidance thereof.

is expressly excluded from the automatic stay.  Under section 546(b) of the Bankruptcy Code, a debtor's lien avoidance powers "are subject to any generally applicable law that . . . permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of perfection."  11 U.S.C. § 546(b)(1)(A).  Furthermore, certain Statutory Lienholders may refuse to perform ongoing services to the Debtors, including manufacturing, installation, repair and servicing obligations, unless their claims are paid in full.

15.     If the Debtors are unable to pay the Lienholder Claims, they risk losing access to critical property, which could immediately and irreparably harm the Debtors to the detriment of all stakeholders.  Accordingly, the Debtors seek authority, in their discretion, to pay and discharge, on a case-by-case basis, the Lienholder Claims that the Debtors believe have created, or could give rise to, a lien against the Debtors' property, regardless of whether the related Lienholders have already perfected their interests, where the Debtors determine, in their reasonable business judgment, that such payment is in the best interests of the Debtors' estates.

16.     The Debtors seek authorization, in their discretion, to pay certain Lienholder Claims up to $400,000 on an interim basis, and up to $800,000 on a final basis.

**C.     Foreign Vendor Claims**

17.     In the ordinary course of business, the Debtors incur various obligations to Foreign Vendors that provide essential goods and services to the Debtors.  These Foreign Vendors include vendors located in Europe and Asia.  The crucial goods, materials, and services provided by the Foreign Vendors include the manufacturing of critical component parts needed for the Debtors' products.

18.     Certain of the Foreign Vendors have claims on account of goods or services provided to the Debtors and related to the Debtors' operations which were received by the Debtors before the Petition Date.  The Debtors estimate that, as of the Petition Date, the total outstanding

amount owed to the Foreign Vendors is approximately $1,500,000.  However, the Debtors also expect that, as of the Petition Date, certain of the Foreign Vendors will have accrued but unbilled charges for goods or services, including for goods in transit (e.g. ocean freight).

19.     The Debtors believe that most, if not all, of the Foreign Vendors may not be familiar with chapter 11.  As a result, despite the commencement of these Chapter 11 Cases and the imposition of the automatic stay, in the event of nonpayment of prepetition amounts or upon learning of the commencement of these Chapter 11 Cases, these Foreign Creditors could take actions that would cause immediate and irreparable harm to the Debtors' operations.  Although the scope of the automatic stay set forth in section 362 of the Bankruptcy Code is universal, the Court is well aware of the difficulty (if not impossibility) of enforcing the stay in foreign jurisdictions.

20.     The Debtors are making every effort to avoid interruptions in their operations and the adverse effects that even a temporary break could have on their businesses.  The Debtors submit that it is especially important that they have the flexibility to deal with the Foreign Vendors.  Foreign Vendors may have confused and guarded reactions to the U.S. bankruptcy process.  They are likely to be unfamiliar or uncomfortable with the unique debtor-in-possession mechanism that is at the heart of chapter 11.  Based on the reactions of foreign suppliers in other chapter 11 cases, there is a significant risk that the nonpayment of even a single invoice could cause a Foreign Vendor to stop providing goods and services to the Debtors on a timely basis or completely sever its business relationship with the Debtors.  If the Debtors were unable to obtain products and services from the Foreign Vendors on a timely basis or on commercially reasonable terms, the Debtors' operations would be severely harmed, diminishing the Debtors' chance of successfully reorganizing.

21.     In light of the potential for serious and potentially irreparable consequences, the Debtors have determined, in the exercise of their business judgment, that payment of the Foreign Vendors' claims is essential and that the relief requested should be granted.  The Debtors seek authorization, in their discretion, to pay certain Foreign Vendor Claims up to $1,500,000 on an interim basis, and up to $3,000,000 on a final basis.

### D.     Proposed Treatment of Critical Vendors

22.     The Debtors seek the authority to pay, in their sole discretion and business judgment (subject to and in accordance with any orders authorizing postpetition financing and the use of cash collateral and the applicable budget thereunder) all or a portion of the Critical Vendor Claims.  The Debtors estimate that the amount of the Final Critical Vendor Claims Cap represents the maximum amount needed to pay the Critical Vendor Claims.  Of this amount, the Debtors estimate that the Interim Critical Vendor Claims Cap represents the maximum amount needed to pay Critical Vendor Claims before the final hearing.  The Final Critical Vendor Claims Cap represents the Debtors' best estimate as to how much must be paid to such creditors to ensure that they continue doing business with the Debtors.  The Debtors may pay less than the full requested Critical Vendor Claims Cap amount.

23.     If authorized to pay the Critical Vendor Claims, the Debtors will use commercially reasonable efforts to require the applicable Critical Vendor to provide trade terms consistent with historical practice.  The Debtors therefore request authority, in their business judgment (subject to and in accordance with any orders authorizing postpetition financing and the use of cash collateral and the applicable budget thereunder), to condition payment on such Critical Vendor's entry into an agreement, substantially similar to the form of the letter attached as **Exhibit A** hereto (each a "Critical Vendor Agreement"), to (i) verify the amount owing to the specific Critical Vendor as of the Petition Date, (ii) accept such payment in satisfaction of all or a

30128812.1

9

part of its claim, and (iii) continue maintaining its business relationship with the Debtors during these Chapter 11 Cases.  Each such Critical Vendor Agreement, once agreed to and accepted by a Critical Vendor, will be a legally binding contract between the parties governing their relationship.

24.     If a Critical Vendor accepts payment and does not continue doing business with the Debtors, or as otherwise set forth in the Critical Vendor Agreement, then, so long as the Critical Vendor receives notice and opportunity for a hearing, the Debtors may take appropriate steps to cause such Critical Vendor to repay payments made to it on account of its prepetition claim to the extent that such payments exceed the postpetition amounts then owing to such Critical Vendor.

## REQUEST FOR AUTHORITY FOR FINANCIAL INSTITUTIONS

25.     The Debtors also request that all applicable banks and other financial institutions be authorized to process and honor all checks presented for payment of Critical Vendor Claims, and to honor all fund transfer requests made by the Debtors related to Critical Vendor Claims, regardless of whether the checks were presented or fund transfer requests were submitted before or after the Petition Date, provided that funds are available in the Debtors' accounts to cover such checks and fund transfers.  In addition, in an abundance of caution, the Debtors request that the Court enter an order confirming that all banks and other financial institutions are authorized to rely on the Debtors' designation of any particular check as approved by the attached proposed order.

## BASIS FOR RELIEF REQUESTED

### I.    The Court May Authorize Payment of the Critical Vendor Claims Pursuant to Section 363 of the Bankruptcy Code

26.     The Court may authorize the Debtors to pay the Critical Vendor Claims under Bankruptcy Code section 363(b).  That section provides that "[t]he trustee, after notice and

a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b). Under this section, a court may authorize a debtor to pay certain prepetition claims. *See In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (finding that a sound business justification existed to justify payment of certain claims); *Armstrong World Indus., Inc. v. James A. Phillips, Inc., (In re James A. Phillips, Inc.)*, 29 B.R. 391, 397 (S.D.N.Y. 1983) (authorizing, pursuant to section 363, contractor to pay prepetition claims of some suppliers who were potential lien claimants, because payments were necessary for general contractors to release funds owed to debtors); *In re Hancock Fabrics, Inc.*, Case No. 07-10353 (BLS) (Bankr. D. Del. Apr. 13, 2007) (pursuant to section 363, authorizing payment of prepetition claims to certain vendors deemed critical by debtors).

27.    As detailed above, maintaining the business relationships that exist between the Debtors and the Critical Vendors is vital to the Debtors' continuing business operations and the success of these Chapter 11 Cases. Accordingly, the Debtors submit that the amount of the Critical Vendor Claims Cap pales in comparison to the potential irreparable harm to the Debtors' business should the relief requested herein not be granted, resulting in an impediment to a successful reorganization. In light of the foregoing, the Debtors submit that they have a sound business purpose for payment of the Critical Vendor Claims.

II.    **The Court May Also Grant the Motion Pursuant to Its Equitable Powers under Section 105(a) of the Bankruptcy Code and the Doctrine of Necessity**

28.    Section 105(a) of the Bankruptcy Code authorizes the Court to issue "any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a). The purpose of section 105(a) is "to assure the bankruptcy courts [sic] power to take whatever action is appropriate or necessary in aid of the exercise of [its] jurisdiction." 2 Henry J. Sommer & Alan N. Resnick, Collier on Bankruptcy

¶ 105.01 (16th ed. 2016).  Under section 105(a) of the Bankruptcy Code, courts may permit pre-plan payments of prepetition obligations when essential to the continued operation of a debtor's business.  *See In re Just for Feet, Inc.*, 242 B.R. 821, 825 (D. Del. 1999).  For the reasons stated herein, the Debtors submit that the relief requested in this Motion is critical to the Debtors' operations and is justified under section 105(a) of the Bankruptcy Code.

29.    Moreover, the relief requested in this Motion is supported by the well-established "doctrine of necessity."  The United States Court of Appeals for the Third Circuit recognized the doctrine in *In re Lehigh & New England Railway Co.*, 657 F.2d 570, 581 (3d Cir. 1981).  The Third Circuit held that a court could authorize the payment of prepetition claims if such payment was essential to the continued operation of the debtor.  *See id.* (stating courts may authorize payment of prepetition claims when there "is the possibility that the creditor will employ an immediate economic sanction, failing such payment"); *see also In re Penn Central Transp. Co.*, 467 F.2d 100, 102 n.1 (3d Cir. 1972) (holding necessity of payment doctrine permits "immediate payment of claims of creditors where those creditors will not supply services or material essential to the conduct of the business until their pre-reorganization claims have been paid"); *Official Comm. of Unsecured Creditors of Motor Coach Indus. Int'l, Inc. v. Motor Coach Indus. Int'l, Inc. (In re Motor Coach Int'l, Inc.)*, No. 09-078, 2009 WL 330993, at *3 (D. Del. Feb. 10, 2009) (reaffirming viability of doctrine of necessity in Third Circuit with respect to payment of prepetition critical vendor claims); *PBGC v. Sharon Steel Corp. (In re Sharon Steel Corp.)*, 159 B.R. 730, 736 (Bankr. W.D. Pa. 1993) (embracing "necessity of payment" doctrine and citing *Leigh & New England Ry. Co.* with approval); *In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191-92 (Bankr. D. Del. 1994) (same).  The rationale in these cases applies to the Debtors' efforts to continue their business and to preserve the attendant going concern value for the benefit of their

stakeholders.  Without the authority to pay the Critical Vendor Claims, the Debtors' ability to continue operations and to effectively reorganize would be significantly reduced.

30.     In addition, the Debtors believe that a substantial portion of Domestic Critical Vendor Claims and Foreign Vendor Claims may be entitled to administrative expense priority under section 503(b)(9) of the Bankruptcy Code given that the Debtors received much of the goods provided by the Critical or Foreign Vendor, in the ordinary course of business, within the twenty-day period immediately prior to the Petition Date.  Because such claims are entitled to priority status under section 503(b)(9) of the Bankruptcy Code, they must be paid, in full, prior to payment of any other unsecured prepetition (priority or general unsecured) creditor.  Similarly, the Shippers, Warehousemen and Statutory Lienholders may be entitled to file liens under applicable law that would also be required to be paid in full prior to payment to prepetition priority and general unsecured creditors.

31.     Allowing the Debtors to pay Critical Vendor Claims is especially appropriate where, as here, doing so is consistent with the "two recognized policies" of chapter 11 of the Bankruptcy Code—preserving going concern value and maximizing the value of property available to satisfy creditors.  *See Bank of Am. Nat'l Trust & Says. Assoc. v. 203 N LaSalle St. P'ship*, 526 U.S. 434, 453 (1999).

32.     Courts in this district regularly grant relief similar to that which the Debtors are seeking in this Motion.  *See, e.g.*, *In re Phoenix Servs. Topco, LLC*, No. 22-10906 (Bankr. D. Del. Oct. 25, 2022), ECF No. 187; *In re First Guaranty Mortgage Corp.*, No. 22-10584 (Bankr. D. Del. Aug. 2, 2022), ECF No. 272; *In re TPC Group, Inc.*, No. 22-10493 (Bankr. D. Del. June 30, 2022), ECF No. 341; *In re Hamon Holdings Corp.*, No. 22-10375 (Bankr. D. Del. June 24, 2022), ECF No. 177.  The Debtors respectfully submit that the requested relief is warranted in

these Chapter 11 Cases because it is essential that the Debtors maintain productive business relationships with the Critical Vendors, thereby allowing the Debtors to operate their businesses in an uninterrupted manner and progress towards a successful reorganization.

### III.   The Court May Also Authorize the Relief Requested as a Valid Exercise of the Debtors' Fiduciary Duties

33.   The Debtors, operating their businesses as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, are fiduciaries "holding the bankruptcy estate[s] and operating the business for the benefit of . . . [their] creditors and (if the value justifies) equity owners." *In re CoServ*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002). Implicit in the duties of a debtor-in-possession is the duty "to protect and preserve the estate, including an operating business's going-concern value." *Id.*

34.   It has been noted that there are instances in which a debtor-in-possession can fulfill its fiduciary duty "only . . . by the preplan satisfaction of a pre-petition claim." *Id.* The *CoServ* court specifically noted that preplan satisfaction of prepetition claims would be a valid exercise of a debtor's fiduciary duty when the payment "is the only means to effect a substantial enhancement of the estate" and also when the payment was to "sole suppliers of a given product." *Id.* at 497-98. The court provided a three-pronged test for determining whether a preplan payment on account of a prepetition claim was a valid exercise of a debtor's fiduciary duty:

> First, it must be critical that the debtor deal with the claimant. Second, unless it deals with the claimant, the debtor risks the probability of harm, or, alternatively, loss of economic advantage to the estate or the debtor's going concern value, which is disproportionate to the amount of the claimant's pre-petition claim. Third, there is no practical or legal alternative by which the debtor can deal with the claimant other than by payment of the claim.

*Id.* at 498.

35.     Payment of the Critical Vendor Claims meets the test set forth in *CoServ*. As described above, the Debtors have narrowly tailored the amount to be paid to those parties that are essential to the Debtors' ongoing business operations.   Any shutdown of the Debtors' operations could cost the Debtors' estates substantial amounts in lost revenues and adversely impact the Debtors' ongoing operations.   Accordingly, the harm and economic disadvantage that would stem from the failure to pay the Critical Vendor Claims is disproportionate to the amount of the prepetition claims that would have to be paid in order to guarantee continued business between the Critical Vendors and the Debtors.   Finally, the Debtors have examined other options short of payment of the Critical Vendor Claims and have determined that to avoid significant disruption of the Debtors' business operations, there exists no practical available alternative to payment of such claims.

## BANKRUPTCY RULE 6003 IS SATISFIED AND REQUEST FOR WAIVER OF STAY

36.     The Debtors further submit that because the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtors for the reasons set forth herein and in the Pinson Declaration, Bankruptcy Rule 6003 has been satisfied and the relief requested herein should be granted.

37.     Specifically, Bankruptcy Rule 6003 provides as follows:

> Except to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the petition, issue an order granting the following: . . . (b) a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition, but not a motion under Rule 4001 . . . .

Fed. R. Bankr. P. 6003.

38.     The Third Circuit Court of Appeals has interpreted the "immediate and irreparable harm" language in the context of preliminary injunctions.   In that context, irreparable

harm has been interpreted as a continuing harm that cannot be adequately redressed by final relief on the merits and for which money damages cannot provide adequate compensation. *See*, *e.g.*, *Norfolk S. Ry. Co. v. City of Pittsburgh*, 235 F. App'x 907, 910 (3d Cir. 2007) (citing *Glasco v. Hills*, 558 F.2d 179, 181 (3d Cir. 1977)). Further, the harm must be shown to be actual and imminent, not speculative or unsubstantiated. *See*, *e.g.*, *Acierno v. New Castle Cty.*, 40 F.3d 645, 653-55 (3d Cir. 1994).

39.    The Debtors further seek a waiver of any stay of the effectiveness of the order approving this Motion. Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h).

40.    As set forth above, the relief requested herein is essential to prevent irreparable damage to the Debtors' operations, going concern value, and their efforts to reorganize. Accordingly, the relief requested herein is appropriate under the circumstances and under Bankruptcy Rules 6003 and 6004(h).

## DEBTORS' RESERVATION OF RIGHTS

41.    Nothing contained herein is intended or should be construed as an admission of the validity of any claim against the Debtors, a waiver of the Debtors' rights to dispute any claim, or an approval or assumption of any agreement, contract, or lease under section 365 of the Bankruptcy Code. The Debtors expressly reserve their rights to contest any invoice with respect to any potential claims under applicable non-bankruptcy law. Likewise, if this Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission of the validity of any claim or a waiver of the Debtors' rights to dispute such claim subsequently.

30128812.1

## NOTICE

42.     Notice of the hearing of this Motion has been provided to: (i) the Office of the United States Trustee for the District of Delaware; (ii) counsel for the prepetition secured lenders; (iii) those parties listed on the list of creditors holding the twenty largest unsecured claims against the Debtors (on a consolidated basis), as identified in their chapter 11 petitions; and (iv) all the parties that have requested notice in this proceeding pursuant to Bankruptcy Rule 2002.  Notice of this Motion and any order entered hereon will be served in accordance with Local Rule 9013-1(m).  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## NO PREVIOUS REQUEST

43.     No prior request for the relief sought in this Motion has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that this Court enter an order granting the relief requested herein and granting such other and further relief as is just and proper.

Dated:  February 16, 2023
       Wilmington, Delaware

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Andrew L. Magaziner*
Michael R. Nestor (DE Bar No. 3526)
Andrew L. Magaziner (DE Bar No. 5426)
Ashley E. Jacobs (DE Bar No. 5635)
1000 North King Street
Rodney Square
Wilmington, Delaware 19801-6108
Telephone:  (302) 571-6600
Facsimile:   (302) 571-1253
Email:  mnestor@ycst.com
       amagaziner@ycst.com
       ajacobs@ycst.com

   -and-

Kathryn A. Coleman
Christopher Gartman
HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, NY 10004-1482
Telephone: (212) 837-6000
Facsimile:  (212) 422-4726
Email:  katie.coleman@hugheshubbard.com
       chris.gartman@hugheshubbard.com

*Proposed Counsel for the Debtors*

## Exhibit A

**Critical Vendor Agreement**

To: [Critical Vendor]
[Name]
[Address]

_____, 2023

Re: <u>*In re Stanadyne LLC, et al.*</u>

Dear [Critical Vendor]:

As you are aware, Stanadyne LLC and certain of its affiliates (collectively, the "<u>Company</u>") filed voluntary petitions for relief under chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "<u>Chapter 11 Cases</u>" and the "<u>Bankruptcy Court</u>", respectively) on February 16, 2023 (the "<u>Petition Date</u>").  On the Petition Date, the Company requested the Bankruptcy Court's authority to pay the prepetition claims of certain critical vendors in recognition of the importance of the Company's relationship with such critical vendors and its desire that the Chapter 11 Cases have as little effect on the Company's ongoing business operations as possible.  On [_____], 2023 the Bankruptcy Court entered an order (the "<u>Order</u>") authorizing the Company, under certain conditions, to pay all or portions of the prepetition claims of certain critical vendors that agree to the terms set forth below and to be bound by the terms of the Order.  A copy of the Order is enclosed.

In order to receive payment on account of your prepetition claims, you must agree to continue to your business relationship with the Company based on "<u>Customary Business Terms</u>" which are defined as the customary terms, programs and practices between the parties, that were most favorable to the Company in effect between you and the Company during the twelve months before the Petition Date, or such other reasonable terms as you and the Company agree.

For purposes of administration of this critical vendor payment program as authorized by the Bankruptcy Court, you and the Company both agree as follows:

     1.     Based on the Company review of its books and records, the amount of your prepetition claim (net of any setoffs, credits or discounts) (the "<u>Claim</u>") is $[_____] (the "<u>Critical Vendor Claim</u>"), subject to final reconciliation by the Company.

     2.     The Company will provisionally pay you $[_____] of your Critical Vendor Claim on or before [_____].  The remainder of your prepetition claim shall be allowed in the fixed amount of $[_____], and will be paid pursuant to a plan of reorganization to the same extent as creditors of similar priority.  Payment pursuant to the terms of this paragraph shall be in full and final satisfaction of any and all prepetition claims.

     3.     You affirm that the amount of your Claim as set forth in paragraph 1 is true and correct as of the Petition Date.

     4.     You have not received payment from any other source on account of the Claim.

     5.     You agree to waive any prepetition claim against the Company to the extent of

the amount of any payment received under the Order.

6.      You will continue to provide an open trade balance or credit line to the Debtors for shipment of post-bankruptcy goods or delivery of services based on Customary Business Terms before and up to the Petition Date.

7.      You will not separately seek payment for reclamation and similar claims outside of the terms of the Order unless your participation in the critical vendor payment program authorized by the Order (the "Critical Vendor Payment Program") is terminated.

8.      During the pendency of these Chapter 11 Cases, in all business dealings with the Company you will continue to extend to the Company the Customary Business Terms.

9.      The Company will provide payment to you in the ordinary course of business for any services that you provide to the Company after the Petition Date.  You will not demand a lump sum payment upon consummation of a plan of reorganization in these Chapter 11 Cases on account of any administrative expense priority claim that you assert, but instead agree that such claims will be paid in the ordinary course of business after consummation of a plan under applicable Customary Business Terms, if the plan provides for the ongoing operations of the Company.

10.      The undersigned, a duly authorized representative of [Critical Vendor], has reviewed the terms and provisions of the Order and agrees that [Critical Vendor] is bound by such terms.

11.      If either the Critical Vendor Payment Program or your participation therein terminates as provided in the Order, or you later refuse to continue your business relationship with the Company on Customary Business Terms during the pendency of the Bankruptcy Cases, the Company reserves all their rights to seek appropriate relief against you under applicable law, including but not limited to seeking to recover any payments you receive on account of your Critical Vendor Claim as voidable post-bankruptcy transfers pursuant to section 549(a) of chapter 11 of title 11 of the United States Code.  The Company may take any and all appropriate steps to cause you to repay any payments you received on account of your Critical Vendor Claim to the extent that the aggregate amount of such payments exceeds the postpetition obligations then outstanding.

12.      In consideration for payment of your Critical Vendor Claim, you agree not to file or otherwise assert against the Company, the estates or any other person or entity or any of their respective assets or property (real or personal) any lien (regardless of the statute or other legal authority upon which such lien is asserted) related in any way to any remaining pre-bankruptcy amounts allegedly owed to you by the Company arising from agreements entered into prior to the Petition Date.  Furthermore, if you have taken steps to file or assert such a lien (except with respect to the Critical Vendor Claim, for which the Company reserves its rights to challenge such lien) prior to entering this letter agreement, you agree to take (at your own expense) all necessary steps to remove any such lien as soon as possible.

13.     Any dispute with respect to this letter agreement, the Order and/or your participation in the Critical Vendor Payment Program shall be determined by the Bankruptcy Court.

If you have any questions about this Agreement or our financial restructuring, please do not hesitate to call.

Sincerely,

[Applicable Debtor]

By:_____
        [Name],
        [Title]

Accepted and Agreed
[Critical Vendor]

By its_____

Dated_____

**<u>Exhibit B</u>**

**Proposed Interim Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| *In re* | Chapter 11 |
| **STANADYNE LLC, *et al.*,**[1] | Case No. 23-10207 (JTD) |
| **Debtors.** | (Jointly Administered) |

### INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO PAY PREPETITION CLAIMS OF (A) DOMESTIC CRITICAL VENDORS, (B) SHIPPERS, WAREHOUSEMEN, AND OTHER LIENHOLDERS, AND (C) FOREIGN VENDORS; (II) AUTHORIZING BANKS TO HONOR AND PROCESS RELATED CHECKS AND ELECTRONIC TRANSFERS; AND (III) GRANTING RELATED RELIEF

Upon the motion (the "Motion")[2] filed by the above-captioned debtors and debtors-in-possession (collectively, the "Debtors") seeking entry of interim and final orders: (i) authorizing, but not directing, the Debtors, in their sole discretion, to pay, in the ordinary course of business, prepetition claims of certain Critical Vendors, in an amount not to exceed the Critical Vendor Claims Cap; (ii) authorizing financial institutions to honor and process related checks and transfers; and (iii) granting any additional relief as is necessary to effectuate the foregoing; and upon the *Declaration of John Pinson, Chief Executive Officer of Stanadyne LLC, in Support of First Day Relief*; and upon the statements of counsel in support of the relief requested in the Motion at the hearing before the Court; and it appearing that this Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012; and

---

1. The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number are: Stanadyne LLC (0378); Pure Power Technologies, Inc. (5202); Stanadyne PPT Holdings, Inc. (2594); and Stanadyne PPT Group Holdings, Inc. (1734). The Debtors' headquarters are located at 405 White Street, Jacksonville, North Carolina 28546.

2. Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

it appearing that venue of these Chapter 11 Cases and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that this matter is a core proceeding pursuant to 28 U.S.C. § 157(b); and this Court having found that it may enter a final order consistent with Article III of the United States Constitution; and this Court having determined that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors and other parties-in-interest; and it appearing that proper and adequate notice of the Motion has been given and that no other or further notice is necessary; and after due deliberation thereon; and good and sufficient cause appearing therefor,

IT IS HEREBY ORDERED THAT:

1.  The relief requested in the Motion is GRANTED on an interim basis as set forth herein.

2.  The Debtors are authorized, but not directed, in their sole discretion and business judgment, to pay all or a portion of and discharge each Critical Vendor Claim, provided that the aggregate payments on account of Critical Vendor Claims shall not exceed $3,400,000 on an interim basis, absent further order of the Court.  Payments made to applicable Critical Vendors shall be applied, in the first instance, against claims held by such Critical Vendors that arise under section 503(b)(9) of the Bankruptcy Code, to the extent that Critical Vendors hold such claims, in whole or in part, as applicable.

3.  The form of Critical Vendor Agreement attached as **Exhibit A** to the Motion is approved in its entirety, and the Debtors are authorized to negotiate, modify, or amend the form of Critical Vendor Agreement in their reasonable business judgment.

4.  The Debtors are authorized but not directed to condition payment of the Critical Vendor Claims on the execution of a Critical Vendor Agreement, and the Debtors are

authorized to enter into such Critical Vendor Agreements when and if the Debtors determine, in the exercise of their business judgment, that doing so is appropriate.

5.      If a Critical Vendor accepts payment, and does not continue its business relationship with the Debtors in accordance with trade terms consistent with those practices most favorable to the Debtors in place during the twelve months before the Petition Date (or as otherwise set forth in an Critical Vendor Agreement), then, so long as the Critical Vendor receives notice and opportunity for a hearing, the Debtors may take any and all appropriate steps to cause such Critical Vendor to repay payments made to it on account of its prepetition claim to the extent that such payments exceed the postpetition amounts then owing to such Critical Vendor.

6.      The Debtors' banks and financial institutions are authorized to receive, process, honor, and pay all checks, drafts, electronic fund transfers, or other forms of payment drawn or issued on the Debtors' bank accounts before the Petition Date for the Critical Vendor Claims that have not been honored and paid as of the Petition Date (or to reissue checks, drafts, electronic fund transfers, or other forms of payment drawn or issued on the Debtors' bank accounts, as may be necessary), and are authorized to rely on the Debtors' representations as to which checks, drafts, transfers, or other forms of payment drawn or issued on the Debtors' bank accounts are subject to this Order; provided that sufficient funds are on deposit in the applicable bank accounts to cover such payments.

7.      The Debtors are authorized to reissue any check or electronic payment that originally was given in payment of any prepetition amount authorized to be paid under this Order and is not cleared by the applicable bank or other financial institution.

8.      Nothing in the Motion or this Order or the relief granted herein (including any actions taken or payments made by the Debtors) is to be construed as (i) an admission of the

validity of any claim against the Debtors; (ii) an admission with respect to the validity, extent, or perfection of any lien; (iii) a waiver of the Debtors' rights or those of any party in interest to dispute, contest, setoff, or recoup any claim, or assert any related rights, claims, or defenses; (iv) a waiver of the Debtors' rights or those of any party in interest over the validity, extent, perfection, or possible avoidance of any lien; or (v) an approval or assumption of any agreement, contract, program, policy, or lease under section 365 of the Bankruptcy Code.

9.      Bankruptcy Rule 6003(b) has been satisfied because the relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors.

10.      Notwithstanding any applicability of Bankruptcy Rule 6004(h), the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

11.      The Debtors are authorized and empowered to take all actions necessary to implement the relief granted in this Order.

12.      A final hearing to consider the relief requested in the Motion shall be held on _____, **2023 at _____ (Prevailing Eastern Time)** and any objections or responses to the Motion shall be in writing, filed with the Court, and served so as to be actually received on or prior to _____, **2023 at 4:00 p.m. (Prevailing Eastern Time)**. If no objections are filed to the Motion, the Court may enter the final order without further notice or hearing.

13.      This Court shall retain jurisdiction with respect to all matters arising from or relating to the interpretation or implementation of this Order.

**<u>Exhibit C</u>**

**Proposed Final Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re* | Chapter 11 |
| **STANADYNE LLC, *et al.*,**[1] | Case No. 23-10207 (JTD) |
| **Debtors.** | (Jointly Administered) |

**FINAL ORDER (I) AUTHORIZING THE DEBTORS TO PAY PREPETITION CLAIMS OF (A) DOMESTIC CRITICAL VENDORS, (B) SHIPPERS, WAREHOUSEMEN, AND OTHER LIENHOLDERS, AND (C) FOREIGN VENDORS; (II) AUTHORIZING BANKS TO HONOR AND PROCESS RELATED CHECKS AND ELECTRONIC TRANSFERS; AND (III) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] filed by the above-captioned debtors and debtors-in-possession (collectively, the "Debtors") seeking entry of interim and final orders: (i) authorizing, but not directing, the Debtors, in their sole discretion, to pay in the ordinary course of business, prepetition claims of certain Critical Vendors, in an amount not to exceed the Critical Vendor Claims Cap; (ii) authorizing financial institutions to honor and process related checks and transfers; and (iii) granting any additional relief as is necessary to effectuate the foregoing; and upon the *Declaration of John Pinson, Chief Executive Officer of Stanadyne LLC, in Support of First Day Relief*; and upon the statements of counsel in support of the relief requested in the Motion at the hearing before the Court; and it appearing that this Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012; and

---

1. The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number are: Stanadyne LLC (0378); Pure Power Technologies, Inc. (5202); Stanadyne PPT Holdings, Inc. (2594); and Stanadyne PPT Group Holdings, Inc. (1734). The Debtors' headquarters are located at 405 White Street, Jacksonville, North Carolina 28546.

2. Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

it appearing that venue of these Chapter 11 Cases and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that this matter is a core proceeding pursuant to 28 U.S.C. § 157(b); and this Court having found that it may enter a final order consistent with Article III of the United States Constitution; and this Court having determined that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors and other parties-in-interest; and it appearing that proper and adequate notice of the Motion has been given and that no other or further notice is necessary; and after due deliberation thereon; and good and sufficient cause appearing therefor,

IT IS HEREBY ORDERED THAT:

1.       The relief requested in the Motion is GRANTED on a final basis as set forth herein.

2.       The Debtors are authorized, but not directed, in their sole discretion and business judgment, to pay all or a portion of and discharge each Critical Vendor Claim, provided that the aggregate payments on account of Critical Vendor Claims shall not exceed $6,800,000 on a final basis, absent further order of the Court.  Payments made to applicable Critical Vendors shall be applied, in the first instance, against claims held by such Critical Vendors that arise under section 503(b)(9) of the Bankruptcy Code, to the extent that Critical Vendors hold such claims, in whole or in part, as applicable.

3.       The form of Critical Vendor Agreement attached as **Exhibit A** to the Motion is approved in its entirety, and the Debtors are authorized to negotiate, modify, or amend the form of Critical Vendor Agreement in their reasonable business judgment.

4.       The Debtors are authorized but not directed to condition payment of the Critical Vendor Claims on the execution of a Critical Vendor Agreement, and the Debtors are

authorized to enter into such Critical Vendor Agreements when and if the Debtors determine, in the exercise of their business judgment, that doing so is appropriate.

5.      If a Critical Vendor accepts payment, and does not continue its business relationship with the Debtors in accordance with trade terms consistent with those practices most favorable to the Debtors in place during the twelve months before the Petition Date (or as otherwise set forth in an Critical Vendor Agreement), then, so long as the Critical Vendor receives notice and opportunity for a hearing, the Debtors may take any and all appropriate steps to cause such Critical Vendor to repay payments made to it on account of its prepetition claim to the extent that such payments exceed the postpetition amounts then owing to such Critical Vendor.

6.      The Debtors' banks and financial institutions are authorized to receive, process, honor, and pay all checks, drafts, electronic fund transfers, or other forms of payment drawn or issued on the Debtors' bank accounts before the Petition Date for the Critical Vendor Claims that have not been honored and paid as of the Petition Date (or to reissue checks, drafts, electronic fund transfers, or other forms of payment drawn or issued on the Debtors' bank accounts, as may be necessary), and are authorized to rely on the Debtors' representations as to which checks, drafts, transfers, or other forms of payment drawn or issued on the Debtors' bank accounts are subject to this Order; provided that sufficient funds are on deposit in the applicable bank accounts to cover such payments.

7.      The Debtors are authorized to reissue any check or electronic payment that originally was given in payment of any prepetition amount authorized to be paid under this Order and is not cleared by the applicable bank or other financial institution.

8.      Nothing in the Motion or this Order or the relief granted herein (including any actions taken or payments made by the Debtors) is to be construed as (i) an admission of the

validity of any claim against the Debtors; (ii) an admission with respect to the validity, extent, or perfection of any lien; (iii) a waiver of the Debtors' rights or those of any party in interest to dispute, contest, setoff, or recoup any claim, or assert any related rights, claims, or defenses; (iv) a waiver of the Debtors' rights or those of any party in interest over the validity, extent, perfection, or possible avoidance of any lien; or (v) an approval or assumption of any agreement, contract, program, policy, or lease under section 365 of the Bankruptcy Code.

9.      Notwithstanding anything to the contrary contained herein, any discretion afforded to the Debtors, payment made or to be made, and authorization granted pursuant to this Order shall be subject to the requirements imposed on the Debtors under any approved debtor-in-possession financing facility, any order regarding the Debtors' postpetition financing or use of cash collateral, and any budget in connection therewith.

10.     Bankruptcy Rule 6003(b) has been satisfied because the relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors.

11.     Notwithstanding any applicability of Bankruptcy Rule 6004(h), the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

12.     The Debtors are authorized and empowered to take all actions necessary to implement the relief granted in this Order.

13.     This Court shall retain jurisdiction with respect to all matters arising from or relating to the interpretation or implementation of this Order.