## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| *In re* | Chapter 11 |
| **STANADYNE LLC, *et al.*,**[1] | Case No. 23-10207 (JTD) |
| **Debtors.** | (Joint Administration Requested) |

### DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (A) AUTHORIZING DEBTORS TO PAY (I) PREPETITION EMPLOYEE OBLIGATIONS, (II) PREPETITION WITHHOLDING OBLIGATIONS, AND (III) POSTPETITION EMPLOYEE OBLIGATIONS IN THE ORDINARY COURSE, AND (B) AUTHORIZING BANKS TO HONOR RELATED TRANSFERS

The debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors") hereby move (the "Motion"), pursuant to sections 105, 363, 503, 507(a)(4), 507(a)(5), 541, 1107 and 1108 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 6003 and 6004(h) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for the entry of an interim order substantially in the form annexed hereto as **Exhibit "A"** (the "Interim Order") and a final order substantially in the form annexed hereto as **Exhibit "B"** (the "Proposed Orders"):  (a) authorizing the Debtors, in their sole discretion, to continue to honor and pay (i) prepetition employee obligations as described more fully herein, (ii) prepetition federal, state and applicable foreign withholding obligations, and (iii) postpetition employee obligations in the ordinary course of the Debtors' business, and (b) (i) authorizing all banks to honor the Debtors'

---

1.  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: Stanadyne LLC (0378), Pure Power Technologies, Inc. (5202), Stanadyne PPT Holdings, Inc. (2594), and Stanadyne PPT Group Holdings, Inc. (1734).  The Debtors' headquarters are located at:  405 White Street, Jacksonville, NC 28546.

prepetition transfers for payment of any of the foregoing and (ii) prohibiting banks from placing holds on, or attempting to reverse, any transfer of funds on account of the foregoing.  In support of this Motion, the Debtors submit the *Declaration of John Pinson, Chief Executive Officer of Stanadyne LLC, in Support of First Day Relief* (the "<u>Pinson Declaration</u>"), filed contemporaneously herewith, and respectfully submit as follows:

<u>**JURISDICTION AND VENUE**</u>

1.      The Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference of the United States District Court for the District of Delaware*, dated February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors confirm their consent pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.      Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory and rule bases for the relief requested herein are sections 105, 363, 503, 507(a)(4), 507(a)(5), 541, 1107 and 1108 of the Bankruptcy Code and Rules 6003 and 6004(h) of the Bankruptcy Rules.

<u>**BACKGROUND**</u>

4.      On February 16, 2023 (the "<u>Petition Date</u>"), the Debtors commenced their bankruptcy cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code (the "<u>Chapter 11 Cases</u>").  No trustee, examiner or creditors' committee has been appointed in

these cases.   The Debtors are operating their respective businesses as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.        The events leading up to the Petition Date and the facts and circumstances supporting the relief requested herein are set forth in the Pinson Declaration.

## RELIEF REQUESTED

6.        Prior to the Petition Date, the Debtors incurred payroll and various other obligations and offered standard employee benefits funded by either the Debtors, their employees or both.  The payroll and various other obligations as well as the standard employee benefits were designed to be an integral part of the compensation the Debtors' employees receive.

7.        The Debtors, by this Motion, seek authority, in their sole discretion (and subject to the statutory caps contained in sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code and in accordance with any orders authorizing postpetition financing and the use of cash collateral and the applicable budget thereunder), to pay and honor, as the case may be, (i) all prepetition claims of Employees, including, but not limited to, claims for Wages, Overtime, and Temporary Employee Compensation, as applicable, and certain costs and disbursements related to the foregoing, (ii) any claims or payments pursuant to the Employee Benefit Plans, (iii) all Benefits Withholding Obligations (romanettes (i) through (iii) collectively, the "Employee Obligations"), and (iv) the Reimbursable Expenses.  Notwithstanding the foregoing, nothing in this Motion seeks to authorize (1) the payment of any amounts in satisfaction of bonus or severance obligations subject to section 503(c) of the Bankruptcy Code; (2) the payment of any amounts owing to any retired or former Employees (as defined herein) under any supplemental executive retirement plan or otherwise, or (3) the Debtors to cash out unpaid vacation or leave time upon termination of an Employee, unless applicable state law requires such payment.  Furthermore, payments of prepetition amounts owed on account of Employee Obligations and to Temporary Employees will

30128794.1

be subject to the statutory caps contained in sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code.

8.      In addition, the Debtors seek an order authorizing all banks and other financial institutions to receive, process, honor and pay any and all checks or wire transfers drawn on the Debtors' accounts with respect to payments described in this Motion.  The Debtors additionally request that the Court authorize them to issue new postpetition checks to replace any checks that may be dishonored and to reimburse any expenses that Employees may incur as a result of any bank's failure to honor a prepetition check.

## FACTS RELEVANT TO THIS MOTION

### I.      The Debtors' Workforce

9.      The Debtors operate in several different locations throughout the United States, including South Carolina, North Carolina, Michigan, and Connecticut.  The Debtors also engage in intercompany transactions with affiliates located in Italy, the United Arab Emirates, India, and China.  These non-debtor affiliates are key suppliers to the Debtors that produce highly customized products for the Debtors that are integral to the Debtors' operations.

10.      As of the Petition Date, the Debtors' collective workforce is comprised of approximately 468 employees in the United States.  Of the current employees, approximately 164 are full-time salaried employees and approximately 304 are hourly employees.  Of these, approximately 180 employees work for Stanadyne LLC ("Stanadyne"), including 86 salaried employees and 94 hourly employees, while approximately 288 employees work for Pure Power Technologies, Inc. ("PPT") including 78 salaried employees and 210 hourly employees.  A few individuals provide services to both the Debtors and the Debtors' non-debtor affiliates.  The Debtors contribute a portion of these individuals' salaries.  The Debtors also utilize the services of staffing agencies and independent contractors to fulfill critical employment needs and to address

fluctuations in demand or provide special skills required by the Debtors.  The number of temporary employees fluctuates at any given time depending upon the Debtors' needs, and as of Petition Date, is currently approximately 120 individuals, of which 82 are employed at Stanadyne and 38 are employed at PPT.

11.     The Employees perform a variety of critical functions for the Debtors' businesses, including, without limitation, accounting, administration, engineering, finance, human resources, information technology, operations, manufacturing, marketing, purchasing, shipping, transportation, research, and sales.  Their skills and specialized knowledge and understanding of the Debtors' infrastructure and operations, as well as their relationships with customers, vendors and other third parties, are essential to the Debtors' continuing business operations.

## II.     Wages, Incentive Payments and Payroll Obligations

### A.     Wages

12.     In the ordinary course of the Debtors' businesses, the Debtors pay wages, salaries and compensation ("Wages and/or Overtime") to their Employees on a weekly or semi-monthly basis by direct deposit, check or wire transfer.  Salaried Employees are paid on a semi-monthly basis. Hourly Employees are paid on a weekly basis for the period ending one week before the date that their Wages are paid.  The pay date for weekly payroll is on Thursday of each week. The pay date for semi-monthly is on the 15th and the last day of the month unless such date falls on a weekend or bank holiday, in which case the pay date for such period is the immediately preceding business day.

13.     The Debtors' gross payroll is approximately $1.7 million to $1.8 million per month, excluding the Debtors' portion of the Payroll Taxes (as defined below).  The Debtors fund payroll on a weekly basis.  As of the Petition Date, the Debtors estimate that they owe Employees an aggregate of approximately $300,000 in accrued Wages and Overtime earned prior to the

Petition Date (subject to the variability described above), and no Employee is owed in excess of the statutory cap under section 507(a)(4) of the Bankruptcy Code on account of such Wages and Overtime.

14.     By way of this Motion, the Debtors request the authority, in the ordinary course of business, to pay Wages and Overtime accrued prepetition to their Employees, up to the statutory priority amount of $15,150 per Employee (inclusive of other Employee Obligations that are subject to section 507(a)(4) of the Bankruptcy Code), and to continue to otherwise pay Employees in the ordinary course of business (and subject to and in accordance with any orders authorizing postpetition financing and the use of cash collateral and the applicable budget thereunder).

**B.      Temporary Employee Compensation**

15.     The Debtors currently employ the services of approximately 125 Temporary Employees who provide services to the Debtors.  The Temporary Employees are employed by temporary staffing agencies, including Carolina Industrial Staffing, Inc., Spherion Staffing, LLC, JSE, LLC., Holden Temporaries, Inc., Mega Force Staffing Services, @WORK, and Express Employment Professionals.  The Debtors remit compensation for the Temporary Employees to the temporary staffing agencies through the Debtors' accounts payable system ("Temporary Employee Compensation").  The Debtors' average monthly spending on Temporary Employee Compensation is approximately $244,000.  As of the Petition Date, the Debtors estimate that they owe approximately at least $247,800 to the staffing agencies on account of Temporary Employee Compensation.

**C.      Independent Contractors**

16.     In addition to Employees, the Debtors contract with 13 independent contractors (the "Independent Service Providers") who provide services that are essential to the

Debtor's ongoing business operations (the "Independent Services"). The services provided by the Independent Services Providers include consulting, IT services, engineering, and landscaping. The Independent Service Providers are critical to the Debtors' operations, and they rely on the Debtors for their individual income.

17.      The Debtors estimate that the aggregate accrued amount owing to the Independent Service Providers as of the Petition Date is approximately $2,400. The Independent Service Providers are paid through the Debtors' respective accounts payable and not through the Debtors' payroll. Nonetheless, if the Debtors are unable to pay the Independent Service Providers, the Debtors will lose the services, continuity and institutional knowledge of the Independent Service Providers, and the Debtors' business operations will be severely and irreparably compromised.

18.      By way of this Motion, the Debtors request the authority, in the ordinary course of business, to pay Independent Service Providers for obligations accrued prepetition, up to the statutory priority amount of $15,150 per Independent Service Provider, and to continue to otherwise pay Independent Service Providers in the ordinary course of business (and subject to and in accordance with any orders authorizing postpetition financing and the use of cash collateral and the applicable budget thereunder).

D.      **Payroll Taxes**

19.      As employers, the Debtors are required by law to withhold federal, state and local taxes from Wages for remittance to appropriate tax authorities (the "Employee Taxes"). In addition to the Employee Taxes, the Debtors are required to pay, from their own funds, social security and Medicare taxes and pay, based on a percentage of gross payroll and subject to state-imposed limits, additional amounts for state and federal unemployment insurance (together with

the Employee Taxes, the "Payroll Taxes") and remit the same to the appropriate authorities (collectively, the "Taxing Authorities").

20.     In the aggregate, the Debtors estimate that Payroll Taxes total approximately $933,000 per month, based on actual monthly Payroll Taxes paid during January 2023.  As of the Petition Date, the Debtors are not aware of any unpaid, outstanding amounts owed to the Taxing Authorities on account of Payroll Taxes.  The Debtors hereby seek authority, in their sole discretion (and subject to and in accordance with any orders authorizing postpetition financing and the use of cash collateral and the applicable budget thereunder), to continue remitting the Payroll Taxes to the appropriate Taxing Authorities as needed, including, without limitation, with respect to the most recent payroll period up to the Petition Date, and any prior period.

**E.     Garnishments**

21.     In the ordinary course of processing payroll checks for their Employees, the Debtors may be required by law, in certain circumstances, to withhold from certain Employees' wages amounts for various garnishments, such as tax levies, child support, and other court-ordered garnishments (collectively, the "Garnishments").  The Debtors then remit the Garnishments to the appropriate state agencies.  The Debtors estimate that they withhold approximately $2,200 per week for the hourly employees and $2,000 per pay period for the salaried employees on account of Garnishments.

**F.     Severance**

22.     In the ordinary course of business, the Debtors have a set of guidelines pursuant to which they offer severance payments to certain Employees whose employment has been involuntarily terminated (the "Severance Guidelines").  Under the Severance Guidelines, these Employees receive, upon involuntary termination, a severance payment equal to one month of such Employee's base salary if such Employee was employed for one to four years; a severance

payment equal to two months of such Employee's base salary if such Employee was employed for five to eight years; a severance payment equal to three months of such Employee's salary if such Employee was employed for nine to ten years; and a severance payment equal to six months of such Employee's salary if such Employee was employed for eleven years or more.

23.     There are approximately three non-insider former employees who are presently receiving severance payments from the Debtors.  These former employees are presently owed severance payments totaling an aggregate amount of approximately $27,250.

24.     The Debtors believe it is critical to maintaining the Employees' morale and loyalty that they be authorized to continue providing severance benefits to Employees who do not qualify as "insiders," as that term is defined in section 101(31) of the Bankruptcy Code, in the ordinary course of business after the Petition Date (the "Non-Insider Employees").  The Debtors further seek authority to pay postpetition the administrative portion of any Non-Insider Employee's severance claims under the Severance Program as such claims come due in the ordinary course.  The Debtors cannot afford for such Non-Insider Employees to leave their jobs while the Debtors continue to need their services during this critical process.  Notably, it may be difficult for the Debtors to attract new employees of comparable quality and character.  Moreover, even if otherwise available, new employees would lack the unique knowledge and historical perspective with respect to the Debtors possessed by the Non-Insider Employees.  By granting the relief requested herein, the Debtors will be able to assure the Non-Insider Employees that they will continue to be entitled to receive the same benefits that they were entitled to receive prior to the

Petition Date.  The Debtors are not seeking authority to make any prepetition or postpetition payments to any insiders on account of the Severance Program.[2]

### III.   Costs Incidental to Payroll

25.     The Debtors incur costs incidental to Employee Wages, such as payments to parties for charges associated with the administration of the Wages and for other costs incident to the provision thereof (collectively, the "Processing Costs").  The Debtors process payroll for all Employees in the United States through ADP, Inc. ("ADP").  The Debtors also engage ADP to manage the Payroll Tax filing process.  Specifically, ADP calculates the amount of Payroll Tax required to be remitted each pay period, draws that amount from one of the Debtors' bank accounts, and forwards the Payroll Taxes to the applicable Taxing Authorities.  Fees paid to ADP total approximately $270,000 annually.

26.     To the best of the Debtors' knowledge, as of the Petition Date, the Debtors owe ADP an outstanding amount equal to approximately $16,000.  Payment of the unpaid Processing Costs is justified because the failure to pay any such amounts might disrupt the services of third-party providers that are essential to the timely payment of Employees.  By paying these Processing Costs, the Debtors will avoid disruptions of such services, ensuring that the Employees obtain all of their compensation without interruption.  Accordingly, the Debtors hereby seek authority, but not direction, to continue remitting the Processing Costs to the appropriate third parties.

27.     To compliment the services provided by ADP, the Debtors also utilize an attendance tracking software through Metropolitan Software ("MetSoft").  Fees paid to MetSoft

---

2.   To the extent the Debtors propose to make severance payments to any insiders, the Debtors will seek separate approval from this Court prior to making any such payments.

total approximately $20,200 annually.  To the best of the Debtors' knowledge, as of the Petition

Date, the Debtors do not currently owe MetSoft on account of the services provided to the Debtors.

**IV.**     **Paid Time Off and Other Paid Leave**

        28.     As part of their overall compensation, the Debtors offer Employees certain

fixed amounts of paid leave.  The Debtors' paid time off policy  provides paid leave for vacation,

sick and personal days ("PTO"), accrued based upon the Employee's years of service to the

Debtors.  Employees are not allowed to carry over any days of vacation from one calendar year to

the next calendar year.

        29.     The Debtors also allow their Employees to take certain other leaves of

absence for personal reasons, many of which are required by law ("Leaves of Absence," and

along with PTO, collectively, "Paid Leave").  Leaves of Absence include family medical leaves,

military leaves, and jury duty, and they do not count toward an Employee's PTO.  The Debtors

do not believe that they presently owe any amounts to Employees for Paid Leave.  The Debtors

presently pay Employees for Paid Leave in the amount of approximately $3,100 in short term

disability benefits.  Any long term disability payments are paid to the employee directly by the

Debtors third-party vendor Guardian.

        30.     By this Motion, the Debtors request authority to continue to honor their Paid

Leave policies in the ordinary course of business and to honor all prepetition obligations up to the

statutory cap related thereto in a manner consistent with their prepetition practices.

**V.**     **Employee Benefit Plans**

        31.     The Debtors have established certain benefit plans and policies for eligible

Employees that provide, among other benefits, medical, dental and vision plans, life insurance,

disability insurance, retirement plans and other benefits which are described in more detail below

(collectively, including any administrative costs with respect thereto, the "Employee Benefit Plans").[3] A brief description of the Employee Benefit Plans is provided below:

## A.      Medical Plan

32.     The Debtors sponsor several health and welfare benefit plans, including medical, dental, and vision coverage for certain of their Employees.  The Debtors offer eligible Employees in the United States medical benefits through a self-funded plan (the "Medical Plan") administered by Blue Cross Blue Shield of South Carolina ("BCBS").  Employees are eligible to participate in the Medical Plan if they are full-time Employees working at least thirty (30) hours per week.  Currently, the Debtors provide benefits to approximately 337 Employees under the Medical Plan.

33.     The Debtors are required to pay for all costs arising under the Medical Plan, including claims payments and associated administrative costs, but Employees are responsible for making their employee share of policy premium payments, satisfying the annual deductible and for paying copayments to a network provider.  Claims under the Medical Plan average approximately $350,000 per month.  As of the Petition Date, the Debtors estimate that their liability on account of incurred but unpaid medical claims for Employees in the Medical Plan is approximately $250,000.

34.     The Debtors also pay approximately $54,100 per month to BCBS in administrative fees for their services in connection with the Medical Plan.

---

3.   In addition to the insurance programs discussed herein, the Debtors also maintain a workers' compensation insurance policy, which is addressed in a separate motion titled *Debtors' Motion For An Order (I) Authorizing the Debtors to (A) Continue Their Workers' Compensation Programs and Their Liability, Property and Other Insurance Programs and (B) Pay Certain Obligations in Respect Thereof, and (II) Authorizing and Directing the Debtors' Financial Institutions to Honor and Process Checks and Transfers Related to Such Obligations*, filed contemporaneously herewith.

35.     The Debtors also carry stop-loss insurance to cover any individual's claims in excess of the amount of estimated claims in a calendar year.  The Debtors pay approximately $45,000 per month for such stop-loss coverage provided by BCBS.  As of the Petition Date, there are approximately $119,000 in unpaid and outstanding administrative fees and insurance premiums owed on account of the Medical Plan.

**B.      Dental Plan**

36.     The Debtors offer self-funded dental benefits to eligible Employees and their dependents through Guardian (the "Dental Plan").  Employees are eligible to participate in the Dental Plans if they are full-time Employees working at least thirty hours per week.  Currently, the Debtors provide benefits under the Dental Plan to approximately 391 Employees.  The Debtors are required to pay for all costs arising under the Dental Plan, including claims payments and associated administrative costs, but Employees are responsible for making their employee share of policy premium payments, satisfying the annual deductible and for paying copayments to a network provider.  Claims under the Dental Plan average approximately $18,300 per month.  As of the Petition Date, the Debtors estimate that their liability on account of incurred but unpaid medical claims for Employees in the Dental Plan is approximately $10,400.  There are also unpaid administrative fees in the amount of approximately $1,400

**C.      Vision Plan**

37.     The Debtors offer vision benefits to their eligible Employees and their dependents through a fully insured plan (the "Vision Plan," and together with the Medical Plans and Dental Plan, the "Health Plans") administered by Vision Service Plan ("VSP").  Employees are eligible to participate in the Vision Plan if they are full-time Employees working at least thirty hours per week.  The Debtors pay the majority of the premiums of the Vision Plan.  Such payments cost the Debtors approximately $2,800 per month in the aggregate.  As of the Petition

Date, the Debtors estimate that they owe approximately $2,900 in unpaid and outstanding premiums on account of the Vision Plans.

38.     By this Motion, the Debtors seek authority (subject to and in accordance with any orders authorizing postpetition financing and the use of cash collateral and the applicable budget thereunder) to (a) pay all such amounts owed under the Health Plans to the extent that they remain unpaid on the Petition Date subject to the statutory caps contained in sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code (as applicable), (b) continue to provide the Health Plans in the ordinary course of business, (c) continue to honor the Debtors' obligations under such benefit programs, including any premiums and administrative fees, and (d) pay any obligations in connection with the Health Plans in the ordinary course of business, including any premiums or administrative fees.

**D.      Other Insurance**

39.     The Debtors offer eligible Employees disability insurance, including short-term disability insurance and long-term disability insurance (the "Disability Insurance Plans"). The short-term disability insurance plan provides eligible Employees continued employment benefits for a maximum of twenty-six weeks following an extended illness or injury.  The long-term disability insurance plan provides Employees who elect coverage with 60% of an employee's salary up to $4,000 per month for Stanadyne and up to $10,000 for PPT.  On average, the Debtors incur an aggregate monthly cost of approximately $19,700 in connection with the Disability Insurance Plans.  As of the Petition Date, the Debtors believe that there are approximately $19,700 in accrued and unpaid monthly costs in connection with the Disability Insurance Plans.

40.     Eligible Employees are also offered a basic life insurance benefit, which includes an Accidental Death & Dismemberment ("AD & D") benefit, for full-time Employees, who regularly work at least thirty  hours per week, up to a maximum of $25,000 at Stanadyne and

1.5 times annual base salary at PPT with matching AD & D benefit (the "Life Insurance and AD & D Plan").  Currently, there are approximately 466 employees and 129 retirees on the Life Insurance and AD & D Plan with a total aggregate monthly premium of approximately $14,400.  As of the Petition Date, the Debtors estimate there are approximately $14,400 in unpaid and outstanding premiums on account of the Life Insurance and AD & D Plan.

41.     The Debtors offer full-time Employees the ability to purchase supplemental life and AD & D insurance for Employees, their spouses and eligible children (the "Supplemental Life and AD & D Program") through Guardian.  Currently, 340 Employees and 39 retirees are under the Supplemental Life and AD & D Program with a total aggregate monthly premium of approximately $17,400.  The Debtors estimate there are approximately $17,400 in unpaid and outstanding premiums on account of the Supplemental Life and AD & D Program.

42.     By this Motion, the Debtors seek authority to pay, in their sole discretion (and subject to and in accordance with any orders authorizing postpetition financing and the use of cash collateral and the applicable budget thereunder), any and all prepetition amounts owed on account of the Disability Insurance Plans, Life Insurance and AD & D Plans, and the Supplemental Life Insurance and AD & D Program, and to continue their prepetition practices with respect to such benefits.

**E.     Other Supplemental Insurance Programs**

43.     The Debtors' Employees may also choose to enroll in certain other insurance policies, including critical illness, accident, and cancer insurance (collectively, the "Other Supplemental Insurance Programs") through Guardian.  Currently, Employees have purchased 691 policies through the Other Supplemental Insurance Programs with a total aggregate monthly premium of approximately $8,800.  As of the Petition Date, the Debtors estimate there

are approximately $8,800 in unpaid and outstanding premiums on account of the Other Supplemental Insurance Programs.

44.     By this Motion, the Debtors seek authority to pay, in their sole discretion (and subject to and in accordance with any orders authorizing postpetition financing and the use of cash collateral and the applicable budget thereunder), any and all prepetition amounts owed on account of the Other Supplemental Insurance Plans, and to continue their prepetition practices with respect to such benefits.

## F.     Flexible Spending Accounts/Health Savings Accounts

45.     The Debtors offer Employees the ability to contribute a portion of their pre-tax compensation to flexible spending accounts and health savings accounts ("Savings Accounts") to pay for eligible out-of-pocket health care and dependent care expenses.  Currently, approximately 89 Employees maintain Savings Accounts.  The funds deducted from the Employees' paychecks for contribution to the Savings Accounts are remitted to Fidelity or Health Equity, which administers claims and remits reimbursements to Employees.  The Debtors pay Fidelity approximately $700 per month and Health Equity approximately $140 to administer the Savings Accounts, and the Debtors currently withhold approximately $9,200 per month on account of Employee contributions to the Savings Accounts.  The Debtors estimate that, as of the Petition Date, they are not currently holding anything in Savings Account deductions for remittance to Fidelity and owe approximately $500 on account of  incurred, but unpaid, prepetition expenses in connection with the Savings Accounts.

## G.     COBRA

46.     The Debtors pay in the ordinary course of business certain costs associated with the provision of COBRA extended group health benefits insurance coverage to certain former employees and their dependents (the "COBRA Coverage").  The Debtors' COBRA

Coverage is administered by ADP for a fee that is included as part of the Debtors' ADP

compensation services bundle of (the "COBRA Program").  Under the COBRA Program, an

Employee may elect to receive COBRA Coverage for the continuance of the Medical Plans,

Dental Plan, and Vision Plan following their employment with the Debtors.  As of the Petition

Date, only one former employees currently receive COBRA.  As of the Petition Date, the

Debtors do not have any unpaid and outstanding administrative fees on account of the COBRA

Program.

**H.      401(k) Plan**

47.      The Debtors maintain retirement savings plans for the benefit of eligible

Employees in accordance with the requirements of section 401(k) of the Internal Revenue Code

(the "401(k) Plan").  Approximately 450 Employees currently contribute to the 401(k) Plan.  The

401(k) Plan is administered by Vanguard and Fidelity.  Employees may contribute to the 401(k)

Plan each year through salary deferrals up to the IRS limit.  With respect to Vanguard, the Debtors

also provide matching contributions to each Employee participant's account under the 401(k) Plan

equal to 50% of Employee's salary deferrals, up to 6% of an Employee's compensation (the

"Matching Contributions").  The Matching Contributions under the 401(k) Plan do not totally vest

until an Employee has completed three years of service with the Debtors.  Matching Contributions

vest 33% after one year, 67% after two years, and 100% after three years.  With respect to Fidelity,

only discretionary matching is offered, which vests immediately.  However, under IRS guidelines,

termination of the 401(k) Plan will cause all unvested amounts to become automatically vested at

the time of plan termination.

48.      The Debtors deduct contributions from Employees' paychecks and remit

contribution amounts to Fidelity and Vanguard.  The approximate monthly amount withheld from

such Employees' paychecks for the 401(k) plan contributions is $226,000.  On average, the

Debtors pay approximately $55,800 per month in Matching Contributions.  The Debtors estimate that they owe approximately $2,100 in matching contributions under the 401(k) Plan has accrued and is unpaid by the Debtors as of the Petition Date.

49.     By this Motion, the Debtors seek authority, in their discretion, to continue to honor their obligations with respect to the 401(k) Plan, including the Matching Contributions, in the ordinary course of their business.

## I.      Other Benefit Programs

50.     The Debtors provide eligible Employees with a tuition reimbursement program (the "Tuition Reimbursement Program"), pursuant to which the Debtors reimburse up to a maximum amount of $5,250 per year for actual expenses of an accepted class from an accredited college or university.  Currently, there are five (5) employees enrolled in such classes.  As of the Petition Date, the total amount outstanding under the Tuition Reimbursement Program is approximately $3,000.

51.     Executives of Stanadyne receive automotive allowances of $800 per month. This amount is included in the Debtors' payroll.

52.     The Debtors also offer a wellness program through Strive (the "Wellness Program"), which includes back care, maternity care, stress management, tobacco cessation, and weight management.  The costs of the Wellness Program are included in the administrative fees paid to BCBS.  As of the petition date, the Debtors do not owe any amounts in connection with the Wellness Program.

## VI.     Pension Obligations

53.     The Debtors offer a pension plan (the "Pension Plan"), which has not required any cash funding by the Debtors since 2019.  The Debtors also provide a Supplemental Executive Retirement Plan (the "SERP"), which was established as a non-ERISA plan for certain

higher compensated employees who were capped for allowable benefits under the Pension Plan when it was frozen in 2007. The Pension Plan provides benefits to approximately 1,400 former employees and is paid out of the pension trust assets. Twenty people are enrolled in the SERP. They are paid monthly through the ADP in separate monthly payrolls. Fifteen are former employees and five are spouses of former employees. The Debtors estimate that payments on account of the SERP amount to approximately $36,500 per month. The Debtors are not seeking authority to make payments on account of the Pension Plan or the SERP pursuant to this Motion.

## VII.    OPEB

54.    The Debtors also provide other post-employment benefits to certain retired employees, including medical insurance and life insurance coverage benefits (such plan, the "OPEB"). The OPEB has approximately 52 active health care plan participants and 134 active life insurance plan participants. The Debtors estimate that OPEB-related costs will total approximately $144,000 for 2023. The Debtors make contributions together with payroll cycles and are thus current with all such amounts presently due for 2023 to the best of their knowledge. The OPEB was last amended as of January 1, 2017. Generally, employees are eligible for subsidized benefits if they were last hired before 1997 and are at least 57 years old with at least ten years of continuous service. Employees who retired before 1991 with at least ten years of vesting service, who elected to commence pension benefits immediately and were employed by certain entities are also eligible for subsidized benefits. Employees hired in 1997 or later are required to pay the full cost of coverage for the medical plan. Spouses and unmarried children under age 19 are eligible for dependent medical coverage. Medical coverage for surviving spouses continues after the death of an employee only if a joint and survivor annuity option was elected under the pension plan. For retiree medical insurance, Stanadyne pays fixed amounts (not increasing over time) of $100 per month per retiree or spouse under age 65 and $50 per month per retiree or spouse over age 65.

30128794.1

The pre-65 benefit is self-insured; the post-65 benefit is fully-insured. Retiree dental insurance benefits are offered to those eligible for medical insurance coverage, but participants must pay the full cost of coverage. Retiree vision insurance benefits are not offered. Basic life insurance coverage is offered to participants who meet the medical retirement eligibility requirements discussed above. Stanadyne subsidizes life insurance coverage for employees who retired before 1997; post-1997 retirees pay the full cost of coverage. Certain pre-1991 retirees receive a company subsidy for supplemental life insurance coverage. The average life insurance coverage amount is approximately $4,500 per retiree participating in the plan.

## VIII.   Reimbursable Business Expenses

55.     Business expenses incurred by Employees in the course of employment and in furtherance of the Debtors' business are generally paid directly by the Employee and then charged to the Debtors in accordance with the Debtors' reimbursement policy. The Debtors reimburse Employees for certain ordinary course expenses incurred within the scope of the Employees' employment, including personal protection equipment, travel and other miscellaneous expenses (collectively, the "Business Expenses").

56.     As of the Petition Date, the Debtors are aware of approximately $2,500 in accrued and unpaid Business Expenses awaiting payment. However, the Debtors anticipate that some Employees have not yet submitted their recent expense reports for accrued and unpaid Business Expenses. As a point of reference, the Debtors reimbursed approximately $36,900 in Business Expenses in January 2023.

57.     Failing to reimburse employees for Business Expenses could have a negative effect on Employee morale and would cause those employees with outstanding Business Expenses to suffer undue hardship.

58.     Accordingly, the Debtors seek authority, in their sole discretion, to (i) continue their prepetition practices with respect to the Business Expenses in the ordinary course of business, (ii) continue to pay the Business Expenses as they deem appropriate in their business judgment (subject to and in accordance with any orders authorizing postpetition financing and the use of cash collateral and the applicable budget thereunder), and (iii) pay all prepetition amounts outstanding in connection with the Business Expenses.

## IX.    Benefits Withholding Obligations

59.     As part of the relief requested herein, the Debtors seek authorization to pay the Payroll Taxes and all other withholdings such as contributions to savings, retirement or pension plans, insurance contributions and charitable contributions, if any (collectively, the "Benefits Withholding Obligations").

60.     The Debtors routinely withhold from Employee paychecks the Benefits Withholding Obligations, and are required to transmit these amounts to third parties.  The Debtors believe that such withheld funds, to the extent that they remain in the Debtors' possession, constitute moneys held in trust and therefore, are not property of the Debtors' estates.  Thus, whether or not such funds are prepetition amounts, the Debtors believe that directing such funds to the appropriate parties does not require Court approval.  Nevertheless, in the interests of transparency and full disclosure, the Debtors seek authority to pay any outstanding amounts owed for Benefits Withholding Obligations, in the ordinary course of business, including those incurred prior to the Petition Date.

**BASIS FOR RELIEF**

I.     **Sufficient Cause Exists for the Court to Authorize the Debtors to Pay Employee Obligations and Employee Benefits**

61.     Pursuant to section 507(a)(4)(A) of the Bankruptcy Code, claims of employees against a debtor for "wages, salaries, or commissions, including vacation, severance, and sick leave pay" earned within 180 days before the Petition Date are afforded priority unsecured status to the extent of $15,150 per individual.  11 U.S.C. § 507(a)(4)(A).  Similarly, section 507(a)(5) of the Bankruptcy Code provides that employees' claims for contributions to certain employee benefits plans are also afforded priority unsecured status to the extent of $15,150 per employee covered by such plan, less any amount paid pursuant to Bankruptcy Code section 507(a)(4). 11 U.S.C. § 507(a)(5).

62.     Furthermore, section 363(b)(1) of the Bankruptcy Code provides that, "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  Section 105(a) of the Bankruptcy Code further provides:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.  No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a).

63.     The Debtors believe that many of the Employee Obligations relating to the period prior to the Petition Date constitute priority claims under sections 507(a)(4) and (5) of the Bankruptcy Code.  As priority claims, these obligations must be paid in full before any of the Debtors' general unsecured obligations may be satisfied.  Accordingly, the relief requested will

affect only the timing of the payment of these priority obligations and should not prejudice the rights of general unsecured creditors or other parties in interest.

64.     The "doctrine of necessity" functions in a chapter 11 case as a mechanism by which the bankruptcy court can exercise its equitable power to allow payment of critical prepetition claims not explicitly authorized by the Bankruptcy Code and further supports the relief requested herein.  *See In re Lehigh and New Eng. Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (holding that a court may authorize payment of prepetition claims if such payment is essential to continued operation of the debtor); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 176 (Bankr. S.D.N.Y. 1989) (authorizing the payment of prepetition employee wages and benefits while acknowledging that there is judicial power to "authorize a debtor in a reorganization case to pay prepetition claims where such payment is essential to the continued operation of the debtor"); *see also In re Just For Feet, Inc.*, 242 B.R. 821, 824-25 (D. Del. 1999) (holding that Bankruptcy Code section 105(a) "provides a statutory basis for the payment of prepetition claims" under the doctrine of necessity and noting that the Supreme Court, the United States Circuit Court of Appeals for the Third Circuit, and the District Court of Delaware all accept the authority of the bankruptcy court "to authorize the payment of prepetition claims when such payment is deemed necessary to the survival of a debtor in a chapter 11 reorganization"); *In re Columbia Gas Sys., Inc*., 171 B.R. 189, 191-92 (Bankr. D. Del. 1994) (explaining that the doctrine of necessity is the standard in the Third Circuit for enabling a court to authorize the payment of prepetition claims prior to confirmation of a reorganization plan).   The rationale for the "doctrine of necessity" is consistent with the paramount goal of chapter 11 – "facilitating the continued operation and rehabilitation of the debtor . . . ." *In re Ionosphere Clubs, Inc.*, 98 B.R. at 176.  Accordingly, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, this Court is empowered to grant the relief requested herein.

65.     The Debtors submit that, as set forth above, payments made in connection with the Employee Obligations and Employee Benefits are justified by the facts and circumstances of the Chapter 11 Cases.  Courts in this and other districts have ruled that the standard for approval under section 503(c)(3) of the Bankruptcy Code – that the programs are justified by the facts and circumstances of the case – is essentially the same as the standard for similar transactions under section 363(b)(1) of the Bankruptcy Code: the business judgment standard.  S*ee, e.g.*, *In re Global Home Prods., LLC*, 369 B.R. 778, 783-84 (Bankr. D. Del. 2007) (reviewing incentive plans under the business judgment standard); *In re Dana Corp.*, 358 B.R. 567, 584 (Bankr. S.D.N.Y. 2006) (reviewing bonus plans under the business judgment standard).  Thus, payments in connection with Employee Obligations and Employee Benefits are allowed under section 503(c)(3) of the Bankruptcy Code because they represent the exercise of the Debtors' sound business judgment under section 363 of the Bankruptcy Code and are in the best business interest of the Debtors' estates and their creditors.

66.     In these cases, any delay or failure to pay Employee Obligations and Employee Benefits could irreparably damage the Employees' morale, dedication, confidence and cooperation and could adversely affect the Debtors' relationship with the Employees at a time when the Employees' support is critical.  The Debtors simply cannot risk the substantial harm to their businesses that would inevitably attend any decline in their Employees' morale.  Such relief allows the Debtors to focus on maximizing value for the benefit of their estates and creditors.  Under these circumstances, approval of the requested relief is appropriate.

67.     Absent an order granting the relief requested herein, the Employees could suffer undue hardship and, in many instances, serious financial difficulties, as the amounts in question may be needed to enable certain of the Employees to meet their own personal financial

obligations.  Imposing such hardship on the Employees could undermine the Debtors' stability, perhaps irreparably, because it could cause otherwise loyal Employees to seek other employment alternatives.  In addition, it would be inequitable to require the Employees to bear personally the cost of any Business Expenses they incurred prepetition on behalf of the Debtors with the understanding that they would be reimbursed.

68.     With respect to Payroll Taxes in particular, the payment of such taxes will not prejudice other creditors, as the relevant Taxing Authorities generally would hold priority claims under section 507(a)(8) of the Bankruptcy Code with respect to such obligations. Moreover, Payroll Taxes withheld from an Employee's wages on behalf of an applicable Taxing Authority are held in trust by the Debtors.  Therefore, these Payroll Taxes are not property of the Debtors' estates under section 541 of the Bankruptcy Code. *See, e.g.*, *Begier v. IRS*, 496 U.S. 53, 60-61 (1990) (concluding that withholding taxes are property held by a debtor in trust for another and, as such, are not property of the debtor's estate).

69.     The Debtors do not seek to alter any of the Employee Benefits at this time. This Motion is intended only to permit the Debtors, in their discretion (but subject to and in accordance with any orders authorizing postpetition financing and the use of cash collateral and the applicable budget thereunder), to (i) make payments consistent with existing policies to the extent that, without the benefit of an order approving this Motion, such payments may be inconsistent with the relevant provisions of the Bankruptcy Code and (ii) continue to honor practices, programs, and policies with respect to their Employees, insofar as such practices, programs, and policies were in effect as of the Petition Date.  Payment of all Employee Benefits in accordance with the Debtors' prepetition business practices is in the best interests of the Debtors' estates, their creditors and all parties in interest and will enable the Debtors to continue

to operate their businesses in an economic and efficient manner and to conduct a successful reorganization without disruption. The Debtors' Employees are central to their businesses and are vital to these Chapter 11 Cases, and failure to pay the Employee Benefits would have a detrimental impact on the Debtors and their efforts to preserve and maximize value for their stakeholders. The total amount sought to be paid herein is modest compared with the magnitude of the Debtors' overall business and the importance of the Employees to the Debtors' operations during these Chapter 11 Cases.

70.     In other chapter 11 cases, courts in this district have approved payment of prepetition claims for compensation, benefits, and expense reimbursements similar to those described herein. *See, e.g.*, *In re Kabbage, Inc.*, No. 22-10951 (CTG) (Bankr. D. Del. Oct. 6, 2022); *In re Nine Point Energy Holdings, Inc.*, No. 21-10570 (MFW) (Bankr. D. Del. Mar. 18, 2021); *In re Alamo Drafthouse Cinemas Holdings, LLC*, No. 21-10474 (MFW) (Bankr. D. Del. Mar. 4, 2021).

71.     Accordingly, by this Motion, the Debtors seek authority, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, to continue to provide Employee Benefits and pay Employee Obligations, at their discretion, as they become due and owing during the pendency of these cases and to continue, uninterrupted, all practices, programs and policies with respect to the Debtors' Employees, insofar as such practices, programs and policies were in effect as of the Petition Date.

## II.     Request for Authority for Banks to Honor and Pay Checks Issued and Electronic Funds Transfers Requested to Pay Employee Obligations

72.     The Debtors request that the Court authorize all banks to receive, process, honor and pay any and all checks drawn or electronic funds transfers requested to pay Employee Obligations, whether such checks were presented prior to or after the Petition Date, provided that

30128794.1

26

sufficient funds are on deposit in the applicable accounts to cover such payments.  The Debtors also seek authority to issue new postpetition checks, or effect new electronic funds transfers, on account of such claims to replace any prepetition checks or electronic funds transfer requests that may be dishonored or rejected as a result of the commencement of the Chapter 11 Cases.

## THE MOTION SATISFIES BANKRUPTCY RULE 6003

73.     Bankruptcy Rule 6003 provides that to the extent relief is necessary to avoid immediate and irreparable harm, a bankruptcy court may grant certain forms of relief during the twenty-one (21) days immediately following the filing date.  As described herein and in the Pinson Declaration, the Debtors' Employees are integral to their operations.  Failure to satisfy the Debtors' obligations with respect to their Employees in the ordinary course of business during these cases will jeopardize the Employees' loyalty and trust, possibly causing Employees to leave the Debtors' employment; such a departure of vital employees would severely disrupt the Debtors' operations at this critical juncture.  Moreover, the Employees rely on their compensation, benefits, and reimbursement of expenses to pay their living expenses, and it could be financially ruinous if the Debtors cannot pay them in the ordinary course of business.  Accordingly, the Debtors submit that they have satisfied the requirements of Bankruptcy Rule 6003 to support immediate payment of certain prepetition obligations related to the Employees.

## WAIVER OF BANKRUPTCY RULE 6004(h)

74.     The Debtors further seek a waiver of any stay of the effectiveness of the order approving this Motion.  Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."  As set forth above, paying the Employee Obligations and maintaining Employee Benefits is necessary to prevent irreparable damage to the Debtors' business operations and, therefore, the value of the Debtors' businesses.

30128794.1

27

Accordingly, the Debtors submit that ample cause exists to justify a waiver of the fourteen (14) day stay imposed by Bankruptcy Rule 6004(h), to the extent it applies.

## DEBTORS' RESERVATION OF RIGHTS

75.    Nothing contained herein is intended or should be construed as an admission of the validity of any claim against the Debtors, a waiver of the Debtors' rights to dispute any claim, or an approval or assumption of any agreement, contract, or lease under section 365 of the Bankruptcy Code.  The Debtors expressly reserve their rights to contest any potential claims under applicable non-bankruptcy law.  Likewise, if this Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission of the validity of any claim or a waiver of the Debtors' rights to dispute such claim subsequently.

## NOTICE

76.    Notice of the hearing of this Motion has been provided to:  (i) the Office of the United States Trustee for the District of Delaware; (ii) the holders of the twenty largest unsecured claims against the Debtors on a consolidated basis; (iii) counsel for the prepetition secured lenders; and (iv) all the parties that have requested notice in this proceeding pursuant to Bankruptcy Rule 2002.  Notice of this Motion and any order entered hereon will be served in accordance with Local Rule 9013-1(m).  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## NO PRIOR REQUEST

77.    No prior request for the relief sought in this Motion has been made to this Court or any other court.

WHEREFORE, the Debtors respectfully request that the Court grant the relief requested herein and such other and further relief as the Court may deem just and proper.

Dated: February 16, 2023
       Wilmington, Delaware

YOUNG CONAWAY STARGATT &
TAYLOR, LLP

*/s/ Andrew L. Magaziner*
Michael R. Nestor (DE Bar No. 3526)
Andrew L. Magaziner (DE Bar No. 5426)
Ashley E. Jacobs (DE Bar No. 5635)
1000 North King Street
Rodney Square
Wilmington, Delaware 19801-6108
Telephone:  (302) 571-6600
Facsimile:  (302) 571-1253
Email:  mnestor@ycst.com
       amagaziner@ycst.com
       ajacobs@ycst.com

-and-

Kathryn A. Coleman
Christopher Gartman
HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, NY 10004-1482
Telephone: (212) 837-6000
Facsimile:  (212) 422-4726
Email:  katie.coleman@hugheshubbard.com
       chris.gartman@hugheshubbard.com

*Proposed Counsel for the Debtors*

**EXHIBIT A**

**Proposed Interim Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| *In re* | Chapter 11 |
| **STANADYNE LLC, *et al.*,**[1] | Case No. 23-10207 (JTD) |
| **Debtors.** | (Jointly Administered) |
| | Re: D.I. _____ |

**INTERIM ORDER (A) AUTHORIZING DEBTORS TO PAY (I) PREPETITION EMPLOYEE OBLIGATIONS, (II) PREPETITION WITHHOLDING OBLIGATIONS, AND (III) POSTPETITION EMPLOYEE OBLIGATIONS IN THE ORDINARY COURSE, AND (B) AUTHORIZING BANKS TO HONOR RELATED TRANSFERS**

Upon the motion (the "Motion")[2] filed by the above-captioned debtors and debtors-in-possession (collectively, the "Debtors"), pursuant to sections 105, 363, 503, 507(a)(4), 507(a)(5), 541, 1107 and 1108 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code") and Bankruptcy Rules 6003 and 6004(h), seeking entry of an order: (a) authorizing, but not directing, the Debtors to continue to honor and pay (i) prepetition employee obligations as described more fully in the Motion, (ii) prepetition federal and state withholding obligations, (iii) postpetition employee obligations in the ordinary course, and (b) authorizing all banks to honor the Debtors' prepetition transfers for payment of any of the foregoing and prohibiting banks from placing holds on, or attempting to reverse, any transfers on account of the foregoing; and upon the *Declaration of John Pinson, Chief Executive Officer of Stanadyne LLC,*

---

1.  The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number are: Stanadyne LLC (0378); Pure Power Technologies, Inc. (5202); Stanadyne PPT Holdings, Inc. (2594); and Stanadyne PPT Group Holdings, Inc. (1734).  The Debtors' headquarters are located at 405 White Street, Jacksonville, North Carolina 28546.

2.  Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

*in Support of First Day Relief*; and it appearing that this Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012; and it appearing that venue of these Chapter 11 Cases and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that this matter is a core proceeding pursuant to 28 U.S.C. § 157(b); and this Court having found that it may enter a final order consistent with Article III of the United States Constitution; and this Court having determined that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors and other parties-in-interest; and it appearing that proper and adequate notice of the Motion has been given and that no other or further notice is necessary; and after due deliberation thereon; and good and sufficient cause appearing therefor, the Court hereby ORDERS that:

1.      The relief requested in the Motion is GRANTED on an interim basis as set forth herein.

2.      The Debtors are authorized, in their sole discretion, to continue to honor and pay all prepetition Employee Obligations in the ordinary course of business as they come due; provided, however, that payments made to any single Employee pursuant to this Order on account of obligations incurred prior to the Petition Date shall not exceed $15,150; provided further, however, that payments on account of prepetition Employee Obligations and prepetition amounts owing to the Temporary Employees and Independent Contractors shall not exceed $1,500,000 pending entry of a final order.

3.      Notwithstanding any other provision of this Interim Order, prior to the entry of a Final Order granting the relief requested in the Motion, no payment to, or on behalf of, any individual Employee or Temporary Employee or Independent Contractor on account of prepetition

Employee Obligations shall exceed the amounts afforded priority status by sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code.

4.      The Debtors are authorized, in their sole discretion, to continue to honor and pay all Reimbursable Expenses, including any such prepetition expenses up to an aggregate amount of $100,000 pending entry of a final order.

5.      The Debtors are authorized, in their sole discretion, to honor and continue their programs, policies and practices, with respect to the Employee Obligations and Temporary Employees and Independent Contractor that were in effect as of the Petition Date, in the ordinary course of business.

6.      The Debtors are authorized, in their sole discretion, to pay any obligations in connection with the Health Plans in the ordinary course of business, including any premiums or administrative fees.

7.      All of the Debtors' banks are authorized to receive, process, honor and pay any and all checks or electronic transfers drawn on the Debtors' payroll and general disbursement accounts related to Employee Obligations, Reimbursable Expenses, and Temporary Employees, authorized by this Order, whether presented before or after the Petition Date, provided that sufficient funds are on deposit in the applicable accounts to cover such payments.

8.      To the extent that any employment or related agreements may be deemed executory contracts within the meaning of section 365 of the Bankruptcy Code, the Debtors do not at this time seek authority to assume such contracts, and no relief is granted in respect thereof.

9.      Nothing herein shall be deemed to authorize (1) the payment of any amounts in satisfaction of bonus or severance obligations subject to section 503(c) of the Bankruptcy Code; (2) the payment of any amounts owing to any retired or former Employees under the SERP, the

Pension Plan or otherwise, or (3) the Debtors to cash out unpaid PTO upon termination of an employee, unless applicable state law requires such payment.

10.     Notwithstanding anything to the contrary contained herein, any discretion afforded to the Debtors, payment made or to be made, and authorization granted pursuant to this Order shall be subject to the requirements imposed on the Debtors under any approved debtor-in-possession financing facility, any orders authorizing postpetition financing or use of cash collateral, and any budget in connection therewith.

11.     Bankruptcy Rule 6003(b) has been satisfied because the relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors.

12.     Notwithstanding any applicability of Bankruptcy Rule 6004(h), the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

13.     The Debtors are authorized and empowered to take all actions necessary to implement the relief granted in this Order.

14.     A final hearing to consider the relief requested in the Motion shall be held on _____, _____ at _____ **(Prevailing Eastern Time)** and any objections or responses to the Motion shall be in writing, filed with the Court, and served so as to be actually received on or prior to _____, _____ **at 4:00 p.m. (Prevailing Eastern Time)**. If no objections are filed to the Motion, the Court may enter the final order without further notice or hearing.

15.     The Court shall retain jurisdiction with respect to all matters arising from or relating to the interpretation or implementation of this Order.

**EXHIBIT B**

**Proposed Final Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| *In re* | Chapter 11 |
| **STANADYNE LLC, *et al.*,**[1] | Case No. 23-10207 (JTD) |
| **Debtors.** | (Jointly Administered) |
| | Re: D.I. _____ |

**FINAL ORDER (A) AUTHORIZING DEBTORS TO PAY (I) PREPETITION
EMPLOYEE OBLIGATIONS, (II) PREPETITION WITHHOLDING OBLIGATIONS,
AND (III) POSTPETITION EMPLOYEE OBLIGATIONS IN THE ORDINARY
COURSE, AND (B) AUTHORIZING BANKS TO HONOR RELATED TRANSFERS**

Upon the motion (the "<u>Motion</u>")[2] filed by the above-captioned debtors and
debtors-in-possession (collectively, the "<u>Debtors</u>"), pursuant to sections 105, 363, 503, 507(a)(4),
507(a)(5), 541, 1107 and 1108 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the
"<u>Bankruptcy Code</u>") and Bankruptcy Rules 6003 and 6004(h), seeking entry of an order:
(a) authorizing, but not directing, the Debtors to continue to honor and pay (i) all prepetition
employee obligations as described more fully in the Motion, (ii) all prepetition federal and state
withholding obligations, (iii) postpetition employee obligations in the ordinary course, and
(b) authorizing all banks to honor the Debtors' prepetition transfers for payment of any of the
foregoing and prohibiting banks from placing holds on, or attempting to reverse, any transfers on
account of the foregoing; and upon the *Declaration of John Pinson, Chief Executive Officer of*

---

1.  The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification
    number are: Stanadyne LLC (0378); Pure Power Technologies, Inc. (5202); Stanadyne PPT Holdings, Inc.
    (2594); and Stanadyne PPT Group Holdings, Inc. (1734).  The Debtors' headquarters are located at 405 White
    Street, Jacksonville, North Carolina 28546.

2.  Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

*Stanadyne LLC, in Support of First Day Relief*; and it appearing that this Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012; and it appearing that venue of these Chapter 11 Cases and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that this matter is a core proceeding pursuant to 28 U.S.C. § 157(b); and this Court having found that it may enter a final order consistent with Article III of the United States Constitution; and this Court having determined that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors and other parties-in-interest; and it appearing that proper and adequate notice of the Motion has been given and that no other or further notice is necessary; and after due deliberation thereon; and good and sufficient cause appearing therefor, the Court hereby ORDERS that:

1.      The Motion is GRANTED on a final basis as set forth herein.

2.      The Debtors are authorized, in their sole discretion, to continue to honor and pay all prepetition Employee Obligations in the ordinary course of business as they come due.

3.      The Debtors are authorized, but not directed, to pay all prepetition amounts owing to the Temporary Employees and Independent Contractors for their services in the ordinary course of business as they come due.

4.       No payment to, or on behalf of, any individual Employee or Temporary Employee or Independent Contractor on account of prepetition Employee Obligations shall exceed the amounts afforded priority status by sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code.

5.      The Debtors are authorized, in their sole discretion, to continue to honor and pay all Reimbursable Expenses, including any such prepetition expenses.

6.      The Debtors are authorized, in their sole discretion, to honor and continue their programs, policies and practices, with respect to the Employee Obligations that were in effect as of the Petition Date, in the ordinary course of business.

7.      The Debtors are authorized, in their sole discretion, to pay any obligations in connection with the Health Plans in the ordinary course of business, including any premiums or administrative fees.

8.      All of the Debtors' banks are authorized to receive, process, honor and pay any and all checks or electronic transfers drawn on the Debtors' payroll and general disbursement accounts related to Employee Obligations and Reimbursable Expenses, authorized by this Order, whether presented before or after the Petition Date, provided that sufficient funds are on deposit in the applicable accounts to cover such payments.

9.      To the extent that any employment or related agreements may be deemed executory contracts within the meaning of section 365 of the Bankruptcy Code, the Debtors do not at this time seek authority to assume such contracts, and no relief is granted in respect thereof.

10.     Nothing herein shall be deemed to authorize (1) the payment of any amounts in satisfaction of bonus or severance obligations subject to section 503(c) of the Bankruptcy Code; (2) the payment of any amounts owing to any retired or former Employees under the SERP, the Pension Plan or otherwise, or (3) the Debtors to cash out unpaid PTO upon termination of an employee, unless applicable state law requires such payment.

11.     Notwithstanding anything to the contrary contained herein, any discretion afforded to the Debtors, payment made or to be made, and authorization granted pursuant to this Order shall be subject to the requirements imposed on the Debtors under any approved debtor-in-

possession financing facility, any order authorizing postpetition financing or use of cash collateral, and any budget in connection therewith.

      12.    Notwithstanding any applicability of Bankruptcy Rule 6004(h), the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

      13.    The Debtors are authorized and empowered to take all actions necessary to implement the relief granted in this Order.

      14.    The Court shall retain jurisdiction with respect to all matters arising from or relating to the interpretation or implementation of this Order.