## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re* | Chapter 11 |
| **STANADYNE LLC, *et al.*,**[1] | Case No. 23-10207 (JTD) |
| **Debtors.** | (Joint Administration Requested) |

## DEBTORS' MOTION FOR AUTHORITY TO (I) MAINTAIN AND ADMINISTER PREPETITION CUSTOMER PROGRAMS, AND (II) PAY AND HONOR RELATED PREPETITION OBLIGATIONS

The debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors") hereby move (the "Motion") pursuant to sections 105(a), 363(b), 503(b), 1107(a) and 1108 of title 11 of the United States Code (as amended, the "Bankruptcy Code") and Rules 6003(b) and 6004(h) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Local Rule 9013-1(m) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), for entry of an interim order substantially in the form annexed hereto as **Exhibit "A"** and a final order substantially in the form annexed hereto as **Exhibit "B"** (the "Proposed Orders") authorizing, but not directing, the Debtors (i) to maintain and administer the Debtors' prepetition customer programs (the "Customer Programs"), and (ii) pay and honor related prepetition obligations in the ordinary course of business.  In support of this Motion, the Debtors submit the *Declaration of John Pinson, Chief Executive Office of Stanadyne LLC, in Support of First Day Relief* (the "Pinson Declaration"), and respectfully submit as follows:

---

1. The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number are:  Stanadyne LLC (0378); Pure Power Technologies, Inc. (5202); Stanadyne PPT Holdings, Inc. (2594); and Stanadyne PPT Group Holdings, Inc. (1734).  The Debtors' headquarters are located at 405 White Street, Jacksonville, North Carolina 28546.

## JURISDICTION

1.      The Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue of these proceedings and the Motion in this Court is proper under 28 U.S.C. § 1408 and § 1409.

2.      The statutory bases for the relief requested herein are sections 105(a), 363, 503(b), 1107(a) and 1108 of the Bankruptcy Code, Bankruptcy Rules 6003(b) and 6004(h) and Local Rule 9013-1(m).

## BACKGROUND

1.      On February 16, 2023 (the "Petition Date"), the Debtors commenced their bankruptcy cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases").  No trustee, examiner or creditors' committee has been appointed in these cases.  The Debtors are operating their respective businesses as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3.      The events leading up to the Petition Date and the facts and circumstances supporting the relief requested herein are set forth in the Pinson Declaration.

## FACTS RELEVANT TO THIS MOTION

4.      The Debtors specialize in the design and manufacture/remanufacture of high pressure direct injection fuel pumps, fuel injectors, turbochargers and related products, providing vehicle manufacturers with customized best-in-class solutions for homogeneous and stratified direct injection engines.  The Debtors' patented technology offers manufacturers a best-in-class approach to meet the tighter particulate emissions requirements of next generation applications.

5.      In order to develop and sustain their positive reputation in the marketplace, the Debtors have dedicated extensive time and resources to creating and negotiating a variety of provisions into their contracts with customers (collectively, and as described further below, the "Customer Program") designed to acquire and retain customers, grow market share, and, ultimately, generate sales and enhance long-term viability.  The Debtors believe such practices have been successful business strategies that play an important role in the purchasing decisions and long-term confidence of customers within the Debtors' markets.

6.      The benefits of the Customer Programs are integral to the Debtors' efforts to maximize the value of the Debtors' estates for the benefit of all the stakeholders in these Chapter 11 Cases.  For the reasons set forth herein, the Debtors hereby seek authority to (i) maintain and administer the Customer Programs, and (ii) pay and honor related prepetition Customer Program obligations in the ordinary course of business.

7.      It is critically important to the Debtors' long-term viability that they maintain the loyalty and trust of their customers and protect their reputation, particularly while operating in chapter 11.  The Debtors must be able to assure their customers, and send a strong message to the marketplace, that they are willing and able to honor their prepetition obligations to their customers and continue to maintain, implement, and administer their Customer Program in the ordinary course of business consistent with the same integrity and accountability for which they are known.

8.      The Debtors' Customer Programs are described below.

9.      The Warranty Program.  In the ordinary course of their business, the Debtors offer their customers warranties on certain of their products.  Warranty claims are generally de minimis in amount (typically $2,000 or less, and in many cases $200 or less).  However, the warranties are an important part of the Debtors' business, as their customers'

3

satisfaction and loyalty is critical to the Debtors' ability to generate future revenue and sustain operations. The Debtors estimate that presently known warranty claims total approximately $500,000. However, there may be warranty owed to customers for which the Debtors are presently unaware, and certain customers may assert warranty claims postpetition relating to the prepetition parts sales.

10.     The Core Program. As is common with automotive parts manufacturers, the Debtors offer customers a "core" refund program in connection with certain of their parts. The "core" program is a critical component of the Debtors' businesses. When the Debtors sell a part to a customer, the purchase price consists of a core charge. The core charge is a refundable amount that is effectively a deposit that is paid to the customer if the customer returns the part (the "core"). If the customer fails to return the part, then it does not receive its core return fee. Thus, it is a similar concept to a bottle deposit but in a higher amount.

11.     The core program is critical to the Debtors' operations because the Debtors need the cores to be able to remanufacture parts to sell those remanufactured parts back to its customers, including the same customers that returned the cores to the Debtors. The Debtors are contractually obligated to meet certain volume thresholds for the supply of parts to its customers. These contractual obligations specifically contemplate the remanufacturing of parts to be used to meet these supply demands. The core program allows for the recycling of parts, and thus benefits the environment and saves the Debtors money by enabling the Debtors to use recycled cores rather than purchasing them from outside vendors. Thus, absent return of the cores, the Debtors would have to source the parts elsewhere and would likely have to pay a higher cost to obtain the parts it needs to then meet its customers' supply demands for remanufactured parts, which would in turn lower its profit margin and potentially delay the supply of critical parts to its customers. Any delay

4

in supplying parts to customers could damage the Debtors' reputation with its customers and harm the Debtors' estates.

12.     Moreover, the Debtors' competitors offer core programs to their customers. Indeed, core programs are the industry norm.  Accordingly, failing to maintain the Debtors' core program would put them at a significant competitive disadvantage and cause substantial harm to the Debtors' business operations.

13.     The Debtors' core program also furthers the Debtors' goals to reduce the impact of emissions and to improve the environment.  Specifically, a substantial portion of the Debtors' businesses is its remanufacturing of parts.  Absent remanufacturing of these parts, the old parts would simply go to waste.  The Debtors' remanufacturing processes enable used parts to gain new life, which in turn reduces waste and helps to improve the environment.  The core program is critical to this remanufacturing life cycle, as absent the incentive to return the used parts, customers would have less incentive to do so.

14.     The majority of the Debtors' core payment obligations do not require out-of-pocket payments.  Rather, the core refund payments are deducted from future payment obligations by customers.  Over the last two years, the Debtors' annual "spend" on the core program has totaled approximately $40 million to $45 million per year.  The Debtors anticipate a similar cost this year associated with core return obligations.  The substantial majority of these "payments" come in the form of netting against receivables owed to the Debtors rather than in the form of an actual payment sent by a Debtor such as a wire transfer or check.

15.     <u>Misc. Customer Programs</u>.  In the ordinary course of their businesses, the Debtors provide account credits, refunds and related payments to customers.  Such programs are commonly offered in the Debtors' industry and allow the Debtors to maintain positive customer relations.

## RELIEF REQUESTED

16.    By this Motion, the Debtors respectfully request the entry of an interim order substantially in the form annexed hereto as **Exhibit "A"** and a final order substantially in the form annexed hereto as **Exhibit "B"** (the "Proposed Orders") authorizing, but not directing, the Debtors, in their reasonable business judgment, to (i) maintain and administer the prepetition Customer Programs, and (ii) pay and honor related prepetition obligations, subject to and in accordance with the requirements imposed on the Debtors under any approved debtor-in-possession financing facility, any order regarding the Debtors' postpetition financing or use of cash collateral, and any budget in connection therewith; and (iii) continue during the postpetition period their prepetition practices with respect to the Customer Programs without further order of this Court.[2]

## BASIS FOR RELIEF

### I.    Honoring the Debtors' Customer Programs Is in Furtherance of the Debtors' Duties under Bankruptcy Code Sections 1107(a) and 1108

17.    In determining that preplan payments are necessary and appropriate, courts traditionally have relied on legal theories premised on sections 105(a), 363(b), 1107(a) and 1108 of the Bankruptcy Code.

18.    As a debtor in possession under Bankruptcy Code sections 1107(a) and 1108, the debtor has duties to protect and preserve its estate, including maintaining the going-concern value of its business. *See, e.g.*, *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex.

---

2.    Nothing herein is intended or should be construed as (a) an admission as to the validity or priority of any claim against the Debtors, (b) a waiver of the Debtors' rights to dispute any claim, including the validity or priority thereof, or (c) an approval or assumption of any agreement, contract or lease whether under section 365(a) of the Bankruptcy Code or otherwise.  Likewise, if the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any claim or a waiver of the Debtors' rights to subsequently dispute such claim.

2002).  Under certain circumstances, a debtor in possession can only fulfill such duties "by the preplan satisfaction of a prepetition claim."  *Id.*

19.    In *CoServ*, the court noted that preplan satisfaction of prepetition claims is a valid exercise of a debtor's fiduciary duty if the payment "is the only means to effect a substantial enhancement of the estate."  *Id.* at 497.  The court provided a three-pronged test for determining whether a pre-plan payment on account of a prepetition claim is a valid exercise of a debtor's fiduciary duty:

> First, it must be critical that the debtor deal with the claimant.  Second, unless it deals with the claimant, the debtor risks the probability of harm, or, alternatively, loss of economic advantage to the estate or the debtor's going concern value, which is disproportionate to the amount of the claimant's prepetition claim.  Third, there is no practical or legal alternative by which the debtor can deal with the claimant other than by payment of the claim.

*Id.* at 498.

20.    Honoring the Customer Programs and paying or otherwise honoring obligations to Debtors' customers meets each element of the *CoServ* court's standard.  First, as described above, it is essential that Debtors preserve their relationships with their customers during these Chapter 11 Cases.  Second, any disruption in honoring the Customer Programs could damage the Debtors' ability to retain existing customers and attract new ones, to the detriment of all stakeholders.  Third, Debtors, after carefully considering options other than the payment of the obligations created by the Customer Programs, have determined in their reasonable business judgment that there are no practical alternatives to the honoring and/or payment (to the extent monetary in nature) of such obligations in the ordinary course of business.  As noted in *CoServ*, "prepetition warranty or refund claims of consumer customers which, if not honored, could so harm the debtor's goodwill as to destroy its going concern value" are claims which must be dealt with.  *Id.* at 497.

7

21.    Therefore, in order to meet its fiduciary obligations as a debtor-in-possession under Bankruptcy Code sections 1107(a) and 1108, the Debtors believe it is necessary to honor the obligations created by the Customer Programs in the ordinary course of their business.

## II.    The Doctrine of Necessity and Bankruptcy Code Sections 105(a), 363(b), and 503(b) Further Support Maintaining the Customer Programs

22.    Pursuant to section 503(b)(1) of the Bankruptcy Code, a debtor may incur, and the court, after notice and a hearing, shall allow as administrative expenses, among other things, "the actual, necessary costs and expenses of preserving the estate." 11 U.S.C. § 503(b)(1). Even should the Court disagree that honoring the Customer Program is within the ordinary course of Debtors' business, under section 363(b) of the Bankruptcy Code, a debtor-in-possession, after notice and a hearing, "may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). In situations where a debtor can demonstrate a sound business justification to pay prepetition debts, courts have authorized preplan payments pursuant to section 363(b) of the Bankruptcy Code. *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (stating that courts have "broad flexibility" under section 363(b) of the Bankruptcy Code to permit a debtor to expend funds outside the ordinary course so long as the debtor articulates a business justification to do so, including making preplan payments); s*ee also Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir. 1983) ("The rule we adopt requires that a judge determining a § 363(b) application expressly find from the evidence presented before him . . . a good business reason to grant such an application."); *Ionosphere Clubs, Inc.*, 98 B.R. at 175 ("[T]he debtor must articulate some business justification, other than mere appeasement of major creditors.").

23.    Once the debtor articulates a valid business justification, it is presumed under the business judgment rule that "in making a business decision, the directors of a corporation

8

acted on an informed basis, in good faith, and in the honest belief that the action was taken in the best interest of the company." *Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (citations omitted). The business judgment rule applies in chapter 11 cases. *See Integrated Res.*, 147 B.R. at 656 (noting that "Delaware business judgment rule principles have 'vitality by analogy' in Chapter 11"); *see also Comm. of Asbestos-Related Litigants and/or Creditors v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 615-16 (Bankr. S.D.N.Y. 1986) ("[T]he Code favors the continued operation of a business by a debtor and a presumption of reasonableness attaches to a Debtor's management decisions.").

24.     Furthermore, to supplement the explicit authority described above, the doctrine of necessity and section 105(a) of the Bankruptcy Code allows the court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). "The Supreme Court, the Third Circuit, and the District of Delaware all recognize the court's power to authorize payment of pre-petition claims when such payment is necessary for the debtor's survival during chapter 11." *In re Just for Feet, Inc.*, 242 B.R. 821, 825 (D. Del. 1999). Under the doctrine of necessity, a bankruptcy court may exercise its equitable power to authorize a debtor to pay prepetition claims, even if such payment is not explicitly authorized by the Bankruptcy Code. *See In re Columbia Gas Sys., Inc.*, 136 B.R. 930, 939 (Bankr. D. Del. 1992) (citing *In re Lehigh & New England Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (stating that "payment of a pre-petition claim…may be authorized" if such payment is essential to the debtor's continued operation)). *See also Just for Feet*, 242 B.R. at 825-26 ("The necessity of payment doctrine recognizes that certain pre-petition claims may be necessary to realize the goal of chapter 11—a successful reorganization.").

25.     It is the Debtors' business judgment that continuing to maintain and administer the Customer Programs and paying and honoring the related prepetition obligations as requested herein, will maximize and preserve the value of the Debtors' estates.  The Customer Programs are customary in the Debtors' industry.  The Debtors' principal competitors maintain programs similar to those offered by the Debtors.  Accordingly, customers expect these types of programs to be offered by the Debtors.  The Debtors' inability to honor their Customer Programs would place them at a severe disadvantage relative to their competitors, potentially resulting in an imbalance between the Debtors and their competitors that would harm the Debtors' businesses. Further, the Debtors' long-term viability depends on maintaining the loyalty of their customers and their ability to preserve brand equity and their reputation in their industry to attract new customers.  Allowing the Debtors to continue honoring their Customer Programs satisfies "two recognized policies" of chapter 11—maximizing recoveries for a debtor's creditors and preserving the going-concern value of the debtor's enterprise.  *See Bank of Am. Nat'l Trust & Sav. Assoc. v. 203 N. LaSalle St. P'Ship*, 526 U.S. 434, 453 (1999).

26.     Courts in this and other districts have granted similar relief to that requested herein on the basis that the payment of prepetition obligations is essential to maximizing recoveries for creditors and preserving the debtor's estate.  *See, e.g.*, *In re Shiloh Industries, Inc.*, No. 20-12024 (Bankr. D. Del. Sept. 24, 2020), ECF No. 196; *In re Exide Holdings, Inc.*, No. 20-11157 (Bankr. D. Del. June 18, 2020), ECF No. 333; *In re Exide Technologies*, No. 13-11482 (Bankr. D. Del. July 11, 2013), ECF No. 323; *In re Garrett Motion Inc.*, No. 20-12212 (Bankr. S.D.N.Y. Oct. 20, 2020), ECF No. 245; *In re General Motors Corp.*, No. 09-50026 (Bankr. S.D.N.Y. June 1, 2009), ECF No. 167; *In re Dana Corp.*, No. 06-10354 (Bankr. S.D.N.Y. Mar. 29, 2006), ECF No. 735.  The Debtors submit that the facts and circumstances here warrant similar relief.

**THE MOTION SATISFIES BANKRUPTCY RULE 6003 AND LOCAL RULE 9013-1(M)**

27. Pursuant to Bankruptcy Rule 6003(b), a court shall not grant "a motion to pay all or part of a claim that arose before the filing of the petition" within twenty-one days of the petition date "[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm." Fed. R. Bankr. P. 6003(b). As described herein and in the Pinson Declaration, the Debtors' business operations rely heavily on current payment of the obligations relating to the Customer Programs. Maintaining and administering prepetition Customer Programs and paying and honoring related prepetition obligations is necessary to allow the Debtors to remain competitive in the market and to maintain their customers' goodwill. The Debtors believe that an inability to honor the Customer Programs would result in decreased sales and loss of customers that are integral to the Debtors' ability to operate as a going concern during these Chapter 11 Cases and reorganize successfully.

28. Accordingly, the Debtors submit that they have satisfied the requirements of Bankruptcy Rule 6003 and Local Rule 9013-1(m) have been met and that the relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors and their estates.

**WAIVER OF BANKRUPTCY RULE 6004(H)**

29. The Debtors further seek a waiver of any stay of the effectiveness of the order approving this Motion. Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). As stated above, continuing to maintain and administer the Customer Programs and paying and honoring related prepetition obligations is necessary to prevent irreparable damage to the Debtors' operations and the value of the Debtors' estate. Accordingly, the Debtors submit that ample cause

11

exists to justify a waiver of the fourteen-day stay imposed by Bankruptcy Rule 6004(h), to the extent it applies.

## RESERVATION OF RIGHTS

30.     Nothing contained herein is intended or should be construed as an admission of the validity of any claim against the Debtors, a waiver of the Debtors' rights to dispute any claim, or an approval or assumption of any agreement, contract, or lease under section 365 of the Bankruptcy Code.  The Debtors expressly reserve their rights to contest any claim with respect to their Customer Programs under applicable non-bankruptcy law.  Likewise, if this Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission of the validity of any claim or a waiver of the Debtors' rights to dispute such claim subsequently.

## NOTICE

31.     Notice of the hearing on this Motion shall be provided to (i) the Office of the United States Trustee for the District of Delaware; (ii) counsel for the prepetition secured lenders; (iii) those parties listed on the list of creditors holding the twenty largest unsecured claims against the Debtors (on a consolidated basis), as identified in their chapter 11 petitions, and (iv) all the parties that have requested notice in this proceeding pursuant to Bankruptcy Rule 2002.  Notice of this Motion and any order entered heron will be served in accordance with Local Rule 9013-1(m).  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## NO PRIOR REQUEST

32.     No prior request for the relief sought in the Motion has been made to this Court or any other court.

WHEREFORE, the Debtors respectfully request that the Court grant the relief requested herein and such other or further relief as the Court deems just and proper.

Dated:  February 16, 2023
       Wilmington, Delaware

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Andrew L. Magaziner*
Michael R. Nestor (DE Bar No. 3526)
Andrew L. Magaziner (DE Bar No. 5426)
Ashley E. Jacobs (DE Bar No. 5635)
1000 North King Street
Rodney Square
Wilmington, Delaware 19801-6108
Telephone:  (302) 571-6600
Facsimile:   (302) 571-1253
Email:  mnestor@ycst.com
       amagaziner@ycst.com
       ajacobs@ycst.com

-and-

Kathryn A. Coleman
Christopher Gartman
HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, NY 10004-1482
Telephone: (212) 837-6000
Facsimile:  (212) 422-4726
Email:  katie.coleman@hugheshubbard.com
       chris.gartman@hugheshubbard.com

*Proposed Counsel for the Debtors*

13

30128924.1

## EXHIBIT A

**Proposed Interim Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re* | Chapter 11 |
| **STANADYNE LLC, *et al.*,**[1] | Case No. 23-10207 (JTD) |
| **Debtors.** | (Jointly Administered) |

### INTERIM ORDER AUTHORIZING THE DEBTORS TO (I) MAINTAIN AND ADMINISTER PREPETITION CUSTOMER PROGRAMS, AND (II) PAY AND HONOR RELATED PREPETITION OBLIGATIONS

Upon the Motion (the "<u>Motion</u>")[2] of the debtors and debtors-in-possession in the above-captioned cases (collectively, the "<u>Debtors</u>") for the entry of an interim order (this "<u>Order</u>"), pursuant to sections 105(a), 363(b), 503(b), 1107(a) and 1108 of the Bankruptcy Code, Bankruptcy Rules 6003(b) and 6004(h) and Local Rule 9013-1(m), authorizing, but not directing, the Debtors, in their business judgment and sole discretion, to (i) maintain and administer prepetition Customer Programs and (ii) pay and honor related prepetition obligations in the ordinary course of business; and upon the *Declaration of John Pinson, Chief Executive Office of Stanadyne LLC, in Support of First Day Relief*; and upon the statements of counsel in support of the relief requested in the Motion at the hearing before the Court; and it appearing that this Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this

---

1. The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number are:  Stanadyne LLC (0378); Pure Power Technologies, Inc. (5202); Stanadyne PPT Holdings, Inc. (2594); and Stanadyne PPT Group Holdings, Inc. (1734).  The Debtors' headquarters are located at 405 White Street, Jacksonville, North Carolina 28546.

2. Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Motion.

Court having found that it may enter a final order consistent with Article III of the United States Constitution; and the Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion and hearing to consider the relief requested therein (the "Hearing") appearing adequate and appropriate under the circumstances; and this Court having found that no other or further notice need be provided; and the legal and factual bases set forth in the Motion establishing just and sufficient cause to grant the interim relief requested therein; and the relief granted herein being in the best interests of the Debtors, their estates, creditors and all parties in interest; and the Court having held the Hearing with the appearances of interested parties noted in the record of the Hearing; and no objection to the Motion having been filed or made at the Hearing on the Motion; and upon all of the proceedings before the Court and after due deliberation and sufficient cause appearing therefor;

IT IS HEREBY ORDERED THAT:

1.     The Motion is GRANTED on an interim basis, as set forth herein.

2.     The Debtors are hereby authorized, but not directed, in their reasonable business judgment, to (i) maintain and administer prepetition Customer Programs, and (ii) pay and honor related prepetition Customer Programs obligations in the ordinary course of business and in the same manner and on the same basis as if the Debtors performed and honored such obligations prior to the Petition Date without further order of this Court, subject to and in accordance with the requirements imposed on the Debtors under any approved debtor-in-possession financing facility, any order regarding the Debtors' postpetition financing or use of cash collateral, and any budget in connection therewith.  Notwithstanding the foregoing, no creditor shall be permitted to exercise any setoff or similar rights with respect to Customer Program obligations absent express written

consent from the Debtors following the date of this Order, any which consent shall be subject to and in accordance with the authority provided by this Order.

3.      The Debtors are hereby authorized, but not directed, in their sole discretion, to continue, renew, replace, modify, and/or terminate the Customer Programs as they deem appropriate, in their discretion, and in the ordinary course of business, without further application to this Court.

4.      All banks and other financial institutions are hereby directed to receive, process, honor and pay any and all checks presented for payment and electronic transfer requests made by the Debtors related to the payment of the obligations described in the Motion and approved herein, whether such checks were presented or such electronic transfer requests were submitted before, or are presented or submitted after, the Petition Date, to the extent (a) funds are available in the Debtors' accounts and (b) permitted (i) by the order authorizing use of cash collateral and (ii) any order approving debtor-in-possession financing.  All such banks and financial institutions are further directed to rely on the Debtors' designation of any particular check or electronic payment request as approved pursuant to this Order.

5.      Nothing in this Order or the Motion is intended or should be construed as (a) an admission as to the validity or priority of any claim against the Debtors, (b) a waiver of the Debtors' rights to dispute any claim, including the validity or priority thereof, (c) an approval or assumption of any agreement, contract or lease whether under section 365(a) of the Bankruptcy Code or otherwise, or (d) an approval of any exercise of setoff or similar rights by a non-Debtor absent express written consent by the applicable Debtor subject to and in accordance with this Order following the date hereof.  Likewise, any payment made pursuant to this Order is not

intended and should not be construed as an admission as to the validity or priority of any claim or a waiver of the Debtors' rights to subsequently dispute such claim.

6.      The relief granted herein is without prejudice to the Debtors' ability to request further relief related to the Customer Programs.

7.      Nothing in this order or the Motion shall be deemed to constitute postpetition assumption, reaffirmation, or adoption of any agreement under Bankruptcy Code section 365.  Notwithstanding the relief granted herein and any actions taken hereunder, nothing herein shall create, nor is intended to create, any rights in favor of, or enhance the status of any claim held by, any person.

8.      The requirements set forth in Bankruptcy Rule 6003(b) are satisfied by the contents of this Motion.

9.      Notwithstanding the possible applicability of Bankruptcy Rule 6004(h), the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

10.     The Debtors are authorized to take all actions necessary to implement this Order.

11.     This Court shall retain jurisdiction with respect to all matters arising from or relating to the interpretation or implementation of this Order.

12.     A final hearing to consider the relief requested in the Motion shall be held on _____ at _____. **(Prevailing Eastern Time)** and any objections or responses to the Motion shall be in writing, filed with the Court, and served so as to be actually received on or prior to _____ **at 4:00 p.m. (Prevailing Eastern Time)**.

**<u>EXHIBIT B</u>**

**Proposed Final Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| *In re* | Chapter 11 |
| **STANADYNE LLC, *et al.*,**[1] | Case No. 23-10207 (JTD) |
| **Debtors.** | (Jointly Administered) |

**FINAL ORDER AUTHORIZING THE DEBTORS TO (I) MAINTAIN AND
ADMINISTER PREPETITION CUSTOMER PROGRAMS, AND
(II) PAY AND HONOR RELATED PREPETITION OBLIGATIONS**

Upon the Motion (the "Motion")[2] of the debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors") for the entry of an order (this "Order"), pursuant to sections 105(a), 363(b), 503(b), 1107(a) and 1108 of the Bankruptcy Code, Bankruptcy Rules 6003(b) and 6004(h) and Local Rule 9013-1(m), authorizing, but not directing, the Debtors, in their business judgment and sole discretion, to (i) maintain and administer prepetition Customer Programs and (ii) pay and honor related prepetition obligations in the ordinary course of business; and upon the *Declaration of John Pinson, Chief Executive Office of Stanadyne LLC, in Support of First Day Relief*; and upon the statements of counsel in support of the relief requested in the Motion at the hearing before the Court; and it appearing that this Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this

---

1.   The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number are: Stanadyne LLC (0378); Pure Power Technologies, Inc. (5202); Stanadyne PPT Holdings, Inc. (2594); and Stanadyne PPT Group Holdings, Inc. (1734). The Debtors' headquarters are located at 405 White Street, Jacksonville, North Carolina 28546.

2.   Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Motion.

Court having found that it may enter a final order consistent with Article III of the United States Constitution; and the Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion and hearing to consider the relief requested therein (the "Hearing") appearing adequate and appropriate under the circumstances; and this Court having found that no other or further notice need be provided; and the legal and factual bases set forth in the Motion establishing just and sufficient cause to grant the interim relief requested therein; and the relief granted herein being in the best interests of the Debtors, their estates, creditors and all parties in interest; and the Court having held the Hearing with the appearances of interested parties noted in the record of the Hearing; and no objection to the Motion having been filed or made at the Hearing on the Motion; and upon all of the proceedings before the Court and after due deliberation and sufficient cause appearing therefor;

IT IS HEREBY ORDERED THAT:

1.      The Motion is GRANTED as set forth herein.

2.      The Debtors are hereby authorized, but not directed, in their reasonable business judgment, to (i) maintain and administer prepetition Customer Programs, and (ii) pay and honor related prepetition Customer Program obligations in the ordinary course of business and in the same manner and on the same basis as if the Debtors performed and honored such obligations prior to the Petition Date without further order of this Court, subject to and in accordance with the requirements imposed on the Debtors under any approved debtor-in-possession financing facility, any order regarding the Debtors' postpetition financing or use of cash collateral, and any budget in connection therewith.  Notwithstanding the foregoing, no creditor shall be permitted to exercise any setoff or similar rights with respect to Customer Program obligations absent express written

2

consent from the Debtors following the date of this Order, any which consent shall be subject to and in accordance with the authority provided by this Order

3.     The Debtors are hereby authorized, but not directed, in their sole discretion, to continue, renew, replace, modify, and/or terminate the Customer Programs as they deem appropriate, in their discretion, and in the ordinary course of business, without further application to this Court.

4.     All banks and other financial institutions are hereby directed to receive, process, honor and pay any and all checks presented for payment and electronic transfer requests made by the Debtors related to the payment of the obligations described in the Motion and approved herein, whether such checks were presented or such electronic transfer requests were submitted before, or are presented or submitted after, the Petition Date, to the extent (a) funds are available in the Debtors' accounts and (b) permitted (i) by the order authorizing use of cash collateral and (ii) any order approving debtor-in-possession financing.  All such banks and financial institutions are further directed to rely on the Debtors' designation of any particular check or electronic payment request as approved pursuant to this Order.

5.     Nothing in this Order or the Motion is intended or should be construed as (a) an admission as to the validity or priority of any claim against the Debtors, (b) a waiver of the Debtors' rights to dispute any claim, including the validity or priority thereof, (c) an approval or assumption of any agreement, contract or lease whether under section 365(a) of the Bankruptcy Code or otherwise, or (d) an approval of any exercise of setoff or similar rights by a non-Debtor absent express written consent by the applicable Debtor subject to and in accordance with this Order following the date hereof.  Likewise, any payment made pursuant to this Order is not

3

intended and should not be construed as an admission as to the validity or priority of any claim or a waiver of the Debtors' rights to subsequently dispute such claim.

6.      The relief granted herein is without prejudice to the Debtors' ability to request further relief related to the Customer Programs.

7.      Nothing in this order or the Motion shall be deemed to constitute postpetition assumption, reaffirmation, or adoption of any agreement under Bankruptcy Code section 365.  Notwithstanding the relief granted herein and any actions taken hereunder, nothing herein shall create, nor is intended to create, any rights in favor of, or enhance the status of any claim held by, any person.

8.      Notwithstanding the possible applicability of Bankruptcy Rule 6004(h), the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

9.      The Debtors are authorized to take all actions necessary to implement this Order.

10.      This Court shall retain jurisdiction with respect to all matters arising from or relating to the interpretation or implementation of this Order.

4

30128924.1