## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| *In re* | Chapter 11 |
| **STANADYNE LLC, *et al.*,**[1] | Case No. 23-10207 (JTD) |
| **Debtors.** | (Joint Administration Requested) |

### DEBTORS' APPLICATION FOR AUTHORIZATION TO EMPLOY AND RETAIN KURTZMAN CARSON CONSULTANTS LLC AS CLAIMS AND NOTICING AGENT EFFECTIVE AS OF THE PETITION DATE

The above-captioned debtors and debtors in possession (collectively, the "Debtors")[2] respectfully state as follows in support of this application (this "Application"):

### Relief Requested

1.      The Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Order") (a) authorizing the Debtors to employ and retain Kurtzman Carson Consultants LLC ("KCC") as the claims and noticing agent (the "Claims and Noticing Agent") in the Debtors' Chapter 11 Cases (as defined below) effective as of the Petition Date; and (b) granting related relief.  In support of this application, the Debtors submit the *Declaration of Robert Jordan in Support of the Debtors' Application for Authorization to Employ and Retain Kurtzman Carson Consultants LLC as Claims and Noticing Agent Effective as of the Petition Date* (the "Jordan Declaration"), attached hereto as **Exhibit B**.

---

1.    The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number are:  Stanadyne LLC (0378); Pure Power Technologies, Inc. (5202); Stanadyne PPT Holdings, Inc. (2594); and Stanadyne PPT Group Holdings, Inc. (1734).  The Debtors' headquarters are located at 405 White Street, Jacksonville, North Carolina 28546.

2.    Capitalized terms used herein but not otherwise defined herein shall have the meanings ascribed to them in the Pinson Declaration (as defined below).

**Jurisdiction and Venue**

2.    The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  The Debtors confirm their consent, pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the entry of a final order by the Court in connection with this Application to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.    Venue is proper in this district under 28 U.S.C. §§ 1408 and 1409.

4.    The bases for the relief requested herein are section 156(c) of title 28 of the United States Code, sections 503 and 1107 of title 11 of the United States Code (the "Bankruptcy Code"), Bankruptcy Rules 2002(f), and Rule 2002-1(f) of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "Local Rules").

**Background**

5.    On February 16, 2023 (the "Petition Date"), the Debtors commenced their bankruptcy cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases").  No trustee, examiner, or creditors' committee has been appointed in these cases.  The Debtors are operating their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6.    The events leading up to the Petition Date and the facts and circumstances supporting the relief requested herein are set forth in the *Declaration of John Pinson, Chief Executive Officer of Stanadyne LLC, in Support of First Day Relief* (the "Pinson Declaration"), filed contemporaneously herewith.

## KCC's Retention

7.      The terms of retention and employment of KCC are set forth in that certain services agreement (the "Services Agreement"), annexed as **Exhibit 1** to **Exhibit A**, attached hereto. Pursuant to this Application, the Debtors are seeking to retain and employ KCC as the Claims and Noticing Agent solely on the terms and provisions set forth in this Application and the proposed Order.  The Debtors' selection of KCC to act as the Claims and Noticing Agent satisfies the Court's *Protocol for the Employment of Claims and Noticing Agents Under 28 U.S.C. § 156(c)* (the "Claims Agent Protocol"), in that the Debtors have obtained and reviewed engagement proposals from at least two other Court-approved claims and noticing agents to ensure selection through a competitive process.  Moreover, the Debtors submit, based on all engagement proposals obtained and reviewed, that KCC's rates are competitive and reasonable given KCC's quality of services and expertise.

8.      Although the Services Agreement contemplates that KCC will provide services for the Debtors outside the scope of 28 U.S.C. § 156, the Debtors will seek authorization by separate application to retain and employ KCC as administrative advisor pursuant to section 327(a) of the Bankruptcy Code for those services.

## KCC's Qualifications

9.      KCC is a leading chapter 11 administrator and comprises industry professionals with significant experience in both the legal and administrative aspects of large, complex chapter 11 cases.  KCC has acted as the official claims and noticing agent in many large bankruptcy cases in this district and in other districts nationwide.  KCC's cases in this district include: *In re Tricida, Inc.,* Case No. 23-10024 (JTD) (Bankr. D. Del. Jan. 11, 2023); *In re Carestream Health, Inc.*, Case No. 22-10778 (JKS) (Bankr. D. Del. Aug. 23, 2022); *In re First Guaranty Mortgage Corp.*, Case No. 22-10584 (CTG) (Bankr. D. Del. Jun. 30, 2022); *In re Zosano Pharma Corp.,* Case No. 22-

10506 (JKS) (Bankr. D. Del. Jun. 1, 2022); *In re Sequential Brands Group, Inc.,* Case No. 21-11194 (JTD) (Bankr. D. Del. Aug. 31, 2021); *In re Alex and Ani, LLC*, Case No. 21-10918 (CTG) (Bankr. D. Del. Jun. 9, 2021); *In re TECT Aerospace Group Holdings, Inc.*, Case No. 21-10670 (KBO) (Bankr. D. Del. Apr. 5, 2021); *In re JetFleet Holding Corp. (f/k/a AeroCentury Corp.)*, Case No. 21-10637 (JTD) (Bankr. D. Del. Mar. 29, 2021); *In re Medley LLC*, Case No. 21-10525 (KBO) (Bankr. D. Del. Mar. 7, 2021); *In re Chaparral Energy, Inc.*, Case No. 20-11947 (MFW) (Bank. D. Del. Aug. 18, 2020); *In re HRI Holding Corp.*, Case No. 19-12415 (MFW) (Bankr. D. Del. Nov. 15, 2019).  By appointing KCC as the Claims and Noticing Agent in these Chapter 11 Cases, the distribution of notices and the processing of claims will be expedited, and the Office of the Clerk of the Bankruptcy Court for the District of Delaware (the "Clerk") will be relieved of the administrative burden of processing any such claims.

## Services to be Provided by KCC

10.     This application pertains only to the work to be performed by KCC under the Clerk's delegation of duties as permitted by 28 U.S.C. § 156(c) and Local Rule 2002-1(f).  Any work to be performed by KCC outside of this scope is not covered by this application or by any order of the Court granting approval hereof.[3]

11.     Subject to the Court's approval, at the request of the Debtors, and to the extent necessary, KCC will perform the following tasks in its role as the Claims and Noticing Agent in these Chapter 11 Cases (collectively, the "Claims and Noticing Services"), as well as all quality control relating thereto:

---

3.   As noted above, the Debtors plan to seek authorization to retain and employ KCC as administrative advisor in these Chapter 11 Cases by separate application pursuant to section 327(a) of the Bankruptcy Code because the administration of these Chapter 11 Cases will require KCC to perform duties outside the scope of 28 U.S.C. § 156(c).

(a)     prepare and serve required notices and documents in these Chapter 11 Cases in accordance with the Bankruptcy Code and the Bankruptcy Rules in the form and manner directed by the Debtors or the Court, including, without limitation: (i) notice of the commencement of these Chapter 11 Cases and the initial meeting of creditors under section 341(a) of the Bankruptcy Code; (ii) notice of any claims bar date; (iii) notices of transfers of claims; (iv) notices of objections to claims and objections to transfers of claims; (v) notices of any hearings on a disclosure statement and confirmation of the Debtors' chapter 11 plan or plans, including under Bankruptcy Rule 3017(d); (vi) notice of the effective date of any plan; and (vii) all other notices, orders, pleadings, publications, and other documents as the Debtors or Court may deem necessary or appropriate for an orderly administration of these Chapter 11 Cases;

(b)     maintain an official copy of the Debtors' schedules of assets and liabilities and statements of financial affairs (collectively, the "Schedules"), listing the Debtors' known creditors and the amounts owed thereto;

(c)     maintain a: (i) list of all potential creditors, equity holders, and other parties in interest and (ii) "core" service list consisting of all parties described in Bankruptcy Rule 2002(i), (j), and (k), and those parties that have filed a notice of appearance pursuant to Bankruptcy Rule 9010 and update said lists and make said lists available upon request by a party-in-interest or the Clerk;

(d)     furnish a notice to all potential creditors of the last date for filing proofs of claim and a form for filing a proof of claim, after such notice and form are approved by the Court, and notify such potential creditors of the existence, amount and classification of their respective claims as set forth in the Schedules, which may be effected by inclusion of such information (or the lack thereof, in cases where the Schedules indicate no debt due to the subject party) on a customized proof of claim form provided to potential creditors;

(e)     maintain a post office box or address for the purpose of receiving claims and returned mail, and process all mail received;

(f)     for all notices, motions, orders, or other pleadings or documents served, prepare and file, or cause to be filed, with the Clerk an affidavit or certificate of service within seven (7) business days of service which includes: (i) either a copy of the notice served or the docket number(s) and title(s) of the pleading(s) served; (ii) a list of persons to whom it was served (in alphabetical order) with their mailing or email addresses as appropriate; (iii) the manner of service; and (iv) the date served;

(g)     process all proofs of claim received, including those received by the Clerk, check said processing for accuracy, and maintain the original proofs of claim in a secure area;

(h) provide an electronic interface for filing proofs of claim;

(i) maintain the official claims register for each Debtor (collectively, the "Claims Registers") on behalf of the Clerk, and, upon the Clerk's request, provide the Clerk with certified, duplicate unofficial Claims Registers;

(j) specify in the Claims Registers the following information for each claim docketed: (i) the claim number assigned; (ii) the date received; (iii) the name and address of the claimant and agent, if applicable, who filed the claim; (iv) the amount asserted; (v) the asserted classification(s) of the claim (*e.g.*, secured, unsecured, priority, etc.); (vi) the applicable Debtor; and (vii) any disposition of the claim;

(k) provide public access to the Claims Register, including complete proofs of claim with attachments, if any, without charge;

(l) implement necessary security measures to ensure the completeness and integrity of the Claims Registers and the safekeeping of the original claims;

(m) record all transfers of claims and provide any notices of such transfers, as required by Bankruptcy Rule 3001(e);

(n) relocate, by messenger or overnight delivery, all of the court-filed proofs of claim to the offices of KCC, not less than weekly;

(o) upon completion of the docketing process for all claims received to date for each case, turn over to the Clerk copies of the Claims Registers for the Clerk's review (upon the Clerk's request);

(p) monitor the Court's docket for all notices of appearance, address changes, and claims-related pleadings and orders filed and make necessary notations on or changes to the Claims Registers and any service or mailing lists, including to identify and eliminate duplicative names and addresses from such lists;

(q) assist in the dissemination of information to the public and respond to requests for administrative information regarding these Chapter 11 Cases as directed by the Debtors or the Court, including through the use of a case website or call center;

(r) if these Chapter 11 Cases are converted to cases under chapter 7 of the Bankruptcy Code, contact the Clerk's office within three (3) days of KCC receiving notice to KCC of entry of the order converting the cases;

(s) thirty (30) days prior to the close of these Chapter 11 Cases, to the extent practicable, request that the Debtors submit to the Court a proposed order dismissing KCC as Claims and Noticing Agent and terminating its services

in such capacity upon completion of its duties and responsibilities and upon the closing of these Chapter 11 Cases;

(t)     within seven (7) days of notice to KCC of entry of an order closing these Chapter 11 Cases, provide to the Court the final version of the Claims Registers as of the date immediately before the close of the Chapter 11 Cases; and

(u)     at the close of these Chapter 11 Cases: (i) box and transport all original documents, in proper format, as provided by the Clerk, to (1) the Philadelphia Federal Records Center, located at 14700 Townsend Road, Philadelphia, PA 19154, or (2) any other location requested by the Clerk; and (ii) docket a completed SF-135 Form indicating the accession and location numbers of the archived claims.

12.     The Claims Registers shall be open to the public for examination without charge during regular business hours and on a case-specific website maintained by KCC.

### KCC's Compensation

13.     The Debtors respectfully request that the undisputed fees and expenses incurred by KCC in the performance of the Claims and Noticing Services in accordance with the terms of the Services Agreement be treated as administrative expenses of the Debtors' chapter 11 estates pursuant to 28 U.S.C. § 156(c) and section 503(b)(1)(A) of the Bankruptcy Code and be paid in the ordinary course of business without further application to or order of the Court.

14.     KCC agrees to maintain records of all services showing dates, categories of services, fees charged, and expenses incurred.  KCC further agrees to serve monthly invoices on the Debtors, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee"), counsel for the Debtors, counsel for any official committee monitoring the expenses of the Debtors, and any party-in-interest who specifically requests service of the monthly invoices. If any dispute arises relating to the Services Agreement or the monthly invoices, the parties shall meet and confer in an attempt to resolve the dispute.  If a resolution is not achieved, the parties may seek resolution of the matter from the Court.

15.     Prior to the Petition Date, the Debtors provided KCC a retainer in the amount of $30,000.  In addition to the retainer, the Debtors paid KCC $10,000 prior to the Petition Date. KCC now seeks to first apply the retainer to all prepetition invoices and, thereafter, to have the retainer replenished to the original retainer amount, and thereafter, to hold the retainer under the Services Agreement during the cases as security for the payment of fees and expenses incurred under the Services Agreement.

16.     Additionally, under the terms of the Services Agreement, the Debtors have agreed to indemnify, defend, and hold harmless KCC and its affiliates, members, directors, officers, employees, consultants, subcontractors, and agents under certain circumstances specified in the Services Agreement, except in circumstances resulting solely from KCC's gross negligence or willful misconduct or as otherwise provided in the Services Agreement or any order authorizing the employment and retention of KCC.  The Debtors believe that such an indemnification obligation is customary, reasonable, and necessary to retain the services of a claims and noticing agent in these Chapter 11 Cases.

### KCC's Disinterestedness

17.     Although the Debtors do not propose to employ KCC under section 327 of the Bankruptcy Code pursuant to this application, KCC has nonetheless reviewed its conflicts system to determine whether it has any relationships with the creditors and parties in interest provided by the Debtors, and the Debtors have been advised that, to the best of KCC's knowledge, information and belief, and except as disclosed in the Jordan Declaration, KCC has represented that it neither holds nor represents any interest materially adverse to the Debtors' estates in connection with any matter on which it would be employed.

18.     Moreover, in connection with its retention as Claims and Noticing Agent, KCC represents in the Jordan Declaration, among other things, that:

30129246.1

(a)     KCC is not a creditor of the Debtors;

(b)     KCC is a "disinterested person," as that term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code;

(c)     KCC will not consider itself employed by the United States government and will not seek any compensation from the United States government in its capacity as the Claims and Noticing Agent in these Chapter 11 Cases;

(d)     by accepting employment in these Chapter 11 Cases, KCC waives any rights to receive compensation from the United States government in connection with these Chapter 11 Cases;

(e)     in its capacity as the Claims and Noticing Agent in these Chapter 11 Cases, KCC will not be an agent of the United States and will not act on behalf of the United States;

(f)     KCC will not employ any past or present employees of the Debtors in connection with its work as the claims and noticing agent in these Chapter 11 Cases;

(g)     in its capacity as the Claims and Noticing Agent in these Chapter 11 Cases, KCC will not intentionally misrepresent any fact to any person;

(h)     KCC shall be under the supervision and control of the Clerk with respect to the receipt and recordation of claims and claim transfers;

(i)     KCC will comply with all requests of the Clerk and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c); and

(j)     none of the services provided by KCC as the claims and noticing agent in these Chapter 11 Cases shall be at the expense of the Clerk.

19.     KCC will supplement its disclosure to the Court if any new facts or circumstances are discovered that require additional disclosure.

## Basis for Relief Requested

### I.     Retention and Employment of KCC as Claims and Noticing Agent is Permitted.

20.     Bankruptcy Rule 2002 generally regulates what notices must be given to creditors and other parties in interest in bankruptcy cases.  Fed. R. Bankr. P. 2002(f).  Under Bankruptcy Rule 2002(f), the Court may direct that some person other than the Clerk give notice of the various

matters described below.  Moreover, section 156(c) of title 28 of the United States Code, which

governs the staffing and expenses of a bankruptcy court, authorizes the Court to use "facilities" or

"services" other than the Clerk for administration of bankruptcy cases. 28 U.S.C. § 156(c).

Specifically, the statute states, in relevant part:

> Any court may utilize facilities or services, either on or off the
> court's premises, which pertain to the provision of notices, dockets,
> calendars and other administrative information to parties in cases
> filed under the provisions of title 11, United States Code, where the
> costs of such facilities or services are paid for out of the assets of the
> estate and are not charged to the United States.  The utilization of
> such facilities or services shall be subject to such conditions and
> limitations as the pertinent circuit council may prescribe.

28 U.S.C. § 156(c).

21.     In addition, Local Rule 2002-1(f) provides:

> Upon motion of the debtor or trustee, at any time without notice or
> hearing, the Court may authorize the retention of a notice and/or
> claims clerk under 28 U.S.C. § 156(c).  In all cases with more than
> 200 creditors or parties in interest listed on the creditor matrix,
> unless the Court orders otherwise, the debtor shall file such motion
> on the first day of the case or within seven (7) days thereafter.  The
> notice and/or claims clerk shall comply with the Protocol for the
> Employment of Claims and Noticing Agents under 28 U.S.C. 156(c)
> (which can be found on the Court's website) and shall perform the
> [Claims and Noticing Services].

Del. Bankr. L.R. 2002-1(f).  Accordingly, Bankruptcy Rule 2002, Local Rule 2002-1(f), and

section 156(c) of title 28 of the United States Code empower the Court to utilize outside agents

and facilities for notice and claims purposes, provided that the Debtors' estates bear the cost of

such services.

22.     Accordingly, for all of the foregoing reasons, the Debtors believe that the retention

of KCC as the Claims and Noticing Agent in these Chapter 11 Cases is necessary and in the best

interests of the Debtors, their estates and creditors, and all parties in interest.  Furthermore, the

Debtors respectfully submit that the fees and expenses that would be incurred by KCC under the

proposed engagement would be administrative in nature and, therefore, should not be subject to standard fee application procedures of professionals.

23.     By separate application, the Debtors intend to seek authorization to retain and employ KCC as the administrative agent in these Chapter 11 Cases, pursuant to section 327(a) of the Bankruptcy Code, because the administration of the Chapter 11 Cases will require KCC to perform duties outside the scope of 28 U.S.C. § 156(c).

## II.     Relief Effective as of the Petition Date is Appropriate.

24.     Pursuant to the Debtors' request, KCC has agreed to serve as the Claims and Noticing Agent on and after the Petition Date with assurances that the Debtors would seek approval of its employment and retention effective as of the Petition Date, so that KCC may be compensated for its services prior to approval of this Application.  The Debtors believe that no party in interest will be prejudiced by granting the employment effective as of the Petition Date, as provided in this Application, because KCC has provided and continues to provide valuable services to the Debtors' estates in the interim period.  The Local Rules empower courts in this district to approve employment effective as of the petition date, and the Debtors submit that such approval is justified here.  *See, e.g.*, Del. Bankr. L.R. 2014-1(b) ("If the retention application is granted, the retention shall be effective as of the date the application was filed, unless the Court orders otherwise.").

25.     Courts in this jurisdiction have routinely approved employment effective as of the petition date, similar to that requested herein, in matters comparable to this matter.  *See, e.g.*, *In re Riverbed Tech., Inc.*, No. 21-11503 (CTG) (Bankr. D. Del. Nov 18, 2021) (approving employment of a claims and noticing agent to perform claims and noticing services effective as of the petition date); *In re Alex and Ani, LLC,* No. 21-10918 (CTG) (Bankr. D. Del. Jun. 11, 2021) (same)*; In re HighPoint Res. Corp.*, No. 21-10565 (CSS) (Bankr. D. Del. Mar. 16, 2021) (same); *In re Town*

*Sports Int'l, LLC*, No. 20-12168 (CSS) (Bankr. D. Del. Sept. 16, 2020) (same); *In re Extraction*

*Oil & Gas, Inc.*, No. 20-11548 (CSS) (Bankr. D. Del. Jun. 16, 2020) (same).

## Notice

26.     Notice of this Application has been provided to: (i) the U.S. Trustee; (ii) counsel

for the prepetition secured lenders; (iii) those parties listed on the list of creditors holding the

twenty largest unsecured claims against the Debtors (on a consolidated basis), as identified in their

chapter 11 petitions, and (iv) all the parties that have requested notice in this proceeding pursuant

to Bankruptcy Rule 2002.  Notice of this Motion and any order entered hereon will be served in

accordance with Local Rule 9013-1(m).  The Debtors submit that, in light of the nature of the relief

requested, no other or further notice need be given.

## No Prior Request

27.     No prior request for the relief sought in this Application has been made to this or

any other court.

WHEREFORE, the Debtors respectfully request that the Court enter the Order attached as

**Exhibit A** granting the relief requested herein and such other relief as the Court deems appropriate

under the circumstances.

Dated:  February 16, 2023  
        Blythewood, South Carolina

/s/ *John Pinson*  
NAME: John Pinson  
TITLE: Chief Executive Officer  
of Stanadyne LLC

**<u>Exhibit A</u>**

**Proposed Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| *In re* | Chapter 11 |
| **STANADYNE LLC, *et al.*,**[1] | Case No. 23-10207 (JTD) |
| **Debtors.** | (Joint Administration Requested) |

### ORDER AUTHORIZING THE DEBTORS TO EMPLOY
### AND RETAIN KURTZMAN CARSON CONSULTANTS LLC AS CLAIMS
### AND NOTICING AGENT EFFECTIVE AS OF THE PETITION DATE

Upon the application (the "Application")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order (this "Order") appointing Kurtzman Carson Consultants LLC ("KCC") as claims and noticing agent (the "Claims and Noticing Agent"), pursuant to 28 U.S.C. § 156(c), section 105(a) of the Bankruptcy Code, and Local Rule 2002-1(f) to, among other things, (a) distribute required notices to parties in interest, (b) receive, maintain, docket, and otherwise administer the proofs of claim filed in the Chapter 11 Case, and (c) provide such other administrative services, all as more fully set forth in the Application; and upon consideration of the First Day Declaration and the Jordan Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the Amended Standing Order of Reference from the United States District Court for the District of Delaware, dated February 29, 2012; and this matter being a core proceeding within the meaning of 28 U.S.C. § 157(b)(2); and the Court being able to issue a final order consistent with Article III of the United States Constitution; and venue of this proceeding and the Application in this district being proper pursuant to 28 U.S.C. §§ 1408 and 1409; and appropriate notice of and opportunity for hearing on

---

1. The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number are: Stanadyne LLC (0378); Pure Power Technologies, Inc. (5202); Stanadyne PPT Holdings, Inc. (2594); and Stanadyne PPT Group Holdings, Inc. (1734). The Debtors' headquarters are located at 405 White Street, Jacksonville, North Carolina 28546.

2. Capitalized terms used herein but not otherwise defined herein shall have the meanings ascribed to them in the Application.

the Application having been given; and the relief requested in the Application being in the best interests of the Debtors' estates, their creditors, and other parties in interest; and the Court having determined that the legal and factual bases set forth in the Application establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor:

**IT IS HEREBY ORDERED THAT:**

1.      The Application is granted as set forth herein.

2.      The Debtors are authorized to retain and appoint KCC as Claims and Noticing Agent, effective as of the Petition Date, under the terms of the Services Agreement, attached hereto as **Exhibit 1**.  Notwithstanding any terms of the Services Agreement, the Application is approved solely as set forth in this Order.

3.      KCC, as the Claims and Noticing Agent, is directed to perform noticing services and to receive, maintain, record, and otherwise administer the proofs of claim filed in these cases (if any), and all related tasks, all as described in the Application (collectively, the "Claims and Noticing Services").

4.      KCC shall serve as the custodian of court records and shall be designated as the authorized repository for all proofs of claim filed in these Chapter 11 Cases (if any) and is authorized and directed to maintain official claims registers for each of the Debtors and to provide the Clerk with a certified duplicate thereof upon the request of the Clerk.

5.      KCC is authorized and directed to provide an electronic interface for filing proofs of claim and to obtain a post office box or address for the receipt of proofs of claim (if necessary). KCC shall provide public access to the claims register, including complete proofs of claim with attachments, if any, without charge.

6.      KCC is authorized to take such other action to comply with all duties set forth in the Application and this Order.

7.      The Debtors are authorized to compensate and reimburse KCC in accordance with the terms and conditions of the Services Agreement upon the receipt of reasonably detailed invoices setting forth the Claims and Noticing Services provided by KCC and the rates charged for each, and to reimburse KCC for all reasonable and necessary expenses it may incur, upon the presentation of appropriate documentation, without the need for KCC to file fee applications or otherwise seek this Court's approval for the compensation of its Claims and Noticing Services and reimbursement of its expenses.

8.      Notwithstanding the Application or Services Agreement, to the extent the Debtors wish to expand the scope of KCC's services beyond those Claims and Noticing Services set forth in the Application and Services Agreement, the Debtors shall be required to seek further approval from this Court.

9.      KCC shall maintain records of all services performed, showing dates, categories of services, fees charged, and expenses incurred, and shall serve monthly invoices on (a) the Debtors, (b) the U.S. Trustee, (c) counsel to the Debtors, (d) counsel to any official committee appointed to monitor the expenses of the Debtors in these Chapter 11 Cases, and (e) any party-in-interest who specifically requests service of the monthly invoices.

10.     The parties shall meet and confer in an attempt to resolve any dispute that may arise relating to the Services Agreement or monthly invoices; *provided* that the parties may seek resolution of such matter from this Court if resolution is not achieved.

11.     Without further order of the Court, pursuant to section 503(b)(1)(A) of the Bankruptcy Code, the fees and expenses of KCC under this Order shall be an administrative expense of the Debtors' estates.

12.     KCC may apply its retainer to all prepetition invoices, which retainer shall be replenished to the original retainer amount, and thereafter, KCC may hold its retainer under the Services Agreement during the Chapter 11 Cases as security for the payment of fees and expenses incurred under the Services Agreement.

13.     The Debtors shall indemnify KCC under the terms of the Services Agreement, as modified pursuant to this Order.

14.     KCC shall not be entitled to indemnification, contribution, or reimbursement pursuant to the Services Agreement for services other than the Claims and Noticing Services, as provided under the Services Agreement, unless such services and the indemnification, contribution, or reimbursement therefore is approved by this Court.

15.     Notwithstanding anything to the contrary in the Services Agreement, the Debtors shall have no obligation to indemnify KCC, or provide contribution or reimbursement to KCC, for any claim or expense that is either: (a) judicially determined (the determination having become final) to have arisen from KCC's gross negligence, willful misconduct, or fraud; (b) for a contractual dispute in which the Debtors allege the breach of KCC's contractual obligations, if this Court determines that indemnification, contribution, or reimbursement would not be permissible under applicable law; or (c) settled prior to a judicial determination under subsection (a) or (b), but determined by this Court, after notice and a hearing, to be a claim or expense for which KCC should not receive indemnity, contribution, or reimbursement under the terms of the Services Agreement as modified by this Order.

16.     If, before the earlier of: (a) the entry of an order confirming a chapter 11 plan in these Chapter 11 Cases (that order having become a final order no longer subject to appeal), or (b) the entry of an order closing these Chapter 11 Cases, KCC believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution, or reimbursement obligations under the Services Agreement (as modified by this Order), including the advancement of defense costs, KCC must file an application therefor in this Court, and the Debtors may not pay any such amounts to KCC before the entry of an order by this Court approving the payment.  If KCC seeks reimbursement from the Debtors for attorneys' fees and expenses in connection with the payment of an indemnity claim pursuant to the Services Agreement, the invoices and supporting time records for any attorneys' fees and expenses shall be included in KCC's own applications, both interim and final, but determined by this Court after notice and a hearing.  This paragraph is intended only to specify the period of time under which the Court shall have jurisdiction over any request for fees and expenses by KCC for indemnification, contribution, or reimbursement, and not a provision limiting the duration of the Debtors' obligation to indemnify KCC.  All parties in interest shall retain the right to object to any demand by KCC for indemnification, contribution, or reimbursement.

17.     In the event KCC is unable to provide the Claims and Noticing Services, KCC will immediately notify the Clerk and the Debtors' counsel and, upon approval of this Court, cause to have all original proofs of claim and computer information turned over to another claims and noticing agent with the advice and consent of the Clerk and the Debtors' counsel.

18.     KCC declares that it does not now have, nor has it ever had any contract or agreement with XClaim Inc. or with any other party under which KCC provides, provided, or will

provide exclusive access to claims data and/or under which KCC would be compensated for claims data made available by KCC.

19.     After entry of an order terminating KCC's services, upon the closing of the Chapter 11 Cases, or for any other reason, KCC shall be responsible for archiving all proofs of claim with the Federal Archives Record Administration, if applicable, and transmitting to the Clerk all claims in an electronic format, if applicable and shall be compensated by the Debtors in connection therewith.

20.     Notwithstanding any term in the Services Agreement to the contrary, during the Chapter 11 Cases, KCC's liability will not be limited to the amount paid to KCC by the Debtors or billed to the Debtors by KCC.

21.     KCC shall not cease providing claims processing services during these Chapter 11 Cases for any reason, including nonpayment, without an order of this Court.

22.     The Debtors may submit a separate retention application, pursuant to section 327 of the Bankruptcy Code or any applicable law, for work that is to be performed by KCC but is not specifically authorized by this Order.

23.     In the event of any inconsistency between the Services Agreement, the Application, and this Order, the terms of this Order shall govern.

24.     Nothing in this Order constitutes (a) an admission as to the validity of any claim against the Debtors; (b) a waiver of the Debtors' or any party in interest's rights to dispute the amount of, basis for, or validity of any claim or interest under applicable law or nonbankruptcy law; (c) a promise or requirement to pay any claim; (d) a waiver of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable law; or (e) a request for or granting of approval for assumption of any agreement, contract, program, policy, or lease under

section 365 of the Bankruptcy Code.  Any payment made pursuant to this Order is not intended to be nor should it be construed as an admission as to the validity of any claim or a waiver of the Debtors' rights to subsequently dispute such claim.

25. Notice of the Application as provided therein shall be deemed good and sufficient notice of such Application and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

26. Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

27. The Debtors and KCC are authorized to take all steps necessary or appropriate to carry out this Order.

28. Notwithstanding any term in the Services Agreement to the contrary, this Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

**Exhibit 1**

**Services Agreement**



# KCC AGREEMENT FOR SERVICES

This Agreement is entered into as of the 7th day of February, 2023 between Stanadyne PPT Group Holdings, Inc., Stanadyne PPT Holdings, Inc., Stanadyne LLC, and Pure Power Technologies, Inc. (collectively, the "Company"),[1] and Kurtzman Carson Consultants LLC (together with its affiliates and subcontractors, "KCC"). In consideration of the premises set forth herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

**Terms and Conditions**

I.      SERVICES

A.      KCC agrees to provide the Company with consulting services regarding noticing, claims management and reconciliation, plan solicitation, balloting, disbursements and any other services agreed upon by the parties or otherwise required by applicable law, government regulations or court rules or orders.

B.      KCC further agrees to provide (i) computer software support and training in the use of the support software, (ii) KCC's standard reports as well as consulting and programming support for the Company requested reports, (iii) program modifications, (iv) data base modifications, and/or (v) other features and services in accordance with the fees outlined in a pricing schedule provided to the Company (the "KCC Fee Structure").

C.      Without limiting the generality of the foregoing, KCC may, upon request by the Company, (i) provide a communications plan including, but not limited to, preparation of communications materials, dissemination of information and a call center staffed by KCC and/or (ii) provide confidential on-line workspaces or virtual data rooms and publish documents to such workspaces or data rooms (which publication shall not be deemed to violate the confidentiality provisions of this Agreement).

D.      The price listed for each service in the KCC Fee Structure represents a bona fide proposal for such services, which may be accepted in whole or in part.  Services will be provided when requested by the Company or required by applicable law, government regulations or court rules or orders.  Services are mutually exclusive and are deemed delivered and accepted by the Company when provided by KCC.

E.      The Company acknowledges and agrees that KCC will often take direction from the Company's representatives, employees, agents and/or professionals (collectively, the "Company Parties") with respect to the services being provided under this Agreement.  The parties agree that KCC may rely upon, and the Company agrees to be bound by, any requests, advice or information provided by the Company Parties to the same extent as if such requests, advice or information were provided by the Company.  The Company agrees and understands that KCC shall not provide the Company or any other party with any legal advice.

---

[1] The term Company shall include, to the extent applicable, the Company, as debtor and debtor in possession in its chapter 11 case, together with any affiliated debtors and debtors in possession whose chapter 11 cases are jointly administered with the Company's chapter 11 case.



# KCC AGREEMENT FOR SERVICES

II.    PRICES, CHARGES AND PAYMENT

A.    KCC agrees to charge and the Company agrees to pay KCC for its services at the rates and prices set by KCC that are in effect as of the date of this Agreement and in accordance with the KCC Fee Structure.  KCC's prices are generally adjusted periodically to reflect changes in the business and economic environment and are inclusive of all charges.  KCC reserves the right to reasonably increase its prices, charges and rates annually; provided, however, that if any such increase exceeds 10%, KCC will give thirty (30) days written notice to the Company.

B.    In addition to fees and charges for services, the Company agrees to pay KCC's reasonable transportation, lodging, and meal expenses incurred in connection with services provided under this Agreement.

C.    In addition to all fees for services and expenses hereunder, the Company shall pay to KCC (i) any fees and charges related to, arising out of, or as a result of any error or omission made by the Company or the Company Parties, as mutually determined by KCC and the Company, and (ii) all taxes that are applicable to this Agreement or that are measured by payments made under this Agreement and are required to be collected by KCC or paid by KCC to a taxing authority.

D.    Where the Company requires services that are unusual or beyond the normal business practices of KCC, or are otherwise not provided for in the KCC Fee Structure, the cost of such services shall be charged to the Company at a competitive rate.

E.    KCC agrees to submit its invoices to the Company monthly and the Company agrees that the amount invoiced is due and payable upon the Company's receipt of the invoice. KCC's invoices will contain reasonably detailed descriptions of charges for both hourly (fees) and non-hourly (expenses) case specific charges. Where total invoice amounts are expected to exceed $10,000 in any single month and KCC reasonably believes it will not be paid, KCC may require advance payment from the Company due and payable upon demand and prior to the performance of services hereunder.  If any amount is unpaid as of thirty (30) days from the receipt of the invoice, the Company further agrees to pay a late charge, calculated as one and one-half percent (1-1/2%) of the total amount unpaid every thirty (30) days.  In the case of a dispute in the invoice amount, the Company shall give written notice to KCC within ten (10) days of receipt of the invoice by the Company.  The undisputed portion of the invoice will remain due and payable immediately upon receipt of the invoice.  Late charges shall not accrue on any amounts in dispute or any amounts unable to be paid due to Court order or applicable law.  Unless otherwise agreed to in writing, the fees for print notice and media publication (including commissions) must be paid at least three (3) days in advance of those fees and expenses being incurred.

F.    In the event that the Company files for protection pursuant to chapter 11 of the United States Bankruptcy Code (a "Chapter 11 Filing"), the parties intend that KCC shall be employed pursuant to 28 U.S.C. § 156(c) to the extent possible and otherwise in accordance with applicable Bankruptcy law and that all amounts due under this Agreement shall, to the extent possible, be paid as administrative expenses of the Company's chapter 11 estate.  As soon as practicable following a Chapter 11 Filing (and otherwise in accordance with applicable law and rules and

2



# KCC AGREEMENT FOR SERVICES

orders of the Bankruptcy Court), the Company shall cause pleadings to be filed with the Bankruptcy Court seeking entry of an order or orders approving this Agreement (the "Retention Order"). The form and substance of the pleadings and the Retention Order shall be reasonably acceptable to KCC. If any Company chapter 11 case converts to a case under chapter 7 of the Bankruptcy Code, KCC will continue to be paid for its services in accordance with the terms of this Agreement. The parties recognize and agree that if there is a conflict between the terms of this Agreement and the terms of the Retention Order, the terms of the Retention Order shall govern during the chapter 11 or other proceeding.

G.        To the extent permitted by applicable law, KCC shall receive a retainer in the amount of $30,000.00 (the "Retainer") that may be held by KCC as security for the Company's payment obligations under the Agreement. The Retainer is due upon execution of this Agreement. KCC shall be entitled to hold the Retainer until the termination of the Agreement. Following termination of the Agreement, KCC shall return to the Company any amount of the Retainer that remains following application of the Retainer to the payment of unpaid invoices.

## III.    RIGHTS OF OWNERSHIP

A.        The parties understand that the software programs and other materials furnished by KCC pursuant to this Agreement and/or developed during the course of this Agreement by KCC are the sole property of KCC. The term "program" shall include, without limitation, data processing programs, specifications, applications, routines, and documentation. The Company agrees not to copy or permit others to copy the source code from the support software or any other programs or materials furnished pursuant to this Agreement.

B.        The Company further agrees that any ideas, concepts, know-how or techniques relating to data processing or KCC's performance of its services developed or utilized during the term of this Agreement by KCC shall be the exclusive property of KCC. Fees and expenses paid by the Company do not vest in the Company any rights in such property, it being understood that such property is only being made available for the Company's use during and in connection with the services provided by KCC under this Agreement.

## IV.    NON-SOLICITATION

The Company agrees that neither it nor its subsidiaries or other affiliated companies shall directly or indirectly solicit for employment, employ or otherwise retain employees of KCC during the term of this Agreement and for a period of twelve (12) months after termination of this Agreement unless KCC provides prior written consent to such solicitation or retention.

## V.    CONFIDENTIALITY

Each of KCC and the Company, on behalf of themselves and their respective employees, agents, professionals and representatives, agrees to keep confidential all non-public records, systems, procedures, software and other information received from the other party in connection with the services provided under this Agreement; provided, however, that if either party reasonably believes that it is required to produce any such information by order of any governmental agency or other regulatory body it may, upon not less than five (5) business days' written notice to the other party, release the required information.



# KCC AGREEMENT FOR SERVICES

VI.      SUSPENSION OF SERVICE AND TERMINATION

A.      This Agreement shall remain in force until terminated or suspended by either party (i) upon thirty (30) days' written notice to the other party or (ii) immediately upon written notice for Cause (defined herein).  As used herein, the term "Cause" means (i) gross negligence or willful misconduct of KCC that causes serious and material harm to the Company's reorganization under chapter 11 of the Bankruptcy Code, (ii) the failure of the Company to pay KCC invoices for more than sixty (60) days from the date of invoice, or (iii) the accrual of invoices or unpaid services in excess of the retainer held by KCC where KCC reasonably believes it will not be paid.

B.      In the event that this contract is terminated, regardless of the reason for such termination, KCC shall coordinate with the Company and, to the extent applicable, the clerk of the Bankruptcy Court, to maintain an orderly transfer of record keeping functions and KCC shall provide all necessary staff, services and assistance required for an orderly transfer.  The Company agrees to pay for such services in accordance with KCC's then existing prices for such services.  If such termination occurs following entry of the Retention Order, the Company shall immediately seek entry of an order (in form and substance reasonably acceptable to KCC) that discharges KCC from service and responsibility in the Company's bankruptcy case.

C.      Any data, programs, storage media or other materials furnished by the Company to KCC or received by KCC in connection with the services provided under the terms of this Agreement may be retained by KCC until the services provided are paid for, or until this Agreement is terminated with the services paid in full.  The Company shall remain liable for all fees and expenses imposed under this Agreement as a result of data or physical media maintained or stored by KCC.  KCC shall dispose of the data and media in the manner requested by the Company.  The Company agrees to pay KCC for reasonable expenses incurred as a result of the disposition of data or media.  If the Company has not utilized KCC's services under this Agreement for a period of at least ninety (90) days, KCC may dispose of the data or media, and be reimbursed by the Company for the expense of such disposition, after giving the Company thirty (30) days' notice.  Notwithstanding any term herein to the contrary, following entry of the Retention Order, the disposition of any data or media by KCC shall be in accordance with any applicable instructions from the clerk of the Bankruptcy Court, local Bankruptcy Court rules and orders of the Bankruptcy Court.

VII.     SYSTEM IMPROVEMENTS

KCC strives to provide continuous improvements in the quality of service to its clients.  KCC, therefore, reserves the right to make changes in operating procedure, operating systems, programming languages, general purpose library programs, application programs, time period of accessibility, types of terminal and other equipment and the KCC data center serving the Company, so long as any such changes do not materially interfere with ongoing services provided to the Company in connection with the Company's chapter 11 case.



# KCC AGREEMENT FOR SERVICES

VIII.    BANK ACCOUNTS

At the Company's request and subject to Court approval following any chapter 11 filing, KCC may be authorized to establish accounts with financial institutions in the name of and as agent for the Company.  To the extent that certain financial products are provided to the Company pursuant to KCC's agreement with financial institutions, KCC may receive compensation from such financial institutions for the services KCC provides pursuant to such agreement.

IX.    LIMITATIONS OF LIABILITY AND INDEMNIFICATION

A.    The Company shall indemnify and hold KCC, its affiliates, members, directors, officers, employees, consultants, subcontractors and agents (collectively, the "Indemnified Parties") harmless, to the fullest extent permitted by applicable law, from and against any and all losses, claims, damages, judgments, liabilities and expenses (including reasonable counsel fees and expenses) (collectively, "Losses") resulting from, arising out of or related to KCC's performance under this Agreement. Such indemnification shall exclude Losses resulting from KCC's gross negligence or willful misconduct.  Without limiting the generality of the foregoing, Losses include any liabilities resulting from claims by any third-parties against any Indemnified Party. The Company shall notify KCC in writing promptly upon the assertion, threat or commencement of any claim, action, investigation or proceeding that the Company becomes aware of with respect to the services provided by KCC under this Agreement.  The Company's indemnification obligations hereunder shall survive the termination of this Agreement.

B.    Except as provided herein, KCC's liability to the Company or any person making a claim through or under the Company for any Losses of any kind, even if KCC has been advised of the possibility of such Losses, whether direct or indirect and unless due to gross negligence or willful misconduct of KCC, shall be limited to the total amount billed or billable to the Company for the portion of the particular work which gave rise to the alleged Loss.  In no event shall KCC be liable for any indirect, special or consequential damages such as loss of anticipated profits or other economic loss in connection with or arising out of the services provided for in this Agreement.  In no event shall KCC's liability to the Company for any Losses, whether direct or indirect, arising out of this Agreement exceed the total amount billed to the Company and actually paid to KCC for the services contemplated under the Agreement; provided, however, that this limitation shall not apply to the Company during any chapter 11 case in which the Company is a debtor.

C.    The Company is responsible for the accuracy of the programs, data and information it or any Company Party submits for processing to KCC and for the output of such information.  KCC does not verify information provided by the Company and, with respect to the preparation of schedules and statements, all decisions are at the sole discretion and direction of the Company. The Company reviews and approves all schedules and statements filed on behalf of, or by, the Company; KCC bears no responsibility for the accuracy or contents therein.  The Company agrees to initiate and maintain backup files that would allow the Company to regenerate or duplicate all programs and data submitted by the Company to KCC.

D.    The Company agrees that except as expressly set forth herein, KCC makes no representations or warranties, express or implied, including, but not limited to, any implied or

5



# KCC AGREEMENT FOR SERVICES

express warranty of merchantability, fitness or adequacy for a particular purpose or use, quality, productiveness or capacity.

X.    FORCE MAJEURE

KCC will not be liable for any delay or failure in performance when such delay or failure arises from circumstances beyond its reasonable control, including without limitation acts of God, acts of government in its sovereign or contractual capacity, acts of public enemy or terrorists, acts of civil or military authority, war, riots, terrorism, blockades, sabotage, rationing, embargoes, epidemics, pandemics (but not COVID-19 under current prevailing conditions), earthquakes, fire, flood, other natural disaster, quarantine or any other employee restrictions imposed by the federal or state government, power shortages or failures, utility or communication failure or delays, labor disputes, strikes, equipment failures, or software malfunctions.

XI.    INDEPENDENT CONTRACTORS

The Company and KCC are and shall be independent contractors of each other and no agency, partnership, joint venture or employment relationship shall arise, directly or indirectly, as a result of this Agreement.

XII.    NOTICES

All notices and requests in connection with this Agreement shall be given or made upon the respective parties in writing and shall be deemed as given as of the third day following the day it is deposited in the U.S. Mail, postage pre-paid or on the day it is given if sent by facsimile or electronic mail or on the day after the day it is sent if sent by overnight courier to the appropriate address set forth below:

KCC

# KCC AGREEMENT FOR SERVICES

Kurtzman Carson Consultants LLC
222 N. Pacific Coast Highway, 3rd Floor
El Segundo, CA  90245
Attn:  Drake D. Foster
Tel: (310) 823-9000
Fax: (310) 823-9133
E-Mail: dfoster@kccllc.com

Stanadyne PPT Group Holdings, Inc.
Stanadyne PPT Holdings, Inc.
Stanadyne LLC
Pure Power Technologies, Inc.
1410 Northpoint Blvd
Blythewood, SC  29016
Attn:  Costas Loukellis
Tel: (860) 559-4953
E-Mail: cloukellis@stanadyne.com

With Copy to:

Hughes Hubbard & Reed LLP
One Battery Park Plaza
New York, New York 10004
Attn:  Kathryn A. Coleman, Esq. and Jeffrey S. Margolin, Esq.
Tel:  (212) 837-6000
Fax:  (212) 422-4726
E-Mail:  katie.coleman@hugheshubbard.com, jeff.margolin@hugheshubbard.com

Or to such other address as the party to receive the notice or request so designates by written notice to the other.

## XIII.    APPLICABLE LAW

The validity, enforceability, and performance of this Agreement shall be governed by and construed in accordance with the laws of the State of California.

## XIV.    ENTIRE AGREEMENT/ MODIFICATIONS

Each party acknowledges that it has read this Agreement, understands it, and agrees to be bound by its terms and further agrees that it is the complete and exclusive statement of the agreement between the parties, which supersedes and merges all prior proposals, understandings, other agreements, and communications oral and written between the parties relating to the subject matter of this Agreement.  The Company represents that it has the authority to enter into this Agreement, and the Agreement is non-dischargeable under any applicable statute or law.  If any provision of this Agreement shall be held to be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions shall in no way be affected or impaired thereby.  This Agreement may be modified only by a written instrument duly executed by an authorized representative of the Company and an officer of KCC.



# KCC AGREEMENT FOR SERVICES

XV.     COUNTERPARTS; EFFECTIVENESS

This Agreement may be executed in two or more counterparts, each of which will be deemed an original but all of which together will constitute one and the same instrument.  This Agreement will become effective when one or more counterparts have been signed by each of the parties and delivered to the other parties, which delivery may be made by exchange of copies of the signature page by facsimile or electronic mail.

XVI.    ASSIGNMENT

This Agreement and the rights and duties hereunder shall not be assignable by the parties hereto except upon written consent of the other, with the exception that this Agreement can be assigned without written consent by KCC to a wholly-owned subsidiary or affiliate of KCC.

XVII.   ATTORNEYS' FEES

In the event that any legal action, including an action for declaratory relief, is brought to enforce the performance or interpret the provisions of this Agreement, the parties agree to reimburse the prevailing party's reasonable attorneys' fees, court costs, and all other related expenses, which may be set by the court in the same action or in a separate action brought for that purpose, in addition to any other relief to which the prevailing party may be entitled.


[SIGNATURE PAGE FOLLOWS]



# KCC AGREEMENT FOR SERVICES

IN WITNESS WHEREOF, the parties hereto have executed this Agreement effective as of the first date mentioned above.

Kurtzman Carson Consultants LLC

_____
BY:  Evan Gershbein                    DATE:
TITLE:  EVP, Corporate Restructuring Services

Stanadyne PPT Group Holdings, Inc.
Stanadyne PPT Holdings, Inc.
Stanadyne LLC
Pure Power Technologies, Inc.

_____
BY: Costas Loukellis                   DATE: February 7, 2023
TITLE: Chief Financial Officer

**<u>Exhibit B</u>**

**Jordan Declaration**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| *In re* | Chapter 11 |
| **STANADYNE LLC, *et al.*,**[1] | Case No. 23-10207 (JTD) |
| **Debtors.** | (Joint Administration Requested) |

**DECLARATION OF ROBERT JORDAN IN SUPPORT OF DEBTORS'**
**APPLICATION FOR AUTHORIZATION TO EMPLOY AND**
**RETAIN KURTZMAN CARSON CONSULTANTS LLC AS CLAIMS AND**
**NOTICING AGENT EFFECTIVE AS OF THE PETITION DATE**

I, Robert Jordan, being duly sworn, state the following under penalty of perjury:

1.      I am a Senior Managing Director of Corporate Restructuring Services for Kurtzman Carson Consultants LLC ("KCC"), whose offices are located at 222 N. Pacific Coast Highway, 3rd Floor, El Segundo, California 90245.  Except as otherwise noted, I have personal knowledge of the matters set forth herein, and if called and sworn as a witness, I could and would testify competently thereto.

2.      This declaration (this "Declaration") is made in support of the *Debtors' Application for Authorization to Employ and Retain Kurtzman Carson Consultants LLC as Claims and Noticing Agent Effective as of the Petition Date* (the "Application").[2]

3.      KCC comprises leading industry professionals with significant experience in both the legal and administrative aspects of large, complex chapter 11 cases.  KCC's professionals have

---

1.    The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number are:  Stanadyne LLC (0378); Pure Power Technologies, Inc. (5202); Stanadyne PPT Holdings, Inc. (2594); and Stanadyne PPT Group Holdings, Inc. (1734).  The Debtors' headquarters are located at 405 White Street, Jacksonville, North Carolina 28546.

2.    Capitalized terms used herein but not otherwise defined herein shall have the meanings ascribed to them in the Application.

experience in noticing, claims administration, solicitation, balloting and facilitating other administrative aspects of chapter 11 cases.  KCC has acted as official claims and noticing agent in many large bankruptcy cases in this district and in other districts nationwide.  KCC's cases include: *In re Tricida, Inc.,* Case No. 23-10024 (JTD) (Bankr. D. Del. Jan. 11, 2023); *In re Carestream Health, Inc.*, Case No. 22-10778 (JKS) (Bankr. D. Del. Aug. 23, 2022); *In re First Guaranty Mortgage Corp.*, Case No. 22-10584 (CTG) (Bankr. D. Del. Jun. 30, 2022); *In re Zosano Pharma Corp.,* Case No. 22-10506 (JKS) (Bankr. D. Del. Jun. 1, 2022); *In re Sequential Brands Group, Inc.*, Case No. 21-11194 (JTD) (Bankr. D. Del. Aug. 31, 2021); *In re Alex and Ani, LLC*, Case No. 21-10918 (CTG) (Bankr. D. Del. Jun. 9, 2021); *In re TECT Aerospace Group Holdings, Inc.,* Case No. 21-10670 (KBO) (Bankr. D. Del. Apr. 7, 2021); *In re JetFleet Holding Corp. (f/k/a AeroCentury Corp.)*, Case No. 21-10637 (JTD) (Bankr. D. Del. Mar. 31, 2021); *In re Medley LLC*, Case No. 21-10525 (KBO) (Bankr. D. Del. Mar. 10, 2021); *In re Chaparral Energy, Inc.*, Case No. 20-11947 (MFW) (Bank. D. Del. Aug. 18, 2020); and *In re HRI Holding Corp.,* Case No. 19-12415 (MFW) (Bankr. D. Del. Nov. 15, 2019).  As agent and custodian of the Court records pursuant to 28 U.S.C. § 156(c), KCC will perform at the request of the Clerk's office the noticing and claims-related services specified in the Application.  In addition, at the Debtors' request, KCC will perform such other noticing, claims, technical, administrative, and support services specified in the Application, subject to 28 U.S.C. § 156(c) and the Claims Agent Protocol.

4.      KCC represents, among other things, the following:

(a)     KCC is not a creditor of the Debtors;

(b)     KCC is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code;

(c)     KCC will not consider itself employed by the United States government and will not seek any compensation from the United States government in its capacity as the claims and noticing agent in these Chapter 11 Cases;

(d)     by accepting employment in these Chapter 11 Cases, KCC waives any rights to receive compensation from the United States government as claims and noticing agent;

(e)     in its capacity as the claims and noticing agent in these Chapter 11 Cases, KCC will not be an agent of the United States and will not act on behalf of the United States;

(f)     KCC will not employ any past or present employees of the Debtors in connection with its work as the claims and noticing agent in these Chapter 11 Cases;

(g)     in its capacity as claims and noticing agent in these Chapter 11 Cases, KCC will not intentionally misrepresent any fact to any person;

(h)     KCC will be under the supervision and control of the Clerk's office with respect to the receipt and recordation of claims and claim transfers;

(i)     KCC will comply with all requests of the Clerk's office and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c); and

(j)     none of the services provided by KCC as claims and noticing agent will be at the expense of the Clerk's office.

5.      Although the Debtors do not propose to retain KCC under section 327 of the Bankruptcy Code pursuant to the Application,[3] I caused to be submitted for review by our conflicts system the names of all known potential parties-in-interest (the "Potential Parties in Interest") in these Chapter 11 Cases. The list of Potential Parties in Interest was provided by the Debtors and included, among other things, the Debtors, non-Debtor affiliates, significant equity holders, the Debtors' current and former directors and officers, top 10 secured creditors, top 40 unsecured creditors, vendors, and other parties. The results of the conflict check were compiled and reviewed by KCC professionals under my supervision. At this time, and as set forth in further detail herein, KCC is not aware of any relationship that would present a disqualifying conflict of interest. Should KCC discover any new relevant facts or relationships bearing on the matters described herein

---

[3]   As stated in the Application, such retention will be sought by separate application.

during the period of its retention, KCC will use reasonable efforts to promptly file a supplemental declaration.

6.      To the best of my knowledge, and based solely upon information provided to me by the Debtors, and except as provided herein, neither KCC, nor any of its professionals, has any materially adverse connection to the Debtors, their creditors or other relevant parties.  KCC may have relationships with certain of the Debtors' creditors as vendors or in connection with cases in which KCC serves or has served in a neutral capacity as claims and noticing agent or administrative advisor for another chapter 11 debtor.

7.      KCC is an indirect subsidiary of Computershare Limited ("Computershare"). Computershare is a financial services and technologies provider for the global securities industry. Within the Computershare corporate structure, KCC operates as a separate, segregated business unit.  As such, any relationships that Computershare and its affiliates maintain do not create an interest of KCC that is materially adverse to the Debtors' estates or any class of creditors or security holders.

8.      KCC has no contract or relationship with XClaim Inc. or with any other party under which KCC provides or will provide exclusive access to claims data and/or under which KCC will be compensated for claims data that is made available by KCC.

9.      KCC has and will continue to represent clients in matters unrelated to these Chapter 11 Cases.  In addition, KCC and its personnel have and will continue to have relationships in the ordinary course of its business with certain vendors, professionals and other parties in interest that may be involved in the Debtors' Chapter 11 Cases.  KCC may also provide professional services to entities or persons that may be creditors or parties in interest in these Chapter 11 Cases, which

services do not directly relate to, or have any direct connection with, these Chapter 11 Cases or the Debtors.

10.     To the best of my knowledge, neither KCC nor any of its employees represent any interest materially adverse to the Debtors' estates with respect to any matter upon which KCC is to be engaged.  Based on the foregoing, I believe that KCC is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code.


*[Remainder of Page Intentionally Left Blank]*

4

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my information, knowledge, and belief.

Dated: February 16, 2023                                  Respectfully submitted,
      New York, New York


                                          */s/ Robert Jordan*
                                          Robert Jordan
                                          Senior Managing Director
                                          Kurtzman Carson Consultants LLC
                                          222 N. Pacific Coast Highway, 3rd Floor
                                          El Segundo, California 90245
                                          Telephone: (310) 823-9000