## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re* | **Chapter 11** |
| **STANADYNE LLC, *et al.*,**[1] | **Case No. 23-10207 (JTD)** |
| **Debtors.** | **(Joint Administration Requested)** |

### DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING THE USE OF CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED LENDERS, AND (III) GRANTING RELATED RELIEF

The debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors") hereby move (the "Motion") for entry of an interim order, substantially in the form attached hereto as **Exhibit A**[2] (the "Interim Order"), and a final order (the "Final Order," and together with the Interim Order, the "Orders"), pursuant to sections 105(a), 361, 362, 363, and 507 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 4001, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 4001-2 and 9013-1(m) of the Local Rules of Bankruptcy Practice and Procedure for the District of Delaware (the "Local Rules"), granting the relief set forth below and described more fully in the Motion:

    (i)    authorizing the Debtors to use "Cash Collateral," as defined in section 363(a) of the Bankruptcy Code, in accordance with the Orders;

    (ii)    granting adequate protection as set forth in the Orders;

---

1. The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number are: Stanadyne LLC (0378); Pure Power Technologies, Inc. (5202); Stanadyne PPT Holdings, Inc. (2594); and Stanadyne PPT Group Holdings, Inc. (1734). The Debtors' headquarters are located at 405 White Street, Jacksonville, North Carolina 28546.

2. The Debtors and Cerberus are working to finalize the proposed form of Interim Order and will file a revised form of Exhibit A to the extent any modifications are made prior to the interim hearing.

(iii)    modifying the automatic stay imposed by Bankruptcy Code section 362 to the extent necessary to implement and effectuate the terms and provisions of the Orders;

(iv)    waiving any applicable stay (including under Bankruptcy Rules 4001 and 6004); and

(v)    granting related relief, including scheduling a final hearing (the "Final Hearing") to consider entry of the Final Order granting the relief requested in the Motion on a final basis, and finding that any applicable notice requirements or stay provisions of the Bankruptcy Rules and Local Rules are hereby satisfied or waived.

In support of the Motion, the Debtors submit the *Declaration of John Pinson, Chief Executive Officer of Stanadyne LLC, in Support of First Day Relief* [D.I. 12] (the "Pinson Declaration"), which is incorporated herein by reference, and respectfully state as follows:

## PRELIMINARY STATEMENT

1.    By this Motion, the Debtors seek approval to use Cash Collateral on a consensual basis. The Prepetition Secured Parties, who assert liens on most of the Debtors' assets and therefore on the Debtors' operating cash, have consented to the Debtors' use of Cash Collateral on the terms described in the Interim Order, attached hereto as **Exhibit A**. Through the Interim Order, the Debtors have proposed to provide the Prepetition Secured Parties certain protections, in the form of (i) replacement liens to the extent of any diminution of value, (ii) superpriority administrative expense claims under section 507(b) of the Bankruptcy Code against the Debtors' estates to the extent of any diminution of value, (iii) payment of Cerberus's reasonable and documented fees and expenses up to an aggregate amount of $900,000 for the period between the Petition Date and the date of entry of the Final Order, (iv) to the extent it is later determined by an Order of the Court that the Prepetition Obligations (as defined below) were oversecured as of the Petition Date, payment of postpetition interest at the default rate, and (v) an interim payment in the amount of $300,000.

30139789.1

2

2.      The Debtors design, manufacture, and supply fuel system components and refurbish fuel injection systems for internal combustion engines.  The Debtors' products are custom designed for specific cars and trucks, and are critical components for their customers, who are both original equipment manufacturers and aftermarket suppliers.  To ensure their customers' needs are met, the Debtors employ approximately 468 workers in the United States and run two U.S. manufacturing facilities around the clock, seven days a week.  In the context of this business, the Debtors' need for immediate and continuous access to their operating cash cannot be overstated.  With access to the cash generated by their operations, the Debtors can continue to operate their businesses, generate revenue, and pay their employees.  Without it, operations would have to stop, throwing hundreds of people out of work, endangering the production of cars and trucks in the United States, and subjecting the Debtors to substantial monetary penalties.

3.      In light of the need to fund the Debtors' active and profitable around-the-clock operations, and to ensure there is no interruption in the Debtors' ability to service their customers, the Debtors and their principal lender have agreed on the terms of the Debtors' use of the lender's cash collateral on an interim basis on the terms set forth below.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors confirm their consent pursuant to Local Rule 9013-1(f) to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.  Venue for this matter is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

5.      The bases for the relief requested herein are sections 105(a), 361, 362, and 363 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, and 9014, and Local Rules 4001-2 and 9013-1(m).

## BACKGROUND

6.      On February 16, 2023 (the "Petition Date"), the Debtors commenced their bankruptcy cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases").  No trustee, examiner, or creditors' committee has been appointed in these cases.  The Debtors are operating their businesses as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

7.      The events leading up to the Petition Date and the facts and circumstances supporting the relief requested herein are set forth in the Pinson Declaration, incorporated herein by reference.

## FACTS RELEVANT TO THIS MOTION

8.      The following is a brief summary of the history and present status of the Debtors' prepetition secured debt obligations.

9.      On May 2, 2017, the Debtors[3] entered into a financing agreement (as amended, amended and restated, supplemented, or otherwise modified from time to time, the "Financing Agreement"), under which Cerberus Business Finance, LLC (the "Prepetition Agent" or "Cerberus") served as collateral agent and administrative agent for the lenders (the "Prepetition Secured Lenders," and together with the Prepetition Agent, the "Prepetition Secured Parties"). The Financing Agreement originally provided for a $15 million revolving credit facility (the

---

3.   Debtor Stanadyne LLC entered the Financing Agreement as borrower, while Debtor Stanadyne PPT Holdings, Inc. (through its predecessor Stanadyne Intermediate Holdings LLC) entered as guarantor.  On April 8, 2019, Debtor Pure Power Technologies joined the Financing Agreement as an additional guarantor (Debtor Stanadyne PPT Holdings, Inc. and Debtor Pure Power Technologies, together, the "Prepetition Guarantors").

"Revolving Credit Facility"), and a $75 million term loan facility (the "Term Loan Facility," and together with the Revolving Credit Facility, the "Prepetition Credit Facility").  The Prepetition Credit Facility had a maturity of five years.  The Financing Agreement was subsequently amended to increase the Revolving Credit Facility to $25 million and the Term Loan Facility to $255 million.  As of the Petition Date, the total amount due under the Financing Agreement was approximately $281 million.

10.     The Prepetition Secured Parties assert that all obligations under the Financing Agreement (the "Prepetition Obligations") are secured by first-priority liens (the "Prepetition Liens") on substantially all of the Debtors' assets (the "Prepetition Collateral").[4]  The Financing Agreement also identifies certain "Excluded Property" that expressly does not constitute Prepetition Collateral and is not subject to the Prepetition Secured Parties' security interest.

11.     On the Petition Date, the Debtors filed these Chapter 11 Cases to, among other things, restructure their financial affairs.  In order to accomplish that restructuring, and to protect all stakeholders' (including the Prepetition Secured Parties') interests, the Debtors must continue their active and profitable manufacturing operations, which requires the use of cash. Shutting down operations, which is what would happen if the Debtors could not use their cash, would immediately and irreversibly destroy value, to the detriment of all stakeholders.

---

4.  The Debtors reserve all rights with respect to the scope of their property that may be subject to the Prepetition Secured Parties' liens and security interests.  Nothing herein constitutes a waiver or admission as to the scope of such property or the validity of any liens or security interests asserted by the Prepetition Secured Parties.

## CONCISE STATEMENT OF MATERIAL TERMS[5]

12.      The disclosures required by Bankruptcy Rule 4001(b)(l)(B)(i)-(iv) and Local Rule 4001-2(a)(i) are as follows:

(a) *Parties with an Interest in Cash Collateral.*

The parties with an interest in the Cash Collateral include Cerberus Business Finance, LLC, as the Prepetition Agent, and each of the Prepetition Secured Lenders.

(b) *Purposes for the Use of Cash Collateral.*

The Debtors are seeking authorization to use Cash Collateral for working capital and other general purposes in the ordinary course of business in accordance with the terms of the Interim Order and the Approved Budget, attached as **Exhibit 1** to the Interim Order, and any future budget governing the use of Cash Collateral in the Chapter 11 Cases.

(c) *Duration of the Use of Cash Collateral.*

The Debtors' use of the Cash Collateral shall continue until a Final Order is entered and then until the effective date of a chapter 11 plan or conversion of these Cases to cases under chapter 7 of the Bankruptcy Code.

(d) *Proposed Amount of Cash Collateral Usage.*

All existing cash on hand and all proceeds of Prepetition Collateral, subject to and in accordance with the Approved Budget and any future budget governing the usage of cash collateral in these Chapter 11 Cases.

(e) *Funding of Non-Debtor Affiliates.*

As detailed in the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors To (A) Continue To Maintain Their Existing Cash Management System, Bank Accounts, and Business Forms, (B) Honor Certain Prepetition Obligations Related Thereto, and (C) Continue To Perform Ordinary Course Intercompany Transactions; (II) Granting Administrative Expense Status to Ordinary Course Postpetition Intercompany Claims; and (III) Granting Related Relief* [D.I. 5] (the "Cash Management Motion"), the Debtors rely heavily on their foreign, non-debtor affiliates to produce and supply them

---

5.   This is a summary of certain terms and conditions set forth in the Interim Order.  Reference is made to the Interim Order for a full and complete description of the proposed use of cash collateral sought hereunder.  To the extent this statement is inconsistent with the Interim Order, the Interim Order shall control.  Unless otherwise indicated, the terms summarized herein will become effective upon entry of the Interim Order and will remain in effect with respect to the interim period in the event final relief is denied.

30139789.1

with products necessary for them to operate.  As a result, in the ordinary course of their businesses, the Debtors pay these foreign, non-debtor affiliates in their capacities as suppliers of these goods and related services.  Through the Cash Management Motion, the Debtors have sought authority to continue their ordinary course practices with their foreign, non-debtor affiliates and to continue to make payments to them.  By this Motion, the Debtors seek authority to use Cash Collateral to make such payments, subject to and in accordance with the Approved Budget and any future budget governing the usage of cash collateral in these Chapter 11 Cases.

(f) *Liens, Cash Payments, or Other Adequate Protection To Be Provided to Each Entity with an Interest in Cash Collateral.*

As adequate protection, the Interim Order contemplates offering Prepetition Secured Parties the following (collectively, the "Adequate Protection Obligations"):

**Replacement Liens**.  Cerberus, for its own benefit and the benefit of the Prepetition Secured Lenders, is granted, to the extent of any Diminution in Value, (valid, effective and fully perfected upon the date of entry of this Interim Order and without the necessity of execution by the Debtors of mortgages, security agreements, pledge agreements, financing statements, and other agreements or instruments) postpetition security interests in and liens in all property, assets or interests in property or assets of the Debtors and each Debtor's "estate" (as defined in the Bankruptcy Code) (in each case, whether now existing or hereafter acquired, and all proceeds thereof), including, for the avoidance of doubt, the Cash Collateral and the Debtor Professional Escrow (as defined below), provided that any liens on proceeds and property recovered in respect of claims and causes of action arising under sections 544, 545, 547, 548, 549, and 550 of the Bankruptcy Code shall be subject to entry of the Final Order (such postpetition security interests and liens, the "Replacement Liens" and such collateral, the "Adequate Protection Collateral").

**Superpriority Claims**.  Cerberus, for its own benefit and the benefit of the Prepetition Secured Lenders, to the extent of any Diminution in Value, is granted superpriority administrative expense claims under section 507(b) of the Bankruptcy Code (the "Superpriority Claims") against the Debtors' estates, having  priority over any and all other claims against the Debtors, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kinds specified in or arising or ordered under sections 105(a), 326, 328, 330, 331, 363, 503(b), 506(c), 507, 546(c), 726, 1113, and 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed claims shall be payable from and have recourse to all prepetition and postpetition property of the Debtors and all proceeds thereof.

**Postpetition Fees and Expenses**. The Debtors shall pay to Cerberus the reasonable and documented fees (including reasonable and documented attorneys' fees), and other out-of-pocket expenses incurred by Cerberus from the Petition Date through the Budget Period up to an aggregate amount of $900,000 (the "Lender Professional Fees"). The amount of the Lender Professional Fees actually paid, shall be applied to reduce the principal balance of the secured Prepetition Obligations only if it is later established that the Prepetition Secured Lenders are undersecured. None of such fees, costs, expenses or other amounts shall be subject to Court approval (subject to the limitations below) or U.S. Trustee guidelines, and no recipient of any such payment shall be required to file with respect thereto any interim or final fee application with this Court; *provided, however*, that copies of invoices in summary form for Lender Professional Fees shall be provided contemporaneously to counsel to the Debtors, the U.S. Trustee and counsel to any Committee. If any party objects to the reasonableness of the fees and expenses of Prepetition Secured Parties, such objection shall be asserted within ten (10) days of receipt of such invoice, and if such objection cannot be resolved within ten (10) days of receipt of such invoices, the objecting party shall file with the Court and serve on counsel for Cerberus an objection limited to the reasonableness of such fees and expenses (each, a "Reasonableness Fee Objection"). Any hearing on a Reasonableness Fee Objection, regarding payment of any fees, costs, and expenses set forth in a professional fee invoice shall be limited to the reasonableness of the particular items or categories of the fees, costs, and expenses, in each case which are the subject of such objection. The Debtors shall pay in accordance with the terms and conditions of this Interim Order within ten (10) days after receipt of the applicable invoice (a) the full amount invoiced if no objection has been timely filed, and (b) the undisputed fees, costs, and expenses reflected on any invoice to which a Reasonableness Fee Objection has been timely filed.

**Payment of Postpetition Interest**. To the extent it is later determined by an order of the Court that the Prepetition Obligations were oversecured, interest shall accrue on all of the outstanding Prepetition Obligations at the default rate from and after the Petition Date.

**Interim Payment**. The Debtors shall pay $300,000 to the Prepetition Secured Parties on or about March 6, 2023 (the "Interim Payment") as additional adequate protection, which amount shall be applied to Prepetition Obligations if it is later established by a final order of this Court or another court of competent jurisdiction that the Prepetition Secured Lenders are undersecured. Additional payments shall be subject to further order of this Court and the Parties' rights as to such payments are expressly reserved.

(g) *Restriction on Use of Funds*.

The Interim Order provides that estate funds may not be used to prosecute or support any action that has the effect of preventing, hindering, or delaying (whether directly or indirectly) the Prepetition Secured Parties in respect of their liens and security interests in the Adequate Protection Collateral or the Prepetition Collateral or any of their rights,

powers, or benefits hereunder or in the Financing Agreement anywhere in the world, except that the Committee, if any, may use up to $25,000 of the Cash Collateral to investigate and challenge the Prepetition Secured Parties' liens and security interests.

(h) *Events of Default*.

The Interim Order provides that the following shall constitute an Event of Default:

    i.    The Debtors fail to make any payment required under this Interim Order after such payment becomes due under the terms hereof;

    ii.    the Debtors fail to comply in any material respect with any covenant, agreement, or provision of this Interim Order;

    iii.    any Debtor uses Cash Collateral to fund any payments in respect of prepetition or postpetition claims other than (i) as permitted under this Interim Order or any other order of the Court consented to by Cerberus; or (ii) as otherwise expressly contemplated by the Approved Budget;

    iv.    this Interim Order ceases, for any reason, to be in full force and effect in any respect, or the Replacement Liens or the Superpriority Claims created by this Interim Order cease in any respect to be enforceable and of the same effect and priority purported to be created hereby;

    v.    the Court shall have entered an order amending, supplementing or otherwise modifying this Interim Order without the consent of Cerberus;

    vi.    the Court (or any court of competent jurisdiction) enters an order dismissing any of these Chapter 11 Cases;

    vii.    the Court (or any court of competent jurisdiction) enters an order converting any of these Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code;

    viii.    the appointment under section 1104 of the Bankruptcy Code of a trustee or an examiner with expanded powers; or

    ix.    any Debtor files a motion seeking or otherwise supports an effort to secure the occurrence of any of the events described in clauses e through h above.

(i) *Findings of Fact Regarding Prepetition Liens*.

The Interim Order provides for findings of fact with respect to the validity, perfection, and amount of the Prepetition Secured Lenders' Prepetition Liens, subject to an investigation period of at least seventy-five (75) days from the date of the Interim Order.

(j)  *Modifications of the Automatic Stay.*

The Interim Order provides that the automatic stay under section 362 of the Bankruptcy Code shall be deemed modified and vacated to the extent necessary to permit Cerberus and the other Prepetition Secured Parties to exercise the rights and remedies available under the Financing Agreement, this Interim Order or applicable law, including without limitation, foreclosing upon and selling all or a portion of the Prepetition Collateral or Adequate Protection Collateral in order to collect the Adequate Protection Obligations.

(k)  *Liens on Avoidance Actions.*

Replacement Liens on proceeds and property recovered in respect of claims and causes of action arising under sections 544, 545, 547, 548, 549, and 550 of the Bankruptcy Code shall be subject to entry of the Final Order.

(l)  *Section 506(c) Waiver.*

Subject to entry of the Final Order, the Interim Order provides for a waiver of the Debtors' rights pursuant to section 506(c) of the Bankruptcy Code.

(m) *Section 552(b) Waiver.*

Subject to entry of the Final Order, the Interim Order provides for a waiver the application of the "equities of the case" exception pursuant to section 552(b)(1) of the Bankruptcy Code.

(n)  *Marshalling Waiver.*

Subject to entry of the Final Order, the Interim Order provides that the Prepetition Secrued Parties are released from any application of the equitable doctrine of "marshalling" or any other similar doctrine with respect to any of the Prepetition Collateral.

13.  Pursuant to Local Rule 4001-2, the Debtors state that none of the provisions identified in Local Rule 4001-2(a)(i) are included in the proposed Interim Order other than as set forth above.

## BASIS FOR RELIEF REQUESTED

14.  Section 363 of the Bankruptcy Code governs the debtors' use of property of the estate.  Section 363(c)(1) of the Bankruptcy Code provides:

If the business of the debtor is authorized to be operated under Section . . . 1108 . . . of this title and unless the court orders otherwise, the trustee may enter into transactions, including the

sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing.

11 U.S.C. § 363(c)(1). Section 363(c)(2) of the Bankruptcy Code, however, provides an exception to the general grant of authority to use property of the estate in the ordinary course set forth in section 363 of the Bankruptcy Code with respect to "cash collateral." Specifically, a trustee or debtor-in-possession may not use, sell, or lease "cash collateral" under subsection (c)(1) unless:

(A)    each entity that has an interest in such collateral consents; or
(B)    the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section.

11 U.S.C. § 363(c)(2).

15.    During the ordinary course of operations, the Debtors generate cash from the use of the Cash Collateral. The Debtors need the proposed use of Cash Collateral in order to fund the ordinary course of their business operations and to administer the Chapter 11 Cases while they pursue prompt consummation of a value-maximizing bankruptcy plan.

16.    If the Debtors are unable to obtain sufficient operating liquidity to meet their postpetition obligations on a timely basis, a permanent and irreplaceable loss of business will occur, causing a loss of value to the detriment of the Debtors and their creditors. This potential loss of revenue and going concern value would be extremely harmful to the Debtors, their estates, and their creditors at this critical juncture. *See, e.g.*, *In re Global Safety Textiles Holdings LLC*, 2009 WL 7834657, at *4 (Bankr. D. Del. July 30, 2009), *aff'd as modified by* 2009 WL 7834658 (Bankr. D. Del. Sept. 21, 2009) (finding good cause for the use of cash collateral based on the debtors' immediate need to use cash collateral to continue operation of their businesses and maintain business relationships with vendors).

17.     The Debtors submit that, under these circumstances, their request to use Cash Collateral should be approved.  The only parties with a material interest in the prepetition Cash Collateral—namely the Prepetition Secured Parties—consent to the use of Cash Collateral. Absent such authority, the Debtors would not have access to any additional liquidity, which would imperil their ability to continue operations and could substantially impair the value of their assets as they attempt to deleverage their balance sheet during the Chapter 11 Cases.  On the other hand, allowing the Debtors to use Cash Collateral and, by extension, sustain their business operations will permit the Debtors to implement a bankruptcy strategy that will preserve and maintain value and yield the highest recovery for their estates and their creditors.

18.     Accordingly, with the consent of the Prepetition Secured Parties, the Debtors seek to use Cash Collateral existing on or after the Petition Date that may be subject to the Prepetition Secured Parties' liens in accordance with the Approved Budget and any future budget governing the usage of cash collateral in these Chapter 11 Cases.

## SATISFACTION OF BANKRUPTCY RULE 6003

19.     Pursuant to Bankruptcy Rule 6003(b), any motion seeking to use property of the estate pursuant to section 363 of the Bankruptcy Code or to satisfy prepetition claims within twenty-one days of the Petition Date requires the Debtors to demonstrate that such relief "is necessary to avoid immediate and irreparable harm."  As described herein and in the Pinson Declaration, the Debtors will suffer immediate and irreparable harm without the Court's authorization to use the Cash Collateral.  If the relief is not granted, the Debtors' ability to continue to operate and pay their administrative expenses will be significantly disrupted, which will have a disastrous effect on the Debtors' operations.

20.     For this reason and those set forth above, the Debtors respectfully submit that Bankruptcy Rule 6003(b) has been satisfied and that the relief requested herein is necessary to avoid immediate and irreparable harm to the Debtors and their estates.

## INTERIM APPROVAL IS APPROPRIATE

21.     Bankruptcy Rule 4001(b)(2) provide that a final hearing on a motion for authorization to use Cash Collateral pursuant to section 363 of the Bankruptcy Code may not be commenced earlier than fourteen days after the service of such motion.  Upon request, however, a bankruptcy court is empowered to conduct a preliminary expedited hearing on the motion and authorize the obtaining of credit to the extent necessary to avoid immediate and irreparable harm to the Debtors' estates.  *See* Fed. R. Bankr. P. 4001(b)(2).

22.     The Debtors request that the Court authorize them, on an interim basis pending the Final Hearing, to use the Cash Collateral in accordance with the Approved Budget. As discussed above, this relief will enable the Debtors to operate their businesses in a manner that will permit them to preserve and maximize value and thereby avoid immediate and irreparable harm and prejudice to their estates and all parties in interest, pending the Final Hearing.  Absent interim approval of this Motion, the Debtors' businesses would suffer immediate and irreparable harm, including but not limited to the likely loss of hundreds of jobs and conversion to chapter 7.

## REQUEST FOR FINAL HEARING

23.     Pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2), the Debtors request that the Court set a date for the Final Hearing that is as soon as practicable, and in no event after thirty (30) days after the Petition Date, and fix the time and date prior to the Final Hearing for parties to file objections to this Motion.

## **RESERVATION OF RIGHTS**

24.     Nothing contained in this Motion or any actions taken pursuant to any order granting the relief requested by this Motion is intended or shall be construed as: (a) an admission as to the validity of any claim against a Debtor entity or the existence of any lien against the Debtors' property; (b) a waiver of the Debtors' rights to dispute any claim or lien on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim would constitute an allowed claim; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to this Motion are valid, and the Debtors expressly reserve their rights to contest the extent, validity, or perfection or seek avoidance of any or all such liens.

## **NOTICE**

25.     Notice of the hearing of this Motion shall be provided to:  (i) the U.S. Trustee for the District of Delaware; (ii) the Office of the United States Attorney General for the District of Delaware; (iii) counsel for Cerberus Business Finance, LLC, as the Prepetition Agent for the Prepetition Secured Lenders; (iv) the holders of the twenty largest unsecured claims against the Debtors on a consolidated basis; and (v) all parties that have filed a notice of appearance and request for service of papers pursuant to Bankruptcy Rule 2002 (collectively, the "Notice Parties"). As this Motion is seeking "first day" relief, within two business days of the hearing on this Motion, the Debtors will serve copies of this Motion and any order entered with respect to this Motion as required by Local Rule 9013-1(m).  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

WHEREFORE, the Debtors respectfully request that this Court: (i) consider the Motion on an expedited basis; (ii) grant the Interim Order, substantially in the form attached as **Exhibit A** hereto, authorizing the Debtors to use Cash Collateral on an interim basis and setting the Motion for a final hearing; and (iii) grant such other and further relief as the Court may deem just and proper.

Dated: February 21, 2023          YOUNG CONAWAY STARGATT &
       Wilmington, Delaware          TAYLOR, LLP

                                           */s/ Michael R. Nestor*
                                           Michael R. Nestor (DE Bar No. 3526)
Andrew L. Magaziner (DE Bar No. 5426)
1000 North King Street
Rodney Square
Wilmington, Delaware 19801-6108
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
Email: mnestor@ycst.com
        amagaziner@ycst.com

      -and-

Kathryn A. Coleman
Christopher Gartman
Erin E. Diers
Elizabeth A. Beitler
HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, NY 10004-1482
Telephone: (212) 837-6000
Facsimile: (212) 422-4726
Email: katie.coleman@hugheshubbard.com
       chris.gartman@hugheshubbard.com
       erin.diers@hugheshubbard.com
       elizabeth.beitler@hugheshubbard.com

*Proposed Counsel for the Debtors*

**<u>EXHIBIT A</u>**

**Interim Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| *In re* | **Chapter 11** |
| **STANADYNE LLC,** *et al.,*[1] | **Case No. 23-10207 (JTD)** |
| **Debtors.** | **(Joint Administration Requested)** |

**INTERIM ORDER (I) AUTHORIZING THE USE OF CASH COLLATERAL,
(II) GRANTING ADEQUATE PROTECTION TO PREPETITION
SECURED LENDERS, AND (III) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors-in-possession

(the "Debtors") pursuant to sections 105, 361, 362, 363 and 507 of the Bankruptcy Code, and

Rules 2002, 4001, 6004, and 9014 of the Bankruptcy Rules, and the Local Rules, for entry of this

interim order ("Interim Order") and entry of the Final Order (as defined below) by the Court:

(i)       authorizing the Debtors to use Cash Collateral on the terms set forth in this Interim

Order;

(ii)      granting adequate protection as set forth in this Interim Order;

(iii)     modifying the automatic stay imposed by Bankruptcy Code section 362 to the

extent necessary to implement and effectuate the terms and provisions of this Interim Order;

(iv)     waiving any applicable stay (including under Bankruptcy Rules 4001 and 6004);

---

1. The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number are:  Stanadyne LLC (0378); Pure Power Technologies, Inc. (5202); Stanadyne PPT Holdings, Inc. (2594); and Stanadyne PPT Group Holdings, Inc. (1734).  The Debtors' headquarters are located at 405 White Street, Jacksonville, North Carolina 28546.

2. Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

(v)       authorizing the Debtors to use Cash Collateral during the period commencing on the date of the Court's entry of this Interim Order and ending on the earlier of (a) the date the Court enters its order approving the requested relief on a final basis (the "Final Order") and (b) the date on which the Debtors' right to use Cash Collateral terminates under the terms of this Interim Order; and

(vi)      scheduling a final hearing (the "Final Hearing") to consider entry of the Final Order granting the relief requested in the Motion on a final basis.

The Interim Hearing on the Motion having been held on February 22, 2023; and based upon all of the pleadings filed with the Court, the evidence presented at the Interim Hearing and the entire record herein; and the Court having heard and resolved or overruled all objections to the interim relief requested in the Motion; and the Court having noted the appearances of all parties-in-interest; and it appearing that the relief requested in the Motion is in the best interests of the Debtors, their estates, and their creditors, and other parties-in-interest; and the Debtors having provided sufficient notice of the Motion as set forth in the Motion and it appearing that no further or other notice of the Motion need be given; and after due deliberation and consideration, and sufficient cause appearing therefor:

**BASED ON THE RECORD ESTABLISHED AT THE INTERIM HEARING, THE BANKRUPTCY COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**

A.       <u>Jurisdiction; Venue</u>. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012. The Debtors have confirmed their consent, pursuant to Bankruptcy Rule 7008, to the entry of a final order by the Bankruptcy Court in connection with the Motion to the extent that it is later determined that the Court, absent

consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The bases for the relief requested herein are sections 105, 361, 362, 363, and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6004, and 9014, and the Local Bankruptcy Rules.

B.     <u>Irreparable Harm</u>. The interim relief granted herein is necessary to avoid immediate and irreparable harm to the Debtors and the Debtors' estates as more fully set forth below.

C.     <u>Cash Collateral</u>. The Debtors require the use of Cash Collateral to operate their businesses and pay certain prepetition obligations.

D.     <u>Prepetition Secured Parties, Prepetition Collateral and the Prepetition Obligations</u>. Without prejudice to the rights of any non-Debtor party in interest, the Debtors admit, stipulate, acknowledge and agree that (a) as of the Petition Date, the Debtors were parties to that certain Financing Agreement, dated as of May 2, 2017 (as amended, amended and restated, supplemented, or otherwise modified from time to time, the "<u>Financing Agreement</u>") with Cerberus Business Finance, LLC ("<u>Cerberus</u>"), as administrative agent and collateral agent for certain revolver and term loan lenders (the "<u>Prepetition Senior Lenders</u>" and together with Cerberus, the "<u>Prepetition Secured Parties</u>"), (b) the Financing Agreement provides that (1) the Debtors are obligated for principal, accrued and unpaid interest, fees, costs, expenses, indemnities and other amounts arising under the Loan Documents (as defined in the Financing Agreement) (the "<u>Prepetition Obligations</u>"), and (2) all of the Prepetition Obligations are secured by first-priority liens (the "<u>Prepetition Liens</u>") on substantially all of the Debtors' assets (the "<u>Prepetition Collateral</u>"), and (c) as of the Petition Date, the outstanding Prepetition Obligations include terms loans with an aggregate outstanding principal balance of not less than $248,488,344.84 and revolving loans with an aggregate outstanding principal balance of not less than $25,000,000, for a total outstanding

principal balance of not less than $273,488,344.84. The Debtors further acknowledge, agree and stipulate that (a) the Prepetition Liens (1) are valid, binding, enforceable and perfected liens in the Prepetition Collateral, (2) were granted to Cerberus for the benefit of the Prepetition Senior Lenders for fair consideration and reasonably equivalent value, (3) are not subject to avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law, and (4) are subject and subordinate only to valid, perfected and unavoidable liens permitted under the applicable Loan Documents, but only to the extent that (x) such liens are permitted by the applicable Loan Documents to be senior to the applicable Prepetition Liens and (y) such liens are actually senior to the applicable Prepetition Liens under applicable law, and (b)(1) all of the Prepetition Obligations constitute legal, valid and binding obligations of the Debtors, enforceable in accordance with the terms of the applicable Loan Documents, (2) no setoffs, recoupments, offsets, defenses or counterclaims to any of the Prepetition Obligations exist, and (3) no portion of the Prepetition Obligations or any payments made to or for the benefit of the Prepetition Secured Parties are subject to avoidance, recharacterization, recovery, subordination, attack, offset, counterclaim, defense or "claim" (as defined in the Bankruptcy Code) of any kind pursuant to the Bankruptcy Code or applicable non-bankruptcy law. The foregoing acknowledgments by Debtors of the Prepetition Obligations and the rights, priorities and protections granted to the Prepetition Secured Parties pursuant to the Loan Documents shall be deemed a timely filed proof of claim on behalf of the Prepetition Secured Parties in these Chapter 11 Cases, and neither Cerberus nor the Prepetition Senior Lenders shall be required to file any additional proofs of claim with respect to the Prepetition Obligations.

E.      Adequate Protection. The Adequate Protection Obligations (as defined below) are intended to protect the interests of the Prepetition Secured Parties in the Prepetition Collateral,

subject to the rights of the Prepetition Secured Parties to request additional adequate protection as provided herein.

F.   <u>Immediate Entry of Interim Order</u>. The Debtors have requested immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(b)(2), upon notice provided as set forth in the Motion, which is, in the Debtors' belief, the best available under the circumstances.  The permission granted herein to utilize Cash Collateral is necessary to avoid immediate and irreparable harm to the Debtors.  The Debtors have an immediate need to use Cash Collateral to permit the orderly continuation of the operation of their businesses.  The Debtors do not have sufficient available sources of working capital and financing to carry on the operation of their businesses without the Debtors' continued ability to use Cash Collateral.  Among other things, entry of the Order will minimize disruption of the Debtors' businesses and operations and permit them to pay their operating expenses, subject to the Approved Budget, including, without limitation, to retain their employees, maintain business relationships with their vendors, and maintain customer and vendor confidence by demonstrating an ability to maintain operations. Based upon the foregoing findings, acknowledgements, and conclusions, and upon the record made before the Bankruptcy Court at the Interim Hearing, and good and sufficient cause appearing therefor;

**IT IS HEREBY ORDERED:**

1.   <u>Disposition</u>. The Motion is granted on an interim basis and on the terms set forth herein.  Any objections to the Motion that have not previously been withdrawn, waived, settled, or resolved and all reservations of rights included therein are hereby denied and overruled on their merits, but without prejudice to relief that may be granted on a final basis.

2.    <u>Effectiveness</u>. This Interim Order shall constitute findings of fact (subject to the terms set forth herein) and conclusions of law and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon entry hereof.  Notwithstanding Bankruptcy Rule 4001(a)(3) or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Interim Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Interim Order.

3.    <u>Authorization to Use Cash Collateral</u>.  Pursuant to the terms and conditions of this Interim Order, and in accordance with the Approved Budget (subject to the Permitted Variance) (each as defined below), the Debtors are authorized to use Cash Collateral to pay their fees, costs and expenses in the ordinary course during their Chapter 11 Cases through the Termination Date (as defined below).

(a)    <u>*Budget*</u>.  Attached hereto as **Exhibit 1** and incorporated by reference is the "<u>Approved Budget</u>" setting forth a budget through and including March 19, 2023 (the "<u>Budget Period</u>"), which reflects on a line-item basis the Debtors' anticipated disbursements through such date.  All disbursements of Cash Collateral by the Debtors pursuant to the terms of this Interim Order must be pursuant to the Approved Budget, subject to a permitted variance of 15% per budget line item on a monthly basis (the "<u>Permitted Variance</u>") (<u>provided</u> that there shall be no upward variance on Debtor Professional Fees (as defined below)).  The Debtors may use Cash Collateral only to satisfy items in the Approved Budget and only in the amounts provided in the Approved Budget, subject to the Permitted Variance.  The Approved Budget may only be modified with Cerberus' prior consent.  The Debtors have reason to believe that the Approved Budget will be adequate, considering all available assets, to pay all administrative expenses due or accruing during the period covered by the Approved Budget.

(b)      *Cash Management*.  While this Interim Order remains in effect, the Debtors shall continue to deposit all collections, receipts, and other Cash Collateral in deposit accounts that are subject to Control Agreements (as defined in the Financing Agreement) in favor of Cerberus. The Debtors will not use any funds made available to them except as specified in the Budget.

4.      Adequate Protection.  In consideration for the Debtors' use of Cash Collateral, and as protection against the possibility of diminution in value of the Prepetition Secured Parties' interest in the Prepetition Collateral (the "Diminution in Value"), whether or not such Diminution in Value results from the sale, lease or use by the Debtors of the Prepetition Collateral (including, without limitation, Cash Collateral) or the stay of enforcement of any Prepetition Liens arising from section 362 of the Bankruptcy Code, or otherwise, the Prepetition Secured Parties shall receive the following (collectively, the "Adequate Protection Obligations"):

(a)      *Replacement Liens*.  Cerberus, for its own benefit and the benefit of the Prepetition Secured Lenders, is granted, to the extent of any Diminution in Value, (valid, effective and fully perfected upon the date of entry of this Interim Order and without the necessity of execution by the Debtors of mortgages, security agreements, pledge agreements, financing statements, and other agreements or instruments) postpetition security interests in and liens in all property, assets or interests in property or assets of the Debtors and each Debtor's "estate" (as defined in the Bankruptcy Code) (in each case, whether now existing or hereafter acquired, and all proceeds thereof), including, for the avoidance of doubt, the Cash Collateral and the Debtor Professional Escrow (as defined below), provided that any liens on proceeds and property recovered in respect of claims and causes of action arising under sections 544, 545, 547, 548, 549, and 550 of the Bankruptcy Code shall be subject to entry of the Final Order (such postpetition

security interests and liens, the "Replacement Liens" and such collateral, the "Adequate Protection Collateral").

(b)     *Superpriority Claims*.  Cerberus, for its own benefit and the benefit of the Prepetition Secured Lenders, to the extent of any Diminution in Value, is granted superpriority administrative expense claims under section 507(b) of the Bankruptcy Code (the "Superpriority Claims") against the Debtors' estates, having  priority over any and all other claims against the Debtors, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kinds specified in or arising or ordered under sections 105(a), 326, 328, 330, 331, 363, 503(b), 506(c), 507, 546(c), 726, 1113, and 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed claims shall be payable from and have recourse to all prepetition and postpetition property of the Debtors and all proceeds thereof.

(c)     *Postpetition Fees and Expenses*.  The Debtors shall pay to Cerberus the reasonable and documented fees (including reasonable and documented attorneys' fees), and other out-of-pocket expenses incurred by Cerberus from the Petition Date through the Budget Period up to an aggregate amount of $900,000 (the "Lender Professional Fees").  The amount of the Lender Professional Fees actually paid, shall be applied to reduce the principal balance of the secured Prepetition Obligations only if it is later established that the Prepetition Secured Lenders are undersecured.  None of such fees, costs, expenses or other amounts shall be subject to Court approval (subject to the limitations below) or U.S. Trustee guidelines, and no recipient of any such payment shall be required to file with respect thereto any interim or final fee application with this Court; *provided, however*, that copies of invoices in summary form for Lender Professional Fees shall be provided contemporaneously to counsel to the Debtors, the U.S. Trustee and counsel to

any Committee. If any party objects to the reasonableness of the fees and expenses of Prepetition Secured Parties, such objection shall be asserted within ten (10) days of receipt of such invoice, and if such objection cannot be resolved within ten (10) days of receipt of such invoices, the objecting party shall file with the Court and serve on counsel for Cerberus an objection limited to the reasonableness of such fees and expenses (each, a "Reasonableness Fee Objection"). Any hearing on a Reasonableness Fee Objection, regarding payment of any fees, costs, and expenses set forth in a professional fee invoice shall be limited to the reasonableness of the particular items or categories of the fees, costs, and expenses, in each case which are the subject of such objection. The Debtors shall pay in accordance with the terms and conditions of this Interim Order within ten (10) days after receipt of the applicable invoice (a) the full amount invoiced if no objection has been timely filed, and (b) the undisputed fees, costs, and expenses reflected on any invoice to which a Reasonableness Fee Objection has been timely filed.

(d)     *Payment of Postpetition Interest.* To the extent it is later determined by an order of the Court that the Prepetition Obligations were oversecured, interest shall accrue on all of the outstanding Prepetition Obligations at the default rate from and after the Petition Date.

(e)     *Reservation of Rights.* Notwithstanding any other provision hereof to the contrary, the grant of Adequate Protection Obligations to the Prepetition Secured Parties pursuant hereto is without prejudice to the right of the Prepetition Secured Parties to seek different or additional adequate protection, including without limitation the current payment of postpetition interest (at the applicable default rate), to seek payments under section 506(b) of the Bankruptcy Code when this Interim Order or the Final Order, as applicable, is no longer in effect, or to withdraw their consent to any further use of Cash Collateral. Nothing herein shall preclude the Prepetition Secured Parties from asserting any additional claims, secured or unsecured, against the

Debtors, their affiliates, or any other party under the Bankruptcy Code or applicable nonbankruptcy law. Except as expressly provided herein, nothing contained in this Interim Order (including without limitation, the authorization to use any Cash Collateral) shall impair or modify any rights, claims or defenses available in law or equity to the Prepetition Secured Parties. Nothing in this Interim Order shall constitute an admission that the Prepetition Secured Parties are not entitled to payment or allowance of claims under section 506(b) of the Bankruptcy Code.

5.    <u>Additional Provisions Regarding the Adequate Protection Obligations</u>.

(a)    The Replacement Liens shall cover all property and assets of the Debtors and their estates (now or hereafter acquired and all proceeds thereof), including property or assets, if any, that does not secure the Prepetition Obligations.

(b)    Except as provided in this Interim Order, the Replacement Liens shall not at any time be (i) made subject or subordinated to, or made *pari passu* with any other lien, security interest or claim existing as of the Petition Date, or created under sections 363 or 364(d) of the Bankruptcy Code or otherwise or (ii) subject to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code.

(c)    Subject to entry of the Final Order, any provision of any lease, loan document, easement, use agreement, proffer, covenant, license, contract, organizational document, or other instrument or agreement that requires the consent or approval of one or more landlords, licensors, or other parties, or requires the payment of any fees or obligations to any governmental entity, non-governmental entity or any other person, in order for any of the Debtors to pledge, grant, mortgage, sell, assign, or otherwise transfer any fee or leasehold interest or the proceeds thereof or other collateral, shall have no force or effect with respect to the transactions granting Cerberus, for the benefit of the Prepetition Senior Lenders, a priority security interest in such fee,

leasehold or other interest or other collateral or the proceeds of any assignment, sale or other transfer thereof, by any of the Debtors.

(d)     Unless expressly provided otherwise herein, the Replacement Liens, Superpriority Claims, and other rights, benefits, and remedies granted under this Interim Order to the Secured Parties, shall continue in these Chapter 11 Cases, in any superseding case or cases under the Bankruptcy Code (including without limitation any case under chapter 7 of the Bankruptcy Code) (a "Superseding Case"), and following any dismissal of the Chapter 11 Cases, and such liens and claims shall maintain their priority as provided in this Interim Order until all Adequate Protection Obligations been indefeasibly paid in full in cash and completely satisfied.

(e)     Notwithstanding anything to the contrary herein, the reasonable and documented fees, costs and out-of-pocket expenses of the Prepetition Secured Parties, whether incurred prior to or after the Petition Date, shall be deemed fully earned, nonrefundable, irrevocable, and non-avoidable as of the date of this Interim Order. All unpaid fees, costs, and expenses shall be included and constitute part of the Superpriority Claims and be secured by the Replacement Liens.

6.     Perfection of Replacement Liens.

(a)     This Interim Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of the Replacement Liens, without the necessity of filing or recording any financing statement or other instrument or document which may otherwise be required under the law or regulation of any jurisdiction or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement) to validate or perfect (in accordance with applicable non-bankruptcy law) the Replacement Liens, or to entitle Cerberus and the other Prepetition Secured Parties to the priorities granted herein.

(b)    Without limiting the foregoing subparagraph, the Prepetition Secured Parties are hereby authorized, but not required, to file or record financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments in any jurisdiction, or take possession of or control over, or take any other action in order to validate and perfect the liens and security interests granted to them hereunder, in each case without the necessity to pay any mortgage recording fee or similar fee or tax.  Whether or not the Prepetition Secured Parties shall, in their sole discretion, choose to file such financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments, or take possession of or control over, or otherwise confirm perfection of the liens and security interests granted to it hereunder, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable, and not subject to challenge dispute or subordination (except as specified herein), at the time and on the date of entry of this Interim Order.  The Debtors shall, if requested, execute and deliver to the Prepetition Secured Parties all such agreements, financing statements, instruments and other documents as the Prepetition Secured Parties may reasonably request to more fully evidence, confirm, validate, perfect, preserve, and enforce the Replacement Liens. All such documents will be deemed to have been recorded and filed as of the Petition Date.

(c)    A certified copy of this Interim Order may, in the discretion of the Prepetition Secured Parties, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien, or similar instruments, and all filing offices are hereby directed to accept such certified copy of this Interim Order for filing and recording.

7.    <u>Interim Payment</u>.  The Debtors shall pay $300,000 to the Prepetition Secured Parties on or about March 6, 2023 (the "<u>Interim Payment</u>") as additional adequate protection,

which amount shall be applied to Prepetition Obligations if it is later established by a final order of this Court or another court of competent jurisdiction that the Prepetition Secured Lenders are undersecured. Additional payments shall be subject to further order of this Court and the Parties' rights as to such payments are expressly reserved.

8. <u>Debtor Professional Fees</u>. On or about March 6, 2023, the Debtors shall place into escrow an amount equal to the amount included in the Approved Budget for the fees and expenses of each professional or professional firm retained by the Debtors in these Chapter 11 Cases pursuant to sections 327, 328, 330, 363, or 1103 of the Bankruptcy Code (the "<u>Professional Persons</u>") for the period beginning on the Petition Date through and including February 28, 2023 (the "<u>Debtor Professional Escrow</u>"). Debtors agree that they will not seek payment of the fees and expenses of each Professional Person (the "<u>Debtor Professional Fees</u>") for the period between the Petition Date and March 19, 2023 that are in excess of amounts included in the Approved Budget, other than fees and expenses incurred, after consultation with Cerberus, to address unanticipated circumstances. All amounts in the Debtor Professional Escrow shall retain their character as Cash Collateral and be subject to the Replacement Liens. Fees and expenses incurred or accrued by each Professional Person during these Chapter 11 Cases and ultimately allowed and ordered by the Court, pursuant to sections 328, 330, 331 and 503 of the Bankruptcy Code or any order of the Court, may be paid from the Debtor Professional Escrow in accordance with such order of the Court.

9. <u>Minimum Cash Threshold</u>. The Debtor Professional Escrow shall not be paid or escrowed in full if the Debtors' available cash is at or below $5.75 million as of March 6, 2023 (the "<u>Minimum Cash Threshold</u>"); if available cash is below the Minimum Cash Threshold on that date, then the Debtor Professional Escrow shall be funded *pro rata* in a reduced amount calculated

based on the Debtors' actual cash balance as of March 6, 2023. None of the Prepetition Secured Parties shall be responsible for the payment or reimbursement of any fees or disbursements of any Professional Person incurred in connection with these Chapter 11 Cases or any successor cases under any chapter of the Bankruptcy Code. Nothing in this Interim Order or otherwise shall be construed to obligate the Prepetition Secured Parties, in any way, to pay compensation to, or to reimburse expenses of, any Professional Person or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.

10.     <u>Termination of Cash Collateral Authorization</u>.  Notwithstanding anything in this Interim Order to the contrary, the Debtors' authority to use Cash Collateral pursuant to this Interim Order shall automatically terminate without any further action by the Court, upon the earliest to occur of (such date, the "<u>Cash Collateral Termination Date</u>"):  (i) March 19, 2023, which date may be extended with the express written consent of Cerberus (which consent may be granted via electronic mail) and (ii) the occurrence of Termination Event.

11.     <u>Events of Default</u>.  The occurrence of any event identified in this Paragraph 11 hereof (each, an "<u>Event of Default</u>") shall constitute a "<u>Termination Event</u>" upon five (5) days following delivery of written notice, including notice by e-mail, by Cerberus to the Debtors, the Debtors' counsel, the U.S. Trustee and counsel to any Committees (such period of time, the "<u>Waiting Period</u>"), unless such Event of Default has been cured by the Debtors or waived in writing by Cerberus during the Waiting Period, <u>provided</u>, <u>however,</u> that there shall be no Waiting Period and a Termination Event shall automatically occur in the case of the events described in clauses d through i below.

a.      The Debtors fail to make any payment required under this Interim Order after such payment becomes due under the terms hereof;

b.      the Debtors fail to comply in any material respect with any covenant, agreement, or provision of this Interim Order;

c.      any Debtor uses Cash Collateral to fund any payments in respect of prepetition or postpetition claims other than (i) as permitted under this Interim Order or any other order of the Court consented to by Cerberus; or (ii) as otherwise expressly contemplated by the Approved Budget;

d.      this Interim Order ceases, for any reason, to be in full force and effect in any respect, or the Replacement Liens or the Superpriority Claims created by this Interim Order cease in any respect to be enforceable and of the same effect and priority purported to be created hereby;

e.      the Court shall have entered an order amending, supplementing or otherwise modifying this Interim Order without the consent of Cerberus;

f.      the Court (or any court of competent jurisdiction) enters an order dismissing any of these Chapter 11 Cases;

g.      the Court (or any court of competent jurisdiction) enters an order converting any of these Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code;

h.      the appointment under section 1104 of the Bankruptcy Code of a trustee or an examiner with expanded powers; or

i.      any Debtor files a motion seeking or otherwise supports an effort to secure the occurrence of any of the events described in clauses e through h above.

The Debtors shall promptly (and in no event any later than [two (2) Business Days] following occurrence) provide written notice by email to counsel to Cerberus (with a copy to counsel for the U.S. Trustee and any Committee) of the occurrence of any Event of Default.

12.     <u>Remedies Upon the Cash Collateral Termination Date</u>.  Upon the Cash Collateral Termination Date: (a) the Debtors' right to use Cash Collateral shall terminate, (b) all outstanding Adequate Protection Obligations shall become immediately due and payable, and (c) Cerberus and the other Prepetition Secured Parties may, within five (5) days after the occurrence of the Cash Collateral Termination Date, exercise the rights and remedies available under the Financing Agreement, this Interim Order or applicable law, including without limitation, foreclosing upon and selling all or a portion of the Prepetition Collateral or Adequate Protection Collateral in order to collect the Adequate Protection Obligations.  The automatic stay under Bankruptcy Code section

362 is hereby deemed modified and vacated to the extent necessary or appropriate to permit such actions. Notwithstanding the occurrence of the Cash Collateral Termination Date or anything herein, all of the rights, remedies, benefits and protections provided to the Prepetition Secured Parties under this Interim Order shall survive the Cash Collateral Termination Date.

13.    <u>Restriction on Use of Funds</u>.  Notwithstanding anything herein to the contrary, unless otherwise consented to by Cerberus in writing, no Adequate Protection Collateral, proceeds thereof, Cash Collateral (including the Debtor Professional Escrow), Prepetition Collateral, or proceeds thereof, may be used by any of the Debtors, their estates, any affiliate of the Debtors, any Committee, any trustee or examiner appointed in these Chapter 11 Cases or any chapter 7 trustee, or any other person, party or entity to, directly or indirectly, (a) request authorization to obtain postpetition financing (whether equity or debt) or other financial accommodations pursuant to section 364(c) or (d) of Bankruptcy Code, or otherwise; (b) prosecute or support any action that has the effect of preventing, hindering, or delaying (whether directly or indirectly) the Prepetition Secured Parties in respect of their liens and security interests in the Adequate Protection Collateral or the Prepetition Collateral or any of their rights, powers, or benefits hereunder or in the Financing Agreement anywhere in the world (<u>provided</u>, <u>however</u>, that the Committee, if any, may use up to $25,000 of the Cash Collateral to investigate and challenge the Prepetition Secured Parties' liens in accordance with paragraph 14 below); or (c) pay any claim of a prepetition creditor except as expressly allowed by this Interim Order or other order of the Court.

14.    <u>Investigation and Challenge Rights</u>.  The deadline for parties to investigate and challenge the Prepetition Secured Parties' liens and security interests in accordance with Del. Bankr. L.R. 4001-2 shall be at least seventy-five (75) days from the date of this Interim Order (the "<u>Investigation Termination Date</u>"), and the rights of all parties in accordance therewith are

expressly preserved.  Any claim incurred in connection with any activities described in this paragraph shall not constitute an allowed administrative expense claim for purposes of section 1129(a)(9)(A) of the Bankruptcy Code. Any assertion of claims or causes of action of the Debtors or their estates against any of the Prepetition Secured Parties by any party in interest must be made by commencing an adversary proceeding on or before the Investigation Termination Date.  Except with respect to any party who, with proper standing, files such an action on or before the Investigation Termination Date, all persons and entities shall be forever barred from bringing or taking such action against any of the Prepetition Secured Parties.

15.    <u>Necessary Action</u>.  The Debtors are authorized to take all such actions as are necessary or appropriate to implement the terms of this Interim Order.

16.    <u>Section 506(c) and Other Waivers</u>.  Subject to entry of the Final Order and the rights of all parties in interest, no costs or expenses of administration which have been or may be incurred in these Chapter 11 Cases at any time (including, without limitation, any costs and expenses incurred in connection with the preservation, protection, or enhancement of value by the Prepetition Secured Parties upon the Prepetition Collateral) shall be charged against any of the Prepetition Secured Parties, or any of the Prepetition Obligations or the Prepetition Collateral pursuant to sections 105 or 506(c) of the Bankruptcy Code or otherwise without the prior express written consent of the affected Prepetition Secured Parties, in their sole discretion, and no such consent shall be implied, directly or indirectly, from any other action, inaction, or acquiescence by any such agents or creditors (including, without limitation, the approval of any budget hereunder). Subject to entry of the Final Order and the rights of all parties in interest, the Prepetition Secured Parties are (i) entitled to all of the rights and benefits of Bankruptcy Code section 552(b) and the "equities of the case" exception shall not apply and (ii) released from any application of the

equitable doctrine of "marshalling" or any other similar doctrine with respect to any of the Prepetition Collateral.

17.    <u>Binding Effect of Final Order</u>.  Immediately upon entry of an order approving this Interim Order (notwithstanding any applicable law or rule to the contrary), the terms and provisions of this Interim Order shall be binding upon all parties in interest in these Chapter 11 Cases, including, without limitation, the Debtors, Cerberus, the Prepetition Secured Lenders, all other creditors of the Debtors, any Committee, and each of their respective successors and assigns (including any trustee appointed under chapter 7 or chapter 11 of the Bankruptcy Code or any other fiduciary hereafter appointed in any of the Chapter 11 Cases), and shall inure to the benefit of the Debtors, Cerberus, the Prepetition Secured Lenders, and each of their respective successors and assigns.

18.    <u>Reservation of Rights</u>.  The terms, conditions, and provisions of this Interim Order are in addition to and without prejudice to the rights of all parties.

19.    <u>No Waiver</u>. This Interim Order shall not be construed in any way as a waiver or relinquishment of any rights that the Debtors or the Prepetition Secured Parties may have to bring or be heard on any matter brought before the Court. Nothing herein shall preclude the Prepetition Secured Parties from asserting any additional claims, secured or unsecured, against the Debtors, their affiliates, or any other party under the Bankruptcy Code or applicable non-bankruptcy law. The rights of the Prepetition Secured Parties are expressly reserved and entry of this Interim Order shall be without prejudice to, and does not constitute a waiver, expressly or implicitly, of the following: (a) the Prepetition Secured Parties' rights under the Financing Agreement and all related documents; (b) the Prepetition Secured Parties' rights to seek any other or supplemental relief in respect of the Debtors; (c) any of the Prepetition Secured Parties' rights under the Bankruptcy

Code or under non-bankruptcy law; or (d) any other rights, claims, or privileges (whether legal, equitable, or otherwise) of the Prepetition Secured Parties.

20.    <u>Priority of Terms</u>. To the extent of any conflict between or among (a) the express terms or provisions of the Motion, any other order of the Court, or any other agreements, on the one hand, and (b) the terms and provisions of this Interim Order, on the other hand, unless such term or provision herein is phrased in terms of "as defined in" or "as more fully described in" such other document, the terms and provisions of this Interim Order shall govern. To the extent there is any inconsistency between this Interim Order and any order concerning the Debtors' cash management systems or bank accounts or any other "first day" relief, this Interim Order shall control.

21.    <u>No Third-Party Rights</u>.  Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any party, creditor, equity holder or other entity other than (i) Cerberus and the Prepetition Secured Lenders, (ii) the Debtors, and (iii) the respective successors and assigns of each of the foregoing.

22.    <u>Survival</u>.  Except as otherwise provided herein, (a) the protections afforded to Cerberus and the Prepetition Secured Lenders under this Interim Order, and any actions taken pursuant thereto, shall survive the entry of an order (i) dismissing any of the Chapter 11 Cases or (ii) converting the Chapter 11 Cases into a case pursuant to chapter 7 of the Bankruptcy Code.

23.    <u>Headings</u>.  Section headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this Interim Order.

24.    <u>Final Hearing Date</u>. The Final Hearing to consider the entry of the Final Order approving the relief sought in the Motion shall be held on [●], 2023 at [●:●] a.m. before the

30139751.1

19

Honorable John T. Dorsey at the United States Bankruptcy Court for the District of Delaware, 824 Market St., 5th Floor Courtroom, Wilmington, Delaware 19801.

25.      Adequate Notice. The notice given by the Debtors of the Interim Hearing was given in accordance with Bankruptcy Rules 2002 and 4001(b)(3), and the Local Bankruptcy Rules, and was adequate and sufficient.  Under the circumstances, no further notice of the request for the relief granted at the Interim Hearing is required.  The Debtors shall promptly mail copies of this Interim Order and notice of the Final Hearing to the Notice Parties, any known entity effected by the terms of the Final Order, and any other entity requesting notice after the entry of this Interim Order.  Any objection to the relief sought at the Final Hearing shall be made in writing setting forth with particularity the grounds thereof, and filed with the Bankruptcy Court and served so as to be actually received no later than seven (7) days prior to the Final Hearing by the following: (i) the Debtors, John Pinson, 405 White Street, Jacksonville, North Carolina 28546; (ii) proposed counsel to the Debtors, (a) Kathryn A. Coleman & Christopher Gartman, Hughes Hubbard & Reed LLP, One Battery Park Plaza, New York, New York 10004 and (b) Michael R. Nestor, Andrew L. Magaziner & Ashley E. Jacobs, Young Conaway Stargatt & Taylor, LLP, 1000 North King Street, Rodney Square, Wilmington, Delaware 19801-6108; (iii) counsel to Cerberus, Michael L. Tuchin & David A. Fidler, KTBS Law LLP, 1801 Century Park East, 26th Floor, Los Angeles, California 90067; (iv) counsel to the Committee, if any; (v) the Office of the United States Trustee for District of Delaware, Region 3, 844 King Street, Suite 2207, Wilmington, Delaware 19801, Attn: Jane M. Leamy; and (vi) any party that has requested notice pursuant to Bankruptcy Rule 2002, and shall be filed with the Clerk of the Bankruptcy Court.

26.      Retention of Jurisdiction.  The Court shall retain exclusive jurisdiction overall all matters pertaining to the implementation, interpretation, and enforcement of this Interim Order,

including following confirmation and consummation of any chapter 11 plan for any one or more of the Debtors.

**EXHIBIT 1**

**Approved Budget**

**Stanadyne LLC & Pure Power Technologies, Inc**
Interim Cash Collateral Budget
*As of February 21, 2023*

*$USD*

| Week --> | Week 1 | Week 2 | Week 3 | Week 4 | Total |
|---|---|---|---|---|---|
| From --> | 2/17/2023 | 2/27/2023 | 3/6/2023 | 3/13/2023 | |
| Week-Ending --> | 2/26/2023 | 3/5/2023 | 3/12/2023 | 3/19/2023 | 4-week [1] |
| Beginning Consolidated Cash Balance | $ 3,890,147 | $ 4,951,195 | $ 4,531,360 | $ 6,826,502 | $ 3,890,147 |
| | | | | | |
| Receipts | 2,867,639 | 3,006,784 | 6,674,911 | 3,656,329 | 16,205,664 |
| | | | | | |
| Disbursements | | | | | |
| Suppliers | (614,115) | (1,004,031) | (1,635,990) | (1,180,945) | (4,435,080) |
| Payroll & Benefits | (334,609) | (1,323,203) | (428,107) | (1,273,963) | (3,359,882) |
| Freight/Logistics | (98,307) | (55,105) | (56,751) | (56,894) | (267,057) |
| Tariffs (US Customs & Border Control) | (233,939) | - | - | - | (233,939) |
| Professionals (Normal Course) | - | (720) | (18,838) | (34,748) | (54,306) |
| Utilities | (154,621) | (60,632) | (90,504) | (146,366) | (452,122) |
| IT/ Technology | - | (6,165) | (27,169) | (27,257) | (60,591) |
| Rent | - | (106,071) | (5,000) | (5,000) | (116,071) |
| Insurance | - | (99,936) | (21,330) | (31,781) | (153,048) |
| Contractors | - | (5,629) | (36,545) | (36,625) | (78,800) |
| Taxes | - | (2,401) | (2,792) | (327,826) | (333,020) |
| Capex | - | (9,005) | (10,471) | (10,599) | (30,075) |
| Capital Leases | - | (17,838) | - | - | (17,838) |
| Other | (7,000) | (59,401) | (19,792) | (9,826) | (96,020) |
| Intercompany, Net | 135,000 | - | - | 200,000 | 335,000 |
| Total Disbursements | $ (1,307,591) | $ (2,750,139) | $ (2,353,289) | $ (2,941,832) | $ (9,352,850) |
| | | | | | |
| Net Operating Cash Flow | $ 1,560,048 | $ 256,646 | $ 4,321,622 | $ 714,498 | $ 6,852,813 |
| | | | | | |
| Claims Agent / UST Fees | - | - | - | - | - |
| Interim Payment | - | - | (300,000) | - | (300,000) |
| Restructuring Professionals (Escrow) re Feb 23 [2] | - | - | (1,050,000) | - | (1,050,000) |
| Critical Vendors / Foreign Vendor / WH Lien/ Shipping & Freight | (499,000) | (676,480) | (676,480) | (676,480) | (2,528,441) |
| | | | | | |
| Net Cash Flow | $ 1,061,048 | $ (419,835) | $ 2,295,142 | $ 38,017 | $ 2,974,372 |
| | | | | | |
| **Ending Consolidated Cash Balance** | $ 4,951,195 | $ 4,531,360 | $ 6,826,502 | $ 6,864,520 | $ 6,864,520 |
| | | | | | |
| Weekly Restructuring Accruals | $745,000 | $645,000 | ($590,000) | $460,000 | $1,260,000 |

**Notes**

[1] Beginning Consolidated Cash Balance as of 2/17/2023.

[2] Subject to provisions of Interim Order