# EXHIBIT A

# MASTER LEASE AGREEMENT
## dated as of May 26, 2022

**THIS MASTER LEASE AGREEMENT** (as amended, supplemented or otherwise modified from time to time, this "**Agreement**") is between Encina Equipment Finance SPV, LLC (together with its successors and assigns "**Lessor**") and each of Stanadyne LLC ("**Stanadyne**") and Pure Power Technologies, Inc. ("**PPT**" and with Stanadyne, each a "**Lessee**"). Lessor has an office at 1221 Post Road East, Westport CT 06880. Stanadyne is a limited liability company organized and existing under the laws of the State of Delaware. Stanadyne's chief executive office is 92 Deerfield Road, Windsor, CT 06095. PPT is a corporation organized and existing under the laws of the State of Delaware. PPT's chief executive office is 1410 Northpoint Blvd, Blythewood, SC 29016.

This Agreement contains the general terms that apply to the leasing of certain equipment and personal property ("**Equipment**") from Lessor to Lessee. Additional terms that apply to the Equipment and financial terms in relation to the lease of the Equipment (term, rent, options, etc.) shall be contained on an equipment schedule (each a "**Schedule**", and if more than one, collectively the "**Schedules**"). This Agreement together with a Schedule shall constitute the "**Lease**" for the Equipment subject to such Schedule. If any term set forth in a Schedule conflicts with any term of this Agreement, then the terms of the Schedule shall control. Capitalized terms used but not defined in this Agreement shall have the meanings assigned to such terms set forth in the applicable Schedule. Only Lessee named in a Schedule (and any Guarantor) shall be responsible for the obligations related to that Schedule, including the provisions of this Agreement incorporated by reference therein. For any representations, warranties and covenants contained in this Agreement, each of Stanadyne and PPT as Lessee makes the same only as to itself and not as to the other.

1.     **LEASING:**

       (a)     Subject to the terms and conditions set forth below, Lessor agrees to lease to Lessee, and Lessee agrees to lease from Lessor, the Equipment described in a Schedule signed by Lessor and Lessee.

       (b)     Lessor either shall purchase (i) Equipment from the manufacturer or supplier ("**Supplier**") or (ii) all of Lessee's rights, title and interests in and to the Equipment such that Lessor will become the owner of the Equipment for all purposes, and lease it to Lessee, if on or before the Lease Commencement Date (as defined herein), Lessor receives (i) an executed Schedule for the Equipment, (ii) evidence of insurance that complies with the requirements of Section 9 hereof, and (iii) such other documents as Lessor may reasonably request. Each of the documents required above must be in form and substance satisfactory to Lessor. Lessor hereby appoints Lessee its agent for inspection and acceptance of the Equipment from Supplier. Once the Schedule is signed, Lessee may not cancel the Lease.

2.     **TERM, RENT AND PAYMENT:**

       (a)     The rent ("**Rent**") payable for the Equipment and Lessee's right to use the Equipment shall begin on the date when Lessee accepts the Equipment under an executed Certificate of Acceptance ("**Lease Commencement Date**"). The term of the Lease for any Equipment shall commence on the Lease Commencement Date and shall continue (unless earlier terminated) pursuant to the provisions of the applicable Schedule (the "**Term**"). If any term is extended or renewed, the word "**Term**" shall be deemed to refer to all extended or renewal terms, and all provisions of this Agreement shall apply during any such extension or renewal terms, except as may be otherwise specifically provided in writing.

       (b)     Lessee shall pay Rent to Lessor at its address stated above, unless otherwise directed by Lessor. Each payment of Rent (each a "**Rent Payment**") shall be in the amount set forth in, payable at such intervals and due in accordance with the provisions of the applicable Schedule. If any Interim Rent and/or any Advance Rent is payable in respect of any Equipment, such Interim Rent and/or Advance Rent shall be set forth in the applicable Schedule and shall be due and payable in accordance with the terms of the Schedule. Upon Lessor's receipt of the Interim Rent and the Advance Rent, (i) the Interim Rent shall be applied to the Rent Payment due for the Interim Period, if any, set forth in the Schedule, and (ii) the Advance Rent shall be applied to the first Rent Payment due for the Basic Term, and (iii) the remaining balance, if any, shall be applied to the next scheduled Rent Payment(s) under such Schedule. In no

event shall any Interim Rent, Advance Rent or any other Rent Payments be refunded to Lessee unless otherwise required under applicable law. If Lessor does not receive from Lessee payment in full of any scheduled Rent Payment or any other sum due under any Lease within ten (10) days after its due date, Lessee shall pay, a late fee equal to five percent (5%) on such unpaid Rent Payment, but not exceeding any lawful maximum. Such late fee will be immediately due and payable and is in addition to any other costs, fees and expenses that Lessee may owe as a result of such late payment. For the sake of clarity, in the event that Lessor charges the Per Diem Interest Rate (as defined herein) on unpaid Rent Payments in the exercise of Lessor's remedies under Section 11 hereof, then Lessor will not charge additional Late Fees, but accrued and unpaid Late Fees will be due and payable.

(c) Lessee's obligation to pay Rent and otherwise to perform its obligations under or with respect to any Lease or Schedule are and shall be absolute and unconditional and shall not be affected by any circumstances whatsoever, including any right of setoff, counterclaim, recoupment, deduction, defense or other right which Lessee may have against Lessor, the manufacturer or vendor of the Equipment or anyone else, for any reason whatsoever.

**3.      RESERVED.**

**4.      TAXES AND FEES:**

(a) If permitted by law and unless otherwise provided in any Schedule, Lessee shall report and pay promptly all taxes, fees and assessments due, imposed, assessed or levied against any Equipment (or purchase, ownership, delivery, leasing, possession, use or operation thereof), this Agreement (or any Rents or receipts hereunder), any Schedule, Lessor or Lessee, by any domestic or foreign governmental entity or taxing authority during or related to the Term of any Lease, including, without limitation, all license and registration fees, and all sales, use, personal property, excise, gross receipts, franchise, stamp or other taxes, imposts, duties and charges, together with any penalties, fines or interest thereon (collectively "**Taxes**"). Lessee shall have no liability for Taxes imposed by the United States of America or any state or political subdivision thereof which are on or measured by the net income of Lessor, except as provided in Section 14(c). Lessee shall promptly reimburse (on an after tax basis) Lessor for any Taxes charged to or assessed against Lessor. Lessee shall show Lessor as the owner of the Equipment on all tax reports or returns, and send Lessor a copy of each report or return and evidence of Lessee's payment of Taxes upon request.

(b) Lessee's obligations, and Lessor's rights, privileges and indemnities, contained in this Section 4 shall survive the expiration or termination of this Agreement.

**5.      REPORTS:**

(a) If any tax or other lien shall attach to any Equipment, Lessee will notify Lessor in writing, within thirty (30) days after Lessee becomes aware of the tax or lien. The notice shall include the full particulars of the tax or lien and the location of such Equipment on the date of the notice.

(b) Lessee will deliver or make available to Lessor, Lessee's and Guarantor's (as defined in Section 11(a)(iv) hereof) complete financial statements prepared in accordance with generally accepted accounting principles, consistently applied, certified by a recognized firm of certified public accountants within one hundred twenty (120) days of the close of each fiscal year of Lessee. In addition, Lessee will deliver to Lessor copies of Lessee's and Guarantor's quarterly financial report certified by the chief financial officer of Lessee, within forty five (45) days of the close of each fiscal quarter of Lessee. Lessee will deliver or make available to Lessor all Forms 10-K and 10-Q, if any, filed with the Securities and Exchange Commission within thirty (30) days after the date on which they are filed (it being understood that to the extent the same are properly filed on EDGAR they shall be deemed delivered to Lessor on the date on which the same are filed on EDGAR). For purposes of this Section 5(b), financial statements will be the consolidated financial statements of Guarantor.

(c) Once per year, Lessor may inspect (at Lessor's sole cost and expense) any Equipment during normal business hours after giving Lessee reasonable prior notice. Notwithstanding the foregoing, upon the occurrence and continuation of an Event of Default, Lessor may inspect the Equipment as often as Lessor deems is reasonable and at

times deemed reasonable by Lessor, and all costs and expenses of such inspections shall be payable by Lessee. At all times, Lessor shall comply with Lessee's workplace rules regarding security, health and safety during inspections.

(d)　　　Lessee will keep the Equipment under any Lease at the Equipment Location specified in the applicable Schedule and will give Lessor at least thirty (30) days' prior written notice of any relocation of such Equipment.  If Lessor asks, Lessee will promptly notify Lessor in writing of the location of any Equipment.

(e)　　　If any Equipment is lost or damaged (where the estimated repair costs would exceed the greater of ten percent (10%) of the original Equipment cost or ten thousand and 00/100 dollars ($10,000), or is otherwise involved in an accident causing personal injury or property damage, Lessee will promptly and fully report the event to Lessor in writing within ten (10) days of the occurrence of any such incident.

(f)　　　Upon Lessor's request, Lessee will provide within ten (10) days of such request, copies of the insurance policies or other evidence required by the terms hereof.

(g)　　　Lessee will promptly notify Lessor of any change in Lessee's state of incorporation or organization, in any case within thirty (30) days of such change.

(h)　　　Upon reasonable request by Lessor, Lessee will provide Lessor such other reports or information in relation to the Equipment and the maintenance thereof.

(i)　　　Lessee will furnish, within thirty (30) days of Lessor's request, and such request shall not exceed one (1) time per year, a certificate of an authorized officer of Lessee stating that such officer reviewed the activities of Lessee and that, to such officer's current, actual knowledge, there exists no Event of Default or event which with notice or lapse of time (or both) would become an Event of Default.

6.　　　**DELIVERY, USE AND OPERATION:**

(a)　　　All Equipment shall be shipped directly from Supplier to Lessee, unless the Equipment is being leased pursuant to a sale-leaseback transaction in which case Lessee represents and warrants that it is in possession of the Equipment as of the Lease Commencement Date.

(b)　　　Lessee agrees that the Equipment will be used by Lessee solely in the conduct of its business, and in a manner complying with all applicable laws, regulations and insurance policies, and in compliance with manufacturer's recommendations.  Lessee further agrees that it shall not discontinue use of any Equipment, except for circumstances when the Equipment requires maintenance or repair.

(c)　　　Lessee will not (i) move any Equipment from the location specified on the Schedule, without the prior written consent of Lessor, or (ii) part with possession of any of the Equipment (except to Lessor or for maintenance or repair).

(d)　　　Except for Permitted Liens (as defined herein), Lessee will keep the Equipment free and clear of all liens, claims and encumbrances other than those that result from acts of Lessor. For purposes of this provision, "Permitted Liens" means (i) materialmen's, mechanics', repairmen's, and similar liens that are incurred in the ordinary course of Lessee's business and are (x) not delinquent, or (y) not more than 90 days delinquent and are being diligently contested in good faith pursuant to proper proceedings that do not involve any material risk of the sale, forfeiture or loss of the Equipment in question or material risk of any liability to Lessor, and (ii) liens for taxes payable on Equipment that are not yet delinquent or are being diligently contested in good faith pursuant to proper proceedings that do not involve any material risk of the sale, forfeiture or loss of the Equipment in question or material risk of any liability to Lessor, provided, that, no lien shall be deemed a Permitted Lien under clause (i) or (ii) if such lien, together with all other liens described in clauses (i) and (ii), in the aggregate, would be reasonably likely to have a material adverse effect on the Lease, the Equipment, or financial condition of Lessee.

(i)     Lessor shall not disturb Lessee's quiet enjoyment of the Equipment during the term of the Agreement unless an Event of Default has occurred and is continuing under this Agreement.

## 7.    MAINTENANCE:

(a)     Lessee will, at its sole expense, maintain each unit of Equipment in good operating order and repair, normal wear and tear excepted.  Lessee shall also maintain the Equipment in accordance with manufacturer's recommendations.  Lessee shall make all alterations or modifications required to comply with any applicable law, rule or regulation during the Term of any Lease.

(b)     Lessee will not attach or install anything on any Equipment that will impair the originally intended function or use of such Equipment without the prior written consent of Lessor.  All additions, parts, supplies, accessories, and equipment ("**Additions**") furnished or attached to any Equipment that are not readily removable shall become the property of Lessor.  All Additions shall be made only in compliance with applicable law.  Lessee will not attach or install any item of Equipment to or in any other personal or real property (other than at the Equipment Location noted in the applicable Schedule, provided that at all times the Equipment shall not be a fixture and shall be readily detachable from real property) without the prior written consent of Lessor.

## 8.    STIPULATED LOSS VALUE:

If for any reason any unit of Equipment becomes lost, stolen, destroyed, irreparably damaged or unusable ("**Casualty Occurrences**") Lessee shall promptly notify Lessor in writing.  Lessee shall pay Lessor the sum of (i) the Stipulated Loss Value (as described in the Schedule) of the affected unit determined as of the Rent Payment date prior to the Casualty Occurrence; and (ii) all Rent and other amounts that are then due under the Lease on the Payment Date (defined below) for the affected unit.  The "**Payment Date**" for purposes of this Section 8 shall be the next scheduled Rent Payment date after the Casualty Occurrence.  Upon payment of all sums due hereunder, the term of the Lease as to such unit shall terminate.

## 9.    INSURANCE:

(a)     Lessee shall bear the entire risk of any loss, theft, damage to, or destruction of, any unit of Equipment from any cause whatsoever from the time the Equipment is shipped to Lessee.

(b)     Lessee shall secure and maintain in effect at its own expense throughout the Term of any Lease of the Equipment, insurance for such amounts and against such hazards as Lessor may reasonably require (it being understood that insurance customary for similarly situated lessees shall be deemed reasonable). All such policies shall be with companies, and on terms, reasonably (it being understood that insurance customary for similarly situated lessees shall be deemed reasonable) satisfactory to Lessor. The insurance shall include coverage for damage to or loss of the Equipment under the Lessee's Property Policy for any property damage and under the Lessee's General Liability policy for any personal injuries or death. Lessor shall be named as additional insured, under the Lessee's General Liability policy with a loss payable clause in favor of Lessor, as its interest may appear, irrespective of any breach of warranty or other act or omission of Lessee. The amounts of the required coverages and deductibles shall be set forth in the Schedule. No insurance shall be subject to any co-insurance clause. The insurance policies shall provide that the insurer shall endeavor to provide Lessor with thirty (30) days written notice of any material alteration that reduces the amount of the coverage or cancellation of the insurance policy. Lessee agrees to deliver to Lessor evidence of insurance reasonably satisfactory to Lessor. The insurance provisions set forth in the Schedule shall supplement (but not replace) the requirements set forth herein.

(c)     Lessee hereby appoints Lessor as Lessee's attorney-in-fact to make proof of loss and claim for insurance, and to make adjustments with insurers and to receive payment of and execute or endorse all documents, checks or drafts in connection with insurance payments. Lessor shall not act as Lessee's attorney-in-fact unless an Event of Default has occurred.  Lessee shall pay any reasonable expenses of Lessor in adjusting or collecting insurance.  Lessor will not make adjustments with insurers except with respect to claims for damage to any unit of Equipment if the repair costs for such unit of Equipment are less than the lesser of (x) ten percent (10%) of the original

Equipment cost (as set forth in the applicable Schedule), or (y) ten thousand and 00/100 dollars ($10,000). Lessor may, at its option, apply proceeds of insurance, in whole or in part, to repair or replace Equipment or any portion thereof, or satisfy any obligation of Lessee to Lessor under this Agreement.

## 10.   RETURN OF EQUIPMENT:

(a)      Upon the expiration or termination of a Lease (including any termination pursuant to Section 17 hereof or any termination occurring after an Event of Default hereunder), Lessee shall perform any testing and repairs required to place the units of Equipment in the same condition and appearance as when received by Lessee (reasonable wear and tear excepted) and in good working order for the original intended purpose of the Equipment. If required, the units of Equipment shall be deinstalled, disassembled and crated by an authorized manufacturer's representative or such other service person as is reasonably satisfactory to Lessor. Lessee shall remove installed markings that are not necessary for the operation, maintenance or repair of the Equipment. All Equipment will be cleaned, cosmetically acceptable, and in such condition as to be immediately installed into use in a similar environment for which the Equipment was originally intended to be used. All waste material and fluid must be removed from the Equipment and disposed of in accordance with then current waste disposal laws. Lessee shall return the units of Equipment to a location within the continental United States as Lessor shall direct. Lessee shall obtain and pay for a policy of transit insurance for the redelivery period in an amount equal to the replacement value of the Equipment. The transit insurance must name Lessor as the loss payee. Lessee shall pay for all costs to comply with this Section 10.

(b)      Until Lessee has fully complied with the requirements of Section 10(a) above, Lessee's Rent payment obligation and all other obligations under this Agreement shall continue from month to month notwithstanding any expiration or termination of the corresponding Term. During such month to month period, Lessor may terminate Lessee's right to use the Equipment upon ten (10) days' notice to Lessee.

(c)      Lessee shall provide to Lessor a detailed inventory of all components of the Equipment including model and serial numbers. Lessee shall also provide an up-to-date copy of all other documentation pertaining to the Equipment. All service manuals, blue prints, process flow diagrams, operating manuals, inventory and maintenance records shall be given to Lessor at least ninety (90) days and not more than one hundred twenty (120) days prior to lease termination.

(d)      Lessee shall make the Equipment available for on-site operational inspections by potential purchasers at least one hundred twenty (120) days prior to and continuing up to lease termination. Lessor shall provide Lessee with reasonable notice prior to any inspection. Lessee shall provide personnel, power and other requirements necessary to demonstrate electrical, hydraulic and mechanical systems for each item of Equipment.

## 11.   DEFAULT AND REMEDIES:

(a)      Lessee shall be in default under this Agreement and under any Lease upon the occurrence of any of the following (each an "**Event of Default**" and collectively, the "**Events of Default**"):

(i)      Lessee fails to pay within ten (10) days after its due date, any Rent or any other amount due under this Agreement or any Lease;

(ii)      (A) The termination or cancellation of insurance required to be maintained under Section 9 hereof or any Schedule or (B) Lessee breaches any of its other insurance obligations under this Agreement or any Schedule and fails to cure such breach within fifteen (15) days after written notice from Lessor;

(iii)      Lessee breaches any of its other obligations under any Lease, other than those described elsewhere in this Section 11(a), and fails to cure that breach within thirty (30) days after written notice from Lessor;

(iv)      any representation, warranty or covenant made by Lessee or any guarantor or surety for the obligations under any Lease (each a "**Guarantor**", and collectively, the "**Guarantors**") in connection with this Agreement or under any Lease shall be false or misleading;

(v)      any Equipment is illegally used;

(vi)      Lessee or any Guarantor becomes insolvent or ceases to do business as a going concern;

(vii)      a receiver is appointed for all or of any part of the property of Lessee or any Guarantor, or Lessee or any Guarantor makes any assignment for the benefit of its creditors;

(viii)      Lessee or any Guarantor files a petition under any bankruptcy, insolvency or similar law, or in the event an involuntary petition is filed against Lessee or any Guarantor under any bankruptcy or insolvency laws and in the event of an involuntary petition, such petition is not dismissed within sixty (60) days of the filing date;

(ix)      Lessee or any Guarantor breaches or is in default under any other agreement by and between Lessor (or any of its affiliates) on the one hand, and Lessee or such Guarantor on the other hand;

(x)      any Guarantor revokes or attempts to revoke its obligations under its guaranty or any related document to which it is a party, or fails to observe or perform any covenant, condition or agreement to be performed under such guaranty or other related document to which it is a party;

(xi)      Lessee or any Guarantor defaults: (a) under any other material obligation for borrowed money, the deferred purchase price of property or payments due under any lease agreement(s); or (b) under any other contract or obligation requiring the payment of money in an amount greater than $1,000,000; and in any case under either (a) or (b), such default results in the right by the other party to the agreement to enforce its rights and remedies thereunder in accordance with the terms and provisions thereof;

(xii)      there is a dissolution or termination of existence of Lessee or any Guarantor; or

(xiii)      Lessee or any Guarantor sells or leases all, or substantially all, of its assets, or there is any merger, consolidation or change in controlling ownership of Lessee or any Guarantor without the prior written consent of Lessor, which consent shall not be unreasonably withheld, delayed, or conditioned, and which shall be based on the creditworthiness of the new entity and the satisfaction of Lessor's Anti-Money Laundering and Compliance diligence requirements; provided, however, in the event of a change in controlling ownership of Lessee or any Guarantor to which Lessor does not consent, an Event of Default shall not be deemed to occur if on the first day of the second month following the delivery of written notice to Lessee that Lessor does not consent to the change in controlling ownership, Lessee pays to Lessor an amount equal to the Stipulated Loss Value as of such date. Upon Lessor's receipt of the amount equal to the Stipulated Loss Value, Lessor will release all liens and encumbrances of any and every kind on the Equipment and transfer all of its rights, title, and interests in the Equipment to Lessee on an as-is basis.

The default declaration shall apply to all Schedules unless specifically excepted by Lessor. Any provisions of this Agreement to the contrary notwithstanding, Lessor may exercise all rights and remedies hereunder independently with respect to each Schedule.

(b)      Upon the occurrence of any Event of Default and so long as the same shall be continuing, Lessor may, at its option, at any time thereafter, exercise one or more of the following remedies set forth in this <u>Section 11</u>, as Lessor in its sole discretion shall lawfully elect.

(i)        Upon the request of Lessor, Lessee shall immediately comply with the provisions of Section 10(a);

(ii)       Lessee shall authorize Lessor to peacefully enter any premises where any Equipment may be and take possession of the Equipment;

(iii)     Lessee shall immediately pay to Lessor without further demand as liquidated damages, for loss of a bargain and not as a penalty, an amount equal to (A) the Stipulated Loss Value of the Equipment (calculated as of the Rent Payment date prior to the declaration of default), plus (B) all Rents and other sums, including Late Fees, then due under this Agreement, any Lease and all Schedules, and upon receipt of all amounts payable by Lessee, Lessor shall transfer title to the Equipment to Lessee, without any representation or warranty other than as to liens, claims and encumbrances that resulted from acts of Lessor;

(iv)     Lessor may terminate the Lease as to any or all of the Equipment, and any termination of Leases shall occur only upon written notice by Lessor to Lessee and only as to the units of Equipment specified in any such notice;

(v)      Lessor may, but shall not be required to, sell Equipment at private or public sale, in bulk or in parcels, with or without notice, and without having the Equipment present at the place of sale;

(vi)     Lessor may also, but shall not be required to, lease, otherwise dispose of or keep idle all or part of the Equipment;

(vii)    Lessor may use Lessee's premises for a reasonable period of time for any or all of the purposes stated above without liability for rent, costs, damages or otherwise;

(viii)   Lessor shall be entitled to collect from Lessee all costs, charges, and expenses, including actual legal fees and disbursements, incurred by Lessor by reason of any Event of Default under the terms of this Agreement;

(ix)     Lessor may proceed by appropriate court action, either by law or in equity, to enforce the performance by Lessee of the applicable covenants of this Agreement and any Lease or to recover damages for breach hereof; and

(x)      Lessor may exercise any rights it may have against any security deposit or other collateral pledged to it by Lessee, any Guarantor or any of their respective affiliates or parent entities.

(c)      Lessor shall have the right to apply the proceeds of any sale, lease or other disposition, if any, in the following order of priorities: (i) to pay all of Lessor's costs, including reasonable attorney's fees, charges and expenses incurred in taking, removing, holding, repairing and selling, leasing or otherwise disposing of Equipment; then, (ii) to the extent not previously paid by Lessee, to pay Lessor all sums due from Lessee under this Agreement; then (iii) to reimburse to Lessee any sums previously paid by Lessee as liquidated damages; and (iv) any surplus shall be retained by Lessor. Lessee shall immediately pay any deficiency in (i) and (ii) above, to the extent any exists. In addition to Lessor's remedies set forth in Section 11(b), any amount set forth in Section 11(b) not paid when due shall bear interest, from the due date until paid, at a per annum rate equal to the lesser of eighteen percent (18%) or the maximum rate not prohibited by applicable law (the "**Per Diem Interest Rate**"). The application of such Per Diem Interest Rate shall not be interpreted or deemed to extend any cure period set forth herein, cure any default or otherwise limit Lessor's rights or remedies hereunder. Notwithstanding anything to the contrary contained in this Agreement or any Schedule, in no event shall this Agreement or any Schedule require the payment or permit the collection of amounts in excess of the maximum permitted by applicable law.

(d)      The foregoing remedies are cumulative, and any or all thereof may be exercised instead of or in addition to each other or any remedies at law, in equity, or under any applicable statute, or international treaty,

convention or protocol. Lessee waives notice of sale or other disposition (and the time and place thereof), and the manner and place of any advertising.  Lessee shall pay Lessor's actual attorney's fees incurred in connection with the enforcement, assertion, defense or preservation of Lessor's rights and remedies under this Agreement, or if prohibited by law, such lesser sum as may be permitted.  Waiver of any default shall not be deemed to be a waiver of any other or subsequent default.

(e)        Any Event of Default under the terms of (i) this Agreement, (ii) any Lease or any other agreement between Lessor and Lessee, or (iii) any guaranty of any of the foregoing, may be declared by Lessor a default under this Agreement, any Lease and any other agreement between Lessor and Lessee.

## 12.    ASSIGNMENT:

LESSEE SHALL NOT SELL, TRANSFER, ASSIGN, ENCUMBER OR SUBLET ANY EQUIPMENT OR THE INTEREST OF LESSEE IN THIS AGREEMENT, ANY SCHEDULE OR THE EQUIPMENT WITHOUT THE PRIOR WRITTEN CONSENT OF LESSOR.  Lessor may, without the consent of Lessee, assign this Agreement, any Schedule, or any interest herein or therein, or the right to enter into a Schedule.  Lessee agrees that if Lessee receives written notice of an assignment from Lessor, Lessee will pay all Rent and all other amounts payable under any assigned Schedule to such assignee or as instructed by Lessor.  Lessee also agrees to confirm in writing receipt of the notice of assignment as may be reasonably requested by assignee.  Lessee hereby waives and agrees not to assert against any such assignee any defense, set-off, recoupment claim or counterclaim which Lessee has or may at any time have against Lessor for any reason whatsoever.

## 13.    NET LEASE:

Any Lease entered into pursuant to the terms and provisions of this Agreement is a net lease.  Lessee acknowledges and agrees that its obligations to pay Rent and any and all amounts due and owing in accordance with the terms hereof and under any Schedule shall be absolute and unconditional, and such obligations shall not be released, discharged, waived, reduced, set-off or affected by any circumstances whatsoever, including, without limitation, any damage to or destruction of any Equipment, defects in the Equipment or Lessee no longer can use such Equipment.  Lessee further acknowledges that Lessee is not entitled to reduce or set-off against Rent or any other amounts due to Lessor or to any assignee under Section 12, whether or not Lessee's claim arises out of this Agreement, any Lease, any statement by Lessor, Lessor's liability or any Supplier's liability, strict liability, negligence or otherwise.  Lessor shall have no obligation, liability or responsibility to Lessee or any other person with respect to the operation, maintenance, repairs, alterations, modifications, correction of faults or defects (whether or not required by applicable law) or insurance with respect to any Equipment, all such matters shall be, as between Lessee and Lessor, the sole responsibility of Lessee, regardless upon whom such responsibilities may fall under applicable law or otherwise, and the Rent payable hereunder has been set in reliance of Lessee's sole responsibility for such aforementioned matters.  To the extent permitted by a Supplier, Lessor will assign all product warranties to Lessee.

## 14.    INDEMNIFICATION:

(a)        LESSEE HEREBY AGREES TO INDEMNIFY, DEFEND AND HOLD HARMLESS EACH OF LESSOR AND ITS AFFILIATES, SUCCESSORS AND PERMITTED ASSIGNS, AND ALL OF LESSOR'S AND SUCH AFFILIATES', SUCCESSORS' AND PERMITTED ASSIGNS' RESPECTIVE DIRECTORS, SHAREHOLDERS, OFFICERS, EMPLOYEES AND AGENTS (EACH AN "INDEMNIFIED PARTY") (ON AN AFTER TAX BASIS) FROM AND AGAINST ANY AND ALL LOSSES, DISPUTES, PENALTIES, CLAIMS, EXPENSES (INCLUDING WITHOUT LIMITATION REASONABLE LEGAL EXPENSES) DAMAGES AND LIABILITIES (INCLUDING WITHOUT LIMITATION ENVIRONMENTAL LIABILITIES) OF WHATSOEVER KIND AND NATURE (EXCLUDING THOSE ARISING OUT OF LESSOR'S NEGLIGENCE) ARISING OUT OF OR IN CONNECTION WITH OR RELATING TO THE EQUIPMENT, THIS AGREEMENT OR ANY LEASE OR ANY OTHER DOCUMENT (AS DEFINED IN SECTION 16 HEREOF) (COLLECTIVELY, "CLAIMS"), REGARDLESS OF WHETHER SUCH INDEMNIFIED PARTY IS A PARTY THERETO AND WHETHER IN LAW OR EQUITY, OR IN CONTRACT, TORT OR OTHERWISE; PROVIDED, HOWEVER, THAT NO INDEMNIFIED PARTY SHALL BE ENTITLED TO INDEMNITY HEREUNDER IN RESPECT OF ANY CLAIM TO THE EXTENT THAT THE SAME IS FOUND BY A FINAL, NON-APPEALABLE JUDGMENT OF A COURT OF COMPETENT JURISDICTION TO HAVE RESULTED DIRECTLY FROM THE BAD FAITH, GROSS

NEGLIGENCE OR WILLFUL MISCONDUCT OF ANY INDEMNIFIED PARTY. This indemnity shall include, but is not limited to, Lessor's strict liability in tort or otherwise, including Claims that may be imposed on, incurred by or asserted against an Indemnified Party in any way arising out of (i) the selection, manufacture, purchase, acceptance or rejection of Equipment, the ownership of Equipment during the term of this Agreement, and the delivery, lease, sublease, chartering, possession, maintenance, use, non-use, financing, mortgaging, control, insurance, testing, condition, return, sale (including all costs, incurred in making the Equipment ready for sale after the exercise of remedies as a result of an Event of Default), operation or design of the Equipment (including, without limitation, latent and other defects, whether or not discoverable by Lessor or Lessee and any claim for patent, trademark or copyright infringement or environmental damage), any interchanging or pooling of any parts of the Equipment, if applicable; (ii) the condition of Equipment sold or disposed of after use by Lessee, any sublessee or employees of Lessee; (iii) any breach of Lessee's or any Guarantor's representations or obligations under any Lease or any other Document or any guaranty, or the failure by Lessee to comply with any term, provision or covenant contained in any Lease or any other Document or the Equipment or with any applicable law, rule or regulation with respect to the Equipment, or the nonconformity of the Equipment or its operation with any applicable law; (iv) any actions brought against any Indemnified Party that arise out of Lessee's or any Guarantor's actions or omissions (or actions or omissions of Lessee's or Guarantor's agents); or (v) reliance by any Indemnified Party on any representation or warranty made or deemed made by Lessee or any Guarantor (or any of their officers) under or in connection with any Lease or any other Document, or any report or other information delivered by Lessee or Guarantor pursuant hereto which shall have been incorrect in any material respect when made or deemed made or delivered. Lessee shall pay on demand to each Indemnified Party any and all amounts necessary to indemnify such Indemnified Party from and against any Claims. Lessee shall, upon request, defend any actions based on, or arising out of, any of the foregoing. Notwithstanding anything contained herein to the contrary, in no event shall Lessee be responsible or liable for any consequential, special, punitive or indirect damages.

(b)     Lessee hereby represents, warrants and covenants that (i) on the Lease Commencement Date for any unit of Equipment, such unit will qualify for all of the items of deduction and credit specified in Section C of the applicable Schedule ("**Tax Benefits**") in the hands of Lessor, and (ii) at no time during the term of this Agreement will Lessee take or omit to take, nor will it permit any sublessee or assignee to take or omit to take, any action (whether or not such act or omission is otherwise permitted by Lessor or by this Agreement), which will result in the disqualification of any Equipment for, or recapture of, all or any portion of such Tax Benefits.

(c)     If as a result of a breach of any representation, warranty or covenant of Lessee contained in this Agreement or any Schedule (i) tax counsel of Lessor shall determine that Lessor is not entitled to claim on its Federal income tax return all or any portion of the Tax Benefits with respect to any Equipment, or (ii) any Tax Benefit claimed on the Federal income tax return of Lessor is disallowed or adjusted by the Internal Revenue Service, or (iii) any Tax Benefit is recalculated or recaptured (any determination, disallowance, adjustment, recalculation or recapture being a "**Loss**"), then Lessee shall pay to Lessor, as an indemnity and as additional Rent, an amount that shall, in the reasonable opinion of Lessor, cause Lessor's after-tax economic yields and cash flows to equal the Net Economic Return that would have been realized by Lessor if such Loss had not occurred.  Such amount shall be payable upon demand accompanied by a statement describing in reasonable detail such Loss and the computation of such amount.  The economic yields and cash flows shall be computed on the same assumptions, including tax rates as were used by Lessor in originally evaluating the transaction ("**Net Economic Return**").

(d)     All references to Lessor in this <u>Section 14</u> include Lessor and the consolidated taxpayer group of which Lessor is a member. All of Lessor's rights, privileges and indemnities contained in this <u>Section 14</u> shall survive the expiration or termination of this Agreement.  The rights, privileges and indemnities contained in this Agreement are expressly made for the benefit of, and shall be enforceable by Lessor, its successors and assigns.

**15.     DISCLAIMER:**

LESSEE ACKNOWLEDGES THAT IT HAS SELECTED THE EQUIPMENT WITHOUT ANY ASSISTANCE FROM LESSOR, ITS AGENTS OR EMPLOYEES.  LESSOR DOES NOT MAKE, HAS NOT MADE, NOR SHALL BE DEEMED TO MAKE OR HAVE MADE, ANY WARRANTY OR REPRESENTATION, EITHER EXPRESS OR IMPLIED, WRITTEN OR ORAL, WITH RESPECT TO THE EQUIPMENT LEASED UNDER THIS AGREEMENT OR ANY COMPONENT THEREOF, INCLUDING, WITHOUT LIMITATION, ANY WARRANTY AS TO DESIGN, COMPLIANCE WITH SPECIFICATIONS, QUALITY OF MATERIALS OR

WORKMANSHIP, MERCHANTABILITY, FITNESS FOR ANY PURPOSE, USE OR OPERATION, SAFETY, PATENT, TRADEMARK OR COPYRIGHT INFRINGEMENT, OR TITLE.  All such risks, as between Lessor and Lessee, are to be borne by Lessee.  Without limiting the foregoing, Lessor shall have no responsibility or liability to Lessee or any other person with respect to any of the following; (i) any liability, loss or damage caused or alleged to be caused directly or indirectly by any Equipment, any inadequacy thereof, any deficiency or defect (latent or otherwise) of the Equipment, or any other circumstance in connection with the Equipment; (ii) the use, operation or performance of any Equipment or any risks relating to it; (iii) any interruption of service, loss of business or anticipated profits or consequential damages; or (iv) the delivery, operation, servicing, maintenance, repair, improvement or replacement of any Equipment.  If, and so long as, no default exists under this Agreement, Lessee shall be, and hereby is, authorized during the Term of any Lease to assert and enforce whatever claims and rights Lessor may have against any Supplier of the Equipment leased hereunder at Lessee's sole cost and expense, in the name of and for the account of Lessor and/or Lessee, as their interests may appear.

16.    **REPRESENTATIONS, WARRANTIES AND COVENANTS OF LESSEE:**

(a)    Lessee makes each of the following representations and warranties to Lessor on the date hereof and on the Lease Commencement Date.

(i)    Lessee has adequate power and capacity to enter into, and perform under, this Agreement and all related documents (together, the "**Documents**").  Lessee is duly qualified to do business wherever necessary to carry on its present business and operations, including the jurisdiction(s) where the Equipment is or is to be located.

(ii)    The Documents have been duly authorized, executed and delivered by Lessee and constitute valid, legal and binding agreements, enforceable in accordance with their terms, except to the extent that the enforcement of remedies may be limited under applicable bankruptcy and insolvency laws.

(iii)    No approval, consent or withholding of objections is required from any governmental authority or entity with respect to the entry into or performance by Lessee of the Documents except such as have already been obtained.

(iv)    The entry into and performance by Lessee of the Documents do not, and will not: (i) violate any judgment, order, law or regulation applicable to Lessee or any provision of Lessee's organizational documents; or (ii) result in any breach of, constitute a default under or result in the creation of any lien, charge, security interest or other encumbrance upon any Equipment pursuant to any indenture, mortgage, deed of trust, bank loan or credit agreement or other instrument (other than this Agreement) to which Lessee is a party.

(v)    There are no suits or proceedings pending or threatened in court or before any commission, board or other administrative agency against or affecting Lessee, which if decided against Lessee will have a material adverse effect on the ability of Lessee to fulfill its obligations under this Agreement.

(vi)    Each financial statement delivered to Lessor has been prepared in accordance with generally accepted accounting principles consistently applied.  Since the date of the most recent financial statement, there has been no material adverse change.

(vii)    Lessee's exact legal name and jurisdiction of organization is as set forth in the first sentence of this Agreement.

(b)    Lessee hereby covenants to Lessor that at all times during the Term of any Lease:

(i)    The Equipment accepted under any Schedule and/or (as the case may be) Certificate of Acceptance is and will remain tangible personal property.

(ii)     Lessee is and will be at all times validly existing and in good standing under the laws of its state or (as the case may be) commonwealth of incorporation or organization (specified in the first sentence of this Agreement).

(iii)    The Equipment will at all times be used for commercial or business purposes.

(iv)    Lessee shall not consolidate, reorganize or merge with any other corporation or entity, or sell, convey, transfer or lease all or substantially all of its property during the Term of any Lease.

(v)     Lessee shall maintain all books and records (including any computerized maintenance records) pertaining to the Equipment during the Term of any Lease in accordance with applicable rules and regulations.

(vi)    Lessee is and will remain in full compliance with all laws and regulations applicable to it including, without limitation, (i) ensuring that no person who owns a controlling interest in or otherwise controls Lessee is or shall be listed on the Specially Designated Nationals and Blocked Person List maintained by the Office of Foreign Assets Control ("OFAC"), Department of the Treasury, and/or any other similar lists maintained by OFAC pursuant to any authorizing statute, Executive Order or regulation or (Z) a person designated under Section 1(b), (c) or (d) of Executive Order No. 13224 (September 23, 2001), any related enabling legislation or any other similar Executive Orders, and (ii) compliance with all applicable Bank Secrecy Act ("BSA") laws, regulations and government guidance on BSA compliance and on the prevention and detection of money laundering violations.

## 17.     EARLY BUYOUT:

If so provided in the Schedule and on the terms provided in the Schedule, Lessee may, upon ninety (90) days' prior written notice to Lessor, purchase the Equipment for the amount set forth in the Schedule, and upon receipt of such payment by Lessor the Term of the Lease shall be terminated.

## 18.     END OF LEASE PURCHASE OPTION:

(a)      On the expiration of any Lease, Lessee may, so long as no Event of Default exists thereunder, and such Lease has not been earlier terminated, purchase all (but not less than all) of the Equipment set forth in the Schedule of such Lease on an AS IS BASIS for immediately available funds equal to its then Fair Market Value (plus all applicable sales taxes). Lessee must notify Lessor of its intent to purchase the Equipment in writing at least one hundred eighty (180) days prior to the expiration date of such Lease. If Lessee is in default, or if the Lease or this Agreement has already been terminated, Lessee may not purchase the Equipment.

(b)      "**Fair Market Value**" shall mean the price that a willing buyer (who is neither a lessee in possession nor a used equipment dealer) would pay for the Equipment in an arm's-length transaction to a willing seller under no compulsion to sell. In determining the Fair Market Value, (i) the Equipment shall be assumed to be in the condition in which it is required to be maintained and returned under the Lease, (ii) if the Equipment is installed it shall be valued on an installed basis, and (iii) the costs of removal of the Equipment from current location shall not be a deduction from the value of the Equipment. If Lessor and Lessee are unable to agree on the Fair Market Value at least one hundred thirty-five (135) days prior to the expiration of the Lease, Lessor shall appoint an independent appraiser (reasonably acceptable to Lessee) to determine Fair Market Value, at Lessee's sole cost, and such independent appraiser's determination shall be final, binding and conclusive.

(c)      Lessee shall be deemed to have waived this option unless it provides Lessor with written notice of its irrevocable election to exercise the same within fifteen (15) days after Fair Market Value is communicated in writing to Lessee.

19.     **MISCELLANEOUS:**

(a)      LESSEE AND LESSOR UNCONDITIONALLY WAIVE THEIR RIGHTS TO A JURY TRIAL OF ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF THIS AGREEMENT, ANY OF THE RELATED DOCUMENTS, ANY DEALINGS BETWEEN LESSEE AND LESSOR RELATING TO THE SUBJECT MATTER OF THIS TRANSACTION OR ANY RELATED TRANSACTIONS, AND/OR THE RELATIONSHIP THAT IS BEING ESTABLISHED BETWEEN LESSEE AND LESSOR.  THE SCOPE OF THIS WAIVER IS INTENDED TO BE ALL ENCOMPASSING OF ANY AND ALL DISPUTES THAT MAY BE FILED IN ANY COURT.  THIS WAIVER IS IRREVOCABLE.  THIS WAIVER MAY NOT BE MODIFIED EITHER ORALLY OR IN WRITING.  THE WAIVER ALSO SHALL APPLY TO ANY SUBSEQUENT AMENDMENTS, RENEWALS, SUPPLEMENTS OR MODIFICATIONS TO THIS AGREEMENT, ANY RELATED DOCUMENTS, OR TO ANY OTHER DOCUMENTS OR AGREEMENTS RELATING TO THIS TRANSACTION OR ANY RELATED TRANSACTION.  THIS AGREEMENT MAY BE FILED AS A WRITTEN CONSENT TO A TRIAL BY THE COURT.

(b)      The Equipment shall remain Lessor's property unless Lessee purchases the Equipment from Lessor in accordance with the terms hereof, and until such time Lessee shall only have the right to use the Equipment as a lessee.  All Equipment shall at all times remain personal property of Lessor even though it may be attached to real property.  The Equipment shall not become part of any other property by reason of any installation in, or attachment to, other real or personal property.

(c)      Time is of the essence of this Agreement.  Lessor's failure at any time to require strict performance by Lessee of any of the provisions hereof shall not waive or diminish Lessor's right at any other time to demand strict compliance with this Agreement and any Lease.  Lessor may correct patent errors and fill in all blanks in the Documents consistent with the agreement of the parties.  Lessee will promptly, upon Lessor's request and at Lessee's sole cost and expense, execute, or otherwise authenticate, any document, record or instrument necessary or expedient for filing, recording or perfecting the interest of Lessor or to carry out the intent of this Agreement and any Lease (including filings to evidence amendments to this Agreement and any Lease, and acknowledgments of assignments), and will take such further action as Lessor may reasonably request in order to carry out more effectively the intent and purposes of this Agreement and any Lease and to establish Lessor's rights and remedies under this Lease, or otherwise with respect to the Equipment.  In addition, Lessee hereby authorizes Lessor to file a financing statement and amendments thereto describing the Equipment described in any and all Schedules now and hereafter executed pursuant hereto and adding any other collateral described therein and containing any other information required by the applicable Uniform Commercial Code.  If and to the extent that a Lease is deemed a security agreement, as of the date of the Lease, Lessee hereby grants to Lessor a security interest in the Equipment, together with all additions, attachments, accessories and accessions thereto whether or not furnished by Supplier of the Equipment and any and all substitutions, upgrades, replacements or exchanges therefor, and any and all insurance and/or other proceeds of the property in and against which a security interest is granted hereunder.  This security interest is given to secure the payment and performance of all debts, obligations and liabilities of any kind whatsoever of Lessee to Lessor now existing or arising in the future under this Agreement and any Schedules hereto or thereto, and any renewals, extensions and modifications of such debts, obligations and liabilities.  All notices required to be given hereunder shall be deemed adequately given if delivered by electronic mail as a pdf attachment, delivered by hand, or sent by registered or certified mail to the addressee at its address stated herein, or at such other place as such addressee may have designated in writing.  This Agreement and the Schedules constitute the entire agreement of the parties with respect to the subject matter hereof.  NO VARIATION OR MODIFICATION OF THIS AGREEMENT OR ANY WAIVER OF ANY OF ITS PROVISIONS OR CONDITIONS SHALL BE VALID UNLESS IN WRITING AND SIGNED BY AN AUTHORIZED REPRESENTATIVE OF THE PARTIES HERETO.

(d)      If Lessee does not comply with any provision of this Agreement, Lessor shall have the right, but shall not be obligated, to effect such compliance, in whole or in part.  All reasonable amounts spent and obligations incurred or assumed by Lessor in effecting such compliance shall constitute additional Rent due to Lessor.  Lessee shall pay the additional Rent within ten (10) days after the date Lessor sends notice to Lessee requesting payment.  Lessor's effecting such compliance shall not be a waiver of Lessee's default.

(e)      Any provisions in this Agreement and any Schedule that are in conflict with any statute, law or applicable rule shall be deemed omitted, modified or altered to conform thereto.

(f)       Lessee hereby irrevocably authorizes Lessor to adjust the Capitalized Lessor's Cost up or down by no more than ten percent (10%) within each Schedule to account for equipment change orders, equipment returns, invoicing errors, and similar matters.  Lessee acknowledges and agrees that the Rent shall be adjusted as a result of the change in the Capitalized Lessor's Cost.  Lessor shall send Lessee a written notice stating the final Capitalized Lessor's Cost, if it has changed.

(g)       THIS AGREEMENT AND THE RIGHTS AND OBLIGATIONS OF THE PARTIES HEREUNDER SHALL IN ALL RESPECTS BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH, THE INTERNAL LAWS OF THE STATE OF NEW YORK (WITHOUT REGARD TO THE CONFLICT OF LAWS PRINCIPLES OF SUCH STATE), INCLUDING ALL MATTERS OF CONSTRUCTION, VALIDITY AND PERFORMANCE, REGARDLESS OF THE LOCATION OF THE EQUIPMENT.  LESSEE IRREVOCABLY SUBMITS TO THE EXCLUSIVE JURISDICTION OF THE STATE AND FEDERAL COURTS SITTING IN THE BOROUGH OF MANHATTAN IN NEW YORK COUNTY, NEW YORK TO HEAR AND DETERMINE ANY SUIT, ACTION OR PROCEEDING AND TO SETTLE ANY DISPUTES, INCLUDING TORT CLAIMS, WHICH MAY ARISE OUT OF OR IN CONNECTION HEREWITH (COLLECTIVELY, THE **"PROCEEDINGS"**), AND LESSEE FURTHER IRREVOCABLY WAIVES ANY RIGHT IT MAY HAVE TO REMOVE ANY SUCH PROCEEDINGS FROM ANY SUCH COURT (EVEN IF REMOVAL IS SOUGHT TO ANOTHER OF THE ABOVE-NAMED COURTS). LESSEE IRREVOCABLY WAIVES ANY OBJECTION WHICH IT MIGHT NOW OR HEREAFTER HAVE TO THE ABOVE-NAMED COURTS BEING NOMINATED AS THE EXCLUSIVE FORUM TO HEAR AND DETERMINE ANY SUCH PROCEEDINGS AND AGREES NOT TO CLAIM THAT IT IS NOT PERSONALLY SUBJECT TO THE JURISDICTION OF THE ABOVE-NAMED COURTS FOR ANY REASON WHATSOEVER, THAT IT OR ITS PROPERTY IS IMMUNE FROM LEGAL PROCESS FOR ANY REASON WHATSOEVER, THAT ANY SUCH COURT IS NOT A CONVENIENT OR APPROPRIATE FORUM IN EACH CASE WHETHER ON THE GROUNDS OF VENUE OR FORUM NON-CONVENIENS OR OTHERWISE. LESSEE ACKNOWLEDGES THAT BRINGING ANY SUCH SUIT, ACTION OR PROCEEDING IN ANY COURT OTHER THAN THE COURTS SET FORTH ABOVE WILL CAUSE IRREPARABLE HARM TO LESSOR THAT COULD NOT ADEQUATELY BE COMPENSATED BY MONETARY DAMAGES, AND, AS SUCH, LESSEE AGREES THAT, IN ADDITION TO ANY OF THE REMEDIES TO WHICH LESSOR MAY BE ENTITLED AT LAW OR IN EQUITY, LESSOR WILL BE ENTITLED TO AN INJUNCTION OR INJUNCTIONS (WITHOUT THE POSTING OF ANY BOND AND WITHOUT PROOF OF ACTUAL DAMAGES) TO ENJOIN THE PROSECUTION OF ANY SUCH PROCEEDINGS IN ANY OTHER COURT. NOTHING IN THIS AGREEMENT, THE LEASE OR ANY SCHEDULE SHALL AFFECT ANY RIGHT THAT LESSOR MAY OTHERWISE HAVE TO BRING ANY ACTION OR PROCEEDING RELATING TO THIS AGREEMENT, THE LEASE, OR ANY SCHEDULE AGAINST LESSEE OR ANY GUARANTOR OR THEIR PROPERTIES IN THE COURTS OF ANY JURISDICTION.

(h)       Any termination by Lessor, pursuant to the provisions of this Agreement, any Schedule, supplement or amendment hereto, of the lease of any Equipment hereunder, shall not release Lessee from any then outstanding obligations to Lessor hereunder.

(i)       To the extent that any Schedule would constitute chattel paper, as such term is defined in the Uniform Commercial Code as in effect in any applicable jurisdiction, no security interest therein may be created through the transfer or possession of this Agreement in and of itself without the transfer or possession of the original of a Schedule executed pursuant to this Agreement and incorporating this Agreement by reference; and no security interest in this Agreement and a Schedule may be created by the transfer or possession of any counterpart of the Schedule other than the original thereof, which shall be identified as the document marked "**Original**" and all other counterparts shall be marked "**Duplicate**".

(j)       This Agreement and any amendments, waivers, consents or supplements hereto or in connection herewith may be executed in any number of counterparts and by different parties hereto in separate counterparts, each of which when so executed and delivered shall be deemed an original, but all such counterparts together shall constitute but one and the same instrument; signature pages may be detached from multiple separate counterparts and attached to a single counterpart so that all signature pages are physically attached to the same document.  Delivery of an executed signature page of this Agreement or any delivery contemplated hereby by facsimile or electronic transmission shall be as effective as delivery of a manually executed counterpart thereof.

13

(k)      Lessee authorizes Lessor and its representatives to contact and communicate with Lessee and provide Lessee with information and notices relating to Lessor's services and products from time to time, including, without limitation, solicitations and/or materials advertising the commercial availability, price or quality of goods, property or services, via facsimile transmission or email.

(l)      Lessee hereby acknowledges that it has not received or relied on any legal, tax, financial or accounting advice from Lessor and that Lessee has had the opportunity to seek advice from its own advisors and professionals in that regard.

NO FURTHER TEXT ON THIS PAGE

SIGNATURE PAGE FOLLOWS

**IN WITNESS WHEREOF,** Lessee and Lessor have caused this Agreement to be executed by their duly authorized representatives as of the date first above written.

**LESSOR**:                                        **LESSEE**:

Encina Equipment Finance SPV, LLC                 Stanadyne LLC

By: _____                      By: _____

Name: _____                      Name:   Costas Loukellis

Title: _____                     Title:   VP / CFO

 

**LESSEE**:

Pure Power Technologies, Inc.

By: _____

Name:   John A. Pinson

Title:   President and Managing Director

## EQUIPMENT SCHEDULE

### SCHEDULE NO. 001 DATED May 26, 2022
#### BETWEEN ENCINA EQUIPMENT FINANCE SPV, LLC ("LESSOR")
#### AND
#### PURE POWER TECHNOLOGIES, INC. ("LESSEE")
#### TO MASTER LEASE AGREEMENT DATED AS OF MAY 26, 2022
#### BETWEEN LESSOR AND LESSEE

**Lessor & Mailing Address:**
Encina Equipment Finance SPV, LLC
1221 Post Road East
Westport, CT 06880

**Lessee & Mailing Address:**
Pure Power Technologies, Inc.
1410 Northpoint Blvd
Blythewood, SC 29016

This Schedule is executed pursuant to and incorporates by reference the terms and conditions of and capitalized terms not defined herein shall have the meanings assigned to them in the Master Lease Agreement identified above ("**Agreement**"). This Schedule and the terms of the Agreement, which are incorporated by reference herein, are collectively referred to as the "**Lease**". This Schedule, incorporating by reference the Agreement, constitutes a separate instrument of lease. If any provision of this Schedule conflicts with any provision of the Agreement, then the provision contained in this Schedule shall control. Lessee authorizes Lessor to insert the serial numbers and other identification data of the Equipment (as described herein), dates, and other omitted factual matters of description in this Schedule.

All of the terms and conditions set forth in this Lease are subject to the satisfaction of all the following conditions precedent no later than the Lease Commencement Date, each in form and substance satisfactory to Lessor at its sole discretion: (i) all of the conditions precedent set forth in the Agreement (including Section 1 thereof), this Schedule and the other documents relating to this Schedule (the "**Documents**"); including all fees due and payable to Lessor as set forth in the Term Sheet executed by Lessee describing this lease transaction or other agreement between Lessor and Lessee regarding any and all fees; (ii) no Event of Default or event which with the passage of time or the giving of notice would become an Event of Default has occurred under the Agreement; (iii) as of the Lease Commencement Date, there will have been, since the date that this Schedule is delivered to Lessee for execution, no material adverse change (as determined by Lessor in its sole discretion) in the business prospects or projections, operations, management, financial or other conditions of Lessee, Guarantor, or any other party to whom or which Lessor may have recourse in regard to this Lease, or in the industry in which Lessee or Guarantor or such other party operates, or a change in control of any one of the aforesaid parties (except if consented to by Lessor in writing); and (iv) the absence, during the period from the date that this Schedule is delivered to Lessee for execution to the Lease Commencement Date, of any disruption of, or adverse change in, the leasing or lending market, leasing or loan syndication, or financial, banking or capital markets conditions. If any such condition precedent is not so satisfied by the Lease Commencement Date, Lessor shall have no obligation to proceed with the transactions contemplated under this Schedule or any other Documents.

### A.      Equipment; Use

Subject to the terms and conditions of the Lease, Lessor agrees to lease to Lessee the equipment described on the attached Description of Equipment Schedule (the "**Equipment**"), which includes all purchase orders, additions, attachments, accessories and accessions thereto, and any and all substitutions, upgrades, replacements or exchanges therefor.

Use of the Equipment under this Lease is permitted only in the conduct of Lessee's business in the United States and only for lawful purposes. Lessee will permit the Equipment to be operated only by trained operators who are qualified, as applicable, properly licensed in accordance with the laws of the jurisdiction where such Equipment is used, and

properly trained according to the Equipment manufacturer's guidelines and standards. All operators of the Equipment will be conclusively presumed to be the agents, employees or servants of Lessee and not of Lessor. Lessee shall in all respects comply, and cause all persons operating the Equipment to comply, with all applicable requirements of law relating to the licensing, maintenance and operation of the Equipment and with all terms and conditions of policies of insurance relating to the Equipment. Lessee shall immediately notify Lessor of any change of location of any unit of Equipment, if the change of location shall be greater than 30 days.

Expense of operation and maintenance of Equipment in accordance with manufacturer's recommendations and in condition satisfactory to Lessor shall be the responsibility and obligation of Lessee. Lessee shall reimburse Lessor if Lessor shall pay any of such operating or maintenance expenses. If parts are removed from any unit of Equipment, then Lessee shall provide comparable replacements therefor and such replacements shall become part of the Equipment by accession. Lessee shall not alter any unit of Equipment without the prior written consent of Lessor, unless such alteration is required by law. Lessee agrees to remove all markings from the Equipment, at Lessee's expense, prior to the return of the Equipment to Lessor.

In the event that subsequent to the delivery date of any unit of Equipment any federal, state or local law, ordinance, rule or regulation shall require the installation of any additional equipment or accessories, including but not limited to anti-pollution and/or safety devices, or in the event that any other modifications of the Equipment shall be required by virtue of such law, ordinance, rule or regulation, then and in any of such events, Lessee shall pay the full cost thereof, including installation expenses. Lessor may, at its option, arrange for the installation of such equipment or the performance of such modifications, and Lessee agrees to pay the full cost thereof as Additional Rent, immediately upon receipt of an invoice for same.

**B.    Financial Terms**

1. Advance Rent (if any): $109,293.63[1]
2. Capitalized Lessor's Cost: $5,000,000.00
3. Basic Term (No. of Months): 48 Months
4. Basic Term Lease Rate Factor: 2.185873%[2]
5. Basic Term Commencement Date: 6/1/2023
6. Lessee Federal Tax ID No.: 81-1145202
7. Daily Lease Rate Factor: 0.072862%[2]

8. Interim Rent: For the period from and including the Lease Commencement Date to but not including the Basic Term Commencement Date (**"Interim Period"**), Lessee shall pay as rent (**"Interim Rent"**) for each unit of Equipment, the product of the Daily Lease Rate Factor times the Capitalized Lessor's Cost of such unit times the number of days in the Interim Period. Interim Rent shall be due on Lease Commencement Date.

9. Basic Term Rent. Commencing on June 1, 2023, and on the same day of each month thereafter (each, a **"Rent Payment Date"**) during the Basic Term, Lessee shall pay as rent (**"Rent"**) the product of the Basic Term Lease Rate Factor times the Capitalized Lessor's Cost of all Equipment on this Schedule.

10. Renewal Term: As may be agreed by Lessor and Lessee in a writing executed by both parties that is satisfactory in form and substance to Lessor.

11. Early Buy Out Date; Early Buy Out Purchase Price: So long as no Event of Default shall have occurred and be continuing, Lessee shall have the option to purchase all, but not less than all, of the Equipment on the date that commences the forty second (42nd) month of the Basic Term (the **"EBO Date"**) for a purchase price equal to 27.315984 % of the Capitalized Lessor's Cost, which amount is $1,365,799.21 (the **"EBO Price"**) plus any applicable sales tax.

---

[1] Due on the Lease Commencement Date unless a later date is specified by Lessor.

[2] The Basic Term Lease Rate Factor and the Daily Lease Rate Factor may be adjusted upward in direct relation to any movement of the average life swap of 2.0 years (the **"Index Rate"**). The Index Rate to be used for comparison purposes shall be 2.185873 % as of April 26, 2022.

C.  **Tax Benefits: Depreciation Deductions**

    1.  Depreciation method is the 200% declining balance method, switching to straight line method for the 1st taxable year for which using the straight line method with respect to the adjusted basis as of the beginning of such year will yield a larger allowance.

    2.  Recovery Period: Four (4) years.

    3.  Basis: 100% of the Capitalized Lessor's Cost.

**CI.**  **Fees, Taxes and Charges**

Subject to jurisdiction specific requirements identified on any State Tax Addendum hereto, if any, fees, taxes, governmental assessments and charges (including interest and penalties thereon) of whatsoever nature, by whomsoever payable, (other than federal, state or local taxes levied on the net income of Lessor) levied, assessed or incurred during the entire term of the Lease in connection with the Equipment including, but not limited to, the titling and registration of the Equipment in all jurisdictions required by the nature of Lessee's business and the purchase, sale, ownership, rental, use, inspection and operation thereof, shall be paid by Lessee. In the event any of said fees, taxes, governmental assessments and charges (including, without limitation, fines for or costs related to traffic violations, speeding tickets, or similar infractions) have been paid by Lessor, or if Lessor is required to collect or pay any thereof, Lessee shall reimburse Lessor therefore, upon demand, as additional rent. Together with such additional rent, Lessee shall also pay any applicable administrative fee relating to the payment of such fines, assessments or other charges that Lessor may establish from time to time. If agreed by Lessor and Lessee, Lessee shall file, on behalf of Lessor in form satisfactory to Lessor and before the due date thereof, all required tax returns and reports concerning the Equipment with all appropriate governmental agencies and to mail a copy thereof, together with evidence of payment, to Lessor concurrently with the filing thereof. Lessee further agrees to keep or cause to be kept and made available to Lessor any and all necessary records relative to the use of the Equipment and/or pertaining to the aforesaid fees, taxes, governmental assessments and charges.

**E.**  **Insurance Coverage**

The insurance provisions set forth herein supplement those set forth in the Agreement. Liability and physical damage insurance for bodily injury and property damage to others and damage to or loss of Equipment by fire, theft, or otherwise, from the time each unit of Equipment is delivered to Lessee until such unit of Equipment is sold after return to Lessor and legal title passes to the purchaser thereof, shall be purchased and maintained by Lessee. Lessor shall not be required to order Equipment for Lessee's use until binders disclosing insurance coverage as herein provided have been delivered to Lessor. All insurance policies shall provide primary coverage, shall name Lessor (and any other party that Lessor may designate) as additional insured with respect to any liability insurance and as loss-payee with respect to any physical damage insurance, shall be in such amounts and with such insurers as shall be approved by Lessor, shall provide for a minimum of thirty (30) days prior written notice to Lessor before cancellation or material change that reduces the coverage for any reason, and shall provide that no act or default of any person other than Lessor shall affect Lessor's right to recovery under such policies. Minimum liability requirements shall be $1,000,000.00 for bodily injury or death to any one person; $1,000,000.00 for any one accident; $1,000,000.00 for property damage; or a combined single limit of $1,000,000.00 and actual cash value for fire, theft, comprehensive and collision. Deductible amounts shall not be in excess of $25,000.00. Lessee shall deliver the policies or other satisfactory evidence of insurance required hereunder to Lessor, but Lessor shall be under no duty to examine such evidence of insurance nor to advise Lessee in the event said insurance is not in compliance with this Lease. Evidence of renewal of all expiring policies will be delivered to Lessor at least sixty (60) days prior to their respective expiration dates. Lessor does not assume any liability for loss of or damage to the contents or personal property contained in any Equipment, and Lessee hereby releases and saves Lessor free from any and all liability for loss of or damage to any contents or personal property contained in said Equipment regardless of the circumstances under which such loss or damage may occur. Notwithstanding anything else herein to the contrary, in the event that Lessee fails to procure or maintain insurance as above provided or fails to perform any other of Lessee's duties or obligations as set forth in this Lease, Lessor may, but shall have no obligation to, obtain such insurance at Lessee's expense and perform such other duties and obligations of Lessee and any amounts expended therefore shall be due and payable immediately as Additional Rent.

**F.     Article 2A Notice**

IN ACCORDANCE WITH THE REQUIREMENTS OF ARTICLE 2A OF THE UNIFORM COMMERCIAL CODE AS ADOPTED IN THE APPLICABLE STATE, LESSOR HEREBY MAKES THE FOLLOWING DISCLOSURES TO LESSEE PRIOR TO EXECUTION OF THE LEASE, (A) THE PERSON(S) SUPPLYING THE EQUIPMENT IS AS SET FORTH IN THE DESCRIPTION OF EQUIPMENT SCHEDULE (THE **"SUPPLIER(S)"**), (B) LESSEE IS ENTITLED TO THE PROMISES AND WARRANTIES, INCLUDING THOSE OF ANY THIRD PARTY, PROVIDED TO LESSOR BY SUPPLIER(S), WHICH IS SUPPLYING THE EQUIPMENT IN CONNECTION WITH OR AS PART OF THE CONTRACT BY WHICH LESSOR ACQUIRED THE EQUIPMENT AND (C) WITH RESPECT TO SUCH EQUIPMENT, LESSEE MAY COMMUNICATE WITH SUPPLIER(S) AND RECEIVE AN ACCURATE AND COMPLETE STATEMENT OF SUCH PROMISES AND WARRANTIES, INCLUDING ANY DISCLAIMERS AND LIMITATIONS OF THEM OR OF REMEDIES. TO THE EXTENT PERMITTED BY APPLICABLE LAW, LESSEE HEREBY WAIVES ANY AND ALL RIGHTS AND REMEDIES CONFERRED UPON A LESSEE IN ARTICLE 2A AND ANY RIGHTS NOW OR HEREAFTER CONFERRED BY STATUTE OR OTHERWISE WHICH MAY LIMIT OR MODIFY ANY OF LESSOR'S RIGHTS OR REMEDIES UNDER THE DEFAULT AND REMEDIES SECTION OF THE AGREEMENT.

**G.     Stipulated Loss Value Table**

The Stipulated Loss Value for any unit of Equipment shall be the Capitalized Lessor's Cost of such unit multiplied by the appropriate percentage derived from the table set forth in the Stipulated Loss Value Table attached hereto. In the event that the Lease is for any reason extended, then the last percentage figure shown above shall control throughout any such extended term.

**H.     Modifications and Additions for This Schedule Only**

1.   For purposes of this Schedule, the Agreement is amended and/or supplemented as follows:

   (i)     Preferred Payment Terms. Credit to Lessee's account for this Lease may be delayed if payment is (a) not received at Lessor's payment address indicated in Lessor's invoice or other instructions from Lessor from time to time or (b) not accompanied by Lessor's invoice number. Preferred forms of payment include direct debit, wires, company checks and certified checks. Payment in any other form may delay processing or be returned to Lessee. Delayed credit may cause Lessee to incur a late payment fee. All credit for payments of Lessee's account for this Lease are subject to final payment by the institution on which the item of payment was drawn.

   (ii)    Maximum Lawful Rate/Compliance with Applicable Laws. The parties to the Lease intend to comply with any applicable law(s) governing the regulation of interest (if and to the extent that the Lease is determined to be subject to such laws). Accordingly, notwithstanding anything to the contrary in the Lease, in no event shall the Lease require the payment or permit the collection of interest or any amount in the nature of interest or fees in excess of the maximum amount permitted by applicable law. If for any reason the amount of any interest contracted for, charged or received under the Lease shall exceed the maximum amount of interest permitted by applicable law, then (i) any such excess which may have been collected shall, at Lessor's option, be either applied to amounts that are lawfully due and owing under the Lease or refunded to Lessee, and (ii) the effective rate of interest shall be automatically reduced to the maximum lawful contract rate allowed under applicable law as now or hereafter construed by a court of competent jurisdiction.

   (iii)   Information Sharing Consent. Lessee and each of Lessee's affiliates authorize Lessor to disclose information about Lessee and Lessee's affiliates that Lessor may at any time possess to any Lessor affiliate, successor, assign and/or participant, and/or to any manufacturer or vendor of any property subject to the Lease or to any other party with a financial interest in the Lease, whether such information was supplied by Lessee to Lessor or otherwise obtained by Lessor.

(iv)    <u>Lessor Assignment.</u>: Lessor, from time to time, may assign, sell, or transfer in whole or in part its interests in the Lease, or any of its rights under any of the Documents, including servicing rights, whether as part of a securitization transaction or by participation, assignment, sale or other transfer (in each case, a "**Lessor Transfer**"). Upon a Lessor Transfer of Lessor's entire right and interest under the Documents, Lessor shall automatically be relieved, from and after the date of such assignment, of liability for the performance of any obligation of Lessor contained in the Documents arising or accruing from or after the assignment.

(v)    <u>Governing Law</u>. As set forth in the Agreement.

(vi)    <u>Consent to Jurisdiction</u>. As set forth in the Agreement.

2.    <u>Promotional Materials</u>. Lessee hereby confirms that Lessor is authorized and permitted to use Lessee's name, logo and/or trademark in connection with certain promotional materials that Lessor may disseminate to the public in connection with the transaction contemplated under this Lease, the Agreement and/or (as the case may be) any other Lease entered into under the Agreement and the business relationship between Lessee and Lessor established under the Agreement and each Lease, and such promotional materials may include, but are not limited to, presentations, brochures, internet website, advertising in newspaper and/or other publications. Lessor agrees to give Lessee an opportunity to review and comment on any such promotional materials prior to their dissemination and will not include any dollar amount associated with any Lease without Lessee's prior written consent.

**I.**    **Payment Authorization**

Lessor is hereby irrevocably authorized and directed by Lessee to deliver and apply the proceeds due under this Schedule as follows:

| **Supplier Name** | **Address** | | **Amount** |
|---|---|---|---|
| Various | Various | | $5,000,000.00 |
| | | Total | $5,000,000.00 |

This authorization and direction is given pursuant to the same authority authorizing the above-mentioned financing.

**J.**    **Miscellaneous.**

If and to the extent that this Schedule is deemed a security agreement, as of the date of the Schedule, Lessee hereby grants to Lessor a security interest in the Equipment, together with all additions, attachments, accessories and accessions thereto whether or not furnished by Supplier of the Equipment and any and all substitutions, upgrades, replacements or exchanges therefor, and any and all insurance and/or other proceeds of the property in and against which a security interest is granted hereunder. This security interest is given to secure the payment and performance of all debts, obligations and liabilities of any kind whatsoever of Lessee to Lessor now existing or arising in the future under this Schedule and all other Schedules and Leases between Lessee and Lessor, and any renewals, extensions and modifications of such debts, obligations and liabilities.

**<u>DELIVERY AND ACCEPTANCE.</u> Upon delivery to and acceptance by Lessee of any item of the Equipment, Lessee shall execute and deliver to Lessor certificate of acceptance in form and substance satisfactory to Lessor (the "Certificate of Acceptance"). Unless otherwise agreed in writing by Lessor, Lessor shall have no obligation to advance any funds hereunder unless and until Lessor receives the executed Certificate of Acceptance.**

Lessee does further certify that as of (a) the date set forth below under Lessee's signature; or (b) (if such date is not completed) the date of this Schedule as set forth above: (i) Lessee is not in default under the Lease; (ii) the representations and warranties made by Lessee pursuant to or under the Lease are true and correct; and (iii) Lessee has reviewed and approves of the purchase documents for the Equipment, if any.

5

Lessee hereby authorizes Lessor to file a financing statement and amendments thereto describing the Equipment described in this Schedule and adding any other collateral described herein and containing any other information required by the applicable Uniform Commercial Code. Further, Lessee irrevocably grants to Lessor the power to sign Lessee's name and generally to act on behalf of Lessee to execute and file financing statements.

Except as expressly modified hereby, all terms and provisions of the Agreement shall remain in full force and effect. In the event of any conflict between the provisions of this Schedule and the provisions of the Agreement, the provisions of this Schedule shall prevail with respect to the Lease created hereunder. This Schedule is not binding or effective with respect to the Agreement or Equipment until executed on behalf of Lessor and Lessee by authorized representatives of Lessor and Lessee, respectively.

**IN WITNESS WHEREOF,** Lessee and Lessor have caused this Schedule to be executed by their duly authorized representatives as of the date indicated below.

LESSOR:

**Encina Equipment Finance SPV, LLC**

By: _Jaime Faith Soter_

Name: Jaime Faith Soter
Duly Authorized Signatory

Title: _____

Date: 05/26/2022

LESSEE:

**Pure Power Technologies, Inc.**

By: _Costas Loukellis_

Name: Costas Loukellis

Title: VP / CFO

Date: 6/13/2022

6

**STIPULATED LOSS VALUE TABLE**

| Month | SLV |
|---:|---:|
| 1 | 105.52% |
| 2 | 103.89% |
| 3 | 102.24% |
| 4 | 100.58% |
| 5 | 98.91% |
| 6 | 97.23% |
| 7 | 95.54% |
| 8 | 93.84% |
| 9 | 92.13% |
| 10 | 90.40% |
| 11 | 88.67% |
| 12 | 86.92% |
| 13 | 85.17% |
| 14 | 83.40% |
| 15 | 81.62% |
| 16 | 79.83% |
| 17 | 78.02% |
| 18 | 76.21% |
| 19 | 74.38% |
| 20 | 72.54% |
| 21 | 70.69% |
| 22 | 68.83% |
| 23 | 66.96% |
| 24 | 65.07% |
| 25 | 63.17% |
| 26 | 61.26% |
| 27 | 59.33% |
| 28 | 57.40% |
| 29 | 55.45% |
| 30 | 53.49% |
| 31 | 51.51% |
| 32 | 49.52% |
| 33 | 47.52% |
| 34 | 45.51% |
| 35 | 43.48% |
| 36 | 41.44% |
| 37 | 39.39% |
| 38 | 37.32% |
| 39 | 35.24% |
| 40 | 33.14% |
| 41 | 31.04% |
| 42 | 28.91% |
| 43 | 26.78% |
| 44 | 24.63% |
| 45 | 22.46% |
| 46 | 20.28% |
| 47 | 18.09% |
| 48 | 15.88% |

## DESCRIPTION OF EQUIPMENT SCHEDULE

| Supplier/Vendor Name | Equipment Description |
|---|---|
| Hose & Equipment Co., Inc (AFP) | Supplier Tooling - Test equipment - Hardware |
| Hose & Equipment Co., Inc (AFP) | Assembly Equipment  Test equipment - Hardware |
| AC Controls Company | Test equipment - flow meters |
| NRWell Ltd | Air Gauging - Proto Match Clearance Test equipment - PLC |
| Merlin Diesel Systems Ltd | Packout Station - Test equipment |
| Suco Technologies Inc | Dunnage -  WashTest equipment - sensors |
| Inductive Automation | Test software |
| MSI Viking | Gauging equipment |
| ATC Automation | Assembly equipment |
| PDI | Supplier tooling - low pressure fuel tube |
| USInatech Inc. | Supplier tooling - gear |

including all purchase orders, additions, attachments, accessories and accessions thereto and any and all substitutions, upgrades, replacements or exchanges therefor.

Equipment Listed above is located at:　　　　1410 Northpoint Blvd., Blythewood, SC 29016

8

## STATE TAX ADDENDUM

☐ APPLICABLE TO EQUIPMENT LOCATED IN: SC:  Lessee agrees that it will not list any of such Equipment for property tax purposes or report any property tax assessed against such Equipment until otherwise directed in writing by Lessor.  Upon receipt of any property tax bill pertaining to such Equipment from the appropriate taxing authority, Lessor will pay such tax and will invoice Lessee for the expense.  Upon receipt of such invoice, Lessee will promptly reimburse Lessor for such expense.

☒ APPLICABLE TO EQUIPMENT LOCATED IN: SC:  Lessee agrees that it will (a) list all such Equipment, (b) report all property taxes assessed against such Equipment and (c) pay all such taxes when due directly to the appropriate taxing authority until Lessor shall otherwise direct in writing.  Upon request of Lessor, Lessee shall promptly provide proof of filing and proof of payment to Lessor.

☐ PROPERTY TAX IS NOT APPLICABLE ON EQUIPMENT LOCATED IN: SC.

9

## EQUIPMENT SCHEDULE
## SCHEDULE NO. 002 DATED AUGUST 29, 2022
## BETWEEN ENCINA EQUIPMENT FINANCE SPV, LLC ("LESSOR")
## AND
## STANADYNE LLC and PURE POWER TECHNOLOGIES, INC. ("LESSEE")
## TO MASTER LEASE AGREEMENT DATED AS OF MAY 26, 2022
## BETWEEN LESSOR AND LESSEE

**Lessor & Mailing Address:**
Encina Equipment Finance SPV, LLC
1221 Post Road East
Westport, CT 06880

**Lessee & Mailing Address:**
Stanadyne LLC
92 Deerfield Road
Windsor, CT 06095

This Schedule is executed pursuant to and incorporates by reference the terms and conditions of and capitalized terms not defined herein shall have the meanings assigned to them in the Master Lease Agreement identified above ("**Agreement**"). This Schedule and the terms of the Agreement, which are incorporated by reference herein, are collectively referred to as the "**Lease**". This Schedule, incorporating by reference the Agreement, constitutes a separate instrument of lease. If any provision of this Schedule conflicts with any provision of the Agreement, then the provision contained in this Schedule shall control. Lessee authorizes Lessor to insert the serial numbers and other identification data of the Equipment (as described herein), dates, and other omitted factual matters of description in this Schedule.

All of the terms and conditions set forth in this Lease are subject to the satisfaction of all the following conditions precedent no later than the Lease Commencement Date, each in form and substance satisfactory to Lessor at its sole discretion: (i) all of the conditions precedent set forth in the Agreement (including Section 1 thereof), this Schedule and the other documents relating to this Schedule (the "**Documents**"); including all fees due and payable to Lessor as set forth in the Term Sheet executed by Lessee describing this lease transaction or other agreement between Lessor and Lessee regarding any and all fees; (ii) no Event of Default or event which with the passage of time or the giving of notice would become an Event of Default has occurred under the Agreement; (iii) as of the Lease Commencement Date, there will have been, since the date that this Schedule is delivered to Lessee for execution, no material adverse change (as determined by Lessor in its sole discretion) in the business prospects or projections, operations, management, financial or other conditions of Lessee, Guarantor, or any other party to whom or which Lessor may have recourse in regard to this Lease, or in the industry in which Lessee or Guarantor or such other party operates, or a change in control of any one of the aforesaid parties (except if consented to by Lessor in writing); and (iv) the absence, during the period from the date that this Schedule is delivered to Lessee for execution to the Lease Commencement Date, of any disruption of, or adverse change in, the leasing or lending market, leasing or loan syndication, or financial, banking or capital markets conditions. If any such condition precedent is not so satisfied by the Lease Commencement Date, Lessor shall have no obligation to proceed with the transactions contemplated under this Schedule or any other Documents.

A.   **Equipment; Use**

Subject to the terms and conditions of the Lease, Lessor agrees to lease to Lessee the equipment described on the attached Description of Equipment Schedule (the "**Equipment**") , which includes all purchase orders, additions, attachments, accessories and accessions thereto, and any and all substitutions, upgrades, replacements or exchanges therefor.

Use of the Equipment under this Lease is permitted only in the conduct of Lessee's business in the United States and only for lawful purposes. Lessee will permit the Equipment to be operated only by trained operators who are qualified, as applicable, properly licensed in accordance with the laws of the jurisdiction where such Equipment is used, and properly trained according to the Equipment manufacturer's guidelines and standards. All operators of the Equipment will be conclusively presumed to be the agents, employees or servants of Lessee and not of Lessor. Lessee shall in all respects comply, and cause all persons operating the Equipment to comply, with all applicable requirements of law

relating to the licensing, maintenance and operation of the Equipment and with all terms and conditions of policies of insurance relating to the Equipment. Lessee shall immediately notify Lessor of any change of location of any unit of Equipment, if the change of location shall be greater than 30 days.

Expense of operation and maintenance of Equipment in accordance with manufacturer's recommendations and in condition satisfactory to Lessor shall be the responsibility and obligation of Lessee. Lessee shall reimburse Lessor if Lessor shall pay any of such operating or maintenance expenses. If parts are removed from any unit of Equipment, then Lessee shall provide comparable replacements therefor and such replacements shall become part of the Equipment by accession. Lessee shall not alter any unit of Equipment without the prior written consent of Lessor, unless such alteration is required by law. Lessee agrees to remove all markings from the Equipment, at Lessee's expense, prior to the return of the Equipment to Lessor.

In the event that subsequent to the delivery date of any unit of Equipment any federal, state or local law, ordinance, rule or regulation shall require the installation of any additional equipment or accessories, including but not limited to anti-pollution and/or safety devices, or in the event that any other modifications of the Equipment shall be required by virtue of such law, ordinance, rule or regulation, then and in any of such events, Lessee shall pay the full cost thereof, including installation expenses. Lessor may, at its option, arrange for the installation of such equipment or the performance of such modifications, and Lessee agrees to pay the full cost thereof as Additional Rent, immediately upon receipt of an invoice for same.

**B.    Financial Terms**

1.  Advance Rent (if any): $69,947.92[1]

2.  Capitalized Lessor's Cost: $3,200,000.00

3.  Basic Term (No. of Months): 48

4.  Basic Term Lease Rate Factor: 2.185873%[2]

5.  Basic Term Commencement Date: 06/01/2023

6.  Lessee Federal Tax ID No.: 22-2940378

7.  Daily Lease Rate Factor: 0.072862%[2]

8.  Interim Rent: For the period from and including the Lease Commencement Date to but not including the Basic Term Commencement Date (**"Interim Period"**), Lessee shall pay as rent (**"Interim Rent"**) for each unit of Equipment, the product of the Daily Lease Rate Factor times the Capitalized Lessor's Cost of such unit times the number of days in the Interim Period. Interim Rent shall be due on the Lease Commencement Date.

9.  Basic Term Rent. Commencing on June 1, 2023 and on the same day of each month thereafter (each, a **"Rent Payment Date"**) during the Basic Term, Lessee shall pay as rent (**"Rent"**) the product of the Basic Term Lease Rate Factor times the Capitalized Lessor's Cost of all Equipment on this Schedule.

10. Renewal Term:   As may be agreed by Lessor and Lessee in a writing executed by both parties that is satisfactory in form and substance to Lessor.

11. Early Buy Out Date; Early Buy Out Purchase Price: So long as no Event of Default shall have occurred and be continuing, Lessee shall have the option to purchase all, but not less than all, of the Equipment on the date that commences the forty second (42nd) month of the Basic Term (the "**EBO Date**") for a purchase price equal to 27.315984% of the Capitalized Lessor's Cost, which amount is $874,111.50 (the "**EBO Price**") plus any applicable sales tax.

---

[1]  Due on the Lease Commencement Date unless a later date is specified by Lessor.

[2]  The Basic Term Lease Rate Factor and the Daily Lease Rate Factor may be adjusted upward in direct relation to any movement of the average life swap of 2.0 years (the "**Index Rate**"). The Index Rate to be used for comparison purposes shall be 2.185873% as of April 26, 2022.

**C.      Tax Benefits: Depreciation Deductions**

      1.    Depreciation method is the 200% declining balance method, switching to straight line method for the 1st taxable year for which using the straight line method with respect to the adjusted basis as of the beginning of such year will yield a larger allowance.

      2.    Recovery Period: Four (4) years.

      3.    Basis: 100% of the Capitalized Lessor's Cost.

**D.      Fees, Taxes and Charges**

Subject to jurisdiction specific requirements identified on any State Tax Addendum hereto, if any, fees, taxes, governmental assessments and charges (including interest and penalties thereon) of whatsoever nature, by whomsoever payable, (other than federal, state or local taxes levied on the net income of Lessor) levied, assessed or incurred during the entire term of the Lease in connection with the Equipment including, but not limited to, the titling and registration of the Equipment in all jurisdictions required by the nature of Lessee's business and the purchase, sale, ownership, rental, use, inspection and operation thereof, shall be paid by Lessee. In the event any of said fees, taxes, governmental assessments and charges (including, without limitation, fines for or costs related to traffic violations, speeding tickets, or similar infractions) have been paid by Lessor, or if Lessor is required to collect or pay any thereof, Lessee shall reimburse Lessor therefore, upon demand, as additional rent. Together with such additional rent, Lessee shall also pay any applicable administrative fee relating to the payment of such fines, assessments or other charges that Lessor may establish from time to time. If agreed by Lessor and Lessee, Lessee shall file, on behalf of Lessor in form satisfactory to Lessor and before the due date thereof, all required tax returns and reports concerning the Equipment with all appropriate governmental agencies and to mail a copy thereof, together with evidence of payment, to Lessor concurrently with the filing thereof. Lessee further agrees to keep or cause to be kept and made available to Lessor any and all necessary records relative to the use of the Equipment and/or pertaining to the aforesaid fees, taxes, governmental assessments and charges.

**E.      Insurance Coverage**

The insurance provisions set forth herein supplement those set forth in the Agreement. Liability and physical damage insurance for bodily injury and property damage to others and damage to or loss of Equipment by fire, theft, or otherwise, from the time each unit of Equipment is delivered to Lessee until such unit of Equipment is sold after return to Lessor and legal title passes to the purchaser thereof, shall be purchased and maintained by Lessee. Lessor shall not be required to order Equipment for Lessee's use until binders disclosing insurance coverage as herein provided have been delivered to Lessor. All insurance policies shall provide primary coverage, shall name Lessor (and any other party that Lessor may designate) as additional insured with respect to any liability insurance and as loss-payee with respect to any physical damage insurance, shall be in such amounts and with such insurers as shall be approved by Lessor, shall provide for a minimum of thirty (30) days prior written notice to Lessor before cancellation or material change that reduces the coverage for any reason, and shall provide that no act or default of any person other than Lessor shall affect Lessor's right to recovery under such policies. Minimum liability requirements shall be $1,000,000.00 for bodily injury or death to any one person; $1,000,000.00 for any one accident; $1,000,000.00 for property damage; or a combined single limit of $1,000,000.00 and actual cash value for fire, theft, comprehensive and collision. Deductible amounts shall not be in excess of $25,000.00. Lessee shall deliver the policies or other satisfactory evidence of insurance required hereunder to Lessor, but Lessor shall be under no duty to examine such evidence of insurance nor to advise Lessee in the event said insurance is not in compliance with this Lease. Evidence of renewal of all expiring policies will be delivered to Lessor at least sixty (60) days prior to their respective expiration dates. Lessor does not assume any liability for loss of or damage to the contents or personal property contained in any Equipment, and Lessee hereby releases and saves Lessor free from any and all liability for loss of or damage to any contents or personal property contained in said Equipment regardless of the circumstances under which such loss or damage may occur. Notwithstanding anything else herein to the contrary, in the event that Lessee fails to procure or maintain insurance as above provided or fails to perform any other of Lessee's duties or obligations as set forth in this Lease, Lessor may, but shall have no obligation to, obtain such insurance at Lessee's expense and perform such other duties and obligations of Lessee and any amounts expended therefore shall be due and payable immediately as Additional Rent.

**F.   Article 2A Notice**

IN ACCORDANCE WITH THE REQUIREMENTS OF ARTICLE 2A OF THE UNIFORM COMMERCIAL CODE AS ADOPTED IN THE APPLICABLE STATE, LESSOR HEREBY MAKES THE FOLLOWING DISCLOSURES TO LESSEE PRIOR TO EXECUTION OF THE LEASE, (A) THE PERSON(S) SUPPLYING THE EQUIPMENT IS AS SET FORTH IN THE DESCRIPTION OF EQUIPMENT SCHEDULE (THE **"SUPPLIER(S)"**), (B) LESSEE IS ENTITLED TO THE PROMISES AND WARRANTIES, INCLUDING THOSE OF ANY THIRD PARTY, PROVIDED TO LESSOR BY SUPPLIER(S), WHICH IS SUPPLYING THE EQUIPMENT IN CONNECTION WITH OR AS PART OF THE CONTRACT BY WHICH LESSOR ACQUIRED THE EQUIPMENT AND (C) WITH RESPECT TO SUCH EQUIPMENT, LESSEE MAY COMMUNICATE WITH SUPPLIER(S) AND RECEIVE AN ACCURATE AND COMPLETE STATEMENT OF SUCH PROMISES AND WARRANTIES, INCLUDING ANY DISCLAIMERS AND LIMITATIONS OF THEM OR OF REMEDIES. TO THE EXTENT PERMITTED BY APPLICABLE LAW, LESSEE HEREBY WAIVES ANY AND ALL RIGHTS AND REMEDIES CONFERRED UPON A LESSEE IN ARTICLE 2A AND ANY RIGHTS NOW OR HEREAFTER CONFERRED BY STATUTE OR OTHERWISE WHICH MAY LIMIT OR MODIFY ANY OF LESSOR'S RIGHTS OR REMEDIES UNDER THE DEFAULT AND REMEDIES SECTION OF THE AGREEMENT.

**G.   Stipulated Loss Value Table**

The Stipulated Loss Value for any unit of Equipment shall be the Capitalized Lessor's Cost of such unit multiplied by the appropriate percentage derived from the table set forth in the Stipulated Loss Value Table attached hereto. In the event that the Lease is for any reason extended, then the last percentage figure shown above shall control throughout any such extended term.

**H.   Modifications and Additions for This Schedule Only**

1.   For purposes of this Schedule, the Agreement is amended and/or supplemented as follows:

   (i)   <u>Preferred Payment Terms</u>. Credit to Lessee's account for this Lease may be delayed if payment is (a) not received at Lessor's payment address indicated in Lessor's invoice or other instructions from Lessor from time to time or (b) not accompanied by Lessor's invoice number. Preferred forms of payment include direct debit, wires, company checks and certified checks. Payment in any other form may delay processing or be returned to Lessee. Delayed credit may cause Lessee to incur a late payment fee. All credit for payments of Lessee's account for this Lease are subject to final payment by the institution on which the item of payment was drawn.

   (ii)   <u>Maximum Lawful Rate/Compliance with Applicable Laws</u>. The parties to the Lease intend to comply with any applicable law(s) governing the regulation of interest (if and to the extent that the Lease is determined to be subject to such laws). Accordingly, notwithstanding anything to the contrary in the Lease, in no event shall the Lease require the payment or permit the collection of interest or any amount in the nature of interest or fees in excess of the maximum amount permitted by applicable law. If for any reason the amount of any interest contracted for, charged or received under the Lease shall exceed the maximum amount of interest permitted by applicable law, then (i) any such excess which may have been collected shall, at Lessor's option, be either applied to amounts that are lawfully due and owing under the Lease or refunded to Lessee, and (ii) the effective rate of interest shall be automatically reduced to the maximum lawful contract rate allowed under applicable law as now or hereafter construed by a court of competent jurisdiction.

   (iii)   <u>Information Sharing Consent</u>. Lessee and each of Lessee's affiliates authorize Lessor to disclose information about Lessee and Lessee's affiliates that Lessor may at any time possess to any Lessor affiliate, successor, assign and/or participant, and/or to any manufacturer or vendor of any property subject to the Lease or to any other party with a financial interest in the Lease, whether such information was supplied by Lessee to Lessor or otherwise obtained by Lessor.

4

(iv)    <u>Lessor Assignment.</u>: Lessor, from time to time, may assign, sell, or transfer in whole or in part its interests in the Lease, or any of its rights under any of the Documents, including servicing rights, whether as part of a securitization transaction or by participation, assignment, sale or other transfer (in each case, a "**Lessor Transfer**"). Upon a Lessor Transfer of Lessor's entire right and interest under the Documents, Lessor shall automatically be relieved, from and after the date of such assignment, of liability for the performance of any obligation of Lessor contained in the Documents arising or accruing from or after the assignment.

(v)    <u>Governing Law</u>. As set forth in the Agreement.

(vi)    <u>Consent to Jurisdiction</u>. As set forth in the Agreement.

2.    <u>Promotional Materials</u>. Lessee hereby confirms that Lessor is authorized and permitted to use Lessee's name, logo and/or trademark in connection with certain promotional materials that Lessor may disseminate to the public in connection with the transaction contemplated under this Lease, the Agreement and/or (as the case may be) any other Lease entered into under the Agreement and the business relationship between Lessee and Lessor established under the Agreement and each Lease, and such promotional materials may include, but are not limited to, presentations, brochures, internet website, advertising in newspaper and/or other publications. Lessor agrees to give Lessee an opportunity to review and comment on any such promotional materials prior to their dissemination and will not include any dollar amount associated with any Lease without Lessee's prior written consent.

## I.    Payment Authorization

Lessor is hereby irrevocably authorized and directed by Lessee to deliver and apply the proceeds due under this Schedule as follows:

| <u>Supplier Name</u> | <u>Wire Transfer Instructions</u> | | <u>Amount</u> |
|---|---|---|---|
| Various | TBD | | $3,200,000.00 |
| | | Total | $3,200,000.00 |

This authorization and direction is given pursuant to the same authority authorizing the above-mentioned financing.

## J.    Miscellaneous.

If and to the extent that this Schedule is deemed a security agreement, as of the date of the Schedule, Lessee hereby grants to Lessor a security interest in the Equipment, together with all additions, attachments, accessories and accessions thereto whether or not furnished by Supplier of the Equipment and any and all substitutions, upgrades, replacements or exchanges therefor, and any and all insurance and/or other proceeds of the property in and against which a security interest is granted hereunder. This security interest is given to secure the payment and performance of all debts, obligations and liabilities of any kind whatsoever of Lessee to Lessor now existing or arising in the future under this Schedule and all other Schedules and Leases between Lessee and Lessor, and any renewals, extensions and modifications of such debts, obligations and liabilities.

**DELIVERY AND ACCEPTANCE.** **Upon delivery to and acceptance by Lessee of any item of the Equipment, Lessee shall execute and deliver to Lessor certificate of acceptance in form and substance satisfactory to Lessor (the "Certificate of Acceptance"). Unless otherwise agreed in writing by Lessor, Lessor shall have no obligation to advance any funds hereunder unless and until Lessor receives the executed Certificate of Acceptance.**

Lessee does further certify that as of (a) the date set forth below under Lessee's signature; or (b) (if such date is not completed) the date of this Schedule as set forth above: (i) Lessee is not in default under the Lease; (ii) the representations and warranties made by Lessee pursuant to or under the Lease are true and correct; and (iii) Lessee has reviewed and approves of the purchase documents for the Equipment, if any.

5

Lessee hereby authorizes Lessor to file a financing statement and amendments thereto describing the Equipment described in this Schedule and adding any other collateral described herein and containing any other information required by the applicable Uniform Commercial Code. Further, Lessee irrevocably grants to Lessor the power to sign Lessee's name and generally to act on behalf of Lessee to execute and file financing statements.

Except as expressly modified hereby, all terms and provisions of the Agreement shall remain in full force and effect. In the event of any conflict between the provisions of this Schedule and the provisions of the Agreement, the provisions of this Schedule shall prevail with respect to the Lease created hereunder. This Schedule is not binding or effective with respect to the Agreement or Equipment until executed on behalf of Lessor and Lessee by authorized representatives of Lessor and Lessee, respectively.

**IN WITNESS WHEREOF,** Lessee and Lessor have caused this Schedule to be executed by their duly authorized representatives as of the date indicated below.

LESSOR:                                          LESSEE:

Encina Equipment Finance SPV, LLC                Stanadyne LLC

By: _____                    By: _____

Name: _____                    Name: ____Costas Loukellis____
        Jaime Faith Soter
        Duly Authorized Signatory

Title: _____                    Title: ___VP / CFO___

Date: ____8/29/2022____                           Date: ___8/26/22___

6

## STIPULATED LOSS VALUE TABLE

| Month | SLV |
|---|---|
| 1 | 105.52% |
| 2 | 103.89% |
| 3 | 102.24% |
| 4 | 100.58% |
| 5 | 98.91% |
| 6 | 97.23% |
| 7 | 95.54% |
| 8 | 93.84% |
| 9 | 92.13% |
| 10 | 90.40% |
| 11 | 88.67% |
| 12 | 86.92% |
| 13 | 85.17% |
| 14 | 83.40% |
| 15 | 81.62% |
| 16 | 79.83% |
| 17 | 78.02% |
| 18 | 76.21% |
| 19 | 74.38% |
| 20 | 72.54% |
| 21 | 70.69% |
| 22 | 68.83% |
| 23 | 66.96% |
| 24 | 65.07% |
| 25 | 63.17% |
| 26 | 61.26% |
| 27 | 59.33% |
| 28 | 57.40% |
| 29 | 55.45% |
| 30 | 53.49% |
| 31 | 51.51% |
| 32 | 49.52% |
| 33 | 47.52% |
| 34 | 45.51% |
| 35 | 43.48% |
| 36 | 41.44% |
| 37 | 39.39% |
| 38 | 37.32% |
| 39 | 35.24% |
| 40 | 33.14% |
| 41 | 31.04% |
| 42 | 28.91% |
| 43 | 26.78% |
| 44 | 24.63% |
| 45 | 22.46% |
| 46 | 20.28% |
| 47 | 18.09% |
| 48 | 15.88% |

## DESCRIPTION OF EQUIPMENT SCHEDULE

| Supplier/Vendor Name | Equipment Description |
| --- | --- |
| GF Machining Solutions LLC | ML-5 Laser Drilling Machine |
| Mikron Corp. | Injector Welding Cells |
| IPG Photonics.com | Laser Welders and Camera Assemblies |
| Thomson Precision | Precision Ball |
| Shah Brothers | Needle |
| Jiangyou | Retainer, Coil Housing, Dummy Seat |
| AEA | Various |

and including all purchase orders, additions, attachments, accessories and accessions thereto, and any and all substitutions, upgrades, replacements or exchanges therefor.

Equipment listed above is located at 405 White Street, Jacksonville, NC 28546.

# STATE TAX ADDENDUM

☐   APPLICABLE TO EQUIPMENT LOCATED IN NC:  Lessee agrees that it will not list any of such Equipment for property tax purposes or report any property tax assessed against such Equipment until otherwise directed in writing by Lessor.  Upon receipt of any property tax bill pertaining to such Equipment from the appropriate taxing authority, Lessor will pay such tax and will invoice Lessee for the expense.  Upon receipt of such invoice, Lessee will promptly reimburse Lessor for such expense.

☒   APPLICABLE TO EQUIPMENT LOCATED IN NC:  Lessee agrees that it will (a) list all such Equipment, (b) report all property taxes assessed against such Equipment and (c) pay all such taxes when due directly to the appropriate taxing authority until Lessor shall otherwise direct in writing.  Upon request of Lessor, Lessee shall promptly provide proof of filing and proof of payment to Lessor.

☐   PROPERTY TAX NOT APPLICABLE ON EQUIPMENT LOCATED IN NC.

9

**Addendum to Equipment Schedule — Progress Payments**

This Addendum to Equipment Schedule ("Addendum") dated ~~June 26~~ *MAY 26*, 2022, is supplemental to and made a part of Equipment Schedule No. 001, dated ~~June~~ *MAY 26*, 2022 between Encina Equipment Finance SPV, LLC ("Lessor") and Pure Power Technologies, Inc., ("PPT" or "Lessee") to Master Lease Agreement dated as of May 26, 2022, between Lessor and Lessee (the Equipment Schedule and Master Lease as incorporated therein, together forming the "Lease"). Capitalized terms used in this Addendum without definition shall have the meanings set forth in the Lease unless the context hereof otherwise specifically requires. This Addendum is to be construed as supplemental to, and part of, the Lease. In the event of any inconsistency between the Lease and this Addendum, the terms and provisions of this Addendum shall prevail.

Notwithstanding the terms and conditions contained in the Lease, and to the limited extent hereof, the parties agree as follows:

Lessor has received a request from Lessee to advance funds to the supplier (s) of the Equipment (each a "Supplier") prior to Lessee's written acceptance of all items of Equipment relating to the Lease. Provided (i) no Event of Default has occurred and remains uncured under the Lease, (ii) there has been no material adverse change in Lessee's or any Guarantor's financial condition or operating performance, as determined in Lessor's sole and absolute judgment, and (iii) Lessor has received such documentation and/or other items as Lessor may at its discretion require, Lessor agrees to make certain payment(s) on behalf of Lessee with respect to items of Equipment (each a "Progress Payment"). Lessee shall authorize each Progress Payment by providing Lessor with a Payment Authorization in the form attached hereto (each a "Payment Authorization") setting forth a payment authorization date (the "Payment Authorization Date"). If Lessee has entered into a purchase order and/or other documents relating to the Equipment (collectively, the "Purchase Documents") with a Supplier, Lessee hereby assigns to Lessor all of its rights and interests in the Equipment and the Purchase Documents, but none of Lessee's obligations.

With regard to the acceptance of the Equipment, Lessee shall execute a Certificate of Acceptance in the form attached hereto, which Certificate of Acceptance shall be deemed the controlling document as regards (i) the acceptance of the Equipment, (ii) the determination of the Lease Commencement Date, and (iii) for all other purposes under the Lease.

Lessee will pay to Lessor a daily rental fee with respect to each Progress Payment ("Progress Rent") from the Payment Authorization Date thereof, up to, but not including, the Basic Term Commencement Date. Daily Progress Rent will be calculated as follows: the amount of the Progress Payment shall be multiplied by the Basic Term Lease Rate Factor set forth in the Lease and the product thereof then divided by thirty (30), and any and all applicable sales and/or use taxes added. Progress Rent with respect to each Progress Payment will be billed monthly, and is due and payable by Lessee to Lessor on the 1st day of each month.

Notwithstanding any provision contained herein or in the Lease, Lessor will not be required to fund a Progress Payment after May 20, 2023 (the "Expiration Date") or if the aggregate of Progress Payments would exceed $5,000,000.00. If as of the Expiration Date, either (a) the Lease Commencement Date has not occurred or (b) all conditions required for commencement of the Basic Term have not been satisfied in Lessor's opinion, Lessor may, at its sole option, elect one of the following three alternatives: (i) Lessor may commence the Basic Term (using the Expiration Date as the Basic Term Commencement Date) based on the portion of the Equipment that has been delivered to and accepted by Lessee in writing or by Lessee's use of the Equipment; (ii) Lessor may, at its sole and absolute discretion, establish a new Expiration Date; or (iii) Lessor may require Lessee pay to Lessor an amount equal to: (1) the aggregate of all Progress Payments, plus a charge equal to seven percent (7%) of such aggregate amount, representing an amount fairly estimated by Lessor to compensate it for the significant underwriting, due diligence and set-up costs relating to the Progress Payments hereunder that will be recovered by Lessor only if the Basic Term is commenced and all obligations of Lessee fully performed by Lessee, plus (2) all Progress Rent, taxes, late fees, and other charges that are due and owing under the terms of the Lease (collectively, the "Reimbursement"). If Lessor elects Reimbursement, Lessee hereby unconditionally agrees to pay said Reimbursement to Lessor in full within ten (10) days of said election, and Lessor, upon receipt of such Reimbursement in full, shall cancel the Lease and shall convey all of Lessor's right, title and interest in and to the Equipment and Purchase Documents to Lessee, free from all liens and encumbrances arising through Lessor, but otherwise on an AS-IS, WHERE-IS basis without representation or warranty of any kind. The failure to pay such Reimbursement or any other amount hereunder when due shall constitute an Event of Default under the Lease.

Page 1 of 3

If the Equipment is not manufactured and delivered as required by the Purchase Documents or is not properly installed, does not operate as represented or warranted by Supplier, or is unsatisfactory for any reason, Lessee shall make all claims pertaining thereto solely against Supplier and shall, nevertheless, pay Lessor all amounts due under this Addendum and the Lease. Lessor shall have no liability to Lessee or any third party for any direct, indirect, special or consequential damages arising out of this Addendum, the Lease or the Equipment. Upon the occurrence of an Event of Default, Lessor may require Lessee to pay the Reimbursement, in addition to any and all rights and remedies of Lessor under the Lease and/or at law.

Lessee shall provide Lessor with such updated financial information and/or reports with respect to the delivery and installation of the Equipment as Lessor may request from time to time. Lessee has no interest in or right to any Progress Payment made by Lessor, and if any Progress Payment moneys are returned or refunded to Lessee by Supplier, Lessee agrees to hold such moneys in trust for Lessor and to immediately forward such moneys to Lessor. To secure payment and performance of Lessee's obligations under this Addendum and in the event the Lease is deemed a security agreement, Lessee's obligations under the Lease, Lessee grants to Lessor a security interest in the Equipment and all attachments, accessories, additions, substitutions, products, replacements and rentals and proceeds thereof (including insurance proceeds).

IN WITNESS WHEREOF the parties hereto, by their authorized signatories, have executed this Addendum at the date set forth below their respective signatures.

**Lessor: ENCINA EQUIPMENT FINANCE SPV, LLC**

By: _(signature)_

Print Name: _____Jaime Faith Soter_____

Title: _____Duly Authorized Signatory_____

Date: _____05/26/2022_____

**Lessee: Pure Power Technologies, Inc.**

By: _(signature)_

Print Name: _____Costas Loukellis_____

Title: _____VP / CFO_____

Date: _____6/13/2022_____



August 29, 2022

Pure Power Technologies, Inc.  ("PPT")
1410 Northpoint Blvd.
Blythewood, SC 29016

Re:  Progress Payment Addendum Modifications

Dear PPT:

Reference is made to that certain Equipment Schedule No. 01 dated May 26, 2022 (the "Schedule") including Addendum to Equipment Schedule – Progress Payments (the "Progress Payment  Addendum"), to that certain Master Lease Agreement dated as of May 26, 2022 (the "Agreement"and together with the Schedule and the Addendum, the "Lease") between Encina Equipment Finance SPV, LLC, ("Lessor") and Pure Power Technologies, Inc. ("Lessee"). Capitalized terms used herein shall have the same meaning as in the Lease, unless otherwise defined herein.

Lessor and Lessee hereby agree to the following modifications to the Progress Payment Addendum:

- The aggregate amount of Progress Payments referenced in the fifth full paragraph shall be reduced from $5,000,000.00 to $2,300,000.00.

Please confirm your agreement by signing below.

Sincerely,                                          Acknowledged, consented to and agreed to:

**ENCINA EQUIPMENT FINANCE SPV, LLC**          **PURE POWER TECHNOLOGIES, INC.**

(Lessor)                                          (Lessee)

BY: _Jaime Faith Soter_                            BY: _____

TITLE: Jaime Faith Soter                           TITLE: ___VP / CFO___

DATE: Duly Authorized Signatory                    DATE: ___8/26/22___

**Addendum to Equipment Schedule — Progress Payments**

This Addendum to Equipment Schedule ("Addendum") dated August 29, 2022, is supplemental to and made a part Equipment Schedule No. 002 dated August 29, 2022 between Encina Equipment Finance SPV, LLC ("Lessor") and Stanadyne LLC ("Lessee") to Master Lease Agreement dated as of  May 26, 2022 between Lessor and Lessee (the Equipment Schedule and Master Lease as incorporated therein, together forming the "Lease").  Capitalized terms used in this Addendum without definition shall have the meanings set forth in the Lease, unless the context hereof otherwise specifically requires.  This Addendum is to be construed as supplemental to, and part of, the Lease.  In the event of any inconsistency between the Lease and this Addendum, the terms and provisions of this Addendum shall prevail.

Notwithstanding the terms and conditions contained in the Lease, and to the limited extent hereof, the parties agree as follows:

Lessor has received a request from Lessee to advance funds to supplier(s) of the Equipment (each a "Supplier") prior to Lessee's written acceptance of all items of Equipment relating to the Lease.  Provided (i) no Event of Default has occurred and remains uncured under the Lease, (ii) there has been no material adverse change in Lessee's or any Guarantor's financial condition or operating performance, as determined in Lessor's sole and absolute judgement, and (iii) Lessor has received such documentation and/or other items as Lessor may at its discretion require, Lessor agrees to make certain payment(s) on behalf of Lessee with respect to items of Equipment (each a "Progress Payment"). Lessee shall authorize each Progress Payment by providing Lessor with a Payment Authorization in the form attached hereto (each a "Payment Authorization") setting forth a payment authorization date (the "Payment Authorization Date").  If Lessee has entered into a purchase order and/or other documents relating to the Equipment (collectively, the "Purchase Documents") with a Supplier, Lessee hereby assigns to Lessor all of its rights and interests in the Equipment and the Purchase Documents, but none of Lessee's obligations.

With regard to the acceptance of the Equipment, Lessee shall execute a Certificate of Acceptance in the form attached hereto, which Certificate of Acceptance shall be deemed the controlling document as regards (i) the acceptance of the Equipment, (ii) the determination of the Lease Commencement Date, and (iii) for all other purposes under the Lease.

Lessee will pay to Lessor a daily rental fee with respect to each Progress Payment ("Progress Rent") from the Payment Authorization Date thereof, up to, but not including, the Basic Term Commencement Date.  Daily Progress Rent will be calculated as follows:  the amount of the Progress Payment shall be multiplied by the Basic Term Lease Rate Factor set forth in the Lease and the product thereof then divided by thirty (30), and any and all applicable sales and/or use taxes added.  Progress Rent with respect to each Progress Payment will be billed monthly, and is due and payable by Lessee to Lessor on the 1st day of each month.

Notwithstanding any provision contained herein or in the Lease, Lessor will not be required to fund a Progress Payment after May 20, 2023 (the "Expiration Date") or if the aggregate of Progress Payments would exceed $3,200,000.00.  If as of the Expiration Date, either (a) the Lease Commencement Date has not occurred or (b) all conditions required for commencement of the Basic Term have not been satisfied in Lessor's opinion, Lessor may, at its sole option, elect one of the following three alternatives:  (i) Lessor may commence the Basic Term (using the Expiration Date as the Basic Term Commencement Date) based on the portion of the Equipment that has been delivered to and accepted by Lessee in writing or by Lessee's use of the Equipment; (ii) Lessor may, at its sole and absolute discretion, establish a new Expiration Date; or (iii) Lessor may require Lessee pay to Lessor an amount equal to:  (1) the aggregate of all Progress Payments, plus a charge equal to seven percent (7%) of such aggregate amount, representing an amount fairly estimated by Lessor to compensate it for the significant underwriting, due diligence and set-up costs relating to the Progress Payments hereunder that will be recovered by Lessor only if the Basic Term is commenced and all obligations of Lessee fully performed by Lessee, plus (2) all Progress Rent, taxes, late fees, and other charges that are due and owing under the terms of the Lease (collectively, the "Reimbursement").  If Lessor elects Reimbursement, Lessee hereby unconditionally agrees to pay said Reimbursement to Lessor in full within ten (10) days of said election, and Lessor, upon receipt of such Reimbursement in full, shall cancel the Lease and shall convey all of Lessor's right, title and interest in and to the Equipment and Purchase Documents to Lessee, free from all liens and encumbrances arising through Lessor, but otherwise on an AS-IS, WHERE-IS basis without representation or warranty of any kind.  The failure to pay such Reimbursement or any other amount hereunder when due shall constitute an Event of Default under the Lease.

If the Equipment is not manufactured and delivered as required by the Purchase Documents or is not properly installed, does not operate as represented or warranted by Supplier, or is unsatisfactory for any reason, Lessee shall make all claims pertaining thereto solely against Supplier and shall, nevertheless, pay Lessor all amounts due under this Addendum and the Lease. Lessor shall have no liability to Lessee or any third party for any direct, indirect, special or consequential damages arising out of this Addendum, the Lease or the Equipment. Upon the occurrence of an Event of Default, Lessor may require Lessee to pay the Reimbursement, in addition to any and all rights and remedies of Lessor under the Lease and/or at law.

Lessee shall provide Lessor with such updated financial information and/or reports with respect to the delivery and installation of the Equipment as Lessor may request from time to time. Lessee has no interest in or right to any Progress Payment made by Lessor, and if any Progress Payment moneys are returned or refunded to Lessee by Supplier, Lessee agrees to hold such moneys in trust for Lessor and to immediately forward such moneys to Lessor. To secure payment and performance of Lessee's obligations under this Addendum and in the event the Lease is deemed a security agreement, Lessee's obligations under the Lease, Lessee grants to Lessor a security interest in the Equipment and all attachments, accessories, additions, substitutions, products, replacements and rentals and proceeds thereof (including insurance proceeds).

IN WITNESS WHEREOF the parties hereto, by their authorized signatories, have executed this Addendum at the date set forth below their respective signatures.

**Lessor:  ENCINA EQUIPMENT FINANCE SPV, LLC**

By: _____

Print Name: _____

Title: _____

Date: _____


**Lessee:  STANADYNE LLC**

By: _____

Print Name: ___Costas Loukellis___

Title: ___VP  / CFO___

Date: ___8/26/22___

**EXHIBIT ONLY**

**PROGRESS PAYMENT AUTHORIZATION #___**

Reference is made to Equipment Schedule No. _____ dated _____ between Encina Equipment Finance SPV, LLC ("Lessor") and _____ ("Lessee") to Master Lease Agreement dated as of _____ between Lessor and Lessee and that certain Addendum to Equipment Schedule – Progress Payments dated_____ , between Lessor and Lessee.

Lessee hereby directs Lessor to remit payments to Suppliers in accordance with the following Progress Payment Authorization:

| **Supplier** | **Amount (USD)** | **Wire Instructions** |
|---|---|---|

**Lessee:** _____

By: _____

Name: _____

Title: _____