## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re* | Chapter 11 |
| **STANADYNE LLC, *et al.*,**[1] | Case No. 23-10207 (TMH) |
| **Debtors.** | (Jointly Administered) |
| | **Ref. Docket No. 245** |

### CERTIFICATION OF COUNSEL

On April 27, 2023, the above-captioned debtors and debtors in possession (collectively, the "Debtors") filed the *Debtors' Motion for Entry of: (A) an Order (I) Scheduling a Hearing on the Approval of the Sale of All or Substantially All of the Debtors' Assets Free and Clear of All Encumbrances Other Than Assumed Liabilities and Permitted Encumbrances, and the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (II) Approving Certain Bidding Procedures and Assumption and Assignment Procedures, and the Form and Manner of Notice Thereof, (III) Authorizing the Debtors to Enter into the Stalking Horse Purchase Agreement, and (IV) Granting Related Relief; and (B) an Order (I) Approving Asset Purchase Agreement, (II) Authorizing the Sale of All or Substantially All of the Debtors' Assets Free and Clear of All Encumbrances Other Than Assumed Liabilities and Permitted Encumbrances, (III) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (IV) Granting Related Relief* [D.I. 245] (the "Motion") with the United States Bankruptcy Court for the District of Delaware.  A proposed form of order approving the Motion was attached to the Motion as Exhibit A (the "Proposed Order").  The deadline to file objections

---

[1]   The debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number are:  Stanadyne LLC (0378); Pure Power Technologies, Inc. (5202); Stanadyne PPT Holdings, Inc. (2594); and Stanadyne PPT Group Holdings, Inc. (1734).  The Debtors' headquarters are located at 405 White Street, Jacksonville, North Carolina 28546.

or otherwise respond to the Motion was May 11, 2023 at 4:00 p.m. (ET) (the "Objection Deadline").

Prior to the Objection Deadline, the Debtors received informal comments to the Proposed Order from the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee"), the Pension Benefit Guaranty Corporation (the "PBGC"), and the Official Committee of Unsecured Creditors (the "Committee").  No other responses or objections to the Motion were received.

Following discussions with the U.S. Trustee, PBGC, and the Committee, the Debtors agreed to a revised form of order (the "Revised Proposed Order") approving the Motion, a copy of which is attached hereto as **Exhibit A**.  The Revised Proposed Order resolves the informal comments of the U.S. Trustee, the PBGC, and the Committee.  For the convenience of the Court and other interested parties, a blackline comparing the Revised Proposed Order against the Proposed Order is attached hereto as **Exhibit B**.

The Debtors submit that the Revised Proposed Order is appropriate and consistent with the relief requested in the Motion and discussions with the U.S. Trustee, PBGC, and the Committee, which do not object to entry of the Revised Proposed Order.  Accordingly, the Debtors respectfully request that the Court enter the Revised Proposed Order at its earliest convenience without further hearing or notice.

Dated:  May 15, 2023
       Wilmington, Delaware

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Ashley E. Jacobs*
Michael R. Nestor (DE Bar No. 3526)
Andrew L. Magaziner (DE Bar No. 5426)
Ashley E. Jacobs (DE Bar No. 5635)
1000 North King Street
Rodney Square
Wilmington, Delaware 19801-6108
Telephone:  (302) 571-6600
Facsimile:  (302) 571-1253
Email:  mnestor@ycst.com
      amagaziner@ycst.com
      ajacobs@ycst.com

   -and-

Kathryn A. Coleman
Christopher Gartman
HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, NY 10004-1482
Telephone: (212) 837-6000
Facsimile:  (212) 422-4726
Email:  katie.coleman@hugheshubbard.com
      chris.gartman@hugheshubbard.com

*Counsel for the Debtors*

30370772.1

**<u>Exhibit A</u>**

**Revised Proposed Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re* | **Chapter 11** |
| **STANADYNE LLC, *et al.*,**[1] | **Case No. 23-10207 (TMH)** |
| **Debtors.** | **(Jointly Administered)** |
| | **Ref. Docket No. 245** |

**ORDER (I) APPROVING BIDDING PROCEDURES, (II) SCHEDULING AN
AUCTION AND A SALE HEARING, (III) APPROVING THE FORM AND
MANNER OF NOTICE THEREOF, (IV) ESTABLISHING NOTICE AND
PROCEDURES FOR THE ASSUMPTION AND ASSIGNMENT AND SALE OF
CONTRACTS AND LEASES, AND (V) GRANTING RELATED RELIEF**

Upon the motion (the "Motion") of the above-captioned debtors and debtors in possession

(collectively, the "Debtors") for entry of an order (this "Order"), (a) authorizing and approving the

bidding procedures attached hereto as **Exhibit 1** (the "Bidding Procedures"),[2] (b) approving the

form and manner of notice of the Auction and the Sale Hearing with respect to the Sale of all or

substantially all of the Debtors' assets (the "Assets," as further defined in the Bidding Procedures),

(c) scheduling an Auction and a Sale Hearing, (d) establishing notice and procedures for the

assumption, assignment and sale of executory contracts and unexpired leases, and (e) granting

related relief, all as more fully set forth in the Motion; and upon the First Day Declaration; and

this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the

*Amended Standing Order of Reference from the United States District Court for the District of*

*Delaware*, dated February 29, 2012; and this Court having found that this is a core proceeding

---

[1.] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number are:  Stanadyne LLC (0378); Pure Power Technologies, Inc. (5202); Stanadyne PPT Holdings, Inc. (2594); and Stanadyne PPT Group Holdings, Inc. (1734).  The Debtors' headquarters are located at 405 White Street, Jacksonville, North Carolina 28546.

[2] Capitalized terms used in this Order but not otherwise herein defined have the meanings given to such terms in the Motion or Bidding Procedures, as applicable.

pursuant to 28 U.S.C. § 157(b)(2), and that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

**BASED ON THE RECORD ESTABLISHED AT THE HEARING, THE COURT HEREBY FINDS THAT:**

A.      The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.      This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334. This proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper in this district and in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

C.      Good and sufficient notice of the Motion, the Bidding Procedures, and the relief sought in the Motion has been given under the circumstances, and no other or further notice is

required except as set forth herein. A reasonable opportunity to object or be heard regarding the relief provided herein has been afforded to parties in interest.

        D.      The bases for the relief requested in the Motion are: (i) sections 105, 363, and 365 of the Bankruptcy Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"); (ii) Rules 2002(a)(2), 6004, 6006, 9007, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"); and (iii) Rule 6004-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules").

        E.      Notice of the Motion has been given to: (i) the Office of the United States Trustee for the District of Delaware; (ii) counsel to the Official Committee of Unsecured Creditors (the "Committee"); (iii) Cerberus Business Finance, LLC, as administrative agent and collateral agent for Prepetition Senior Lenders (as defined in the Cash Collateral Order)[3] (in such capacity, the "Prepetition Agent"); (iv) counsel to the Prepetition Agent; (v) the United States Attorney's Office for the District of Delaware; (vi) the Internal Revenue Service; (vii) the state attorneys general for all states in which the Debtors conduct business; (viii) all parties who have expressed a written interest in some or all of the Assets; (ix) all known holders of liens, encumbrances, and other claims secured by the Assets; (x) all parties to Potential Assigned Contracts (as defined below); and (xi) any party that has requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "Notice Parties").

        F.      The Debtors have articulated good and sufficient reasons for this Court to: (i) approve the Bidding Procedures; (ii) schedule the Auction and Sale Hearing and approve the manner of notice of the Auction, Sale, and Sale Hearing; and (iii) approve the procedures for the

---

[3] As used herein, "Cash Collateral Order" means, as amended, supplemented, or otherwise modified from time to time, that certain order authorizing the use of cash collateral on the terms therein entered at Docket No. 218.

assumption, assignment and sale of executory contracts and unexpired leases, including notice of proposed cure amounts.

G.    The Bidding Procedures attached hereto as **Exhibit 1** and the Stalking Horse Purchase Agreement filed at Docket No. 265 were negotiated by the parties at arm's-length and in good faith by the Debtors and the Stalking Horse Bidder.

H.    The Bidding Procedures and the Stalking Horse Purchase Agreement are fair, reasonable, and appropriate, are designed to maximize creditor recoveries from the consummation of the Sale and enable the Debtors to comply with the Milestones (as defined in the Cash Collateral Order, and as may have been subsequently modified, supplemented, and amended), and are consistent with the Debtors' exercise of their fiduciary duties under applicable law.

I.    The Motion, this Order, and the assumption, assignment and sale procedures set forth herein are reasonably calculated to provide counterparties to Potential Assigned Contracts with proper notice of the intended assumption, assignment and sale of their Potential Assigned Contracts, the procedures in connection therewith, and any cure amounts relating thereto.

J.    The sale notice, substantially in the form attached hereto as **Exhibit 2** (the "Sale Hearing Notice"), is reasonably calculated to provide interested parties with timely and proper notice of the proposed Sale, including, without limitation:  (i) the date, time, and place of the Auction (if one is held); (ii) the Bidding Procedures; (iii) the deadline for filing objections to the Sale and entry of the Sale Order, and the date, time, and place of the Sale Hearing; (iv) sufficient identification of the Assets; (v) instructions for obtaining copies of the Stalking Horse Purchase Agreement; (vi) a description of the Sale as being free and clear of liens, claims, encumbrances, and other interests (except as set forth in the applicable purchase agreement), with all such liens, claims, encumbrances, and other interests attaching with the same validity and priority to the Sale

proceeds; and (vii) notice of the proposed assumption, assignment and sale of Assigned Contracts (as defined in the Stalking Horse Purchase Agreement) to the Stalking Horse Bidder pursuant to the Stalking Horse Purchase Agreement (or to another Successful Bidder arising from the Auction, if any), and no other or further notice of the Sale shall be required.

K.      The legal and factual bases set forth in the Motion establish just cause for the relief granted herein. Entry of this Order is in the best interests of the Debtors and their estates, creditors, interest holders, and all other parties in interest.

L.      The Motion and the Bidding Procedures comply with the requirements set forth by Local Rule 6004-(1)(c).

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is granted as provided herein.

2.      All objections to the relief requested in the Motion that have not been withdrawn, waived, or settled as announced to the Court at the hearing on the Motion or by stipulation filed with the Court, are overruled.

**I.      Important Dates and Deadlines**

| Event | Date |
|---|---|
| Service of Notice of Assumption, Assignment, and Sale | Within Three Days of Entry of this Order |
| Cure Objection Deadline | June 7, 2023 at 4:00 p.m. (ET) |
| Sale Objection Deadline | June 21, 2023 at 4:00 p.m. (ET) |
| Bid Deadline | June 21, 2023 at 5:00 p.m. (prevailing Eastern Time) |
| Deadline for Debtors to Designate Qualified Bids | June 23, 2023 at 5:00 p.m. (ET) |
| Auction | June 28, 2023 at 10:00 a.m. (prevailing Eastern Time) |
| Debtors' Deadline to Reply to Sale Objections | July 6, 2023 at 6:00 p.m. (ET) |

| Sale Hearing | July 10, 2023 at 10:00 a.m. (prevailing Eastern Time) |

3.      ***Bid Deadline***.  The deadline by which all Bids for the Assets must be ***actually received*** by the parties specified in the Bidding Procedures is 5:00 p.m. (prevailing Eastern Time), on June 21, 2023 (the "Bid Deadline").

4.      ***Auction***.  If, under the Bidding Procedures, an Auction is to be held, it shall be held no later than June 28, 2023, at the offices of counsel to the Debtors: Hughes Hubbard & Reed LLP, One Battery Park Plaza, New York, NY 10004, or such later time on such day or other place as the Debtors (with the prior written consent of the Stalking Horse Bidder and the Prepetition Agent and in consultation with the Committee) shall notify all Qualified Bidders who have submitted Qualified Bids.  As set forth more fully in the Bidding Procedures, only Qualified Bidders shall be permitted to participate at the Auction.

5.      ***Notice of Successful Bidder***.  The Debtors shall file a notice identifying the Successful Bidder (the "Successful Bidder Notice") by: (i) if no Qualified Bid (other than the Stalking Horse Purchase Agreement) is received by the Bid Deadline, 5:00 p.m. (prevailing Eastern Time) on the day following the Bid Deadline or (ii) if one or more Qualified Bids (in addition to the Stalking Horse Purchase Agreement) is received by the Bid Deadline and an Auction is held, 5:00 p.m. (prevailing Eastern Time) on the day following the conclusion of the Auction.

6.      ***Sale Objections***.  Objections to the Sale, if any (other than objections related to the assumption and assignment of a Potential Assigned Contract, which are governed by Section III of this Order), must (a) be in writing; (b) conform to the applicable provisions of the Bankruptcy Rules and the Local Rules; (c) state, with specificity, the legal and factual bases thereof and (d) be filed with the Court and served so as to be ***actually received*** by no later than June 21, 2023 at 5:00

p.m. (prevailing Eastern Time) (the "Sale Objection Deadline") on the following parties (the

"Objection Notice Parties"):

| Counsel to the Debtors | The United States Trustee |
|---|---|
| Hughes Hubbard & Reed LLP<br>One Battery Park Plaza, 16th Floor<br>New York, NY 10004<br>Attn: Kathryn A. Coleman, Christopher Gartman,<br>katie.coleman@hugheshubbard.com,<br>chris.gartman@hugheshubbard.com,<br><br>Young Conaway Stargatt & Taylor, LLP<br>1000 North King Street<br>Rodney Square<br>Wilmington, DE 19801-6108<br>Attn: Michael R. Nestor and Andrew L. Magaziner<br>mnestor@ycst.com, amagaziner@ycst.com | Office of the United States Trustee<br>For the District of Delaware<br>844 King Street, Suite 2207, Lockbox 35<br>Wilmington, DE, 19801<br>Attn: Jane M. Leamy<br>jane.m.leamy@usdoj.gov |
| Counsel to the Committee | Counsel to the Prepetition Agent |
| Kramer Levin Naftalis & Frankel LLP<br>1177 Avenue of the Americas<br>New York, NY 10036<br>Attn: Adam C. Rogoff and Rose Hill Bagley<br>arogoff@kramerlevin.com, rbagley@kramerlevin.com<br><br>Morris James LLP<br>500 Delaware Avenue, Suite 1500<br>Wilmington, DE 19801<br>Attn: Jeffrey R. Waxman and Eric J. Monzo<br>jwaxman@morrisjames.com,<br>emonzo@morrisjames.com | KTBS Law LLP<br>1801 Century Park East, 26th Floor<br>Los Angeles, CA 90067<br>Attn: Michael L. Tuchin and David A. Fidler<br>mtuchin@ktbslaw.com, dfidler@ktbslaw.com<br><br>Pachulski Stang Ziehl & Jones LLP<br>919 Market St., 17th Floor<br>P.O. Box 8705<br>Wilmington, DE 19801-8705 (Courier 19801)<br>Attn: Laura Davis Jones and Timothy Cairns<br>ljones@pszjlaw.com, tcairns@pszjlaw.com |

7.     A party's failure to timely file or make an objection in accordance with this Order

shall forever bar such party from asserting any objection to the Motion, entry of the Sale Order,

and/or consummation of the Sale with the Successful Bidder pursuant to the applicable purchase

agreement, including the assumption, assignment and sale of the Assigned Contracts to the

Successful Bidder pursuant to the applicable purchase agreement, and shall be deemed to

constitute any such party's consent to entry of the Sale Order and consummation of the Sale and

all transactions related thereto, including, without limitation, such assumption, assignment and

sale.

8.      ***Sale Hearing***.  The Sale Hearing shall commence on July 10, 2023, at 10:00 a.m. (prevailing Eastern Time) before the Honorable Thomas M. Horan, at the Court, 824 North Market Street, Wilmington, Delaware 19801.  Upon entry of this Order, the Debtors are authorized to perform any obligations of the Debtors set forth in the Stalking Horse Purchase Agreement that are intended to be performed prior to the Sale Hearing or entry of the Sale Order.  The Sale Hearing may be adjourned by announcement in open Court or on the Court's calendar without any further notice required.

**II.      Auction, Bidding Procedures, and Related Relief**

9.      The Bidding Procedures are incorporated herein and are hereby approved in their entirety.  The Bidding Procedures shall govern the submission, receipt, and analysis of all Bids relating to any Sale transaction.  Any party desiring to bid on the Assets or a portion thereof shall comply with the Bidding Procedures and this Order.  The Debtors, in consultation with the Consultation Parties, are authorized to take any and all actions necessary to implement the Bidding Procedures and the Debtors and their professionals shall direct and preside over the Auction; *provided*, *however*, the Debtors may not take any action that is contrary to the Bidding Procedures, including any modification thereof, without the consent of the Consultation Parties or an order of the Court.

10.     The Stalking Horse Bidder is deemed a Qualified Bidder at all times, and the Stalking Horse Bid as set forth in the Stalking Horse Purchase Agreement is deemed a Qualified Bid.  Pursuant to the provisions of the Cash Collateral Order, the Stalking Horse Bidder may credit bid any portion or all of its outstanding Prepetition Obligations (up to the amount outstanding as of the projected closing date of the Sale (including but not limited to, principal, accrued and unpaid interest (including postpetition interest to the extent provided in the Cash Collateral Order), and

all outstanding fees and expenses and other amounts owed under the Loan Documents (as defined in the Cash Collateral Order)).

11.     If the Debtors do not receive any Qualified Bids (other than the Stalking Horse Bid):  (a) the Debtors will not hold the Auction; (b) the Debtors shall name the Stalking Horse Bidder as the Successful Bidder for the Purchased Assets (as defined in the Stalking Horse Purchase Agreement); and (c) the Debtors shall seek approval of the Stalking Horse Purchase Agreement at the Sale Hearing.

12.     If the Debtors receive one or more Qualified Bids from Qualified Bidders (other than the Stalking Horse Bidder), then the Debtors shall conduct the Auction in accordance with the Bidding Procedures.

13.     Pursuant to Local Rule 6004-1(c)(ii):  (a) each bidder participating at the Auction shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the Sale, as set forth in the Bidding Procedures; (b) the Auction shall be conducted openly and all creditors providing 24 hours' notice to the Debtors by email (ajacobs@ycst.com) will be permitted to attend the Auction; and (c) the Auction shall be transcribed or videotaped.

14.     No person or entity shall be entitled to any expense reimbursement, break-up fees, "topping," termination, or other similar fee or payment, and by submitting a bid, such person or entity is deemed to have waived their right to request or to file with this court any request for expense reimbursement or any fee of any nature, whether by virtue of section 503(b) of the Bankruptcy Code or otherwise.

### III.     Approval of the Assumption, Assignment, and Sale Procedures

15.     The procedures set forth below regarding the assumption, assignment and sale of Potential Assigned Contracts pursuant to sections 365(b) and 365(f) of the Bankruptcy Code in connection with the Sale (the "<u>Assumption Procedures</u>") are hereby approved.

16.     These Assumption Procedures shall govern the assumption, assignment and sale of the Assigned Contracts ultimately selected to be assumed, assigned and sold in connection with a Sale, subject to the payment of any amounts necessary to cure any defaults arising under any Assigned Contract (as further defined in the Stalking Horse Asset Purchase Agreement, the "<u>Cure Costs</u>"):

a.   **Notice of Assumption, Assignment and Sale**.  Within 3 business days following entry of this Order (the "<u>Assumption, Assignment and Sale Service Deadline</u>"), the Debtors shall file on the docket and serve a notice of contract assumption, in substantially the form attached hereto as **<u>Exhibit 3</u>**, (the "<u>Notice of Assumption, Assignment and Sale</u>") via overnight delivery on all counterparties to all executory contracts and unexpired leases of the Debtors (collectively, the "<u>Potential Assigned Contracts</u>") and provide a copy of the same to the Stalking Horse Bidder.  The Notice of Assumption, Assignment and Sale shall inform each recipient of (i) the timing and procedures relating to such assumption, assignment and sale, (ii) the title of the Potential Assigned Contract, (iii) the name of the counterparty to the Potential Assigned Contract, (iv) Debtors' good faith estimates of the Cure Costs (if any) required in connection with the Potential Assigned Contract, (v) the identity of the Stalking Horse Bidder, and (vi) the Cure Objection Deadline (as defined below); *provided*, *however*, that service of a Notice of Assumption, Assignment and Sale does not constitute an admission that such Potential Assigned Contract is an executory contract or unexpired lease or that such stated Cure Cost constitutes a claim against the Debtors or a right against the Stalking Horse Bidder (or other Successful Bidder) and all rights with respect thereto shall be expressly reserved. Further, the inclusion of a Potential Assigned Contract on the Notice of Assumption, Assignment and Sale is not a guarantee that such Potential Assigned Contract will ultimately be assumed, assigned and sold.

b.   **Objections**.  Any counterparty to a Potential Assigned Contract shall file and serve on the Objection Notice Parties any objections to (a) the proposed assumption and assignment of its Potential Assigned Contract to the Successful Bidder (and must state in its objection, with specificity, the legal

and factual basis of its objection), (b) if applicable, the proposed Cure Cost for its Potential Assigned Contract (and must state in its objection, with specificity, what Cure Cost is required with appropriate documentation in support thereof) and (c) the provision of adequate assurance of future performance by the Stalking Horse Bidder, **no later than June 7, 2023 at 5:00 p.m.** (prevailing Eastern Time) (the "Cure Objection Deadline").  If no objection is timely filed and served, (x) the counterparty to the Potential Assigned Contract shall be deemed to have consented to the assumption, assignment and sale of the Contract to the Successful Bidder pursuant to sections 363 and 365 of the Bankruptcy Code if such Potential Assigned Contract is designated by the Successful Bidder as an Assigned Contract, and shall be forever barred from asserting any objection with regard to such assumption, assignment and sale, except with respect to the adequate assurance of future performance by a Successful Bidder **other than** the Stalking Horse Bidder, and (y) the Cure Cost set forth in the Notice of Assumption, Assignment and Sale shall be controlling pursuant to section 365 of the Bankruptcy Code, notwithstanding anything to the contrary in any Potential Assigned Contract, or any other document, and the counterparty to the Potential Assigned Contract shall be deemed to have consented to such Cure Cost pursuant to section 365 of the Bankruptcy Code, and shall be forever barred from asserting any other claims related to such Potential Assigned Contract against the Debtors or the Successful Bidder, or the property of either of them.

c.  **Supplemental Contract Assumption Notice**.  To the extent the Debtors, at any time after the Assumption, Assignment and Sale Service Deadline (i) identify additional Potential Assigned Contracts, (ii) remove Potential Assigned Contracts from the list of executory contracts and unexpired leases ultimately selected as Assigned Contracts that the Successful Bidder proposes be assumed, assigned and sold to it in connection with a Sale, and/or (iii) modify the previously stated Cure Cost associated with any Potential Assigned Contracts, the Debtors will promptly file with this Court and serve by overnight delivery a supplemental notice of contract assumption (a "Supplemental Assumption Notice") on each of the counterparties to the affected Potential Assigned Contracts and their counsel of record, if any.  Each Supplemental Assumption Notice will include the same information with respect to listed Potential Assigned Contracts as was included in the Notice of Assumption, Assignment and Sale.  Each Supplemental Assumption Notice that identifies a Potential Assigned Contract that was not previously designated to be assumed, assigned and sold or that reduces the Debtors' calculation of the Cure Cost shall provide a deadline of not less than seven business (7) days from the date of service of such Supplemental Assumption Notice by which the counterparty to any such Potential Assigned Contract may object **only** to (a) its listing as an Assigned Contract (if it was not previously designated to be assigned), and (b) the Debtors' calculation of the Cure Cost for such

Potential Assigned Contract (if such Cure Cost is lower than a previously listed Cure Cost for such Potential Assigned Contract or the amount asserted by such counterparty by the Cure Objection Deadline).

d. **Supplemental Adequate Assurance Objection Deadline**. Following the Bid Deadline, in the event that the Debtors receive one or more Qualified Bids other than the Stalking Horse Purchase Agreement, upon request by any counterparty to a Potential Assigned Contract, the Debtors will send such party evidence that any Qualified Bidder that included such Potential Assigned Contract in its Bid has the ability to perform thereunder and otherwise complies with the requirements of adequate assurance of future performance under section 365(b)(1) of the Bankruptcy Code on a confidential basis for all nonpublic information. Consistent with Paragraph 5 of this Order, the Debtors will file a notice of successful bidder. Parties objecting to the proposed adequate assurance of future performance by a Successful Bidder **other than** the Stalking Horse Bidder must object at or before the Sale Hearing.

e. **Dispute Resolution**. If the Debtors (subject to the consent of the Successful Bidder) and the non-debtor counterparty to a Potential Assigned Contract cannot resolve an objection to the Cure Cost for such Potential Assigned Contract, such objection may be adjourned and the Potential Assigned Contract may be (but is not required to be) assumed by the Debtors and assigned and sold to the Stalking Horse Bidder or Successful Bidder, as applicable, provided that the Cure Cost that the counterparty asserts is required to be paid shall be segregated pending the parties' consensual resolution of the objection to the Cure Cost or the Court's adjudication of such payment. Any objection to the proposed assumption, assignment and sale of a Potential Assigned Contract or to the related Cure Cost that remains unresolved as of the Sale Hearing shall, in the Debtors' discretion (subject to the consent of the Successful Bidder), be heard at the Sale Hearing or adjourned to a date and at a time determined by the Debtors (or otherwise scheduled by the Court). Pending the parties' consensual resolution of any Cure Cost objections or the Court's adjudication of such payments, the Successful Bidder may elect to re-designate the related Assigned Contracts to not be an Assigned Contract. Upon any Cure Cost amount that was subject to an objection becoming fixed, the Successful Bidder may elect to re-designate the related Assigned Contract to not be an Assigned Contract.

f. **Contract Assumption**. No Assigned Contract shall be deemed assumed, assigned and sold pursuant to sections 365 and 363 of the Bankruptcy Code until the later of (i) the date the Court has entered an order assuming, assigning and selling such Assigned Contracts or (ii) the date the Sale has closed.

17.     The inclusion of a Potential Assigned Contract on the Notice of Assumption, Assignment and Sale or any Supplemental Assumption Notice shall not:  (a) obligate the Debtors to assume, assign or sell any executory contracts or unexpired leases listed thereon, (b) obligate any Qualified Bidder or the Successful Bidder to designate such Potential Assigned Contract as an Assigned Contract or refrain from redesignating it to not be an Assigned Contract, or (c) constitute any admission or agreement of the Debtors that such Potential Assigned Contract is an executory contract or such lease is unexpired, as applicable.  Only those Potential Assigned Contracts that are included on a schedule of Assigned Contracts (for which the Stalking Horse Bidder's or other Successful Bidder's, as applicable, designation rights with respect thereto have expired) attached to a final asset purchase agreement approved by the Court will be assumed, assigned and sold.

18.     The Notice of Assumption, Assignment and Sale is hereby approved.

**IV.     Sale Hearing Notice**

19.     The Sale Hearing Notice, substantially in the form attached hereto as **Exhibit 2**, is hereby approved.  Within three (3) business days following entry of this Order, the Debtors shall cause the Sale Hearing Notice to be served on the following parties or their respective counsel, if known:  (a) the Notice Parties; (b) counsel to the Stalking Horse Bidder; (c) all parties to Potential Assigned Contracts; (d) all parties who have expressed to the Debtors or their professionals in writing an interest in acquiring some or all of the Assets; (e) all known holders of liens, encumbrances, and other claims secured by any of the Assets; (f) the Internal Revenue Service; (g) all applicable state and local taxing authorities; (h) the Federal Trade Commission; (i) each governmental agency that is an interested party with respect to the Sale and transactions proposed thereunder; (j) all of the Debtors' other known creditors and equity security holders; and (k) all parties that have requested or that are required to receive notice pursuant to Bankruptcy Rule 2002.

V.      **Miscellaneous**

20.     The failure to include or reference a particular provision of the Bidding Procedures specifically in this Order shall not diminish or impair the effectiveness or enforceability of such a provision.

21.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

22.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

23.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

## **Exhibit 1**

## **Bidding Procedures**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re* | **Chapter 11** |
| **STANADYNE LLC, *et al.*,**[1] | **Case No. 23-10207 (TMH)** |
| **Debtors.** | **(Jointly Administered)** |

## BIDDING PROCEDURES FOR THE SALE OF THE DEBTORS' ASSETS

On February 16, 2023, (i) Stanadyne LLC, (ii) Pure Power Technologies, Inc., (iii) Stanadyne PPT Holdings, Inc., and (iv) Stanadyne PPT Group Holdings, Inc. (each a "Debtor" and, collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Court"). On April [•], 2023, the Debtors filed the *Debtors' Motion for Entry of: (A) an Order (I) Scheduling a Hearing on the Approval of the Sale of All or Substantially All of the Debtors' Assets Free and Clear of All Encumbrances Other Than Assumed Liabilities and Permitted Encumbrances, and the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (II) Approving Certain Bidding Procedures and Assumption and Assignment Procedures, and the Form and Manner of Notice Thereof, (III) Authorizing the Debtors to Enter Into the Stalking Horse Purchase Agreement, and (IV) Granting Related Relief; and (B) an Order (I) Approving Asset Purchase Agreement, (II) Authorizing the Sale of All or Substantially All of the Debtors' Assets Free and Clear of All Encumbrances Other Than Assumed Liabilities and Permitted Encumbrances, (III) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (IV) Granting Related Relief* [Docket No. [•]] (the "Bidding Procedures and Sale Motion"), seeking approval of, among other things, the procedures to determine the highest or otherwise best offer for the purchase of some or all of the Debtors' assets (the "Assets") through a section 363 sale process (a "Transaction").

On [May [•], 2023, the Debtors entered into an asset purchase agreement (the "Stalking Horse Purchase Agreement") with [•] (the "Stalking Horse Bidder"), pursuant to which, among other things, the Stalking Horse Bidder agreed to purchase, acquire, and/or take assignment and delivery of, and the Debtors agreed to sell to the Stalking Horse Bidder, the Purchased Assets[2] in exchange for consideration comprising (i) an initial credit bid in an amount equal to $225,000,000 (as further described in Section 2.1(ii) of the Stalking Horse Purchase Agreement), (ii) the assumption of the Assumed Liabilities, and (iii) to the extent necessary, an amount of cash sufficient to fund the Wind-

---

[1]  The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number are:  Stanadyne LLC (0378); Pure Power Technologies, Inc. (5202); Stanadyne PPT Holdings, Inc. (2594); and Stanadyne PPT Group Holdings, Inc. (1734).  The Debtors' headquarters are located at 405 White Street, Jacksonville, North Carolina 28546.

[2]  Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Stalking Horse Purchase Agreement.  To the extent of any inconsistencies between the terms of these Bidding Procedures and the Stalking Horse Purchase Agreement, the terms of the Stalking Horse Purchase Agreement shall control.

Down Budget, which amount is referred to in the Stalking Horse Purchase Agreement as the Excluded Cash Deficiency Amount.]

On May [18], 2023, the Court entered an order [Docket No. [•]] (the "<u>Bidding Procedures Order</u>") approving these *Bidding Procedures for the Sale of the Debtors' Assets* (the "<u>Bidding Procedures</u>"), which set forth the process by which the Debtors are authorized to conduct an auction of their Assets (the "<u>Auction</u>") to determine the Successful Bidder (as defined below).

## Purchase Opportunity

The Debtors are offering interested parties the opportunity to purchase some or all of the Assets. On [•], 2023, the Debtors' investment banker, Angle Advisors LLC ("<u>Angle</u>"), commenced the distribution of teaser and other promotional materials to potentially interested parties advising them of the opportunity to purchase the Assets. The Debtors' representatives, including Angle, shall oversee the sale process for the Assets.

## Bidding Process

### I.    Participation Requirements

To receive due diligence information, including full access to the Debtors' electronic data room and to additional non-public information regarding the Debtors, a potential bidder (each, an "<u>Interested Party</u>") must have delivered to each of: (i) counsel to the Debtors: Hughes Hubbard & Reed LLP, One Battery Park Plaza, 16th Floor, New York, NY 10004 (Attn: Chris Gartman, Esq. (chris.gartman@hugheshubbard.com) and Katie Coleman, Esq. (Katie.coleman@hugheshubbard.com)); Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware 19801 (Attn: Michael R. Nestor, Esq. (mnestor@ycst.com), Andrew L. Magaziner, Esq. (amagaziner@ycst.com) and Ashley E. Jacobs, Esq. (ajacobs@ycst.com)); and (ii) investment banker to the Debtors: Angle Advisors LLC, Cliff Roesler (croesler@angleadvisors.com) and Michael McCoy (mmcoy@angleadvisors.com), the following documents (the "<u>Preliminary Bid Documents</u>"):

(a)    an executed confidentiality agreement on terms reasonably acceptable to the Debtors and the Prepetition Agent (each, a "<u>Confidentiality Agreement</u>");

(b)    a statement and other factual support demonstrating to the Debtors' satisfaction, in consultation with the Consultation Parties, in the exercise of their reasonable business judgment that the Interested Party has a *bona fide* interest in purchasing some or all of the Assets; and

(c)    preliminary proof by the Interested Party of its financial capacity to close the Interested Party's proposed Transaction(s), which may include financial statements of, or verified financial commitments obtained by, the Interested Party (or, if the Interested Party is an entity formed for the purpose of acquiring the desired Assets, the party that will bear liability for a breach), the adequacy of which will be assessed by the Debtors in consultation with their advisors and the Consultation Parties.

Only those Interested Parties who have submitted acceptable Preliminary Bid Documents (each, a "<u>Potential Bidder</u>") may submit bids. For the avoidance of doubt, the Stalking Horse Bidder

has been deemed to be a Qualified Bidder (as defined below) and is not required to provide any of the foregoing Preliminary Bid Documents.

## II.    Obtaining Due Diligence

Only Potential Bidders will be eligible to receive due diligence information concerning the Debtors and their Assets.  The Debtors will provide to each Potential Bidder reasonable due diligence information, as requested, as soon as reasonably practicable after such request, which information will be commensurate with the due diligence information given to the Stalking Horse Bidder prior to and after entry into the Stalking Horse Purchase Agreement; provided that if any Potential Bidder is (or is affiliated with) a competitor of the Debtors, the Debtors shall consult with the Consultation Parties and, upon such consultation, may withhold, redact, code, or delay providing any diligence materials that the Debtors (in consultation with the Consultation Parties) determine are business-sensitive or otherwise inappropriate for disclosure to such Potential Bidder at such time.  Subject to the immediately precedent sentence, the Debtors shall post substantially all written due diligence provided to any Potential Bidder to the Debtors' electronic data room for the benefit of all Potential Bidders.  The due diligence period will end on the Bid Deadline and, thereafter, the Debtors will have no obligation to furnish any diligence information, except as may be required under the terms of any Successful Bid.

Each Potential Bidder other than the Stalking Horse Bidder will comply with all reasonable requests for additional information and due diligence access by the Debtors or their advisors regarding such Potential Bidder and its contemplated transaction.  If the Debtors, after consultation with the Consultation Parties, determine at any time in their reasonable discretion that a Potential Bidder is not reasonably likely to be a Qualified Bidder, then the Debtors' obligation to provide due diligence information to such Potential Bidder will terminate, and all information provided by the Debtors prior to such time shall be returned to the Debtors in accordance with the terms of the applicable Confidentiality Agreement.

## Auction Process

## I.    Bid Deadline

A Potential Bidder that desires to make a proposal, solicitation, or offer for the Assets (each, a "Bid") shall transmit such Bid via email (in .pdf format) so as to be **actually received** on or before **June 21, 2023 at 5:00 p.m. (prevailing Eastern Time)** by the Debtors' Representatives at the address listed below.

(a)    the Debtors: 405 White Street, Jacksonville, North Carolina 28546, Attn: Mr. Costas Loukellis;

(b)    counsel to the Debtors: Hughes Hubbard & Reed LLP, One Battery Park Plaza, 16th Floor, New York, NY 10004 (Attn: Chris Gartman, Esq. (chris.gartman@hugheshubbard.com) and Katie Coleman, Esq. (Katie.coleman@hugheshubbard.com)); Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware 19801 (Attn: Michael R. Nestor, Esq. (mnestor@ycst.com), Andrew L. Magaziner, Esq. (amagaziner@ycst.com) and Ashley E. Jacobs, Esq. (ajacobs@ycst.com));

(c)     investment banker to the Debtors: Angle Advisors LLC, 101 Southfield Road, 2nd Floor, Birmingham, MI 48009 (Attn: Cliff Roesler (croesler@angleadvisors.com) and Michael McCoy (mmcoy@angleadvisors.com));

(d)     counsel to the Committee: Kramer Levin Naftalis & Frankel LLP, 1177 Avenue of the Americas, New York, NY 10036 (Attn: Adam C. Rogoff, Esq. (arogoff@kramerlevin.com); Morris James LLP, 500 Delaware Avenue, Suite 1500, Wilmington, Delaware 19801 (Attn: Jeffrey R. Waxman, Esq. (jwaxman@morrisjames.com) and Eric J. Monzo, Esq. (emonzo@morrisjames.com);

(e)     counsel to the Prepetition Agent: KTBS Law LLP, 1801 Century Park East, 26th Floor, Los Angeles, CA 90067 (Attn: Michael L. Tuchin, Esq. (mtuchin@ktbslaw.com), David A. Fidler, Esq. (dfidler@ktbslaw.com), Nir Maoz, Esq. (nmaoz@ktbslaw.com); Pachulski Stang Ziehl & Jones LLP, (Attn: Laura Davis Jones, Esq. (ljones@pszjlaw.com), Timothy P. Cairns, Esq. (tcairns@pszjlaw.com);

## II.    Bid Requirements

Each Bid by a Potential Bidder (a "<u>Bidder</u>") must be submitted in writing and satisfy the following requirements (collectively, the "<u>Bid Requirements</u>").

(a)     <u>Purpose</u>. The Bid must clearly identify the following: (i) the particular Assets, or the portion thereof, identified with reasonable specificity, to be acquired, including, without limitation, each and every executory contract and unexpired lease to be assumed by the Debtors and assigned and sold to the Bidder; and (ii) the liabilities and obligations to be assumed, including any debt to be assumed.

(b)     <u>Deposit</u>. Each Bid must be accompanied by a cash deposit in the amount equal to 10% of the aggregate cash portion of the purchase price of the Bid to be held in escrow by the Debtors (the "<u>Deposit</u>"); *provided* that the Stalking Horse Bidder will not be required to provide a deposit with respect to the Stalking Horse Purchase Agreement.

(c)     <u>Total Consideration</u>. Each Bid must identify the form and amount of the total consideration to be provided to the Debtors in cash and non-cash components to be paid, including assumed liabilities (the "<u>Bid Value</u>").

(d)     <u>Minimum Bid</u>. The Bid Value proposed by each Bid (or sum of Bids for different Assets) must be equal to, or exceed, the sum of (i) $225,000,000 in cash; <u>plus</u> (ii) assumption of those Assumed Liabilities in the Stalking Horse Purchase Agreement that the Stalking Horse Bidder has agreed to pay or assume or the cash equivalent of such amount; <u>plus</u> (iii) cash equal to the "Transaction Fee" due to Angle Advisors based on the Bid, <u>plus</u> (iv) the minimum overbid amount of $2,000,000. The Debtors, in consultation with the Consultation Parties, shall advise Potential Bidders of the amount of the foregoing Assumed Liabilities and Transaction Fee to permit Potential Bidders to bid accordingly.

(e)     <u>Marked Agreement</u>. Each Bid must include a signed asset purchase agreement, together with all exhibits and schedules thereto, pursuant to which the Qualified Bidder proposes to effectuate the Transaction (collectively, the "<u>Transaction Documents</u>"), along with a redline version of such agreement relative to the Stalking

Horse Purchase Agreement (the form of which will be provided to any Potential Bidder before the Bid Deadline).

(f)     Tax Structure; Structure.  The Bid must specify with particularity its tax structure, including whether it is intended to be structured in a tax-free manner or if the Debtors, under the Bid, will incur any incremental tax liabilities.  The Bid must also identify the structure proposed for undertaking the Transaction, including the specific Assets being acquired and liabilities being assumed, the proposed steps to accomplish such acquisition, and any financial, legal, or tax considerations upon which the Bid's proposed structure relies.

(g)     Timeline to Close.  The Bid must provide a commitment to close no later than the deadline for the Stalking Horse Bidder to close in the Stalking Horse Purchase Agreement.

(h)     Outside Date.  The Bid must include a signed writing stating that the Bidder's offer is irrevocable until the selection of the Successful Bidder, provided that if such Bidder is selected as the Successful Bidder or the Back-Up Bidder (each, as defined below) its offer shall remain irrevocable until the later of (i) the closing of the Transaction with the Successful Bidder or the Back-Up Bidder, and (ii) August 15, 2023 (the "Outside Date"); *provided* that for the avoidance of doubt, the Outside Date for the Stalking Horse Bidder shall be as set forth in the Stalking Horse Purchase Agreement.

(i)     Sources of Financing; Adequate Assurance.  To the extent that a Bid is not accompanied by evidence of the Bidder's capacity to consummate the proposed Transaction(s) set forth in its Bid with cash on hand, each Bid must contain written evidence of a commitment for financing or other evidence of the ability to consummate the Transaction at the Purchase Price (including sufficient financial or other information to establish adequate assurance of future performance pursuant to section 365(f)(2) of the Bankruptcy Code and, if applicable, section 365(b)(3) of the Bankruptcy Code to the non-Debtor counterparties to any executory contracts and unexpired leases to be assumed by the Debtors and assigned and sold to the Bidder in connection with the proposed transaction) satisfactory to the Debtors in their reasonable discretion, after consultation with the Consultation Parties, with appropriate contact information for such financing sources.

(j)     No Financing Approval or Diligence Outs.  A Bid shall not be conditioned on the obtaining or the sufficiency of financing or any internal approval, or on the outcome or review of due diligence, but may be subject to the accuracy at the closing of specified representations and warranties or the satisfaction at the closing of specified conditions.

(k)     Employees.  A Bid shall contain a detailed description of how the Bidder intends to treat current employees of the Debtors.

(l)     Authorization.  Each Bid must contain evidence that the Bidder has obtained authorization or approval from its board of directors (or a comparable governing body acceptable to the Debtors) with respect to the submission of its Bid and the consummation of the Transactions contemplated in such Bid.

(m)    <u>Disclaimer of Fees</u>.  Each Bid must disclaim any right to receive a fee analogous to any break-up fee, termination fee, expense reimbursement or similar type of payment.

(n)    <u>Identity</u>.  Each Bid must fully disclose the identity of each entity that will be bidding or otherwise participating in connection with such Bid (including each equity holder or other financial backer of the Bidder, including if such Bidder is an entity formed for the purpose of consummating the proposed Transaction contemplated by such Bid), and the complete terms of any such participation.  Under no circumstances shall any undisclosed principals, equity holders, or financial backers be associated with any Bid.  Each Bid must also include contact information for the specific person(s) and counsel whom the Debtors or their advisors should contact regarding such Bid.  Nothing herein shall preclude multiple Bidders from submitting a joint Bid, subject to the Debtors' prior written consent to such submission and the disclosure requirements set forth herein.

(o)    <u>Consent to Jurisdiction</u>.  The Bidder must submit in writing to the exclusive jurisdiction of the Court (and to the Court entering a final judgment) and waive any right to a jury trial in connection with any disputes relating to Debtors' qualification of Bids, the Auction, the construction and enforcement of these Bidding Procedures, and the Transaction documents and the closing, as applicable.

(p)    <u>No Collusion</u>.  The Bidder must acknowledge in writing (i) that it has not engaged in any collusion with respect to any Bids or the Transaction, specifying that it did not agree with any other party, including, but not limited to, any other Potential Bidders or interested third parties, to control price or exert undue influence over the process; and (ii) agree not to engage in any such collusion or undue influence with respect to any Bids, the Auction, the Transaction, or the sale process.

(q)    <u>Pension Plan</u>.  A Bid shall contain a description of how the Bidder intends to treat the pension plans operated by the Debtors, including the potential assumption thereof.

(r)    <u>Non-Debtor Subsidiaries and Affiliates</u>.  To the extent included as part of the Bid, each Bid shall identify the value of the Purchase Price allocated to the purchase of stock or other assets of any non-Debtor subsidiary and/or affiliate.

(s)    <u>Good Faith Offer</u>.  The Bid must constitute a good faith, *bona fide* offer to effectuate the Transaction.

(t)    <u>As-Is, Where-Is</u>.  Each Bid must include a written acknowledgement and representation that the Bidder: (1) has had an opportunity to conduct any and all due diligence regarding the Assets prior to making its offer; (2) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the Assets in making its Bid; and (3) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied by operation of law, or otherwise, regarding the Assets or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in the Transaction Documents.

By submitting its Bid, each Bidder is agreeing, and shall be deemed to have agreed, to abide by and honor the terms of these Bidding Procedures, to waive the right to pursue a substantial

contribution claim under section 503 of the Bankruptcy Code related in any way to the submission of its Bid, the Bidding Procedures, and the sale process for the Assets, and to refrain from submitting a Bid or seeking to reopen the Auction after conclusion of the Auction. **The submission of a Bid shall constitute a binding and irrevocable offer to acquire the applicable Assets as reflected in such Bid**. As soon as reasonably practicable following the designation of a Bid as a Qualified Bid in accordance with these Bidding Procedures, the Debtors shall notify each Bidder of such designation. Within one (1) day of receiving a Bid, the Debtors shall share such Bid with the Consultation Parties.

### III.     Designation of Qualified Bidders

A qualified bidder ("Qualified Bidder") is a Bidder that, in the Debtors' reasonable determination in consultation with the Consultation Parties, (i) has timely submitted a Bid that satisfies each of the Bid Requirements and (ii) is able to consummate the proposed transaction within the required timeframe if selected as the Successful Bidder (such Bid submitted by a Qualified Bidder, a "Qualified Bid"). The Debtors may accept as a single Qualified Bid multiple bids for non-overlapping material portions of the Assets such that, when taken together in the aggregate, such bids would otherwise meet the standards for a single Qualified Bid.

No later than 5:00 p.m. (prevailing Eastern Time) on June 23, 2023, the Debtors will determine in consultation with the Consultation Parties, whether such Bidder is a Qualified Bidder, and notify the Bidder of such determination.

For the avoidance of doubt, (i) the Stalking Horse Bidder is a Qualified Bidder, (ii) the Stalking Horse Purchase Agreement is a Qualified Bid, and (iii) the Stalking Horse Bidder is authorized to submit any Overbids (as defined below) during the Auction, in each instance without further qualification required of the Stalking Horse Bidder.

If no Qualified Bids (other than the Stalking Horse Purchase Agreement) are received by the Bid Deadline, then the Stalking Horse Bidder will be deemed the Successful Bidder, the Stalking Horse Purchase Agreement will be the Successful Bid, no Auction will be held, and the Debtors will as expeditiously as possible seek final Court approval of the sale of the Purchased Assets to the Stalking Horse Bidder as contemplated by the Stalking Horse Purchase Agreement.

### IV.     The Auction

If the Debtors receive one or more Qualified Bids in addition to the Stalking Horse Purchase Agreement, the Debtors will conduct the Auction to determine the highest or otherwise best bid with respect to the Assets. The Auction will commence on **June 28, 2023 at 10:00 a.m. (prevailing Eastern Time)** at the offices of Hughes Hubbard & Reed LLP, One Battery Park Plaza, New York, NY 10004, or on such other date and/or at such other location as determined by the Debtors in consultation with the Consultation Parties with the prior written consent of the Prepetition Agent (provided that the Prepetition Agent's and Stalking Horse Bidder's respective rights under the Stalking Horse Purchase Agreement and the Cash Collateral Order shall remain unaffected).

Before commencement of the Auction, the Debtors will (i) notify all Qualified Bidders, the United States Trustee, the Committee, and the Prepetition Agent (collectively, but excluding the Qualified Bidders other than the Stalking Horse Bidder, the "Notice Parties") in writing of the highest or otherwise best Qualified Bid, as determined in the Debtors' business judgment, in consultation with the Consultation Parties (the "Baseline Bid"), and (ii) provide copies (to the extent not

previously provided) of the documents supporting the Baseline Bid to all Qualified Bidders and Notice Parties. The determination of which Qualified Bid constitutes the Baseline Bid, and which Qualified Bid constitutes the highest or otherwise best bid such that it is the Successful Bid (as defined below), shall take into account, without limitation: (a) the type and amount of Assets sought to be purchased in the Bid; (b) the amount and nature of the total consideration; (c) the likelihood of the Bidder's ability to close a transaction and the timing thereof; and (d) the net economic effect of any changes to the value to be received by the Debtors' estates from the transaction contemplated by the Qualified Bid.

If there is an Auction, it will be conducted in accordance with the following procedures:

(a)     Only a Qualified Bidder that has submitted a Qualified Bid will be eligible to participate at the Auction. Only the authorized representatives of each of the Qualified Bidders (including the Stalking Horse Bidder), the Debtors, the Committee (including its counsel), and the Prepetition Agent (including its counsel) will be permitted to attend the Auction; provided, however, that any Qualified Bidder other than the Stalking Horse Bidder that, at any point during the auction, declines to submit an Overbid as set forth below and thereby withdraws from continued participation in the Auction, shall not be permitted to attend the remainder of the Auction. All creditors that provide 24 hours' notice to the Debtors by email (ajacobs@ycst.com) will be permitted to attend the Auction.

(b)     At least one (1) business day prior to the Auction, each Qualified Bidder who has timely submitted a Qualified Bid must inform the Debtors whether it intends to attend the Auction and all Qualified Bidders wishing to attend the Auction must have at least one individual representative with authority to bind such Qualified Bidder in attendance at the Auction in person; provided that in the event a Qualified Bidder elects not to attend the Auction, such Qualified Bidder's Qualified Bid shall nevertheless remain fully enforceable against such Qualified Bidder.

(c)     Each Qualified Bidder participating at the Auction will be required to confirm on the record at the Auction that (i) it has not engaged in any collusion with respect to the bidding, and (ii) its Qualified Bid is a good-faith *bona fide* offer and it intends to consummate the proposed Transaction if selected as the Successful Bidder.

(d)     The Debtors and their professionals will direct and preside over the Auction. At the start of the Auction, the Debtors will describe the terms of the Baseline Bid. All Bids made thereafter must be Overbids and will be made and received on an open basis, and all material terms of each Bid will be fully disclosed to all other Qualified Bidders. The Debtors will maintain a transcript of all Bids made and announced at the Auction, including the Baseline Bid, all Overbids, the Successful Bid, and the Back-Up Bid (as defined below).

(e)     During the Auction, bidding will begin initially with the Baseline Bid and subsequently continue in minimum increments of at least $500,000 in cash (each, an "Overbid"); provided, however, that the Stalking Horse Bidder may satisfy the minimum bid increment requirement by credit bidding at least $500,000 of outstanding Prepetition Obligations (up to the amount outstanding as of the projected closing date of the Sale (including but not limited to, principal, accrued and unpaid interest (including postpetition interest to the extent provided in the Cash Collateral

Order), and all outstanding fees and expenses and other amounts owed under the Loan Documents (as defined in the Cash Collateral Order)) that do not already form a part of the purchase price under the Stalking Horse Purchase Agreement.  The Debtors will announce at the Auction the material terms of each Overbid, value each Overbid in accordance with these Bid Procedures and provide each Qualified Bidder with an opportunity to make a subsequent Overbid.  Subject to the requirement (other than with regard to the Stalking Horse Bidder) that each Overbid include at least $500,000 in cash more than the cash component of the Baseline Bid or prevailing Overbid, additional consideration in excess of the amount set forth in the Baseline Bid or the prevailing Overbid may include cash and/or other consideration in accordance with these procedures.  To the extent that an Overbid has been accepted entirely or in part because of the addition, deletion, or modification of a provision or provisions in the applicable Transaction Documents or the Stalking Horse Purchase Agreement, the Debtors will provide notice to each participant of the value ascribed by the Debtors to any such added, deleted, or modified provision or provisions, with such value being determined by the Debtors in consultation with the Consultation Parties.  The Debtors, with the consent of the Consultation Parties, shall have the right to establish different Overbids with respect to any bids for some but not all of the assets.

(f)     Any Overbid made from time to time by a Qualified Bidder must remain open and binding on the Qualified Bidder until and unless (i) the Debtors accept a Bid submitted by another Qualified Bidder during the Auction as an Overbid and (ii) such prior Overbid is not selected as the Back-Up Bid.  To the extent not previously provided (which will be determined by the Debtors in consultation with the Consultation Parties), a Qualified Bidder submitting an Overbid must submit at the Debtors' request (in consultation with the Consultation Parties), as part of its Overbid, written evidence (in the form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Debtors in consultation with the Consultation Parties) demonstrating such Qualified Bidder's ability to close the transaction at the purchase price contemplated by such Overbid.

The Debtors (in consultation with the Consultation Parties) reserve the right to make one or more adjournments in the Auction to, among other things (i) facilitate private discussions with individual Qualified Bidders and negotiate the terms of their Overbids, (ii) allow individual Qualified Bidders to consider how they wish to proceed, and (iii) give Qualified Bidders the opportunity to provide the Debtors with such additional evidence as the Debtors may require in their reasonable discretion (and in consultation with the Consultation Parties) to determine that the Qualified Bidder has sufficient internal resources, or has received sufficient non-contingent debt and/or equity funding commitments, to consummate the proposed transaction at the prevailing Overbid amount.

## V.    Selection of Successful Bid

The Auction shall continue until there is only one Qualified Bid that the Debtors determine, in the exercise of their reasonable business judgment, in consultation with the Consultation Parties, to be the highest or otherwise best bid submitted by a Qualified Bidder during the Auction for the Assets (the "Successful Bid") and the next highest or otherwise best bid after the Successful Bid (the "Back-Up Bid"), at which point the Auction will be closed; *provided* that the Auction shall not close unless and until all Qualified Bidders have been given a reasonable opportunity to submit an Overbid at the Auction to the then prevailing highest or otherwise best Bid.  Such acceptance by the Debtors

of the Successful Bid is conditioned upon approval by the Court of the Successful Bid. The Qualified Bidder that submits the Successful Bid will be deemed the "<u>Successful Bidder</u>." The Qualified Bidder that submits the Back-Up Bid, if any, will be deemed the "<u>Back-Up Bidder</u>"; provided, however, that if the Debtors indicate that they have identified a Bid of the Stalking Horse Bidder as the next highest or otherwise best bid after the Successful Bid, (i) the Stalking Horse Bidder shall not be required, under any circumstances, to serve as the Back-Up Bidder, but may, at its option, choose to do so, and (ii) if a Bid of another party (other than the Successful Bid and the Stalking Horse Bid) remains open, the Stalking Horse Bidder may, at its option, decline to serve as the Back-Up Bidder in favor of the next highest or otherwise best bid if one exists.

The Back-Up Bid, if any, will remain open and binding on the Back-Up Bidder until consummation of the Successful Bid with the Successful Bidder. If the Successful Bidder fails to consummate the Successful Bid within the time set forth therein, the Debtors will be authorized, but not required, in consultation with the Consultation Parties, to select the Back-Up Bidder, if any, as the new Successful Bidder, in which case the Debtors shall proceed to consummate the Successful Bid of the new Successful Bidder.

Within one (1) business day after conclusion of the Auction, the Debtors shall file a notice with the Bankruptcy Court identifying the Successful Bidder and the Back-Up Bidder, if any.

## VI.    Hearing

The hearing (the "<u>Sale Hearing</u>") to consider approval of the sale of assets pursuant to the Successful Bid (the "<u>Sale</u>") will be held before the Court on **July 10, 2023** and otherwise in accordance with any scheduling order entered by the Court; *provided* that if no Auction is held, the Debtors shall schedule the Sale Hearing before such time and as expeditiously as possible. Prior to the Hearing, the Successful Bidder (unless the Successful Bidder is the Stalking Horse Bidder) shall complete and execute all documents evidencing and containing the terms and conditions upon which the Successful Bid was made.

The Hearing may be adjourned or rescheduled by the Debtors with the consent of the Prepetition Agent and the Consultation Parties (provided that the Prepetition Agent's and Stalking Horse Bidder's respective rights under the Stalking Horse Purchase Agreement and the Cash Collateral Order shall remain unaffected) to a time and date consistent with the Court's calendar, as set forth in a notice on the docket of these chapter 11 cases, a notice of agenda, or stated orally at the Hearing.

## VII.    Return of Deposit

The Deposit of the Successful Bidder shall be applied to the purchase price of such transaction at closing. The Deposits for each Qualified Bidder (other than the Successful Bidder and the Back-Up Bidder) shall be returned on the date that is five (5) business days after the Auction, or as soon as is reasonably practicable thereafter. The Debtors shall return the Deposit of the Back-Up Bidder by the earlier of (i) thirty (30) days after the conclusion of the Auction and (ii) five (5) business days after the consummation of the Successful Bid, unless by such date the Debtors have selected the Back-Up Bidder as the new Successful Bidder.

Notwithstanding the foregoing, if a Successful Bidder fails to consummate a proposed transaction because of a breach by such Successful Bidder, the Debtors will not have any obligation to return the Deposit deposited by such Successful Bidder, which may be retained by the Debtors

as damages, in addition to any and all other rights, remedies, or causes of action that may be available to the Debtors, and the Debtors shall be free to consummate the proposed transaction with the applicable Back-Up Bidder without the need for an additional hearing or order of the Court.

## VIII.    Consultation Parties/Expedited Relief

The term "Consultation Parties" shall mean the (i) Official Committee of Unsecured Creditors (the "Committee") and the Committee's counsel, in each case, only to the extent that such party, members, or their respective affiliates, representatives, or advisors do not put forth a Bid, and (ii) the Prepetition Agent.  Any failure to specifically identify consultation rights in any section of these Bidding Procedures shall not limit or otherwise impair the rights of the Consultation Parties to consult with the Debtors.  In the event that the Debtors and the Consultation Parties disagree with matters for which the Debtors are required to consult with the Consultation Parties, then the Consultation Party shall have the right to seek relief from the Court on an expedited basis to resolve the dispute.

*        *        *        *

## Exhibit 2

**Sale Hearing Notice**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re* | **Chapter 11** |
| **STANADYNE LLC, *et al.*,**[1] | **Case No. 23-10207 (TMH)** |
| **Debtors.** | **(Jointly Administered)** |
| | **Re: Docket No. \_\_\_\_** |

## NOTICE OF STALKING HORSE BID, BIDDING
## PROCEDURES, AUCTION AND SALE HEARING

      **PLEASE TAKE NOTICE** that, on April [•], 2023, the above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>") filed the *Debtors' Motion for Entry of: (A) an Order (I) Scheduling a Hearing on the Approval of the Sale of All or Substantially All of the Debtors' Assets Free and Clear of All Encumbrances Other Than Assumed Liabilities and Permitted Encumbrances, and the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (II) Approving Certain Bidding Procedures and Assumption and Assignment Procedures, and the Form and Manner of Notice Thereof, (III) Authorizing the Debtors to Enter Into the Stalking Horse Purchase Agreement, and (IV) Granting Related Relief; and (B) an Order (I) Approving Asset Purchase Agreement, (II) Authorizing the Sale of All or Substantially All of the Debtors' Assets Free and Clear of All Encumbrances Other Than Assumed Liabilities and Permitted Encumbrances, (III) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (IV) Granting Related Relief* [Docket No. •] (the "<u>Sale Motion</u>")[2] with the United States Bankruptcy Court for the District of Delaware (the "<u>Court</u>") seeking entry of orders, (a) approving the Bidding Procedures in connection with the sale of substantially all of the Debtors' assets, as attached to the Bidding Procedures Order as <u>Exhibit 1</u>, (b) approving the form and manner of this notice, (c) scheduling an auction and sale hearing to consider approval of the proposed Transaction, (d) establishing procedures for the assumption and assignment of executory contracts and unexpired leases of the Debtors, (e) approving the sale of the Debtors' assets free and clear, and (f) granting related relief.

      **PLEASE TAKE FURTHER NOTICE** that the Debtors are soliciting offers for the purchase of the Assets consistent with the bidding procedures (the "<u>Bidding Procedures</u>") approved by the Court by entry of an order on May [•], 2023 [Docket No. •] (the "<u>Bidding Procedures Order</u>").  All interested bidders should carefully read the Bidding Procedures and Bidding Procedures Order.[3]  Any interested bidder should contact Cliff Roesler (croesler@angleadvisors.com) and Michael McCoy

---

[1.]  The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number are:  Stanadyne LLC (0378); Pure Power Technologies, Inc. (5202); Stanadyne PPT Holdings, Inc. (2594); and Stanadyne PPT Group Holdings, Inc. (1734).  The Debtors' headquarters are located at 405 White Street, Jacksonville, North Carolina 28546.

[2]  Capitalized terms used in this notice but not otherwise herein defined have the meanings given to such terms in the Sale Motion or Bidding Procedures, as applicable.

[3]  To the extent of any inconsistencies between this notice and the Bidding Procedures or the Bidding Procedures Order, the Bidding Procedures or the Bidding Procedures Order, as applicable, shall govern in all respects.

(mmcoy@angleadvisors.com) at Angle Advisors, LLC, the Debtors' investment banker. A separate notice will be provided to counterparties to executory contracts and unexpired leases with the Debtors that may be assumed, assigned, and sold in connection with the Sale.

PLEASE TAKE FURTHER NOTICE that, if the Debtors receive qualified competing bids within the requirements and timeframe specified by the Bidding Procedures, the Debtors will conduct an auction (the "Auction") of the Assets on **June 28, 2023 at 10:00 a.m. (prevailing Eastern time)** at the offices of Hughes Hubbard & Reed LLP, One Battery Park Plaza, New York, NY 10004 or on such other date and/or at such other location as determined by the Debtors in accordance with the Bidding Procedures and as to which the Debtors shall notify all Qualified Bidders.

PLEASE TAKE FURTHER NOTICE that the Debtors will seek approval of the Sale at a hearing scheduled to commence on or before **July 10, 2023 at [• a.m./p.m.] (prevailing Eastern Time)** (the "Sale Hearing") before the Honorable Thomas M. Horan, United Sates Bankruptcy Judge for the Bankruptcy Court for the District of Delaware, at 824 North Market Street, Wilmington, Delaware 19801. If no Qualified Bids (other than the Stalking Horse Purchase Agreement) are received by the Bid Deadline, the Debtors will not hold the Auction and the Debtors may schedule the Sale Hearing to be held before July 10, 2023.

PLEASE TAKE FURTHER NOTICE that, except as otherwise set forth in the Bidding Procedures Order with respect to any objections to proposed cure amounts or the assumption, assignment and sale of Assigned Contracts, objections to the relief requested in the Sale Motion ***must***: (a) be in writing; (b) conform to the applicable provisions of the Bankruptcy Rules and the Local Rules; (c) state with particularity the legal and factual basis for the objection and the specific grounds therefor; and (d) be filed with the Court and served so as to be ***actually received* on or before June 21, 2023 at 5:00 p.m. (prevailing Eastern Time)** by the following parties and any other party that has filed a notice of appearance in these chapter 11 cases:

| Counsel to the Debtors | The United States Trustee |
|---|---|
| Hughes Hubbard & Reed LLP<br>One Battery Park Plaza, 16th Floor<br>New York, NY 10004<br>Attn: Kathryn A. Coleman and Christopher Gartman,<br>katie.coleman@hugheshubbard.com,<br>chris.gartman@hugheshubbard.com<br><br>Young Conaway Stargatt & Taylor, LLP<br>1000 North King Street<br>Rodney Square<br>Wilmington, DE 19801-6108<br>Attn: Michael R. Nestor and Andrew L. Magaziner<br>mnestor@ycst.com, amagaziner@ycst.com | Office of the United States Trustee<br>For the District of Delaware<br>844 King Street, Suite 2207, Lockbox 35<br>Wilmington, DE, 19801<br>Attn: Jane M. Leamy<br>jane.m.leamy@usdoj.gov |
| **Counsel to the Committee** | **Counsel to the Prepetition Agent and Stalking Horse Bidder** |
| Kramer Levin Naftalis & Frankel LLP<br>1177 Avenue of the Americas<br>New York, NY 10036<br>Attn: Adam C. Rogoff and Rose Hill Bagley<br>arogoff@kramerlevin.com, rbagley@kramerlevin.com<br><br>Morris James LLP | KTBS Law LLP<br>1801 Century Park East, 26th Floor<br>Los Angeles, CA 90067<br>Attn: Michael L. Tuchin and David A. Fidler<br>mtuchin@ktbslaw.com, dfidler@ktbslaw.com<br><br>Pachulski Stang Ziehl & Jones LLP |

| | |
|---|---|
| 500 Delaware Avenue, Suite 1500<br>Wilmington, DE 19801<br>Attn: Jeffrey R. Waxman and Eric J. Monzo<br>jwaxman@morrisjames.com,<br>emonzo@morrisjames.com | 919 Market St., 17th Floor<br>P.O. Box 8705<br>Wilmington, DE 19801-8705 (Courier 19801)<br>Attn: Laura Davis Jones and Timothy Cairns<br>ljones@pszjlaw.com, tcairns@pszjlaw.com |

CONSEQUENCES OF FAILING TO TIMELY MAKE AN OBJECTION:

**ANY PARTY OR ENTITY WHO FAILS TO TIMELY MAKE AN OBJECTION TO THE SALE ON OR BEFORE THE SALE OBJECTION DEADLINE IN ACCORDANCE WITH THE BIDDING PROCEDURES ORDER SHALL BE FOREVER BARRED FROM ASSERTING ANY OBJECTION TO THE SALE, INCLUDING WITH RESPECT TO THE TRANSFER OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS, EXCEPT AS SET FORTH IN THE APPLICABLE PURCHASE AGREEMENT.**

**PLEASE TAKE FURTHER NOTICE** that copies of the Sale Motion, the Bidding Procedures, the Bidding Procedures Order, as well as all related exhibits, including the Stalking Horse Purchase Agreement and the proposed Sale Order, are available free of charge on the Debtors' restructuring website, https://www.kccllc.net/stanadyne.

*[Remainder of page intentionally left blank]*

3

Dated:  May ___, 2023                    YOUNG CONAWAY STARGATT &
       Wilmington, Delaware              TAYLOR, LLP

_____

Michael R. Nestor (DE Bar No. 3526)
Andrew L. Magaziner (DE Bar No. 5426)
Ashley E. Jacobs (DE Bar No. 5635)
1000 North King Street
Rodney Square
Wilmington, Delaware 19801-6108
Telephone:  (302) 571-6600
Facsimile:  (302) 571-1253
Email:  mnestor@ycst.com
       amagaziner@ycst.com
       ajacobs@ycst.com

   -and-

Kathryn A. Coleman
Christopher Gartman
HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, NY 10004-1482
Telephone: (212) 837-6000
Facsimile:  (212) 422-4726
Email:  katie.coleman@hugheshubbard.com
       chris.gartman@hugheshubbard.com

*Counsel for the Debtors*

4

## **Exhibit 3**

**Notice of Assumption, Assignment and Sale**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re* | **Chapter 11** |
| **STANADYNE LLC, *et al.*,**[1] | **Case No. 23-10207 (TMH)** |
| **Debtors.** | **(Jointly Administered)** |
| | **Re: Docket No. ____** |

## NOTICE TO CONTRACT PARTIES TO POTENTIALLY ASSUMED, ASSIGNED, AND SOLD EXECUTORY CONTRACTS AND UNEXPIRED LEASES

> **YOU ARE RECEIVING THIS NOTICE BECAUSE YOU OR ONE OF YOUR AFFILIATES IS A COUNTERPARTY TO AN EXECUTORY CONTRACT OR UNEXPIRED LEASE WITH ONE OR MORE OF THE DEBTORS AS SET FORTH ON <u>EXHIBIT A</u> ATTACHED HERETO.**

       **PLEASE TAKE NOTICE** that, on April [•], 2023, the above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>") filed the *Debtors' Motion for Entry of: (A) an Order (I) Scheduling a Hearing on the Approval of the Sale of All or Substantially All of the Debtors' Assets Free and Clear of All Encumbrances Other Than Assumed Liabilities and Permitted Encumbrances, and the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (II) Approving Certain Bidding Procedures and Assumption and Assignment Procedures, and the Form and Manner of Notice Thereof, (III) Authorizing the Debtors to Enter Into the Stalking Horse Purchase Agreement, and (IV) Granting Related Relief; and (B) an Order (I) Approving Asset Purchase Agreement, (II) Authorizing the Sale of All or Substantially All of the Debtors' Assets Free and Clear of All Encumbrances Other Than Assumed Liabilities and Permitted Encumbrances, (III) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (IV) Granting Related Relief* [Docket No. •] (the "<u>Sale Motion</u>").

       **PLEASE TAKE FURTHER NOTICE** that, on May [•], 2023, the United States Bankruptcy Court for the District of Delaware (the "<u>Court</u>") entered the *Order (I) Approving Bidding Procedures, (II) Scheduling an Auction and a Sale Hearing, (III) Approving the Form and Manner of Notice Thereof, (IV) Establishing Notice and Procedures for the Assumption and Assignment and Sale of Contracts and Leases, and (V) Granting Related Relief* [Docket No. •] (the "<u>Bidding Procedures Order</u>")[2] authorizing the Debtors to solicit bids for the purchase of the Debtors' Assets and, if one or

---

1. The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number are:  Stanadyne LLC (0378); Pure Power Technologies, Inc. (5202); Stanadyne PPT Holdings, Inc. (2594); and Stanadyne PPT Group Holdings, Inc. (1734).  The Debtors' headquarters are located at 405 White Street, Jacksonville, North Carolina 28546.

2. Capitalized terms used in this notice but not otherwise herein defined have the meanings given to such terms in the Bidding Procedures Order or Bidding Procedures (as defined below), as applicable.  To the extent of any of the inconsistencies between this notice and the Bidding Procedures Order, the Bidding Procedures Order shall govern in all respects.

more Qualified Bids other than the Stalking Horse Purchase Agreement is received within the requirements and timeframe specified by the Bidding Procedures, conduct an auction (the "Auction") to select the Successful Bidder.  If held, the Auction will be governed by the Bidding Procedures approved pursuant to the Bidding Procedures Order (and attached to the Bidding Procedures Order as Exhibit 1 thereto).

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the Bidding Procedures and the terms of the Stalking Horse Purchase Agreement with S-PPT Acquisition Company LLC (the "Stalking Horse Bidder"), or any other Successful Bid, upon approval of the Sale, the Debtors **_may_** assume, assign, and sell to the Stalking Horse Bidder or other Successful Bidder the contract, lease or agreement listed on **Exhibit A** to which you are a counterparty.  The Debtors have conducted a review of their books and records and have determined that the cure amount for unpaid monetary obligations under the Potential Assigned Contracts is as set forth on **Exhibit A** attached hereto (the "Cure Costs").

**PLEASE TAKE FURTHER NOTICE** that if you disagree with the proposed Cure Cost identified with respect to a Potential Assigned Contract listed on **Exhibit A**, object to a proposed assignment of any Potential Assigned Contract to the Successful Bidder, or object to the ability of the Stalking Horse Bidder to provide adequate assurance of future performance with respect to any Potential Assigned Contract, your objection must be: (a) be in writing; (b) conform to the applicable provisions of the Bankruptcy Rules and the Local Rules; (c) state with particularity the nature of the objection and the legal and factual bases therefore and, if the objection pertains to the proposed Cure Cost(s), state the correct cure cost(s) alleged to be owed to the objecting contract counterparty, together with any applicable and appropriate documentation in support thereof; and (d) be filed with the Court and served so as to be **_actually received_ on or before June 7, 2023 at 5:00 p.m. (prevailing Eastern Time)** (the "Cure Objection Deadline") by the following parties (the "Objection Notice Parties"):

| Counsel to the Debtors | The United States Trustee |
|---|---|
| Hughes Hubbard & Reed LLP<br>One Battery Park Plaza, 16th Floor<br>New York, NY 10004<br>Attn: Kathryn A. Coleman and Christopher Gartman,<br>katie.coleman@hugheshubbard.com,<br>chris.gartman@hugheshubbard.com<br><br>Young Conaway Stargatt & Taylor, LLP<br>1000 North King Street<br>Rodney Square<br>Wilmington, DE 19801-6108<br>Attn: Michael R. Nestor and Andrew L. Magaziner<br>mnestor@ycst.com, amagaziner@ycst.com | Office of the United States Trustee<br>For the District of Delaware<br>844 King Street, Suite 2207, Lockbox 35<br>Wilmington, DE, 19801<br>Attn: Jane M. Leamy<br>jane.m.leamy@usdoj.gov |
| **Counsel to the Committee** | **Counsel to the Prepetition Agent and Stalking Horse Bidder** |
| Kramer Levin Naftalis & Frankel LLP<br>1177 Avenue of the Americas<br>New York, NY 10036<br>Attn: Adam C. Rogoff and Rose Hill Bagley<br>arogoff@kramerlevin.com, rbagley@kramerlevin.com<br><br>Morris James LLP<br>500 Delaware Avenue, Suite 1500 | KTBS Law LLP<br>1801 Century Park East, 26th Floor<br>Los Angeles, CA 90067<br>Attn: Michael L. Tuchin and David A. Fidler<br>mtuchin@ktbslaw.com, dfidler@ktbslaw.com<br><br>Pachulski Stang Ziehl & Jones LLP<br>919 Market St., 17th Floor |

30309940.3

| Wilmington, DE 19801 | P.O. Box 8705 |
|---|---|
| Attn: Jeffrey R. Waxman and Eric J. Monzo | Wilmington, DE 19801-8705 (Courier 19801) |
| jwaxman@morrisjames.com, | Attn: Laura Davis Jones and Timothy Cairns |
| emonzo@morrisjames.com | ljones@pszjlaw.com, tcairns@pszjlaw.com |

**PLEASE TAKE FURTHER NOTICE** that the Debtors will seek approval of the Sale at a hearing scheduled to commence on or before **July 10, 2023 at [• a.m./p.m.] (prevailing Eastern Time)** (the "Sale Hearing") before the Honorable Thomas M. Horan, United Sates Bankruptcy Judge for the Bankruptcy Court for the District of Delaware, at 824 North Market Street, Wilmington, Delaware 19801. If no Qualified Bids (other than the Stalking Horse Purchase Agreement) are received by the Bid Deadline, the Debtors will not hold the Auction and the Debtors may schedule the Sale Hearing to be held before July 10, 2023.

**PLEASE TAKE FURTHER NOTICE** that, except as otherwise set forth in the Bidding Procedures Order with respect to any objections to proposed cure amounts or the assumption, assignment and sale of Assigned Contracts, objections to any other relief requested in the Sale Motion ***must***: (a) be in writing; (b) conform to the applicable provisions of the Bankruptcy Rules and the Local Rules; (c) state with particularity the legal and factual basis for the objection and the specific grounds therefor; and (D) be filed with the Court and served so as to be ***actually received* on or before June 21, 2023 at 5:00 p.m. (prevailing Eastern Time)** by the Objection Notice Parties and any other party that has filed a notice of appearance in these chapter 11 cases.

Parties objecting to the proposed adequate assurance of future performance by a Successful Bidder other than the Stalking Horse Bidder must file such objection and serve it on the foregoing parties at or before the Sale Hearing.

**PLEASE TAKE FURTHER NOTICE** that if no objection to (a) the Cure Cost(s), (b) the proposed assignment, assumption, and sale of any Potential Assigned Contract, or (c) adequate assurance of the Successful Bidder's ability to perform is filed by the applicable deadline, then (i) you will be deemed to have stipulated that the Cure Cost(s) listed on **Exhibit A** hereto is/are correct, (ii) you will be forever barred, estopped, and enjoined from asserting any additional cure amount under the Potential Assigned Contract, and (iii) you will be forever barred, estopped, and enjoined from objecting to such proposed assignment to the Successful Bidder on the grounds that the Successful Bidder has not provided adequate assurance of future performance as of the closing date of the Sale.

**PLEASE TAKE FURTHER NOTICE** that any objection to the proposed assumption, assignment and sale of a Potential Assigned Contract or related Cure Cost that otherwise complies with these procedures yet remains unresolved as of the commencement of the Sale Hearing shall, in the Debtors' discretion (subject to the consent of the Successful Bidder), be heard at the Sale Hearing or at a later date as may be fixed by the Court.

**PLEASE TAKE FURTHER NOTICE** that, notwithstanding anything herein, the mere listing of any Potential Assigned Contract on **Exhibit A** does not require or guarantee that such Potential Assigned Contract will be assumed, assigned, and sold, and all rights of the Debtors and the Successful Bidder with respect to the Potential Assigned Contracts are reserved.

**PLEASE TAKE FURTHER NOTICE** that nothing herein (i) alters in any way the prepetition nature of any Potential Assigned Contract or the validity, priority, or amount of any claims

3

of a counterparty to any Potential Assigned Contract against the Debtors or the Successful Bidder that may arise under such Potential Assigned Contract, (ii) creates a postpetition contract or agreement, or (iii) elevates to administrative expense priority any claims of any counterparty to any Potential Assigned Contract against the Debtors that may arise under such Potential Assigned Contract.

Dated:  May ___, 2023
       Wilmington, Delaware

YOUNG CONAWAY STARGATT & TAYLOR, LLP

_____
Michael R. Nestor (DE Bar No. 3526)
Andrew L. Magaziner (DE Bar No. 5426)
Ashley E. Jacobs (DE Bar No. 5635)
1000 North King Street
Rodney Square
Wilmington, Delaware 19801-6108
Telephone:  (302) 571-6600
Facsimile:   (302) 571-1253
Email:  mnestor@ycst.com
      amagaziner@ycst.com
      ajacobs@ycst.com

   -and-

Kathryn A. Coleman
Christopher Gartman
HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, NY 10004-1482
Telephone: (212) 837-6000
Facsimile:  (212) 422-4726
Email:  katie.coleman@hugheshubbard.com
      chris.gartman@hugheshubbard.com

*Counsel for the Debtors*

4

## Exhibit B

**Blackline**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re* | **Chapter 11** |
| **STANADYNE LLC,** *et al.*,[1] | **Case No. 23-10207 (TMH)** |
| **Debtors.** | **(Jointly Administered)** |
| | **Ref. Docket No. 245** |

## ORDER (I) APPROVING BIDDING PROCEDURES, (II) SCHEDULING AN AUCTION AND A SALE HEARING, (III) APPROVING THE FORM AND MANNER OF NOTICE THEREOF, (IV) ESTABLISHING NOTICE AND PROCEDURES FOR THE ASSUMPTION AND ASSIGNMENT AND SALE OF CONTRACTS AND LEASES, AND (V) GRANTING RELATED RELIEF

Upon the motion (the "Motion") of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order (this "Order"), (a) authorizing and approving the bidding procedures attached hereto as **Exhibit 1** (the "Bidding Procedures"),[2] (b) approving the form and manner of notice of the Auction and the Sale Hearing with respect to the Sale of all or substantially all of the Debtors' assets (the "Assets," as further defined in the Bidding Procedures), (c) scheduling an Auction and a Sale Hearing, (d) establishing notice and procedures for the assumption, assignment and sale of executory contracts and unexpired leases, and (e) granting related relief, all as more fully set forth in the Motion; and upon the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012; and this Court having found that this is a core proceeding

---

[1.] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number are:  Stanadyne LLC (0378); Pure Power Technologies, Inc. (5202); Stanadyne PPT Holdings, Inc. (2594); and Stanadyne PPT Group Holdings, Inc. (1734).  The Debtors' headquarters are located at 405 White Street, Jacksonville, North Carolina 28546.

[2] Capitalized terms used in this Order but not otherwise herein defined have the meanings given to such terms in the Motion or Bidding Procedures, as applicable.

pursuant to 28 U.S.C. § 157(b)(2), and that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

## BASED ON THE RECORD ESTABLISHED AT THE HEARING, THE COURT HEREBY FINDS THAT:

A.    The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.    This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334. This proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper in this district and in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

C.    Good and sufficient notice of the Motion, the Bidding Procedures, and the relief sought in the Motion has been given under the circumstances, and no other or further notice is

required except as set forth herein. A reasonable opportunity to object or be heard regarding the relief provided herein has been afforded to parties in interest.

D.    The bases for the relief requested in the Motion are: (i) sections 105, 363, and 365 of the Bankruptcy Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"); (ii) Rules 2002(a)(2), 6004, 6006, 9007, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"); and (iii) Rule 6004-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules").

E.    Notice of the Motion has been given to: (i) the Office of the United States Trustee for the District of Delaware; (ii) counsel to the Official Committee of Unsecured Creditors (the "Committee"); (iii) Cerberus Business Finance, LLC, as administrative agent and collateral agent for Prepetition Senior Lenders (as defined in the Cash Collateral Order)[3] (in such capacity, the "Prepetition Agent"); (iv) counsel to the Prepetition Agent; (v) the United States Attorney's Office for the District of Delaware; (vi) the Internal Revenue Service; (vii) the state attorneys general for all states in which the Debtors conduct business; (viii) all parties who have expressed a written interest in some or all of the Assets; (ix) all known holders of liens, encumbrances, and other claims secured by the Assets; (x) all parties to Potential Assigned Contracts (as defined below); and (xi) any party that has requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "Notice Parties").

F.    The Debtors have articulated good and sufficient reasons for this Court to: (i) approve the Bidding Procedures; (ii) schedule the Auction and Sale Hearing and approve the manner of notice of the Auction, Sale, and Sale Hearing; and (iii) approve the procedures for the

---

[3]   As used herein, "Cash Collateral Order" means, as amended, supplemented, or otherwise modified from time to time, that certain order authorizing the use of cash collateral on the terms therein entered at Docket No. 218.

assumption, assignment and sale of executory contracts and unexpired leases, including notice of proposed cure amounts.

G.      The Bidding Procedures attached hereto as **Exhibit 1** and the Stalking Horse Purchase Agreement filed at Docket No. [ ] 265 were negotiated by the parties at arm's-length and in good faith by the Debtors and the Stalking Horse Bidder.

H.      The Bidding Procedures and the Stalking Horse Purchase Agreement are fair, reasonable, and appropriate, are designed to maximize creditor recoveries from the consummation of the Sale and enable the Debtors to comply with the Milestones (as defined in the Cash Collateral Order, and as may have been subsequently modified, supplemented, and amended), and are consistent with the Debtors' exercise of their fiduciary duties under applicable law.

I.      The Motion, this Order, and the assumption, assignment and sale procedures set forth herein are reasonably calculated to provide counterparties to Potential Assigned Contracts with proper notice of the intended assumption, assignment and sale of their Potential Assigned Contracts, the procedures in connection therewith, and any cure amounts relating thereto.

J.      The sale notice, substantially in the form attached hereto as **Exhibit 2** (the "Sale Hearing Notice"), is reasonably calculated to provide interested parties with timely and proper notice of the proposed Sale, including, without limitation:  (i) the date, time, and place of the Auction (if one is held); (ii) the Bidding Procedures; (iii) the deadline for filing objections to the Sale and entry of the Sale Order, and the date, time, and place of the Sale Hearing; (iv) sufficient identification of the Assets; (v) instructions for obtaining copies of the Stalking Horse Purchase Agreement; (vi) a description of the Sale as being free and clear of liens, claims, encumbrances, and other interests (except as set forth in the applicable purchase agreement), with all such liens, claims, encumbrances, and other interests attaching with the same validity and priority to the Sale

proceeds; and (vii) notice of the proposed assumption, assignment and sale of Assigned Contracts (as defined in the Stalking Horse Purchase Agreement) to the Stalking Horse Bidder pursuant to the Stalking Horse Purchase Agreement (or to another Successful Bidder arising from the Auction, if any), and no other or further notice of the Sale shall be required.

K.      The legal and factual bases set forth in the Motion establish just cause for the relief granted herein. Entry of this Order is in the best interests of the Debtors and their estates, creditors, interest holders, and all other parties in interest.

L.      The Motion and the Bidding Procedures comply with the requirements set forth by Local Rule 6004-(1)(c).

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is granted as provided herein.

2.      All objections to the relief requested in the Motion that have not been withdrawn, waived, or settled as announced to the Court at the hearing on the Motion or by stipulation filed with the Court, are overruled.

**I.      Important Dates and Deadlines**

| Event | Date |
|---|---|
| Service of Notice of Assumption, Assignment, and Sale | Within Three Days of Entry of this Order |
| Cure Objection Deadline | June 7, 2023 at 4:00 p.m. (ET) |
| Sale Objection Deadline | June 21, 2023 at 4:00 p.m. (ET) |
| Bid Deadline | June 21, 2023 at 5:00 p.m. (prevailing Eastern Time) |
| Deadline for Debtors to Designate Qualified Bids | June 23, 2023 at 5:00 p.m. (ET) |
| Auction | June 28, 2023 at 10:00 a.m. (prevailing Eastern Time) |
| Debtors' Deadline to Reply to Sale Objections | July 6, 2023 at 6:00 p.m. (ET) |

| Sale Hearing | July 10, 2023 at 10:00 a.m. (prevailing Eastern Time) |

3.      ***Bid Deadline***.  The deadline by which all Bids for the Assets must be ***actually received*** by the parties specified in the Bidding Procedures is 5:00 p.m. (prevailing Eastern Time), on June 21, 2023 (the "Bid Deadline").

4.      ***Auction***.  If, under the Bidding Procedures, an Auction is to be held, it shall be held no later than June 28, 2023, at the offices of counsel to the Debtors: Hughes Hubbard & Reed LLP, One Battery Park Plaza, New York, NY 10004, or such later time on such day or other place as the Debtors (with the prior written consent of the Stalking Horse Bidder and the Prepetition Agent and in consultation with the Committee) shall notify all Qualified Bidders who have submitted Qualified Bids.  As set forth more fully in the Bidding Procedures, only Qualified Bidders shall be permitted to participate at the Auction.

5.      ***Notice of Successful Bidder***.  The Debtors shall file a notice identifying the Successful Bidder (the "Successful Bidder Notice") by: (i) if no Qualified Bid (other than the Stalking Horse Purchase Agreement) is received by the Bid Deadline, 5:00 p.m. (prevailing Eastern Time) on the day following the Bid Deadline or (ii) if one or more Qualified Bids (in addition to the Stalking Horse Purchase Agreement) is received by the Bid Deadline and an Auction is held, 5:00 p.m. (prevailing Eastern Time) on the day following the conclusion of the Auction.

6.      ***Sale Objections***.  Objections to the Sale, if any (other than objections related to the assumption and assignment of a Potential Assigned Contract, which are governed by Section III of this Order), must (a) be in writing; (b) conform to the applicable provisions of the Bankruptcy Rules and the Local Rules; (c) state, with specificity, the legal and factual bases thereof and (d) be filed with the Court and served so as to be ***actually received*** by no later than June 21, 2023 at 5:00

p.m. (prevailing Eastern Time) (the "Sale Objection Deadline") on the following parties (the

"Objection Notice Parties"):

| Counsel to the Debtors | The United States Trustee |
|---|---|
| Hughes Hubbard & Reed LLP<br>One Battery Park Plaza, 16th Floor<br>New York, NY 10004<br>Attn: Kathryn A. Coleman, Christopher Gartman,<br>katie.coleman@hugheshubbard.com,<br>chris.gartman@hugheshubbard.com,<br><br>Young Conaway Stargatt & Taylor, LLP<br>1000 North King Street<br>Rodney Square<br>Wilmington, DE 19801-6108<br>Attn: Michael R. Nestor and Andrew L. Magaziner<br>mnestor@ycst.com, amagaziner@ycst.com | Office of the United States Trustee<br>For the District of Delaware<br>844 King Street, Suite 2207, Lockbox 35<br>Wilmington, DE, 19801<br>Attn: Jane M. Leamy<br>jane.m.leamy@usdoj.gov |
| **Counsel to the Committee** | **Counsel to the Prepetition Agent** |
| Kramer Levin Naftalis & Frankel LLP<br>1177 Avenue of the Americas<br>New York, NY 10036<br>Attn: Adam C. Rogoff and Rose Hill Bagley<br>arogoff@kramerlevin.com, rbagley@kramerlevin.com<br><br>Morris James LLP<br>500 Delaware Avenue, Suite 1500<br>Wilmington, DE 19801<br>Attn: Jeffrey R. Waxman and Eric J. Monzo<br>jwaxman@morrisjames.com,<br>emonzo@morrisjames.com | KTBS Law LLP<br>1801 Century Park East, 26th Floor<br>Los Angeles, CA 90067<br>Attn: Michael L. Tuchin and David A. Fidler<br>mtuchin@ktbslaw.com, dfidler@ktbslaw.com<br><br>Pachulski Stang Ziehl & Jones LLP<br>919 Market St., 17th Floor<br>P.O. Box 8705<br>Wilmington, DE 19801-8705 (Courier 19801)<br>Attn: Laura Davis Jones and Timothy Cairns<br>ljones@pszjlaw.com, tcairns@pszjlaw.com |

7.      A party's failure to timely file or make an objection in accordance with this Order shall forever bar such party from asserting any objection to the Motion, entry of the Sale Order, and/or consummation of the Sale with the Successful Bidder pursuant to the applicable purchase agreement, including the assumption, assignment and sale of the Assigned Contracts to the Successful Bidder pursuant to the applicable purchase agreement, and shall be deemed to constitute any such party's consent to entry of the Sale Order and consummation of the Sale and all transactions related thereto, including, without limitation, such assumption, assignment and sale.

8.      ***Sale Hearing***.  The Sale Hearing shall commence on July 10, 2023, at 10:00 a.m. (prevailing Eastern Time) before the Honorable Thomas M. Horan, at the Court, 824 North Market Street, Wilmington, Delaware 19801.  Upon entry of this Order, the Debtors are authorized to perform any obligations of the Debtors set forth in the Stalking Horse Purchase Agreement that are intended to be performed prior to the Sale Hearing or entry of the Sale Order.  The Sale Hearing may be adjourned by announcement in open Court or on the Court's calendar without any further notice required.

## II.    Auction, Bidding Procedures, and Related Relief

9.      The Bidding Procedures are incorporated herein and are hereby approved in their entirety.  The Bidding Procedures shall govern the submission, receipt, and analysis of all Bids relating to any Sale transaction.  Any party desiring to bid on the Assets or a portion thereof shall comply with the Bidding Procedures and this Order.   The Debtors, in consultation with the Consultation Parties, are authorized to take any and all actions necessary to implement the Bidding Procedures and the Debtors and their professionals shall direct and preside over the Auction; *provided, however,* the Debtors may not take any action that is contrary to the Bidding Procedures, including any modification thereof, without the consent of the Consultation Parties or an order of the Court.

10.     The Stalking Horse Bidder is deemed a Qualified Bidder at all times, and the Stalking Horse Bid as set forth in the Stalking Horse Purchase Agreement is deemed a Qualified Bid.  ~~The~~ Pursuant to the provisions of the Cash Collateral Order, the Stalking Horse Bidder may credit bid any portion or all of its outstanding Prepetition Obligations (up to the amount outstanding as of the projected closing date of the Sale (including but not limited to, principal, accrued and unpaid interest (including postpetition interest to the extent provided in the Cash

Collateral Order), and all outstanding fees and expenses and other amounts owed under the Loan Documents (as defined in the Cash Collateral Order))~.

11.     If the Debtors do not receive any Qualified Bids (other than the Stalking Horse Bid):  (a) the Debtors will not hold the Auction; (b) the Debtors shall name the Stalking Horse Bidder as the Successful Bidder for the Purchased Assets (as defined in the Stalking Horse Purchase Agreement); and (c) the Debtors shall seek approval of the Stalking Horse Purchase Agreement at the Sale Hearing.

12.     If the Debtors receive one or more Qualified Bids from Qualified Bidders (other than the Stalking Horse Bidder), then the Debtors shall conduct the Auction in accordance with the Bidding Procedures.

13.     Pursuant to Local Rule 6004-1(c)(ii):  (a) each bidder participating at the Auction shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the Sale, as set forth in the Bidding Procedures; (b) the Auction shall be conducted openly and all creditors providing 24 hours' notice to the Debtors by email (ajacobs@ycst.com) will be permitted to attend the Auction; and (c) the Auction shall be transcribed or videotaped.

14.     No person or entity shall be entitled to any expense reimbursement, break-up fees, "topping," termination, or other similar fee or payment, and by submitting a bid, such person or entity is deemed to have waived their right to request or to file with this court any request for expense reimbursement or any fee of any nature, whether by virtue of section 503(b) of the Bankruptcy Code or otherwise.

III.     **Approval of the Assumption, Assignment, and Sale Procedures**

15.     The procedures set forth below regarding the assumption, assignment and sale of Potential Assigned Contracts pursuant to sections 365(b) and 365(f) of the Bankruptcy Code in connection with the Sale (the "Assumption Procedures") are hereby approved.

16.     These Assumption Procedures shall govern the assumption, assignment and sale of the Assigned Contracts ultimately selected to be assumed, assigned and sold in connection with a Sale, subject to the payment of any amounts necessary to cure any defaults arising under any Assigned Contract (as further defined in the Stalking Horse Asset Purchase Agreement, the "Cure Costs"):

   a.   **Notice of Assumption, Assignment and Sale**.  Within 3 business days following entry of this Order (the "Assumption, Assignment and Sale Service Deadline"), the Debtors shall file on the docket and serve a notice of contract assumption, in substantially the form attached hereto as **Exhibit 3**, (the "Notice of Assumption, Assignment and Sale") via overnight delivery on all counterparties to all executory contracts and unexpired leases of the Debtors (collectively, the "Potential Assigned Contracts") and provide a copy of the same to the Stalking Horse Bidder.  The Notice of Assumption, Assignment and Sale shall inform each recipient of (i) the timing and procedures relating to such assumption, assignment and sale, (ii) the title of the Potential Assigned Contract, (iii) the name of the counterparty to the Potential Assigned Contract, (iv) Debtors' good faith estimates of the Cure Costs (if any) required in connection with the Potential Assigned Contract, (v) the identity of the Stalking Horse Bidder, and (vi) the Cure Objection Deadline (as defined below); *provided, however*, that service of a Notice of Assumption, Assignment and Sale does not constitute an admission that such Potential Assigned Contract is an executory contract or unexpired lease or that such stated Cure Cost constitutes a claim against the Debtors or a right against the Stalking Horse Bidder (or other Successful Bidder) and all rights with respect thereto shall be expressly reserved. Further, the inclusion of a Potential Assigned Contract on the Notice of Assumption, Assignment and Sale is not a guarantee that such Potential Assigned Contract will ultimately be assumed, assigned and sold.

   b.   **Objections**.  Any counterparty to a Potential Assigned Contract shall file and serve on the Objection Notice Parties any objections to (a) the proposed assumption and assignment of its Potential Assigned Contract to the Successful Bidder (and must state in its objection, with specificity, the legal

and factual basis of its objection), (b) if applicable, the proposed Cure Cost for its Potential Assigned Contract (and must state in its objection, with specificity, what Cure Cost is required with appropriate documentation in support thereof) and (c) the provision of adequate assurance of future performance by the Stalking Horse Bidder, **no later than June 7, 2023 at 5:00 p.m.** (prevailing Eastern Time) (the "Cure Objection Deadline").  If no objection is timely filed and served, (x) the counterparty to the Potential Assigned Contract shall be deemed to have consented to the assumption, assignment and sale of the Contract to the Successful Bidder pursuant to sections 363 and 365 of the Bankruptcy Code if such Potential Assigned Contract is designated by the Successful Bidder as an Assigned Contract, and shall be forever barred from asserting any objection with regard to such assumption, assignment and sale, except with respect to the adequate assurance of future performance by a Successful Bidder **other than** the Stalking Horse Bidder, and (y) the Cure Cost set forth in the Notice of Assumption, Assignment and Sale shall be controlling pursuant to section 365 of the Bankruptcy Code, notwithstanding anything to the contrary in any Potential Assigned Contract, or any other document, and the counterparty to the Potential Assigned Contract shall be deemed to have consented to such Cure Cost pursuant to section 365 of the Bankruptcy Code, and shall be forever barred from asserting any other claims related to such Potential Assigned Contract against the Debtors or the Successful Bidder, or the property of either of them.

c.   **Supplemental Contract Assumption Notice**.  To the extent the Debtors, at any time after the Assumption, Assignment and Sale Service Deadline (i) identify additional Potential Assigned Contracts, (ii) remove Potential Assigned Contracts from the list of executory contracts and unexpired leases ultimately selected as Assigned Contracts that the Successful Bidder proposes be assumed, assigned and sold to it in connection with a Sale, and/or (iii) modify the previously stated Cure Cost associated with any Potential Assigned Contracts, the Debtors will promptly file with this Court and serve by overnight delivery a supplemental notice of contract assumption (a "Supplemental Assumption Notice") on each of the counterparties to the affected Potential Assigned Contracts and their counsel of record, if any.  Each Supplemental Assumption Notice will include the same information with respect to listed Potential Assigned Contracts as was included in the Notice of Assumption, Assignment and Sale.  Each Supplemental Assumption Notice that identifies a Potential Assigned Contract that was not previously designated to be assumed, assigned and sold or that reduces the Debtors' calculation of the Cure Cost shall provide a deadline of not less than seven business (7) days from the date of service of such Supplemental Assumption Notice by which the counterparty to any such Potential Assigned Contract may object **only** to (a) its listing as an Assigned Contract (if it was not previously designated to be assigned), and (b) the Debtors' calculation of the Cure Cost for such

Potential Assigned Contract (if such Cure Cost is lower than a previously listed Cure Cost for such Potential Assigned Contract or the amount asserted by such counterparty by the Cure Objection Deadline).

d. **Supplemental Adequate Assurance Objection Deadline**. Following the Bid Deadline, in the event that the Debtors receive one or more Qualified Bids other than the Stalking Horse Purchase Agreement, upon request by any counterparty to a Potential Assigned Contract, the Debtors will send such party evidence that any Qualified Bidder that included such Potential Assigned Contract in its Bid has the ability to perform thereunder and otherwise complies with the requirements of adequate assurance of future performance under section 365(b)(1) of the Bankruptcy Code on a confidential basis for all nonpublic information. Consistent with Paragraph 5 of this Order, the Debtors will file a notice of successful bidder. Parties objecting to the proposed adequate assurance of future performance by a Successful Bidder **other than** the Stalking Horse Bidder must object at or before the Sale Hearing.

e. **Dispute Resolution**. If the Debtors (subject to the consent of the Successful Bidder) and the non-debtor counterparty to a Potential Assigned Contract cannot resolve an objection to the Cure Cost for such Potential Assigned Contract, such objection may be adjourned and the Potential Assigned Contract may be (but is not required to be) assumed by the Debtors and assigned and sold to the Stalking Horse Bidder or Successful Bidder, as applicable, provided that the Cure Cost that the counterparty asserts is required to be paid shall be segregated pending the parties' consensual resolution of the objection to the Cure Cost or the Court's adjudication of such payment. Any objection to the proposed assumption, assignment and sale of a Potential Assigned Contract or to the related Cure Cost that remains unresolved as of the Sale Hearing shall, in the Debtors' discretion (subject to the consent of the Successful Bidder), be heard at the Sale Hearing or adjourned to a date and at a time determined by the Debtors (or otherwise scheduled by the Court). Pending the parties' consensual resolution of any Cure Cost objections or the Court's adjudication of such payments, the Successful Bidder may elect to re-designate the related Assigned Contracts to not be an Assigned Contract. Upon any Cure Cost amount that was subject to an objection becoming fixed, the Successful Bidder may elect to re-designate the related Assigned Contract to not be an Assigned Contract.

f. **Contract Assumption**. No Assigned Contract shall be deemed assumed, assigned and sold pursuant to sections 365 and 363 of the Bankruptcy Code until the later of (i) the date the Court has entered an order assuming, assigning and selling such Assigned Contracts or (ii) the date the Sale has closed.

17.     The inclusion of a Potential Assigned Contract on the Notice of Assumption, Assignment and Sale or any Supplemental Assumption Notice shall not: (a) obligate the Debtors to assume, assign or sell any executory contracts or unexpired leases listed thereon, (b) obligate any Qualified Bidder or the Successful Bidder to designate such Potential Assigned Contract as an Assigned Contract or refrain from redesignating it to not be an Assigned Contract, or (c) constitute any admission or agreement of the Debtors that such Potential Assigned Contract is an executory contract or such lease is unexpired, as applicable.  Only those Potential Assigned Contracts that are included on a schedule of Assigned Contracts (for which the Stalking Horse Bidder's or other Successful Bidder's, as applicable, designation rights with respect thereto have expired) attached to a final asset purchase agreement approved by the Court will be assumed, assigned and sold.

18.     The Notice of Assumption, Assignment and Sale is hereby approved.

**IV.    Sale Hearing Notice**

19.     The Sale Hearing Notice, substantially in the form attached hereto as **Exhibit 2**, is hereby approved.  Within three (3) business days following entry of this Order, the Debtors shall cause the Sale Hearing Notice to be served on the following parties or their respective counsel, if known: (a) the Notice Parties; (b) counsel to the Stalking Horse Bidder; (c) all parties to Potential Assigned Contracts; (d) all parties who have expressed to the Debtors or their professionals in writing an interest in acquiring some or all of the Assets; (e) all known holders of liens, encumbrances, and other claims secured by any of the Assets; (f) the Internal Revenue Service; (g) all applicable state and local taxing authorities; (h) the Federal Trade Commission; (i) each governmental agency that is an interested party with respect to the Sale and transactions proposed thereunder; (j) all of the Debtors' other known creditors and equity security holders; and (k) all parties that have requested or that are required to receive notice pursuant to Bankruptcy Rule 2002.

## V.    Miscellaneous

20.    The failure to include or reference a particular provision of the Bidding Procedures specifically in this Order shall not diminish or impair the effectiveness or enforceability of such a provision.

21.    Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

22.    The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

23.    This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

**<u>Exhibit 1</u>**

**Bidding Procedures**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| *In re* | **Chapter 11** |
| **STANADYNE LLC, *et al.*,**[1] | **Case No. 23-10207 (TMH)** |
| **Debtors.** | **(Jointly Administered)** |

## BIDDING PROCEDURES FOR THE SALE OF THE DEBTORS' ASSETS

On February 16, 2023, (i) Stanadyne LLC, (ii) Pure Power Technologies, Inc., (iii) Stanadyne PPT Holdings, Inc., and (iv) Stanadyne PPT Group Holdings, Inc. (each a "Debtor" and, collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Court"). On April [•], 2023, the Debtors filed the *Debtors' Motion for Entry of: (A) an Order (I) Scheduling a Hearing on the Approval of the Sale of All or Substantially All of the Debtors' Assets Free and Clear of All Encumbrances Other Than Assumed Liabilities and Permitted Encumbrances, and the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (II) Approving Certain Bidding Procedures and Assumption and Assignment Procedures, and the Form and Manner of Notice Thereof, (III) Authorizing the Debtors to Enter Into the Stalking Horse Purchase Agreement, and (IV) Granting Related Relief; and (B) an Order (I) Approving Asset Purchase Agreement, (II) Authorizing the Sale of All or Substantially All of the Debtors' Assets Free and Clear of All Encumbrances Other Than Assumed Liabilities and Permitted Encumbrances, (III) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (IV) Granting Related Relief* [Docket No. [•]] (the "Bidding Procedures and Sale Motion"), seeking approval of, among other things, the procedures to determine the highest or otherwise best offer for the purchase of some or all of the Debtors' assets (the "Assets") through a section 363 sale process (a "Transaction").

On [May [•], 2023, the Debtors entered into an asset purchase agreement (the "Stalking Horse Purchase Agreement") with [•] (the "Stalking Horse Bidder"), pursuant to which, among other things, the Stalking Horse Bidder agreed to purchase, acquire, and/or take assignment and delivery of, and the Debtors agreed to sell to the Stalking Horse Bidder, the Purchased Assets[2] in exchange for consideration comprising (i) an initial credit bid in an amount equal to $225,000,000 (as further described in ~~and allocated pursuant to~~ Section 2.1(ii) of the Stalking Horse Purchase Agreement), (ii) the assumption of the Assumed Liabilities, and (iii) to the extent necessary, an amount of cash

---

[1]   The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number are:  Stanadyne LLC (0378); Pure Power Technologies, Inc. (5202); Stanadyne PPT Holdings, Inc. (2594); and Stanadyne PPT Group Holdings, Inc. (1734).  The Debtors' headquarters are located at 405 White Street, Jacksonville, North Carolina 28546.

[2]   Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Stalking Horse Purchase Agreement.  To the extent of any inconsistencies between the terms of these Bidding Procedures and the Stalking Horse Purchase Agreement, the terms of the Stalking Horse Purchase Agreement shall control.

sufficient to fund the Wind-Down Budget, which amount is referred to in the Stalking Horse Purchase Agreement as the Excluded Cash Deficiency Amount.]

On May [18], 2023, the Court entered an order [Docket No. [•]] (the "Bidding Procedures Order") approving these *Bidding Procedures for the Sale of the Debtors' Assets* (the "Bidding Procedures"), which set forth the process by which the Debtors are authorized to conduct an auction of their Assets (the "Auction") to determine the Successful Bidder (as defined below).

## Purchase Opportunity

The Debtors are offering interested parties the opportunity to purchase some or all of the Assets. On [•], 2023, the Debtors' investment banker, Angle Advisors LLC ("Angle"), commenced the distribution of teaser and other promotional materials to potentially interested parties advising them of the opportunity to purchase the Assets. The Debtors' representatives, including Angle, shall oversee the sale process for the Assets.

## Bidding Process

### I.    Participation Requirements

To receive due diligence information, including full access to the Debtors' electronic data room and to additional non-public information regarding the Debtors, a potential bidder (each, an "Interested Party") must have delivered to each of:  (i) counsel to the Debtors: Hughes Hubbard & Reed LLP, One Battery Park Plaza, 16th Floor, New York, NY 10004 (Attn: Chris Gartman, Esq. (chris.gartman@hugheshubbard.com) and Katie Coleman, Esq. (Katie.coleman@hugheshubbard.com)); Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware 19801 (Attn: Michael R. Nestor, Esq. (mnestor@ycst.com), Andrew L. Magaziner, Esq. (amagaziner@ycst.com) and Ashley E. Jacobs, Esq. (ajacobs@ycst.com)); and (ii) investment banker to the Debtors: Angle Advisors LLC, Cliff Roesler (croesler@angleadvisors.com) and Michael McCoy (mmcoy@angleadvisors.com), the following documents (the "Preliminary Bid Documents"):

(a)    an executed confidentiality agreement on terms reasonably acceptable to the Debtors and the Prepetition Agent (each, a "Confidentiality Agreement");

(b)    a statement and other factual support demonstrating to the Debtors' satisfaction, in consultation with the Consultation Parties, in the exercise of their reasonable business judgment that the Interested Party has a *bona fide* interest in purchasing some or all of the Assets; and

(c)    preliminary proof by the Interested Party of its financial capacity to close the Interested Party's proposed Transaction(s), which may include financial statements of, or verified financial commitments obtained by, the Interested Party (or, if the Interested Party is an entity formed for the purpose of acquiring the desired Assets, the party that will bear liability for a breach), the adequacy of which will be assessed by the Debtors in consultation with their advisors and the Consultation Parties.

Only those Interested Parties who have submitted acceptable Preliminary Bid Documents (each, a "Potential Bidder") may submit bids.  For the avoidance of doubt, the Stalking Horse Bidder

has been deemed to be a Qualified Bidder (as defined below) and is not required to provide any of the foregoing Preliminary Bid Documents.

## II.    Obtaining Due Diligence

Only Potential Bidders will be eligible to receive due diligence information concerning the Debtors and their Assets.  The Debtors will provide to each Potential Bidder reasonable due diligence information, as requested, as soon as reasonably practicable after such request, which information will be commensurate with the due diligence information given to the Stalking Horse Bidder prior to and after entry into the Stalking Horse Purchase Agreement; provided that if any Potential Bidder is (or is affiliated with) a competitor of the Debtors, the Debtors shall consult with the Consultation Parties and, upon such consultation, may withhold, redact, code, or delay providing any diligence materials that the Debtors (in consultation with the Consultation Parties) determine are business-sensitive or otherwise inappropriate for disclosure to such Potential Bidder at such time.  Subject to the immediately precedent sentence, the Debtors shall post substantially all written due diligence provided to any Potential Bidder to the Debtors' electronic data room for the benefit of all Potential Bidders.  The due diligence period will end on the Bid Deadline and, thereafter, the Debtors will have no obligation to furnish any diligence information, except as may be required under the terms of any Successful Bid.

Each Potential Bidder other than the Stalking Horse Bidder will comply with all reasonable requests for additional information and due diligence access by the Debtors or their advisors regarding such Potential Bidder and its contemplated transaction.  If the Debtors, after consultation with the Consultation Parties, determine at any time in their reasonable discretion that a Potential Bidder is not reasonably likely to be a Qualified Bidder, then the Debtors' obligation to provide due diligence information to such Potential Bidder will terminate, and all information provided by the Debtors prior to such time shall be returned to the Debtors in accordance with the terms of the applicable Confidentiality Agreement.

## Auction Process

## I.    Bid Deadline

A Potential Bidder that desires to make a proposal, solicitation, or offer for the Assets (each, a "Bid") shall transmit such Bid via email (in .pdf format) so as to be **actually received** on or before **June 21, 2023 at 5:00 p.m. (prevailing Eastern Time)** by the Debtors' Representatives at the address listed below.

(a)    the Debtors: 405 White Street, Jacksonville, North Carolina 28546, Attn: Mr. Costas Loukellis;

(b)    counsel to the Debtors: Hughes Hubbard & Reed LLP, One Battery Park Plaza, 16th Floor, New York, NY 10004 (Attn: Chris Gartman, Esq. (chris.gartman@hugheshubbard.com) and Katie Coleman, Esq. (Katie.coleman@hugheshubbard.com)); Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware 19801 (Attn: Michael R. Nestor, Esq. (mnestor@ycst.com), Andrew L. Magaziner, Esq. (amagaziner@ycst.com) and Ashley E. Jacobs, Esq. (ajacobs@ycst.com));

(c)     investment banker to the Debtors: Angle Advisors LLC, 101 Southfield Road, 2nd Floor, Birmingham, MI 48009 (Attn: Cliff Roesler (croesler@angleadvisors.com) and Michael McCoy (mmcoy@angleadvisors.com));

(d)     counsel to the Committee: Kramer Levin Naftalis & Frankel LLP, 1177 Avenue of the Americas, New York, NY 10036 (Attn: Adam C. Rogoff, Esq. (arogoff@kramerlevin.com); Morris James LLP, 500 Delaware Avenue, Suite 1500, Wilmington, Delaware 19801 (Attn: Jeffrey R. Waxman, Esq. (jwaxman@morrisjames.com) and Eric J. Monzo, Esq. (emonzo@morrisjames.com);

(e)     counsel to the Prepetition Agent: KTBS Law LLP, 1801 Century Park East, 26th Floor, Los Angeles, CA 90067 (Attn: Michael L. Tuchin, Esq. (mtuchin@ktbslaw.com), David A. Fidler, Esq. (dfidler@ktbslaw.com), Nir Maoz, Esq. (nmaoz@ktbslaw.com); Pachulski Stang ~~Zhiehl~~ Ziehl & Jones LLP, (Attn: Laura Davis Jones, Esq. (ljones@pszjlaw.com), Timothy P. Cairns, Esq. (tcairns@pszjlaw.com);

## II.    Bid Requirements

Each Bid by a Potential Bidder (a "<u>Bidder</u>") must be submitted in writing and satisfy the following requirements (collectively, the "<u>Bid Requirements</u>").

(a)     <u>Purpose</u>.  The Bid must clearly identify the following:  (i) the particular Assets, or the portion thereof, identified with reasonable specificity, to be acquired, including, without limitation, each and every executory contract and unexpired lease to be assumed by the Debtors and assigned and sold to the Bidder; and (ii) the liabilities and obligations to be assumed, including any debt to be assumed.

(b)     <u>Deposit</u>.  Each Bid must be accompanied by a cash deposit in the amount equal to 10% of the aggregate cash portion of the purchase price of the Bid to be held in escrow by the Debtors (the "<u>Deposit</u>"); *provided* that the Stalking Horse Bidder will not be required to provide a deposit with respect to the Stalking Horse Purchase Agreement.

(c)     <u>Total Consideration</u>.  Each Bid must identify the form and amount of the total consideration to be provided to the Debtors in cash and non-cash components to be paid, including assumed liabilities (the "<u>Bid Value</u>").

(d)     <u>Minimum Bid</u>.  The Bid Value proposed by each Bid (or sum of Bids for different Assets) must be equal to, or exceed, the sum of (i) $225,000,000 in cash; <u>plus</u> (ii) assumption of those Assumed Liabilities in the Stalking Horse Purchase Agreement that the Stalking Horse Bidder has agreed to pay or assume or the cash equivalent of such amount; <u>plus</u> (iii) cash equal to the "Transaction Fee" due to Angle Advisors based on the Bid, <u>plus</u> (iv) the minimum overbid amount of $2,000,000. The Debtors, in consultation with the Consultation Parties, shall advise Potential Bidders of the amount of the foregoing Assumed Liabilities and Transaction Fee to permit Potential Bidders to bid accordingly.

(e)     <u>Marked Agreement</u>.  Each Bid must include a signed asset purchase agreement, together with all exhibits and schedules thereto, pursuant to which the Qualified Bidder proposes to effectuate the Transaction (collectively, the "<u>Transaction</u>

Documents"), along with a redline version of such agreement relative to the Stalking Horse Purchase Agreement (the form of which will be provided to any Potential Bidder before the Bid Deadline).

(f)     Tax Structure; Structure.  The Bid must specify with particularity its tax structure, including whether it is intended to be structured in a tax-free manner or if the Debtors, under the Bid, will incur any incremental tax liabilities.  The Bid must also identify the structure proposed for undertaking the Transaction, including the specific Assets being acquired and liabilities being assumed, the proposed steps to accomplish such acquisition, and any financial, legal, or tax considerations upon which the Bid's proposed structure relies.

(g)     Timeline to Close.  The Bid must provide a commitment to close no later than the deadline for the Stalking Horse Bidder to close in the Stalking Horse Purchase Agreement.

(h)     Outside Date.  The Bid must include a signed writing stating that the Bidder's offer is irrevocable until the selection of the Successful Bidder, provided that if such Bidder is selected as the Successful Bidder or the Back-Up Bidder (each, as defined below) its offer shall remain irrevocable until the later of (i) the closing of the Transaction with the Successful Bidder or the Back-Up Bidder, and (ii) August 15, 2023 (the "Outside Date"); *provided* that for the avoidance of doubt, the Outside Date for the Stalking Horse Bidder shall be as set forth in the Stalking Horse Purchase Agreement.

(i)     Sources of Financing; Adequate Assurance.  To the extent that a Bid is not accompanied by evidence of the Bidder's capacity to consummate the proposed Transaction(s) set forth in its Bid with cash on hand, each Bid must contain written evidence of a commitment for financing or other evidence of the ability to consummate the Transaction at the Purchase Price (including sufficient financial or other information to establish adequate assurance of future performance pursuant to section 365(f)(2) of the Bankruptcy Code and, if applicable, section 365(b)(3) of the Bankruptcy Code to the non-Debtor counterparties to any executory contracts and unexpired leases to be assumed by the Debtors and assigned and sold to the Bidder in connection with the proposed transaction) satisfactory to the Debtors in their reasonable discretion, after consultation with the Consultation Parties, with appropriate contact information for such financing sources.

(j)     No Financing Approval or Diligence Outs.  A Bid shall not be conditioned on the obtaining or the sufficiency of financing or any internal approval, or on the outcome or review of due diligence, but may be subject to the accuracy at the closing of specified representations and warranties or the satisfaction at the closing of specified conditions.

(k)     Employees.  A Bid shall contain a detailed description of how the Bidder intends to treat current employees of the Debtors.

(l)     Authorization.  Each Bid must contain evidence that the Bidder has obtained authorization or approval from its board of directors (or a comparable governing body acceptable to the Debtors) with respect to the submission of its Bid and the consummation of the Transactions contemplated in such Bid.

(m)   <u>Disclaimer of Fees</u>.  Each Bid must disclaim any right to receive a fee analogous to any break-up fee, termination fee, expense reimbursement or similar type of payment.

(n)   <u>Identity</u>.  Each Bid must fully disclose the identity of each entity that will be bidding or otherwise participating in connection with such Bid (including each equity holder or other financial backer of the Bidder, including if such Bidder is an entity formed for the purpose of consummating the proposed Transaction contemplated by such Bid), and the complete terms of any such participation.  Under no circumstances shall any undisclosed principals, equity holders, or financial backers be associated with any Bid.  Each Bid must also include contact information for the specific person(s) and counsel whom the Debtors or their advisors should contact regarding such Bid.  Nothing herein shall preclude multiple Bidders from submitting a joint Bid, subject to the Debtors' prior written consent to such submission and the disclosure requirements set forth herein.

(o)   <u>Consent to Jurisdiction</u>.  The Bidder must submit in writing to the exclusive jurisdiction of the Court (and to the Court entering a final judgment) and waive any right to a jury trial in connection with any disputes relating to Debtors' qualification of Bids, the Auction, the construction and enforcement of these Bidding Procedures, and the Transaction documents and the closing, as applicable.

(p)   <u>No Collusion</u>.  The Bidder must acknowledge in writing (i) that it has not engaged in any collusion with respect to any Bids or the Transaction, specifying that it did not agree with any other party, including, but not limited to, any other Potential Bidders or interested third parties, to control price or exert undue influence over the process; and (ii) agree not to engage in any such collusion or undue influence with respect to any Bids, the Auction, the Transaction, or the sale process.

(q)   <u>Pension Plan.  A Bid shall contain a description of how the Bidder intends to treat the pension plans operated by the Debtors, including the potential assumption thereof.</u>

(r)   <u>Non-Debtor Subsidiaries and Affiliates.  To the extent included as part of the Bid, each Bid shall identify the value of the Purchase Price allocated to the purchase of stock or other assets of any non-Debtor subsidiary and/or affiliate.</u>

(s)   <s>(q)</s><u>Good Faith Offer</u>.  The Bid must constitute a good faith, *bona fide* offer to effectuate the Transaction.

(t)   <s>(r)</s><u>As-Is, Where-Is</u>.  Each Bid must include a written acknowledgement and representation that the Bidder: (1) has had an opportunity to conduct any and all due diligence regarding the Assets prior to making its offer; (2) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the Assets in making its Bid; and (3) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied by operation of law, or otherwise, regarding the Assets or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in the Transaction Documents.

By submitting its Bid, each Bidder is agreeing, and shall be deemed to have agreed, to abide by and honor the terms of these Bidding Procedures, to waive the right to pursue a substantial

contribution claim under section 503 of the Bankruptcy Code related in any way to the submission of its Bid, the Bidding Procedures, and the sale process for the Assets, and to refrain from submitting a Bid or seeking to reopen the Auction after conclusion of the Auction. **The submission of a Bid shall constitute a binding and irrevocable offer to acquire the applicable Assets as reflected in such Bid**. As soon as reasonably practicable following the designation of a Bid as a Qualified Bid in accordance with these Bidding Procedures, the Debtors shall notify each Bidder of such designation. Within one (1) day of receiving a Bid, the Debtors shall share such Bid with the Consultation Parties.

### III.    Designation of Qualified Bidders

A qualified bidder ("Qualified Bidder") is a Bidder that, in the Debtors' reasonable determination in consultation with the Consultation Parties, (i) has timely submitted a Bid that satisfies each of the Bid Requirements and (ii) is able to consummate the proposed transaction within the required timeframe if selected as the Successful Bidder (such Bid submitted by a Qualified Bidder, a "Qualified Bid"). The Debtors may accept as a single Qualified Bid multiple bids for non-overlapping material portions of the Assets such that, when taken together in the aggregate, such bids would otherwise meet the standards for a single Qualified Bid.

No later than 5:00 p.m. (prevailing Eastern Time) on June 23, 2023, the Debtors will determine in consultation with the Consultation Parties, whether such Bidder is a Qualified Bidder, and notify the Bidder of such determination.

For the avoidance of doubt, (i) the Stalking Horse Bidder is a Qualified Bidder, (ii) the Stalking Horse Purchase Agreement is a Qualified Bid, and (iii) the Stalking Horse Bidder is authorized to submit any Overbids (as defined below) during the Auction, in each instance without further qualification required of the Stalking Horse Bidder.

If no Qualified Bids (other than the Stalking Horse Purchase Agreement) are received by the Bid Deadline, then the Stalking Horse Bidder will be deemed the Successful Bidder, the Stalking Horse Purchase Agreement will be the Successful Bid, no Auction will be held, and the Debtors will as expeditiously as possible seek final Court approval of the sale of the Purchased Assets to the Stalking Horse Bidder as contemplated by the Stalking Horse Purchase Agreement.

### IV.    The Auction

If the Debtors receive one or more Qualified Bids in addition to the Stalking Horse Purchase Agreement, the Debtors will conduct the Auction to determine the highest or otherwise best bid with respect to the Assets. The Auction will commence on **June 28, 2023 at 10:00 a.m. (prevailing Eastern Time)** at the offices of Hughes Hubbard & Reed LLP, One Battery Park Plaza, New York, NY 10004, or on such other date and/or at such other location as determined by the Debtors in consultation with the Consultation Parties with the prior written consent of the Prepetition Agent (provided that the Prepetition Agent's and Stalking Horse Bidder's respective rights under the Stalking Horse Purchase Agreement and the Cash Collateral Order shall remain unaffected).

Before commencement of the Auction, the Debtors will (i) notify all Qualified Bidders, the United States Trustee, the Committee, and the Prepetition Agent (collectively, but excluding the Qualified Bidders other than the Stalking Horse Bidder, the "Notice Parties") in writing of the highest or otherwise best Qualified Bid, as determined in the Debtors' business judgment, in consultation with the Consultation Parties (the "Baseline Bid"), and (ii) provide copies (to the extent not

previously provided) of the documents supporting the Baseline Bid to all Qualified Bidders and Notice Parties.  The determination of which Qualified Bid constitutes the Baseline Bid, and which Qualified Bid constitutes the highest or otherwise best bid such that it is the Successful Bid (as defined below), shall take into account, without limitation:  (a) the type and amount of Assets sought to be purchased in the Bid; (b) the amount and nature of the total consideration; (c) the likelihood of the Bidder's ability to close a transaction and the timing thereof; and (d) the net economic effect of any changes to the value to be received by the Debtors' estates from the transaction contemplated by the Qualified Bid.

If there is an Auction, it will be conducted in accordance with the following procedures:

(a)    Only a Qualified Bidder that has submitted a Qualified Bid will be eligible to participate at the Auction.  Only the authorized representatives of each of the Qualified Bidders (including the Stalking Horse Bidder), the Debtors, the Committee (including its counsel), and the Prepetition Agent (including its counsel) will be permitted to attend the Auction; provided, however, that any Qualified Bidder other than the Stalking Horse Bidder that, at any point during the auction, declines to submit an Overbid as set forth below and thereby withdraws from continued participation in the Auction, shall not be permitted to attend the remainder of the Auction.  All creditors that provide 24 hours' notice to the Debtors by email (ajacobs@ycst.com) will be permitted to attend the Auction.

(b)    At least one (1) business day prior to the Auction, each Qualified Bidder who has timely submitted a Qualified Bid must inform the Debtors whether it intends to attend the Auction and all Qualified Bidders wishing to attend the Auction must have at least one individual representative with authority to bind such Qualified Bidder in attendance at the Auction in person; provided that in the event a Qualified Bidder elects not to attend the Auction, such Qualified Bidder's Qualified Bid shall nevertheless remain fully enforceable against such Qualified Bidder.

(c)    Each Qualified Bidder participating at the Auction will be required to confirm on the record at the Auction that (i) it has not engaged in any collusion with respect to the bidding, and (ii) its Qualified Bid is a good-faith *bona fide* offer and it intends to consummate the proposed Transaction if selected as the Successful Bidder.

(d)    The Debtors and their professionals will direct and preside over the Auction.  At the start of the Auction, the Debtors will describe the terms of the Baseline Bid.  All Bids made thereafter must be Overbids and will be made and received on an open basis, and all material terms of each Bid will be fully disclosed to all other Qualified Bidders.  The Debtors will maintain a transcript of all Bids made and announced at the Auction, including the Baseline Bid, all Overbids, the Successful Bid, and the Back-Up Bid (as defined below).

(e)    During the Auction, bidding will begin initially with the Baseline Bid and subsequently continue in minimum increments of at least $500,000 in cash (each, an "Overbid"); provided, however, that the Stalking Horse Bidder may satisfy the minimum bid increment requirement by credit bidding at least $500,000 of outstanding Prepetition Obligations (up to the amount outstanding as of the projected closing date of the Sale (including but not limited to, principal, accrued and unpaid interest (including postpetition interest to the extent provided in the Cash Collateral

Order), and all outstanding fees and expenses and other amounts owed under the Loan Documents (as defined in the Cash Collateral Order)) that do not already form a part of the purchase price under the Stalking Horse Purchase Agreement. The Debtors will announce at the Auction the material terms of each Overbid, value each Overbid in accordance with these Bid Procedures and provide each Qualified Bidder with an opportunity to make a subsequent Overbid. Subject to the requirement (other than with regard to the Stalking Horse Bidder) that each Overbid include at least $500,000 in cash more than the cash component of the Baseline Bid or prevailing Overbid, additional consideration in excess of the amount set forth in the Baseline Bid or the prevailing Overbid may include cash and/or other consideration in accordance with these procedures. To the extent that an Overbid has been accepted entirely or in part because of the addition, deletion, or modification of a provision or provisions in the applicable Transaction Documents or the Stalking Horse Purchase Agreement, the Debtors will provide notice to each participant of the value ascribed by the Debtors to any such added, deleted, or modified provision or provisions, with such value being determined by the Debtors in consultation with the Consultation Parties. The Debtors, with the consent of the Consultation Parties, shall have the right to establish different Overbids with respect to any bids for some but not all of the assets.

(f)     Any Overbid made from time to time by a Qualified Bidder must remain open and binding on the Qualified Bidder until and unless (i) the Debtors accept a Bid submitted by another Qualified Bidder during the Auction as an Overbid and (ii) such prior Overbid is not selected as the Back-Up Bid. To the extent not previously provided (which will be determined by the Debtors in consultation with the Consultation Parties), a Qualified Bidder submitting an Overbid must submit at the Debtors' request (in consultation with the Consultation Parties), as part of its Overbid, written evidence (in the form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Debtors in consultation with the Consultation Parties) demonstrating such Qualified Bidder's ability to close the transaction at the purchase price contemplated by such Overbid.

The Debtors (in consultation with the Consultation Parties) reserve the right to make one or more adjournments in the Auction to, among other things (i) facilitate private discussions with individual Qualified Bidders and negotiate the terms of their Overbids, (ii) allow individual Qualified Bidders to consider how they wish to proceed, and (iii) give Qualified Bidders the opportunity to provide the Debtors with such additional evidence as the Debtors may require in their reasonable discretion (and in consultation with the Consultation Parties) to determine that the Qualified Bidder has sufficient internal resources, or has received sufficient non-contingent debt and/or equity funding commitments, to consummate the proposed transaction at the prevailing Overbid amount.

## V.     Selection of Successful Bid

The Auction shall continue until there is only one Qualified Bid that the Debtors determine, in the exercise of their reasonable business judgment, in consultation with the Consultation Parties, to be the highest or otherwise best bid submitted by a Qualified Bidder during the Auction for the Assets (the "Successful Bid") and the next highest or otherwise best bid after the Successful Bid (the "Back-Up Bid"), at which point the Auction will be closed; *provided* that the Auction shall not close unless and until all Qualified Bidders have been given a reasonable opportunity to submit an Overbid at the Auction to the then prevailing highest or otherwise best Bid. Such acceptance by the Debtors

of the Successful Bid is conditioned upon approval by the Court of the Successful Bid. The Qualified Bidder that submits the Successful Bid will be deemed the "<u>Successful Bidder</u>." The Qualified Bidder that submits the Back-Up Bid, if any, will be deemed the "<u>Back-Up Bidder</u>"; provided, however, that if the Debtors indicate that they have identified a Bid of the Stalking Horse Bidder as the next highest or otherwise best bid after the Successful Bid, (i) the Stalking Horse Bidder shall not be required, under any circumstances, to serve as the Back-Up Bidder, but may, at its option, choose to do so, and (ii) if a Bid of another party (other than the Successful Bid and the Stalking Horse Bid) remains open, the Stalking Horse Bidder may, at its option, decline to serve as the Back-Up Bidder in favor of the next highest or otherwise best bid if one exists.

The Back-Up Bid, if any, will remain open and binding on the Back-Up Bidder until consummation of the Successful Bid with the Successful Bidder. If the Successful Bidder fails to consummate the Successful Bid within the time set forth therein, the Debtors will be authorized, but not required, in consultation with the Consultation Parties, to select the Back-Up Bidder, if any, as the new Successful Bidder, in which case the Debtors shall proceed to consummate the Successful Bid of the new Successful Bidder.

Within one (1) business day after conclusion of the Auction, the Debtors shall file a notice with the Bankruptcy Court identifying the Successful Bidder and the Back-Up Bidder, if any.

## VI.    Hearing

The hearing (the "<u>Sale Hearing</u>") to consider approval of the sale of assets pursuant to the Successful Bid (the "<u>Sale</u>") will be held before the Court on **July 10, 2023** and otherwise in accordance with any scheduling order entered by the Court; *provided* that if no Auction is held, the Debtors shall schedule the Sale Hearing before such time and as expeditiously as possible. Prior to the Hearing, the Successful Bidder (unless the Successful Bidder is the Stalking Horse Bidder) shall complete and execute all documents evidencing and containing the terms and conditions upon which the Successful Bid was made.

The Hearing may be adjourned or rescheduled by the Debtors with the consent of the Prepetition Agent and the Consultation Parties (provided that the Prepetition Agent's and Stalking Horse Bidder's respective rights under the Stalking Horse Purchase Agreement and the Cash Collateral Order shall remain unaffected) to a time and date consistent with the Court's calendar, as set forth in a notice on the docket of these chapter 11 cases, a notice of agenda, or stated orally at the Hearing.

## VII.    Return of Deposit

The Deposit of the Successful Bidder shall be applied to the purchase price of such transaction at closing. The Deposits for each Qualified Bidder (other than the Successful Bidder and the Back-Up Bidder) shall be returned on the date that is five (5) business days after the Auction, or as soon as is reasonably practicable thereafter. The Debtors shall return the Deposit of the Back-Up Bidder by the earlier of (i) thirty (30) days after the conclusion of the Auction and (ii) five (5) business days after the consummation of the Successful Bid, unless by such date the Debtors have selected the Back-Up Bidder as the new Successful Bidder.

Notwithstanding the foregoing, if a Successful Bidder fails to consummate a proposed transaction because of a breach by such Successful Bidder, the Debtors will not have any obligation to return the Deposit deposited by such Successful Bidder, which may be retained by the Debtors

as damages, in addition to any and all other rights, remedies, or causes of action that may be available to the Debtors, and the Debtors shall be free to consummate the proposed transaction with the applicable Back-Up Bidder without the need for an additional hearing or order of the Court.

## VIII.   Consultation Parties/Expedited Relief

The term "Consultation Parties" shall mean the (i) Official Committee of Unsecured Creditors (the "Committee") and the Committee's counsel, in each case, only to the extent that such party, members, or their respective affiliates, representatives, or advisors do not put forth a Bid, and (ii) the Prepetition Agent.  Any failure to specifically identify consultation rights in any section of these Bidding Procedures shall not limit or otherwise impair the rights of the Consultation Parties to consult with the Debtors.  In the event that the Debtors and the Consultation Parties disagree with matters for which the Debtors are required to consult with the Consultation Parties, then the Consultation Party shall have the right to seek relief from the Court on an expedited basis to resolve the dispute.

*       *       *       *

## **Exhibit 2**

### **Sale Hearing Notice**

**Exhibit 3**

**Notice of Assumption, Assignment and Sale**

| Summary Report | |
|---|---|
| Title | **compareDocs Comparison Results** |
| Date & Time | 5/15/2023 5:08:13 PM |
| Comparison Time | 1.11 seconds |
| compareDocs version | v5.0.100.42 |

| Sources | |
|---|---|
| Original Document | [#30308351] [v4] Stanadyne - Bid Procedures and Order.docx |
| Modified Document | [#30308351] [v5] Stanadyne - Bidding Procedures Order and Procedures.docx |

| Comparison Statistics | |
|---|---|
| Insertions | 14 |
| Deletions | 7 |
| Changes | 5 |
| Moves | 0 |
| Font Changes | 0 |
| Paragraph Style Changes | 0 |
| Character Style Changes | 0 |
| TOTAL CHANGES | 26 |
| | |
| | |
| | |

| Word Rendering Set Markup Options | |
|---|---|
| Name | Standard |
| Insertions | |
| Deletions | |
| Moves / Moves | |
| Font Changes | |
| Paragraph Style Changes | |
| Character Style Changes | |
| Inserted cells | |
| Deleted cells | |
| Merged cells | |
| Changed lines | Mark left border. |

| compareDocs Settings Used | Category | Option Selected |
|---|---|---|
| Open Comparison Report after saving | General | Always |
| Report Type | Word | Redline |
| Character Level | Word | False |
| Include Comments | Word | False |
| Include Field Codes | Word | True |
| Flatten Field Codes | Word | True |
| Include Footnotes / Endnotes | Word | True |
| Include Headers / Footers | Word | True |
| Image compare mode | Word | Insert/Delete |
| Include List Numbers | Word | True |
| Include Quotation Marks | Word | False |
| Show Moves | Word | True |
| Include Tables | Word | True |
| Include Text Boxes | Word | True |
| Show Reviewing Pane | Word | True |
| Summary Report | Word | End |
| Detail Report | Word | Separate (View Only) |
| Document View | Word | Print |