IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>**STANADYNE, LLC et. al.,**<br><br>                        Debtors. | **Chapter 11**<br><br>**Case No. 23-10207 (TMH))**<br><br>**(Jointly Administered)**<br><br>Hearing Date: July 10, 2023 at 10:00 AM<br>Sale Objection Date: June 21, 2023<br>Cure Objection Date: June 12, 2023<br><br>Docket Nos. 245, 265 AND 297 |

**ORACLE'S LIMITED OBJECTION TO AND RESERVATION OF RIGHTS REGARDING: (1) DEBTORS' MOTION FOR ENTRY OF: AN ORDER (I) SCHEDULING A HEARING ON THE APPROVAL OF THE SALE OF ALL OR SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL ENCUMBRANCES OTHER THAN ASSUMED LIABILITIES AND PERMITTED ENCUMBRANCES, AND THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, (II) APPROVING CERTAIN BIDDING PROCEDURES AND ASSUMPTION AND ASSIGNMENT PROCEDURES, AND THE FORM AND MANNER OF NOTICE THEREOF, (III) AUTHORIZING THE DEBTORS TO ENTER INTO THE STALKING HORSE PURCHASE AGREEMENT, AND (IV) GRANTING RELATED RELIEF; AND (B) AN ORDER (I) APPROVING ASSET PURCHASE AGREEMENT, (II) AUTHORIZING THE SALE OF ALL OR SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL ENCUMBRANCES OTHER THAN ASSUMED LIABILITIES AND PERMITTED ENCUMBRANCES, (III) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND (IV) GRANTING RELATED RELIEF; and (2) NOTICE OF CONTRACT COUNTERPARTIES TO POTENTIALLY ASSUMED, ASSIGNED AND SOLD EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

Oracle America, Inc. ("Oracle"), a creditor and contract counter-party in the above-captioned jointly administered Chapter 11 cases, submits this limited objection to and reservation of rights ("Rights Reservation") regarding: *Debtors' Motion for Entry of: (A) an Order (I) Scheduling a Hearing on the Approval of the Sale of All or Substantially All of the Debtors' Assets Free and Clear of All Encumbrances Other Than Assumed Liabilities and Permitted Encumbrances, and the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (II) Approving Certain Bidding Procedures and Assumption and Assignment*

*Procedures, and the Form and Manner of Notice Thereof, (III) Authorizing the Debtors to Enter Into the Stalking Horse Purchase Agreement, and (IV) Granting Related Relief; and (B) an Order (I) Approving Asset Purchase Agreement, (II) Authorizing the Sale of All or Substantially All of the Debtors' Assets Free and Clear of All Encumbrances Other Than Assumed Liabilities and Permitted Encumbrances, (III) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (IV) Granting Related Relief* [Dkt. No. 245] ("Sale Motion"); and (2) *Notice of Contract Counterparties to Potentially Assumed, Assigned and Sold Executory Contracts and Unexpired Leases* [Dkt. No. 297] ("Assumption Notice"), filed by Stanadyne, LLC, *et al.* ("Debtors").

**I.    INTRODUCTION**

1. In connection with the Sale Motion, the Debtors seek Bankruptcy Court authority to, among other things, assume and assign certain executory contracts between the Debtors and Oracle.

2. Oracle objects to, and reserves its rights regarding, the proposed assumption and assignment for several reasons.

   a) First, the targeted Oracle agreement is, or pertains to, one or more licenses of intellectual property which are not assignable absent Oracle's consent pursuant to both the underlying license agreements and applicable law.

   b) Second, the Assumption Notice does not provide a complete description of the Oracle contract, or contracts, which the Debtors seek to assume and assign, and may not identify all active agreements with Oracle. As a result, Oracle is unable to identify with certainty the universe of agreements at issue or determine the accuracy of the proposed cure amount.

   c) Third, Oracle currently is unable to determine whether the successful bidder will be capable of performing under the terms of the Oracle contract the Debtors seek to assume and assign. Until the ultimate purchaser is known, Oracle reserves its rights on this point.

   d) Finally, the APA (defined below) includes a Transition Services Agreement ("TSA") which may include the unauthorized shared use of Oracle's licenses,

>in a manner which is not permitted by Oracle's agreements. Oracle objects to any unauthorized shared use of its licenses which the Debtors may contemplate.

3. Accordingly, Oracle requests that the Court deny the Debtors' request for authority to assume and assign, transfer, or share use of, any Oracle agreement without Oracle's consent.

## II. FACTUAL BACKGROUND

4. The Debtors filed the above captioned cases on February 16, 2023, and an order directing joint administration was entered shortly thereafter. The Debtors continue to operate as debtors in possession.

5. On April 27, 2023, the Debtors filed the Sale Motion, which seeks Court authority to sell all or substantially all assets of the Debtors.

6. The Sale Motion identifies S-PPT Acquisition Company LLC ("Stalking Horse") as the stalking horse bidder.

7. On May 9, 2023 the Debtors filed the *Notice of Filing of Executed Stalking Horse Purchase Agreement* [Dkt. No. 265] ("Notice").

8. Attached as Exhibit "A" to the Notice is the Stalking Horse Agreement between the Debtors and the Stalking Horse ("APA").

9. The APA contemplates that a TSA may be negotiated following the closing. On this topic, the APA states:

>Transition Services. If requested by the Purchaser prior to the Designation Deadline latest in time under this Agreement, Purchaser and the Sellers agree to negotiate in good faith the terms of, and enter into effective as of the Closing (or, if such request is made by the Purchaser after the Closing, as promptly as practicable following such request), a transition services agreement (the "**TSA**") acceptable to the Purchaser and the Prepetition Agent; provided, the TSA, if any, shall (a) contain customary terms for transactions of the type contemplated by this Agreement with respect to the provision of services reasonably requested by the Purchaser or the Prepetition Agent for a reasonable period of time post-Closing; and (b) provide that Purchaser shall pay Sellers the Sellers' actual costs for such transition services and actual and direct out-of pocket expenses incurred by the Sellers in connection with the provision of such transition services; provided, that

>all actual and direct out-of-pocket expenses for third party advisors must be approved in advance by the Purchaser or the Prepetition Agent (not to be unreasonably withheld, conditioned or delayed); provided, further, that Purchaser shall not be responsible, without Purchaser's or the Prepetition Agent's prior consent, for any severance, retention, bonus, deferred compensation or other non-ordinary course employee compensation.

(*See*, APA @ ¶ 8.12)

10. Since the TSA has not been filed, it is unclear which services will be provided during the post-closing period.

11. Therefore, Oracle reserves all rights in the event the TSA authorizes the shared use of Oracle's licensed software and/or services.

12. In addition, since the proposed sale is subject to overbid, the Stalking Horse may not be the ultimate purchaser.

13. Therefore, Oracle reserves all rights regarding both the existing, and any subsequent, APA which proposes to include transitional use, and which involves either the Stalking Horse, or an as yet unknown buyer.

14. On May 23, 2023, the Debtors filed the Assumption Notice. Exhibit "A" to the Assumption Notice identifies one Oracle agreement ("Oracle Agreement") that may be assumed and assigned.

15. The Oracle Agreement is described in the Assumption Notice as follows:

| Counterparty | Cure Amount | Debtor Entity | Description | Execution Date |
|---|---|---|---|---|
| **Oracle America, Inc.** | **$360.00** | **Stanadyne, LLC** | **Oracle License and Services Agreement between Oracle USA, Inc. and Stanadyne Corporation** | **August 31, 2006** |

16. In reviewing its records, Oracle has identified several active agreements between the Debtors and Oracle which are not identified in the Assumption Notice.

### III. ARGUMENT

    **A. The Trustee May Not Assume And Assign The Oracle Agreements Absent Oracle's Consent Because Oracle's Agreements Pertain To Licenses Of Intellectual Property.**

17. Section 365(c) of the Bankruptcy Code provides, in relevant part:

> The trustee may not assume or assign any executory contract ... of the debtor ... if (1)(A) applicable law excuses a party, other than the debtor, to such contract or lease from accepting performance from or rendering performance to an entity other than the debtor ..., whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties; and (B) such party does not consent to such assumption or assignment.

18. Federal law makes non-exclusive copyright licenses non-assignable absent consent of the licensor. *See In re Catapult Entertainment, Inc.*, 165 F.3d 747 (9th Cir. 1999), *cert. dismissed*, 528 U.S. 924 (1999) (patent law renders non-exclusive patent licenses personal and non-assignable under Bankruptcy Code § 365(c)(1)); *In re Sunterra Corp.*, 361 F.3d 257, 271 (4th Cir. 2004) (holding that a debtor was statutorily barred by § 365(c)(1) from assuming a computer software license where contract counterparty did not consent to the assumption); *see also In re Trump Entm't Resorts, Inc.*, 526 B.R. 116, 126 (Bankr. D. Del. 2015) ("Non-exclusive patent and copyright licenses create only personal and not property rights in the licensed intellectual property and so are not assignable."); *In re Rupari Holding Corp.*, 573 B.R. 111, 119 (Bankr. D. Del. 2017) (holding that the debtor could not assume and assign a trademark license without the consent of the non-debtor licensor).

19. Oracle's agreements are, or pertain to, non-exclusive licenses of copyrighted software.

20. Therefore, pursuant to Bankruptcy Code section 365, the Debtors may not assume and assign any

21. Oracle agreement without Oracle's consent. For the reasons discussed herein, Oracle does not consent to the Debtors' proposed assumption and assignment of the Oracle Agreements at this time.

> **B. The Debtors Have Not Adequately Identified The Oracle Agreement To Be Assumed and Assigned, Especially Given the Existence of Additional, Unaddressed Oracle Agreements.**

22. The Assumption Notice generally describes the Oracle Agreement the Debtors seek to assume and assign, but the generality of the description provides insufficient information for Oracle to determine which specific contract potentially may be targeted.

23. Oracle has several active agreements with the Debtors which are not identified in the Assumption Notice. Since no underlying support agreements are identified, it is unclear which contract or contracts are at issue.

24. It is impermissible for the Debtors to segregate the underlying Oracle license agreement from the corresponding support agreement and master agreement for purposes of assumption and assignment, if that is the Debtors' intention. *See, e.g., In re Interstate Bakeries Corporation*, 751 F.3d 955, 963 (8th Cir. 2014); *In re Buffets Holdings*, 387 B.R. 115 (Bankr. D. Del. 2008). An executory contract must be assumed in its entirety and "[c]orrespondingly, all of the contracts that comprise an integrated agreement must either be assumed or rejected, since they all make up one contract." *In re Taylor-Wharton Int'l LLC*, 2010 WL 4862723, at *3 (Bankr. D. Del. Nov. 23, 2010) (citing *In re Exide Tech.*, 340 B.R. 222, 228 (Bankr. D. Del. 2006)).

25. Under California law,[1] made applicable by the Oracle Agreement, "[s]everal contracts relating to the same matters, between the same parties, and made as parts of substantially

---

[1] *In re Hawker Beechcraft, Inc.*, No. 12-11873 (SMB), 2013 WL 2663193, at *3 (Bankr. S.D.N.Y. June 13, 2013) ("State law governs the question whether an agreement is divisible or indivisible for the purposes of assumption and rejection under Bankruptcy Code § 365.")

6

one transaction, are to be taken together." Cal. Civ. Code § 1642.  Because the support agreements and master agreements relate to the underlying license agreements as part of substantially the same transaction, they constitute integrated contracts which may not be separately assumed and assigned.

26.     In Order to clarify which Oracle contract Debtors hope to assume and assign, Oracle requests that the Debtors specify the targeted contract's (a) identification or contract number; (b) the contract date; (c) any associated support or support renewals; and (d) the governing license agreement.

27.     This information will enable Oracle to evaluate whether the Oracle Agreement is assignable, supported, expired or in default, and, if in payment default, the appropriate cure amount.

28.     Additionally, the information will allow Oracle to assess whether Oracle may accept performance from an entity other than the Debtors.

29.     Oracle reserves its right to be heard on this issue until after the Oracle Agreement the Debtors seek to assume and assign is identified with greater specificity.

### C. The Debtors May Not Have Provided The Correct Cure Amount.

30.     Before assuming and assigning any executory contract, the Debtors must cure (or provide adequate assurance of a prompt cure of) any default under the subject contracts. 11 U.S.C. § 365(b)(1). The Debtors have identified a $360.00 cure amount for the Oracle Agreement.

31.     However, based on the contract description in the Assumption Notice and the fact that there are additional active agreements between the Debtors and Oracle which may have been inadvertently omitted from the Assumption Notice, the Debtors' cure calculation may not be accurate.

32. Therefore, Oracle reserves its right to be heard regarding all cure amounts until after the contract or contracts the Debtors seek to assume and assign are identified with enough specificity to allow Oracle to determine the correct cure amount.

### D. The Debtors Have Not Provided Adequate Assurance of Future Performance By the Assignee.

33. Before assuming and assigning any executory contract, the Debtors must provide adequate assurance of future performance. 11 U.S.C. § 365(b)(1).

34. Oracle is assessing whether the Stalking Horse would be an acceptable customer. In addition, the Sale Motion is subject to overbid.

35. If necessary, an auction will be held on June 28, 2023, meaning that the ultimate purchaser may be an entity other than the Stalking Horse.

36. Given that the auction is set for a date after the deadline for Oracle to object to the Sale Motion[2], Oracle reserves its rights as to adequate assurance.

37. To satisfy Bankruptcy Code section 365(b), Oracle requests that the Debtors provide the following information about the ultimate purchaser: (a) financial bona fides; (b) confirmation that the purchaser is not an Oracle competitor; and (c) confirmation that the ultimate assignee will (i) execute an Oracle Assignment Agreement and related documentation which identifies with specificity the Oracle executory contract(s) to be assigned; and, if appropriate (ii) enter into an Oracle Master License Agreement.

38. Absent these assurances, Oracle cannot determine the proposed assignee's creditworthiness, its suitability as an Oracle customer, or its ability to adequately perform the terms

---

[2] Oracle is aware that pursuant to the Assumption Notice, counterparties have until the sale hearing by which to file an objection to adequate assurance. However, in order to save duplicate filings, Oracle incorporates its objection to adequate assurance in this Rights Reservation.

of the Oracle Agreement. Until the information described above is provided, the Debtors have not complied with the requirements of section 365(b)(1)(C).

### E. Oracle's Agreements Do Not Authorize Simultaneous Use By The Debtors and the Stalking Horse/Eventual Purchaser.

39. The APA contemplates that certain services may be provided between the Debtors and the Stalking Horse via a TSA.

40. Precise information about the nature of these proposed services is not provided, nor has the TSA been filed with the Court. This omission precludes Oracle from determining how, or if, its contracts will be affected. Simultaneous use of, and access to, Oracle's licensed software may exceed the scope of the permitted uses under the Oracle Agreement.

41. It would potentially result in an unauthorized "splitting" of the licenses between the Debtors and the ultimate purchaser. Oracle objects to the extent that any transitional or shared use arrangement purports to grant to both the Debtors and purchaser(s) the right to shared use of the Oracle licenses beyond the licenses' terms.

42. Oracle reserves all rights regarding any transitional use, including under any final APA or TSA, pending Oracle's further review of the same.

## IV. CONCLUSION

43. For the reasons set forth above, Oracle respectfully requests that the Court deny the Debtors' request for authority to assume and assign, transfer or share use of the Oracle Agreement, or any Oracle agreement. Oracle reserves its right to be heard further on all issues set forth herein.

Dated: June 8, 2023  
Wilmington, Delaware

**MARGOLIS EDELSTEIN**

By:     /s/ James E. Huggett
    James E. Huggett, Esq. (#3956)
300 Delaware Avenue, Suite 800
Wilmington, Delaware 19801
Telephone: (302) 888-1112
E-mail: jhuggett@margolisedelstein.com

Amish R. Doshi, Esq.
**DOSHI LEGAL GROUP, P.C.**
1979 Marcus Avenue, Suite 210E
Lake Success, NY 11042
Tel: (516) 622-2335
E-Mail: amish@doshilegal.com

Shawn M. Christianson, Esq.
**BUCHALTER, A PROFESSIONAL CORPORATION**
425 Market Street, Suite 2900
San Francisco, California 94105-2491
Tel: (415) 227-0900

Peggy Bruggman, Esq.
Benjamin Wheeler, Esq.
**ORACLE AMERICA, INC.**
500 Oracle Parkway
Redwood City, California 94065

**Attorneys for Oracle America, Inc.**