**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| *In re* | Chapter 11 |
| **STANADYNE LLC, *et al.*,**[1] | Case No. 23-10207 (TMH) |
| **Debtors.** | (Jointly Administered) |
|  | **Ref. Docket Nos. 245 & 276** |

**NOTICE OF FILING OF PROPOSED SALE ORDER**

**PLEASE TAKE NOTICE** that on April 27, 2023, the above-captioned debtors and debtors in possession (collectively, the "Debtors"), filed the *Debtors' Motion for Entry of: (A) an Order (I) Scheduling a Hearing on the Approval of the Sale of All or Substantially All of the Debtors' Assets Free and Clear of All Encumbrances Other than Assumed Liabilities and Permitted Encumbrances, and the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (II) Approving Certain Bidding Procedures and Assumption and Assignment Procedures, and the Form and Manner of Notice Thereof, (III) Authorizing the Debtors to Enter into the Stalking Horse Purchase Agreement, and (IV) Granting Related Relief; and (B) an Order (I) Approving Asset Purchase Agreement, (II) Authorizing the Sale of All or Substantially All of the Debtors' Assets Free and Clear of All Encumbrances Other than Assumed Liabilities and Permitted Encumbrances, (III) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (IV) Granting Related Relief* [Docket No. 245] (the "Sale Motion")[2] with the United States Bankruptcy Court for the District of Delaware (the "Court").

**PLEASE TAKE FURTHER NOTICE** that on May 16, 2023, the Court entered the *Order (I) Approving Bidding Procedures, (II) Scheduling an Auction and a Sale Hearing, (III) Approving the Form and Manner of Notice Thereof, (IV) Establishing Notice and Procedures for the Assumption and Assignment and Sale of Contracts and Leases, and (V) Granting Related Relief* [Docket No. 276] (the "Bidding Procedures Order"). Pursuant to the Bidding Procedures Order, the Court scheduled a hearing to approve the Sale for July 10, 2023 at 10:00 a.m. (ET) (the "Sale Hearing").

**PLEASE TAKE FURTHER NOTICE** that attached hereto as **Exhibit A** is a proposed form of order approving the Sale (the "Proposed Sale Order").

---

[1]  The debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number are:  Stanadyne LLC (0378); Pure Power Technologies, Inc. (5202); Stanadyne PPT Holdings, Inc. (2594); and Stanadyne PPT Group Holdings, Inc. (1734).  The Debtors' headquarters are located at 405 White Street, Jacksonville, North Carolina 28546.

[2]  Capitalized terms used but not otherwise defined herein shall have the meaning given to them in the Sale Motion.

**PLEASE TAKE FURTHER NOTICE** that the Debtors intend to present the Proposed Sale Order at the Sale Hearing.  The Debtors reserve all rights to modify the Proposed Sale Order at or prior to the Sale Hearing.

Dated:  June 21, 2023
        Wilmington, Delaware

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Ashley E. Jacobs*

Michael R. Nestor (DE Bar No. 3526)
Andrew L. Magaziner (DE Bar No. 5426)
Ashley E. Jacobs (DE Bar No. 5635)
1000 North King Street
Rodney Square
Wilmington, Delaware 19801-6108
Telephone:  (302) 571-6600
Facsimile:  (302) 571-1253
Email:  mnestor@ycst.com
       amagaziner@ycst.com
       ajacobs@ycst.com

-and-

Kathryn A. Coleman
Christopher Gartman
HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, NY 10004-1482
Telephone: (212) 837-6000
Facsimile:  (212) 422-4726
Email:  katie.coleman@hugheshubbard.com
       chris.gartman@hugheshubbard.com

*Counsel for the Debtors*

# **EXHIBIT A**

## **Proposed Sale Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| *In re* | **Chapter 11** |
| **STANADYNE LLC, *et al.*,[1]** | **Case No. 23-10207 (TMH)** |
| **Debtors.** | **(Jointly Administered)** |

**ORDER (I) APPROVING ASSET PURCHASE AGREEMENT, (II)
AUTHORIZING THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS'
ASSETS FREE AND CLEAR OF ALL ENCUMBRANCES, (III) AUTHORIZING
THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY
CONTRACTS AND UNEXPIRED LEASES,
AND (IV) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors-in-possession (the "Debtors") for entry of an order (this "Sale Order"): (i) approving that certain asset purchase agreement, dated as of May 8, 2023, by and among Debtors Stanadyne PPT Holdings, Inc., Stanadyne LLC, and Pure Power Technologies, Inc.,[3] as Sellers, and Stanadyne Operating Company LLC (formerly known as S-PPT Acquisition Company LLC) (together with its designees, successors  or assigns, as applicable, as provided in the Asset Purchase Agreement referred to below, the "Purchaser"), as Purchaser (including all exhibits, annexes and schedules related thereto, and as the same may be amended from time to time in accordance with the terms thereof, the "Asset Purchase Agreement"), a copy of which is attached hereto as **Exhibit A**, (ii)

---

1.  The Debtors in the above-captioned Chapter 11 cases (the "Cases"), along with the last four digits of each Debtor's federal tax identification number are:  Stanadyne LLC (0378); Pure Power Technologies, Inc. (5202); Stanadyne PPT Holdings, Inc. (2594); and Stanadyne PPT Group Holdings, Inc. (1734).  The Debtors' headquarters are located at 405 White Street, Jacksonville, North Carolina 28546.

2.  Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

3   Debtor Stanadyne PPT Group Holdings, Inc. is not a party to the Asset Purchase Agreement  As used herein, the terms "Debtor" and "Debtors" refer to all Debtors in the Cases or only those Debtors who are Sellers under the Asset Purchase Agreement, in each case as the context shall require.

authorizing and approving the sale of substantially all of the assets of the Debtors (as more precisely defined in the Asset Purchase Agreement, the "Purchased Assets") free and clear of all Encumbrances (as defined below) and the consummation of all other transactions contemplated by the Asset Purchase Agreement (collectively, the "Sale") and the fulfillment of the Debtors' obligations thereunder, (iii) authorizing the assumption of those executory contracts and unexpired leases of the Debtors that constitute Assigned Contracts (as defined in the Asset Purchase Agreement) and the assignment and sale of the Assigned Contracts to Purchaser, and (iv) granting related relief; the Court having entered on May 16, 2023 that certain *Order (I) Approving Bidding Procedures, (II) Scheduling an Auction and a Sale Hearing, (III) Approving the Form and Manner of Notice Thereof, (IV) Establishing Notice and Procedures for the Assumption and Assignment and Sale of Contracts and Leases, and (V) Granting Related Relief* [Docket No. 276] (the "Bidding Procedures Order"); the Debtors having determined that the highest or otherwise best offer for the Purchased Assets was made by the Purchaser pursuant to the Asset Purchase Agreement; the Court having conducted a hearing on July 10, 2023 at 10:00 a.m. (ET) (the "Sale Hearing"), at which all parties in interest were offered an opportunity to be heard with respect to the Motion, to consider approval of the Sale pursuant to the terms and conditions of the Asset Purchase Agreement; and the Court having considered (i) the Motion, all objections thereto, and all replies in support thereof, (ii) the arguments of counsel made, and evidence proffered or adduced, related to the Motion, and (iii) the full record in these Cases, including the record related to the Sale Hearing; all parties in interest having been heard, or having had the opportunity to be heard, regarding the approval of the Asset Purchase Agreement and the Sale and the related relief granted herein; and it appearing that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors, and other parties in

interest; and it further appearing that the legal and factual bases set forth in the Motion and at the Sale Hearing establish just cause for the relief granted herein; and after due deliberation thereon and good and sufficient cause appearing therefor;

**IT IS HEREBY FOUND, CONCLUDED, AND DETERMINED THAT:**

A.      <u>Findings of Fact and Conclusions of Law</u>.  The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to these Cases pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.      <u>Jurisdiction; Venue</u>.  This Court has jurisdiction over the Motion and over the property of the Debtors, including the Purchased Assets, pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue of the Cases and the Motion in this district and Court is proper under 28 U.S.C. §§ 1408 and 1409.

C.      <u>Final Order</u>.  This Sale Order constitutes a final order within the meaning of 28 U.S.C. § 158(a).  Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to the extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, this Court expressly finds that there is no just reason for delay in the implementation of this Sale Order and expressly directs entry of judgment as set forth herein.

D.      <u>Statutory Bases for Relief</u>.  The statutory bases for the relief requested in the Motion are sections 105(a), 363, and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006, 9013 and 9014.

3

E.     <u>Notice</u>.  As evidenced by the affidavits of service and publication filed with the Court [Docket Nos. 256, 265, 269, 279, 282, 287, 299, 319, 321, 322, 331, 339, 356[4]], and based on the representations of counsel at the Sale Hearing, due, proper, timely, adequate, and sufficient notice of the Motion, the Bidding Procedures (as defined below), the Sale Hearing, the Sale, and the assumption, assignment, and sale of the Assigned Contracts has been provided in accordance with sections 102(1), 363, and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006, 9007, 9013, and 9014 and in compliance with the Bidding Procedures Order to each party entitled to such notice.  The Debtors have complied with all obligations to provide notice of the Motion as set forth in the Bidding Procedures Order, and such notice was reasonably calculated to provide all interested parties with timely and proper notice of the Bidding Procedures, the Sale Hearing, the Sale, and the assumption, assignment, and sale of the Assigned Contracts.  Actual notice of the Motion and the relief requested therein (the "<u>Sale Notice</u>") was provided to the following parties: (i) the Office of the United States Trustee for the District of Delaware, (ii) counsel to the Committee, (iii) counsel to the Prepetition Agent, (iv) counsel to the Purchaser, (v) all parties to Potential Assigned Contracts (as defined in the Bidding Procedures Order), (vi) all parties who had expressed a written interest in some or all of the Purchased Assets, (vii) all known holders of Encumbrances in, on, to, or against the Purchased Assets, (viii) the Internal Revenue Service, (ix) all applicable state and local taxing authorities, (x) the state attorneys general for all states in which the Debtors conduct business; and (xi) all parties that have requested or that are required to receive notice pursuant to Bankruptcy Rule 2002.  With respect to Entities (as defined in the Bankruptcy Code) whose identities or addresses are not reasonable ascertainable by the Debtors, publication of the Sale

---

[4] NTD: This list to be updated to reflect any subsequently filed certificates of service or publication.

Notice in the *New York Times – National Edition* on May 26, 2023 (the "<u>Publication Notice</u>") was sufficient and reasonably calculated under the circumstances to reach such Entities.  The Sale Notice and the Publication Notice collectively provided all interested parties with timely and proper notice of the Motion, the Bidding Procedures (including the time and place of the Auction), the Sale, the assumption, assignment, and sale of the Assigned Contracts, and the Sale Hearing.  The notices described above were good, sufficient, and appropriate under the circumstances, and no other or further notice was or is required.

F.    <u>Disclosures</u>.  The disclosures made by the Debtors in the Motion, the Sale Notice, the Publication Notice, and related documents filed with the Court concerning the Asset Purchase Agreement and at the Sale Hearing were sufficient under the circumstances.

G.    <u>Sale and Marketing Process</u>.  As demonstrated by evidence proffered or adduced at the Sale Hearing, the Debtors and their professionals have conducted an adequate marketing process and a fair and open sale process in compliance with the Bidding Procedures Order.  The bidding procedures attached as an exhibit to the Bidding Procedures Order (the "<u>Bidding Procedures</u>") were the result of arm's length negotiations, were substantively and procedurally fair to all parties, were proposed in good faith, and afforded a full, fair, and reasonable opportunity for any interested party to make a higher or otherwise better offer to purchase the Purchased Assets.  The Bidding Procedures and the opportunity to submit a higher or otherwise better bid were duly noticed, the sale process was conducted in a non-collusive, fair, and good-faith manner, and the Debtors and the Purchaser have complied with the Bidding Procedures and the Bidding Procedures Order in all respects.

H.    <u>Successful Bidder</u>.  The Debtors determined, in accordance with the Bidding Procedures, and in consultation with the Consultation Parties (as defined in the Bidding

Procedures Order), that the Purchaser's bid was the sole Qualified Bid and represented the highest or otherwise best offer for the Purchased Assets. As a result, the Debtors canceled the Auction and declared the Purchaser the Successful Bidder in a notice filed with the Court [Docket No. __] (the "Notice of Successful Bidder").

      I.      Highest and Best Offer. After a full, fair, and robust sale process, the Debtors appropriately determined that the Asset Purchase Agreement constitutes the highest or otherwise best offer for the Purchased Assets. Taking into consideration all relevant factors and circumstances, the Asset Purchase Agreement represents the best available alternative for the Debtors' estates. The total consideration provided by the Purchaser for the Purchased Assets as reflected in the Asset Purchase Agreement (i) is fair and reasonable, (ii) represents the highest and best offer received by the Debtors for the Purchased Assets, and (iii) will provide a greater recovery for the Debtors' estates than would be provided by any other available alternative. No other Entity or group of Entities has submitted a Qualified Bid or otherwise offered to purchase the Purchased Assets for greater economic value to the Debtors' estates than the Purchaser.

      J.      Best Interests of the Estates, Creditors and Parties in Interest. The Debtors have demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the sale of the Purchased Assets outside the ordinary course of business under section 363(b) of the Bankruptcy Code. The immediate consummation of the Sale is necessary and appropriate to maximize the value of the Debtors' estates. Considering all relevant facts and circumstances of these Cases, and the adequacy and fair value of the consideration provided by the Purchaser under the Asset Purchase Agreement, the Sale (i) constitutes a reasonable and sound exercise of the Debtors' business judgment and a proper exercise of the fiduciary duties of

the Debtors and their officers and directors, (ii) is in the best interests of the Debtors, their

estates, their creditors, and other parties in interest, and (iii) merits approval.

       K.     <u>Good Faith</u>.  The Purchaser is purchasing the Purchased Assets in good faith and

is a good faith purchaser within the meaning of section 363(m) of the Bankruptcy Code.  Neither

the Purchaser nor any of its Affiliates (as defined in the Asset Purchase Agreement), officers,

directors, members, partners, principals, or shareholders (or equivalent) or any of their respective

representatives, successors, or assigns (collectively, "<u>Related Parties</u>") is an "insider" (as defined

in section 101(31) of the Bankruptcy Code) of any Debtor and, therefore, each such Entity is

entitled to the full protections of section 363(m) and otherwise has proceeded in good faith in all

respects in connection with these Cases, including because: (i) the Purchaser recognized that the

Debtors were free to deal with any other party interested in acquiring the Purchased Assets, (ii)

the Purchaser complied with the provisions of the Bidding Procedures Order, (iii) the Purchaser's

bid was subject to the competitive Bidding Procedures set forth in the Bidding Procedures Order,

(iv) all payments to be made by the Purchaser and other agreements or arrangements entered into

by the Purchaser in connection with the Sale have been disclosed, (v) the Purchaser has not

violated section 363(n) of the Bankruptcy Code by any action or inaction, and (vi) the

negotiation and execution of the Asset Purchase Agreement were at arm's length and in good

faith.  There is no evidence of insider influence or improper conduct by the Purchaser or any of

its Related Parties in connection with the negotiation of the Asset Purchase Agreement with the

Debtors.

       L.     <u>No Collusion</u>.  The Asset Purchase Agreement and the transactions contemplated

thereby cannot be avoided under section 363(n) of the Bankruptcy Code.  None of the Debtors,

the Purchaser, or any of their respective Related Parties have engaged in any conduct that would

cause or permit the Asset Purchase Agreement or the consummation of the transactions contemplated thereby to be avoided, or costs or damages to be imposed, under section 363(n) of the Bankruptcy Code.

M.    <u>Fair Consideration</u>.  The consideration provided by the Purchaser pursuant to the Asset Purchase Agreement is fair and adequate and constitutes reasonably equivalent value, fair consideration, and fair value for the Purchased Assets under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia (including the Uniform Voidable Transactions Act, the Uniform Fraudulent Transfer Act, the Uniform Conveyance Act, and similar laws).

N.    <u>Power and Authority</u>.  The Debtors, each acting by and through their existing agents, representatives, and officers, have full corporate power and authority to perform under the Asset Purchase Agreement and consummate all transactions contemplated thereby and to execute, deliver, and perform under all other documents contemplated thereby.  The Sale has been duly and validly authorized by all necessary corporate actions.  Upon entry of this Sale Order, the Debtors require no further consents or approvals to consummate the transactions contemplated by the Asset Purchase Agreement, except as otherwise set forth in the Asset Purchase Agreement.

O.    <u>Binding Agreement; Survival</u>.  The Asset Purchase Agreement is a valid and binding contract between the Debtors and the Purchaser and shall be enforceable pursuant to its terms.  The Asset Purchase Agreement was not entered into for the purpose of hindering, delaying, or defrauding creditors under the Bankruptcy Code or under the laws of the United States, any state, territory, possession, or the District of Columbia.  Neither the Purchaser nor any Debtor is entering into the transactions contemplated by the Asset Purchase Agreement

fraudulently for the purpose of statutory and common law fraudulent conveyance and fraudulent transfer claims. The Asset Purchase Agreement and the Sale itself, and the consummation thereof, shall be specifically enforceable against and binding upon the Debtors and any Chapter 11 or Chapter 7 trustee appointed with respect to any Debtor and shall not be subject to rejection or avoidance by the foregoing parties or any other Entity. The rights and interests granted pursuant to this Sale Order and Asset Purchase Agreement shall continue in these or any superseding cases under the Bankruptcy Code (including, without limitation, any case under Chapter 7 of the Bankruptcy Code) (each, a "Superseding Case"). Any trustee appointed for any Debtor under any provision of the Bankruptcy Code shall be authorized and directed to perform under the Asset Purchase Agreement and this Sale Order without the need for further order of the Court.

P.      Property of the Estate; Valid Transfer. The Debtors are the sole and lawful owner of, and have clear and marketable title to, the Purchased Assets. The Debtors' right, title, and interest in and to the Purchased Assets constitute property of the Debtors' estates and title thereto is vested in the Debtors' estates within the meaning of section 541(a) of the Bankruptcy Code. The transfer of each of the Purchased Assets to the Purchaser pursuant to the Asset Purchase Agreement will be a legal, valid, and effective transfer of such Purchased Assets and will vest the Purchaser with all right, title, and interests of the Debtors to the Purchased Assets free and clear of all Encumbrances accruing or arising at, or related to, any time prior to the Closing (as defined in the Asset Purchase Agreement), unless otherwise expressly assumed or undertaken by the Purchaser under the terms of the Asset Purchase Agreement.

Q.      Free and Clear Sale. The sale of the Purchased Assets shall be free and clear of all Encumbrances against the Debtors, their estates, and any of the Purchased Assets because, in

each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied.  As used in this Sale Order, the term "Encumbrances" means, collectively, any and all: (i) Encumbrances (as defined in the Asset Purchase Agreement); (ii) Excluded Liabilities (as defined in the Asset Purchase Agreement); (iii) debts arising under, relating to, or in connection with any act of any Debtor; (iv) claims, liabilities, obligations, demands, guaranties, options, rights, contractual commitments, restrictions, restrictive covenants, covenants not to compete, rights to refunds, escheat obligations, and interests and matters of any kind and nature asserted or assertable against any Debtor (whether arising prior to or subsequent to the commencement of the Cases and whether imposed by agreement, applicable law, equity, or otherwise); (v) purported rights of setoff or recoupment against, and rights and options to effect any forfeiture, modification, profit-sharing interest, right of first refusal, purchase or repurchase right or option, or termination of, any Debtor's or any of the Purchaser's interests in the Purchased Assets, or any similar rights; (vi) taxes owed by any Debtor for a period prior to the Closing, including, without limitation, sales, income, use or any other type of tax; (vii) restrictions, charges, and interests of any kind or nature, including any restriction of use, voting, transfer, receipt of income, or other exercise of any attributes of ownership, in each case accruing or arising at, or relating to, any time prior to the Closing; provided, however, that the term "Encumbrance," as used herein, shall not include any Assumed Liabilities or Permitted Encumbrances (each as defined in the Asset Purchase Agreement) or any obligations expressly assumed or undertaken by the Purchaser under the terms of the Asset Purchase Agreement.  If the sale of the Purchased Assets were not free and clear of all Encumbrances, or if the Purchaser would, or in the future could, be liable for any Encumbrances, the Purchaser would not have entered into the Asset Purchase Agreement and would not consummate the Sale, thus adversely

affecting the Debtors and their estates and creditors.  The total consideration to be provided under the Asset Purchase Agreement reflects the Purchaser's reliance on this Sale Order to provide it, pursuant to section 105(a) and 363(f) of the Bankruptcy Code, with title to and possession of the Purchased Assets free and clear of all Encumbrances.

R.     <u>Assigned Contracts</u>.  As set forth herein, and subject only to payment of the Determined Cure Costs (as defined in the Asset Purchase Agreement), all requirements and conditions under the Bankruptcy Code and other applicable law for the Debtors' assumption, assignment, and sale to the Purchaser of the Assigned Contracts have been satisfied.  The Debtors have demonstrated that the assumption, assignment, and sale of the Assigned Contracts contemplated by the Asset Purchase Agreement is an exercise of their sound business judgment and is in the best interests of the Debtors, their estates and creditors, and other parties in interest. The Assigned Contracts to be assumed, assigned, and sold to the Purchaser under the terms of the Asset Purchase Agreement are an integral part of the Asset Purchase Agreement and the Sale and, accordingly, such assumption, assignment, and sale are reasonable and enhance the value of the Debtors' estates.  All Assigned Contracts are in full force and effect and have not been rejected, and the Debtors' time to assume or reject the Assigned Contracts has not otherwise expired.  As to each Assigned Contract listed on **Exhibit B** hereto, the Cure Cost (as defined in the Asset Purchase Agreement) listed therein with respect to such Assigned Contract shall constitute the Determined Cure Cost for such Assigned Contract, and payment thereof is sufficient for the Debtors to comply fully with the requirements of Section 365(b) of the Bankruptcy Code as to such Assigned Contract.  As to each Potential Assigned Contract listed on **Exhibit C** hereto, the Determined Cure Cost applicable thereto shall be determined (i) by agreement of the Purchaser, the Debtors, and the non-debtor counterparty to such Potential

Assigned Contract (in which case such Potential Assigned Contract shall become an Assigned Contract automatically upon such resolution and, to the extent applicable, payment of the agreed Determined Cure Cost, without the need for any further order of the Court) or (ii) by subsequent order of the Court, and, in each case, the payment of such Determined Cure Cost will be sufficient for the Debtors to comply fully with the requirements of Section 365(b) of the Bankruptcy Code as to such Assigned Contract.

S.    <u>Designation Rights</u>.    Pursuant to Section 1.5 of the Asset Purchase Agreement, the Purchaser shall maintain certain rights to modify the list of Assigned Contracts after the date of this Sale Order and up to the applicable Designation Deadline (as defined in the Asset Purchase Agreement) as set forth in such section.    Such modification rights include, but are not limited to, the right of the Purchaser, prior to the applicable Designation Deadline, to designate certain Designation Rights Assets (as defined in the Asset Purchase Agreement) for assumption by the Debtors and assignment and sale to the Purchaser, or as Excluded Assets.    Upon the Purchaser's timely designation of a Designated Rights Asset as a Purchased Asset pursuant to Section 1.5 of the Asset Purchase Agreement, all of the provisions of this Sale Order relating to Purchased Assets shall, without the need for further order of the Court or action by any party, become applicable to such asset.    The notice and opportunity to object provided to the non-debtor counterparties to Potential Assigned Contracts and to other parties in interest, as set forth in the Bidding Procedures Order and the Asset Purchase Agreement (and as described herein), provides fair, reasonable, and adequate protection of all rights that such non-debtor counterparties and other parties in interest may have with respect to such Contracts (as defined in the Asset Purchase Agreement).    In the event that the Debtors or their estates incur costs or expenses in connection with the operation of any Designation Rights Asset, the Purchaser shall

be responsible for all such costs and expenses to the extent set forth in Section 1.5(b) of the Asset Purchase Agreement,

T.    Notice of Assumption, Assignment, and Sale of Executory Contracts and Unexpired Leases.  Good and sufficient notice of the Debtors' assumption, assignment and sale to the Purchaser of the Assigned Contracts has been provided to each non-debtor counterparty to a Potential Assigned Contract.  As reflected in the certificates of service filed on the Court's docket [Docket Nos. 319, 322], the Debtors served (i) the *Notice to Contract Parties to Potentially Assumed, Assigned, and Sold Executory Contracts and Unexpired Leases* [Docket No. 297] (the "Initial Assumption Notice") in the form approved by the Bidding Procedures Order and (ii) the *Notice of Amendment to Exhibit A to Notice to Contract Parties to Potentially Assumed, Assigned, and Sold Executory Contracts and Unexpired Leases* [Docket No. 306] (the "First Supplemental Assumption Notice" and, together with the Initial Assumption Notice, the "Assumption Notices"), in which the Debtors identified the dollar amount, if any, that the Debtors assert is necessary to be paid to cure all defaults, if any (the "Debtor Asserted Cure Amount"), under the Potential Assigned Contracts, on the non-debtor counterparties to the Potential Assigned Contracts.  Pursuant to the Bidding Procedures Order and as set forth in the Assumption Notices, (i) non-debtor counterparties to the Potential Assigned Contracts listed on the Initial Assumption Notice were required to file objections (each, a "Cure Objection"), if any, to the Debtor Asserted Cure Amount by no later than June 12, 2023, at 5:00 p.m. (prevailing Eastern Time) and (ii) non-debtor counterparties to the Potential Assigned Contracts listed on the First Supplemental Assumption Notice were required to file a Cure Objection, if any, to the Debtor Asserted Cure Amount by no later than June 13, 2023, at 5:00 p.m. (prevailing Eastern Time)  (in each case, except to the extent the Debtors and the Purchaser jointly agreed to an

extension of such deadline).   The Bidding Procedures Order provides, and the Assumption

Notices explained, that in the absence of a timely filed Cure Objection, the Debtor Asserted Cure

Amount set forth in the Assumption Notices with respect to each Potential Assigned Contract

would be controlling and fixed as the Cure Cost for such Potential Assigned Contract

notwithstanding anything to the contrary in such Potential Assigned Contract or any other

document, and the non-debtor counterparty to such Potential Assigned Contract shall be deemed

to have consented to the Debtor Asserted Cure Amount.   The provisions of subparagraph 16(c)

of the Bidding Procedures Order regarding Supplemental Assumption Notices (as defined in the

Bidding Procedures Order) will provide the non-debtor counterparties to Potential Assigned

Contracts listed in any Supplemental Assumption Notice served hereafter with adequate,

reasonable, and appropriate notice and opportunity to object.

U.   <u>Adequate Assurance of Future Performance</u>.   In accordance with the Bidding

Procedures Order, on May 25, 2023 [Docket No. 321], the Debtors sent all non-debtor

counterparties to Potential Assigned Contracts evidence that the Purchaser has the ability to

perform under the non-debtor counterparty's Potential Assigned Contract and otherwise has

provided adequate assurance of future performance under section 365(b)(1) of the Bankruptcy

Code.   Pursuant to the Bidding Procedures Order, non-debtor counterparties to Potential

Assigned Contracts whose executory contracts and unexpired leases were listed on any

Assumption Notice were required to file any objections to the Purchaser's ability to provide

adequate assurance of future performance as contemplated under sections 365(b)(1)(C),

365(b)(3) (to the extent applicable), and 365(f)(2)(B) of the Bankruptcy Code (any such

objection, an "<u>Adequate Assurance Objection</u>") by no later than June 12, 2023, at 5:00 p.m.

(prevailing Eastern Time).   Any non-debtor counterparty that failed to file an Adequate

Assurance Objection is forever barred from objecting to the assumption, assignment and sale of its Potential Assigned Contract on the grounds of a failure to provide adequate assurance of future performance.

V.     Purchaser Not a Successor.  By consummating the Sale pursuant to the Asset Purchase Agreement (including operating the Purchased Assets under the Debtors' trade names), the Purchaser is not a mere continuation of any Debtor or any Debtor's estate, and there is no continuity, no common identity, and no continuity of enterprise between the Purchaser and any Debtor.  The Purchaser shall not be deemed to be holding itself out as a continuation of any Debtor based on the Sale, the Asset Purchase Agreement, or this Sale Order.  The Purchaser is not a successor to any Debtor or any Debtor's estate by reason of any theory of law or equity, and the Sale does not amount to a consolidation, merger, or *de facto* merger of the Purchaser and any Debtor.  Neither the Purchaser nor any of its Related Parties shall have assumed or in any way be responsible for any obligation or liability of any Debtor (or any Affiliate thereof) or any Debtor's estate, except to the extent expressly provided in the Asset Purchase Agreement or otherwise agreed in writing by the Purchaser in its sole and absolute discretion.

W.     No Sub Rosa Plan.  The Sale neither impermissibly restructures the rights of the Debtors' creditors nor impermissibly dictates the terms of a Chapter 11 plan of the Debtors.  The Sale does not constitute a *sub rosa* or *de facto* plan of reorganization or liquidation.

X.     Wind-Down.  The Excluded Cash and the Wind-Down Budget (each as defined in the Asset Purchase Agreement) will provide for, among other things and in accordance with the Wind-Down Budget, the payment of certain professional and U.S. trustee fees and other agreed wind-down expenses, and will permit the Debtors to implement an orderly and responsible wind-down of the Debtors' estates.  The Debtors shall deliver any Surplus Cash (as defined in the

Asset Purchase Agreement) to Purchaser promptly following the date any such Cash and Cash Equivalents (as defined in the Asset Purchase Agreement) become Surplus Cash pursuant to the Asset Purchase Agreement.

Y.    <u>Single, Integrated Transaction</u>.   Entry of this Sale Order approving the Asset Purchase Agreement and all provisions of this Sale Order and the Asset Purchase Agreement are a necessary condition precedent to the Purchaser consummating the Sale.   The provisions of this Sale Order and the Asset Purchase Agreement and the transactions contemplated hereby and thereby are inextricably linked and technically and collectively constitute a single, integrated transaction.

Z.    <u>Consummation is Legal, Valid, and Authorized</u>.   The consummation of the Sale is legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, sections 105(a), 363(b), 363(f), 363(m), 365(b), and 365(f) of the Bankruptcy Code, and all of the applicable requirements of such sections have been satisfied.

AA.    <u>Legal and Factual Bases</u>.   The legal and factual bases set forth in the Motion and at the Sale Hearing establish just cause for the relief granted herein.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED:**

1. **Approval of the Motion**

1.1.    The relief requested in the Motion is granted as set forth herein.

1.2.    Any and all objections and responses to the Motion, the entry of this Sale Order, or the relief granted herein (other than Cure Objections and Adequate Assurance Objections identified in **Exhibit C** hereto, if any) that have not been withdrawn, waived, settled, or resolved, and all reservations of rights included therein, are hereby overruled and denied on the merits. [Notwithstanding anything in this Sale Order to the contrary, all Cure Objections and Adequate

Assurance Objections listed on **Exhibit C**, if any, are reserved.  All Entities notified or deemed notified of the relief sought in the Motion and set forth in this Sale Order that failed to timely object thereto are deemed to consent to such relief.

1.3.    Notice of the Motion, the Bidding Procedures Order, the Sale Hearing, and the Sale was fair and equitable under the circumstances and complied in all respects with section 102(1) of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, and 6006.

1.4.    The Court's findings of fact and conclusions of law in the Bidding Procedures Order are incorporated herein by reference.

2. **Approval of the Sale**

2.1.    The Asset Purchase Agreement and all other ancillary documents, all of the terms and conditions thereof, and the Sale are hereby approved in all respects.

2.2.    Pursuant to sections 363 and 365 of the Bankruptcy Code, entry by the Debtors into the Asset Purchase Agreement is hereby authorized and approved as a valid exercise of the Debtors' business judgment.  Pursuant to sections 105, 363, and 365 of the Bankruptcy Code, the Debtors are authorized to perform under and make all payments and satisfy all other obligations required by the Asset Purchase Agreement and all other ancillary documents as and when due thereunder without further order of the Court.  Pursuant to section 363(b) of the Bankruptcy Code, the Debtors, acting by and through their existing agents, representatives, and officers, are authorized, without further order of the Court, to take any and all actions necessary or appropriate to: (a) consummate and close the Sale pursuant to and in accordance with the terms and conditions of the Asset Purchase Agreement; (b) transfer and assign all right, title, and interest to and in all Purchased Assets in accordance with the terms and conditions of the Asset Purchase Agreement; and (c) perform under, consummate, and implement the Asset Purchase

17

Agreement and all additional instruments and documents that may be reasonably necessary or desirable to implement the Sale, including any deeds, assignments, bills of sale, stock powers, transfers of membership interests and other instruments of transfer, or other ancillary documents as may be reasonably necessary or appropriate to the performance of the obligations contemplated by the Asset Purchase Agreement. Neither the Purchaser nor any Debtor shall have any obligation to proceed with the Closing under the Asset Purchase Agreement until all conditions precedent to its obligations to do so have been met, satisfied, or waived in accordance with the terms of the Asset Purchase Agreement.

2.3.    The Debtors are authorized to cause to be filed with the secretary of state of any state or other applicable officials of any Governmental Units (as defined in section 101(27) of the Bankruptcy Code) any and all certificates, agreements, or amendments necessary or appropriate to effectuate the transactions contemplated by the Asset Purchase Agreement, any related agreements, and this Sale Order, including amended and restated certificates or articles of incorporation and by-laws or certificates or articles of amendment, and all such other actions, filings, or recordings as may be required under applicable law or as any officer of any Debtor may determine are necessary or appropriate. The execution of any such document or the taking of any such action shall be, and hereby is, deemed conclusive evidence of the authority of such person to so act.

2.4.    The terms and provisions of the Asset Purchase Agreement and this Sale Order shall be binding in all respects upon, and shall inure to the benefit of, the Debtors, their estates, and their creditors (whether known or unknown), the Purchaser, and each of their respective Affiliates, successors, and assigns, and any affected third parties, including, without limitation, all Entities asserting Encumbrances in, on, to, or against any of the Purchased Assets

(collectively, the "Bound Parties") (provided, however, that no Bound Party other than the Debtors and the Purchaser shall be deemed a party to, or a third-party beneficiary of, the Asset Purchase Agreement or entitled to assert directly any rights thereunder), including, without limitation, following any subsequent appointment of a trustee, examiner, or receiver with respect to any Debtor or its estate, and all terms and provisions of the Asset Purchase Agreement shall likewise be binding on such trustee, examiner, or receiver.  The provisions of this Sale Order and the terms and conditions of the Asset Purchase Agreement shall survive the entry of any order that may be entered confirming or consummating any Chapter 11 plan for any Debtor, converting any of the Cases to a case under Chapter 7 of the Bankruptcy Code, or dismissing any of the Cases or any Superseding Case, and nothing contained in any such order or plan shall alter, conflict with, or derogate from the provisions of this Sale Order or the Asset Purchase Agreement.  To the extent of any conflict between this Sale Order or the Asset Purchase Agreement, on the one hand, and such future plan or order, on the other hand, the terms of this Sale Order and the Asset Purchase Agreement shall control.

3. **Sale and Transfer of Assets**

3.1.    Pursuant to sections 105(a), 363(b), 363(f), 365(b), and 365(f) of the Bankruptcy Code, and pursuant to and except to the extent otherwise set forth in the Asset Purchase Agreement (including with respect to Assumed Liabilities and Permitted Encumbrances), the Purchased Assets shall be transferred free and clear of all Encumbrances and Excluded Liabilities, with all Encumbrances in, on, to, or against any Purchased Assets to attach to the proceeds (including all amounts paid by Purchaser under the Asset Purchase Agreement) of the Sale in the order of their priority and with the same validity, force, and effect that they had against the Purchased Assets immediately prior to the Closing but subject to any claims and

defenses the Debtors may possess with respect thereto.  Those holders of Encumbrances who did not object (or whose objections were withdrawn or consensually resolved) to the Sale are deemed to have consented to the Sale being free and clear of their Encumbrances pursuant to section 363(f)(2) of the Bankruptcy Code.  Those holders of Encumbrances who did object could be compelled in a legal or equitable proceeding to accept money satisfaction of such Encumbrances pursuant to section 363(f)(5) of the Bankruptcy Code or fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code and, therefore, are adequately protected by having their Encumbrance attach, pursuant to the terms of this Sale Order, solely to the proceeds of the Sale ultimately attributable to the Purchased Assets in, on, to, or against which they had, prior to the Closing, an Encumbrance.

3.2.    The sale of (a) all rights, claims, credits, settlement proceeds, causes of action or rights of setoff against third parties (including for the avoidance of doubt, those arising under, or otherwise relating to, the Assigned Contracts, including all rights under vendors', manufacturers', and contractors' warranties, indemnities, and guarantees and (b) the Avoidance Actions (as defined in the Asset Purchase Agreement) pursuant to the Asset Purchase Agreement (in each case to the extent comprising Purchased Assets pursuant to Section 1.1(j) of the Asset Purchase Agreement and, collectively, the "Assigned Claims") is hereby approved.

3.3.    Conditioned upon the occurrence of the Closing, this Sale Order shall be construed and shall constitute for all purposes a full and complete general assignment, conveyance, and transfer of all of the Purchased Assets and a bill of sale transferring all of the Debtors' right, title, and interest in and to such Purchased Assets pursuant to the terms and conditions set forth in the Asset Purchase Agreement.  For the avoidance of doubt, the Excluded

Assets are not among the Purchased Assets, and the Excluded Liabilities are not among the Assumed Liabilities.

3.4.    All Entities are prohibited from taking any action to adversely affect or interfere with the ability of the Debtors to transfer the Purchased Assets to the Purchaser in accordance with the Asset Purchase Agreement and this Sale Order or, following the Closing, the ability of the Purchaser to own, possess, use, or convey the Purchased Assets.

3.5.    Subject to the terms of the Asset Purchase Agreement, the Purchaser is hereby authorized in connection with the consummation of the Sale to transfer or direct the transfer of any or all of the Purchased Assets (including the Assigned Contracts) or any rights to acquire any Purchased Assets (including Assigned Contracts) to its direct and indirect subsidiaries in such manner as the Purchaser, in its sole and absolute discretion, deems appropriate and to assign, sublease, sublicense, transfer, or otherwise dispose of any of the Purchased Assets (including the rights under any Assigned Contract) to its direct and indirect subsidiaries with all of the rights and protections accorded under this Sale Order and the Asset Purchase Agreement.  The Debtors shall cooperate with and take all actions reasonably requested by the Purchaser to effectuate any of the foregoing.

3.6.    The transfer of the Purchased Assets to the Purchaser and/or its designee(s) pursuant to the Asset Purchase Agreement and the consummation of the Sale (a) do not require any consents (beyond entry of this Sale Order) other than as specifically provided for in the Asset Purchase Agreement, (b) constitute a legal, valid, and effective transfer of all of the Debtors' right, title, and interest in and to the Purchased Assets (notwithstanding any requirement for approval or consent by any Entity under or pursuant to any otherwise applicable law, agreement, or governing document), and (c) shall vest the Purchaser with all right, title, and

interest of the Debtors in and to the Purchased Assets as set forth in the Asset Purchase Agreement free and clear of all Encumbrances of any kind or nature whatsoever (except to the extent expressly set forth in the Asset Purchase Agreement).

3.7.    To the maximum extent permitted under applicable law, the Purchaser and/or its designee(s), as applicable, shall be authorized, as of and after the Closing, to operate under any license, permit, registration, and governmental authorization or approval of the Debtors constituting Purchased Assets, and all such licenses, permits, registrations, and governmental authorizations and approvals are deemed to have been and hereby are directed to be, transferred to the Purchaser or its designee(s) as of the Closing.  To the extent provided by section 525 of the Bankruptcy Code, no Governmental Unit may revoke or suspend any grant, permit, or license relating to the operation of the Purchased Assets sold, transferred, assigned, or conveyed to Purchaser or its designee(s) on account of the filing or pendency of these Cases or the consummation of the Sale.  Each and every federal, state, and local governmental agency or department is hereby authorized and directed to accept any and all documents and instruments necessary and appropriate to consummate the Sale.  This Sale Order is deemed to be in recordable form sufficient to be placed in the filing or recording system of each and every federal, state, or local government agency, department, or office.

3.8.    All Entities that presently or as of the Closing are in possession of some or all of the Purchased Assets (wherever located) are hereby directed to surrender possession of such Purchased Assets to the Purchaser or its designee on the Closing Date.

3.9.    Except as otherwise expressly provided in the Asset Purchase Agreement, no Entity shall assert or pursue against the Purchaser or any of its Affiliates, assets, or property any Encumbrance directly or indirectly, in any manner whatsoever.  Without limiting the foregoing,

effective as of the Closing, and except as otherwise expressly provided in the Asset Purchase Agreement, all Entities, including all lenders, debt security holders, equity security holders, governmental, tax and regulatory authorities, non-debtor counterparties to executory contracts and unexpired leases, other contract counterparties, customers, licensors, litigation claimants, employees and former employees, and trade or other creditors, hereby are forever barred and estopped from asserting any claims or other Encumbrances (whether legal or equitable, matured or unmatured, contingent or noncontingent, liquidated or unliquidated, asserted or unasserted, whether arising prior to or subsequent to the commencement of these Cases, and whether imposed by agreement, understanding, law, equity or otherwise) against the Purchaser or the Purchased Assets, including, without limitation, taking any of the following actions with respect to or based on such claim or other Encumbrance: (a) commencing or continuing in any manner any action or other proceeding against the Purchaser or any of its Affiliates, assets or properties; (b) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order against the Purchaser or any of its Affiliates, assets, or properties; (c) creating, perfecting, or enforcing any Encumbrance against the Purchaser or any of its Affiliates, assets or properties; (d) asserting an Encumbrance as a setoff or subrogation of any kind against any obligation due the Purchaser or any of its Affiliates; (e) commencing or continuing any action in any manner or place that does not comply, or is inconsistent, with the provisions of this Sale Order, the Asset Purchase Agreement, or any other agreements or actions contemplated by or taken in respect of the Asset Purchase Agreement; or (f) interfering with, preventing, restricting, prohibiting, or otherwise enjoining the consummation of the Sale.

3.10.   Neither the Purchaser nor any of its Related Parties is, has, will be, or will have been, and none shall be deemed: (a) a "successor" in any respect to any Debtor or its estate as a

result of the consummation of the Sale or any other event occurring in the Cases under any theory of law or equity; (b) to have, *de facto* or otherwise, merged or consolidated with or into any Debtor or its estate; (c) to have a continuity of enterprise with any Debtor, or (e) a continuation or substantial continuation of any Debtor or any enterprise of any Debtor.  By consummating the Sale, the Purchaser shall not be assuming, nor be deemed to have assumed, or in any way be responsible for any liability or obligation of any Debtor or its estate, including, without limitation, any bulk sale law, successor liability, or liability or responsibility for any claim against any Debtor or its insider, except to the extent otherwise expressly provided in the Asset Purchase Agreement with respect to an Assumed Liability or Permitted Encumbrance and with respect to the Purchaser's obligations with respect to the Designation Rights Assets.  Except to the extent otherwise set forth in the Asset Purchase Agreement with respect to Assumed Liabilities, Permitted Encumbrances, and the Purchaser's obligations with respect to Designation Rights Assets, the transfer of the Purchased Assets (including the Assigned Contracts) to the Purchaser under the Asset Purchase Agreement shall not result in the Purchaser, any of its Related Parties, or the Purchased Assets, having any liability or responsibility whatsoever with respect to, or being required to satisfy in any manner, whether at law or in equity, whether by payment, setoff, or otherwise, directly or indirectly (a) any claim against any Debtor or any insider of a Debtor; (b) any Encumbrance, or (c) any liability or responsibility of any Debtor.

3.11.   Without limiting the effect or scope of the foregoing, except to the extent expressly provided in the Asset Purchase Agreement, as of the Closing, the Purchaser and its Related Parties  shall have no successor or vicarious liabilities of any kind or character with respect to any Purchased Assets, including, without limitation any liability related to: (a) any employment or labor agreements or the termination thereof; (b) any pension, welfare,

compensation, or other employee benefit plans, agreements, practices, and programs of or related to any Debtor or any Debtor's Affiliates, predecessors, or current or former employees (or the termination of any of the foregoing) (including, without limitation, any claims belonging to or assertable by the Pension Benefit Guaranty Corporation for unfunded benefit liabilities, minimum funding requirements, due and unpaid plan contributions, premiums, and interest, and any other charges on each of the foregoing); (c) any Debtor's business operations or the cessation thereof; (d) any litigation involving one or more of the Debtors; (e) any claims of any former employees of any Debtor or its predecessor; (f) any employee, workers' compensation, occupational disease, unemployment, or temporary disability related law; and (g) any claims that might otherwise arise under or pursuant to (in each case (as applicable), as amended): (i) the Employee Retirement Income Security Act of 1974; (ii) the Fair Labor Standards Act; (iii) Title VII of the Civil Rights Act of 1964; (iv) the Federal Rehabilitation Act of 1973; (v) the National Labor Relations Act; (vi) the Worker Adjustment and Retraining Notification Act of 1988; (vii) the Age Discrimination in Employment Act of 1967; (viii) the Americans with Disabilities Act of 1990; (ix) the Family Medical Leave Act; (x) the Labor Management Relations Act; (xi) the Older Workers Benefit Protection Act; (xii) the Equal Pay Act; (xiii) the Consolidated Omnibus Budget Reconciliation Act of 1985; (xiv) the Multiemployer Pension Plan Amendments Act of 1980; the Pension Protection Act; (xv) state and local discrimination laws; (xvi) state and local unemployment compensation laws or any other similar state and local laws; (xvii) state workers' compensation laws; (xviii) any other state, local or federal employee benefit laws, regulations, or rules or other state, local, or federal laws, regulations, or rules relating to wages, benefits, employment, or termination of employment with any Debtor or any predecessors; (xix) any antitrust laws; (xx) any product liability or similar laws, whether state or federal or otherwise;

(xxi) any environmental laws, rules, or regulations, including, without limitation, under the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. §§ 9601, *et seq*., or similar state statutes; (xxii) any bulk sales or similar laws; (xxiii) any federal, state, or local tax statutes, regulations, or ordinances, including, without limitation, the Internal Revenue Code of 1986; and (xxiv) any common law doctrine of *de facto* merger or successor or transferee liability, in each case now existing or hereafter arising, whether asserted or unasserted, fixed or contingent, liquidated or unliquidated, with respect to any Debtor, any obligation of any Debtor, or the Purchased Assets, including, without limitation, liabilities on account of any taxes arising, accruing, or payable under, out of, or in connection with, or in any way relating to, any Purchased Assets (including any Assigned Contract) or the Asset Purchase Agreement.

3.12.   Except as expressly set forth in the Asset Purchase Agreement with respect to Assumed Liabilities, Permitted Encumbrances, and the Purchaser's obligations with respect to the Designation Rights Assets, it is expressly ordered and directed that the sale of the Purchased Assets is free and clear of any and all unemployment compensation taxes and any related contribution and reimbursement obligations of any Debtor, and all state and labor agencies shall treat the Purchaser as a "new employer" in all respects and for any applicable tax rates and contribution and reimbursement obligations and "experience rates" as of and after the Closing (and each state unemployment compensation law agency or department shall be prohibited from treating the Purchaser as a successor of any Debtor for any contribution rates, benefit charges, benefit rates, experience rates, or similar charges or taxes).

4.   **Assumption, Assignment, and Sale of Executory Contracts and Unexpired Leases**

4.1.   Pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code, and subject to and conditioned upon the occurrence of the Closing, and subject to Paragraphs 4.8 and 4.16

hereof, the Debtors' assumption, assignment, and sale to the Purchaser, and the Purchaser's assumption and purchase on the terms set forth in the Asset Purchase Agreement of the Assigned Contracts, are hereby approved in their entirety, and the requirements of section 363 and 365 of the Bankruptcy Code with respect thereto are hereby deemed satisfied.  Subject to Paragraphs 4.8 and 4.16 hereof, the Debtors are hereby authorized in accordance with sections 105(a), 363, and 365 of the Bankruptcy Code to (a) assume, assign, and sell to the Purchaser, effective as of the Closing (or thereafter pursuant to the Asset Purchase Agreement) the Assigned Contracts free and clear of all Encumbrances of any kind or nature whatsoever and (b) execute and deliver to the Purchaser such documents or other instruments as may be necessary or reasonably requested by the Purchaser to assign and transfer the Assigned Contracts to the Purchaser.

4.2.    Upon the date that each Assigned Contract is assumed, assigned, and sold pursuant to the Asset Purchase Agreement, the Purchaser shall, in accordance with sections 363 and 365 of the Bankruptcy Code, be fully and irrevocably vested with all right, title, and interest in, to, and under such Assigned Contract.  The Debtors shall cooperate with and take all actions reasonably requested by the Purchaser to effectuate the foregoing, as further provided in the Asset Purchase Agreement.  The Purchaser shall likewise cooperate with the Debtors and otherwise comply with the terms and conditions of the Asset Purchase Agreement in relation to any Designation Rights Assets, including the payment of all costs and expenses in connection with the operation of any Designation Rights Assets to the extent required by Section 1.5(b) of the Asset Purchase Agreement.

4.3.    The Assigned Contracts (including, for the avoidance of doubt, any non-disclosure agreement entered into by any Debtor in connection with the marketing of the Purchased Assets that constitutes an Assigned Contract) shall be transferred to, and remain in

27

full force and effect for the benefit of, the Purchaser notwithstanding any provision in any such Assigned Contract (including those of the type described in sections 365(b)(2) and 365(f) of the Bankruptcy Code) that prohibits, restricts, or conditions such assignment or transfer or requires any non-debtor counterparty to consent thereto.

4.4.    Pursuant to section 365(f) of the Bankruptcy Code, the assignment and sale by the Debtors to the Purchaser of any Assigned Contract shall not be a default thereunder.  Any provisions in any Assigned Contract that prohibit or condition the assignment and sale of such Assigned Contract or allow the non-debtor counterparty to such assigned Contract to terminate, recapture, impose any penalty or condition on renewal or extension, purport to require the consent of any non-debtor counterparty, or modify any term or condition, in each case upon the assignment and sale of such Assigned Contract, constitute unenforceable anti-assignment provisions that are void and of no force and effect with respect to the assignment and sale of the Assigned Contract to the Purchaser.  All Assigned Contracts shall remain in full force and effect following their assignment and sale to the Purchaser, without existing default(s), subject only to payment by the Purchaser of the Determined Cure Cost.

4.5.    Subject to Paragraphs 4.8 and 4.16 hereof, all other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtors and assignment and sale to the Purchaser of the Assigned Contracts (including the provision of adequate assurance of future performance within the meaning of sections 365(b)(1)(C), 365(b)(3) (to the extent applicable), and 365(f)(2)(B) of the Bankruptcy Code) have been satisfied.

4.6.    The rights of the Purchaser to modify the lists of Assigned Contracts and Non-Assigned Contracts (as defined in the Asset Purchase Agreement) after the date of this Sale Order as set forth in Section 1.5 of the Asset Purchase Agreement are hereby approved and shall

survive confirmation of any Chapter 11 plan, notwithstanding sections 365(d)(2) and 365(d)(4) or any similar provision of the Bankruptcy Code.  Without limiting the foregoing, as set forth in Section 1.5 of the Asset Purchase Agreement, the Purchaser may (a) designate any Potential Assigned Contract as an Assigned Contract at any point, including following Closing, prior to the earlier of (i) the applicable Designation Deadline and (ii) the entry of an order of the Court approving the rejection of such contract, and (b) designate any Potential Assigned Contract as a Non-Assigned Contract at any point, including following Closing, prior to the earlier of (i) the applicable Designation Deadline and (ii) the assumption, assignment, and sale of such contract. Any Potential Assigned Contract that is not designated as either an Assigned Contract or a Non-Assigned Contract at least one Business Day (as defined in the Asset Purchase Agreement) prior to the Closing shall constitute a Designation Rights Asset until the earliest of the Purchaser's designation of such contract as an Assigned Contract or Non-Assigned Contract, the applicable Designation Deadline, the entry of an order of the Court approving the rejection of such contract, or the assumption and assignment of such contract.  Following Closing, with respect to any Designation Rights Asset that has not been rejected by the Debtors post-Closing and as to which the Designation Deadline has not passed, upon written notice(s) from the Purchaser to the Debtors, the Debtors are hereby authorized and directed to take all actions reasonably necessary to assume, assign, and sell to the Purchaser all such executory contracts and unexpired leases as set forth in the notice(s).  Notwithstanding anything in this Sale Order to the contrary, on the date any Designation Rights Asset is assumed, assigned, and sold to the Purchaser, such Contract shall thereafter be deemed a Purchased Asset for all purposes under this Sale Order and the Asset Purchase Agreement.

4.7.    **Exhibit B** attached hereto lists Potential Assigned Contracts for which either (a) no Cure Objections were timely filed with the Court, (b) a Cure Objection was filed but has since been withdrawn, or (c) informal responses were received and resolved by mutual written agreement among the Purchaser, the Debtors, and the applicable non-debtor counterparty.   The Determined Cure Costs for the Potential Assigned Contracts listed on **Exhibit B** are hereby fixed at the amounts set forth therein, and the non-debtor counterparties to such Potential Assigned Contracts are forever bound by such Determined Cure Costs.   For the avoidance of doubt, the inclusion of a Potential Assigned Contract on **Exhibit B** shall not limit the rights of the Purchaser under the Asset Purchase Agreement to designate such Potential Assigned Contract as an Assigned Contract or a Non-Assigned Contract at any time prior to the applicable Designation Deadline.

4.8.    Any Potential Assigned Contract for which there is an unresolved Adequate Assurance Objection or Cure Objection set forth on **Exhibit C** hereto shall not be assumed, assigned, and sold to the Purchaser unless and until all such objections relating to such Potential Assigned Contract are withdrawn or resolved by order of the Court or the applicable non-debtor counterparty consents.   Upon resolution of such Adequate Assurance Objection and/or Cure Objection among the Purchaser, the Debtors, and the non-debtor counterparty to the applicable Potential Assigned Contract, the Purchaser may, in its sole and absolute discretion and pursuant to the provisions of the Asset Purchase Agreement, designate such Potential Assigned Contract as an Assigned Contract or a Non-Assigned Contract, and the Debtors shall be authorized, pursuant to this Sale Order and subject only to payment of the Determined Cure Cost, to assume, assign, and sell to the Purchaser any such Potential Assigned Contract so designated as an Assigned Contract without the need for further order of the Court.

4.9.    Unless the Purchaser and the applicable non-debtor counterparty agree to different terms, pursuant to sections 365(b)(1)(A) and (B) of the Bankruptcy Code, the Purchaser shall pay to the applicable non-debtor counterparty the Determined Cure Costs relating to any Assigned Contracts within seven (7) days following the assumption, assignment, and sale thereof as set forth in Section 1.5 of the Asset Purchase Agreement.   The payment of the Determined Cure Cost for any given Assigned Contract shall effect a cure of all defaults existing as of the date that such Assigned Contract is assumed, assigned, and sold and shall compensate for any actual pecuniary loss to the non-debtor counterparty to such Assigned Contract resulting from such default.   Upon payment of the applicable Determined Cure Costs, the non-debtor counterparties to Assigned Contracts shall be enjoined from taking any action against the Purchaser or the Purchased Assets with respect to any claim for cure.   After the payment of the Determined Cure Cost applicable to any Assigned Contract, the Debtors and the Purchaser shall not have any further liabilities to the non-debtor counterparty to such Assigned Contract, other than the Purchaser's obligations under the Assigned Contract that become due and payable on or after the date that such Assigned Contract is assumed, assigned, and sold to Purchaser.

4.10.    Subject to Paragraph 4.16 hereof, any party that has not filed with the Court, and served on the parties entitled to notice thereof, an objection to the assumption, assignment, and sale of any Potential Assigned Contract by the applicable deadline specified in the Bidding Procedures Order (as such date may have been modified or extended in accordance with the terms of the Bidding Procedures Order or with the consent of the Debtors and the Purchaser) is deemed to have consented to such assumption, assignment, and sale.

4.11.    As of the date of assignment and sale of an Assigned Contract to the Purchaser, the Purchaser shall be deemed to be substituted for the applicable Debtor(s) as a party to the

Assigned Contract, and the Debtors shall be relieved, pursuant to section 365(k) of the Bankruptcy Code, from any liability under the Assigned Contract arising from and after the date of the assignment and sale.

4.12.   All non-debtor counterparties to the Assigned Contracts shall cooperate and expeditiously execute and deliver, upon the reasonable request of the Purchaser, and shall not charge the Purchaser for, any instruments, applications, consents, or other documents that may be required or requested by any public or quasi-public authority or other Entity to effectuate the applicable transfers in connection with the Sale.

4.13.   Pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code, all non-debtor counterparties to the Assigned Contracts are forever barred and permanently enjoined from raising or asserting against the Debtors or the Purchaser any assignment fee, rent acceleration, rent increase on account of assignment, default, breach, claim, pecuniary loss, or condition to assignment arising under or relating to any Assigned Contract by reason of the assumption, assignment, and/or sale of such Assigned Contract.

4.14.   Notwithstanding any term of any Assigned Contract to the contrary, any extension or renewal options or other rights contained in such Assigned Contract that purport to be personal only to, or exercisable only by, the Debtor(s), a named Entity, or an Entity operating under a specific trade name may, in each case, be freely exercised to their full extent by the Purchaser, subject to the other applicable terms of the Assigned Contract.  Any extension or renewal options in connection with any Assigned Contract that the applicable Debtor(s) have sought to exercise prior to the entry of this Sale Order are deemed to have been timely and validly exercised by the Purchaser.

4.15.    Neither the Purchaser nor any successor of the Purchaser shall be responsible for any Encumbrances or obligations arising out of any of the Potential Assigned Contracts that are not ultimately assumed, assigned, and sold to the Purchaser (whether at Closing or thereafter) under the terms of the Asset Purchase Agreement.

4.16.    In the case of any Potential Assigned Contract that the Debtors seek to assume, assign, and sell pursuant to the Asset Purchase Agreement that was not included in the Assumption Notice or any Supplemental Assumption Notice served prior to the date hereof, within three Business Days following receipt of a written notice by the Purchaser (email shall suffice) that such Potential Assigned Contract is designated for assumption, assignment, and sale, the Debtors shall file with the Court a Supplemental Assumption Notice and serve it on each of the following parties (each, a "Supplemental Assumption Notice Service Party"): (a) each non-debtor counterparty to any Potential Assigned Contract (and their counsel, if known) listed on such Supplemental Assumption Notice, (b) the U.S. Trustee, (iii) counsel to the Committee, and (iv) counsel to the Purchaser.  The Debtors shall also serve on affected non-debtor counterparties and their respective counsel, if known, by electronic mail (if available) or overnight mail adequate assurance information for the Purchaser.  Any non-debtor counterparty to a Potential Assigned Contract listed on such Supplemental Assumption Notice may object to the assumption, assignment, and sale of the Potential Assigned Contract solely with respect to the Debtor Asserted Cure Amount contained therein or adequate assurance of future performance but, in each case, only to the extent such objection could not have been raised prior to the Cure Objection Deadline (as defined in the Bidding Procedures Order).  Any such objection must be in writing and filed and served so that it is actually received by the Debtors and the Supplemental Assumption Notice Service Parties no later than 14 calendar days after the date the Debtors

served the applicable Supplemental Assumption Notice.   Any non-debtor counterparty to a Potential Assigned Contract included on a Supplemental Assumption Notice that does not timely file and serve on the Supplemental Assumption Notice Service Parties a permitted objection thereto shall be deemed to have consented to the assumption, assignment, and sale of such Potential Assigned Contract and the Debtor Asserted Cure Amount set forth with respect to such Potential Assigned Contract in the Supplemental Assumption Notice.   If an objection to a Supplemental Assumption Notice permitted by this Paragraph is timely filed and served on the Supplemental Assumption Notice Service Parties in the manner specified above, and unless the parties agree otherwise in writing, a hearing will be scheduled by the Court to consider that objection.   With respect to any Potential Assigned Contract set forth in a Supplemental Assumption Notice that is ultimately assumed, assigned, and sold to the Purchaser pursuant to the terms of the Asset Purchase Agreement and this Sale Order, the date of such assumption, assignment, and sale shall be deemed to have occurred as of the date of filing of the Supplemental Assumption Notice, unless otherwise agreed to by the Purchaser and the non-debtor counterparty to such Assigned Contract.

4.17.   Notwithstanding anything herein to the contrary, in the event and to the extent that any amounts come due under any Potential Assigned Contracts constituting a Designation Rights Asset between the Closing and the designation of such Potential Assigned Contract for assumption, assignment and sale, or rejection, the Purchaser shall be liable for such amounts to the extent required by Section 1.5(b) of the Asset Purchase Agreement.

5. **Additional Provisions**

5.1.   [Notwithstanding anything to the contrary, nothing in this Sale Order or the APA transfers ownership of any Consigned Cores.  For purposes hereof, "Consigned Cores" means

cores delivered to one of the Debtors by a customer on a consignment basis in excess of such customer's core eligibility at the time of delivery to the Debtors.][5]

      5.2.   Stay Relief.  The automatic stay pursuant to section 362 of the Bankruptcy Code is hereby lifted to the extent necessary, without further order of the Court, to allow the Purchaser to (a) deliver any notice provided for in the Asset Purchase Agreement and any ancillary document, (b) enforce the Purchaser's rights and the Debtors' obligations under the terms of the Asset Purchase Agreement, and (c) take any and all actions permitted under this Sale Order, the Asset Purchase Agreement, or any ancillary documents, in each case in accordance with the terms and conditions thereof.

      5.3.   Bulk Transfer Laws.  No bulk sales law, bulk transfer law, bulk sales tax law, or similar law of any jurisdiction applies in any way to the Asset Purchase Agreement or the Sale.

      5.4.   Non-Interference.  Following the Closing, no holder of an Encumbrance in, on, to, or against any Debtor or Purchased Asset shall interfere with the Purchaser's title to or use and enjoyment of any Purchased Asset based on or related to such Encumbrance or any actions that the Debtors or their successors, including any Chapter 11 or Chapter 7 trustee, may take in these Cases or any Superseding Case.

      5.5.   Authorization.  The Debtors, including their respective officers, employees, and agents, are hereby authorized to execute such documents and do such acts as are necessary or desirable to carry out the Sale.  The Debtors are hereby authorized to take all such actions as may be necessary or reasonably requested by Purchaser to effectuate the terms of the Asset Purchase Agreement and this Sale Order and the relief granted herein.

---

[5] Subject to review by Debtors and Purchaser.

5.6.    <u>Good Faith</u>.    The Sale contemplated by the Asset Purchase Agreement is undertaken by the Purchaser without collusion and in good faith (as that term is defined in section 363(m) of the Bankruptcy Code) and, accordingly, the reversal or modification on appeal of the authorizations provided herein shall not affect the validity of the Sale (including, for the avoidance of doubt, the assumption, assignment, and sale to the Purchaser of the Assigned Contracts and the sale of the Purchased Assets free and clear of all Encumbrances).    The Purchaser is a good-faith purchaser within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to the full protections of section 363(m) of the Bankruptcy Code. The Purchaser has not colluded with any of the other bidders, potential bidders, or any other parties interested in the Purchased Assets and, therefore, the sale of the Purchased Assets may not be avoided pursuant to section 363(n) of the Bankruptcy Code.

5.7.    <u>Cooperation</u>.    From time to time, as and when requested by the Purchaser or any Debtor, each party to the Asset Purchase Agreement shall execute and deliver, or cause to be executed and delivered, all such documents and instruments and shall take, or cause to be taken, all such further or other actions as such other party may reasonably deem necessary or desirable to consummate the Sale, including such actions as may be necessary to vest, perfect, confirm, or record the Purchaser's right, title, and interest in and to the Purchased Assets.

5.8.    <u>Scope of Approval</u>.    The failure specifically to include or reference any particular provisions of the Asset Purchase Agreement, including any of the documents, agreements, or instruments contemplated thereby or executed in connection therewith, in this Sale Order shall not diminish or impair the efficacy, approval, or effectiveness of such provision, document, agreement, or instrument, it being the intent of the Court that the Asset Purchase Agreement and each such document, agreement, or instrument be authorized and approved in its entirety.

5.9.    <u>Post-Closing Claims Administration</u>.   After the Closing Date: (a) no Debtor nor

any successor in interest to any Debtor, including any Chapter 11 or Chapter 7 trustee appointed

in any of the Cases or any Superseding Case, shall consent to the allowance of any claim to the

extent it would constitute an Assumed Liability or Permitted Encumbrance without the prior

written consent of the Purchaser, and (b) the Purchaser shall have standing to object to any claim

against the Debtors and their estates to the extent that, if allowed, such claim would constitute an

Assumed Liability or Permitted Encumbrance, and the Court will retain jurisdiction to hear and

determine any such objections.

5.10.    <u>Notice of Sale Closing</u>.   Within one Business Day of the occurrence of the

Closing, the Debtors shall file and serve a notice of the Closing.

5.11.    <u>Computation of Time Periods</u>.   All time periods set forth in this Sale Order shall

be calculated in accordance with Bankruptcy Rule 9006(a).

5.12.    <u>Sale Order Governs in Event of Inconsistencies</u>.   To the extent that this Sale

Order is inconsistent with any prior order or pleading with respect to the Motion in these Cases,

the terms of this Sale Order shall govern.   To the extent there are any inconsistencies between the

terms of this Sale Order and the Asset Purchase Agreement (including all ancillary documents

executed in connection therewith), the terms of this Sale Order shall govern.

5.13.    <u>Modifications</u>.  The parties to the Asset Purchase Agreement may make any non-

material modifications, amendments, or supplements to the Asset Purchase Agreement and any

related agreements, documents, or other instruments in accordance with the terms thereof

without further order of the Court.

5.14.    <u>Non-Severability</u>.   The provisions of this Sale Order are non-severable and

mutually dependent.

5.15.  <u>No Stay</u>.  Notwithstanding the provisions of the Bankruptcy Rules, including Bankruptcy Rules 6004(h) and 6006(d), this Sale Order shall not be stayed after the entry hereof but shall be effective and enforceable immediately upon entry, and the fourteen-day stay provided in Bankruptcy Rules 6004(h) and 6006(d) is waived and shall not apply.

5.16.  <u>Retention of Jurisdiction</u>.  The Court shall retain jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Sale Order and the Asset Purchase Agreement and all related agreements, documents, and other instruments, and all amendments thereto and waivers and consents thereunder, and to adjudicate if necessary any and all disputes concerning or relating in any way to the Sale.