**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>STANADYNE LLC, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 23-10207 (TMH)<br>(Jointly Administered)<br><br>**Docket Ref. Nos. 245, 265 & 274** |

**STATEMENT OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS
IN SUPPORT OF THE DEBTORS' SALE OF SUBSTANTIALLY ALL
OF THEIR ASSETS AND RELATED SETTLEMENT**

The Official Committee of Unsecured Creditors (the "Committee") of the above-captioned debtors and debtors-in-possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases") hereby submits this statement in support of the (i) *Debtors' Motion for Entry of (A) an Order (I) Scheduling a Hearing on the Approval of the Sale of All or Substantially All of the Debtors' Assets Free and Clear of All Encumbrances Other Than Assumed Liabilities and Permitted Encumbrances, and the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (II) Approving Certain Bidding Procedures and Assumption and Assignment Procedures, and the Form and Manner of Notice Thereof, (III) Authorizing the Debtors to Enter into the Stalking Horse Purchase Agreement, and (IV) Granting Related Relief; and (B) an Order (I) Approving Asset Purchase Agreement, (II) Authorizing the Sale of All or Substantially All of the Debtors' Assets Free and Clear of All Encumbrances Other Than Assumed Liabilities and Permitted Encumbrances, (III) Authorizing the Assumption And Assignment of Certain Executory Contracts and Unexpired Leases, and (IV)*

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number are: Stanadyne LLC (0378); Pure Power Technologies, Inc. (5202); Stanadyne PPT Holdings, Inc. (2594); and Stanadyne PPT Group Holdings, Inc. (1734). The Debtors' headquarters are located at 405 White Street, Jacksonville, North Carolina 28546.

*Granting Related Relief* [Docket No. 245] (the "Sale Motion")[2] and (ii) the related settlement between the Committee, Cerberus Business Finance, LLC ("Cerberus") as agent for the prepetition secured lenders (the "Prepetition Secured Lenders"), and the purchaser of the Debtors' assets (the "Purchaser"), and in support thereof, the Committee states as follows:

## STATEMENT

1.  Since its appointment by the United States Trustee, the Committee has worked with the Debtors and Cerberus to ensure a going concern sale to preserve the Debtors' business operations and seek to maximize the value of the Debtors' estates for the benefit of all unsecured creditors.[3] To that end, the Committee negotiated various modifications to the bidding procedures by and through which the Prepetition Secured Lenders and their agent Cerberus.

2.  Unfortunately, despite the Debtors' filing of these cases and extensive post-petition marketing process, the Debtors did not receive *any bids* – let alone a higher bid – than the stalking horse credit bid by the Prepetition Secured Lenders – resulting in the cancellation of the Auction. Concurrent with the marketing process, and as previously reported to the Court, the Committee and Cerberus engaged in extensive good faith negotiations on a settlement to (i) maximize the assumption of liabilities, including relating to go-forward customers and vendors, and (ii) provide material consideration for non-go-forward unsecured creditors, including the exclusion of litigation claims and other assets initially identified to be acquired by the Purchaser. This settlement is additive to the clear benefits of the going concern businesses, including the

---

[2] Capitalized terms not otherwise defined herein shall have the same meaning as set forth in the Sale Motion.

[3] The Committee reserves its rights concerning the Debtors' decisions leading to the commencement of these cases and impact upon unsecured creditors.

16208167/1

preservation of jobs and continued business relationships with a significant percentage of the Debtors' vendors and customers.

3. During this process, the Committee and Cerberus worked constructively and at arms-length, including stipulating to the extent of the Debtors' assets unencumbered by the Prepetition Secured Lenders' prepetition security interests (the "Unencumbered Assets"), which included an interest in certain of the Debtors' foreign operating subsidiaries and the estates' commercial tort claims. See Docket No. 292. Ultimately, these discussions culminated in the Committee and Cerberus negotiating a settlement (the "Committee Settlement") memorialized in a term sheet (the "Term Sheet"), a copy of which is attached as Exhibit D to the proposed order granting the sale, and a copy attached hereto as Exhibit A. The Committee Settlement provides significant enhanced value to the estates and their creditors. Further, the Committee, Cerberus, and Debtors anticipate that the Committee Settlement will culminate in the confirmation of a plan of liquidation, thereby providing for a quick and orderly exit for these cases.

4. As more fully set forth in the Term Sheet and the Proposed Order, the Committee, Cerberus, and the Purchaser reached an agreement that provides that, among other things, the Purchaser will fund a total of $4,000,000 in the following three tranches: (i) a winddown budget of $1,000,000, (ii) $375,000 to fund the liquidating trust, and (iii) $2,625,000 for distribution to general unsecured creditors of the Debtors' estates from which the Prepetition Secured Parties will *not* receive any distribution on account of their deficiency claim (thereby enhancing recoveries for other general unsecured creditors).

5. Also, and not insignificantly, the stalking horse bid did not provide certainty with respect to the assumption of certain liabilities. As set forth in the Term Sheet and Proposed Order, however, the Purchaser has now agreed to assume material liabilities of the Debtors, including all

"Core Liabilities" (as that term is defined in the Term Sheet) and all Critical Vendors' claims (as defined in the Court's Critical Vendor Order). Taking into account the material increase in assumed liabilities, the parties agreed to reduce the Prepetition Debt Bid Amount portion of the purchase price from $225,000,000 to $205,000,000 to an aggregate purchase price that more closely reflects the fair market value of the Debtors' assets.

6. Additionally, notwithstanding the original terms of the asset purchase agreement, the Purchaser agreed to purchase and waive avoidance actions and commercial tort claims that the estates may have as against Purchaser's go-forward creditors. The Purchaser also agreed that it will not pursue affirmative recovery from avoidance actions against non-insiders that are not go-forward creditors (although the Purchaser may use such claims defensively to offset against assumed liabilities). Further, as additional potential material recoveries, the Purchaser agreed to exclude from its purchase and transfer to the Liquidating Trust, the estates' claims and causes of action against insiders, including avoidance actions and commercial tort claims. The net proceeds of those claims and causes of action will be used for additional distribution to unsecured creditors, including on account of the deficiency claim of the Prepetition Secured Lenders. The value of these assets would *not have otherwise been available to the estates and creditors* absent the settlement and exclusion of them as acquired assets.

7. The Committee respectfully submits that, while the sale process did not result in an auction, the results of the process, including the Committee Settlement, preserve ongoing businesses (both domestically and internationally) and provide for significant value for the estates, including the payment of some claims in full, and the assumption of a significant number of the Debtors' executory contracts and leases (and the payment of liabilities in connection with those executory contracts and leases), as well as the assumption of Core Liabilities. Further, for those

creditors whose claims are not being paid in full, there now exists an opportunity to receive payment from a pool of cash that excludes the Prepetition Secured Lenders' deficiency claim, as well as enhanced recoveries from future litigation proceeds (that were otherwise being acquired by the Purchaser).  Importantly, the Committee Settlement avoids highly protracted and likely expensive litigation over (i) the value of the Unencumbered Assets being acquired by the Purchaser and (ii) any potential claims that Cerberus would likely have asserted as to adequate protection and diminution of value of its collateral caused by these cases.

8. Finally, and not insignificantly, the Term Sheet creates a pathway for the confirmation of a plan of liquidation that will result in a meaningful distribution to unsecured creditors thereby avoiding the conversion or dismissal of the Chapter 11 Cases and permitting a larger and more expedient distribution to creditors on account of their claims.

9. Accordingly, the Committee supports the proposed sale, and respectfully requests that the Court approve the sale, including the Term Sheet.

Dated: July 9, 2023         **MORRIS JAMES LLP**

*/s/ Jeffrey R. Waxman*
Jeffrey R. Waxman (DE Bar No. 4159)
Eric J. Monzo (DE Bar No. 5214)
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801
Telephone: (302) 888-6800
Facsimile: (302) 571-1750
E-mail: jwaxman@morrisjames.com
E-mail: emonzo@morrisjames.com

and

**KRAMER LEVIN NAFTALIS & FRANKEL LLP**
Adam C. Rogoff (admitted *pro hac vice*)
Rose Hill Bagley (admitted *pro hac vice*)
1177 Avenue of the Americas
New York, NY 10036
Telephone: (212) 715-9100
E-mail: arogoff@kramerlevin.com
E-mail: rbagley@kramerlevin.com

*Counsel to the Official Committee of Unsecured Creditors*