## **EXHIBIT A**

Term Sheet

*In re Stanadyne LLC, et al.*
**Case No. 23-10207 (Jointly Administered)**
**Bankr. D. Del.**

## SETTLEMENT TERM SHEET

    This term sheet (the "Term Sheet") sets forth the terms of a comprehensive settlement in the above-referenced chapter 11 cases (the "Chapter 11 Cases") among the Prepetition Agent (as defined below), the Purchaser (as defined below), and the Official Committee of Unsecured Creditors appointed in the Chapter 11 Cases (the "Committee"[1] and, collectively with the Prepetition Agent and the Purchaser, the "Parties") with respect to that certain Asset Purchase Agreement, dated as of May 8, 2023, by and among the debtors in possession in the above-captioned cases (the "Debtors") (other than Stanadyne PPT Group Holdings, Inc.) and Purchaser (as the same may be amended, amended and restated, supplemented, or otherwise modified from time to time, the "APA") and all other matters related to any challenges, claims or causes of actions against the Prepetition Agent, the Prepetition Secured Parties (as defined below) and/or the Purchaser under the Cash Collateral Order, the APA, or otherwise, including such matters set forth in the section titled "Prepetition Obligations and Release of Claims" below.  Capitalized terms that are not otherwise defined herein shall have the meanings ascribed to them in the APA.

| | |
|---|---|
| Settling Parties | a)  The Prepetition Agent<br>b)  The Purchaser<br>c)  The Committee<br><br>The term "Prepetition Agent" refers to Cerberus Business Finance, LLC, in its capacity as administrative agent and collateral agent for the lenders (the lenders together with the Prepetition Agent, collectively, the "Prepetition Secured Parties") party to that certain Financing Agreement, dated as of May 2, 2017 (as amended, amended and restated, supplemented, or otherwise modified from time to time).<br><br>The term "Purchaser" refers to Stanadyne Operating Company LLC (formerly known as S-PPT Acquisition Company LLC), in its capacity as Purchaser under the APA. |
| Binding Agreement; Conditions | This Term Sheet shall constitute a binding agreement among the Parties; *provided*, the Parties rights and obligations under this Term Sheet are conditioned upon (a) entry of an order approving the Sale Order modified as necessary to reflect this Term Sheet and attaching this Term Sheet as an exhibit, and (b) the occurrence of the Closing. |

---

[1] The term "Committee" refers to the Official Committee of Unsecured Creditors appointed in the Chapter 11 Cases in its capacity as such and not the rights or obligations of any member serving on the Committee in its individual capacity.

| Settlement Amount | The Parties agree that: |
|---|---|
| | a) subject to the terms hereof, the Purchaser will fund (or cause to be funded) $4,000,000 (the "<u>Settlement Amount</u>") comprised of (i) the Wind-Down Funding Amount, (ii) the Trust Funding Amount, and (iii) the Initial GUC Distribution Amount, each as described below; |
| | b) the Trust Funding Amount and the Initial GUC Distribution Amount shall constitute additional "Purchase Price" under the APA; |
| | c) the Settlement Amount shall be allocated and funded as follows: |
| |     i) $1,000,000, which shall be the amount of "Total Disbursements" in the Wind-Down Budget[2] to be finalized pursuant to Section 4.24 of the APA (the "<u>Wind-Down Funding Amount</u>"), and shall be funded at the Closing in accordance with the APA.  The Wind-Down Budget, and any transition services agreement entered into pursuant to Section 8.16 of the APA shall be mutually acceptable to the Prepetition Agent, the Purchaser and the Committee, in consultation with the Debtors; |
| |     ii) $375,000 (the "<u>Trust Funding Amount</u>") to fund the operation of the Liquidating Trust (as defined below) consistent with the Liquidating Trust Agreement (as defined below), with such amount to be funded within five (5) business days following the effective date of Chapter 11 plan (a "<u>Plan</u>") establishing the Liquidating Trust.  The Plan and documents governing the creation of the Liquidating Trust must be acceptable in form and substance to the Prepetition Agent and the Committee and may not alter or modify the terms of this Settlement Term Sheet, unless agreed to in writing by the Prepetition Agent and the Committee; |
| |     iii) $2,625,000 (as such amount may be adjusted in accordance herewith, the "<u>Initial GUC Distribution Amount</u>") for distribution to general unsecured creditors of the Debtors' estates other than the Prepetition Secured Parties, which amount shall be transferred to the Liquidating Trust within five (5) business days following its creation; *provided,* |

---

[2] The Wind-Down Budget is attached hereto as <u>Exhibit 1</u>.

| | |
|---|---|
| | *however*, that if the actual costs and expenses of the matters set forth in the Wind-Down Budget are less than $1,000,000, such difference shall be delivered to the Liquidating Trust and the amount of the Initial GUC Distribution Amount shall be increased on a dollar-for-dollar basis by the amount of such difference. |
| Purchaser Assumed Liabilities | Each of the following, without duplication, shall constitute "Assumed Liabilities" under the APA:<br><br>a) Liabilities, including Core Liabilities (as defined below), of the Debtors incurred and outstanding as of the Closing Date with respect to each customer of the Debtors that becomes a customer of the Purchaser from and after the Closing Date;<br><br>b) Core Liabilities incurred and outstanding as of the Closing Date with respect to customers of the Debtors that do not become customers of the Purchaser from and after the Closing Date solely to the extent such Core Liabilities are known as of the Closing Date as (i) reflected in the Debtors' books and records or filed proofs of claim and (ii) set forth on a schedule of the amounts of such Core Liabilities  acceptable to the Purchaser (or, if not acceptable, subject to objection by the Purchaser after Closing), which schedule shall (A) separately list by customer (x) the amount of such Core Liabilities as of the date that is thirty (30) days prior to the Closing Date and (y) the estimated amount of any incremental Core Liabilities between the date that is thirty (30) days prior to the Closing Date and the Closing Date and (B) be delivered by the Debtors to the Purchaser and the Committee five (5) business days prior to the Closing Date, provided, however, amounts with respect to the foregoing clause (y)  shall be subject to finalization within thirty (30) days after Closing to account for continuing sales and returns during such period through the Closing Date; and<br><br>c) Each Critical Vendor Claim (as defined in that certain *Final Order (I) Authorizing the Debtors to Pay Prepetition Claims of (A) Domestic Critical Vendors, (B) Shippers, Warehousemen, and other Lienholders, and (C) Foreign Vendors; (II) Authorizing Banks to Honor and Process Related Checks and Electronic Transfers; and (III) Granting Related Relief* [Docket No. 186]) to the extent not paid by the Debtors on or prior to the Closing Date.<br><br>"Core Liabilities" means Liabilities of the Debtors owed to customers of the Debtors as of the Closing Date in connection with |

| | |
|---|---|
| | the "core" refund program offered by the Debtors to certain of its customers for applicable products actually and properly returned and sold to the Debtors for remanufacture, provided that Core Liabilities will only be Assumed Liabilities to the extent set forth above in (a) and (b). |
| Estate Claims | Notwithstanding anything in the APA to the contrary, the Parties agree that all Avoidance Actions shall be waived and shall not be pursued by the Parties or any representative of any Debtor's estate, *except that*:<br><br>a)  Avoidance Actions against insiders (as that term is defined in 11 U.S.C. § 101(31)) ("Insider Avoidance Actions") shall not be waived and shall comprise Excluded Assets; and<br><br>b)  Avoidance Actions against non-insiders other than Go-Forward Creditors (as defined below) (the "Preserved Avoidance Claims") shall not be waived and shall comprise Purchased Assets under the APA; *provided*, *however*, that the Preserved Avoidance Claims shall be preserved solely for the purpose of permitting the Purchaser to set off such Preserved Avoidance Claims against any claims of the applicable creditors (other than Go-Forward Creditors) that constitute Assumed Liabilities under the APA, and Purchaser shall not be entitled to any affirmative recovery on account of any such Preserved Avoidance Claims.<br><br>All commercial tort claims and causes of action belonging to the Debtors' estates (including, without limitation, any and all claims the Debtors' estates may have (i) against any officers and directors of the Debtors and rights of the Debtors' estates to any insurance proceeds applicable thereto or (ii) related to or arising under or in connection with that certain Contribution Agreement, dated as of March 9, 2019, by and among Pure Power Technologies, Inc., Pure Power Technologies, LLC, Stanadyne Parent Holdings, Inc., and Stanadyne LLC, and the transactions contemplated thereby, including, without limitation, any rights of the Debtors' estates to any insurance proceeds applicable thereto) other than such claims against Go-Forward Creditors (as defined below) (collectively, the "Non-Go-Forward Commercial Tort Claims") shall comprise Excluded Assets.<br><br>The Insider Avoidance Actions and the Non-Go-Forward Commercial Tort Claims shall be collectively referred to herein as the "Liquidating Trust Claims".  All Liquidating Trust Claims shall be transferred to the Liquidating Trust on the effective date of the |

| | |
|---|---|
| | Liquidating Trust.  The Trustee shall have authority to pursue all Liquidating Trust Claims as a representative of the Debtors' estates.<br><br>For the avoidance of doubt, the Parties waive all Avoidance Actions and Commercial Tort Claims that the Debtors' estates may have against Go-Forward Creditors, and no Party shall be entitled to any affirmative recovery or right of setoff with respect to any such claims against Go-Forward Creditors.<br><br>The term "Go-Forward Creditors" as used herein means customers, vendors, and other creditors who continue to do business with the Purchaser after the Closing Date. |
| Designation Rights Assets | If and solely to the extent and for so long as the Purchaser requests in writing that any Designation Rights Assets be maintained following the Closing, the Purchaser shall fund any and all maintenance costs, including lease costs and other third party costs, actually incurred by the Debtors in connection with such requested maintenance of the Designation Rights Assets, in accordance with and solely to the extent set forth in Section 1.5(b) of the APA. |
| Windsor, CT Property | If and solely to the extent and for so long as the Purchaser requests in writing that the Windsor, CT Property be maintained following the Closing, the Purchaser shall fund the carrying costs actually incurred by the Debtors in connection with such requested maintenance of the Windsor, CT Property, including without limitation, insurance and real property taxes.<br><br>If, subject to the terms of the APA, the Debtors sell the Windsor, CT Property, the proceeds of such sale, net of only the costs of such sale (as well as any unpaid carrying costs for which Purchaser is responsible as set forth above), and incremental US Trustee fees associated therewith, shall be paid to the Prepetition Agent for the benefit of the Prepetition Secured Parties.  The Debtors' estates shall cause such net proceeds to be delivered directly by the purchaser of the Windsor, CT Property to the Prepetition Agent, and the Deficiency Claim (as defined below) shall be reduced by the amount of such net proceeds. |
| Liquidating Trust | The "Liquidating Trust" shall be:<br><br>a)  a liquidating trust established for the benefit of the Debtors' creditors and governed by a trust agreement in form and substance acceptable to the Prepetition Agent and the Committee (the "Liquidating Trust Agreement"); |

|  | b) administered by Brad Deitz, as trustee (the "Trustee")[3] under the supervision of the Liquidating Trust Board (as defined below) and in accordance with the terms of the Liquidating Trust Agreement; |
|---|---|
|  | c) overseen by an oversight board consisting of two members: (i) one member appointed by the Prepetition Agent and (ii) one member appointed by the Committee (the "Liquidating Trust Board"); |
|  | d) administered for the benefit of the Debtors' unsecured creditors with respect to unsatisfied general unsecured claims and the Prepetition Secured Parties with respect to the Deficiency Claim. |
|  | The Trustee shall be compensated as follows: (a) a quarterly fee of $20,000 *plus* (b) cash in an amount equal to 1.5% of the net proceeds of the Liquidating Trust litigation recoveries. |
|  | The Liquidating Trust Agreement shall provide that, in the event of a tie in connection with any decision subject to a vote of the Liquidating Trust Board, the final decision shall be made by the Trustee. |
| Funding and Purpose of Liquidating Trust | Upon the creation of the Liquidating Trust, the Trust Funding Amount, the Initial GUC Distribution Amount, and Liquidating Trust Claims shall be transferred to the Liquidating Trust as set forth above. |
|  | The Trustee shall be empowered to: (i) assert, litigate, settle, and/or otherwise resolve the Liquidating Trust Claims for the benefit of the Liquidating Trust and its beneficiaries and (ii) resolve, litigate, and/or object to claims against the Debtors' estates other than claims allowed hereunder or by the Bankruptcy Court. |
|  | The proceeds of the Liquidating Trust Claims shall be utilized to fund the administration of the Liquidating Trust and the distributions to the beneficiaries of the Liquidating Trust. |
|  | The Initial GUC Distribution Amount shall be distributed pro rata among the beneficiaries of the Liquidating Trust other than the Prepetition Agent, it being agreed among the Parties that the Prepetition Secured Parties shall not recover any amounts from the |

[3] In the event that Mr. Deitz is unable or unwilling to serve, the Prepetition Agent shall identify two alternatives for the Committee to select between to serve as the Trustee on substantially the same terms as Mr. Dietz.

| | |
|---|---|
| | Initial GUC Distribution Amount. Any distributions made by the Liquidating Trust to its beneficiaries from any assets of the Liquidating Trust other than the Initial GUC Distribution Amount shall be distributed pro rata to *all* of the beneficiaries of the Liquidating Trust, including the Prepetition Agent for the benefit of the Prepetition Secured Parties on account of the Deficiency Claim.<br><br>Notwithstanding anything to the contrary herein, the Trustee shall have the authority to create reserves of Liquidating Trust assets (including with respect to the Initial GUC Distribution Amount) for any reason consistent with his duties under the Liquidating Trust Agreement. |
| Prepetition Obligations and Release of Claims | The Committee hereby:<br><br>a)  adopts the admissions, stipulations, acknowledgements and agreements made by the Debtors as reflected in Paragraph E of the Cash Collateral Order;<br><br>b)  reaffirms its agreement under that certain *Stipulation Regarding Unencumbered Assets and Occurrence of Investigation Termination Date* entered into between the Prepetition Agent and the Committee and approved by order of the Bankruptcy Court [Docket No. 293] (the "Prior Stipulation") that the Investigation Termination Date (as defined in the Cash Collateral Order) has passed and the Committee has waived all rights to assert any Challenge (as defined in Cash Collateral Order);<br><br>c)  agrees that, upon the occurrence of the Closing, the Prepetition Agent, on behalf of the Prepetition Secured Parties, will have an allowed deficiency claim (the "Deficiency Claim") in the amount of $87,252,851.11, which shall remain secured by the Excluded Assets, other than the Liquidating Trust Claims, which will not be subject to the security interest of the Prepetition Secured Parties; provided, however, that the amount of the Deficiency Claim shall be reduced on a dollar-for-dollar basis by any net proceeds paid to the Prepetition Agent from any Excluded Assets;<br><br>d)  releases the Prepetition Secured Parties from any and all claims and causes of action related to the Debtors, their estates, the Prepetition Obligations (as defined in the Cash Collateral Order), or these Chapter 11 Cases; and |

| | |
|---|---|
| | e)  consents to the APA, the Sale Order and, in each case, the transactions contemplated thereby.<br><br>The foregoing agreements, admissions, stipulations, acknowledgements, reaffirmations, and releases by and of the Committee shall be binding on the Trustee and any chapter 7 trustee, as applicable. |
| Chapter 11 Plan | Any Plan confirmed in the Chapter 11 Cases (a) may not alter or modify the terms of this Settlement Term Sheet, the APA or the Sale Order, unless agreed to in writing by the Prepetition Agent and (b) must incorporate the terms set forth in the section titled "Prepetition Obligations and Release of Claims" above. |
| Implementation | The settlement, including without limitation the payment of the Wind-Down Funding Amount, shall be effective upon entry of the Sale Order.<br><br>The Liquidating Trust shall be implemented via a Plan or such other method as mutually agreed to by the Prepetition Agent and the Committee, after consultation with the Debtors.<br><br>In the event that the Chapter 11 Cases are converted to Chapter 7, the rights of the Liquidating Trust set forth herein shall inure to the benefit of the Chapter 7 Trustee, including without limitation, the Trust Funding Amount and the Initial GUC Distribution Amount. |

**EXHIBIT 1**

**WIND-DOWN BUDGET**

*($ in thousands USD)*

| Description | Amount |
|---|---:|
| Professional Fees through Plan Effective Date | $250 |
| Wind-down Manager/Trustee Fees (does not include incentive fees) | $80 |
| Professional Support for Wind-down Manager/Trustee: | $560 |
| US Trustee Fees (8/1 - 9/30) | $35 |
| Miscellaneous / Other  (includes items such as claims agent, service of solicitation materials, independent manager, Purchaser assistance with accounting and reconciliation costs, as needed) | $75 |
| **Total Disbursements** | **$1,000** |

Purchaser agrees that it will make its personnel available at no cost to the responsible officer of the Debtors referred to in Section 2.2 of the APA or, after the effective date of a Plan, the Trustee, to provide information and assistance with accounting and claim reconciliation matters, for the following periods and capped personnel hours: (a) 25 hours per month for each of the first two months after the Closing; (b) 20 hours per month for each of the third and fourth months after the Closing; and (c) 10 hours per month for months five through 12 after the Closing.  If additional assistance is requested by such responsible officer or the Trustee, as applicable, the Purchaser shall provide such assistance as is reasonably requested for a reasonable period of time on customary terms for the assistance requested and the requesting party shall pay Purchaser its actual costs for providing such assistance and the out-of-pocket expenses incurred by the Purchaser in connection therewith.