IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re* | Chapter 11 |
| **STANADYNE LLC, *et al.*,**[1] | Case No. 23-10207 (TMH) |
| **Debtors.** | (Jointly Administered) |
| | Hearing Date: August 22, 2023 at 11:00 a.m. (ET) |
| | Objection Deadline: August 15, 2023 at 4:00 p.m. (ET) |

**DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) AUTHORIZING
THE DEBTORS TO ABANDON OR, ALTERNATIVELY SELL THE WINDSOR
PROPERTY AND (II) FOR RELATED RELIEF**

The above-captioned affiliated debtors and debtors in possession (collectively, the "Debtors") hereby file this motion (the "Motion") for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), (I) authorizing the Debtors to either (A) pursuant to sections 105(a) and 554(a) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), and Rule 6007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), abandon an approximately 53-acre real property parcel at 90-92 Deerfield Road, Windsor, Connecticut, including all buildings, fixtures, structures and improvements situated thereon and all easements, rights-of-way and other rights and privileges appurtenant thereto (together with all personal property located thereon, the "Windsor Property"), owned by Debtor Stanadyne LLC, constituting its former headquarters and manufacturing facility or, (B) in the alternative, in the event that an actionable offer materializes prior to abandonment, to sell the Windsor Property pursuant to sections 105, 363, and 365 of the Bankruptcy Code and Bankruptcy

---

1. The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number are: Stanadyne LLC (0378); Pure Power Technologies, Inc. (5202); Stanadyne PPT Holdings, Inc. (2594); and Stanadyne PPT Group Holdings, Inc. (1734). The Debtors' headquarters are located at 405 White Street, Jacksonville, North Carolina 28546.

30626113.1

Rules 2002, 6004 and 6006, and Local Rule 6004-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court of the District of Delaware (the "Local Rules"), and (II) granting such other further relief as this Court deems proper. In support of this Motion, the Debtors respectfully state as follows:

## JURISDICTION AND VENUE

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and, pursuant to Local Rule 9013-1(f), the Debtors consent to entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution. Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory and legal predicates for the relief requested herein to abandon the Windsor Property are sections 105(a) and 554(a) of the Bankruptcy Code, along with Bankruptcy Rule 6007. The statutory and legal predicates for the alternative relief requested herein to sell the Windsor Property in the event that an actionable sale proposal materializes prior to abandonment are sections 105, 363, and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, and 6006, as well as Local Rule 6004-1.

## BACKGROUND

**A.    General Background**

3. On February 16, 2023 (the "Petition Date"), the Debtors commenced these bankruptcy cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code

(the "Chapter 11 Cases"). On March 6, 2023, the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed the official committee of unsecured creditors (the "Committee") [Docket No. 78]. No request has been made for the appointment of a trustee or examiner.

4. The events leading up to the Petition Date and the facts and circumstances supporting the relief requested herein are set forth in the *Declaration of John Pinson, Chief Executive Officer of Stanadyne LLC, in Support of First Day Relief* [Docket No. 12].

**B.    Sale of Substantially All of the Debtors' Assets**

5. After the Petition Date, the Debtors commenced a marketing process to explore a sale of their assets (the "Sale Process"). To further this Sale Process, on April 27, 2023, the Debtors filed a motion [Docket No. 245] (the "Sale Motion")[2] for the entry of an order approving, among other things, bidding procedures in connection with the sale of substantially all of the Debtors' assets.

6. On May 8, 2023, the Debtors entered into the Stalking Horse Purchase Agreement (the "Purchase Agreement") with Stanadyne Operating Company LLC (formerly known as S-PPT Acquisition Company, LLC) (the "Purchaser"), an entity formed at the direction of the Prepetition Agent and Prepetition Secured Lenders for the purpose of entering into and consummating the transactions contemplated therein [Docket No. 265].

7. On May 16, 2023, the Court entered its *Order (I) Approving Bidding Procedures, (II) Scheduling an Auction and a Sale Hearing, (III) Approving the Form and Manner of Notice Thereof, (IV) Establishing Notice and Procedures for the Assumption and Assignment and Sale of*

---

2    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Purchase Agreement, Sale Motion or Bidding Procedures Order, as applicable.

*Contracts and Leases, and (V) Granting Related Relief* [Docket No. 276] (the "Bidding Procedures Order").

8. On June 22, 2023, the Debtors filed a *Notice of Designation of Successful Bidder and Cancellation of Auction* [Docket No. 394], indicating that Purchaser was the sole bidder for the Debtors' assets.

9. On July 11, 2023, the Court entered its *Order (I) Approving Asset Purchase Agreement, (II) Authorizing the Sale of Substantially All of the Debtors' Assets Free and Clear of All Encumbrances, (III) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (IV) Granting Related Relief* [Docket No. 443] (the "Sale Order") approving the Sale to the Purchaser.

10. The Sale to the Purchaser closed on July 31, 2023. In accordance with the Purchaser Agreement and Sale Order, the Purchaser has designated the Windsor Property as an Excluded Asset under the Purchase Agreement. As such, the Debtors are not selling the Windsor Property to the Purchaser, and the Purchaser is not purchasing or otherwise acquiring the Windsor Property from the Debtors.

**C.    The Windsor Property**

11. Debtor Stanadyne LLC owns the Windsor Property, which, as noted above, consists of approximately 53 acres of real property located in Windsor, Connecticut, along with (1) buildings, fixtures, structures and improvements situated thereon, (2) easements, rights-of-way and other rights and privileges appurtenant thereto and (3) personal property located thereon.

12. The Windsor Property is a burden on the Debtors' estates. Prior to the Petition Date, the Debtors relocated their headquarters from the Windsor Property to Jacksonville, North Carolina. The Debtors do not require the use of the Windsor Property for ongoing operations.

Nevertheless, the Debtors incur approximately $1 million per year in connection with Stanadyne LLC's ownership of the Windsor Property, including costs such as real property taxes, utilities, maintenance, insurance, and security. Given that the Debtors no longer use the Windsor Property as their headquarters or a manufacturing facility, the property no longer affords the Debtors any value. Moreover, given the approved sale of substantially all of the Debtors' assets, the Debtors are no longer able to fund continuing maintenance costs for the Windsor Property.

13. The Windsor Property is also subject to a Remedial Action Plan. [*See* Docket No. 201, Part 12, SOFAs 22, 24; Attachments 22, 24.] Substantial environmental work has been completed at the Windsor Property during a span of over 18 years.

**D.     The Debtors' Attempt to Separately Sell the Windsor Property**

14. Given that the Purchaser made clear to the Debtors that it would not acquire the Windsor Property, on June 20, 2023, the Debtors sought Court approval to retain Jones Lang LaSalle Americas, Inc. ("JLL") as real estate broker to market and sell the Windsor Property to maximize value for the Debtors' estates and their creditors [Docket No. 383].

15. Despite JLL's best efforts, the Debtors have not received any acceptable offers for the Windsor Property to date. Nor do the Debtors believe that it would be appropriate to continue to incur costs to maintain the Windsor Property and thereby diminish the remaining resources of their estates. Accordingly, the Debtors have determined, in their reasonable business judgment, that given the facts and circumstances it would benefit the Debtors and their estates to abandon the Windsor Property.[3]

---

3.  For the avoidance of doubt, the Debtors reserve the right to withdraw this motion for any reason, including in the event that they receive an acceptable offer for the Windsor Property prior to abandonment.

16.     **Nevertheless, the Debtors remain willing to consider any and all reasonable bids for the Windsor Property, and encourage any and all potential purchasers to submit such bids to the Debtors as soon as possible prior to the abandonment of the property**.  For this reason, as an alternative to abandonment, in the event the Debtors receive an actionable offer for the sale of the Windsor Property, by this Motion the Debtors, in coordination with the Committee, will seek approval of an acceptable sale transaction on the return date of this Motion, as may be adjourned from time to time.

## RELIEF REQUESTED

17.     By this Motion, the Debtors request entry of the Proposed Order authorizing, pursuant to sections 105(a) and 554(a) of the Bankruptcy Code, the Debtors to abandon the Windsor Property, after which point the Debtors would not be obligated to pay any liabilities related to the Windsor Property.  In the alternative, in the event a purchaser for the Windsor Property materializes with an actionable offer, the Debtors request the authority to sell the Windsor Property (including the assumption and assignment of any related executory contracts and unexpired leases) pursuant to sections 105, 363, and 365 of the Bankruptcy Code.

## BASIS FOR RELIEF

**A.     Abandonment**

18.     Section 554 of the Bankruptcy Code provides that "[a]fter notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." 11 U.S.C. § 554(a). "[T]he debtor need only demonstrate that it has exercised sound business judgment in making the determination to abandon." *In re Contract Research Sols., Inc.*, No. 12-11004 KJC, 2013 WL 1910286, at *4 (Bankr. D. Del. May 1, 2013) (citations omitted).  This requires a showing that the debtor made

(a) a business judgment, (b) in good faith, (c) upon some reasonable basis, and (d) within its authority. *See Truong v. 325 Broadway Associates LLC (In re Truong)*, 557 B.R. 326, 340 (Bankr. D.N.J. Aug. 30, 2016) (citing *In re Slack*, B.R. 282, 284 (Bankr. D.N.J. 2003)). Furthermore, courts in this district have granted similar relief in other chapter 11 cases. *See, e.g.*, *In re Mallinckrodt PLC.*, No. 20-12522 (JTD) (Bankr. D. Del. Apr. 28, 2022), Docket No. 7252; *In re National Dry Cleaners Inc.*, No. 08-11382 (CSS) (Bankr. D. Del. May 29, 2009), Docket No. 613.

19. Abandonment of the Windsor Property does not trigger the exception to the Bankruptcy Code's abandonment power because the Windsor Property does not pose a threat of imminent and identifiable harm to public health or safety. *See Midlantic Nat. Bank v. New Jersey Dep't of Env't Prot.*, 474 U.S. 494, 507 n.9 (1986) (the "exception to the abandonment power . . . is a narrow one . . . The abandonment power is not to be fettered by laws or regulations not reasonably calculated to protect the public health or safety from imminent and identifiable harm."). As long as "there is no imminent threat to public health or safety," abandonment is permitted even if "state laws or regulations designed to protect public health or safety will be violated as a consequence." *In re Guterl Special Steel Corp.*, 316 B.R. 843, 859-60 (Bankr. W.D. Pa. 2004) (permitting abandonment of 9.1 acres of property contaminated with radioactive waste where site no longer posed imminent threat to public health or safety). As stated above, substantial environmental work has been completed at the Windsor Property during a span of over 18 years.

20. Abandonment also is permitted where, like here, the property is burdensome and of inconsequential value to the bankruptcy estate and where the state environmental agency fails to demonstrate any imminent threat to public health or safety. *See id.* at 860 (state law or regulation to protect public health or safety that obstructs or prevents expeditious distribution

of estate assets is "trumped" by § 554(a), particularly where agency inaction on resolving site cleanup leads to "gridlock") (internal citations omitted). Simply put, the Windsor Property does not have any value to the Debtors and the continued ownership of the property is burdensome to the Debtors' estates. The Debtors filed these cases to implement an orderly sale process. Despite an extensive marketing effort pursuant to Court-approved auction and bidding procedures, and a subsequent marketing effort by JLL, during which the Debtors thoroughly marketed the Windsor Property for sale, the Debtors have not yet found acceptable purchasers for the Windsor Property, either as part of a sale of substantially all of their assets, or as a single real estate parcel.

21.     Based on the foregoing, the Debtors submit that it is a reasonable exercise of their business judgment to abandon the Windsor Property absent an appropriate sale transaction materializing prior to abandonment.

**B.      Alternative Sale Relief**

22.     As noted, in order to provide maximum flexibility to the estates, the Debtors seek alternative relief herein to sell the Windsor Property (and the assumption and assignment of any applicable executory contracts and unexpired leases) if a purchaser materializes with an actionable offer prior to abandonment. Pursuant to section 105(a) of the Bankruptcy Code, a "[c]ourt may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Section 363(b) of the Bankruptcy Code provides that a debtor, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b). Although section 363(b) does not specify a standard for determining when it is appropriate for a court to authorize the use, sale or lease of property of the estate, courts have required that such use, sale or lease be based upon the sound business judgment of the debtor. *See, e.g.*, *Myers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996)

(internal citation omitted); *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070–71 (2d Cir. 1983); *In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143, 147–48 (3d Cir. 1986) (implicitly adopting the "sound business judgment" test of In re Lionel Corp.); *In re Delaware & Hudson Ry. Co.*, 124 B.R. 169, 175–76 (D. Del. 1991) (holding that the Third Circuit adopted the "sound business judgment" test in Abbotts Dairies); *Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 242 B.R. 147, 153 (D. Del. 1999) (same).

23. The demonstration of a valid business justification by the debtor leads to a strong presumption "that in making [the] business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)).

24. Section 365 of the Bankruptcy Code provides that a debtor in possession, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). The standard applied to determine whether the assumption of a contract or an unexpired lease should be authorized is the "business judgment" standard. *See In re AbitibiBowater Inc.*, 418 B.R. 815, 831 (Bankr. D. Del. 2009) (finding that a debtor's decision to assume or reject an executory contract will stand so long as "a reasonable business person would make a similar decision under similar circumstances."); *In re HQ Global Holdings, Inc.*, 290 B.R. 507, 511 (Bankr. D. Del. 2003) (stating a debtor's decision to reject an executory contract is governed by the business judgment standard and can only be overturned if the decision was the product of bad faith, whim, or caprice). As described above, "[t]he business judgment rule 'is a

presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interest of the company.'" *Integrated Res., Inc.*, 147 B.R. at 656 (quoting *Smith v. Van Gorkom*, 488 A.2d at 872). Indeed, "the sole issue is whether the rejection benefits the estate." *In re HQ Global*, 290 B.R. at 511.

25. If an acceptable purchaser materializes, the Debtors may seek approval of a value-enhancing transaction on the return date of this Motion, as may be adjourned from time to time. The Debtors would file a supplement to this Motion identifying any proposed purchaser and the material terms of the purchase, including identifying any executory contracts and unexpired leases that any purchaser would seek to acquire and setting forth the necessary criteria for any such assignment (including adequate assurance of future performance and any cure amounts required to be paid).

## NOTICE

26. Notice of the hearing on this Motion shall be provided to (i) the U.S. Trustee; (ii) counsel for the Committee; (iii) counsel for the Prepetition Agent for the Prepetition Secured Lenders; (iv) the Connecticut Department of Energy & Environmental Protection; (v) the United States Environmental Protection Agency; (vi) the Town of Windsor; (vii) Hartford County; (viii) the State of Connecticut; (ix) all utility providers for the Windsor Property; and (x) all parties that have filed a notice of appearance and request for service of papers pursuant to Bankruptcy Rule 2002. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

**CONCLUSION**

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that this Court (i) enter the Proposed Order substantially in the form attached hereto, authorizing and approving (a) the abandonment of the Windsor Property or (b) alternatively, the sale of the Windsor Property[4]; and (ii) grant such other and further relief as it deems just and proper.

| | |
|---|---|
| Dated: August 2, 2023<br>Wilmington, Delaware | YOUNG CONAWAY STARGATT &<br>TAYLOR, LLP<br><br>*/s/ Ashley E. Jacobs*<br>Michael R. Nestor (DE Bar No. 3526)<br>Andrew L. Magaziner (DE Bar No. 5426)<br>Ashley E. Jacobs (DE Bar No. 5635)<br>1000 North King Street<br>Rodney Square<br>Wilmington, Delaware 19801-6108<br>Telephone:  (302) 571-6600<br>Facsimile:   (302) 571-1253<br>Email:  mnestor@ycst.com<br>            amagaziner@ycst.com<br>            ajacobs@ycst.com<br><br>-and-<br><br>Kathryn A. Coleman<br>Christopher Gartman<br>Jeffrey S. Margolin<br>Elizabeth A. Beitler<br>HUGHES HUBBARD & REED LLP<br>One Battery Park Plaza<br>New York, New York 10004-1482<br>Telephone: (212) 837-6000<br>Facsimile:  (212) 422-4726<br>Email:  katie.coleman@hugheshubbard.com<br>            chris.gartman@hugheshubbard.com<br>            jeff.margolin@hugheshubbard.com<br>            elizabeth.beitler@hugheshubbard.com<br><br>*Counsel for the Debtors* |

---

[4] The Proposed Order only addresses the abandonment of the property. In the event of an alternative sale transaction, a proposed order for such sale will be filed with any supplemental notice of this Motion.