**<u>EXHIBIT A</u>**
**Consent Order HM-786**



# STATE OF CONNECTICUT
## DEPARTMENT OF ENVIRONMENTAL PROTECTION



STATE OF CONNECTICUT

V.

STANADYNE AUTOMOTIVE CORP.

CONSENT ORDER

A. With the agreement of Stanadyne Automotive Corp., ("Respondent"), the Commissioner of Environmental Protection ("the Commissioner") finds:

1. Respondent is a corporation which is or has been engaged in the manufacture of diesel injection equipment at 92 Deerfield Road in Windsor, Connecticut and is the owner of property located at 92 Deerfield Road in Windsor, Connecticut ("the site", more fully described in a deed which is recorded at page 60 of volume 732 of the Windsor land records, and as Lot #35, Block 24 on Map 80 in the Windsor Tax Assessor's office).

2. Respondent has been a generator of hazardous waste at the site.

3. At the site, DEP alleges that Respondent has failed to comply with the Sections of the Regulations of Connecticut State Agencies ("RCSA") identified in Attachment A of this Consent Order.

4. On February 8, 1989, Stanadyne, Inc. transferred the site to Respondent.

5. A negative declaration was not submitted to the Commissioner pursuant to section 22a-134a of the Connecticut General Statutes stating (1) that there has been no discharge, spillage, uncontrolled loss, seepage, or infiltration of hazardous waste on the site or that any such discharge, spillage, uncontrolled loss, seepage, or infiltration of hazardous waste has been cleaned up in accordance with procedures approved by the Commissioner or determined by him to pose no threat to human health or safety or the environment which would warrant mitigation and (2) that any hazardous waste which remains on the site is being managed in accordance with chapters 445 and 446k of the Connecticut General Statutes and regulations adopted thereunder.

6. On February 8, 1989, Respondent certified to the Commissioner pursuant to section 22a-134a(c) of the Connecticut General Statutes that, to the extent necessary to minimize or mitigate a threat to human health or the environment, Respondent would contain, remove, or otherwise mitigate the effects of any discharge or spillage of hazardous waste on the site in accordance with procedures and a time schedule approved by the Commissioner.

7. Respondent alleges that it has voluntarily initiated an investigation to identify how Respondent will contain, remove, or otherwise mitigate the effects of discharge or spillage on the site.

Consent Order No. HM-786
Page Two

8.  Tests of groundwater at the site indicate the presence of at least the following substances in the groundwater:  tetrachloroethene, trichloroethene, 1,1,1 trichloroethane, and cis-1,2 dichloroethene.

9.  On September 4, 1987, the Commissioner issued Order No. WC4567 to Stanadyne, Inc. which required Stanadyne, Inc. to:

a.  Install wastewater treatment system improvements and/or process modifications to the metal finishing operations discharging to the sanitary sewer as necessary to comply with Section 22a-430-4 of the Regulations of Connecticut State Agencies.

b.  Investigate the extent and degree of groundwater, surface water, and soil contamination resulting from chemical storage, handling, and disposal activities at 92 Deerfield Road, Windsor, Connecticut and take necessary remedial actions to minimize or eliminate the contamination.

10.  Stanadyne, Inc. requested a hearing on Order No. WC4567 within thirty days of the issuance of the order and the order was modified on December 28, 1987 in full resolution of the appeal.  The order therefore became a final order of the Commissioner.

11.  On June 30, 1989 the Commissioner approved plans and specifications submitted by Stanadyne, Inc. to address improvements and modifications to the waste water treatment system consistent with Section 22a-430-4 of the Regulations of Connecticut State Agencies.

12.  On December 15, 1987, Stanadyne Inc. submitted to the Commissioner a scope of work to investigate the extent and degree of groundwater, surface water, and soil contamination at the site, as required by Order No. WC4567.

13.  Compliance with Order No. WC4567 shall be noted when this consent order has been fully complied with.

14.  Regarding the violations specified in Attachment A paragraphs 8,9,10,12,13,15,16,17,18,19, and 23, Respondent has notified the Commissioner in reports dated August 27, 1993, November 11, 1993, February 25, 1994, March 23, 1994 and June 22, 1994, of actions taken to comply with these sections of RCSA referenced in those paragraphs.

15.  By agreeing to the issuance of this consent order, Respondent makes no admission of fact or law with respect to the matters addressed herein, or within any attachments hereto, other than the facts asserted in paragraphs A.1 to A.2 inclusive.

Consent Order HM-786
Page Three

B.  With the agreement of Respondent, the Commissioner, acting under Sections
22a-6, 22a-134a, 22a-424, 22a-427, 22a-432, and 22a-449 of the Connecticut
General Statutes, orders Respondent as follows:

1.  Respondent shall correct all alleged violations set forth in Attachment A
of this consent order, and shall maintain all hazardous waste handling
procedures and facilities in compliance with the provisions of the RCSA
specified in those paragraphs, in accordance with the following schedule:

   a.   On or before ten days after issuance of this consent order, Respondent
        shall perform all actions which it failed to perform as specified in
        paragraphs 6, 8, 20, 21, 22, 23, 27, 28, 29, and 32 of Attachment A of
        this consent order and submit for the Commissioner's review and
        written approval certification of compliance with the waste handling
        requirements specified in those paragraphs, and documentation
        demonstrating such compliance.

   b.   On or before ten days after issuance of this consent order, Respondent
        shall retain one or more qualified consultants acceptable to the
        Commissioner to prepare the documents and implement or oversee the
        actions required by this consent order and shall, by that date, notify
        the Commissioner in writing of the identity of such consultants.
        Respondent shall retain one or more qualified consultants acceptable
        to the Commissioner until this consent order is fully complied with,
        and, within ten days after retaining any consultant other than one
        originally identified under this paragraph, Respondent shall notify
        the Commissioner in writing of the identity of such other consultant.
        Nothing in this paragraph shall preclude the Commissioner from finding
        a previously acceptable consultant unacceptable.

   c.   On or before ten days after issuance of this consent order, Respondent
        shall submit all analytical data and reports documenting previous
        investigations of soil at the site, surface water on or adjacent to
        the site, and groundwater at or emanating from the site collected or
        prepared from September, 1987 to the present, which are not subject to
        a claim of attorney-client privilege.  Respondent shall identify all
        reports for which attorney-client privilege is claimed and provide a
        brief explanation as to the reason(s) Respondent feels assertion of
        the privilege is necessary.  Respondent agrees that assertion of the
        attorney-client privilege in this case shall not limit the submission
        of all raw data on which the reports protected under the asserted
        attorney-client privilege are based.  These reports shall include but
        not be limited to the following: any investigations related to the
        certification filed with the Commissioner on February 8, 1989, any
        environmental site assessments, any investigations related to
        underground storage tank removals and tank grave soil excavations, and
        influent data collected from the pump tests performed in September,
        1994.

Consent Order No. HM-786
Page Four

    d.    On or before sixty days after issuance of this consent order, Respondent shall submit for the Commissioner's review and written approval a report which includes at least the following:

        (1) a detailed identification of the type, quantity, location on the site and, if no longer on the site, the current location, of all solid wastes, as defined in Section 22a-207 of the Connecticut General Statutes ("wastes"), which are or have been on the site at any time from August 22, 1993 to present.

        (2) a detailed discussion of why each waste identified under paragraph B.1.d.1 is not a hazardous waste, with documentation supporting such discussion.

        (3) the results, with supporting documentation, of a hazardous waste determination performed on each waste identified under paragraph B.1.d.1, including but not limited to: unmarked drums; oily sludge; contaminated absorbent; mineral spirits; super turbulene; antifreeze; sodium hydroxide/oil waste; waste oils (ultrafiltration system); tumbling sludge; and paint sludge.

        (4) a proposed plan and schedule for the expeditious removal and proper disposal of all wastes, including but not limited to: unmarked drums; oily sludge; contaminated absorbent; mineral spirits; super turbulene; antifreeze; sodium hydroxide/oil waste; waste oils (ultrafiltration system); tumbling sludge and paint sludge; which are not being managed in accordance with Sections 22a-449(c)-100 et seq. of the RCSA, including but not limited to any hazardous wastes which have been accumulated on-site for more than ninety days. The removal schedule shall provide for the completion of removal within no longer than thirty days after approval of the plan.

    e.    Respondent shall remove from the site and properly dispose of the wastes specified in paragraph B.1.d.4 above, if any, in accordance with the plan and schedule approved by the Commissioner pursuant to that paragraph. Hazardous wastes shall be removed in accordance with all applicable laws by a transporter holding a valid permit from the Department of Environmental Protection to transport hazardous waste.

    f.    On or before ten days after removal of the wastes specified in paragraph B.1.d.4 above, Respondent shall submit to the Commissioner certification that such wastes have been removed as required, and documentation demonstrating such removal.

    g.    On or before ninety (90) days after issuance of this consent order, Respondent shall submit for the Commissioner's review and written approval a report detailing the investigation of (1) the oil, chemical, and waste handling, storage, and disposal activities on

Consent Order No. HM- 786
Page Five

site, including, but not limited to, any uncontrolled loss, seepage, or filtration of hazardous waste; (2) the type and quantity of any solid wastes, as defined in section 22a-207 of the Connecticut General Statutes ("wastes"), which have been generated on the site at any time after May 1, 1967 and the time and duration of generation of such wastes; (3) the type, quantity, and location of wastes which have been disposed of on the site at any time after May 1, 1967, the time and duration of disposal, and whether each such waste was or is a hazardous waste, as defined in section 22a-134 of the General Statutes or section 22a-449(c)-100 of the Regulations of Connecticut State Agencies; and (4) the type, size, contents, and location of each underground storage tank located on the site at any time after May 1, 1967 which contained or may have contained oil or petroleum, as defined in section 22a-448 of the Connecticut General Statutes, or wastes. The report shall also include an evaluation of the potential impact of such activities on human health and the environment both on-site and off-site, including, but not limited to, the existing and potential extent and degree of soil, groundwater, and surface water pollution. Such investigation shall include all potential sources of contamination, including, but not limited to: satellite storage areas; former and current hazardous waste storage areas and tanks; former and current oil and chemical storage areas and tanks; hazardous waste and oil and chemical transfer and transport areas; chip hoppers; roof leaders; roof vents associated with degreaser stills; dry wells; spills of oils; chemicals; and wastes; stormwater runoff; oil/water separators; swarf piles; former disposal areas or pits; and former lagoons. Such report shall identify the locations and depths of groundwater monitoring wells or other sampling technology and soil and surface water sampling; the parameters tested, sampling and analytical methods, and quality assurance and quality control procedures, employed in the investigation.

h.    If the investigation carried out under the previous paragraph does not fully describe the wastes generated or disposed of on the site or the underground storage tanks on the site or does not fully characterize the extent and degree of soil, surface water, and groundwater pollution to the satisfaction of the Commissioner, then additional investigation shall be performed in accordance with a supplemental plan and schedule approved in writing by the Commissioner. Unless otherwise specified in writing by the Commissioner, the supplemental plan and schedule shall be submitted for the Commissioner's review and written approval on or before sixty (60) days after notice from the Commissioner that they are required.

i.    Respondent shall perform the investigation and other actions specified in any approved scope of study and in any approved supplemental plan(s) in accordance with the approved schedule(s).

Consent Order No. HM- 786
Page Six

j.  Following the Commissioner's review of the documents submitted under
    B.1.c. and B.1.g., and following notification from the Commissioner in
    writing that additional investigation is necessary to evaluate the
    existing and potential impacts of site activities on human health and
    the environment both on-site and off-site, including but not limited
    to, the existing and potential extent and degree of soil, groundwater,
    and surface water pollution, additional investigation shall be
    performed in accordance with a scope of study and schedule for
    completion of the investigation approved in writing by the
    Commissioner. Unless otherwise specified in writing by the
    Commissioner, the scope of study and schedule shall be submitted for
    the Commissioner's review and written approval on or before ninety
    (90) days after notice from the Commissioner that they are required.
    Such scope of study shall also include, but not be limited to, the
    proposed locations and depths of groundwater monitoring wells or other
    sampling technology and soil and surface water sampling, a proposed
    sampling and analytical program including at least the parameters to
    be tested, proposed sampling and analytical methods, and quality
    assurance and quality control procedures, and a schedule for
    conducting the additional investigation.

k.  Except as may be provided in the investigation schedule approved by
    the Commissioner, on or before sixty (60) days after the approved date
    for completion of the investigation, the Respondent shall submit for
    the Commissioner's review and written approval a comprehensive and
    thorough report which describes in detail the investigation performed;
    defines the existing and potential extent and degree of soil, surface
    water, and groundwater pollution which is on, is emanating from, or
    has emanated from the site; and evaluates the alternatives for
    remedial actions to abate such pollution, proposes a preferred
    alternative with supporting justification therefor, proposes criteria
    by which to determine the effectiveness of the remedial actions, and
    proposes a detailed program and schedule to perform the preferred
    remedial actions. Such report shall also include, but not be limited
    to, a soil, surface water, and groundwater monitoring program to
    determine the degree to which the approved remedial actions have been
    effective, and a schedule for performing the approved monitoring
    program.

l.  Unless another deadline is specified in writing by the Commissioner,
    on or before ninety (90) days after approval of the report described
    in the preceding paragraph, Respondent shall (1) submit for the
    Commissioner's review and written approval contract plans and
    specifications for the approved remedial actions, a revised list of
    all permits and approvals required for such actions, and a revised
    schedule for applying for and obtaining such permits and approvals,
    and (2) submit applications for all permits and approvals required.
    Respondent shall use best efforts to obtain all required permits and
    approvals.

Consent Order No. HM- 786
Page Seven

m.   Respondent shall perform the approved remedial actions in accordance
with the approved schedule(s). Within thirty (30) days after
completing such actions, Respondent shall certify to the Commissioner
in writing that the actions have been completed as approved.

n.   Respondent shall perform all actions specified in the approved
monitoring program to determine the effectiveness of the remedial
actions in accordance with the approved schedule(s). If the approved
remedial actions do not result in the prevention and abatement of
soil, surface water, and groundwater pollution to the satisfaction of
the Commissioner, additional remedial actions and measures for
monitoring and reporting on the effectiveness of those actions shall
be performed in accordance with a supplemental plan and schedule
approved in writing by the Commissioner. Unless otherwise specified
by the Commissioner, the supplemental plan and schedule shall be
submitted for the Commissioner's review and written approval on or
before thirty days after notice from the Commissioner that they are
required.

o.   Respondent shall notify the Commissioner of the date and time of
installation of monitoring wells or other sampling technology, as
approved by the Commissioner, and of each soil or water sampling event
at least five (5) full business days prior to such installation or
sampling.

p.   Performance of all actions required pursuant to sections B.1.g through
B.1.o inclusive of this paragraph shall fulfill Respondent's
obligations under the certification described in paragraph A.6.

q.   On or before seventy-five days after issuance of this consent order,
Respondent shall perform all actions which it failed to perform as
specified in paragraphs 1, 2, 3, 4, 5, 7, 9, 10, 11, 12, 13, 14, 15,
16, 17, 18, 19, 24, 25, 26, 30, and 31 of Attachment A of this consent
order, and submit for the Commissioner's review and written approval a
report which details the actions taken to comply with those sections,
and documentation demonstrating such actions.

r.   On or before ninety (90) days after issuance of this consent order,
Respondent shall submit for the Commissioner's review a site-specific
plan for best management practices for used oil management in
accordance with 40 CFR 279. Within sixty (60) days after submittal of
such plan, Respondent shall carry out the plan and maintain it in full
effect thereafter.

s.   On or before ninety (90) days after approval of paragraphs B.1.a and
B.1.q by the Commissioner, Respondent shall submit for the
Commissioner's review and written approval a plan detailing additional
actions and/or operational changes to ensure future compliance with
the requirements specified in paragraphs 1 through 32 inclusive in
Attachment A of this consent order. Within five days after the

Consent Order No. HM- 786
Page Eight

> Commissioner approves such plan, Respondent shall carry out the plan and maintain it in full effect thereafter.

t.   Respondent may request that the Commissioner approve, in writing, revisions to any document approved hereunder in order to make such document consistent with law or for any other appropriate reason.

2.   <u>Hearing allowed on disapproval of remedial program proposed by Respondent.</u> When the Commissioner sends notice to the Respondent of a decision approving or disapproving the remedial action proposed by Respondent, the Commissioner shall send a copy of such notice to each intervenor and each party at its last known address.   On or before twenty days after such notice, Respondent or any aggrieved intervenor or party may submit a request for an administrative hearing on that decision.   The Commissioner shall provide at least fifteen days' notice of the date of such hearing to the Respondent and all intervenors and parties.   The hearing shall be limited solely to the remedial action to be performed, and the person challenging the decision of the Commissioner shall have the burden of going forward and of persuasion that the Commissioner's decision was clearly erroneous.   The hearing officer may affirm, modify or reverse the decision, and may either specify the remedial action which the Respondent must perform or direct the Respondent to correct deficiencies in its proposal and submit a corrected proposal by a specified date for the review and written approval of the Commissioner.   Failure to request a hearing in accordance with this paragraph or failure to participate in such hearing shall constitute a waiver of the Respondent's right to contest the Commissioner's decision.

3.   <u>Progress reports.</u>   On a semi-annual basis beginning no later than 180 days after initiation of the remedial actions approved under paragraph B.1.k. or as applicable, supplemental remedial actions, Respondent shall submit for the Commissioner's review a progress report describing the results to date of the groundwater monitoring program to determine the effectiveness of the remedial actions.

4.   <u>Full compliance.</u>   Respondent shall not be considered in full compliance with this consent order until best management practices with respect to the management of hazardous waste, solid waste, and industrial waste are fully in effect, all other actions required by this order have been completed as approved, and all soil, surface water, and groundwater pollution and their sources have been abated to the satisfaction of the Commissioner.

5.   <u>Penalty for past violations.</u>   On or before fourteen (14) days after issuance of this consent order, Respondent shall pay a civil penalty of thirty-seven thousand five hundred dollars ($37,500) for the alleged past violations which are specified in Attachment A of this consent order.   In addition, Respondent has agreed to undertake a supplemental environmental project ("SEP") on or before fourteen (14) days after issuance of this consent order, in the form of a contribution of forty thousand dollars ($40,000) to the Windsor Volunteer Fire Department.   Such funds shall be used solely for the full or partial purchase of the following items related to hazardous materials

Consent Order No. HM- 786
Page Nine

incident preparedness which were identified in a document dated May 1, 1995 from Gregory J. Malloy, Chief, Windsor Volunteer Fire Department, to Evert Baird of Stanadyne Automotive Corp.: hazardous materials spill response unit, including supplies and trailer; leak kits; multi-gas detectors; protective equipment for four personnel; and hazardous materials training courses for fire department members.  If Respondent fails to perform such SEP then an additional $40,000 civil penalty shall be immediately due and payable in accordance with the provisions of paragraph 6 of this consent order.

Furthermore, Respondent has agreed to undertake an additional supplemental environmental project or pay an additional civil penalty as follows:

a.  Within sixty (60) days from the date of issuance of this consent order, Respondent shall submit for the Commissioner's review and written approval a proposal to perform an additional SEP ("proposal").  The proposal shall include but not be limited to: a description of the SEP; an explanation as to why the particular SEP is being proposed; a schedule for implementation and completion of the SEP; itemized costs to be incurred by the Respondent in carrying out the SEP; and a description of the SEP's benefit to the general public or the environment.  The total expenditure for the proposal shall be not less than seventy-two thousand five hundred dollars ($72,500).

b.  Within sixty (60) days from the date he receives the proposal, the Commissioner will either (i) accept the proposal or (ii) reject the proposal and notify the Respondent, in writing, of deficiencies in the proposal and any additional actions or information required to be taken or supplied by Respondent.

c.  If the Commissioner accepts the Respondent's proposal and the Respondent fails to perform such SEP, an additional $72,500 civil penalty shall be immediately due and payable in accordance with the provisions of paragraph 6 of this consent order.

d.  Respondent shall have ten (10) days to object in writing to a rejection or notification of deficiency under subparagraph (b) of this paragraph.  The Commissioner and Respondent shall have thirty (30) days from the receipt by the Commissioner of an objection to reach agreement on a proposal.  If agreement cannot be reached within such time, as evidenced by written notice from the Commissioner, Respondent shall either: (1) perform a SEP of a type and on a schedule presented by the Commissioner, or (2) pay an additional $72,500 civil penalty in accordance with the provisions of paragraph 6 of this consent order.  In the event Respondent chooses to perform such a SEP, upon any violation by the Respondent of the Commissioner's schedule or other requirements related thereto, an additional $72,500 civil penalty shall be immediately due and payable in accordance with the provisions of paragraph 6 of this consent order.

e.  The net present after-tax value of each SEP shall be equivalent to the sums identified in this paragraph or Respondent shall submit certified

Consent Order No. HM-786
Page Ten

       documentation that no tax credits shall be obtained as a result of the
       SEP performed under this paragraph.

   f.   If and when Respondent disseminates publicity regarding its funding of
       the SEP, Respondent shall include a statement that such funding is in
       partial settlement of an enforcement action brought by the
       Commissioner.

   g.   Within fourteen (14) days of completing each SEP, Respondent shall
       submit written documentation to the Commissioner that the requirements
       of the SEP have been fulfilled.

6. _Payment of penalties._ Payment of penalties under this consent order shall be mailed or personally delivered to Mr. David Nash, Director of Engineering and Enforcement, Bureau of Waste Management, Department of Environmental Protection, 79 Elm Street, Hartford, CT 06106, and shall be by certified or bank check payable to the Connecticut Department of Environmental Protection. The check shall state on its face, "Waste management civil penalty -- Engineering and Enforcement Division, Consent Order No. HM 786."

7. _Sampling and sample analyses._ All sampling and sample analyses which are required by this consent order and all reporting of such sample analyses shall be done by a laboratory certified by the Connecticut Department of Public Health and Addiction Services for such analyses. The value of each parameter shall be reported to the maximum level of precision and accuracy possible.

8. _Approvals._ Respondent shall use best efforts to submit to the Commissioner all documents required by this consent order in a complete and approvable form. If the Commissioner notifies the Respondent that any document or other action is deficient, and does not approve it with conditions or modifications, it is deemed disapproved, and Respondent shall correct the deficiencies and resubmit it within the time specified by the Commissioner or, if no time is specified by the Commissioner, within thirty days of the Commissioner's notice of deficiencies. In approving any document or other action under this consent order, the Commissioner may approve the document or other action as submitted or performed or with such conditions or modifications as the Commissioner deems necessary to carry out the purposes of this consent order. Nothing in this paragraph shall excuse noncompliance or delay.

9. _Definitions._ As used in this consent order, "Commissioner" means the Commissioner or an agent of the Commissioner. The date of "issuance" of this consent order is the date the order is deposited in the mail or personally delivered, whichever is earlier.

10. _Dates._ The date of submission to the Commissioner of any document required by this consent order shall be the date such document is received by the Commissioner. The date of any notice by the Commissioner under this consent order, including but not limited to notice of approval or disapproval

Consent Order No. HM- 786
Page Eleven

of any document or other action, shall be the date such notice is personally delivered or the date three days after it is mailed by the Commissioner, whichever is earlier. Except as otherwise specified in this consent order, the word "day" as used in this consent order means calendar day. Any document or action which is required by this consent order to be submitted or performed by a date which falls on a Saturday, Sunday or a Connecticut or federal holiday shall be submitted or performed on or before the next day which is not a Saturday, Sunday, or Connecticut or federal holiday.

11. <u>Notification of noncompliance.</u> In the event that Respondent becomes aware that it did not or may not comply, or did not or may not comply on time, with any requirement of this consent order or of any document required hereunder, Respondent shall immediately notify the Commissioner and shall take all reasonable steps to ensure that any noncompliance or delay is avoided or, if unavoidable, is minimized to the greatest extent possible. In so notifying the Commissioner, Respondent shall state in writing the reasons for the noncompliance or delay and propose, for the review and written approval of the Commissioner, dates by which compliance will be achieved, and Respondent shall comply with any dates which may be approved in writing by the Commissioner. Notification by Respondent shall not excuse noncompliance or delay, and the Commissioner's approval of any compliance dates proposed shall not excuse noncompliance or delay unless specifically so stated by the Commissioner in writing.

12. <u>Certification of documents.</u> Any document, including but not limited to any notice, which is required to be submitted to the Commissioner under this consent order shall be signed by a responsible corporate officer of the Respondent or a duly authorized representative of such officer, as those terms are defined in section 22a-430-3(b)(2) of the RCSA and by the individual or individuals responsible for actually preparing such document, each of whom shall certify in writing as follows: "I have personally examined and am familiar with the information submitted in this document and all attachments and certify that based on reasonable investigation, including my inquiry of those individuals responsible for obtaining the information, the submitted information is true, accurate and complete to the best of my knowledge and belief, and I understand that any false statement made in this document or its attachments may be punishable as a criminal offense."

13. <u>Noncompliance.</u> Except as provided in paragraph B.2, this consent order is a final order of the Commissioner with respect to the matters addressed herein, and is nonappealable and immediately enforceable. Failure to comply with this consent order may subject Respondent to an injunction and penalties under Chapters 439, 445 and 446k of the Connecticut General Statutes.

14. <u>False statements.</u> Any false statement in any information submitted pursuant to this consent order may be punishable as a criminal offense under 22a-131a of the Connecticut General Statutes or, in accordance with Section 22a-6, under Section 53a-157 of the Connecticut General Statutes.

15. <u>Notice of transfer; liability of Respondent and others.</u> Until Respondent has fully complied with this consent order, Respondent shall notify the

Consent Order No. HM- 786
Page Twelve

Commissioner in writing no later than fifteen days after transferring all or
any portion of the operations which are the subject of this consent order, the
site or the business, or obtaining a new mailing or location address.
Respondent's obligations under this consent order shall not be affected by the
passage of title to any property to any other person or municipality.  Any
future owner of the site may be subject to the issuance of an order from the
Commissioner.

16.  Commissioner's powers.  Nothing in this consent order shall affect the
Commissioner's authority to institute any proceeding to prevent or abate
violations of law, prevent or abate pollution, recover costs and natural
resource damages, and to impose penalties for violations of law which are
willful or criminally negligent or for which penalties have not been
specifically provided in this consent order, including but not limited to
violations of any permit issued by the Commissioner.  If at any time the
Commissioner determines that the actions taken by Respondent pursuant to this
consent order have not successfully corrected all violations, the Commissioner
may institute any proceeding to require Respondent to correct violations.

17.  Respondent's obligations under law.  Nothing in this consent order shall
relieve Respondent of other obligations under applicable federal, state and
local law.

18.  No assurance by Commissioner.  No provision of this consent order and no
action or inaction by the Commissioner shall be construed to constitute an
assurance by the Commissioner that the actions taken by Respondent pursuant to
this consent order will result in compliance.

19.  Access to site.  Any representative of the Department of Environmental
Protection may enter the site without prior notice for the purposes of
monitoring and enforcing the actions required or allowed by this consent order.

20.  No effect on rights of other persons.  This consent order shall neither
create nor affect any rights of persons who or municipalities which are not
parties to this consent order.

21.  Notice to Commissioner of changes.  Within fifteen days of the date
Respondent becomes aware of a change in any information submitted to the
Commissioner under this consent order, or that any such information was
inaccurate or misleading or that any relevant information was omitted,
Respondent shall submit the correct or omitted information to the Commissioner.

Consent Order NO. HM- 786
Page Thirteen

22.   Submission of documents.   Any document required to be submitted to the
Commissioner under this consent order shall, unless otherwise specified in
writing by the Commissioner, be directed to:

> Ms. Donna Seresin
> Department of Environmental Protection
> Waste Management Bureau
> Engineering and Enforcement Division
> 79 Elm Street
> Hartford, Connecticut  06106

Respondent consents to the issuance of this consent order without further
notice.

STANADYNE AUTOMOTIVE CORP.

BY: _____

[TYPE NAME OF INDIVIDUAL SIGNING] _____ William D. Gurley _____

[TYPE TITLE] _____ President & CEO _____

_____ June 13, 1995 _____
Date

Issued as a final order of the Commissioner of Environmental Protection on
June 21 , 1995.

_____
Sidney J. Holbrook
Commissioner

ORDER NO. HM 786
DEP/HM      164

ATTACHMENT A

The following violations were noted during inspections conducted on August 27 and 31, 1993, September 3, 1993 and October 15, 1993.

1.   Respondent has failed to determine if each waste generated on site is a hazardous waste, in violation of Section 22a-449(c)-102(a) of the Regulations of Connecticut State Agencies ("RCSA"), incorporating 40 CFR 262.11.

     Specifically, waste determinations are needed for unmarked waste drums, oily sludge, contaminated absorbent, mineral spirits, super turbulene, antifreeze waste, sodium hydroxide/oil waste, waste oils (ultrafiltration system), tumbling sludge and paint sludge.

2.   Respondent has failed to develop an inspection schedule and log for hazardous waste storage areas, in violation of RCSA Section 22a-449(c)-102(b)(2), incorporating 40 CFR 265.15(b)(1).

     Specifically, inspection logs are needed for the loading dock, A & T central distillation, 375 gallon solvent still area, metal hydroxide gaylord box area and the northside degreasing area.

3.   Respondent has failed to develop an inspection schedule and log for all safety equipment in violation of RCSA Section 22a-449(c)-102(b)(2), incorporating 40 CFR 265.15(b)(1).

     Specifically, the only safety equipment included on the schedule is the equipment in the hazardous waste storage area.

4.   Respondent has failed to develop and implement an inspection schedule and log for the hazardous waste tanks in violation of 22a-449(c)-102(b)(2), incorporating 40 CFR 265.15(b)(1).

     Specifically, the tanks holding hazardous waste fuel have not been inspected.

5.   Respondent has failed to develop an adequate inspection schedule which identifies the types of problems to be checked, in violation of RCSA Section 22a-449(c)-102(b)(2), incorporating 40 CFR 265.15(a)(3).

     Specifically the inspection schedule for the hazardous waste storage area does not include checking the integrity of the secondary containment.

6.   Respondent has failed to indicate the time of the inspection on the log, in violation of RCSA Section 22a-449(c)-102(b)(2), incorporating 40 CFR 265.15(d).

Specifically, the log for the hazardous waste storage area does not include time of day.

7.   Respondent has failed to inspect his facility including hazardous waste storage areas and all safety equipment for malfunctions and deterioration, operator errors, and discharges which may be causing-or may lead to: (1) Release of hazardous waste constituents to the environment or (2) a threat to human health, in violation of RCSA Section 22a-449(c)-102(b)(2), incorporating 40 CFR 265.15(a).

Specifically, the inspection of hazardous waste tanks, safety equipment located throughout the plant, A & T building central distillation area, 375 gallon solvent still area, and the metal hydroxide sludge area, were not being conducted.

8.   Respondent failed to remedy the lack of a communication device, in violation of RCSA Section 22a-449(c)-102(b)(2), incorporating 40 CFR 265.15(c).

Specifically, the inspection log indicated the lack of a phone on 5/12/93, but on the day of inspection the problem was still not addressed.

9.   Respondent has failed to train new employees within six months of their employment in hazardous waste management procedures, in violation of RCSA Section 22a-449(c)-102(a)(2)(D), incorporating 40 CFR 262.34(a)(4) and 265.16(b).

Specifically, new employees with hazardous waste duties are only trained on chemical safety.

10.  Respondent has failed to train employees in contingency plan implementation, in violation of RCSA Section 22a-449(c)-102(a)(2)(D), incorporating 40 CFR 262.34(a)(4) and 265.16(a)(2).

Specifically, the implementation of the contingency plan is not part of the personnel training program.

11.  Respondent has failed to require personnel to take part in an annual review of hazardous waste training, in violation of RCSA Section 22a-449(c)-102(a)(2)(D), incorporating 40 CFR 262.34(a)(4) and 265.16(c).

Specifically, hazardous waste specialists have not had updated training since 1989.

12.  Respondent has failed to develop job titles (including employee name) for all hazardous waste management personnel, in violation of RCSA Section 22a-449(c)-102(a)(2)(D), incorporating 40 CFR 262.34(a)(4) and 265.16(d)(1).

13. Respondent has failed to develop job descriptions for all hazardous waste management personnel, in violation of RCSA Section 22a-449(c)-102(a)(2)(D), incorporating 40 CFR 262.34(a)(4) and 265.16(d)(2).

14. Respondent has failed to develop a written description of the type and amount of training that will be given to hazardous waste management personnel, in violation of RCSA Section 22a-449(c)-102(a)(2)(D), incorporating 40 CFR 262.34(a)(4) and 265.16(d)(3).

15. Respondent has failed to send the revised (1/22/93) copy of the contingency plan to the local authorities, in violation of RCSA Section 22a-449(c)-102(a)(2)(D), incorporating 40 CFR 262.34(a)(4) and 265.53.

    Specifically, the 1984 version of the contingency plan was submitted to the local authorities but not any revisions since 1984.

16. Respondent has failed to include specific procedures for spills, fires and explosions in its contingency plan, in violation of RCSA Section 22a-449(c)-102(a)(2)(D), incorporating 40 CFR 262.34(a)(4) and 265.52(a).

    Specifically, the contingency plan just restates the contingency plan regulations, no specific responses are in the plan.

17. Respondent has failed to include a brief outline of capabilities of emergency equipment in its contingency plan, in violation of RCSA Section 22a-449(c)-102(a)(2)(D), incorporating 40 CFR 262.34(a)(4) and 265.52(e).

18. Respondent has failed to identify evacuation routes in the contingency plan, in violation of RCSA Section 22a-449(c)-102(a)(2)(D), incorporating 40 CFR 262.34(a)(4) and 265.52(f).

19. Respondent has failed to post a "No Smoking" sign where ignitable and reactive wastes were stored, in violation of RCSA Section 22a-449(c)-102(a)(2)(D), incorporating 40 CFR 262.34(a)(4) and 265.17(a).

20. Respondent has failed to limit its accumulation hazardous waste to 55 gallons at or near the point of generation, in violation of RCSA Section 22a-449(c)-102(a), incorporating 40 CFR 262.34(c)(1).

    Specifically, a 375 gallon solvent container, a box tote and several areas of "to be distilled" solvent were managed as satellite locations but had more than fifty-five (55) gallons of hazardous waste accumulating.

31.  Respondent has failed to label tanks with the words "Hazardous Waste" and other words that identify the contents such as chemical name, in violation of RCSA Section 22a-449(c)-102(a)(2)(C), incorporating 40 CFR 262.34(a)(3).

Specifically, two hazardous waste fuel tanks are not marked with words "Hazardous Waste" and other words that identify such as chemical name.

32.  Respondent has failed to mark the date the period of accumulation began on hazardous waste containers, in violation of RCSA Section 22a-449(c)-102(a), incorporating 40 CFR 262.34(a)(2).

Specifically, all unknowns not marked were also not dated, several drums were lacking the year of accumulation, a full drum identified "4209-C", two drums of 1,1,1-trichloroethane , 4-1 gallon cans "white lightening", 2-1 gallon cans of enamel, 2-4 gallon cans of oakite, were all lacking dates, 8 drums of solvent/acid/still without years were given new dates on the 2nd day of the inspection.

Note:  This sheet is not a part of the consent order and is <u>only</u> attached to the original consent order which is retained in separate DEP files which are accessible to the public with close supervision.  The consent order <u>must</u> be mailed to the Respondent by certified mail, return receipt requested.  If the Respondent is a business, send a certified copy of the consent order to the business alone and a plain copy to the attention of a person at the business.

### Certification of Mailing

On __June 26th____, 1995 at _4 :00_ a.m./p.m., I mailed a certified copy of Consent Order No. _786_ to the following, by U.S. mail, certified and return receipt requested:

<u>Stanadyne Automotive Corp.</u>
<u>Attn: Evert Baird</u>
<u>92 Deerfield Road</u>
<u>Windsor, CT   06095</u>

Certified mail number:   _P 058 264 044_

> NOTE:  CERTIFIED COPY TO RESPONDENT
> MUST BE SENT BY CERTIFIED MAIL

On _June 26th_, 1995, at _4:00_ a.m./p.m., I mailed a plain copy (not a certified copy) of Consent Order No. _786_ to the following, by placing it in the U.S. mail:

<u>Christopher Foster</u>
<u>Robinson & Cole</u>
<u>24 School Street</u>
<u>Boston, MA   02108-5151</u>

Certified   mail   number   (if   sent   by   certified   mail):

_For J.E._

Joyce Eason
Secretary
_6-26-95_
date