### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| STANADYNE LLC, *et al.*,[1] | Case No. 23-10207 (TMH) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date: September 26, 2023 at 1:00 p.m. (ET)** |
| | **Obj. Deadline: September 22, 2023 at 4:00 p.m. (ET)** |

**MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR AN ORDER (I) APPROVING ON AN INTERIM BASIS THE ADEQUACY OF DISCLOSURES IN THE COMBINED DISCLOSURE STATEMENT AND PLAN OF LIQUIDATION, (II) SCHEDULING THE CONFIRMATION HEARING AND DEADLINE FOR FILING OBJECTIONS, (III) ESTABLISHING PROCEDURES FOR SOLICITATION AND TABULATION OF VOTES TO ACCEPT OR REJECT THE COMBINED PLAN AND DISCLOSURE STATEMENT, AND APPROVING THE FORM OF BALLOT AND SOLICITATION PACKAGE, AND (IV) APPROVING THE NOTICE PROVISIONS**

The Official Committee of Unsecured Creditors (the "Committee," or the "Plan Proponent") hereby moves the Court (the "Motion")[2] for entry of any order substantially in the form attached hereto as **Exhibit A** (the "Solicitation Procedures Order"): (A) approving on an interim basis the disclosures (the "Disclosures") set forth in the Combined Disclosure Statement and Chapter 11 Plan of Liquidation dated September 8, 2023, that is being filed contemporaneously herewith (including all exhibits thereto and as the same may be amended, modified, or supplemented from time to time, the "Plan"),[3] as containing adequate information regarding such disclosures provided therein for solicitation purposes; (B) scheduling a combined

---

[1].     The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number are:  Stanadyne LLC (0378); Pure Power Technologies, Inc. (5202); Stanadyne PPT Holdings, Inc. (2594); and Stanadyne PPT Group Holdings, Inc. (1734).  The Debtors' headquarters are located at 405 White Street, Jacksonville, North Carolina 28546.

[2]      Capitalized terms used herein, but not otherwise defined herein shall have the same meanings ascribed to such terms in the Plan

[3]      As more fully set forth herein, a copy of the Plan is being filed contemporaneously herewith, but remains subject to amendment or modification prior to approval of the Motion and solicitation of the Plan.

hearing for (i) final approval of the Plan as containing adequate information for solicitation purposes, and (ii) confirmation of the Plan (the "Confirmation Hearing"); (C) establishing procedures for the solicitation of the Plan, including, but not limited to, (i) approving the form of the materials that the Committee will send to parties in interest entitled to vote to accept or reject the Plan (collectively, the "Solicitation Package"), (ii) establishing a Voting Record Date (as defined below) and approving procedures for distribution of the Solicitation Package, (iii) approving the form and manner of the notice of the Confirmation Hearing, (iv) approving the form of ballots (the "Ballots"), (v) establishing a voting deadline for receipt of the Ballots, and (vi) approving the procedures for tabulating acceptances and rejections of the Plan; (D) establishing the deadline for filing objections to confirmation of the Plan; and (E) granting related relief, and in support of the Motion, the Committee respectfully states as follows:

## **INTRODUCTION**

Now that the Court has entered an order approving the Debtors' sale of substantially all of their assets (the "Sale Order"), and the Court has approved the settlement between the Committee, the Purchaser, and the Prepetition Secured Creditors (the "Settlement Term Sheet"), it is important that these cases emerge from bankruptcy promptly.

Consistent with the Settlement Term Sheet, the Committee, in coordination with comments from Cerberus Business Finance, LLC, as administrative agent and collateral agent for the Prepetition Secured Lenders ("Cerberus"),[4] has prepared and, with the termination of exclusivity, is seeking approval of a Plan that is consistent with the Sale Order and provides for an orderly

---

[4] The Committee also received numerous comments from the Debtors, many of which have been incorporated into the Plan. However, due to certain disagreements regarding matters that could affect the prosecution of claims to be retained and assigned to the Liquidating Trust, the Debtors are not a Plan Proponent.

16298828/1

exist from Chapter 11 and appointment of the Liquidating Trustee with respect to the retained claims to be pursued for the benefit of the estates and creditors.

Notably, on August 30, 2023, the Debtors' right to exclusivity lapsed, and the Committee is pursing confirmation of a plan of liquidation that will, upon confirmation, establish the liquidating trust to realize and maximize the value of the remaining assets of the estates for distribution to creditors, including certain causes of action – all as contemplated by the Settlement Term Sheet.  In order to get to confirmation more quickly (and inexpensively), the Committee has elected to pursue a combined disclosure statement and plan.

By and through the Motion, the Committee seeks (i) approval of the disclosures set forth in the Plan on an interim basis as containing adequate information for solicitation purposes, (ii) scheduling certain deadlines, including but not limited to voting and the filing of confirmation objections, and a scheduling a confirmation hearing, and (iii) approving the Solicitation Package and related documents to be sent out to creditors and parties-in-interest.

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference from the United States District Court for the District of Delaware, dated February 29, 2012. Consideration of this matter is a core proceeding within the meaning of 28 U.S.C. § 157(b). Venue in this District is proper under 28 U.S.C. §§ 1408 and 1409.

2.      The statutory bases for the relief requested herein include sections 105, 1122, 1123, 1124, 1125, 1126, 1128, and 1129 of Chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), rules 2002, 3003, 3016, 3017, 3018, 3019, 3020, and 9006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 3017-1, 3017-2, and 9006-1

of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules").

## BACKGROUND

### A.    General Background

3.      On February 16, 2023, each of the Debtors filed a voluntary bankruptcy petition in the Bankruptcy Court, thereby commencing the above-captioned bankruptcy cases (the "Chapter 11 Cases").

4.      On March 6, 2023, the U.S. Trustee appointed four creditors of the Debtors to serve on the Committee.

### B.    The Sale of Substantially All of the Debtors' Assets Debtors' Assets

5.      On April 27, 2023 the Debtors filed a Motion for Entry of: (A) an Order (I) Scheduling a Hearing on the Approval of the Sale of All or Substantially All of the Debtors' Assets Free and Clear of all Encumbrances Other than Assumed Liabilities and Permitted Encumbrances, and the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (II) Approving Certain Bidding Procedures and Assumption and Assignment Procedures, and the Form and Manner of Notice Thereof, (III) Authorizing the Debtors to Enter into the Stalking Horse Purchase Agreement, and (IV) Granting Related Relief; and (B) an Order (I) Approving Asset Purchase Agreement, (II) Authorizing the Sale of All or Substantially All of the Debtors' Assets Free and Clear of All Encumbrances Other than Assumed Liabilities and Permitted Encumbrances, (III) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (IV) Granting Related Relief [Docket No. 245] (the "Sale Motion").

6.      By and through the Sale Motion, the Debtors sought, among other things, approval of sale procedures, including authorizing the Debtors to enter into a stalking horse agreement with

the Prepetition Secured Lenders, setting procedures for submitting bids, and scheduling deadlines for bidding, an auction (if necessary), and a hearing date.

7.      On May 8, 2023, the Debtors (other than Stanadyne PPT Group Holdings, Inc.) and the Prepetition Secured Lenders entered into a proposed asset purchase agreement (the "Stalking Horse Bid") [Docket No. 265].  As set forth in the Stalking Horse Bid, the Purchaser, an affiliate of the Prepetition Secured Lenders offered to purchase substantially all of the Debtors' assets, including the Debtors' equity in the Foreign Non-Debtor Affiliates, free and clear of all claims, liens and encumbrances pursuant to 11 U.S.C. § 363 in exchange for (i) the assumption of certain liabilities; (ii) certain cash consideration to be satisfied (A) in part by way of a credit bid of a portion of the Debtors' obligations under the Financing Agreement and (B) the remainder by the Purchaser's assumption of the Restructured Indebtedness (as defined in the Asset Purchase Agreement) at the Closing; and (iii) the Cash Deficiency Amount (as defined in the Asset Purchase Agreement) if necessary to fund the Wind-Down Budget (all as more specifically set forth in the Asset Purchase Agreement). In addition, the Purchaser agreed to assume certain liabilities and provide the funds for the settlement with the Committee pursuant to the Settlement Term Sheet.

8.      Between the filing of the Sale Motion and May 15, 2023, the Committee, the Debtors, and Cerberus negotiated the bidding and sale procedures, and on May 16, 2023, the Bankruptcy Court entered an Order approving the bidding and sale procedures [Docket No. 276] (the "Sale Procedures Order").

9.      Despite extensive marketing, which included Angle contacting more than 150 potentially interested parties and approximately 50 parties expressing further interest, the Debtors did not receive any offers for substantially all (or even less than all) of the Debtors' assets prior to the June 21, 2023 bid deadline in the Sale Procedures Order.

10.     On June 22, 2023, in accordance with the Sale Procedures Order, the Debtors filed a notice of cancellation of the auction, and the Purchaser was designated the successful bidder for substantially all of the Debtors' assets.

**C.     Settlement Term Sheet Agreement between the Committee and Cerberus**

11.     While the Debtors marketed their assets, the Committee and Cerberus negotiated a settlement, memorialized by a term sheet, for the resolution of certain issues related to, among other things, the sale of the Debtors' unencumbered assets, assumption of liabilities, and the estates' causes of action which were to be sold as part of the Stalking Horse Bid.   The agreement reached among the Committee, Cerberus and the Purchaser was documented in the Settlement Term Sheet attached to and approved by the Sale Order on July 11, 2023.

12.     Among other things, the Settlement Term Sheet provides that, the Purchaser will fund (or cause to be funded) a total of $4,000,000 comprising (i) a wind-down budget of $1,000,000, which amount is the amount of "Total Disbursements" in the Wind-Down Budget that was finalized pursuant to Section 4.24 of the Asset Purchase Agreement and funded at the Closing in accordance with the Asset Purchase Agreement, (ii) $375,000 to fund the operation of the Liquidating Trust, and (iii) $2,625,000 for Distribution to Holders of Convenience Class Claims and Allowed General Unsecured Claims (which, pursuant to the Settlement Term Sheet, does not include any distribution on account of the Cerberus Deficiency Claim).

13.     Further, with respect to Causes of Action belonging to the Debtors' Estates, the Settlement Term Sheet further provides:

(i)     The Non-Go-Forward Commercial Tort Claims shall not comprise Purchased Assets; The Insider Avoidance Actions and the Non-Go-Forward Commercial Tort Claims (collectively, the "Liquidating Trust Claims") shall be transferred to the Liquidating Trust on the Effective Date of the Liquidating Trust.  The Liquidating Trustee shall have authority to pursue all Liquidating Trust Claims as a Representative of the Debtors' Estates; and

(ii)    The parties waived claims that the Debtors' Estates may have against Go-Forward Creditors, and no party shall be entitled to any affirmative recovery or right of setoff with respect to any such claims against Go-Forward Creditors.

Among other things, these provisions were intended to preserve potentially significant causes of action against insiders to be brought by the Liquidating Trustee after confirmation.

14.    Additionally, as a key term to the Settlement Term Sheet, the Committee and Cerberus agreed that Bradley Dietz would serve as Liquidating Trustee after confirmation of a Chapter 11 Plan.

15.    On July 11, 2023, the Bankruptcy Court entered the Sale Order approving the sale of substantially all of the Debtors' assets to the Purchaser [Docket No. 443].[5]  The Settlement Term Sheet was expressly incorporated in and approved by the Sale Order and attached as an exhibit thereto. On July 31, 2023, the Sale closed.

16.    Following the closing, all of the Debtors' directors and officers resigned and Mr. Dietz agreed to serve as the wind-down manager for the Debtors, acting as the sole officer and directors for each of the Debtors.

**D.    Termination of Exclusivity**

17.    On July 28, 2023, the Debtors filed a motion by and through which the Debtors sought to extend the Debtors' exclusive filing periods through and including August 30, 2023, and to extend the Debtors' exclusive solicitation period through and including October 30, 2023 [Docket No. 483] (the "Exclusivity Motion").  On August 15, 2023, the Court granted an Order granting the Exclusivity Motion [Docket No. 504].  On August 31, 2023, the Debtors' right to exclusivity lapsed.  The Plan is being filed now that exclusivity has lapsed.

---

[5]    In the event of any inconsistency between the Plan and the Sale Order, the Sale Order shall control.

E.      **The Voting Agent**

18.     On the Petition Date, the Debtors filed an application to retain Kurtzman Carson Consultants LLC ("KCC" or the "Voting Agent") as claims and noticing agent [Docket No. 11]. On February 22, 2023, the Bankruptcy Court approved KCC's retention [Docket No. 54]. Although the Debtors are not plan proponents, the Committee has spoken with the Debtors and KCC about extending the scope of KCC's employment to serve as voting and balloting agent.   The Debtors and KCC have agreed to extend KCC's retention in this case and the Committee will be filing a motion to extend the scope of KCC's employment.

D.      **The Combined Plan and Disclosure Statement**

19.     Now that the Sale has been approved, the Committee has focused upon a prompt exit from the Chapter 11 process in order to minimize further administrative expenses. Accordingly, the Committee determined in their respective business judgment to file a combined plan and disclosure statement.

20.     In accordance with section 1122 of the Bankruptcy Code, the Plan classifies holders of claims and equity interests into the following Classes for all purposes, including with respect to voting on the Plan:

| Class | Type | Status Under Plan | Voting Status |
|-------|------|-------------------|---------------|
| Class 1 | Priority Non-Tax Claims | Unimpaired | Presumed to Accept |
| Class 2 | Secured Claims | Unimpaired | Presumed to Accept |
| Class 3 | Cerberus Deficiency Claim | Impaired | Entitled to Vote |
| Class 4 | General Unsecured Claims | Impaired | Entitled to Vote |
| Class 5 | Convenience Claims | Impaired | Entitled to Vote |
| Class 6 | Equity Interests | Impaired | Presume to Reject |

16298828/1

21.    As set forth above, only the holders of claims in Classes 3, 4, and 5 (the "Voting Classes") are impaired and entitled to vote to accept or reject the Plan. Holders of claims in Classes 1 and 2 (the "Unimpaired Classes") are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code and thus are not entitled to vote to accept or reject the Plan. Holders of Equity Interests, in Class 6 (the "Deemed Rejecting Class" and together with the Unclassified Claims and the Unimpaired Classes, the "Non-Voting Classes"), while also impaired by the Plan, are not expected to receive a distribution and thus such holders are conclusively presumed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Thus, such holders of Class 6 Interests are not entitled to vote to accept or reject the Plan, and Class.

22.    The Plan is a straightforward liquidation of the Debtors' remaining assets through the establishment of a Liquidating Trust consistent with the Settlement Term Sheet.  There are three notable components to the Plan.

23.    As noted above, as part of the Settlement Term Sheet, the Committee and Cerberus agreed that Mr. Dietz would serve as the liquidating trustee under the Plan.  Further, following the closing of the sale, all of the Debtors' officers and directors resigned, and Mr. Dietz assumed the role of the Wind-Down officer, including serving as the sole officer and director of the Debtors. Significantly, under the Plan, there are no releases for any party other than for Mr. Dietz, and Plan provides for no third-party releases at all.

24.    Further, in order to avoid any issues with respect to potential estate causes of action being retained under the Settlement Term Sheet and Plan, exculpation in the Plan has been limited

to exclude any actions taken by Exculpated Parties (as defined in the Plan) related to the filing of, or failure to dismiss, the Chapter 11 Cases.

25.    And third, the Plan provides for two classes of unsecured creditors' claims, in addition to Cerberus' deficiency claim which is separately classified.  One class are general unsecured claims (Class 4) and the other are a convenience class for claims under $20,000 (Class 5).  In order to provide creditors the right and ability to determine which class and treatment in which they would like to participate, Section 4.05 of the Plan provides as follows:

> At any time prior to the Voting Deadline, any Holder of a General Unsecured Claim in Class 4 may opt into Class 5, and any Holder of a Convenience Class Claim may opt into Class 4.  At any time prior to the Voting Deadline, a Holder of a Class 4 General Unsecured Claim (which is, by definition, asserted for more than $20,000) may elect to have its claim treated as a Class 5 Convenience Class Claim.  Upon such election, if no objection of the Allowance is pending on the Effective Date,  the Claim will be reduced in amount to $20,000, and will be deemed an Allowed Convenience Class Claim (i.e., not be subject to an objection if its claim is not the subject of an objection on the Effective Date) in that amount, and the Holder will receive a Distribution of 10% (i.e., $2,000) on or as soon after the Effective Date as is reasonably practicable. Any Holder of a Class 4 General Unsecured Claim that opts into Class 5 and to have its Claim treated as a Convenience Class Claim will not receive any further distribution regardless of the Distributions made to Allowed Class 4 General Unsecured Claims.
>
> Similarly, at any time prior to the Voting Deadline, any Holder of a Convenience Class Claim (which is, by definition, asserted for $20,000 or less) may opt into Class 4 to have its Claim treated as a General Unsecured Claim.  Upon such election, the amount of the Claim on the Effective Date will be deemed Disputed.  As such, the Holder of such a Claim will not receive a Distribution on the Effective Date and will only receive a Distribution in accordance with the treatment of Class 4 Claims after the Claim is Allowed. For the avoidance of doubt, a Holder of a Claim that is eligible to and does properly opt out of Convenience Class will, after the Claim is Allowed, be entitled to receive a Distribution Pro Rata to other Class 4 Claims.

This option is available on ballots for Class 4 and Class 5.

26.    The Committee, as plan proponent, believes that, the Plan, will be supported by the creditors, leading to the quick emergence of the Debtors from Chapter 11.

## **RELIEF REQUESTED**

27.     Pursuant to sections 105, 1123(a), 1124, 1125, 1126, 1128, and 1129 of the Bankruptcy Code, Bankruptcy Rules 2002, 3003, 3016, 3017, 3018, 3019, 3020, and 9006, and Local Rules 3017-1, 3017-2, and 9006-1, the Committee seeks entry of the Solicitation Procedures Order, substantially in the form attached hereto, (A) approving on an interim basis the Plan as containing adequate information for solicitation purposes, (B) (i) approving the Plan solicitation procedures for the solicitation of votes seeking acceptance of the Plan, including approving the Solicitation Package, establishing a Voting Record Date and approving procedures for distribution of the Solicitation Package, (ii) approving the form and manner of the notice of the Confirmation Hearing, and (iii) approving the form of Ballots and procedures for distribution of the consideration contemplated under the Plan, (iv) establishing a voting deadline for receipt of the Ballots, and (v) approving the procedures for tabulating acceptances and rejections of the Plan; (C) scheduling the Confirmation Hearing and establishing the deadline for filing objections to confirmation of the Plan; and (D) granting related relief.

28.     Moreover, the Committee also seeks to schedule additional dates relating to the solicitation process and confirmation of the Plan. Below is a table highlighting the proposed dates in connection with the relief sought herein.  The proposed dates for upcoming hearings include dates requested from the Court in this Motion and are subject to the Court's availability.

| Proposed Schedule for the Combined Plan and Disclosure Statement Solicitation Procedures | |
| --- | --- |
| Voting Record Date | September 25, 2023 |
| Solicitation Commencement Deadline | September 27, 2023 |
| Deadline for Plan Supplement | October 19, 2023 |

16298828/1

| Voting Deadline for Plan | October 26, 2023 at 4:00 p.m. (prevailing Eastern time)[6] |
|---|---|
| Plan Objection Deadline | October 30, 2023 at 4:00 p.m. |
| Deadline to File Voting Tabulations Affidavit | November 1, 2023 |
| Deadline to File Confirmation Brief and Supporting Evidence and Respond to Objections to the Plan | November 7, 2023 at 4:00 p.m. |
| Confirmation Hearing | November 13, 2023 at 11:00 a.m. |

## ARGUMENT

**A.** **The Disclosures in the Plan Should be Approved on an Interim Basis as Containing Adequate Information**

29.     By this Motion, the Committee requests that the Court (a) approve on an interim basis the Plan as containing adequate information for solicitation purposes, (b) approve the solicitation procedures, and (c) approve the Plan on a final basis at the Confirmation Hearing as part of the order confirming the Plan.

30.     After the commencement of a case, a plan proponent may not solicit votes on a chapter 11 plan unless the bankruptcy court has approved the disclosure statement describing such plan as containing "adequate information." See 11 U.S.C. § 1125(b). Section 1125(a) of the Bankruptcy Code provides that "adequate information" means information of a kind and in sufficient detail, as is reasonably practicable, to allow a hypothetical reasonable investor to make an informed judgment about the plan. See 11 U.S.C. § 1125(a). "The determination of what is adequate information is subjective and made on a case-by-case basis." Texas Extrusion Corp. v. Lockheed Corp. (In re Texas Extrusion Corp.), 844 F.2d 1142, 1157 (5th Cir. 1988), cert. denied, 488 U.S. 926 (1988).

---

[6] Unless noted otherwise, all times referenced herein reference prevailing Eastern time.

16298828/1

31.     Courts will consider the particular facts and circumstances of each case in evaluating whether a disclosure statement provides "adequate information" within the meaning of section 1125 of the Bankruptcy Code.  See 11 U.S.C. § 1125(a)(1) ("'[A]dequate information' means information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records[.]"); Oneida Motor Freight, Inc. v. United Jersey Bank, 848 F.2d 414, 417 (3d Cir. 1988) ("From the legislative history of § 1125 we discern that adequate information will be determined by the facts and circumstances of each case."); First Am. Bank of New York v. Century Glove, Inc., 81 B.R.274, 279 (D. Del. 1988) (noting that adequacy of disclosure for a particular debtor will be determined based on how much information is available from outside sources); S. Rep. No. 95-989, at 121 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5907 ("[T]he information required will necessarily be governed by the circumstances of the case.").

32.     The bankruptcy court possesses substantial discretion in determining whether a disclosure statement is adequate. See In re River Village Assocs., 181 B.R. 795, 804 (E.D. Pa. 1995) (finding that the bankruptcy court's approval of disclosure statement was within its "substantial discretion"); see also In re PC Liquidation Corp., 383 B.R. 856, 865 (E.D.N.Y. 2008) ("The standard for disclosure is, thus, flexible and what constitutes 'adequate disclosure' in any particular situation is determined on a case-by-case basis, with the determination being largely within the discretion of the bankruptcy court.") (citations omitted).

33.     Factors considered by a court evaluating the adequacy of a disclosure statement may include: (a) the events leading to the filing of a bankruptcy petition; (b) the relationship of the debtor with its affiliates; (c) a description of the available assets and their value; (d) the anticipated future of the company; (e) the source of information stated in the disclosure statement; (f) the

16298828/1

present condition of the debtor while in chapter 11; (g) claims asserted against the debtor; (h) the estimated return to creditors under a chapter 7 liquidation; (i) the future management of the debtor; (j) the chapter 11 plan or a summary thereof; (k) financial information, valuations, and projections relevant to the creditors' decision to accept or reject the chapter 11 plan; (l) information relevant to the risks posed to creditors under the plan; (m) the actual or projected realizable value from recovery of preferential or otherwise voidable transfers; (n) litigation likely to arise in a non-bankruptcy context; and (o) tax attributes of the debtor.  See, e.g., In re U.S. Brass Corp., 194 B.R. 420, 424-25 (Bankr. E.D. Tex. 1996); In re Scioto Valley Mortg. Co., 88 B.R. 168, 170-71 (Bankr. S.D. Ohio 1988); In re Metrocraft Pub. Servs., Inc., 39 B.R. 567, 568 (Bankr. N.D. Ga. 1984). A plan proponent need not include disclosure with respect to each of the above topics in every case. See, e.g., U.S. Brass Corp., 194 B.R. at 425.

34.     The Plan includes the following key sections and information: (a) an overview of the Plan, including a chart describing the treatment of each Class; (b) a description of the Debtors' businesses prior to the sale of substantially all of their assets; (c) a description of the corporate and capital structure of the Debtors; (d) a description of key events leading to the commencement of the Chapter 11 Cases; (e) information regarding Claims; (f) information regarding the limited exculpation contained in the Plan; (g) a discussion of risk factors affecting the implementation of the Plan; and (h) an overview of the requirements for Confirmation of the Plan. Accordingly, the disclosures in the Plan should be approved as containing "adequate information" under section 1125 of the Bankruptcy Code.

35.     To the extent necessary, the Committee will demonstrate at the Solicitation Procedures Hearing and the Confirmation Hearing that the disclosures in the Plan address the

14

information set forth above in a manner that provides Holders of Claims in the Voting Classes with adequate information within the meaning of section 1125 of the Bankruptcy Code.

**B.      Request for the Confirmation Hearing and Related Deadlines**

36.      Section 1128 of the Bankruptcy Code provides that "[a]fter notice, the court shall hold a hearing on confirmation of a plan" and that "[a] party in interest may object to confirmation of a plan." 11 U.S.C. § 1128; see also Fed. R. Bankr. P. 3017(c) (providing that "[o]n or before the approval of a disclosure statement, the court . . . may fix the date for the hearing on confirmation.").

37.      Section 105(d)(2)(B)(vi) of the Bankruptcy Code expressly authorizes a court to "issue an order . . . that . . . provides that the hearing on approval of the disclosure statement may be combined with the hearing on confirmation of the plan" where the court deems a combined hearing to be "appropriate to ensure that the case is handled expeditiously and economically." See 11 U.S.C. § 105(d)(2)(B)(vi); see also In re Gulf Coast Oil Corp., 404 B.R. 407, 425 (Bankr. S.D. Tex. 2009) ("Section 1125(f) authorizes combined plans and disclosure statements in small business cases and § 105(d) authorizes the court to combine them in other cases."). Pursuant therewith, courts in the Third Circuit have combined hearings on the approval of disclosure statements and confirmation of plans in chapter 11 cases. See, e.g., DNIB Unwind, Inc. (f/k/a BIND Therapeutics, Inc.), Case No. 16-11084 (BLS) (Bankr. D. Del.); In re RadioShack Corp., Case No. 15-10197 (BLS) (Bankr. D. Del.); In re Corinthian Colleges, Inc., No. 15-10952 (KJC) (Bankr. D. Del.); In re Old FOH, Inc. (f/k/a Frederick's of Hollywood, Inc.), Case No. 15-10836 (KG) (Bankr. D. Del.); In re Hipcricket, Inc., Case No. 15-10104 (LSS) (Bankr. D. Del.); In re AFA Investment Inc., Case No. 12-11127 (MFW) (Bankr. D. Del.); In re PQ New York, Inc., Case No. 20-11266 (JTD) (Banrk. D. Del.).

38.     Consistent with the foregoing authority, the Committee respectfully requests that the Court grant its request to conduct the Confirmation Hearing for (i) final approval of the Plan and (ii) confirmation of the Plan, and that the Court schedule the Confirmation Hearing for **November 13, 2023 at 11:00 a.m.**, and set an objection deadline of **October 30, 2023 at 4:00 p.m.**

C.     **Time for Service of the Notice of Confirmation Hearing**

39.     The Committee proposes to serve the notice of the Confirmation Hearing no later than **September 27, 2023** (the "Solicitation Commencement Date").  This will provide creditors and other parties in interest with at least forty-seven (47) days' notice prior to the proposed date of the Confirmation Hearing and twenty-nine (29) days' notice prior to the Plan Objection Deadline.  This is consistent with Bankruptcy Rule 2002(b) which provides that "the clerk, or some other person as the court may direct, shall give the debtor, the trustee, all creditors and indenture trustees not less than 28 days' notice by mail of the time fixed . . . for filing objections and the hearing to consider approval of a disclosure statement." Fed. R. Bankr. P. 2002(b).  The Committee respectfully submits that (a) the proposed form of Confirmation Hearing Notice (as defined below), (b) the notice period provided after service of the Confirmation Hearing Notice, and (c) the service of the notice for the Confirmation Hearing Notice, which will be served on all known Holders of Claims and Equity Interests, and all parties that have requested notice in the Chapter 11 Cases pursuant to Bankruptcy Rule 2002, provide creditors with sufficient notice of the Confirmation Hearing, given the facts and circumstances of the Chapter 11 Cases.

D.     **Establishing Procedures for Solicitation of the Plan**

(i)     Approval of Solicitation Package

40.     Bankruptcy Rule 3017(d) sets forth the materials that must be provided to creditors and equity security holders for the purposes of soliciting their votes and providing adequate notice

of a hearing to confirm a plan of reorganization. Specifically, Bankruptcy Rule 3017(d) provides in relevant part that:

> Upon approval of a disclosure statement — except to the extent that the court orders otherwise with respect to one or more unimpaired classes of creditors or equity security holders—the debtor in possession, trustee, proponent of the plan, or clerk as the court orders shall mail to all creditors and equity security holders, and in a chapter 11 reorganization case shall transmit to the United States trustee,
>
> (1)    the plan or a court-approved summary of the plan;
>
> (2)     the disclosure statement approved by the court;
>
> (3)    notice of the time within which acceptances and rejections of the plan may be filed; and
>
> (4)    any other information as the court may direct, including any court opinion approving the disclosure statement or a court-approved summary of the opinion.
>
> In addition, notice of the time fixed for filing objections and the hearing on confirmation shall be mailed to all creditors and equity security holders in accordance with Rule 2002(b), and a form of ballot conforming to the appropriate Official Form shall be mailed to creditors and equity security holders entitled to vote on the plan.

<u>See</u> Fed. R. Bankr. P. 3017(d).

41.    In accordance with the requirements of Bankruptcy Rule 3017(d), following this Court's conditional approval of the Plan as containing adequate information pursuant to section 1125 of the Bankruptcy Code, the Committee propose to distribute, or cause to be distributed, by first-class mail to each Holder of a Claim in the Voting Classes a Solicitation Package containing the following:

a.    the Plan and all other exhibits annexed thereto, which documents the Committee proposes to distribute;

b.    the Solicitation Procedures Order, excluding the exhibits annexed thereto;

c.    a notice of the Confirmation Hearing, substantially in the form attached as **Exhibit 1** to the Solicitation Procedures Order (the "<u>Confirmation Hearing Notice</u>");

d.      Forms of Ballot for Classes 3, 4, and 5 substantially in the form attached hereto as **Exhibit 2** to the Solicitation Procedures Order, to accept or reject the Plan; and

e.      such other materials as the Court may direct or approve, including any supplemental solicitation materials the Committee may file with the Court.

42.     Furthermore, consistent with sections 1126(f) and (g) of the Bankruptcy Code, the Committee proposes to distribute, or cause to be distributed, by first-class mail to all Holders of Claims in the Unimpaired Classes, as well as the Holders of Unclassified Claims, a package, which shall consist of: (a) the Confirmation Hearing Notice and (b) a notice of nonvoting status, substantially in the form attached hereto as **Exhibit 3** to the Solicitation Procedures Order (the "Notice of Unimpaired Non-Voting Status"). For the avoidance of doubt, the Committee are not soliciting acceptances or rejections to the Plan from Holders of Claims or Equity Interests in the Non-Voting Class since such Creditors and Interest Holders are not entitled to vote on the Plan, as the Non-Voting Class are deemed to have either accepted or rejected the Plan.

43.     Moreover, to the extent that the Office of the United States Trustee, governmental units having an interest in the Chapter 11 Cases or those parties requesting notice pursuant to Bankruptcy Rule 2002 have not otherwise received a Solicitation Package prior to the Solicitation Commencement Date (as defined below), the Committee proposes to distribute, or cause to be distributed, by first-class mail to such parties the following information (collectively, the "Information Package"): (a) the Plan, together with all exhibits annexed thereto, (b) Solicitation Procedures Order, excluding the exhibits annexed thereto, and (c) the Confirmation Hearing Notice.

(ii)     Establishing a Voting Record Date and Approval of Procedures for Distribution of Solicitation Packages

44.     Bankruptcy Rule 3017(d) provides that, for the purposes of soliciting votes to accept or reject a plan of reorganization, "creditors and equity security holders shall include

18

holders of stocks, bonds, debentures, notes, and other securities of record on the date the order

approving the disclosure statement is entered or another date fixed by the court, for cause, after

notice and a hearing." Fed. R Bankr. P. 3017(d).  The Committee proposes that the Court establish

**September 25, 2023**, as the record date (the "Voting Record Date") for purposes of determining:

>(i)      the Holders of Claims and Equity Interests in (a) the Voting Classes, who will
>receive Solicitation Packages and are entitled to vote to accept or reject the Plan, and (b)
>the Non-Voting Class, who will receive a Non-Voting Package and are not entitled to vote
>to accept or reject the Plan, and

>(ii)     whether Claims have been properly assigned or transferred to an assignee pursuant
>to Bankruptcy Rule 3001(e) such that the assignee can vote to accept or reject the Plan as
>the Holder of a Claim. With respect to any transferred Claim, however, the Committee
>proposes that the transferee be entitled to receive a Solicitation Package and cast a Ballot
>on account of the transferred Claim only if the parties have completed all actions necessary
>to affect the transfer of the Claim pursuant to Bankruptcy Rule 3001(e) by the Voting
>Record Date set forth above. The Committee also proposes that the amount of each
>Holder's Claim be determined for solicitation and voting purposes as of the Voting Record
>Date.

45.     The Committee expects that they will complete, or cause to be completed, the

distribution of the appropriate Solicitation Package and Non-Voting Package to all Holders of

Claims within three (3) business days after the Court enters the Solicitation Procedures Order.

46.     The Committee submits that they are not required to mail Solicitation Packages or

other solicitation materials to Holders of Claims that have already been paid in full during the

Chapter 11 Cases or that are authorized to be paid in full in the ordinary course of business pursuant

to an order previously entered by this Court.

47.     The Committee believes that under the procedures set forth above, all parties

entitled to vote to accept or reject the Plan will receive the Solicitation Package, which will include,

among other things, a complete copy of the Plan.  As such, the Committee submits that good cause

exists for implementing the aforementioned procedures.

(iii)    <u>Approval of Form and Manner of Confirmation Hearing Notice</u>

48.    Bankruptcy Rules 2002(b) and 2002(d) require not less than twenty-eight (28) days' notice to all holders of claims and equity interests of the time fixed for filing objections to confirmation of a plan of reorganization and the hearing to consider the confirmation of a plan of reorganization. As described above, all Holders of Claims or Equity Interests will be sent a copy of the Confirmation Hearing Notice in connection with the mailing of the Solicitation Packages, the Non-Voting Packages, and the Information Packages.  The Confirmation Hearing Notice will advise any party wishing to obtain a copy of the Plan to contact undersigned counsel.  In addition, copies of the Plan will be available to be viewed at the Bankruptcy Court's website (http://www.deb.uscourts.gov) by following the directions for accessing the ECF system on such website.

(iv)    <u>Approval of Forms of Ballots and Procedures for Distribution to Holders</u>

49.    Bankruptcy Rule 3017(d) requires the plan proponent to mail a form of ballot to all "creditors and equity security holders entitled to vote on the plan." Fed. R. Bankr. P. 3017(d). The Committee proposes to distribute Ballots to each Holder of a Claim in the Voting Classes. The Ballots are based on Official Form B314 and comply with Bankruptcy Rule 3018(c).  The form of the proposed Ballots that the Committee intends to distribute to Holders of Claims in the Voting Classes is annexed hereto as **Exhibit 2**.  The Ballots will be sent to Holders of Claims in the Voting Classes who are entitled to vote on the Plan.

50.    Notably as set forth hereinabove, Classes 5 and 6 have the option to opt into another class.  Ballots for Holders in Classes 5 and 6 specifically provide for parties to opt into the other class and specifically describes the treatment of Classes for each claim so that the Holder of such Claims can make an informed decision.

20

                (v)     <u>Establishment of the Voting Deadline</u>

51.     Bankruptcy Rule 3017(c) provides that, on or before approval of the Disclosure Statement, the Court shall fix a time within which the Holders of Claims may vote to accept or reject the Plan. See Fed. R. Bankr. P. 3017(c).  The Committee will use reasonable efforts to distribute, or cause to be distributed, the Solicitation Packages by first-class mail no later than the Solicitation Commencement Date.  Based on this schedule, the Committee respectfully requests that the Court establish **October 26, 2023 at 4:00 p.m.** (prevailing Eastern Time) as the deadline by which all Ballots must be properly executed, completed, delivered to and actually received by the Voting Agent (the "<u>Voting Deadline</u>") in order to be counted for voting purposes with respect to the Plan.  Ballots must be returned to the Voting Agent by first class mail postage, personal delivery, or overnight courier, or submitted through the Voting Agent's electronic portal, as discussed herein. No Ballots will be accepted by e-mail, facsimile, or any other electronic format, except as otherwise provided herein.

52.     The proposed Voting Deadline is approximately thirty (30) days after the date of the anticipated entry of the Solicitation Procedures Order and approximately twenty-five (25) days after the Solicitation Commencement Date. The Committee believes that a solicitation period of this length is sufficient to allow each Holder of a Claim in the Voting Classes to make an informed decision to accept or reject the Plan.

                (vi)    Approval of Procedures for Tabulating Acceptances and Rejections of the <u>Plan</u>

53.     The Committee proposes that each Holder of a Claim in the Voting Classes shall be entitled to vote the amount of its Claim as of the Voting Record Date.  For purposes of voting on the Plan, with respect to all Holders of Claims against the Debtors, the Committee proposes that the amount of a Claim used to tabulate acceptance or rejection of the Plan should be as follows:

a.      The amount of the Claim listed in the Debtors' schedules of assets and liabilities; unless (i) such Claim is scheduled but listed (x) as contingent, unliquidated, undetermined, or disputed or (y) in the amount of $0.00, (ii) a Proof of Claim has been timely filed (or otherwise deemed timely filed by the Court under applicable law), (iii) such Claim has been satisfied, (iv) a Proof of Claim has been asserted in the amount of $0, or (iv) such Claim has been resolved pursuant to a stipulation or order entered by the Court.

b.      The undisputed, non-contingent and liquidated amount specified in a Proof of Claim timely filed with the Court or the Voting Agent (or otherwise deemed timely filed by the Court under applicable law) to the extent such Proof of Claim has not been amended or superseded by another Proof of Claim filed on or before the Voting Deadline and is not the subject of an objection (or, if such Claim has been resolved pursuant to a stipulation or order entered by the Court, or otherwise resolved by the Court, the amount set forth in such stipulation or order).

c.      If a Proof of Claim timely filed with the Court or the Voting Agent (or otherwise deemed timely filed by the Court under applicable law) has been amended by a later Proof of Claim filed on or before the Voting Deadline, the later filed amending claim shall be entitled to vote in a manner consistent with these tabulation rules, and the earlier filed Proof of Claim shall be disallowed for voting purposes, regardless of whether the Debtors have objected to such amended claim.

d.       If a Proof of Claim has been timely filed with the Court or the Voting Agent (or otherwise deemed timely filed by the Court under applicable law) and such claim is asserted in the amount of $0.00, such claim shall not be entitled to vote.

e.      If a claim is Allowed under the Plan, such claim is allowed for voting purposes in the deemed Allowed amount set forth in the Plan.

f.      The amount temporarily allowed by the Court for voting purposes pursuant to Bankruptcy Rule 3018.

g.      Except as otherwise provided in subsection (c) hereof, a Ballot cast by an alleged Creditor who has timely filed a Proof of Claim in a wholly unliquidated, unknown, or uncertain amount that is not the subject of a claim objection filed on or before the Voting Deadline as well as claims scheduled as contingent, unliquidated, or disputed (without a corresponding filed claim) shall be counted in determining whether the numerosity requirement of section 1126(c) of the Bankruptcy Code has been met, and shall be ascribed a value of one dollar ($1.00) for voting purposes only in determining whether the aggregate Claim amount requirement of section 1126(c) of the Bankruptcy Code has been met.

h.      Except as otherwise provided in subsection (c) hereof, if a Creditor casts a Ballot and has timely filed a Proof of Claim (or has otherwise had a Proof of Claim deemed timely filed by the Court under applicable law), but the Creditor's Claim is the subject of a claim objection filed by the Voting Deadline, the Committee requests, in accordance with Bankruptcy Rule 3018(a), that the Creditor's Ballot not be counted.

i.      Notwithstanding subsection (h) hereof and except as otherwise provided in subsection (c) hereof, if the Committee has requested by motion at least twelve (12) business days prior to the Confirmation Hearing that a Claim be reclassified and/or allowed in a fixed, reduced amount pursuant to a claim objection to such Claim, the Ballot of the Holder of such Claim shall be counted in the reduced amount requested by the Committee and/or in the requested category.

54.     The Committee further requests that the following voting procedures and standard assumptions be used in tabulating the Ballots:

a.      For purposes of the numerosity and amount requirements of section 1126(c) of the of the Bankruptcy Code, to the extent that it is possible to do so for the Voting Classes, separate Claims held by a single Creditor against one or more of the Debtors in the Voting Classes will be aggregated as if such Creditor held a single Claim against one or more of the Debtors in such Voting Classes, and the votes related to those Claims shall be treated as a single vote on the Plan.

b.      Creditors with multiple Claims within the Voting Classes must vote all such Claims in the Voting Class to either accept or reject the Plan and may not split their vote(s). Accordingly, an individual Ballot that partially rejects and partially accepts the Plan on account of multiple Claims within the Voting Classes will not be counted.

c.      In the event a Claim is transferred after the transferor has executed and submitted a Ballot to the Voting Agent, the transferee of such Claim shall be bound by any such vote (and the consequences thereof) made by the Holder of such transferred Claim as of the Voting Record Date.

d.      The delivery of a Ballot will be deemed made only when the Voting Agent has actually received the original, executed Ballot.

e.      If a Holder of a Claim casts more than one Ballot voting the same Claim(s) before the Voting Deadline, the last properly executed Ballot received before the Voting Deadline shall supersede and revoke any earlier received Ballot, and only the last Ballot received before the Voting Deadline shall be counted.

f.      If a Holder of a Claim casts multiple Ballots on account of the same Claim or Class of Claims, which are received by the Voting Agent on the same day, but which are voted inconsistently, such Ballots shall not be counted.

g.      Unless otherwise provided, any party who has delivered a valid Ballot for the acceptance or rejection of the Plan may withdraw such acceptance or rejection by delivering a written notice of withdrawal to the Voting Agent at any time prior to the Voting Deadline. To be valid, a notice of withdrawal must (i) contain the description of the Claim(s) to which it relates, and the aggregate principal amount represented by such

Claim(s), (ii) be signed by the withdrawing party in the same manner as the Ballot being withdrawn, and (iii) contain a certification that the withdrawing party owns the Claim(s) and possesses the right to withdraw the vote sought to be withdrawn. The Committee intends to consult with the Voting Agent to determine whether any withdrawals of Ballots were received and whether the requisite acceptances of the Plan have been received. The Committee expressly reserves the right to contest the validity of any such withdrawals of Ballots.

h.      Subject to any contrary order of the Court, the Committee reserves the right to reject any and all Ballots that are not in proper form.

i.      Subject to any contrary order of the Court, the Committee reserves the right to waive any defects, irregularities or conditions of delivery as to any particular Ballot, including failure to timely file such Ballot.

j.      Unless otherwise ordered by the Court, any defects or irregularities in connection with deliveries of Ballots must be cured within such time as the Committee (or the Court) determines, and delivery of such Ballots will not be deemed to have been made until such irregularities have been cured or waived.

k.      Neither the Committee nor any other person or entity will be under any duty to provide notification of defects or irregularities with respect to deliveries of Ballots, nor will any such party incur any liability for failure to provide such notification. Ballots previously furnished (and as to which any irregularities have not theretofore been cured or waived) will not be counted (except as set forth in subsection (g) above).

l.      If no Holders of Claims eligible to vote in the Voting Classes vote to accept or reject the Plan, the Plan and will be deemed accepted by the Holders of such Claims in such Class.

55.      In addition, the Committee requests that, to the extent a Holder of a Claim in the Voting Classes has filed (i) duplicate Proofs of Claim with respect to a single Claim against one or more the Debtors, or (ii) Proofs of Claim amending previous Proofs of Claim with respect to one or more of the Debtors, such Holder of a Claim shall be entitled to receive only one Solicitation Package and one Ballot for voting such Claim, whether or not the Committee has objected to such Claim(s).

56.      Notwithstanding the foregoing, the following types of Ballots will not be counted in determining whether the Plan has been accepted or rejected:

a.      any Ballot that is otherwise properly completed, executed, and timely returned to the Voting Agent, but does not indicate an acceptance or rejection of the Plan, or indicates both an acceptance and a rejection of the Plan;

b.      any Ballot received after the Voting Deadline, except in the Movant's discretion or by order of this Court;

c.      any Ballot containing a vote that this Court determines, after notice and a hearing, was not solicited or procured in good faith or in accordance with the applicable provisions of the Bankruptcy Code;

d.      any Ballot that is illegible or contains insufficient information to permit the identification of the Creditor;

e.      any Ballot that partially accepts, or partially rejects, the Plan;

f.      any Ballot cast by a Person or Entity that does not hold a Claim in the Voting Classes;

g.      any unsigned Ballot or Ballot without an original signature, except in the Committee's discretion; and

h.       any Ballot transmitted to the Voting Agent by facsimile, e-mail, or other electronic means, unless otherwise permitted.

57.    Any Class of Claims that does not have a Holder of an Allowed Claim or a Claim that has been temporarily allowed by the Court as of the date of the Confirmation Hearing will be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan, and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to Bankruptcy Code section 1129(a)(8) of the Bankruptcy Code. Parties should not return any stock certificates, debt instruments, or other evidence of their Claim(s) with their Ballot(s).

58.    The Committee requests that the Court fix **November 1, 2023** as the deadline for the Voting Agent to file its affidavit verifying the results of its voting tabulations reflecting the votes cast to accept or reject the Plan.

59.    The Committee submits that the proposed tabulation rules and other related vote tabulation procedures set forth above will establish a fair and equitable voting process and, therefore, should be approved.

25

**E.      The Confirmation Hearing Notice Should be Approved**

60.     The Committee is requesting that the Court set the Confirmation Hearing to consider confirmation of the Plan for **November 13, 2023 at 11:00 a.m.**

61.     This will provide the Committee with sufficient time to solicit votes on the Plan and to provide adequate notice of the Confirmation Hearing to all parties in interest. The Committee also requests that the Court order that the Confirmation Hearing may be continued from time to time without further notice to parties in interest.

62.     The Committee proposes to provide all known creditors and interest holders, parties filing a notice of appearance in the Chapter 11 Cases, and governmental units having an interest in the Chapter 11 Cases (the "Notice Parties") with a copy of the Confirmation Hearing Notice as part of the Solicitation Package, Non-Voting Package, or Information Package, as applicable, and as set forth above.

63.     Bankruptcy Rule 3020(b) provides that objections to confirmation of a proposed plan of reorganization must be filed with the bankruptcy court and served on the debtor, the trustee, any committee appointed under the Bankruptcy Code, and on any other entity designated by the bankruptcy court, within a time specified by the bankruptcy court. In addition, pursuant to Local Rule 9006-1(c), the deadline for objections shall be no later than seven (7) days before the hearing date. See Del. Bankr. L.R. 9006-1.

64.     Accordingly, the Committee proposes that the Court fix **October 30, 2023 at 4:00 p.m.** (prevailing Eastern Time) (the "Plan Objection Deadline") as the deadline for filing and serving written objections (a "Plan Objection") to Confirmation of the Plan (including any supporting memoranda).  The Committee believes that the Plan Objection Deadline will permit Holders of Claims and Equity Interests and other parties in interest sufficient time to review the

26

Plan, and file any Plan Objections, if necessary.  As such, the Committee will provide known Creditors and Equity Interest Holders with twenty-eight (28) days' notice of the Plan Objection Deadline, satisfying Bankruptcy Rule 2002(b).

65.     The Committee also requests that the Court direct that Plan Objections, if any, shall (i) be made in writing; (ii) state the name and address of the objecting party and the nature of the Claim or Equity Interest of such party; (iii) state with particularity the legal and factual basis and nature of any Plan Objection; and (iv) be filed with the Court, together with proof of service, and served via electronic mail so that they are received on or before the Plan Objection Deadline by the following parties: : (i) Kathryn A. Coleman, Esquire and Christopher Gartman, Esquire (email: Katie.coleman@hugheshubbard.com and Chris.gartman@hugheshubbard.com) and (ii) Michael Nestor, Esquire, Andrew Magaziner, Esquire, and Ashley Jacobs, Esquire (email: mnestor@ycst.com,  amagaziner@ycst.com,  and Ajacobs@ycst.com), (b) counsel to the Committee: (i) Adam C. Rogoff, Esquire and Rose Bagley, Esquire (email: arogoff@kramerlevin.com and rbagley@kramerlevin.com) and (ii) Jeffrey R. Waxman, Esquire and Eric J. Monzo, Esquire (email: jwaxman@morrisjames.com and emonzo@morrisjames.com), (c) counsel to Cerberus: Michael L. Tuchin and David A. Fidler (email: mtuchin@ktbslaw.com and dfidler@ktbslaw.com), and (d) Office of the United States Trustee, Jane Leamy, Esquire (email: jane.m.leamy@usdoj.gov).  The Committee further proposes that it, or any other party supporting Confirmation of the Plan, be afforded an opportunity to file a response to any Plan Objections no later than **October 30, 2023 at 4:00 p.m.**, which is nine (9) days prior to the proposed date of the Confirmation Hearing.

16298828/1

66.     At that time, the Committee will also file its proposed findings of fact and conclusions of law with a form of order confirming the Plan, and it may file any memorandum of law in support of Confirmation of the Plan.

67.     The Committee respectfully submits that the foregoing schedule is in the best interests of Holders of Claims and Equity Interests and other parties in interest as it provides sufficient notice of the Committee's anticipated timeline for emerging from the Chapter 11 Cases and comports with the requirements of the Bankruptcy Rules and the Local Rules and request that the Court approve such service and notice as adequate.

**F.     Additional Process and Procedure**

     (i)     <u>Non-Substantive Changes</u>

68.     The Committee requests authorization to make non-substantive changes to the Plan, the Ballots, the Notices and any related documents without further order of the Court, including, without limitation, changes to correct typographical and grammatical errors and to make nonmaterial conforming changes among the Plan, and any other materials in the Solicitation Packages, the Non-Voting Packages, and/or the Information Packages prior to the distribution of such materials.

     (ii)     <u>Copies and Review of Documents</u>

69.     Copies of the Plan and all pleadings and orders of the Court are publicly available for a fee via PACER at: http://www.deb.uscourts.gov. Such documents and pleadings may also be obtained from the undersigned counsel for the Committee upon written request.

**<u>NOTICE</u>**

70.     Notice of this Motion shall be provided on the date hereof via U.S. first class mail to: (i) the Debtors, (ii) Cerberus Business Finance, LLC, as administrative agent and collateral

agent for the Prepetition Secured Lenders, (iii) the U.S. Trustee; (iv) the Internal Revenue Service; (v) the United States Attorney's Office for the District of Delaware; and (vi) all parties that have requested notice pursuant to Bankruptcy Rule 2002 and Local Rule 2002-1(b).  In light of the nature of the relief requested, the Committee submits that no other or further notice is necessary.

## **CONCLUSION**

WHEREFORE, the Committee respectfully requests that the Court enter an order, pursuant to sections 105, 1123(a), 1124, 1125, 1126, 1128, and 1129 of the Bankruptcy Code, Bankruptcy Rules 2002, 3003, 3016, 3017, 3018, 3019, 3020, and 9006, and Local Rules 3017-1, 3017-2, and 9006-1, substantially in the form of **Exhibit A**: (A) approving the Plan on an interim basis as containing adequate information for solicitation purposes; (B) scheduling the Confirmation Hearing, and related dates, including establishing a Voting Record Date, the Voting Deadline, and the deadline to object to the Plan; (C) approving procedures for solicitation and distribution of the Solicitation Packages; (D) approving the Solicitation Packages and establishing procedures for the solicitation of the Plan, including approving (i) the forms of ballot; (ii) the forms of notice of non-Voting Status (iii) the form of notice to Disputed Claim Holders; and (iv) the notice of the Confirmation Hearing, and the Notice of Approval of Solicitation and Voting Procedures; (E) approving the procedures for tabulating acceptances and rejections of the Plan; and (F) granting such other and further related relief as is

[*remainder of page left intentionally blank*]

just and appropriate.

Dated: September 8, 2023
Wilmington, Delaware

|  | **MORRIS JAMES LLP** |
|---|---|
|  | */s/ Jeffrey R. Waxman* |
|  | Jeffrey R. Waxman (DE Bar No. 4159) |
|  | Eric J. Monzo (DE Bar No. 5214) |
|  | 500 Delaware Avenue, Suite 1500 |
|  | Wilmington, DE 19801 |
|  | Email: jwaxman@morrisjames.com |
|  | Email: emonzo@morrisjames.com |
|  |  |
|  | -and- |
|  |  |
|  | Adam C. Rogoff, Esquire |
|  | Rose Hill Bagley, Esquire |
|  | **KRAMER LEVIN NAFTALIS & FRANKEL LLP** |
|  | 1177 Avenue of the Americas |
|  | New York, NY 10036 |
|  | Email: arogoff@kramerlevin.com |
|  | Email: rbagley@kramerlevin.com |
|  |  |
|  | *Counsel to the Official Committee of Unsecured Creditors* |