# EXHIBIT B

**Exhibit B**

**Liquidation Analysis**

## I. INTRODUCTION

The Plan Proponents, with the assistance of their restructuring, legal, and financial advisors, have prepared this hypothetical liquidation analysis (the "**Liquidation Analysis**") in connection with the Plan pursuant to chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").[1]

Under the "best interests" of creditors test set forth in section 1129(a)(7) of the Bankruptcy Code, the Bankruptcy Court may not confirm a chapter 11 plan unless the plan provides each holder of an impaired Claim against or Interest in the Debtors either (i) has accepted the Plan or (ii) will receive or retain under the Plan property of a value, as of the Effective Date, that is not less than the amount that such Person would receive if the Debtors were liquidated under chapter 7 of the Bankruptcy Code. To demonstrate that the proposed Plan satisfies the "best interests" of creditors test under section 1129(a)(7) of the Bankruptcy Code, the following Liquidation Analysis was prepared to compare hypothetical recoveries under a chapter 7 liquidation to the estimated recoveries under the chapter 11 liquidation contemplated in the Plan.

**Statement of Limitations**

The determination of the costs of, and potential litigation proceeds from, both the proposed chapter 11 plan of liquidation and a hypothetical liquidation of the Debtors' assets in a chapter 7 case is an uncertain process involving the extensive use of significant estimates and assumptions that, although considered reasonable by the Plan Proponents together with their legal and financial advisors, are inherently subject to significant business, economic, and competitive uncertainties and contingencies beyond the control of the Plan Proponents and their advisors. Inevitably, some assumptions in the Liquidation Analysis may not materialize, and unanticipated events and circumstances could materially affect the ultimate results in both scenarios. The Liquidation Analysis was prepared for the sole purpose of generating a reasonable good faith estimate of the creditor recoveries that may result under the Plan and under a hypothetical chapter 7 bankruptcy scenario. The Liquidation Analysis is not intended and should not be used for any other purpose. The underlying financial information in the Liquidation Analysis was not compiled or examined by independent accountants in accordance with standards promulgated by the American Institute of Certified Public Accountants.

THE LIQUIDATION ANALYSIS IS A HYPOTHETICAL EXERCISE THAT HAS BEEN PREPARED FOR THE SOLE PURPOSE OF PRESENTING A REASONABLE GOOD FAITH ESTIMATE OF THE PROCEEDS THAT WOULD BE REALIZED IF THE DEBTORS WERE LIQUIDATED IN ACCORDANCE WITH CHAPTER 7 OF THE BANKRUPTCY CODE AS OF THE PLAN EFFECTIVE DATE. THE LIQUIDATION ANALYSIS IS NOT INTENDED AND SHOULD NOT BE USED FOR ANY OTHER PURPOSE. THE LIQUIDATION ANALYSIS DOES NOT PURPORT TO BE A VALUATION OF THE DEBTORS' ASSETS AS A GOING CONCERN, AND THERE MAY BE A SIGNIFICANT DIFFERENCE BETWEEN THE LIQUIDATION ANALYSIS AND THE VALUES THAT MAY BE REALIZED OR CLAIMS GENERATED IN AN ACTUAL LIQUIDATION. NOTHING CONTAINED IN THE LIQUIDATION ANALYSIS IS INTENDED TO BE, OR CONSTITUTES, A CONCESSION, ADMISSION, OR ALLOWANCE OF ANY CLAIM AGAINST THE DEBTORS. THE ACTUAL AMOUNT OR PRIORITY OF ALLOWED CLAIMS IN THE CHAPTER 11 CASES ARE CURRENTLY UNKNOWN AND COULD MATERIALLY DIFFER FROM THE AMOUNTS ILLUSTRATED HEREIN. THERE CAN BE NO ASSURANCE THAT ACTUAL

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Jointly Proposed Combined Disclosure Statement and Plan of Liquidation.

RESULTS WOULD NOT VARY MATERIALLY FROM THE HYPOTHETICAL RESULTS PRESENTED IN THE LIQUIDATION ANALYSIS.

**Basis of Presentation**

The Liquidation Analysis is based on an estimate of assets and liabilities as of September 30, 2023 (except as otherwise indicated). As noted above, the actual assets available to the Debtors' Estates and expenses arising under both the Plan scenario and the chapter 7 liquidation scenario may differ from the amounts illustrated in this Liquidation Analysis.

The Plan Proponents have neither fully evaluated all claims filed against the Debtors or adjudicated such claims before the Bankruptcy Court. Accordingly, the amount and priority of the final Allowed Claims against the Debtors' Estates may differ materially from the claim amounts used in the Liquidation Analysis.

In preparing the Liquidation Analysis, the Plan Proponents together with their legal and financial advisors reviewed the Debtors' amended Schedules, various payments made pursuant to court orders (e.g., critical vendor payments), obligations assumed by the Purchaser (e.g., Go-Forward Creditors' claims, 503(b)(9) Claims, contract cures and certain employee claims) and other sources of information in order to assess the potential population of allowed claims against the Debtors. Note that the Liquidation Analysis was prepared prior to the August 15, 2023 Governmental Unit Bar Date, and thus may exclude certain unfiled or unknown governmental claims and such claims maybe material.

The Liquidation Analysis compares the Plan to the hypothetical chapter 7 liquidation under two scenarios: a low recovery scenario (the "**Low**") and a high recovery scenario (the "**High**").

**Conversion Date and Appointment of Chapter 7 Trustee**

The Liquidation Analysis has been prepared assuming that the Debtors' chapter 11 cases are converted to chapter 7 cases on or about September 30, 2023 (the "**Chapter 7 Conversion Date**"). It is assumed that, on the Chapter 7 Conversion Date, the Bankruptcy Court would appoint a chapter 7 trustee who would oversee the liquidation of the Debtors' Estates, during which time any of the Debtors' remaining assets would be monetized, and all of the Debtors' cash proceeds, net of any liquidation-related costs and other Administrative Expenses and Priority Claims, would be distributed in order to satisfy Allowed Claims and interests in accordance with the priority scheme set forth in the Bankruptcy Code.

**Substantively Consolidated Liquidation**

Consistent with the Plan, the Liquidation Analysis assumes that the Debtors would be liquidated in a jointly administered and would be substantively consolidated for distribution purposes. Therefore, the Liquidation Analysis assumes that each claim is filed against Stanadyne LLC and claims against multiple Debtors will be disallowed.  Consistent with the Plan, no Distributions are made on account of intercompany claims. In the event that the Debtors were to be liquidated in separately administered chapter 7 cases, the administrative costs to the Debtors in each of the cases, including professional fees, chapter 7 trustee fees, and the Debtors' operational costs would likely be higher than if the cases were consolidated.

**Values**

Both the Plan and a chapter 7 proceeding would result in the complete liquidation of the Debtors. As such, unless otherwise stated, the Liquidation Analysis is based on estimated recoveries under the Plan, as adjusted for the impact of liquidating under a chapter 7 process.

The Plan Proponents believe that a chapter 7 liquidation would in general result in lower recoveries due to a number of factors, including but not limited to higher chapter 7 trustee fees vs. the fees to be charged by the Liquidating Trustee and higher estimated professional fees under the chapter 7 liquidation. In addition, it is anticipated that there is a lower likelihood under the chapter 7 liquidation that the Estate would be able to retain the services of certain individuals with the institutional knowledge necessary to more efficiently wind-down the Estate, as such the estimated professional fees under the chapter 7 liquidation are anticipated to be higher due to this potential inefficiency.

**Additional Global Notes and Assumptions**

The Liquidation Analysis should be read in conjunction with the following notes and assumptions:

1. *Chapter 7 liquidation costs and length of liquidation process.* The Plan Proponents have assumed that liquidation would occur over approximately 12 months in order to pursue an orderly monetization of the Estate's remaining assets, including the pursuit of Causes of Action, as well as to reconcile claims, arrange distributions and otherwise administer and close the Estates. In an actual chapter 7 liquidation, the wind-down process and time-period could vary significantly, thereby impacting recoveries. For example, it is possible that it may require a longer period of time to monetize certain assets, including the Causes of Action, and it is possible that certain Priority, Contingent, and other claims, litigation, and delays in the final determination of Allowed Claims could substantially impact both the timing and amount of the distribution of the asset proceeds to creditors. Accordingly, there can be no assurance that the values reflected in the Liquidation Analysis would be realized if the Debtors were, in fact, to undergo such a liquidation.

   Pursuant to section 726 of the Bankruptcy Code, the Allowed Administrative Expenses incurred by the chapter 7 trustee, including expenses associated with selling or otherwise monetizing the Debtors' assets, the chapter 7 trustee professionals fees would be entitled to payment in full prior to any distributions to holders of Administrative Expense Claims and Priority Claims. The estimates used in the Liquidation Analysis for the chapter 7 trustee are pursuant to the fee guidelines in section 326(a) of the Bankruptcy Code. The estimate used in the Liquidation Analysis for these expenses calculates to an approximate 3.8% fee payable to a chapter 7 trustee based upon estimated proceeds available for distribution.

2. *Certain exclusions and assumptions.* The Debtors' 2022 and 2023 tax returns have not been prepared or filed, as such priority tax obligations, if any, may not have been fully factored into this Liquidation Analysis. Once fully determined and adjudicated, the final amount of Allowed Priority Claims could have a material impact on the potential recoveries illustrated herein. Additionally, this Liquidation Analysis also does not include recoveries resulting from any potential Causes of Action. Additionally, no value has been ascribed for the potential sale of the property located in Windsor, CT.  Any potential environmental claims have been excluded from this analysis, as they are unknown, given the Governmental Bar Date has not passed at the time this analysis was prepared.

## II. <u>CONCLUSION</u>

**THE PLAN PROPONENTS HAVE DETERMINED, AS SUMMARIZED IN THE FOLLOWING LIQUIDATION ANALYSIS, THAT CONFIRMATION OF THE PLAN WILL PROVIDE CREDITORS WITH A RECOVERY THAT IS NOT LESS THAN WHAT THEY MAY OTHERWISE RECEIVE IN CONNECTION WITH A LIQUIDATION OF THE DEBTORS UNDER CHAPTER 7 OF THE BANKRUPTCY CODE, AND AS SUCH BELIEVE THAT THE PLAN SATISFIES THE REQUIREMENT OF 1129(A)(7) OF THE BANKRUPTCY CODE.**

## III. LIQUIDATION ANALYSIS

| Stanadyne LLC - Liquidation Analysis | | | | | |
|---|---|---|---|---|---|
| | | **Chapter 7 Plan** | | **Chapter 11 Plan** | |
| | | **Low** | **High** | **Low** | **High** |
| **Proceeds** | | | | | |
| Initial Distribution Fund | | $ 2,625,000 | $ 2,625,000 | $ 2,625,000 | $ 2,625,000 |
| Trust Funding Amount | | 375,000 | 375,000 | 375,000 | 375,000 |
| Causes of Action[1] | | TBD | TBD | TBD | TBD |
| **Total Proceeds Available for Distribution** | | **$ 3,000,000** | **$ 3,000,000** | **$ 3,000,000** | **$ 3,000,000** |
| | | | | | |
| **Expenses** | | | | | |
| Est. Wind-Down Expenses | | $ (675,750) | $ (563,250) | $ (455,000) | $ (380,000) |
| | | | | | |
| **Net Proceeds Available After Wind-Down Expenses** | | **$ 2,324,250** | **$ 2,436,750** | **$ 2,545,000** | **$ 2,620,000** |
| | **Est. Claims** | | | | |
| **Administrative Claims[2]** | | | | | |
| Total Est. Administrative Claims | $14.4M - $20.0M | $ 20,000,000 | $ 14,350,000 | $ 20,000,000 | $ 14,350,000 |
| **Recovery** | **14.4M - 20.0M** | **20,000,000** | **14,350,000** | **20,000,000** | **14,350,000** |
| *Recovery %* | | *100.0%* | *100.0%* | *100.0%* | *100.0%* |
| | | | | | |
| **Priority Claims** | | | | | |
| Est. Priority Claims | $0.0M - $1.7M | $ 1,700,000 | $  - | $ 1,700,000 | $  - |
| **Recovery** | **0.0M - 1.7M** | **1,700,000** | **-** | **1,700,000** | **-** |
| *Recovery %* | | *100.0%* | *-* | *100.0%* | *-* |
| | | | | | |
| **General Unsecured Claims** | | | | | |
| PBGC | $15.5M | $ 15,538,178 | $ 15,538,178 | $ 15,538,178 | $ 15,538,178 |
| Est. SERP | 4.2M - 7.1M | 7,100,000 | 4,200,000 | 7,100,000 | 4,200,000 |
| Est. Other GUC Claims (excl. Cerberus Deficiency Claim) | 4.0M - 9.9M | 9,900,000 | 4,000,000 | 9,900,000 | 4,000,000 |
| Est. Executory Contract Rejections | 1.0M - 3.0M | 3,000,000 | 1,000,000 | 3,000,000 | 1,000,000 |
| Total Est. General Unsecured Claims | $25.1M - $35.5M | $ 35,538,178 | $ 24,738,178 | $ 35,538,178 | $ 24,738,178 |
| **Recovery** | | **624,250** | **2,436,750** | **845,000** | **2,620,000** |
| *Recovery %* | | *1.8%* | *9.9%* | *2.4%* | *10.6%* |

1. Causes of Action are further described in the Plan. This analysis has not ascribed values to these claims due to their speculative nature. While Cerberus does not participate in the Initial Distribution Fund, any distributions made by the Liquidating Trust to its beneficiaries from any Causes of Action or other assets of the Liquidating Trust, other than the amount per the Initial Distribution Fund, shall be distributed pro rata to all beneficiaries of the Liquidating Trust, including Cerberus on account of the Cerberus Deficiency Claim, which amount was set at $87,252,851.11 pursuant to the Term Sheet.
2. Paid Pursuant to the Asset Sale Transaction.

## IV. GENERAL ASSUMPTIONS AND NOTES

## ESTIMATED PROCEEDS:

1. **Initial Distribution Fund**

   Initial Distribution Fund means $2,625,000 available for payment of all Allowed Claims other than the Cerberus Deficiency Claim.

2. **Trust Funding Amount**

   The amount stipulated in the settlement Term Sheet and approved per the Sale Order entered on July 11, 2023 [Docket No. 443], to fund the operation of the Liquidating Trust.

3. **Causes of Action**

   Liquidating Trust Assets, including the Estates' Causes of Action, remain Assets of the Debtors pursuant to the settlement Term Sheet. Such Estate Causes of Action will be transferred to and vested in the Liquidating Trust pursuant to the Plan. The Estates' Causes of Action include Insider Avoidance Actions and Non-Go-Forward Commercial Tort Claims which are subject to insurance policies that carry a maximum of $10,000,000 in available insurance coverage. While certain potential Estates' Causes of Action may exist, no value has been assigned to this item in this Liquidation Analysis, due to the significant uncertainty surrounding this contingent asset. There are no assurances that any of the Estates' Causes of Action would be pursued by the chapter 7 trustee or the Liquidating Trustee.

   While pursuant to the settlement Term Sheet, Cerberus does not participate in the Initial Distribution Fund, any distributions made by the Liquidating Trust to its beneficiaries on account of any Causes of Action or other assets of the Liquidating Trust, other than the amount per the Initial Distribution Fund, shall be distributed pro rata to all beneficiaries of the Liquidating Trust, including Cerberus on account of the Cerberus Deficiency Claim.

## ESTIMATED WIND-DOWN EXPENSES AND FEES:

4. **Estimated Wind-Down Expenses**

   Under both scenarios we assume a 12-month wind-down period where professional fees and expenses are incurred. A description of the assumptions used to estimate total wind-down expenses under the hypothetical a chapter 7 liquidation and the chapter 11 liquidation assumed in the Plan are as follows:

   - **Est. Chapter 7 Trustee Fees:** The chapter 7 trustee fees are estimated at approximately 3.8% of gross proceeds available for distribution, which is consistent with the estimated amount of assets available for distribution and the chapter 7 trustee fee guidelines set forth in Section 326(a) of the Bankruptcy Code.

   - **Est. Chapter 7 Professional Fees:** Assumes chapter 7 professional fees are 50% higher than the amount estimated chapter 11 professionals. As previously discussed, there are certain inefficiencies anticipated under chapter 7, which would likely increase the costs as compared to the costs anticipated under the Plan. Chapter 7 professional

fees include the cost of attorneys, accountants, and other professionals that the chapter 7 trustee would likely retain to assist in the liquidation process.

- **Est. Wind-Down Professional Fees (Chapter 11 Liquidation):** Per the settlement Term Sheet, the Liquidating Trustee shall be compensated as follows: (a) a quarterly fee of $20,000 plus (b) cash in an amount equal to 1.5% of the net proceeds of the Liquidating Trust litigation recoveries. Additionally, it is anticipated that the Liquidating Trustee will retain certain professionals to assist with claims reconciliation, asset recoveries, and other wind-down activities, as well as legal, tax, accounting and other administrative tasks associated with the wind-down.

- In both chapter 7 and chapter 11 scenarios, the Liquidation Analysis assumes that litigation counsel is engaged by the chapter 7 trustee or Liquidating Trustee, as applicable, on a contingency fee basis to pursue the Estates' Causes of Action. Accordingly, estimated litigation professional fees in both scenarios exclude any costs associated with litigation counsel pursuing these potential actions.

## ESTIMATED CREDITOR RECOVERIES:

5. **Administrative Claims (Paid Pursuant to the Asset Sale Transaction)**

Pursuant to the Asset Purchase Agreement, Term Sheet and Sale Order, the Purchaser has agreed to assume certain administrative liabilities that are subject to ongoing reconciliation and thus an estimated range of values is included in this Liquidation Analysis.

- **Est. 503(b)(9):** The Purchaser shall assume claims made under section 503(b)(9) of the Bankruptcy Code to the extent not paid by the Sellers at or prior to the Closing Date, which occurred on July 31, 2023, and in an amount no greater in the aggregate than an amount equal to (1) $1,500,000, less (2) any amounts paid by the Sellers for such Liabilities at or prior to the Closing Date, except, in the case of each of clauses 1.3(c)(i) and 1.3(c)(ii) in the Asset Purchase Agreement, expressly excluding all Liabilities set forth on Schedule 1.3(c) to the Asset Purchase Agreement. Based on estimates, which are subject to change, as of the Closing Date, these claims were estimated to be below the $1,500,000 cap.

- **Est. Contract Cures:** The Purchaser shall assume all Determined Cure Costs with respect to any Assigned Contract as defined in the Asset Purchase Agreement. The amount reflected in the Liquidation Analysis is based on the available information at the time of the preparation of this Liquidation Analysis and is subject to change.

- **Est. Post Petition Accounts Payable:** The Purchaser shall assume undisputed post-Petition Date accrued trade payables of the Sellers incurred in the Ordinary Course of Business with respect to the Purchased Assets or Designation Rights Assets to the extent not paid by the Sellers at or prior to the Closing Date and in an amount no greater in the aggregate than an amount equal to (1) $12,000,000, less (2) any amounts paid by the Sellers for such Liabilities at or prior to the Closing Date. Based on the latest estimates, which are subject to change, as of the July 31, 2023 Closing Date these payables were estimated to be below the $12,000,000 cap.

- **Est. Employee Claims:** Pursuant to the Sale Order, the Purchaser shall assume all Liabilities arising after the Petition Date with respect to wages and salaries, in each case, earned and accrued in the ordinary course of business with respect to the Sellers' employees as of the Closing Date to the extent not previously paid by the Sellers and not in excess of an amount equal to $3,500,000. Based on the latest estimates, which are subject to change, as of the July 31, 2023 Closing Date, these claims were estimated to be below the $3,500,000 cap.

6. **Priority Claims**

Pursuant to section 507(a) of the Bankruptcy Code, a **"Priority Claim"** is entitled to priority in payment, that is not an Administrative Expense Claim or a Priority Tax Claim. **"Priority Tax Claim"** means a claim or portion of a Claim for which priority is asserted under section 507(a)(8) of the Bankruptcy Code.

At the time this Liquidation Analysis was prepared, the amount of any potential Allowed Priority Tax Claims and Allowed Priority Non-Tax Claims is uncertain. Based on the Debtors' claim register, approximately 80 claims were filed by various claimants, including potential Claims of taxing authorities, employees, executory contracts, trade claimants, and other governmental agencies. Additionally, the validity of these potential asserted claims are unknown at this time. Furthermore, additional Priority Tax Claims and Priority Non-Tax Claims may be asserted prior to the Governmental Bar Date, including potential governmental entity claims related to the Debtors property located in Windsor, CT. An abandonment motion entered on August 2, 2023 [Docket No. 486] was filed related to the Debtors property located in Windsor, CT, at this time any claims arising from this motion are unknown and unquantified in the Liquidation Analysis. Given the uncertainty around these potential claims, this Liquidation Analysis assumes a range of $0 to $1,700,000 in order to illustrate the impact of potential Priority Claims.

7. **General Unsecured Claims**

The Liquidation Analysis reflects the significant categories that comprise the General Unsecured Claims pool. General Unsecured Claims are under review and reconciliation; thus, the ranges illustrated in this Liquidation Analysis could vary materially.

- **Pension Benefit Guarantee Corporation ("PBGC"):** Reflects the $15,538,178.33 PBGC Claim consistent with the PBGC Settlement approved per the Sale Order.

- **Est. SERP:** Supplemental Employee Retirement Plan (**"SERP"**) claims are estimated to range between $4.2M based on information provided by the Debtors and certain assumptions included in the SERP Actuarial Valuation Report as of January 1, 2022, and $7.1M based upon an extrapolation of the Proofs of Claims filed by SERP participants.

- **Est. Other GUC Claims (excl. Cerberus Deficiency Claim):** Reflects an estimate of all remaining General Unsecured Claims (**"GUC"**) comprised of Trade and other claims. Note, the GUC claims are in the process of being reviewed and reconciled. As of the date of this Liquidation Analysis, no omni bus claims objection motions have been filed, as such actual amount Allowed GUC Claims is unknown and could be materially higher or lower than the amounts illustrated herein.

- **Est. Executory Contract Rejections:** Upon initial review, it appears that the Purchaser has assumed the majority of Executory Contracts that may have resulted in material rejection damage claims. However, this review is incomplete and as a result, the Liquidation Analysis reflects a range of $1,000,000 to $3,000,000 as illustrative potential GUC rejection damage claims. The Purchaser has until the applicable Designation Deadline as defined in the Asset Purchase Agreement.