**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| *In re* | : Chapter 11 |
| | : |
| STANADYNE LLC, *et al.*[1] | : Case No. 23-10207 (TMH) |
| | : |
| Debtors. | : (Jointly Administered) |
| | : |
| | : Hearing Date: September 26, 2023 at 1:00 p.m. (ET) |
| | : Obj. Deadline: September 19, 2023 at 4:00 p.m. |

**OBJECTION OF METROMEDIA COMPANY TO THE SUPPLEMENT TO DEBTORS'
MOTION FOR ENTRY OF AN ORDER (I) AUTHORIZING THE DEBTORS
TO ABANDON OR, ALTERNATIVELY SELL THE WINDSOR PROPERTY
AND (II) FOR RELATED RELIEF**

Metromedia Company ("**Metromedia**") hereby submits this objection (the "**Objection**") to the Supplement to Debtors' Motion for Entry of an Order (I) Authorizing the Debtors to Abandon or, Alternatively Sell the Windsor Property and (II) for Related Relief [D.I. 550] (the "**Supplement**") insofar as it proposes to assign or otherwise transfer the Stanadyne Stock Purchase Agreement dated November 7, 1997 and any amendments or modifications related thereto (collectively, the "**Stanadyne Stock Purchase Agreement**") to Industrial Realty Group, LLC ("**IRG**" or "**Buyer**"). In support of the Objection, Metromedia avers as follows:

**BACKGROUND**

1. On February 16, 2023 (the "**Petition Date**"), the Debtors commenced these bankruptcy cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

2. On or about July 31, 2023, in accordance with an Order of this Court entered on July 11, 2023 [D.I. 443], the Debtors closed the sale of substantially all of their assets to Stanadyne

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number are: Stanadyne LLC (0378); Pure Power Technologies, Inc. (5202); Stanadyne PPT Holdings, Inc. (2594); and Stanadyne PPT Group Holdings, Inc. (1734). The Debtors' headquarters are located at 405 White Street, Jacksonville, North Carolina 28546.

Operating Company, LLC, an affiliate of the Debtors' pre-petition lenders.

3. Excluded from the assets sold to Stanadyne Operating Company, LLC was a certain 52+ acre property located at 90-92 Deerfield Road, Windsor, Connecticut 06095 (the "**Windsor Property**").

**The Windsor Property**

4. The Windsor Property is the former headquarters of the Debtors and is owned by debtor, Stanadyne LLC.

5. The Windsor Property has historically been utilized in connection with the manufacturing of diesel automotive equipment. Since at least the mid-1980's, the Windsor Property has been owned by an entity which is now Stanadyne LLC, although the ownership of this entity has changed on several occasions since that date.

6. Commencing in or about 1987, at least two (2) consent orders were entered with the Connecticut Department of Energy and Environmental Protection (the "**CT-DEEP**") regarding rectifying asserted violations of various hazardous waste regulations.[2] Shortly thereafter, work commenced to remedy the asserted violations.

7. The Windsor Property has been the subject of filings by Stanadyne under the Connecticut Transfer Act, Conn. Gen. Stat. §22a-134 et seq. In connection with those filings, the

---

[2] See Statement of Financial Affairs of Stanadyne LLC [D1.201] pp. 63-70, Attachments 22 and 24.

123423119-6

Debtors have investigated and partially remediated the Windsor Property pursuant to a Remedial Action Plan (RAP).

8. In connection with the 1997 transaction, Stanadyne retained legal responsibility for investigation, remediation, documentation and full compliance with the Transfer Act as the "certifying party" and, in such capacity, has certain legal responsibilities to the CT-DEEP.

9. In general, the legal obligations undertaken by Stanadyne as the certifying party include: investigating the site(s) that are subject to the Transfer Act, and then remediating them according to CT-DEEP's extensive requirements, and finally documenting all of the investigative and remedial work as required by CT-DEEP and then guaranteeing that the work is completed to CT-DEEP's satisfaction. The certifying party is the party that bears the risk of CT-DEEP auditing an LEP-verified site (such as these here) and requiring additional work.

10. In 2004, in the context of a corporate reorganization, Stanadyne, again assumed these responsibilities as the certifying party.

11. In or about 2019 the State of Connecticut delegated the work of investigation and remediation to a licensed environmental professional ("LEP").

12. In or about 2020, the Windsor Property became the subject of a Remedial Action Plan prepared by an LEP and submitted by Stanadyne to the State of Connecticut.

13. This Remedial Action Plan required excavation and removal of contaminated soil from certain exterior areas of the Windsor Property and construction of an engineered controlled area where the contaminated soil is consolidated and capped in a single underground location. The plan also required the installment of three (3) soil vapor extraction systems. According to the Debtors, the Remedial Action Plan has been substantially completed. Declaration of Bradley Dietz in Support of the Debtors' Motion for Entry of an Order (I) Authorizing the Debtors to Abandon

the Work, Alternatively Sell the Windsor Property and (II) for Related Relief [D.I. 523] at ¶5.

14. According to the CT-DEEP, the engineered controlled area requires annual maintenance and monitoring, including bi-weekly mowing during the growing season, visual inspections to confirm stability conducted quarterly and following precipitation events of over one (1) inch, and the annual sampling of two (2) monitoring wells for volatile organic compounds; polycyclic aromatic hydrocarbons; extractable total petroleum hydrocarbons; and certain metals. Objection of the Connecticut Department of Energy and Environmental Protection to Debtors' Motion for Entry of an Order (I) Authorizing the Debtors to Abandon or, Alternatively Sell the Windsor Property and (II) for Related Relief [D.I. 513] at ¶8.

15. On August 2, 2023, the Debtors filed the Debtors' Motion for Entry of an Order (I) Authorizing the Debtors to Abandon or, Alternatively Sell the Windsor Property and (II) for Related Relief [D.I. 486] (the "**Motion**") seeking permission to abandon the Windsor Property.

16. The proposed form or order attached to the Motion provided exclusively for the abandonment of the Windsor Property.

17. The Motion further provided that, if the Debtors could locate an acceptable buyer, they would file a supplement to the Motion seeking authority to sell the Windsor Property.

18. On September 5, 2023, the Debtors filed the Supplement [D.I. 550] by which they are requesting the approval of the sale of the Windsor Property to IRG.  Supplement, ¶4.

19. The Supplement describes and seeks approval of an asset sale without any reference to the assumption or assignment of executory contracts.  No proposed form of Order identifying the request for relief was attached to the Supplement.

20. Attached to the Supplement as Exhibit A is a Purchase and Sale Agreement dated August 28, 2023 between Stanadyne LLC and IRG (the "**PSA**").

21. Under the terms of the PSA, IRG is purchasing the Windsor Property as well as certain intangible property, which is defined to include "[a]ny and all right, title and interest of Seller in all (i) development rights and entitlements and other intangible property owned by Seller (including without limitation, any environmental or other indemnities)."

PSA, ¶1D.

22. With regard to environmental matters, the PSA provides:

> Buyer and Seller shall work in good faith in connection with compliance with the Connecticut Transfer Act with respect to the transfer of the Property, it being understood that Seller shall have no liability post-Closing with respect to any remaining remediation or compliance work with the Connecticut Department of Energy and Environmental Protection relating to the Property. Seller will assign to Buyer, *to the extent assignable*, any existing environmental indemnities with respect to the Property, or rights that Seller has based upon the Connecticut Transfer Act, *to the extent transferrable*.

PSA, ¶5D (emphasis added).

23. The PSA does not explicitly provide for the assignment of the Stanadyne Stock Purchase Agreement, but the Supplement identifies it, in its Exhibit B as the sole agreement proposed to be assigned to IRG.

24. The exhibit identified the cure amount for Stanadyne Stock Purchase Agreement as "zero."

## THE PROPOSED ORDER

25. On September 11, 2023, the Debtors filed their proposed sale order [D.I. 565]. The Proposed Sale Order provides additional insight into the proposed treatment of the Stanadyne Stock Purchase Agreement and its transfer to IRG.

26. First, the proposed order requests a finding that the underlying statutory bases for the requested relief are Sections 105 and 363 of the Bankruptcy Code. Order, p. 2, ¶A.

Significantly, the Debtors are not seeking such a finding for relief under Section 365.

27.     Second, the Order requests a finding that notice was proper under the circumstances. Notwithstanding the foregoing, the proposed notice to Metromedia would have gone to a long since closed address (and been returned) and to Metromedia's Connecticut environmental counsel, Martha Dean, Esquire. Attorney Dean received the Sale Motion and Supplement on September 13, 2023 in an envelope post-marked September 5, 2023. Significantly, the parties identified as having received notice in proposed finding E do not include Metromedia, the contract party to the proposed assigned contract.

28.     Third, the Order requests approval of the sale of the Windsor Property to IRG free and clear of all liens, claims and interest.

29.     Fourth, the Order contains proposed findings regarding the Stanadyne Stock Purchase Agreement, including that the Stanadyne Stock Purchase Agreement is an integral part of the Sales Agreement and the sale of the Windsor Property. Order, p.7, ¶N.[3]

30.     The Order also, in numerous paragraphs, provides for injunctive relief, including barring non-parties from taking certain actions and compelling non-debtor parties to engage in certain other activities. See, e.g., Order, ¶¶ 18 (enjoining parties from taking action against the Purchaser for cure); 21 (requiring the non-debtor counterparty to execute and deliver, at its expense, any document requested by public authorities); and 22 (enjoining non-debtor contract party from raising rent or charging fees regarding the assumption, assignment or sale of the contract).

---

[3]    The "to the extent assignable" and "to the extent transferable" qualifiers in Paragraphs 5D of the PSA underscore a recognition by the Debtors that the Stanadyne Stock Purchase Agreement may not be transferrable. Those qualifiers, like Paragraph 17 of the Proposed Order (permitting the sale of the PSA to be approved notwithstanding an unresolved objection regarding the assumption or assignment of a contract), make clear that the sale can close without the transfer of the Stanadyne Stock Purchase Agreement. Hence this Court should not make a finding that the transfer of that Agreement is an integral part of the PSA.

123423119-6

31. Finally, the Order, at Paragraphs 13-23 provides for the approval of the assumption, assignment and sale of the Stanadyne Stock Purchase Agreement to IRG.

## STANADYNE STOCK PURCHASE AGREEMENT DATED MARCH 7, 1997

32. The Stanadyne Stock Purchase Agreement was entered into on or about November 7, 1997 regarding the purchase of the stock of Stanadyne Automotive Holding Corp.

33. The Stanadyne Stock Purchase Agreement is not an asset sale, but rather its fundamental purpose involved the transfer of stock of a corporation. The indemnification obligations were attendant to the stock transfer.

34. The Stanadyne Stock Purchase Agreement defines the Buyer as SAC, Inc. In 2014, SAC, Inc. was converted to an LLC and is now known as Stanadyne LLC.

35. Stanadyne LLC is the debtor in Case No. 23-10207 (TMH) and the seller of the Windsor Property under the PSA.

36. The Stanadyne Stock Purchase Agreement specifically provides that, other than in limited circumstances, it is not transferrable:

> Binding Effect: No Assignment; Not Third Party Rights. This Agreement shall be binding upon and inure to the benefit of the parties and their respective successors and legal representatives. **This Agreement is not assignable** except by operation of Law (including a merger of Buyer into an Affiliate); provided, however, that the Buyer may assign its rights and delegate its obligations hereunder (i) to any Affiliate, in which case Buyer shall remain liable under this Agreement, (ii) to any person in connection with a sale of all or substantially all of the assets of the Buyer, (iii) to any person who acquires all of the capital stock of Buyer, and (iv) to any person providing financing to the Buyer or its Affiliates. This Agreement is made solely for the benefit of the Buyer and the Sellers and shall not give rise to any rights of any kind to third parties.

Stanadyne Stock Purchase Agreement, ¶12.7 (emphasis added).

37. With regard to environmental matters, the Stanadyne Stock Purchase Agreement provides for a limited indemnification by Metromedia. Specifically, Metromedia indemnified

123423119-6

7

Stanadyne under the Stanadyne Stock Purchase Agreement for certain environmental liabilities associated with seventeen (17) areas specifically identified in the Remedial Action Plan. Anything outside of these seventeen areas is the responsibility of Stanadyne and is not covered by the indemnification clause of the Stanadyne Stock Purchase Agreement. Stanadyne Stock Purchase Agreement, ¶10.3.

38. For its part, SAC, Inc. (Stanadyne LLC) agreed to, among other things, indemnify Metromedia for any exacerbation by SAC, Inc. of any environmental problems at the Windsor Property. See Stanadyne Stock Purchase Agreement, ¶10.4.

39. As a practical matter, the ability of Stanadyne to exacerbate environmental problems ceased in or about 2011 when Stanadyne relocated its operations, including its manufacturing operations, to Jacksonville, NC.

40. At present, the 17 areas identified in the Remedial Action Plan have had the bulk of their remediation completed and it is anticipated that the activities remaining under the Remedial Action Plan consist primarily of a year or two of monitoring, completion of soil vapor extraction, and recording an Environmental Land Use Restriction.

41. Pursuant to the Connecticut Transfer Act, Stanadyne, as the certifying party, is the party solely responsible for interacting with the CT-DEEP regarding the cleanup of the Windsor Property. If IRG becomes the owner of the Windsor Property, it will become responsible for all legal and regulatory environmental obligations going forward.

## **OBJECTION**

42. Metromedia does not object to the sale of the Windsor Property to IRG. Metromedia objects, however, to the proposed assignment or other transfer to IRG of obligations which Metromedia may have to Stanadyne LLC. Although the Supplement is not clear as to the

legal basis for the purported transfer of any Metromedia obligations, the Stanadyne Stock Purchase Agreement, in any event, cannot be assumed and assigned pursuant to Section 365 or otherwise transferred pursuant to Section 363. As set forth below, the Stanadyne Stock Purchase Agreement does not have a material unperformed obligation running from Stanadyne to Metromedia and therefore is not an executory contract eligible for transfer under Section 365. Moreover, the anti-assignment provision is enforceable under applicable state law and the agreement cannot be transferred under Section 363(f) free and clear of such interest.

43. In either case, the Court should not allow such a transfer, as there has been no evidence that the interests of Metromedia are adequately protected or of adequate assurance of IRG's ability to perform under the Agreement and state law and as the certifying party.

**I. The Stanadyne Purchase Agreement is not an executory contract and can only be transferred pursuant to Section 363.**

44. To transfer a contract pursuant to Section 365, the debtor must establish that the contract is executory. As explained in *In re Weinstein Co.*, 997 F.3d 497, 504 (3d Cir. 2021), the "test for an executory contract is whether, under the relevant State law governing the contract, each side has at least one material unperformed obligation as of the bankruptcy petition date." If a contract is not executory, it may only be transferred if the debtor can satisfy the requirements of Section 363. *Weinstein*, 997 F.3d at 501.

45. Here, the Debtors have not identified any material unperformed obligation of Stanadyne LLC to Metromedia. And as a practical matter, it would appear that any obligation of Stanadyne to not exacerbate the condition of the Windsor Property ceased in or about 2011 when Stanadyne relocated all manufacturing operations from the Windsor Property to other locations.

The Debtors appear to acknowledge this by identifying the cure amount in the Agreement as "zero."[4]

46. As the Stanadyne Stock Purchase Agreement is not executory, Section 363 governs the attempted transfer.

    **A.**    **As the Stanadyne Stock Purchase Agreement is Not Executory, the Debtors Cannot Pick and Choose from Among its Provisions and Assign and Transfer Only Portions of the Agreement.**

47. Generally, a trustee is bound by the debtor's non-executory contracts. *Hayes and Co. v. Merrill Lynch,* 885 F.2d 1149, 1153 (3d Cir. 1989)(citations omitted). Moreover, a debtor may not pick and choose among the provisions of a non-executory contract. See *DB Structural Prods., Inc. v. American Home Mtg. Holdings, Inc.*, 402 B.R. 87, 98 (Bankr. D. Del. 2009) (c*um onere* principal applies equally to the transfer of rights and obligations under a non-executory contract pursuant to Section 363 as the assumption and assignment of executory contracts pursuant to Section 365); *In re Paul*, 355 B.R. 64, 68 (Bankr. N.D. Ill. 2001) ("Section 363(b)(1) merely allows a trustee to sell property if the debtor would have had the same right under state law"). If a contract is not executory, it may be sold under Section 363 to a buyer, who must satisfy post-closing obligations, but not assigned pursuant to Section 365. *Weinstein*, 997 F.3d at 501.

48. A significant difference between Sections 363 and 365 of the Bankruptcy Code is that Section 365(f)(2) permits a debtor to assign an executory contract notwithstanding a provision in the contract that prohibits an assignment. The closest corollary to 365(f)(2), in the context of the sale of a non-executory contract in which, as here, the anti-assignment right belongs to the non-debtor party, is Section 363(f). Section 363(f) provides the pre-requisites for the transfers of

---

[4] In addition, a search of Schedule G of the Stanadyne schedules [D.1.200] did not reveal a listing for the Stanadyne Stock Purchase Agreement.

123423119-6

property free and clear of liens, claims and interests. *In re C-Power Prods., Inc.*, 230 B.R. 800, 803 (Bankr. N.D. Tex. 1998). "Thus, for a sale under Section 363(f) free and clear of [an] anti-assignment restriction, one of the conditions of Section 363(f)(1) through (5) must be met." Id. (finding otherwise non-assignable state law cause of action could not be transferred as Section 363(f) was not satisfied).

49. Under the terms of the contract and New York State law, the Stanadyne Stock Purchase Agreement is not transferable.

50. The anti-assignment provision, Section 12.7 of the Stanadyne Stock Purchase Agreement, provides that the agreement is not assignable absent the existence of limited exceptions not present here. Specifically, IRG is not an affiliate of the Debtors or Stanadyne Operating Company, or providing financing to the Debtors or their affiliates. And unless IRG is acquiring the stock of Stanadyne LLC, the Debtors cannot transfer the Stanadyne Stock Purchase Agreement to IRG pursuant to Section 363. To do otherwise would be to selectively enforce provisions of the Agreement or rights thereunder.

51. The Stanadyne Stock Purchase Agreement is governed by New York law. Stanadyne Stock Purchase Agreement, 12.6. New York law recognizes and enforces anti-assignment provisions in contracts. *Richard A. Hutchens CC, L.L.C. v. State*, 59 A.D.3d 766, 767 (N.Y. App. Div. 2009).

52. Thus for the Debtors to transfer the Stanadyne Stock Purchase Agreement free and clear of this interest of Metromedia, the Debtors would have to satisfy Section 363(f), which they cannot:

- As set forth above, non-bankruptcy law prohibits the assignment. (363(f)(1)).

- Metromedia has not consented to the transfer. (363(f)(2)).

- The non-assignment provision is not a lien, therefore 363(f)(3) is inapplicable.

- The non-assignment provision is not an interest subject to a bona fide dispute, therefore 363(f)(4) is inapplicable.

- Metromedia cannot be compelled, in a legal or equitable proceeding under the law of New York, to accept a money satisfaction from Stanadyne or IRG for the satisfaction of the non-assignability restriction. (363(f)(5)).

53. Because 363(f) cannot be satisfied, the Stanadyne Stock Purchase Agreement cannot be transferred under Section 363.

    b. To the extent it is transferable, IRG must purchase the contract in its entirety and this includes the acquisition of the stock.

54. The Stanadyne Stock Purchase Agreement contemplates the transfer of stock as a fundamental aspect of the agreement. As such, the Debtors cannot parse out that aspect of the agreement under a section 363 transfer.

    c. Metromedia is entitled to adequate protection of its interests.

55. Pursuant to Section 363(e), the Court is required, as a condition to any proposed use sale or lease of an interest in property proposed to be used, sold or leased, to provide adequate protection of such interest. 11 U.S.C. §363(e). Here, to the extent that the Court is permitting the assignment to IRG of the indemnity, contractual and/or legal obligations, Metromedia has the right to have its interests adequately protected. This would include being provided proof of IRG's financial information and historical ability to perform remediation, tax returns, and a bond or other cash collateral. See *In re All American Holding Corp.*, 10 B.R. 71, 72 (Bankr. S.D. Fla. 1981) (interests of mortgagee adequately protection where mortgagor posted bond upon which mortgagee could draw to cover the damages or costs incurred while foreclosure was stayed). In addition, IRG must demonstrate an ability to perform under the Connecticut Transfer Act.

    **II.**    **To the extent the Stanadyne Stock Purchase Agreement is an Executory Contract, the Debtors May Not Cherry Pick its Favorable Terms.**

56. In the alternative, to the extent that the Court finds the contract is executory, the Debtors still should not be permitted to assign it.

57. It is fundamental that a debtor must assume or reject an executory contract *in toto* under Section 365. *In re Fleming Cos., Inc.,* 499 F.3d 300, 308 (3d Cir. 2007) (noting that a debtor "may not blow hot and cold. If he accepts the contract, he accepts it *cum onere*."). That is, if the debtor receives the benefits of the contract, it must also accept the burdens. Id. See also *In re Teligent, Inc.,* 268 B.R. 723, 728 (Bankr. S.D.N.Y. 2001) ("The trustee must assume or reject the entire contract…"); *In re Ritchey*, 84 B.R. 474, 476 (Bankr. N.D. Ohio 1988) ("It is well established that a Debtor cannot retain the beneficial aspects of the contract while rejecting the contracts burdens."). "An executory contract or unexpired lease must be rejected *in toto* . . . [because] [t]o hold otherwise, would construe the bankruptcy law as providing a debtor in bankruptcy with greater rights and powers under a contract than the debtor had outside of bankruptcy." *In re Holland Enter., Inc.,* 25 B.R. 301, 303 (E.D.N.C. 1982.

58. Similarly, a debtor seeking to assign a contract under Section 365 must also assign the contract in whole, with all of its benefits and burdens. *See Fleming*, 499 F.3d at 308 ("an assignment is intended to change only who performs an obligation, not the obligation to be performed.") (citation omitted).). Consequently, to the extent that the contract is executory and the Debtors are attempting to assume only a portion of the Stanadyne Stock Purchase Agreement, they may not do so.

59. Here, the fundamental purpose of the Stanadyne Stock Purchase Agreement is the transfer of the stock of Stanadyne Automotive Holding Corp., owner of the Windsor Property. A stock transfer transaction has its own set of benefits (e.g., ownership of equity in an existing entity) and burdens (e.g., assets are transferred subject to liabilities). There may also be advantageous tax

considerations such as the ability to utilize operating loss carry forwards.

60. Stock transfers are typically constructed as such to maximize the advantages of such an approach. And as previously stated, the fundamental purpose of a stock purchase agreement is to transfer stock.

61. In order to assign a stock purchase agreement pursuant to Section 365, the debtor cannot parse the agreement and assume only the beneficial aspects of it. Here these include all burdens attendant to ownership of the stock or interest in Stanadyne LLC. To hold otherwise would permit the Debtor to assign (and IRG to accept) only select portions of the Stanadyne Stock Purchase Agreement.

62. In addition, it should be noted that, as the property owner, IRG becomes the certifying party and must assume all obligations to Metromedia, including performance of the Remedial Action Plan, and interacting with the CT-DEEP regarding the remediation with the 17 remediation areas.

### All Defaults Must be Cured and Adequate Assurance Must be Given

63. Under section 365(b)(1)(A) of the Bankruptcy Code, if there has been a default under an executory contract, a debtor-in-possession may not assume such contract unless, at the time of assumption, the debtor cures or provides adequate assurance that it will promptly cure such default. *See* 11 U.S.C. § 365(b)(1)(A).

64. Pursuant to 11 U.S.C. §365, the cure amount must include all amounts necessary to cure any arrearage under the contract to be assumed. *See In re Handy Andy Home Improvement Centers, Inc.*, 196 B.R. 87, 93 (Bankr. N.D. Ill. 1996) (debtor must cure pre- and post-petition defaults prior to assumption).

65. Pursuant to sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code,

Metromedia is entitled to adequate assurance of future performance before any executory contract to which it is a party is assumed and assigned. *In re Rickel Home Centers, Inc*., 209 F.3d 291, 299 (3d Cir. 2000) cert. denied 531 U.S. 873 (2000); *In re Embers 86th Street, Inc.*, 184 B.R. 892, 900-901 (Bankr. S.D.N.Y. 1995) (trustee may only assign an unexpired lease if trustee assumes the lease in accordance with Section 365 and there is adequate assurance of future performance by the assignee).

66. In addition, to the extent the Court is inclined to grant the assumption and assignment, Metromedia requires adequate assurance as to IRG's ability to perform any obligations associated with its ownership of the stock, and the remediation of the Windsor Property. See 11 U.S.C. §365(b).

67. Here, adequate assurance of future performance by IRG should include financial information, tax returns, compliance history with remediation obligations, and a bond or cash collateral to ensure compliance. *In re Memphis-Friday' Assocs.*, 88 B.R. 830, 841 (Bankr. W.D. Tenn. 1988) (financial statements, tax returns, bank statements, letters of credit, loan commitments, bonds, as well as cash are some of the evidence of adequate assurance which an assignee should be able to readily provide to demonstrate an ability to perform); *Matter of Lockspur, Inc.*, 82 B.R. 37, 39 (Bankr. E.D. La. 1987) (holding that a contract could not be assumed because the debtor could not provide adequate assurance of future performance under the contract, such as posting a surety bond); *In re The Travel Shoppe, Inc.*, 88 B.R. 466, 471 (Bankr. N.D. Ga. 1988) (bond maintained by the debtor was adequate assurance of future performance). In addition, IRG will need to demonstrate an ability to comply with the Connecticut Transfer Act.

### III. The Debtors and IRG are not entitled to injunctive relief against Metromedia.

123423119-6

15

68. The Proposed Order, in numerous locations, provides for Metromedia to be enjoined from taking certain actions. It also requires Metromedia to affirmatively undertake other activities including, in some instances, at Metromedia's own expense. Metromedia objects to, and this Court should not grant, such relief.

69. To the extent injunctive relief is being sought, the requesting party must proceed by way of an adversary proceeding. Bankruptcy Rule 7001(7). Adversary proceedings exist to provide litigants the additional formalities of certain court proceedings. These include additional notice and opportunity to present one's case, and certainly more notice than was provided to Attorney Dean and certainly a more detailed pleading specifying the requested injunctive relief and bases therefore.

70. Substantively, the Debtors have not established the bases for the grant of what is, in essence, permanent injunctive relief. As such, the Court should not grant it.

## **RESERVATION OF RIGHTS**

71. Metromedia expressly reserves all of its rights under the Stanadyne Stock Purchase Agreement, the Bankruptcy Code, or applicable law, including, without limitation, the right to (a) supplement or amend this Limited Objection and to assert any additional issues with respect to any proposed assumption and assignment of the Stanadyne Stock Purchase Agreement on any and all grounds; (b) assert any and all additional issues in connection with any proposed cure amount for the Stanadyne Stock Purchase Agreement; (c) assert any additional objections to the assumption and assignment of the Stanadyne Stock Purchase Agreement; and (d) assert any objections to the Plan.

WHEREFORE, Metromedia Company respectfully requests that this Court enter an Order denying the Debtors' proposed assumption, assignment or transfer of the Stanadyne Stock

Purchase Agreement, requiring the Debtors to pay all amounts due under the Stanadyne Stock Purchase Agreement and provide adequate assurance of future performance by the Industrial Realty Group LLC or any assignee or transferee, and affording such further relief as it deems appropriate.

                                      **DILWORTH PAXSON LLP**

By: */s/ Martin J. Weis*
      Martin J. Weis (No. 4333)
      One Customs House
      704 King Street, Suite 500
      P.O. Box 1031
      Wilmington, DE  19899-1031
      Tel:  302-571-9800

      *Attorneys for Metromedia Company*