IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re* <br><br> **STANADYNE LLC, *et al.*,**[1] <br><br> **Debtors.** | Chapter 11 <br><br> Case No. 23-10207 (TMH) <br><br> (Jointly Administered) <br><br> Hearing Date: October 19, 2023 at 10:00 a.m. (ET) <br> Objection Deadline: October 3, 2023 at 4:00 p.m. (ET) |

**DEBTORS' MOTION FOR ENTRY OF AN ORDER, PURSUANT TO SECTIONS 105(a) AND 365(a) OF THE BANKRUPTCY CODE, AUTHORIZING THE DEBTORS TO REJECT THAT CERTAIN CONTRACT BETWEEN EXPRESS EMPLOYMENT PROFESSIONALS AND THE DEBTORS EFFECTIVE AS OF THE REJECTION DATE**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") hereby submit this motion (this "Motion") for the entry of an order, substantially in the form attached hereto as Exhibit A (the "Proposed Order"), pursuant to sections 105(a) and 365(a) of title 11 of the United States Code, 11 U.SC. §§ 101 *et seq*. (the "Bankruptcy Code"), authorizing the Debtors to reject that certain contract between Debtor, Stanadyne, LLC and Express Employment Professionals ("Express") dated November 23, 2022 (the "Rejected Contract") set forth on Schedule 1 to the Proposed Order, effective as of September 12, 2023 (the "Rejection Date"). In support of this Motion, the Debtors respectfully state as follows:

**JURISDICTION AND VENUE**

1. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over these chapter 11 cases and this Motion pursuant to 28 U.S.C.

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number are: Stanadyne LLC (0378); Pure Power Technologies, Inc. (5202); Stanadyne PPT Holdings, Inc. (2594); and Stanadyne PPT Group Holdings, Inc. (1734). The Debtors' headquarters are located at 405 White Street, Jacksonville, North Carolina 28546.

30784895.1

§§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012 (the "Amended Standing Order"). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and the Court may enter a final order consistent with Article III of the United States Constitution. Venue is proper in the Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory and legal predicates for the relief sought herein are sections 105(a) and 365 of the Bankruptcy Code and Rule 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## BACKGROUND

### I.    General

2. On February 16, 2023, each of the Debtors commenced a voluntary case under chapter 11 of the Bankruptcy Code. The Debtors are authorized to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On March 6, 2023, the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed the official committee of unsecured creditors (the "Committee") for these chapter 11 cases. No request has been made for the appointment of a trustee or examiner.

3. On April 14, 2023, the Court entered that certain *Order (I) Establishing Deadlines For Filing Proofs of Claim and (II) Approving the Form, Timing, and Manner of Notice Thereof* (the "Bar Date Order") [Docket No. 191]. Under the Bar Date Order, "[a]ny counterparty or other party in interest asserting a claim or claims against the Debtors arising from the rejection of an executory contract or unexpired lease must file a Proof of Claim based on such rejection on or before the later of (i) 5:00 p.m. (prevailing Eastern Time) on the date that is thirty (30) days after the date of entry of an order approving the rejection of the executory contract or unexpired lease and (ii) the General Bar Date" (the "Rejection Bar Date").

4. On May 8, 2023, the Debtors entered into a Stalking Horse Purchase Agreement (the "Stalking Horse APA") with a stalking horse purchaser (the "Stalking Horse") [Docket No. 265]. On June 21, 2023, the deadline for interested parties to submit bids for the Debtors' assets expired with no competing qualified bids being submitted. Thereafter, on June 22, 2023, the Debtors designated the Stalking Horse as the Successful Bidder. [Docket No. 394].

5. On July 10, 2023, the Court held a hearing to, among other things, consider the sale of the Debtors' assets and business (the "Sale Hearing"). Following the Sale Hearing, the Court entered an order approving the sale of the Debtors' assets (the "Sale Order") [Docket No. 443]. The Sale closed on July 31, 2023 [Docket No. 484].

6. To this end, the Debtors seek, through this Motion, to reject the Rejected Contract that was not assigned to the purchaser, because it is not necessary for the Debtors to conduct their wind down process, and does not provide any benefit to the Debtors or their estates.

## II. The Rejected Contract

7. The Stalking Horse APA contemplates certain designation rights whereby the Stalking Horse, as the purchaser, may designate contracts as either assigned or non-assigned contracts. As such, counsel to the Stalking Horse contacted the Debtors' undersigned counsel via email correspondence on September 12, 2023, thereby designating the Rejected Contract as non-assigned pursuant to the terms of the Stalking Horse APA. Accordingly, because the Rejected Contract serves no purpose in winding down the Debtors' estates, the Debtors seek to reject the Rejected Contract.[2]

---

[2] The inclusion of the Rejected Contract on Schedule 1 to the Proposed Order is not intended as, nor shall be deemed to constitute, an admission by the Debtors or their estates that such contract is or is not an executory contract. The Debtors and their estates reserve any and all rights, claims, and defenses with respect to the characterization of the Rejected Contract under section 365 of the Bankruptcy Code, applicable non-bankruptcy law, or otherwise, including, without limitation, any and all rights to argue that any of the Rejected Contract does not constitute an executory contract.

30784895.1

8. Given that the Stalking Horse has advised the Debtors' undersigned counsel that it does not intend to designate the Rejected Contract for assignment, and the Debtors no longer require such contract at this time, the Debtors have determined that such contract does not provide any material benefit to the Debtors' estates. The Debtors believe, in the exercise of their business judgment, that it is in the best interests of the Debtors' and their estates to reduce any further potential administrative burden related to the Rejected Contract.

## RELIEF REQUESTED

9. By this Motion, to preserve and maximize the value of their estates, the Debtors, in the valid and reasoned exercise of their business judgment, seek to reject the Rejected Contract, effective as of the Rejection Date.

## BASIS FOR RELIEF

**I. Rejection of the Rejected Contract as of the Rejection Date Reflects the Debtors' Sound Business Judgment.**

10. Section 365(a) of the Bankruptcy Code provides, in pertinent part, that a debtor-in-possession "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). As courts have held, "[t]he purpose behind allowing the assumption or rejection of executory contracts is to permit the trustee or debtor-in-possession to use valuable property of the estate and to 'renounce title to and abandon burdensome property.'" *Orion Pictures Corp. v. Showtime Networks, Inc.* (*In re Orion Pictures Corp.*), 4 F.3d 1095, 1098 (2d Cir. 1993) (quoting 2 *Collier on Bankruptcy* ¶ 365.01[1] (15th ed. 1993)).

11. The standard applied to determining whether the rejection of an unexpired lease or executory contract should be authorized is the "business judgment" standard. *Sharon Steel Corp. v. Nat'l Fuel Gas Distr. Corp.*, 872 F.2d 36, 40 (3d Cir. 1989); *In re HQ Global Holdings, Inc.*, 290 B.R. 507, 511 (Bankr. D. Del. 2003) (stating that a debtor's decision to reject an

executory contract is governed by the business judgment standard and can only be overturned if the decision was the "product of bad faith, whim, or caprice"); *see also In re Tayfur*, 599 F. App'x 44, 49–50 (3d Cir. 2015) (extending the standard articulated in *Sharon Steel* to unexpired leases). Once a debtor states a valid business justification, "[t]he business judgment rule 'is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company.'" *Official Comm. of Subordinated Bondholders v. Integrated Res., Inc.* (*In re Integrated Res., Inc.*), 147 B.R. 650, 656 (Bankr. S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)).

12. The business judgment rule is crucial in chapter 11 cases and shields a debtor's management from judicial second-guessing. *See Comm. of Asbestos Related Litigants and/or Creditors v. Johns-Manville Corp.*, 60 B.R. 612, 615–16 (Bankr. S.D.N.Y. 1986) ("The Code favors the continued operation of a business by a debtor and a presumption of reasonableness attached to a debtor's management decisions."). Generally, courts defer to a debtor-in-possession's business judgment to reject a lease or an executory contract. *See, e.g.*, *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 523 (1984), *superseded by statute on other grounds*, Bankruptcy Amendments and Federal Judgeship Act of 1984, sec. 541, § 1113, Pub. L. No. 98-353, 98 Stat. 333 (codified at 11 U.S.C. § 1113); *In re Minges*, 602 F.2d 38, 43 (2d Cir. 1979); *In re Riodizio*, 204 B.R. 417, 424–25 (Bankr. S.D.N.Y. 1997); *In re G Survivor Corp.*, 171 B.R. 755, 757 (Bankr. S.D.N.Y. 1994).

13. Upon finding that the Debtors have exercised their sound business judgment in determining that the rejection of the Rejected Contract is in the best interests of the Debtors and their estates, the Court should approve the proposed rejection under section 365(a) of the

30784895.1

Bankruptcy Code.  *See, e.g.*, *Westbury Real Estate Ventures, Inc. v. Bradlees, Inc.* (*In re Bradlees Stores, Inc.*), 194 B.R. 555, 558 n.1 (Bankr. S.D.N.Y. 1996); *Summit Land Co. v. Allen* (*In re Summit Land Co.*), 13 B.R. 310, 315 (Bankr. D. Utah 1981) (holding that, absent extraordinary circumstances, court approval of a debtor's decision to assume or reject an executory contract "should be granted as a matter of course").  If a debtor's business judgment has been reasonably exercised, a court should approve the assumption or rejection of an unexpired lease or executory contract.  *See, e.g.*, *Sharon Steel Corp.*, 872 F.2d at 39-40.  The Debtors have determined that the Rejected Contract is not integral to the Debtors' chapter 11 efforts, is not otherwise beneficial to the Debtors' estates, and may present burdensome contingent liabilities.  Accordingly, the Debtors' decision to reject the Rejected Contract—made after being notified of the Stalking Horse's intent with respect to such agreement—is an exercise of sound business judgment, and therefore should be approved.

14.    To avoid potentially paying any unnecessary expenses related to the Rejected Contract, the Debtors seek to reject the Rejected Contract effective as of the Rejection Date.  Generally, courts have permitted retroactive rejection of an unexpired lease and executory contract when the non-debtor party to the agreement was given definite notice of the intention to reject.  *See, e.g.*, *In re FLYi, Inc.*, Case No. 05-20011 (MFW) (Bankr. D. Del. Aug. 21, 2006).

15.    The facts in these chapter 11 cases and the balance of the equities favor the Debtors' rejection of the Rejected Contract effective as of the Rejection Date.  Without doing so, the Debtors may incur unnecessary administrative charges for an agreement that is not necessary to their business affairs or chapter 11 efforts, as the Debtors no longer have any employees, are in the process of winding down their businesses, and are not operating on a go-forward basis.  Requiring the Debtors to continue to perform under the Rejected Contract after the Rejection Date

could impose onerous obligations on the Debtors and their estates. Without a retroactive date of rejection, the Debtors may incur unnecessary administrative charges for a contract that is not necessary to their wind down efforts.

16. Moreover, the contract counterparty to the Rejected Contract will not be unduly prejudiced if the Rejected Contract is rejected effective as of the Rejection Date because, no later than the Rejection Date, the Stalking Horse advised the counterparty to the Rejected Contract that the services provided thereunder were no longer needed as of the Rejection Date. Moreover, the Debtors have served this Motion on the contract counterparty and/or its agents or representatives via email and overnight delivery, thereby advising such contract counterparty that the Debtors intend to reject the Rejected Contract effective as of the Rejection Date.

17. In light of the foregoing facts and circumstances, the Debtors respectfully submit that their rejection of the Rejected Contract under section 365 of the Bankruptcy Code, effective as of the Rejection Date, is a sound exercise of their business judgment, and is necessary, prudent, and in the best interests of the Debtors, their estates, and their creditors. Accordingly, entry of the Proposed Order is appropriate.

## **RESERVATION OF RIGHTS**

18. Nothing in the Proposed Order or this Motion: (a) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the Debtors and their estates; (b) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors and their estates with respect to the validity, priority, or amount of any claim against the Debtors and their estates; or (c) shall be construed as a promise to pay a claim.

30784895.1

## **NOTICE**

19.     Notice of this Motion has been provided to: (a) the U.S. Trustee; (b) counsel to the Committee; (c) counsel for Cerberus Business Finance, LLC, as the prepetition agent for the Prepetition Secured Lenders; (d) counsel to the Stalking Horse; (e) the counterparty to the Rejected Contract (via email and overnight delivery); and (f) all parties that have requested notice pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

[*Signature page follows*]

**CONCLUSION**

WHEREFORE, the Debtors request entry of the Proposed Order, granting the relief requested herein and such other and further relief as is just and proper.

| | |
|---|---|
| Dated: September 19, 2023<br>Wilmington, Delaware | YOUNG CONAWAY STARGATT &<br>TAYLOR, LLP<br><br>*/s/ Andrew A. Mark*<br>Michael R. Nestor (DE Bar No. 3526)<br>Andrew L. Magaziner (DE Bar No. 5426)<br>Ashley E. Jacobs (DE Bar No. 5635)<br>Andrew A. Mark (DE Bar No. 6861)<br>1000 North King Street<br>Rodney Square<br>Wilmington, Delaware 19801-6108<br>Telephone: (302) 571-6600<br>Facsimile: (302) 571-1253<br>Email: mnestor@ycst.com<br>    amagaziner@ycst.com<br>    ajacobs@ycst.com<br>    amark@ycst.com<br><br>-and-<br><br>Kathryn A. Coleman<br>Christopher Gartman<br>HUGHES HUBBARD & REED LLP<br>One Battery Park Plaza<br>New York, NY 10004-1482<br>Telephone: (212) 837-6000<br>Facsimile: (212) 422-4726<br>Email: katie.coleman@hugheshubbard.com<br>    chris.gartman@hugheshubbard.com<br><br>*Counsel for the Debtors* |