## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| *In re* | Chapter 11 |
| **STANADYNE LLC, *et al.*,**[1] | Case No. 23-10207 (TMH) |
| **Debtors.** | (Jointly Administered) |
|  | **Ref. Docket Nos. 486, 550, 565 & 586** |

### NOTICE OF FILING OF FURTHER REVISED PROPOSED SALE ORDER

**PLEASE TAKE NOTICE** that on August 2, 2023, the above-captioned debtors and debtors in possession (collectively, the "Debtors"), filed the *Debtors' Motion for Entry of an Order (I) Authorizing the Debtors to Abandon or, Alternatively Sell the Windsor Property and (II) for Related Relief* [Docket No. 486] (the "Motion") with the United States Bankruptcy Court for the District of Delaware (the "Court").

**PLEASE TAKE FURTHER NOTICE** that on September 5, 2023, the Debtors filed the *Supplement to Debtors' Motion for Entry of an Order (I) Authorizing the Debtors to Abandon or, Alternatively Sell the Windsor Property and (II) for Related Relief* [Docket No. 550] (the "Supplement").[2]

**PLEASE TAKE FURTHER NOTICE** that on September 11, 2023, the Debtors filed the *Notice of Filing of Proposed Sale Order* [Docket No. 565].

**PLEASE TAKE FURTHER NOTICE** that on September 22, 2023, the Debtors filed the *Notice of Filing of Revised Proposed Sale Order* [Docket No. 586] (the "Proposed Sale Order").

**PLEASE TAKE FURTHER NOTICE** that the Debtors have since made certain revisions to the Proposed Sale Order. Attached hereto as **Exhibit A** is a revised Proposed Sale Order approving the sale of the Windsor Property to Windsor Deerfield, LLC (the "Revised Proposed Sale Order"). For the convenience of the Court and all interested parties a blackline reflecting the changes made to the Proposed Sale Order is attached hereto as **Exhibit B**.

---

[1]   The debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number are: Stanadyne LLC (0378); Pure Power Technologies, Inc. (5202); Stanadyne PPT Holdings, Inc. (2594); and Stanadyne PPT Group Holdings, Inc. (1734). The Debtors' headquarters are located at 405 White Street, Jacksonville, North Carolina 28546.

[2]   Capitalized terms used but not otherwise defined herein shall have the meaning given to them in the Motion or Supplement, as applicable.

**PLEASE TAKE FURTHER NOTICE** that the Debtors intend to present the Revised Proposed Sale Order at the hearing scheduled for September 26, 2023 at 1:00 p.m. (ET) (the "Sale Hearing"). The Debtors reserve all rights to modify the Revised Proposed Sale Order at or prior to the Sale Hearing.

Dated:  September 25, 2023
        Wilmington, Delaware

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Ashley E. Jacobs*
Michael R. Nestor (DE Bar No. 3526)
Andrew L. Magaziner (DE Bar No. 5426)
Ashley E. Jacobs (DE Bar No. 5635)
1000 North King Street
Rodney Square
Wilmington, Delaware 19801-6108
Telephone:  (302) 571-6600
Facsimile:  (302) 571-1253
Email:  mnestor@ycst.com
       amagaziner@ycst.com
       ajacobs@ycst.com

-and-

Kathryn A. Coleman
Christopher Gartman
Jeffrey S. Margolin
HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, NY 10004-1482
Telephone: (212) 837-6000
Facsimile:  (212) 422-4726
Email:  katie.coleman@hugheshubbard.com
       chris.gartman@hugheshubbard.com
       jeff.margolin@hugheshubbard.com

*Counsel for the Debtors*

30800199.1

# **EXHIBIT A**

**Revised Proposed Sale Order**

30800199.1

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| *In re* | Chapter 11 |
| **STANADYNE LLC, *et al.***[1] | Case No. 23-10207 (TMH) |
| **Debtors.** | (Jointly Administered) |
|  | **Ref. Docket Nos. 486 & 550** |

### ORDER (I) AUTHORIZING THE SALE OF THE WINDSOR PROPERTY TO INDUSTRIAL REALTY GROUP, LLC FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS; (II) APPROVING THE PURCHASE AND SALE AGREEMENT; AND (III) GRANTING RELATED RELIEF

Upon consideration of the motion (the "Motion") of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), as supplemented by the *Supplement to Debtors' Motion for Entry of an Order (I) Authorizing the Debtors to Abandon or, Alternatively Sell the Windsor Property and (II) for Related Relief* (the "Supplement"),[2] for entry of an order, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, Bankruptcy Rules 2002, 6004 and 9014, and Local Rule 6004-1, authorizing the sale of the "Property" (as defined in section 1 of the Purchase Agreement, the "Windsor Property") free and clear of liens, claims, encumbrances, and interests to Industrial Realty Group, LLC (together with its designees, successors, or assigns, as applicable, under the Purchase Agreement, the "Purchaser"),[3] pursuant to the terms and conditions of that certain Purchase and Sale Agreement (the "Original

---

[1]   The debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number are:  Stanadyne LLC (0378); Pure Power Technologies, Inc. (5202); Stanadyne PPT Holdings, Inc. (2594); and Stanadyne PPT Group Holdings, Inc. (1734).  The Debtors' headquarters are located at 405 White Street, Jacksonville, North Carolina 28546.

[2]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion, the Supplement, or the Purchase Agreement (defined below), as applicable.

[3]   Pursuant to the Purchase Agreement, Industrial Realty Group, LLC intends to assign its rights and obligations under the Purchase Agreement to its affiliated entity, Windsor Deerfield, LLC.

Agreement"), a copy of which is attached hereto as **Exhibit 1**, as amended by the First Amendment to Purchase and Sale Agreement, a copy of which is attached hereto as **Exhibit 2** (the "Amendment" and together with the Original Agreement, and as may be further amended from time to time, the "Purchase Agreement"); and it appearing that due and sufficient notice of the Motion and the Supplement and the relief sought in connection therewith having been provided to all parties in interest; and it further appearing that no other or further notice hereof is required; and this Court having reviewed and considered the Motion, the Supplement, and any objections thereto; and this Court having heard statements of counsel and the evidence presented at any hearing in support of the relief requested in the Motion and Supplement; and it appearing that the relief requested in the Motion and Supplement is in the best interest of the Debtors' estates, their creditors, and other parties in interest; and it further appearing that the legal and factual bases set forth in the Motion and Supplement establish just cause for the relief granted herein; and after due deliberation and sufficient cause therefor,

THE COURT HEREBY FINDS THAT:[4]

## Jurisdiction, Final Order, and Statutory Predicates

A.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief sought in the Motion and Supplement are sections 105(a), 363(b), and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, and 9014, and Local Rule 6004-1.

---

[4]      Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate pursuant to Rule 7052 of the Bankruptcy Rules.

B.      To maximize the value of the Windsor Property while avoiding unnecessary administrative expense and delay, it is essential that the sale of the Windsor Property occur within the time constraints set forth in the Motion and the Purchase Agreement.  Time is of the essence in consummating the sale.  Therefore, notwithstanding Bankruptcy Rule 6004(h), this Court finds that there is no just reason for delay in the implementation of this Order, and that waiver of any applicable waiting period is appropriate.

C.      The Windsor Property constitutes property of the Debtors' estates, and title thereto is vested in the Debtors' estates within the meaning of section 541(a) of the Bankruptcy Code.

### Notice of Hearing

D.      As evidenced by the affidavits of service previously filed with this Court and the record herein, and based on the representations of counsel, due, proper, timely, adequate, and sufficient notice of the Motion, the Supplement, the sale and the Hearing (as defined below) were provided as set forth in the Motion and Supplement.  Such notice constitutes good and sufficient notice of the Motion, the Supplement, the sale, and the hearing on the Motion and Supplement (the "Hearing"), if any, and no other or further notice of the Motion, the Supplement, the sale, or the Hearing is required.  Notice has been provided to, and a reasonable opportunity to object or to be heard regarding the Motion, the Supplement, the sale, and the Hearing has been afforded to, all interested persons and entities, including, among others:  (i) the Office of the United States Trustee for the District of Delaware; (ii) counsel to the Official Committee of Unsecured Creditors; (iii) counsel for the Prepetition Agent for the Prepetition Secured Lenders; (iv) the Connecticut Department of Energy and Environmental Protection; (v) the United States Environmental Protection Agency; (vi) the Town of Windsor; (vii) Hartford

30699360.5

County; (viii) the State of Connecticut; (ix) any entity known to have expressed an interest during the past six months in acquiring the Windsor Property; (x) any party asserting a lien on the Windsor Property; (xi) the counterparty to the Assigned Contract (defined below); and (xii) those parties which, as of the filing of the Motion, had filed formal requests for notice in these Chapter 11 Cases pursuant to Bankruptcy Rule 2002.

## Sound Business Judgment

E.    The Debtors have articulated good and sufficient reasons for this Court to grant the relief requested in the Motion regarding the sale, the approval of the Purchase Agreement, and all other matters related to the sale or the Motion.  Such business reasons include, but are not limited to, the facts that (i) the Purchase Agreement constitutes the highest or best offer for the Windsor Property, (ii) no other person or entity or group of persons or entities has offered to purchase the Windsor Property for greater economic value to the Debtors' estates than the Purchaser, and (iii) the sale pursuant to the terms of the Purchase Agreement presents the best opportunity to realize the value of the Windsor Property.  For these reasons, the relief provided for herein is within the reasonable business judgment of the Debtors, and is in the best interests of the Debtors, their estates and creditors, and other parties in interest.

F.    The Debtors have demonstrated a good, sufficient, and sound business purpose, and justification and compelling circumstances, for entry into the Purchase Agreement and the consummation of the sale pursuant to section 363(b) of the Bankruptcy Code, in that the immediate consummation of the sale to the Purchaser is necessary and appropriate to maximize the value to the Debtors' estates and, thereby, is in the best interests of the Debtors, their estates, their creditors, and other parties in interest.

## Good Faith of Purchaser

G.     The Purchaser is not an "insider" of any of the Debtors, as that term is defined in section 101(31) of the Bankruptcy Code.  The Purchase Agreement was negotiated, proposed, and entered into by the Debtors and the Purchaser without collusion, in good faith, from arm's length bargaining positions, and is substantively and procedurally fair to all parties.  The Purchaser is, therefore, a good faith purchaser within the meaning of section 363(m) of the Bankruptcy Code and, therefore, entitled to the protections and immunities afforded thereby. Neither the Debtors nor the Purchaser have engaged in any conduct that would prevent the application of section 363(m) of the Bankruptcy Code or cause the application of, or implicate, section 363(n) of the Bankruptcy Code to the Purchase Agreement, or to otherwise prevent the consummation of the sale.  In the absence of a stay pending appeal, the Purchaser will be acting in good faith within the meaning of section 363(m) of the Bankruptcy Code in closing the transactions set forth in the Purchase Agreement at any time after entry of this Order.

## Highest and Best Offer

H.     The offer of the Purchaser, upon the terms and conditions set forth in the Purchase Agreement:  (i) is the highest or otherwise best offer received by the Debtors with respect to the Windsor Property; (ii) is fair and reasonable; (iii) is in the best interest of the Debtors, their estates, and their creditors; and (iv) constitutes full, fair, and adequate consideration and reasonably equivalent value for the Windsor Property under the Bankruptcy Code and under the laws of the United States, any state, territory, or possession.

## Validity and Free and Clear Nature of Transfers

I.     The transfer of the Windsor Property to the Purchaser pursuant to the Purchase Agreement will be, as of the closing, a legal, valid, and effective transfer of good and marketable

title of the Windsor Property, and will vest the Purchaser with all right, title, and interest of the Debtors to the Windsor Property, free and clear of all liens, claims, encumbrances, and interests of any kind or nature, on an "as is, where is" basis, as set forth in the Purchase Agreement, arising or relating thereto at any time prior to the closing, except as otherwise provided for under the Purchase Agreement, because one or more of the standards set forth in section 363(f) of the Bankruptcy Code have been satisfied.

J.      The Debtors may sell the Windsor Property free and clear of all liens, claims, encumbrances, and interests, except as otherwise provided for under the Purchase Agreement, because, in each case, one or more of the standards set forth in section 363(f)(1)–(5) of the Bankruptcy Code has been satisfied.  Those non-Debtor parties with interests in the Windsor Property which did not object, or which withdrew their objections, to the sale, the Motion, or the Supplement are deemed to have consented to the sale pursuant to sections 363(f)(2) and 365 of the Bankruptcy Code.  Those non-Debtor parties with interests in the Windsor Property which did object fall within one or more of the other subsections of sections 363(f) and 365 of the Bankruptcy Code, and such objections are expressly overruled.  Accordingly, all persons having such liens, claims, encumbrances, and interests of any kind or nature whatsoever against or in any of the Windsor Property, except as otherwise provided for under the Purchase Agreement, shall be forever barred, estopped, and permanently enjoined from pursuing or asserting such liens, claims, encumbrances, and interests against the Purchaser or any of its respective assets, property, successors, or assigns.

K.      Except as otherwise provided for under the Purchase Agreement, the transfer of the Windsor Property to the Purchaser will not subject the Purchaser to any liability for claims

against the Debtors by reason of such transfers under the laws of the United States, any state, territory, or possession thereof.

L.     The Debtors have demonstrated (i) good, sufficient, and sound business purposes and justifications and (ii) compelling circumstances for the sale pursuant to section 363(b) of the Bankruptcy Code in that, among other things, absent the sale the value of the Debtors' estates would be harmed.

### Assigned Contract

M.     As set forth herein, and subject only to payment of cure costs, all requirements and conditions under the Bankruptcy Code and other applicable law for the Debtors' assumption, assignment, and sale to the Purchaser of the contract identified on Exhibit B to the Supplement (the "Assigned Contract") have been satisfied.  The Debtors have demonstrated that the assumption, assignment, and sale of the Assigned Contract contemplated by the Purchase Agreement is an exercise of their sound business judgment and is in the best interests of the Debtors, their estates and creditors, and other parties in interest.  The Assigned Contract to be assumed, assigned, and sold to the Purchaser under the terms of the Purchase Agreement is an integral part of the Purchase Agreement and the sale of the Windsor Property, and, accordingly, such assumption, assignment, and sale is reasonable and enhances the value of the Debtors' estates.  The Assigned Contract is in full force and effect and has not been rejected, and the Debtors' time to assume or reject the Assigned Contract has not otherwise expired.  The cure cost listed on Exhibit B to the supplement (the "Cure Cost") shall constitute the cure cost for the Assigned Contract, and payment thereof is sufficient for the Debtors to comply fully with the requirements of section 365(b) of the Bankruptcy Code.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

30699360.5

7

**General Provisions**

1.      The Motion is hereby GRANTED as set forth herein.

2.      Any and all objections to the Motion or the relief requested therein that have not been withdrawn, waived, or settled, and all reservations of rights included therein, are hereby overruled on the merits.

**Approval of the Purchase Agreement**

3.      The Purchase Agreement and the transactions contemplated thereby shall be, and hereby are, approved.

4.      The consideration provided by the Purchaser for the Windsor Property under the Purchase Agreement is fair and reasonable and shall be deemed for all purposes to constitute value under the Bankruptcy Code or any other applicable law.

5.      Pursuant to sections 363(b) and (f) of the Bankruptcy Code, the Debtors are authorized and empowered to take any and all actions necessary or appropriate to: (a) consummate the sale of the Windsor Property to the Purchaser pursuant to, and in accordance with, the terms and conditions of the Purchase Agreement; (b) close the sale as contemplated in the Purchase Agreement and this Order; and (c) execute and deliver, perform under, consummate, implement, and close fully the Purchase Agreement, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Purchase Agreement and the sale, all without further order of this Court.

6.      For the avoidance of doubt, the Windsor Property does not include any "Purchased Assets" or "Designation Rights Assets" under (and as those terms are defined in) that certain Asset Purchase Agreement, dated as of May 8, 2023, as amended, by and among Stanadyne Operating Company LLC and the Debtors party thereto, and approved by that certain

Sale Order relating thereto [Docket No. 443], and the Debtors are not seeking to sell and the Purchaser is not seeking to purchase any such assets under the Purchase Agreement.

### Transfer of the Windsor Property

7.      The Debtors are authorized to sell the Windsor Property to the Purchaser upon the terms and conditions set forth in the Purchase Agreement and, upon consummation of the transaction contemplated by the Purchase Agreement, the Windsor Property shall be transferred to the Purchaser on an "as is, where is" basis as provided for under the Purchase Agreement and free and clear of any liens, claims, encumbrances, and interests (collectively, the "Interests") on the Windsor Property other than any permitted exceptions provided for in the Purchase Agreement; provided, that any such Interests on the Windsor Property shall attach to the proceeds of the sale with the same priority, validity, force and effect as they attached to the Windsor Property immediately before the closing date of the sale (such closing, the "Closing" and such date, the "Closing Date").

8.      The Purchaser shall close on the sale of the Windsor Property on or before the Closing Date, in accordance with the terms and conditions of the Purchase Agreement.

9.      The transfer of the Windsor Property to the Purchaser pursuant to the Purchase Agreement constitutes a legal, valid, and effective transfer of good and marketable title of the Windsor Property, and vests, or will vest, the Purchaser with all right, title, and interest to the Windsor Property, free and clear of all interests, except as otherwise expressly stated as obligations of the Purchaser under the Purchase Agreement.  All entities holding interests or claims of any kind or nature whatsoever against the Debtors or the Windsor Property are hereby and forever barred, estopped, and permanently enjoined from asserting against the Purchaser, its

30699360.5

successors or assigns, its property, or the Windsor Property any claim, interest or liability existing, accrued, or arising prior to the Closing.

10.    On the Closing Date, and subject to the terms and conditions of the Purchase Agreement, this Order shall be construed and shall constitute for any and all purposes a full and complete assignment, conveyance, and transfer of the Windsor Property or a bill of sale transferring good and marketable title of the Windsor Property to Purchaser.  This Order is and shall be effective as a determination that, on the Closing Date, all Interests of any kind or nature whatsoever existing as to the Windsor Property prior to the Closing Date, other than any permitted exceptions provided for in the Purchase Agreement, or as otherwise provided in this Order, shall have been unconditionally released, discharged, and terminated, and that the conveyances described herein have been affected.  This Order is and shall be binding upon and govern the acts of all persons, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal and local officials, and all other persons who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease; and each of the foregoing persons is hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the Purchase Agreement.  Each and every federal, state, and local governmental agency or department is hereby authorized to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Purchase Agreement.  A certified copy of this Order will be filed or recorded, as applicable, by the

30699360.5

Purchaser (a) with the appropriate clerk; (b) with the recorder; or (c) with any other applicable governmental agency to act to cancel any Interests against the Windsor Property, other than any permitted exceptions provided for in the Purchase Agreement.

11.    If any person or entity which has filed statements or other documents or agreements evidencing Interests on or in all or any portion of the Windsor Property (other than with respect to any permitted exceptions provided for in the Purchase Agreement) has not delivered to the Debtors prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of liens and easements, and any other documents necessary for the purpose of documenting the release of all Interests which such person or entity has or may assert with respect to all or a portion of the Windsor Property, the Debtors and the Purchaser are authorized to execute and file such statements, instruments, releases and other documents on behalf of such person or entity with respect to the Windsor Property; *provided that*, the Debtors and the Purchaser shall provide Cerberus Business Finance, LLC with ten (10) business days' advance written notice of their intent to seek to execute and file statements, instruments, releases and other documents on behalf of Cerberus Business Finance, LLC to provide Cerberus Business Finance, LLC the opportunity to execute and file such statements, instruments, releases, and other documents itself; *provided further that*, notwithstanding the foregoing, the provisions of this Order authorizing the transfer of the Windsor Property free and clear of all Interests (except only for any permitted exceptions provided for in the Purchase Agreement) shall be self-executing, and it shall not be, or be deemed, necessary for any person or entity to execute or file releases, termination statements, assignments, consents, or other instruments in order for the provisions of this Order to be implemented.

12.     Except with respect to any permitted exceptions set forth in the Purchase Agreement, or as otherwise permitted by the Purchase Agreement or this Order, all persons and entities, including, without limitation, all debt security holders, equity security holders, governmental, tax, and regulatory authorities, lenders, trade creditors, litigation claimants, and other creditors, holding interests of any kind or nature whatsoever against, or in, all or any portion of the Windsor Property, arising under, out of, in connection with, or in any way relating to, the Debtors, the Windsor Property, the operation of the Debtors' business prior to the Closing Date, or the transfer of the Windsor Property to Purchaser, are hereby forever barred, estopped, and permanently enjoined from asserting against Purchaser, or any of its affiliates, successors, or assigns, or their property or the Windsor Property, such persons' or entities' interests in and to the Windsor Property, including, without limitation, the following actions against the Purchaser or its affiliates, or their successors, assets, or properties:  (a) commencing or continuing in any manner any action or other proceeding; (b) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or other order; (c) creating, perfecting, or enforcing any lien or other claim; (d) asserting any set off, right of subrogation, or recoupment of any kind; (e) commencing or continuing any action, in any manner or place, that does not comply or is inconsistent with the provisions of this Order or any other order of this Court, or the agreements or actions contemplated or taken in respect thereof; or (f) revoking, terminating, or failing or refusing to transfer or renew any license, permit, or authorization to operate upon the Windsor Property or conduct any of the business operated upon the Windsor Property.

13.     Neither the Purchaser nor any of its affiliates are successors to the Debtors or their estates by reason of any theory of law or equity, and neither the Purchaser nor any of its affiliates shall assume or in any way be responsible for any liability or obligation of any of the Debtors

and/or their estates, except as otherwise expressly provided in the Purchase Agreement. The Purchaser (i) has not, de facto or otherwise, merged with or into one or more of the Debtors, (ii) is not a continuation or substantial continuation, and is not holding itself out as mere continuations, of any of the Debtors or of their respective estates, businesses or operations, or any enterprise of the Debtors, and (iii) do not have a common identity of incorporators, directors, or equity holders with any of the Debtors.

### Assumption, Assignment, and Sale of Assigned Contract

14.     Pursuant to sections 105(a), 363 and 365 of the Bankruptcy Code, and subject to and conditioned upon the occurrence of the Closing, the Debtors' assumption, assignment and sale to the Purchaser, and the Purchaser's assumption and purchase on the terms set forth in the Purchase Agreement of the Assigned Contract, is hereby approved in its entirety, and the requirements of section 363 and 365 of the Bankruptcy Code with respect thereto are hereby deemed satisfied. The Debtors are hereby authorized in accordance with sections 105(a), 363, and 365 of the Bankruptcy Code to (a) assume, assign, and sell to the Purchaser, effective as of the Closing (or thereafter pursuant to the Purchase Agreement), the Assigned Contract free and clear of all encumbrances of any kind or nature whatsoever and (b) execute and deliver to the Purchaser such documents or other instruments as may be necessary or reasonably requested by the Purchaser to assign and transfer the Assigned Contract to the Purchaser.

15.     Upon the date that the Assigned Contract is assumed, assigned, and sold, the Purchaser shall, in accordance with sections 363 and 365 of the Bankruptcy Code, be fully and irrevocably vested with all right, title, and interest in, to, and under such Assigned Contract. The Debtors shall cooperate with and take all actions reasonably requested by the Purchaser to effectuate the foregoing. The Purchaser shall likewise cooperate with the Debtors.

16.     The Assigned Contract shall be transferred to, and remain in full force and effect for the benefit of, the Purchaser notwithstanding any provision in any such Assigned Contract (including those of the type described in sections 365(b)(2) and 365(f) of the Bankruptcy Code) that prohibits, restricts, or conditions such assignment or transfer or requires any non-debtor counterparty to consent thereto.

17.     Pursuant to section 365(f) of the Bankruptcy Code, the assignment and sale by the Debtors to the Purchaser of the Assigned Contract shall not be a default thereunder.   Any provisions in the Assigned Contract that prohibit or condition the assignment and sale of such Assigned Contract or allow the non-debtor counterparty to such Assigned Contract to terminate, recapture, impose any penalty or condition on renewal or extension, purport to require the consent of any non-debtor counterparty, or modify any term or condition, in each case upon the assignment and sale of such Assigned Contract, constitute unenforceable anti-assignment provisions that are void and of no force and effect with respect to the assignment and sale of the Assigned Contract to the Purchaser.  The Assigned Contract shall remain in full force and effect following its assignment and sale to the Purchaser, without existing default(s), subject only to payment by the Purchaser of the Cure Cost.

18.     To the extent there is an unresolved objection with respect to the Assigned Contract, the Assigned Contract shall not be assumed, assigned, and sold to the Purchaser unless and until all such objections relating to such Assigned Contract are withdrawn or resolved by order of the Court or the non-debtor counterparty consents.

19.     The Cure Cost for the Assigned Contract is $0.  The non-debtor counterparty to the Assigned Contract shall be enjoined from taking any action against the Purchaser or the

Property with respect to any claim for cure.  The Debtors and the Purchaser shall not have any liabilities to the non-debtor counterparty to the Assigned Contract.

20.     If the non-debtor counterparty to the Assigned Contract has not filed with the Court, and served on the parties entitled to notice thereof, an objection to the assumption, assignment, and sale of the Assigned Contract by the deadline specified in the Supplement, such non-debtor counterparty is deemed to have consented to such assumption, assignment, and sale.

21.     As of the date of assignment and sale of the Assigned Contract to the Purchaser, the Purchaser shall be deemed to be substituted for the applicable Debtor as a party to the Assigned Contract, and the Debtors shall be relieved, pursuant to section 363(k) of the Bankruptcy Code, from any liability under the Assigned Contract arising from and after the date of the assignment and sale.

22.     The non-debtor counterparty to the Assigned Contract shall cooperate and expeditiously execute and deliver, upon the reasonable request of the Purchaser, and shall not charge the Purchaser for, any instruments, applications, consents, or other documents that may be required or requested by any public or quasi-public authority or other entity to effectuate the applicable transfers in connection with the sale.

23.     Pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code, the non-debtor counterparty to the Assigned Contract is forever barred and permanently enjoined from raising or asserting against the Debtors or the Purchaser any assignment fee, rent acceleration, rent increase on account of assignment, default, breach, claim, pecuniary loss, or condition to assignment arising under or relating to the Assigned Contract by reason of the assumption, assignment, and/or sale of such Assigned Contract.

24.     Notwithstanding any term of the Assigned Contract to the contrary, any extension or renewal options or other rights contained in such Assigned Contract that purport to be personal only, or exercisable only by, the Debtor(s), a named entity, or an entity operating under a specific trade name may, in each case, be freely exercised to their full extent by the Purchaser, subject to the other applicable terms of the Assigned Contract.  Any extension or renewal options in connection with any Assigned Contract that the applicable Debtor(s) have sought to exercise prior to the entry of this Order are deemed to have been timely and validly exercised by the Purchaser.

### Additional Provisions

25.     Pursuant to section 363(m) of the Bankruptcy Code, the Purchaser shall be, and hereby is, deemed to have purchased the Windsor Property in "good faith."

26.     The Debtors are authorized to take such actions as are necessary to implement the terms of this Order.

27.     Notwithstanding the provisions of Bankruptcy Rule 6004 or otherwise, this Order shall be effective and enforceable immediately upon entry, and the 14-day stay provided in such rules is hereby expressly waived and shall not apply.

28.     Nothing in this Order or the Purchase Agreement releases, nullifies, precludes, or enjoins the enforcement of any police or regulatory environmental liability to a governmental unit that any entity would be subject to as the post-sale owner or operator of property after the date of entry of this Order; *provided, however*, that all rights and defenses of the Purchaser under non-bankruptcy law are preserved.  Nothing in this Order or the Purchase Agreement authorizes the transfer or assignment of any governmental (a) license, (b) permit, (c) registration, (d) authorization or (e) approval, or the discontinuation of any obligation thereunder, without

compliance with all applicable legal requirements and approvals under police or regulatory law. Nothing in this Order divests any tribunal of any jurisdiction it may have under police or regulatory law to interpret this Order or to adjudicate any defense asserted under this Order with respect to any police or regulatory environmental liability to a governmental unit to the extent set forth in this paragraph.

29.     The terms and provisions of this Order shall be binding in all respects upon the Debtors, their estates, all creditors, officers, directors, advisors, members, managers, and all holders of equity in the Debtors, all holders of any claim(s) (whether known or unknown) against the Debtors, any holders of liens, claims, encumbrances, or interest against or on all or any portion of the Windsor Property, the Purchaser, and all successors and assigns of the Purchaser, and any trustees, if any, subsequently appointed in the Chapter 11 Cases or upon a conversion to chapter 7 under the Bankruptcy Code of the Chapter 11 Cases.

30.     Nothing contained in any chapter 11 plan confirmed in the Chapter 11 Cases, an order confirming a chapter 11 plan in these Chapter 11 Cases, any order approving the wind down or dismissal of the Chapter 11 Cases, or any order entered upon the conversion of the Chapter 11 Cases to one or more cases under chapter 7 of the Bankruptcy Code or otherwise shall conflict with or derogate from the provisions of the Purchase Agreement or this Order.  In the event there is a conflict between the terms of any subsequent chapter 11 plan or any order to be entered in the Chapter 11 Cases (including any order entered after conversion of the Chapter 11 Cases to cases under Chapter 7 of the Bankruptcy Code), the terms of this Order shall control.

31.     The Purchase Agreement and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the parties thereto, in a writing signed by such parties, and in accordance with the terms thereof, without further order of the

Court, provided that such modification, amendment, or supplement does not have a material adverse effect on the Debtors' estates.

32.     This Court shall retain jurisdiction over the parties for the purpose of enforcing the terms and provisions of this Order.

**EXHIBIT 1**

**Original Agreement**

**<u>EXHIBIT 2</u>**

**Amendment**

**<u>EXHIBIT B</u>**

**Blackline**

30800199.1

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| *In re* | Chapter 11 |
| **STANADYNE LLC, *et al.*[1]** | Case No. 23-10207 (TMH) |
| **Debtors.** | (Jointly Administered) |
| | **Ref. Docket Nos. 486 & 550** |

~~**ORDER (I) AUTHORIZING THE SALE OF THE WINDSOR PROPERTY TO INDUSTRIAL REALTY GROUP, LLC**~~**ORDER (I) AUTHORIZING THE SALE OF THE WINDSOR PROPERTY TO INDUSTRIAL REALTY GROUP, LLC FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS; (II) APPROVING THE PURCHASE AND SALE AGREEMENT; AND (III) GRANTING RELATED RELIEF**

Upon consideration of the motion (the "Motion") of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), as supplemented by the *Supplement to Debtors' Motion for Entry of an Order (I) Authorizing the Debtors to Abandon or, Alternatively Sell the Windsor Property and (II) for Related Relief* (the "Supplement"),[2] for entry of an order, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, Bankruptcy Rules 2002, 6004 and 9014, and Local Rule 6004-1, authorizing the sale of the "Property" (as defined in section 1 of the Purchase Agreement, the "Windsor Property") free and clear of liens, claims, encumbrances, and interests to Industrial Realty Group, LLC (together with its designees,

---

[1]    The debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number are:  Stanadyne LLC (0378); Pure Power Technologies, Inc. (5202); Stanadyne PPT Holdings, Inc. (2594); and Stanadyne PPT Group Holdings, Inc. (1734).  The Debtors' headquarters are located at 405 White Street, Jacksonville, North Carolina 28546.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion, the Supplement, or the Purchase Agreement (defined below), as applicable.



successors, or assigns, as applicable, under the Purchase Agreement, the "Purchaser"),[3] pursuant to the terms and conditions of that certain Purchase and Sale Agreement (the "Original Agreement"), a copy of which is attached hereto as **Exhibit 1**, as amended by the First Amendment to Purchase and Sale Agreement, a copy of which is attached hereto as **Exhibit ~~1~~2** (the "Amendment" and together with the Original Agreement, and as may be further amended from time to time, the "Purchase Agreement"); and it appearing that due and sufficient notice of the Motion and the Supplement and the relief sought in connection therewith having been provided to all parties in interest; and it further appearing that no other or further notice hereof is required; and this Court having reviewed and considered the Motion, the Supplement, and any objections thereto; and this Court having heard statements of counsel and the evidence presented at any hearing in support of the relief requested in the Motion and Supplement; and it appearing that the relief requested in the Motion and Supplement is in the best interest of the Debtors' estates, their creditors, and other parties in interest; and it further appearing that the legal and factual bases set forth in the Motion and Supplement establish just cause for the relief granted herein; and after due deliberation and sufficient cause therefor,

**THE COURT HEREBY FINDS THAT:**[24]

**Jurisdiction, Final Order, and Statutory Predicates**

A.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012.  This is a core proceeding pursuant to 28

---

[3]    Pursuant to the Purchase Agreement, Industrial Realty Group, LLC intends to assign its rights and obligations under the Purchase Agreement to its affiliated entity, Windsor Deerfield, LLC.

[24]    Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate pursuant to Rule 7052 of the Bankruptcy Rules.



U.S.C. § 157(b)(2).  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief sought in the Motion and Supplement are sections 105(a), 363(b), and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, and 9014, and Local Rule 6004-1.

B.      To maximize the value of the Windsor Property while avoiding unnecessary administrative expense and delay, it is essential that the sale of the Windsor Property occur within the time constraints set forth in the Motion and the Purchase Agreement.  Time is of the essence in consummating the sale.  Therefore, notwithstanding Bankruptcy Rule 6004(h), this Court finds that there is no just reason for delay in the implementation of this Order, and that waiver of any applicable waiting period is appropriate.

C.      The Windsor Property constitutes property of the Debtors' estates, and title thereto is vested in the Debtors' estates within the meaning of section 541(a) of the Bankruptcy Code.

### Notice of Hearing

D.      As evidenced by the affidavits of service previously filed with this Court and the record herein, and based on the representations of counsel, due, proper, timely, adequate, and sufficient notice of the Motion, the Supplement, the sale and the Hearing (as defined below) were provided as set forth in the Motion and Supplement.  Such notice constitutes good and sufficient notice of the Motion, the Supplement, the sale, and the hearing on the Motion and Supplement (the "Hearing"), if any, and no other or further notice of the Motion, the Supplement, the sale, or the Hearing is required.  Notice has been provided to, and a reasonable opportunity to object or to be heard regarding the Motion, the Supplement, the sale, and the Hearing has been afforded to, all interested persons and entities, including, among others:  (i) the



Office of the United States Trustee for the District of Delaware; (ii) counsel to the Official Committee of Unsecured Creditors; (iii) counsel for the Prepetition Agent for the Prepetition Secured Lenders; (iv) the Connecticut Department of Energy and Environmental Protection; (v) the United States Environmental Protection Agency; (vi) the Town of Windsor; (vii) Hartford County; (viii) the State of Connecticut; (ix) any entity known to have expressed an interest during the past six months in acquiring the Windsor Property; (x) any party asserting a lien on the Windsor Property; (xi) the counterparty to the Assigned Contract (defined below); and (xii) those parties which, as of the filing of the Motion, had filed formal requests for notice in these Chapter 11 Cases pursuant to Bankruptcy Rule 2002.

### Sound Business Judgment

E.     The Debtors have articulated good and sufficient reasons for this Court to grant the relief requested in the Motion regarding the sale, the approval of the Purchase Agreement, and all other matters related to the sale or the Motion.  Such business reasons include, but are not limited to, the facts that (i) the Purchase Agreement constitutes the highest or best offer for the Windsor Property, (ii) no other person or entity or group of persons or entities has offered to purchase the Windsor Property for greater economic value to the Debtors' estates than the Purchaser, and (iii) the sale pursuant to the terms of the Purchase Agreement presents the best opportunity to realize the value of the Windsor Property.  For these reasons, the relief provided for herein is within the reasonable business judgment of the Debtors, and is in the best interests of the Debtors, their estates and creditors, and other parties in interest.

F.     The Debtors have demonstrated a good, sufficient, and sound business purpose, and justification and compelling circumstances, for entry into the Purchase Agreement and the consummation of the sale pursuant to section 363(b) of the Bankruptcy Code, in that the


30699360.4
30699360.5

immediate consummation of the sale to the Purchaser is necessary and appropriate to maximize the value to the Debtors' estates and, thereby, is in the best interests of the Debtors, their estates, their creditors, and other parties in interest.

### Good Faith of Purchaser

G.    The Purchaser is not an "insider" of any of the Debtors, as that term is defined in section 101(31) of the Bankruptcy Code.  The Purchase Agreement was negotiated, proposed, and entered into by the Debtors and the Purchaser without collusion, in good faith, from arm's length bargaining positions, and is substantively and procedurally fair to all parties.  The Purchaser is, therefore, a good faith purchaser within the meaning of section 363(m) of the Bankruptcy Code and, therefore, entitled to the protections and immunities afforded thereby.  Neither the Debtors nor the Purchaser have engaged in any conduct that would prevent the application of section 363(m) of the Bankruptcy Code or cause the application of, or implicate, section 363(n) of the Bankruptcy Code to the Purchase Agreement, or to otherwise prevent the consummation of the sale.  In the absence of a stay pending appeal, the Purchaser will be acting in good faith within the meaning of section 363(m) of the Bankruptcy Code in closing the transactions set forth in the Purchase Agreement at any time after entry of this Order.

### Highest and Best Offer

H.    The offer of the Purchaser, upon the terms and conditions set forth in the Purchase Agreement:  (i) is the highest or otherwise best offer received by the Debtors with respect to the Windsor Property; (ii) is fair and reasonable; (iii) is in the best interest of the Debtors, their estates, and their creditors; and (iv) constitutes full, fair, and adequate consideration and reasonably equivalent value for the Windsor Property under the Bankruptcy Code and under the laws of the United States, any state, territory, or possession.



**Validity and Free and Clear Nature of Transfers**

I.        The transfer of the Windsor Property to the Purchaser pursuant to the Purchase Agreement will be, as of the closing, a legal, valid, and effective transfer of good and marketable title of the Windsor Property, and will vest the Purchaser with all right, title, and interest of the Debtors to the Windsor Property, free and clear of all liens, claims, encumbrances, and interests of any kind or nature, on an "as is, where is" basis, as set forth in the Purchase Agreement, arising or relating thereto at any time prior to the closing, except as otherwise provided for under the Purchase Agreement, because one or more of the standards set forth in section 363(f) of the Bankruptcy Code have been satisfied.

J.        The Debtors may sell the Windsor Property free and clear of all liens, claims, encumbrances, and interests, except as otherwise provided for under the Purchase Agreement, because, in each case, one or more of the standards set forth in section 363(f)(1)–(5) of the Bankruptcy Code has been satisfied.  Those non-Debtor parties with interests in the Windsor Property which did not object, or which withdrew their objections, to the sale, the Motion, or the Supplement are deemed to have consented to the sale pursuant to sections 363(f)(2) and 365 of the Bankruptcy Code.  Those non-Debtor parties with interests in the Windsor Property which did object fall within one or more of the other subsections of sections 363(f) and 365 of the Bankruptcy Code, and such objections are expressly overruled.  Accordingly, all persons having such liens, claims, encumbrances, and interests of any kind or nature whatsoever against or in any of the Windsor Property, except as otherwise provided for under the Purchase Agreement, shall be forever barred, estopped, and permanently enjoined from pursuing or asserting such liens, claims, encumbrances, and interests against the Purchaser or any of its respective assets, property, successors, or assigns.



K.     Except as otherwise provided for under the Purchase Agreement, the transfer of the Windsor Property to the Purchaser will not subject the Purchaser to any liability for claims against the Debtors by reason of such transfers under the laws of the United States, any state, territory, or possession thereof.

L.     The Debtors have demonstrated (i) good, sufficient, and sound business purposes and justifications and (ii) compelling circumstances for the sale pursuant to section 363(b) of the Bankruptcy Code in that, among other things, absent the sale the value of the Debtors' estates would be harmed.



**Assigned Contract**

M.      As set forth herein, and subject only to payment of cure costs, all requirements and conditions under the Bankruptcy Code and other applicable law for the Debtors' assumption, assignment, and sale to the Purchaser of the contract identified on Exhibit B to the Supplement (the "Assigned Contract") have been satisfied.  The Debtors have demonstrated that the assumption, assignment, and sale of the Assigned Contract contemplated by the Purchase Agreement is an exercise of their sound business judgment and is in the best interests of the Debtors, their estates and creditors, and other parties in interest.  The Assigned Contract to be assumed, assigned, and sold to the Purchaser under the terms of the Purchase Agreement is an integral part of the Purchase Agreement and the sale of the Windsor Property, and, accordingly, such assumption, assignment, and sale is reasonable and enhances the value of the Debtors' estates.  The Assigned Contract is in full force and effect and has not been rejected, and the Debtors' time to assume or reject the Assigned Contract has not otherwise expired.  The cure cost listed on Exhibit B to the supplement (the "Cure Cost") shall constitute the cure cost for the Assigned Contract, and payment thereof is sufficient for the Debtors to comply fully with the requirements of section 365(b) of the Bankruptcy Code.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

**General Provisions**

1.      The Motion is hereby GRANTED as set forth herein.

2.      Any and all objections to the Motion or the relief requested therein that have not been withdrawn, waived, or settled, and all reservations of rights included therein, are hereby overruled on the merits.



**Approval of the Purchase Agreement**

3.      The Purchase Agreement and the transactions contemplated thereby shall be, and hereby are, approved.

4.      The consideration provided by the Purchaser for the Windsor Property under the Purchase Agreement is fair and reasonable and shall be deemed for all purposes to constitute value under the Bankruptcy Code or any other applicable law.

5.      Pursuant to sections 363(b) and (f) of the Bankruptcy Code, the Debtors are authorized and empowered to take any and all actions necessary or appropriate to: (a) consummate the sale of the Windsor Property to the Purchaser pursuant to, and in accordance with, the terms and conditions of the Purchase Agreement; (b) close the sale as contemplated in the Purchase Agreement and this Order; and (c) execute and deliver, perform under, consummate, implement, and close fully the Purchase Agreement, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Purchase Agreement and the sale, all without further order of this Court.

6.      For the avoidance of doubt, the Windsor Property does not include any "Purchased Assets" or "Designation Rights Assets" under (and as those terms are defined in) that certain Asset Purchase Agreement, dated as of May 8, 2023, as amended, by and among Stanadyne Operating Company LLC and the Debtors party thereto, and approved by that certain Sale Order relating thereto [Docket No. 443], and the Debtors are not seeking to sell and the Purchaser is not seeking to purchase any such assets under the Purchase Agreement.

**Transfer of the Windsor Property**

7.      The Debtors are authorized to sell the Windsor Property to the Purchaser upon the terms and conditions set forth in the Purchase Agreement and, upon consummation of the



transaction contemplated by the Purchase Agreement, the Windsor Property shall be transferred to the Purchaser on an "as is, where is" basis as provided for under the Purchase Agreement and free and clear of any liens, claims, encumbrances, and interests (collectively, the "<u>Interests</u>") on the Windsor Property other than any permitted exceptions provided for in the Purchase Agreement; <u>provided</u>, that any such Interests on the Windsor Property shall attach to the proceeds of the sale with the same priority, validity, force and effect as they attached to the Windsor Property immediately before the closing date of the sale (such closing, the "<u>Closing</u>" and such date, the "<u>Closing Date</u>").

8.     The Purchaser shall close on the sale of the Windsor Property on or before the Closing Date, in accordance with the terms and conditions of the Purchase Agreement.

9.     The transfer of the Windsor Property to the Purchaser pursuant to the Purchase Agreement constitutes a legal, valid, and effective transfer of good and marketable title of the Windsor Property, and vests, or will vest, the Purchaser with all right, title, and interest to the Windsor Property, free and clear of all interests, except as otherwise expressly stated as obligations of the Purchaser under the Purchase Agreement.  All entities holding interests or claims of any kind or nature whatsoever against the Debtors or the Windsor Property are hereby and forever barred, estopped, and permanently enjoined from asserting against the Purchaser, its successors or assigns, its property, or the Windsor Property any claim, interest or liability existing, accrued, or arising prior to the Closing.

10.     On the Closing Date, and subject to the terms and conditions of the Purchase Agreement, this Order shall be construed and shall constitute for any and all purposes a full and complete assignment, conveyance, and transfer of the Windsor Property or a bill of sale transferring good and marketable title of the Windsor Property to Purchaser.  This Order is and



shall be effective as a determination that, on the Closing Date, all Interests of any kind or nature whatsoever existing as to the Windsor Property prior to the Closing Date, other than any permitted exceptions provided for in the Purchase Agreement, or as otherwise provided in this Order, shall have been unconditionally released, discharged, and terminated, and that the conveyances described herein have been affected.  This Order is and shall be binding upon and govern the acts of all persons, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal and local officials, and all other persons who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease; and each of the foregoing persons is hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the Purchase Agreement.  Each and every federal, state, and local governmental agency or department is hereby authorized to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Purchase Agreement.  A certified copy of this Order will be filed or recorded, as applicable, by the Purchaser (a) with the appropriate clerk; (b) with the recorder; or (c) with any other applicable governmental agency to act to cancel any Interests against the Windsor Property, other than any permitted exceptions provided for in the Purchase Agreement.

11.     If any person or entity which has filed statements or other documents or agreements evidencing Interests on or in all or any portion of the Windsor Property (other than with respect to any permitted exceptions provided for in the Purchase Agreement) has not



delivered to the Debtors prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of liens and easements, and any other documents necessary for the purpose of documenting the release of all Interests which such person or entity has or may assert with respect to all or a portion of the Windsor Property, the Debtors and the Purchaser are authorized to execute and file such statements, instruments, releases and other documents on behalf of such person or entity with respect to the Windsor Property; *provided that*, the Debtors and the Purchaser shall provide Cerberus Business Finance, LLC with ten (10) business days' advance written notice of their intent to seek to execute and file statements, instruments, releases and other documents on behalf of Cerberus Business Finance, LLC to provide Cerberus Business Finance, LLC the opportunity to execute and file such statements, instruments, releases, and other documents itself; *provided further that*, notwithstanding the foregoing, the provisions of this Order authorizing the transfer of the Windsor Property free and clear of all Interests (except only for any permitted exceptions provided for in the Purchase Agreement) shall be self-executing, and it shall not be, or be deemed, necessary for any person or entity to execute or file releases, termination statements, assignments, consents, or other instruments in order for the provisions of this Order to be implemented.

12.    Except with respect to any permitted exceptions set forth in the Purchase Agreement, or as otherwise permitted by the Purchase Agreement or this Order, all persons and entities, including, without limitation, all debt security holders, equity security holders, governmental, tax, and regulatory authorities, lenders, trade creditors, litigation claimants, and other creditors, holding interests of any kind or nature whatsoever against, or in, all or any portion of the Windsor Property, arising under, out of, in connection with, or in any way relating



12

to, the Debtors, the Windsor Property, the operation of the Debtors' business prior to the Closing Date, or the transfer of the Windsor Property to Purchaser, are hereby forever barred, estopped, and permanently enjoined from asserting against Purchaser, or any of its affiliates, successors, or assigns, or their property or the Windsor Property, such persons' or entities' interests in and to the Windsor Property, including, without limitation, the following actions against the Purchaser or its affiliates, or their successors, assets, or properties:  (a) commencing or continuing in any manner any action or other proceeding; (b) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or other order; (c) creating, perfecting, or enforcing any lien or other claim; (d) asserting any set off, right of subrogation, or recoupment of any kind; (e) commencing or continuing any action, in any manner or place, that does not comply or is inconsistent with the provisions of this Order or any other order of this Court, or the agreements or actions contemplated or taken in respect thereof; or (f) revoking, terminating, or failing or refusing to transfer or renew any license, permit, or authorization to operate upon the Windsor Property or conduct any of the business operated upon the Windsor Property.

13.     Neither the Purchaser nor any of its affiliates are successors to the Debtors or their estates by reason of any theory of law or equity, and neither the Purchaser nor any of its affiliates shall assume or in any way be responsible for any liability or obligation of any of the Debtors and/or their estates, except as otherwise expressly provided in the Purchase Agreement.  The Purchaser (i) has not, de facto or otherwise, merged with or into one or more of the Debtors, (ii) is not a continuation or substantial continuation, and is not holding itself out as mere continuations, of any of the Debtors or of their respective estates, businesses or operations, or any enterprise of the Debtors, and (iii) do not have a common identity of incorporators, directors, or equity holders with any of the Debtors.



**<u>Assumption, Assignment, and Sale of Assigned Contract</u>**

14.    Pursuant to sections 105(a), 363 and 365 of the Bankruptcy Code, and subject to and conditioned upon the occurrence of the Closing, the Debtors' assumption, assignment and sale to the Purchaser, and the Purchaser's assumption and purchase on the terms set forth in the Purchase Agreement of the Assigned Contract, is hereby approved in its entirety, and the requirements of section 363 and 365 of the Bankruptcy Code with respect thereto are hereby deemed satisfied.  The Debtors are hereby authorized in accordance with sections 105(a), 363, and 365 of the Bankruptcy Code to (a) assume, assign, and sell to the Purchaser, effective as of the Closing (or thereafter pursuant to the Purchase Agreement), the Assigned Contract free and clear of all encumbrances of any kind or nature whatsoever and (b) execute and deliver to the Purchaser such documents or other instruments as may be necessary or reasonably requested by the Purchaser to assign and transfer the Assigned Contract to the Purchaser.

15.    Upon the date that the Assigned Contract is assumed, assigned, and sold, the Purchaser shall, in accordance with sections 363 and 365 of the Bankruptcy Code, be fully and irrevocably vested with all right, title, and interest in, to, and under such Assigned Contract.  The Debtors shall cooperate with and take all actions reasonably requested by the Purchaser to effectuate the foregoing.  The Purchaser shall likewise cooperate with the Debtors.

16.    The Assigned Contract shall be transferred to, and remain in full force and effect for the benefit of, the Purchaser notwithstanding any provision in any such Assigned Contract (including those of the type described in sections 365(b)(2) and 365(f) of the Bankruptcy Code) that prohibits, restricts, or conditions such assignment or transfer or requires any non-debtor counterparty to consent thereto.



14

17.     Pursuant to section 365(f) of the Bankruptcy Code, the assignment and sale by the Debtors to the Purchaser of the Assigned Contract shall not be a default thereunder.  Any provisions in the Assigned Contract that prohibit or condition the assignment and sale of such Assigned Contract or allow the non-debtor counterparty to such Assigned Contract to terminate, recapture, impose any penalty or condition on renewal or extension, purport to require the consent of any non-debtor counterparty, or modify any term or condition, in each case upon the assignment and sale of such Assigned Contract, constitute unenforceable anti-assignment provisions that are void and of no force and effect with respect to the assignment and sale of the Assigned Contract to the Purchaser.  The Assigned Contract shall remain in full force and effect following its assignment and sale to the Purchaser, without existing default(s), subject only to payment by the Purchaser of the Cure Cost.

18.     To the extent there is an unresolved objection with respect to the Assigned Contract, the Assigned Contract shall not be assumed, assigned, and sold to the Purchaser unless and until all such objections relating to such Assigned Contract are withdrawn or resolved by order of the Court or the non-debtor counterparty consents.

19.     The Cure Cost for the Assigned Contract is $0.  The non-debtor counterparty to the Assigned Contract shall be enjoined from taking any action against the Purchaser or the Property with respect to any claim for cure.  The Debtors and the Purchaser shall not have any liabilities to the non-debtor counterparty to the Assigned Contract.

20.     If the non-debtor counterparty to the Assigned Contract has not filed with the Court, and served on the parties entitled to notice thereof, an objection to the assumption, assignment, and sale of the Assigned Contract by the deadline specified in the Supplement, such non-debtor counterparty is deemed to have consented to such assumption, assignment, and sale.



21.     As of the date of assignment and sale of the Assigned Contract to the Purchaser, the Purchaser shall be deemed to be substituted for the applicable Debtor as a party to the Assigned Contract, and the Debtors shall be relieved, pursuant to section 363(k) of the Bankruptcy Code, from any liability under the Assigned Contract arising from and after the date of the assignment and sale.

22.     The non-debtor counterparty to the Assigned Contract shall cooperate and expeditiously execute and deliver, upon the reasonable request of the Purchaser, and shall not charge the Purchaser for, any instruments, applications, consents, or other documents that may be required or requested by any public or quasi-public authority or other entity to effectuate the applicable transfers in connection with the sale.

23.     Pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code, the non-debtor counterparty to the Assigned Contract is forever barred and permanently enjoined from raising or asserting against the Debtors or the Purchaser any assignment fee, rent acceleration, rent increase on account of assignment, default, breach, claim, pecuniary loss, or condition to assignment arising under or relating to the Assigned Contract by reason of the assumption, assignment, and/or sale of such Assigned Contract.

24.     Notwithstanding any term of the Assigned Contract to the contrary, any extension or renewal options or other rights contained in such Assigned Contract that purport to be personal only, or exercisable only by, the Debtor(s), a named entity, or an entity operating under a specific trade name may, in each case, be freely exercised to their full extent by the Purchaser, subject to the other applicable terms of the Assigned Contract.  Any extension or renewal options in connection with any Assigned Contract that the applicable Debtor(s) have sought to exercise



prior to the entry of this Order are deemed to have been timely and validly exercised by the Purchaser.

**<u>Additional Provisions</u>**

25.     Pursuant to section 363(m) of the Bankruptcy Code, the Purchaser shall be, and hereby is, deemed to have purchased the Windsor Property in "good faith."

26.     The Debtors are authorized to take such actions as are necessary to implement the terms of this Order.

27.     Notwithstanding the provisions of Bankruptcy Rule 6004 or otherwise, this Order shall be effective and enforceable immediately upon entry, and the 14-day stay provided in such rules is hereby expressly waived and shall not apply.

28.     Nothing in this Order or the Purchase Agreement releases, nullifies, precludes, or enjoins the enforcement of any police or regulatory environmental liability to a governmental unit that any entity would be subject to as the post-sale owner or operator of property after the date of entry of this Order; *provided, however*, that all rights and defenses of the Purchaser under non-bankruptcy law are preserved.  Nothing in this Order or the Purchase Agreement authorizes the transfer or assignment of any governmental (a) license, (b) permit, (c) registration, (d) authorization or (e) approval, or the discontinuation of any obligation thereunder, without compliance with all applicable legal requirements and approvals under police or regulatory law. Nothing in this Order divests any tribunal of any jurisdiction it may have under police or regulatory law to interpret this Order or to adjudicate any defense asserted under this Order with respect to any police or regulatory environmental liability to a governmental unit to the extent set forth in this paragraph.



17

29.     The terms and provisions of this Order shall be binding in all respects upon the Debtors, their estates, all creditors, officers, directors, advisors, members, managers, and all holders of equity in the Debtors, all holders of any claim(s) (whether known or unknown) against the Debtors, any holders of liens, claims, encumbrances, or interest against or on all or any portion of the Windsor Property, the Purchaser, and all successors and assigns of the Purchaser, and any trustees, if any, subsequently appointed in the Chapter 11 Cases or upon a conversion to chapter 7 under the Bankruptcy Code of the Chapter 11 Cases.

30.     Nothing contained in any chapter 11 plan confirmed in the Chapter 11 Cases, an order confirming a chapter 11 plan in these Chapter 11 Cases, any order approving the wind down or dismissal of the Chapter 11 Cases, or any order entered upon the conversion of the Chapter 11 Cases to one or more cases under chapter 7 of the Bankruptcy Code or otherwise shall conflict with or derogate from the provisions of the Purchase Agreement or this Order.  In the event there is a conflict between the terms of any subsequent chapter 11 plan or any order to be entered in the Chapter 11 Cases (including any order entered after conversion of the Chapter 11 Cases to cases under Chapter 7 of the Bankruptcy Code), the terms of this Order shall control.

31.     The Purchase Agreement and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the parties thereto, in a writing signed by such parties, and in accordance with the terms thereof, without further order of the Court, provided that such modification, amendment, or supplement does not have a material adverse effect on the Debtors' estates.

32.     This Court shall retain jurisdiction over the parties for the purpose of enforcing the terms and provisions of this Order.



## EXHIBIT 1

**~~Purchase~~Original Agreement**

**EXHIBIT 2**

**Amendment**

| **Summary report:** <br> **Litera Compare for Word 11.4.0.111 Document comparison done on** <br> **9/25/2023 12:58:31 PM** | |
|---|---|
| **Style name:** Default Style | |
| **Intelligent Table Comparison:** Active | |
| **Original DMS:** iw://ycstwork.ycst.com/YCST01/30699360/4 | |
| **Modified DMS:** iw://ycstwork.ycst.com/YCST01/30699360/5 | |
| **Changes:** | |
| Add | 20 |
| Delete | 11 |
| Move From | 0 |
| Move To | 0 |
| Table Insert | 0 |
| Table Delete | 0 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 31 |