## EXHIBIT A

**Purchase Order**



Page 1 of 3

# Purchase Order
Stanadyne LLC
405 White Street
Jacksonville, NC 28546
United States

**ORDER NUMBER MUST BE SHOWN ON ALL PAPERS, INVOICES, CASES AND PACKAGES**

| | |
|---|---|
| Order # | 31026281 |
| Date | 2/28/2023 |
| Sales Tax ID | 006709145 |

| SHIPPED FROM | COOPER STANDARD EL JARUDO<br>12425 Rojas Drive Bldg 1<br>El Paso<br>Texas<br>79928<br>USA | SHIP TO | STANADYNE LLC<br>405 WHITE STREET<br>JACKSONVILLE<br>North Carolina<br>28546<br>USA |
|---|---|---|---|

| Ship Via | | Currency | USD |
|---|---|---|---|
| Shipping Terms | SHIPPING POINT | Payment Terms | NET 45 DAYS |

| Comments: |
|---|
| Stellantis PN 68593185AA - Rail, Bare Bundle |

| Part No. | Description | Qty. | UOM | Rev. | Due Date | Unit Price | Ext. Price |
|---|---|---|---|---|---|---|---|
| 607897 | RAIL, BARE BUNDLE 20931 | 300 | EA | 02 | 5/15/2023 | 110.0000 | 33000.00 |
| 607897 | RAIL, BARE BUNDLE 20931 | 300 | EA | 02 | 5/22/2023 | 110.0000 | 33000.00 |
| 607897 | RAIL, BARE BUNDLE 20931 | 300 | EA | 02 | 5/29/2023 | 110.0000 | 33000.00 |
| 607897 | RAIL, BARE BUNDLE 20931 | 300 | EA | 02 | 6/5/2023 | 110.0000 | 33000.00 |
| 607897 | RAIL, BARE BUNDLE 20931 | 300 | EA | 02 | 6/12/2023 | 110.0000 | 33000.00 |
| 607897 | RAIL, BARE BUNDLE 20931 | 300 | EA | 02 | 6/19/2023 | 110.0000 | 33000.00 |
| 607897 | RAIL, BARE BUNDLE 20931 | 300 | EA | 02 | 6/26/2023 | 110.0000 | 33000.00 |
| 607897 | RAIL, BARE BUNDLE 20931 | 300 | EA | 02 | 7/3/2023 | 110.0000 | 33000.00 |
| 607897 | RAIL, BARE BUNDLE 20931 | 300 | EA | 02 | 7/10/2023 | 110.0000 | 33000.00 |
| 607897 | RAIL, BARE BUNDLE 20931 | 300 | EA | 02 | 7/17/2023 | 110.0000 | 33000.00 |
| 607897 | RAIL, BARE BUNDLE 20931 | 300 | EA | 02 | 7/24/2023 | 110.0000 | 33000.00 |
| 607897 | RAIL, BARE BUNDLE 20931 | 300 | EA | 02 | 7/31/2023 | 110.0000 | 33000.00 |
| 607897 | RAIL, BARE BUNDLE 20931 | 300 | EA | 02 | 8/7/2023 | 110.0000 | 33000.00 |
| 607897 | RAIL, BARE BUNDLE 20931 | 300 | EA | 02 | 8/14/2023 | 110.0000 | 33000.00 |
| 607897 | RAIL, BARE BUNDLE 20931 | 300 | EA | 02 | 8/21/2023 | 110.0000 | 33000.00 |
| 607897 | RAIL, BARE BUNDLE 20931 | 300 | EA | 02 | 8/28/2023 | 110.0000 | 33000.00 |
| 607897 | RAIL, BARE BUNDLE 20931 | 300 | EA | 02 | 9/4/2023 | 110.0000 | 33000.00 |
| 607897 | RAIL, BARE BUNDLE 20931 | 300 | EA | 02 | 9/11/2023 | 110.0000 | 33000.00 |
| 607897 | RAIL, BARE BUNDLE 20931 | 300 | EA | 02 | 9/18/2023 | 110.0000 | 33000.00 |



# Purchase Order

Stanadyne LLC
405 White Street
Jacksonville, NC 28546
United States

Page 2 of 3

**ORDER NUMBER MUST BE SHOWN ON ALL PAPERS, INVOICES, CASES AND PACKAGES**

| | |
|---|---|
| Order # | 31026281 |
| Date | 2/28/2023 |
| Sales Tax ID | 006709145 |

| SHIPPED FROM | SHIP TO |
|---|---|
| COOPER STANDARD EL JARUDO<br>12425 Rojas Drive Bldg 1<br>El Paso<br>Texas<br>79928<br>USA | STANADYNE LLC<br>405 WHITE STREET<br>JACKSONVILLE<br>North Carolina<br>28546<br>USA |

| Ship Via | | Currency | USD |
|---|---|---|---|
| Shipping Terms | SHIPPING POINT | Payment Terms | NET 45 DAYS |

| Part No. | Description | Qty. | UOM | Rev. | Due Date | Unit Price | Ext. Price |
|---|---|---|---|---|---|---|---|
| 607897 | RAIL, BARE BUNDLE 20931 | 300 | EA | 02 | 9/25/2023 | 110.0000 | 33000.00 |
| 607897 | RAIL, BARE BUNDLE 20931 | 300 | EA | 02 | 10/2/2023 | 110.0000 | 33000.00 |
| 607897 | RAIL, BARE BUNDLE 20931 | 300 | EA | 02 | 10/9/2023 | 110.0000 | 33000.00 |
| 607897 | RAIL, BARE BUNDLE 20931 | 300 | EA | 02 | 10/16/2023 | 110.0000 | 33000.00 |
| 607897 | RAIL, BARE BUNDLE 20931 | 300 | EA | 02 | 10/23/2023 | 110.0000 | 33000.00 |
| 607897 | RAIL, BARE BUNDLE 20931 | 300 | EA | 02 | 10/30/2023 | 110.0000 | 33000.00 |
| 607897 | RAIL, BARE BUNDLE 20931 | 200 | EA | 02 | 11/6/2023 | 110.0000 | 22000.00 |
| | | | | | | Tax Amount | .00 |
| | | | | | | Total | 847000.00 |

THE DATES AND QUANTITIES SHOWN ON THIS DOCUMENT REFLECT QUANTITIES THAT ARE NETTED AGAINST RECEIPTS TO DATE
STANADYNE REQUIRES 100% ON-TIME DELIVERY
NO RESPONSIBILITY WILL BE ASSUMED FOR VERBAL ORDERS OR INTRUCTIONS GIVEN BY EMPLOYEES OUTSIDE OF THE PURCHASING DEPT.

INVOICES AND PACKING LIST AND APPLICABLE CERTS, IN DUPLICATE, TO BE SENT TO "SHIP TO" CONSIGNEE.
DELIVERIES WILL BE ACCEPTED ONLY BETWEEN 7:30AM – 11:30AM and 12:30PM-3:00 PM MONDAY THROUGH FRIDAY EXCEPT BY SPECIAL ARRANGEMENT. INSTRUCT CARRIER ACCORDINGLY.
THIS ORDER IS SUBJECT TO TERMS OF PURCHASE AS STATED ON REVERSE SIDE.

AUTHORIZED BUYER

*Seller should accept this Purchase Order by signing and returning it to Stanadyne; provided that this order shall otherwise be deemed accepted after 10 days from receipt absent any written objection.*

Accepted: _____

Date: _____

# STANADYNE LLC
## STANDARD TERMS OF PURCHASE

**1. GENERAL**

A. Prompt acceptance of this Purchase Order by Seller's signing and returning a copy hereof is requested. However, passage of 10 days from receipt of this Purchase Order without objection, delivery of goods, or commencement of work hereunder shall also constitute acceptance of this Purchase Order and all of its terms.

B. This Purchase Order is the final, complete and exclusive statement of the agreement between the parties and may not be modified, contradicted, supplemented, explained or waived by parol evidence. Seller's acknowledgments containing any other or different terms, a course of dealing, or in any other way except in a writing signed by an authorized representative of Buyer and Seller. Any references in this Purchase Order to Seller's proposal or quotation are only to describe the materials or work covered hereby and the prices therefor, and this Purchase Order does not constitute an acceptance of any terms set forth therein.

C. This Purchase Order shall be governed by the laws (including, without limitation, the Uniform Commercial Code) of the State of Connecticut without regard to its conflicts of laws principles. The U.N. Convention for the International Sale of Goods shall not apply to the supply of product or service under this Purchase Order. The use of the terms "goods," "material" and "product" in this Purchase Order shall be deemed interchangeable and shall refer to goods, material or product to be supplied pursuant to this Purchase Order.

**2. PERFORMANCE BY SELLER**

A. Time is of the essence for this Purchase Order, and it is essential that it be performed and filled on the specified date(s) and that the work progress in a timely fashion. Buyer expects 100% on-time delivery, which means that the entire requested shipment quantity (not partial shipment) is shipped or made available for Buyer's transportation carrier on the day specified for delivery in the Purchase Order (so long as such delivery day is consistent with agreed to lead times), and within one hour of the scheduled delivery time. Buyer reserves the right to change delivery schedules or direct temporary suspension of scheduled shipment(s). Buyer may issue orders for delivery that contemplate delivery prior to Seller's standard lead times and Seller agrees to use commercially reasonable efforts to meet the specified delivery times. To that end, Seller will provide to Buyer priority/preferential production scheduling. Seller shall not reject any requested delivery dates within Seller's established lead times, nor shall Seller change established lead times without at least 30 days' prior written notice to Buyer. Seller shall immediately give written notice to Buyer setting forth the reason and extent of any anticipated delay in any scheduled shipment(s). If Seller fails to have goods ready for shipment in time to meet Buyer's delivery schedules using the method of transportation originally specified by Buyer or Buyer's third party logistics company and, as a result, Buyer requires Seller to ship the goods using a premium (more expeditious) method of transportation, Seller will ship the goods as expeditiously as possible. Seller will pay, and be responsible for, the entire cost of such premium shipment. If Seller fails to deliver conforming products or services by the delivery date specified by Buyer, (1) Seller shall provide to Buyer a so-called 8D (8 step corrective action plan) in form and substance acceptable to Buyer with respect to such failure, and (2) Seller shall reimburse Buyer for all reasonable losses, costs and damages caused by such failure. Such costs and damages may include, without limitation, costs, expenses and losses of Buyer and/or its customers arising from production interruptions or slowdowns, line downtime, overtime wages, product rework and expedited shipping.

B. Seller shall comply with Buyer's policies and procedures set forth at https://portal2.stanadyne.com/portal/, including but not limited to, Supplier Expectations, Supplier Quality Manual (including the Labeling Standards for Inbound Shipments referenced therein), Supplier Diversity Program, Suppliers' Business Conduct Guide, and Governmental and Safety Constraints, as the same shall be amended by Buyer from time to time.

C. Seller warrants that it shall meet and otherwise comply with, as appropriate, all standards of the Occupational Safety and Health Act of 1970, as amended; Fair Labor Standards Act of 1938, as amended; Title VII of the Civil Rights Act of 1964, as amended; Executive Order 11246, as amended by Executive Order 11375; Section 503 of the Rehabilitation Act of 1973, as amended; Vietnam Era Veteran's Readjustment Assistance Act of 1974, as amended; Executive Order 11625, as amended; Motor Vehicle Safety Act, as amended; all federal, state and local safety, health and environmental laws, as amended; and all rules, regulations, ordinances, guidelines and other requirements related to the foregoing, all of which are hereby incorporated by reference.

D. This Purchase Order is issued to Seller in reliance on Seller's personal performance, and Seller may not assign this Purchase Order or the partial payment of any sums due hereunder or subcontract any substantial part of the performance or work other than for standard commercial supplies.

E. Seller agrees to exculpate, defend, indemnify and hold harmless Buyer and its customers from and against all claims, liabilities, lawsuits, expenses (including attorneys' fees and other defense costs) and penalties, which arise, directly or indirectly, out of any of the following: (i) alleged defects in material, workmanship or design of the material or work furnished hereunder; (ii) violations of federal, state or local safety, health or environmental laws arising out of the use or resale of material or work furnished hereunder; (iii) personal injury or death of Seller, its agents, employees or subcontractors and/or damage to or destruction of Seller's or its subcontractor's property arising out of the use or resale of materials or work furnished hereunder; (iv) the infringement by material or work furnished hereunder of any United States or foreign patent, trademark or other intellectual property right; or (v) the breach by Seller of any of its representations, warranties or covenants hereunder.

**3. CERTAIN CHARGES OR EXPENSES NEGATED; RISK OF LOSS**

A. Unless otherwise specifically provided herein: (i) all material shall be labeled in compliance with Buyer's Supplier Quality Manual; (ii) all material shall be packed, marked and shipped in accordance with requirements of common carriers, as specified by the Interstate Commerce Commission; (iii) no charges for packing, crating, demurrage, storage or containers shall be allowed; and (iv) any information or data disclosed or furnished to Buyer by Seller hereunder shall be deemed sold as part of the price hereof, non-proprietary and free of all restrictions whatsoever. Prices shall not include any applicable sales or similar type taxes, which shall be separately stated on any invoice. Seller shall remit to appropriate taxing authorities any sales or similar taxes paid by Buyer to Seller. Unless specifically instructed by Buyer or Buyer's third party logistics company, Seller shall select the most economical transportation mode available consistent with Buyer's delivery schedule. Seller shall use only carriers approved by Buyer or its third party logistics company, as set forth in this Purchase Order. If this Purchase Order fails to specify one or more approved carriers, Seller shall promptly contact Buyer's third party logistics company or other personnel designated by Buyer as responsible for this Purchase Order to seek instructions.

B. Delay in receiving invoices or statements will be just cause for withholding payment, without loss of cash discount privileges.

C. Notwithstanding contrary risk of loss provisions of U.C.C., INCOTERMS or other shipment terms that may apply to this Purchase Order, (i) the risk of loss for conforming goods shall be on Seller until the products are delivered to the destination(s) specified in this Purchase Order, regardless of whether Buyer or Seller is paying for the freight; provided, however, that Buyer shall assume the risk of loss for conforming goods while being transported on Buyer's vehicles; and (ii) the risk of loss for nonconforming goods shall be on Seller at all times.

**4. BUYER'S PROPERTY**

A. Buyer retains title to all information, drawings, designs, specifications, technical data and materials, including tools, special dies and patterns, furnished by Buyer to Seller or specifically paid for by Buyer for use with this Purchase Order and any other Buyer purchase order related to the goods covered by this Purchase Order. Such property shall remain the property of Buyer, shall be treated as Buyer's confidential information, shall be used by Seller only to complete this Purchase Order and any other Buyer purchase orders related to the goods covered by this Purchase Order and shall be returned to Buyer upon Buyer's request. Any copies or reproductions thereof shall be made only with Buyer's written consent. All of Buyer's property shall be segregated and clearly identified as property of Buyer and shall be returned to Buyer upon its request. Seller authorizes Buyer to file a UCC-1 Financing Statement covering the foregoing described property of Buyer. Buyer reserves the right at any time and for any reason to demand possession of said materials and any copies or reproductions thereof or to enter upon the premises of Seller to reclaim possession of the same.

B. Seller assumes all risk and liability for loss or damage to such property, except for normal wear, and agrees to permit inspection and supply detailed statements of such property held upon request of Buyer. Seller shall at all times cover said property with full fire and extended coverage insurance naming Buyer as loss payee and furnish to Buyer evidence of said coverage upon Buyer's request.

**5. WARRANTIES**

A. Seller warrants that material and work furnished hereunder shall be of the highest grade and quality, unless otherwise specified by Buyer. In addition, Seller represents and warrants that all products (including packaging) and services (including construction work) provided under this Purchase Order shall: (i) fully and strictly conform to specifications; (ii) be free of defects; (iii) be of good material and workmanship; (iv) be merchantable; (v) be free of any liens, claims or encumbrances of any kind; and (vi) conform to all requirements of Buyer's policies and procedures referenced in Section 2B of these terms and any other provisions of these terms. In the case of goods that are manufacturing equipment or parts therefor, Seller also represents and warrants that Seller has special skills and that Buyer is relying on the skill and the judgment of Seller to select and furnish suitable products or services, and all written or oral statements of Seller as to function, quality, suitability, and use of such products or services are warranties of Seller, and Seller warrants such goods or services are fit for the general and particular purposes for which they are required. If any product or service is nonconforming Seller shall, if Buyer requests, promptly and without charge repair or replace the product or provide replacement service, or Buyer may request a refund. If any specification or instruction supplied by Buyer, regardless of the form, appears to be in conflict with any other specifications or instructions, or otherwise appears insufficient or unclear, it shall be the duty of Seller to request clarification from Buyer, who shall reserve the right to determine products or services' conformity with the specifications or instructions. At Buyer's option, any part of the material or work not complying with the requirements hereof, expressed or implied, may be returned, at Seller's risk and expense including transportation both ways, for prompt correction of defects. Payment by Buyer shall not constitute acceptance of nonconforming material or work or waive any rights of Buyer hereunder.

B. All goods or material received shall be subject to Buyer's inspection and rejection. Goods or material not in conformance to Buyer's specifications will be held for Seller's instructions at Seller's risk and, if Seller so directs, will be returned to Seller at Seller's expense. No goods or material returned as nonconforming shall be replaced without a new order and schedule established by Buyer. Acceptance will not remove Seller's responsibility for latent defects or any other obligation of Seller under this Purchase Order.

C. The rights and remedies available to Buyer in this Purchase Order shall be cumulative with, and in addition to, all other remedies provided at law or in equity. In addition to any and all other remedies available to Buyer, Buyer shall be entitled to all incidental and consequential damages resulting from a breach by Seller of this Purchase Order, including, but not limited to, all expenses reasonably incurred in inspection, receipt, transportation, and care and custody of the goods or material rightfully rejected, any commercially reasonable charges, expenses or commissions incurred in effecting cover, and any other costs and expenses incident to a delay or breach by Seller.

D. Seller shall be responsible for the costs of any recall related to the goods provided under this Purchase Order to the extent the recall is based upon Buyer's reasonable determination that the goods fail to conform the warranties contained in these terms.

**6. CHANGES**

Buyer may at any time by written notice make changes within the general scope of this Purchase Order. If any such change affects the time for or cost of performance, an equitable adjustment shall be made in the delivery schedule, purchase price, or both by mutual written agreement of the parties. All claims by Seller for adjustment under this clause must be asserted in writing and in full within 30 days from the date of notification of the change or shall be waived. Nothing herein shall excuse Seller from proceeding with the order as changed. No extras shall be allowed except pursuant to this clause.

**7. CANCELLATION**

A. Buyer may at any time terminate this Purchase Order, in whole or in part, by written notice, whereupon Seller shall terminate work pursuant to the terms of such notice. Seller shall promptly advise Buyer of the quantities of applicable work and material on hand or purchased prior to termination and the most favorable disposition that Seller can make thereof. Seller shall comply with Buyer's instructions regarding disposition of such work and material. All claims by Seller based on such termination must be asserted in writing and in full within 60 days from the date of notification of the termination or shall be waived. Buyer shall pay Seller the Purchase Order price of finished work and the cost to Seller (excluding profit or losses) of work in process and raw material, less: (i) the agreed value of any items used or sold by Seller with Buyer's consent; and (ii) the reasonable value or cost (whichever is higher) of any defective, damaged or destroyed work or material and any items sold or used by Seller without Buyer's consent. Notwithstanding the foregoing, Buyer will in no event be obligated to make payment for more than 90 days' quantity of finished work, work in process or raw material, determined based on Buyer's forecasts as in effect at the time of cancellation. The payment provided under this clause shall constitute Buyer's only liability in the event this Purchase Order is terminated as provided herein. The foregoing provisions of this clause shall not apply to any termination by Buyer for default of Seller or under the following provisions of this section unless a court shall find such termination by Buyer to be improper.

B. To the extent this Purchase Order covers items normally carried in inventory by Seller (as distinguished from items specially made to Buyer's specifications), Buyer shall have no liability for any termination of this Purchase Order, in whole or in part, prior to actual shipment. For any termination made 10 days after receipt by Buyer of items from Seller, Buyer's liability shall be limited to returning said items and reimbursing Seller for direct costs of handling and transportation.

C. Buyer may cancel without liability in the event of Seller's insolvency or bankruptcy.

D. Buyer shall not be liable for failure to take delivery of material or work or render any other performance in the event fire, accidents, labor difficulties, governmental actions, third-party failures or any other conditions beyond Buyer's control render it commercially impractical for Buyer to do so.

**8. GOVERNMENT CONTRACTS**

If this Purchase Order is for material or work under a government contract or subcontract, all contract provisions applicable hereto and required by law, order, regulation or Buyer's government contract or subcontract are hereby incorporated by reference as if fully set forth herein. Where necessary to make the context of such provisions or clauses applicable to this Purchase Order, the terms "Contractor", "Contract", and "Government" or "Contracting Officer" (or terms of similar import) shall mean respectively Seller, this Purchase Order, and Buyer.

Without limited the generality of the foregoing, this contractor and any subcontractor shall abide by the requirements of Executive Order 11246 (41 CFR 60-1 through 60), as amended, and the applicable regulations in 41 CFR §60-300.5(a) and 41 CFR §60-741.5(a), and 29 CFR Part 471, Appendix A to Subpart A. If applicable, the subcontractor agrees to comply with referenced regulations. Further, if applicable, seller agrees to file Standard Form 100 (EEO-1 and the VETS-4212. This contractor and subcontractor shall abide by the requirements of 41 CFR §§ 60-1.4(a), 60- 300.5(a) and 60-741.5(a). These regulations prohibit discrimination against qualified individuals based on their status as protected veterans or individuals with disabilities, and prohibit discrimination against all individuals based on their race, color, religion, gender, gender identity, sexual orientation, or national origin. Moreover, these regulations require that covered prime contractors and subcontractors take affirmative action to employ and advance in employment individuals without regard to race, color, religion, sex, sexual orientation, gender identity, national origin, protected veteran status or disability.

**9. NOTICE**

Buyer values highly the confidence and good will of its customers and suppliers. Buyer offers its products only on their merit, and Buyer expects its customers to judge and purchase its products and services solely on the basis of quality, price, delivery and service. This policy applies in all of Buyer's relationships with its customers and suppliers.

**10. BILLING AND SHIPPING INSTRUCTIONS**

A. In the absence of special packing requirements, all material shall be packed, marked and shipped in accordance with requirements of common carriers, as specified by the Interstate Commerce Commission.

B. The Purchase Order number must be shown on all packing slips, bills of lading, invoices and packages. Along with the Purchase Order number, the box identification should also have the packing list number, part number, and quantity on the box label. Seller shall affix to packages such bar code labels or other inventory control markings or devices as Buyer may request.

C. Packing slips shall accompany each shipment, and an original bill of lading or other shipping receipt shall be promptly forwarded by Seller to Buyer.

D. Invoices shall be rendered promptly to Buyer at its address as indicated on the Purchase Order.

E. Payment terms are indicated on the Purchase Order. Buyer may set off or charge back any amounts Seller owes Buyer against any amounts that Buyer owes Seller.

**11. PROPRIETARY RIGHTS**

Any drawings, designs, specifications, technical data, technical information, formulations, ideas, inventions, concepts, discoveries, works of authorship, trade secrets, know-how, manuals, installation instructions and other documents and intellectual property furnished or disclosed by Buyer are strictly stated for the use of Seller only to complete this Purchase Order and any other Buyer purchase orders related to the goods covered by this Purchase Order. Seller acknowledges that such information and documents are valuable property, confidential information and trade secrets of, and owned by, Buyer, and Buyer shall take all reasonable steps to protect the confidentiality of such information and documents and shall not disclose, copy, publish, in whole or in part, to any person without the prior written permission of Buyer. Buyer does not guarantee the accuracy of all information contained therein. Without limiting the foregoing, Seller is granted no right or license to use any such information or documents except to the extent necessary only to complete this Purchase Order and any other Buyer purchase orders related to the goods covered by this Purchase Order. Seller acknowledges that breach of this section would cause irreparable harm to Buyer and agrees that Buyer shall be entitled to enforce Seller's obligations hereunder by court injunction, without the need for Buyer to post a bond or other security, or court-ordered affirmative action, which injunction or ordered action may restrain a future breaking of this section if there is reasonable ground to believe that such a breach is threatened.

**12. RECORDS, INSPECTIONS**

A. Seller shall maintain accurate and complete books and records with respect to all activities, orders, financial transactions, costs and expenses related to the manufacture and supply of goods hereunder and retain those records for three years unless a longer retention period is required by applicable law. Buyer shall have the right to inspect, copy and audit such records and Seller's relevant administrative and accounting policies, guidelines, practices and procedures to determine compliance with these terms.

B. Buyer and its designees shall have reasonable access to observe and inspect Seller's manufacturing facilities and procedures, including manufacturing operations and manufacturing records related to this Purchase Order and any other Buyer purchase orders related to the goods covered by this Purchase Order, at reasonable intervals and upon reasonable notice to Seller.

**Rev. November 2017**
**U.S. Terms and Conditions**